Donna Bullock
Attorney at Law (SBN 109223)
LAW OFFICES OF DONNA BULLOCK
800 W. 6th St., Ste. 1250
Los Angeles, CA 90017
Tel: (562) 726-0778
Fax: (562) 683-0319
donnabullockcarrera@yahoo.com

Creditor and Responding Party

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No: 2:21-BK-16674-ER |
| | Chapter 11 |
| JINZHENG GROUP (USA) LLC | |
| | **DECLARATION OF DONNA BULLOCK IN OPPOSITION TO MOTION BY DEBTOR TO DETERMINE WHETHER COMPENSATION PAID TO COUNSEL WAS EXCESSIVE** |
| Debtor and Debtor in Possession. | |
| | (Opposition and Evidentiary Objections filed concurrently herewith) |
| | **HEARING DATE:** |
| | Date: February 23, 2022
Time: 10:00 a.m.
Location: Courtroom 1568
255 E. Temple St.
Los Angeles, CA 90012 |

//

I, Donna Bullock, declare and state as follows:

1.   That I am an attorney, duly licensed and admitted to practice law in the State of California and the United States District Court for the District of California, and am competent to submit this Declaration from my own personal knowledge (the "Declaration") in Opposition to the Motion by Debtor to Determine Whether Compensation Paid to Counsel was Excessive under 11 USC 329 and 2017, (the "Opposition") and the Statement of Evidentiary Objections to the Motion and the Declaration of Christopher Langley (the "Statement of Objections"), filed concurrently herewith.

2.   On August 23, 2021, I was contacted by a secretary of Betula Lenta, Inc., a co-tenant at my offices at 800 W. 6th St., Los Angeles, CA 90017, initially to review a Resolution for Jinzheng Group (USA) LLC ("Debtor"), to hire a Chief Reorganization Officer ("CRO"), before filing an Emergency Chapter 11 Petition through retained counsel David Woods of Marshak Hayes ("Marshak").  I was asked to review Marshak's retainer agreement and the resolution by Betty Zheng Debtor's manager, and by David Park and Jonathan Pae principals of Betula Lenta, Inc. [Betula Lenta, Inc. was the long time Project Manager for Debtor's housing project at 2929 Amethyst which is 32 acres of unimproved and unentitled land a mere 5 minutes drive from downtown Los Angeles and 4 adjacent parcels, intended to be developed into 70 single family residences and accessory dwelling units to market at $3.4 million each ("Amethyst").  The Marshak Retainer states:  '. . . the purpose of the Client's Chapter 11 case will be to effectuate a sale of substantially all of its assets . . . given the financial condition, is to maximize the sale proceeds for the benefit of your creditors." That provision compels Debtor to liquidate without hope of reorganization.  A true and correct copy of excerpts from the Marshak retainer and the CRO Resolution are attached hereto, marked collectively as Exhibit 1 and incorporated herein by reference.

3.   I advised Zheng, Pae and Park that the resolution would give full control to a third party CRO who could sell all Debtor's properties without any approval of the sale or its terms, and that the Marshak retainer stated it intended to liquidate and sell off Debtor's properties and not proceed with their housing development.  Each told me that they did not approve of liquidation of the Debtor's properties as its then existing management team, but must stop the

foreclosure sale of August 24, 2021 of the Amethyst Properties. Marshak had the contractual right to decline representation if Debtor did not approve liquidation of the properties. I was asked by the management team to speak with Marshak, and ask if Marshak would file the Emergency Petition and not liquidate, but reorganize Debtor to complete the Amethyst property project. I did so. David Woods of Marshak declined the representation of Debtor, and declined to file the Emergency Petition to stop the foreclosure sale the next morning, as was within its contractual rights. Mr. Woods recommended that Debtor contact other counsel "in the morning" as it was after hours and about 8:30 p.m.

4. Mr. Woods declined Debtor's representation, Debtor did not terminate Marshak's retention. At no time did anyone from Marshak or Mr. Woods ever comment on the "relationship" of Betula Lenta, Inc. and Debtor as falsely stated in the Motion (page 4, lines 14-16). This is a fabrication and misrepresentation to this Court, to mislead the Court into believing that there was some impropriety in Betula Lenta, Inc.'s relationship with the Debtor. Betula Lenta is a California corporation with successful real estate development reputation, and has been under contract with Debtor since at least 2017 to entitle the Amethyst property.

5. Debtor's management team then asked me to file the Emergency Petition and stop the foreclosure sale. Zheng, Pae and Park asked if I would accept the balance of the retainer paid to Marshak pre-petition and save the Amethyst property. I asked for the minimum retainer to be $45,000, which is an amount within the range reasonably requested for such services. I prepared a written Retainer Agreement for acceptance of the $45,000 in which I was given a security interest in those identified funds (those previously paid to Marshak), perfected as of August 23, 2021, pre-petition. Also, I prepared a Resolution for Debtor authorizing the assignment of the $45,000 retainer in which I had the perfected pre-petition security interest under my Retainer Agreement.

6. My Retainer Agreement was signed on August 23, 2021, pre-petition by Betty Zheng as authorized representative and Manager of Debtor, and under her power of attorney from majority member Qianqing Yang in China, a true and correct copy of which is attached as Exhibit 2.

7. The Debtor Resolution assigning me the identified fund comprising the $45,000 retainer, in which I then had a perfected pre-petition security interest under my Retainer Agreement, was signed by all 3 members of Debtor: Zheng as managing member and for Mr. Yang under his Power of Attorney, and Pae as authorized representative of member Betula Lenta the other member. A true and correct copy of the Resolution assigning me the identified fund of $45,000 from the balance paid to Marshak, is attached hereto as Exhibit 3.

8. On August 23, 2021, I was informed and believed that less than $45,000 was wire transferred by Marshak into my trust account of the identified fund of $45,000, pre-petition. The total amount received by Declarant, pre-petition under the Retainer and Resolution (Exhibits 2 and 3 respectively) is actually $48,390. I did not receive payment of the $5,000 from Best, Best and Krieger, and the statement in the Motion that I received $53,390.00 to date from Debtor is a direct misrepresentation of fact to this Court.

9. I was a disinterested person. On August 24, 2021, I had no claim or interest, and did not represent the Debtor, any creditor or any principal of any creditor of the Debtor.

   a. I had not received from Debtor, any Creditor of Debtor or any principal of any Creditor of the Debtor, any money for representation in any matter as an attorney, for at least the one year preceding filing of the Petition.
   b. I am not a creditor, an equity security holder or an insider of the Debtor, except to the extent of my Proof of Claim (Claim No. 16)
   c. I am not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtor.
   d. I do not and have not had any interest materially adverse to the interest of the estate or of any class of creditors other than my Proof of Claim (Claim No. 16), or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

10. The $45,000 retainer has remained on deposit in my trust account since my retention on August 23, 2021, and I have not made any payments to myself from this fund.

11. Betty Zheng was authorized to sign for Debtor, and to sign for member Qianqing Yang acting under Power of Attorney from the majority member of Debtor, Jianqing Yang, who

- 4 -

is based and resides in Beijing China. Mr. Yang was prevented by Chinese law from transferring any money from China into the United States by Chinese law, for which there is a criminal penalty and risk of incarceration in China. Mr. Yang had been prevented from entering the United States due to travel restrictions imposed by the United States due to the Covid19 pandemic, between China and the United States since early 2020.

12. I worked all night and by 1:30 a.m., I had filed the Chapter 11 Emergency Petition commencing Debtor's bankruptcy case. I sent emails to the Trustee in Foreclosure, Best Alliance and Sid Richmond. I happened to have Mr. Richmond's personal email from other foreclosures in other cases, and sent his company, his personal email and an email to the principal of the foreclosing creditor Rommy Shy of BOBS LLC and Royalty Equity Lending, LLC ("Foreclosing Creditor"), notifying them of the Chapter 11 filing and not to proceed with the foreclosure. However, I am highly experience in real estate law, and have trial judgments and a recent successful California Supreme Court decision in the field of real estate law, and I knew that the foreclosure sale could proceed due to the late filing of the Chapter 11 Petition. I asked for authorization from Debtor's management team, and I personally attended the foreclosure sale on August 24, 2021. As I suspected, Rommy Shy was present at the sale, which could imply that Foreclosing Creditor intended to proceed and issue a Trustee's Deed, possibly by credit bid of Foreclosing Creditor's default amount of approximately $9.2 million. I actually took a picture of Mr. Shy at the foreclosure sale, and when the auctioneer announced the sale, I held up the conformed Petition and stopped the bidding.

13. **I had seen a June of 2021 appraisal report on the Amethyst Property, valuing it at approximately $28 million dollars**. Foreclosing Creditor could have bought the Amethyst Property for $9.2 million or any amount less than $9.2 million exceeding the highest bid at the August 24th foreclosure sale. **That means that my work preserved for Debtor a minimum of $18,800,000.** The appraisal mentions that upon entitlement of the Amethyst property the value would double to in excess of $40,000,000. I have preserved this huge amount of equity for the Debtor and the estate. Without my work, this asset would not exist. Without it, there would be no substantial estate for DEBTOR in this case or for current counsel to represent. There was no time to hire anyone else before the August 24, 2021 foreclosure sale, or anyone who would

understand the bankruptcy issues as well as the real estate issues for entitlement of the Amethyst project.

14.  As of August 23, 2021 and thereafter, I advised Debtor to hire co-counsel with me to prepare the documentation for the Chapter 11 plan of reorganization. I interviewed 3 attorneys, each of which quoted between $100,000 and $250,000 retainer.

15.  I interviewed 2 companies to serve as CRO, and each quoted retainers in the range of $15,000 and exceeding $30,000.00. I asked several persons including the Debtor's tax CPA Ben Li to prepare the Monthly Operating Reports ("MOR's") , and each turned down the job. I did receive a quote from one attorney for Debtor to hire someone to do the MOR's for a minimum of $2,500 a month with no additional services. I mentioned this to Michael Carlin, a professional experienced with bookkeeping, and who had previously served in the reorganization of several companies with experience in the reporting requirements for bankruptcy. Mr. Carlin offered to take the job as CRO **without a retainer**, to prepare the MOR's, to prepare the new set of accounting books, to prepare specifically an updated financial statement required for the 7-Day Trustee package and each MOR, and **all without demanding authority to liquidate properties and agreeing to limit his authority only to matters for which all members unanimously agreed.** Mr. Carlin agreed to perform the important services for $50.00 an hour. Every attorney interviewed charged in excess of $150 an hour for support services. Mr. Carlin was invaluable. Mr. Carlin did not, and I do not believe would ever take any action adverse to Debtor or to profit from Debtor other than his high reasonable and minimal hourly fee. He started working for Debtor at $50.00 an hour after the 7-Day Trustee package was timely submitted. He assisted with the timely filing of the full Petitions, and had knowledge and experience with accountancy principles. He did not know of, do business with or have any interactions with Debtor before filing of the bankruptcy petition, although Debtor's current counsel SLC stated in Court documents an accusation that Carlin was involved with the pre-petition operations of the Debtor. This was a complete falsehood and a direct misrepresentation of fact to this Court.

16.  I have timely filed the 7-Day Trustee package, and worked full time every day including weekends, to not only gather facts, but to verify the facts required and to insure that the

financial information and valuation of Debtor's assets were correct. I had to get documents from Debtor to do this, at the same time confirming receipt of every document required by the Trustee Guidelines. The books and records of Debtor did not exist to the specificity required in the 7-Day Trustee package or the schedules. Debtor's current counsel makes the false statement that Debtor was not provided information about the assets, creditors or financial condition of its business. This is a direct misrepresentation of facts, as I personally prepared true, correct and verified petitions, schedules, disclosures and every other requirement for perfection of this Chapter 11. The risk of failure to timely, completely and correctly provide all requisite information in all filings, was that Foreclosing Creditor could resume the foreclosure sale within 2 days or less of a dismissal of this case. If so, the $18,800,000 plus in equity, which could be refinanced to pay off creditors by a full market sale or refinance (by a DIP lender) to fund the plan of reorganization.

17. Attached as Exhibit 4 is the Debtor's Statement of Major Events leading up to the Bankruptcy filing and timetable. I wrote this and obtained all of the facts contained in it. In it the full plan of reorganization is explained, as well as the plan to complete entitlement of the Amethyst property. I worked on compliance with all filings, schedules and disclosure, negotiations and securing the support of all of the Creditors providing services for entitlement of the Amethyst Property (excepting certain brokers demanding unpaid commissions of a loan extension from the Foreclosing Creditor), and ultimately participating in Betula Lenta, Inc., Debtor's Project Manager for the Amethyst housing project, in the only barrier to reorganization – the only thing which put this Debtor into foreclosure – and the only thing which forced this Debtor into Chapter 11, a loan sufficient to pay off the Foreclosing Creditor, fund completion of entitlement of the Amethyst property, and lead to a refinance of the doubled market value of the Amethyst property upon entitlement, the proceeds of which would pay off every creditor 100% and fund construction of the homes.

18. The Amethyst housing development will be 70 homes and ADU's at $3.4 million each. That means that my work saved the Amethyst property from loss through foreclosure and immediate loss of over $18,800,000 in equity based upon the property value unentitled and

- 7 -

unimproved. But that also means that my work preserved the opportunity to complete the project, sell the houses and gross, over $200,000,000 in 3-5 years.

19. Mr. Yang fired his management team, Betula Lenta and its entitlements service providers who are creditors in this bankruptcy; Betty Zheng quit when threatened; and this Declarant was terminated, by on or about November 21, 2021. Debtors new counsel took over by filing the Substitution of Attorney on December 6, 2021. However, by December 13, 2021 Debtor filed a Motion to Extend the Exclusivity Period, **ADMITTING** and arguing as grounds for the Motion that all filings had been timely and property filed, which I did – not current counsel; and other statements concerning the viability of Debtor's business operations, which my work produced. My services were a benefit to the estate. The fact that Mr. Yang terminated his legal counsel and management team, in favor of his inexperienced godson Max Yang, mere days before a full plan of reorganization funded by a new loan to pay off the Foreclosing Creditor, and proceed to the potential gross sales estimated at over $200 million, does not devalue or render valueless the hours, effort, loyalty and the services provided by counsel.

20. On February 4, 2021, I filed a Proof of Claim, Claim No. 19 in the Claims register for this case. It reflects actual hours spent on this case of 273.3 hours, for which I have and intend to provide detailed billing records. I did not attach them to this Opposition, out of concern that privileged information might be contained in the billing, but am willing to provide them as directed by this Court. I also show 9 hours of services on August 23, 2021, pre-petition.

21. On August 24, 2021 at 1:30 a.m. when the Emergency Petition was filed, I personally paid by my credit card the filing fee advanced for Debtor, for which I was entitled to reimbursement under the terms of my Retainer Agreement (Exhibit 2 hereto). I also advanced a $30.00 filing fee for an amended list of 20 largest creditors.

22. I was available for Debtor at all times during my representation. I have discovered misconduct, mistakes and impropriety on the part of former counsel for Debtor, Matthew Mulhofer whose failure to properly notice the Temporary Restraining Order in the State Court TWICE forcing the Chapter 11 filing in this case. I discovered a defect in the Notice of Default upon which Foreclosing Creditor's Trustee Sale was noticed on a mere 21 days notice after the first missed payment on the loan secured by the Amethyst Property. I discovered that

the List of 20 Largest Unsecured Creditors prepared by Marshak contained the name of Barry Shy, a principal of secured creditor BOBS LLC, and the father of Rommy Shy, apparently to get a secured creditor onto a Creditor's Committee in this case, which did not include the rest of the real Unsecured Creditors. I have evaluated title and value of every asset owned by the Debtor, and provided the due diligence materials required for the loan applications, which led to the approval of the loan which would have reorganized this case had Mr. Yang not terminated Betula Lenta, Inc., which qualified Debtor for that financing. I had the cooperation and votes of a majority of the Unsecured Creditors, and the cooperation of secured creditors.

23. I personally put in over 282.3 hours and was on the verge of a successful conclusion to this Chapter 11, as instructed and demanded by Qianqing Yang, majority member of Debtor. I protected the assets of this Debtor from outside attempts to take over, until I was terminated and new counsel representing Max Yang took over. My total billing under my Retainer Agreement attached to my Proof of Claim is based upon lodestar: 282.3 hours multiplied by hourly rate of $500, plus reimbursement of filing fees advanced. To date, the $45,000 retainer, the $1,738.00 Chapter 11 filing fee and the $30.00 filing fee for the Amended List of 20 Largest Unsecured Creditors, totals $46,768. A balance due of $1,621.40 is due to the estate, which I offer to turn over immediately. I did not file the Employment Application, as Mr. Yang instructed and the remaining members did not oppose, his direction to secure the financing, effectuate the plan of reorganization and exit this Bankruptcy.

24. I tried to file various motions, such as the employment application and was instructed not to file it, and promised I would be paid in full in addition to my retainer upon reorganization and construction financing. I tried to file a Motion to sell a property and that instruction was rescinded by the members. I tried to file a payroll motion, and was instructed by Mr. Yang's personal counsel not to do so. I intended and had the ability with the loan approval just before my termination, to propose a plan of reorganization by the first deadline date. It was the decision of the majority member Mr. Yang to terminate that plan and turn over all operations of the Debtor to his godson Max Yang, losing the loan so long and desperately sought to fund reorganization. It was the decision of Max Yang to hire SLC. I have done nothing but protect the assets of Debtor and the equity in its realty assets, and encourage cooperation between the

Debtor, Secured and Unsecured Creditors. My fees are not excessive, as the assignment given to me by the Debtor was work intensive, and was successful – had not the management team and myself been replaced.

25. In fact, Mr. Yang started 'changing his mind' at about the time that the Employment Application was to be filed, making the Debtor's intentions about making BULLOCK general bankruptcy counsel in September of 2021. Then Max Yang tried to take over DEBTOR from the existing management team before authorized to do so by the members. SLC even attempted to take over representation from BULLOCK and contacted the Trustee and the foreclosing creditor (whose counsel employs DEBTOR's counsel Mr. Langley, before obtaining authorization to do so or filing a Substitution of Attorney. Mr. Yang revoked Max Yang, and by extension SLC as Max Yang's attorney in September, but then 'changed his mind' and authorized Max Yang and SLC to take over as of November 21, 2021, filing the Substitution of Attorney on December 6, 2021.

26. The email quoted in the body of the Motion dated email from BULLOCK to Steven Chang of SLC on December 8, 2021 was directly misquoted, and appears to have been altered to mislead this Court as to my qualifications. In the MOTION, (page 5, line 27-28) the email purports to quote BULLOCK as follows:

"I myself am a civil litigator, **without** about 4 years of practice devoted specifically to bankruptcy law . . . "

What that email *actually said was:*

"I myself am a civil litigator, **WITH about 4 years of practice devoted specifically to bankruptcy law** . . . " (emphasis, capitals and underlines added)

A true and correct copy of that email string is attached hereto, marked as Exhibit 5 and incorporated herein by reference. It is in reckless disregard for the truth that the actual email was not attached to a Declaration in support of the Motion, and that it misquotes that I was "without" bankruptcy experience, when I was telling them I had 4 years of experience in bankruptcy.

27. Attached hereto, marked as Exhibit 7 and incorporated herein by this reference is my professional resume for consideration by this Court. I worked as an associate for the law Offices of Ira Benjamin Katz, and for the Law Offices of Illyssa Fogel, some 20 years ago, both well

regarded bankruptcy practitioners, and continued to practice bankruptcy in the specialized context of real estate and reorganization of real estate developments.  I was and remain uniquely qualified to represent Debtor in this bankruptcy.  I have not charged excessive fees.  The terms of my Retainer Agreement are fair and proper.

27.    There is much more detail I have not included, as I am concerned about disclosure of privileged matters to which Debtor's waiver might not extend.   I will cooperate with the Court as directed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration is executed on February 9, 2022 at Los Angeles, California.

*Donna Bullock Carrera*

Donna Bullock, Declarant

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 800 W. 6th St., Ste. 1250, Los Angeles, CA 90017  A true and correct copy of the foregoing document entitled (*specify*): DECLARATION OF DONNA BULLOCK IN OPPOSITION TO DEBTORS MOTION TO DETERMINE IF COMPENSATION PAID WAS EXCESSIVE, etc.

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 2/9/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael F Chekian    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
Susan Titus Collins    scollins@counsel.lacounty.gov
Jeffrey W Dulberg    jdulberg@pszjlaw.com
Richard Girgado    rgirgado@counsel.lacounty.gov
M. Jonathan Hayes    jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com Christopher J
Christopher Langley    chris@slclawoffice.com, omar@slclawoffice.com
Benjamin R Levinson    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
Giovanni Orantes    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com
Matthew D. Resnik    matt@rhmfirm.com,
Allan D Sarver    ADS@asarverlaw.com
David Samuel Shevitz    david@shevitzlawfirm.com, shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 2/9/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Ernest M. Robles
Edward R. Roybal Federal Building & Courthouse
255 E. Temple St, Suite 1560/Courtroom 1568
Los Angeles, CA 90012

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/9/2022 | Donna Bullock | /s/ Donna Bullock |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**