# MARSHACK HAYS LLP
ATTORNEYS AT LAW | LITIGATION | REORGANIZATION | BANKRUPTCY

Richard A. Marshack
D. Edward Hays
Chad V. Haes
David A. Wood
Judith E. Marshack
Laila Masud
Tinho Mang

*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw

Sender: David A. Wood
dwood@marshackhays.com
Reference No. 9999-001

August 23, 2021

*VIA E-MAIL ONLY*
Bettylink77@yahoo.com; david@thecodesolution.com

Jinzheng Group (USA) LLC
c/o Betty Zheng, Manager
100 E. Huntington Drive, Ste. 207
Alhambra, CA 91801

Re:    Chapter 11 Filing of Jinzheng Group (USA) LLC

Dear Ms. Zheng:

Thank you for choosing Marshack Hays LLP (the "Firm") to serve as your counsel for the purpose of filing a voluntary Chapter 11 bankruptcy of Jinzheng Group (USA) LLC. We appreciate your confidence and look forward to working with you. This retainer agreement sets forth information concerning our services and the fees and expenses you should anticipate. If you agree with the terms of retention set forth in this agreement, please place your initials where called for, sign the Client Acknowledgment and Agreement at the end of the agreement, and return the executed document to us. Once executed, this agreement may not be changed or modified except by a written document signed by each of us. If you have any questions concerning any of these provisions, please do not hesitate to call.

## IDENTITY OF THE CLIENT(S)

The client(s) retaining the Firm by this agreement is "JINZHENG GROUP (USA) LLC." "You" and "Your" as used in this document mean JINZHENG GROUP (USA) LLC.

## SUBJECT OF RETENTION

The Firm has agreed to render legal services for the following aspects of the proposed Chapter 11 bankruptcy case:

    a.    Preparation and filing of Chapter 11 petition, schedules, statement of financial affairs, and all documents needed to commence a Chapter 11 case; and

August 23, 2021
Page 2 of 13

        b.    Representation of the Client in a Chapter 11 bankruptcy proceeding.

==Client acknowledges that the purpose of the Client's Chapter 11 case will be to effectuate a sale of substantially all of its assets, which may be done by way of a motion under 11 U.S.C. § 363, a confirmed Chapter 11 plan, or both. Among other things, the purpose of the sale, given the financial condition, is to maximize the sale proceeds for the benefit of your creditors.==

In the event you require additional services not set forth above, including the filing of or defense of any lawsuit or adversary proceeding filed in the Chapter 11 case, a separate written agreement must be executed before additional services will be rendered. Unless otherwise agreed to in writing, additional services will be provided pursuant to our regular hourly rates set forth below.

If the case is converted to Chapter 7, a Trustee will be appointed. There is also a possibility that the Court will appoint a Chapter 11 Trustee. A Trustee is charged with a duty to administer or liquidate assets for the benefit of creditors. The Trustee "steps into the shoes" of the Debtor and has the ability to operate the Debtor's business or sell assets as if he or she was the Debtor. The liquidation involves the Trustee investigating the value of each of Client's assets and trying to sell such assets to produce money for creditors. Specifically, Client is advised that the Trustee will attempt to sell Client's properties, ownership interests in businesses, profit percentages in companies, vehicles, personal property of every kind, lawsuit claims, etc. Even if there is no equity in an asset as of the date of bankruptcy, any post-bankruptcy appreciation will belong to the estate. Client further acknowledges that the Trustee will have an unfettered right to require all financial documentation to be produced including tax returns. A trustee also holds the attorney-client privilege and can waive it to obtain all communications between You and the Firm. Creditors too have the opportunity to have personal financial documents produced, including tax returns. These document productions also extend to the financial affairs of businesses in which Client has an interest because such business interests are subject to being sold to raise funds to pay creditor claims. Client's assets and liabilities thus are an "open book" in a bankruptcy case.

In general, absent a court order, you may not use cash or cash equivalents that are subject to a lien. For example, revenues subject to security interests cannot be used to cover operating expenses without consent or Court order. While we will attempt to obtain use of cash collateral, you acknowledge that the Firm is not giving any guarantee of success.

Additionally, you acknowledge that the Firm has informed you, and you acknowledge, that your secured creditors may seek relief from the automatic stay to foreclose their security interests. Utility providers also may cancel service unless additional deposits are paid to them to provide adequate assurance of payments for ongoing services. Additionally, you acknowledge that the Firm has explained that your case could and/or may be characterized as a "single asset real estate" case ("SARE") as defined by Title 11 of the United States Code ("Bankruptcy Code"). YOU understand and have been advised regarding the shortened timeline set forth in the Bankruptcy Code for a single asset real estate case. We have also informed you, and you acknowledge, that your secured creditors may seek relief from the automatic stay to foreclose

August 23, 2021
Page 3 of 13

their security interests. The restrictions on use of cash collateral and the expedited timelines associated with a SARE case present added risk and difficulty to your case.

The Debtor must close all bank accounts and open new debtor-in-possession accounts. No funds may be used to pay pre-bankruptcy claims including wages without first obtaining court approval. You may want to run a special payroll to pay employees for all services rendered prior to bankruptcy.

Transfers made during the four-year period prior to bankruptcy where the Client made such a transfer with actual intent to hinder, delay, or defraud creditors are subject to avoidance as being actually fraudulent. Transfers made during the four-year period prior to bankruptcy where the Client received less than reasonably equivalent value while insolvent are subject to avoidance as being constructively fraudulent. The four-year period can be extended to seven years in certain circumstances.

Client acknowledges being advised of the risks involved in a bankruptcy case. Because of these risks and to ensure the optimum result from the bankruptcy case, Client promises to be 100% truthful with the Firm at all times. Furthermore, Client acknowledges that the Firm will never aid the Client in committing a crime or misleading the Court or any trustee appointed in this case as to the facts on any issue. If Client instructs the Firm to not be completely honest, Client acknowledges that the Firm will seek to withdraw as his counsel.

There are many requirements to confirm a Chapter 11 plan. One such requirement is to get a class of impaired creditors to vote in favor of the plan. As such, it may be difficult to get a class of creditors to vote to accept the plan. Client's vendors, judgment creditors, and other unsecured creditors may or may not be able to be separately classified. If Client's judgment creditors cannot be separately classified, there is a risk that Client may not be able to obtain a class of creditors that would vote to accept the plan. A class of creditors accepts the plan if more than half of the voting creditors and two-thirds of the claims voted, elect to accept the plan. The votes of insiders (entities or people related to Jinzheng Group) do not count for purposes of determining if a class of creditors has voted to accept the plan.

Client acknowledges that the Firm has not guaranteed any particular result in the bankruptcy.

Lastly, the members of the Debtor cannot retain any equity ownership in the Debtor unless all creditors are paid in full or otherwise consent. This is known as the "absolute priority rule." An exception to the absolute priority rule is that holders of equity interests make a contribution of substantial new value to the Debtor. For example, the equity owners of the Debtor can contribute personal funds to increase distributions to creditors, whether in a lump sum or over time. The bottom line is that there are substantial risks and uncertainties in getting the Debtor reorganized.

Client acknowledges that the Firm will only agree to this representation if YOU retain pre-petition and independent Chief Restructuring Officer ("CRO") to run an open and

August 23, 2021
Page 4 of 13

transparent sales process. YOU have informed the Firm that YOU have inadequate capital to continue development of certain undeveloped real property owned by YOU.

CLIENT'S INITIALS: *BZ* [B.Z.]

## TAX RAMIFICATIONS

You have not retained the Firm to provide you with advice or direction regarding any possible tax ramifications arising out of the Firm's representation of you. The Firm will not be responsible for alerting you of any actual or potential tax-related matters at any time during the representation. The Firm strongly advises you to discuss all tax matters with competent tax counsel. The Firm does not have tax counsel. The Firm does not make and will not make any representation or warranty regarding any actual or potential tax ramifications resulting from the scope of this retainer agreement or any other matter. The Firm strongly recommends that you review the effect of all legal matter(s) with your Certified Public Accountant or other tax professional.

The Firm does not engage in the sort of "Tax Planning" which involves the recommendation of specific business or transactional arrangements the primary purpose of which is to reduce taxes in excess of the sums involved nor do we render "tax opinions" with respect to such transactions.

## HOURLY RATES

Please bring to our attention, at any time, any questions or concerns you may have concerning the Firm's services or our fees. Please also contact the Firm if you have any questions regarding the Firm's billing practices. You are retaining the Firm, not any particular attorney in the Firm. The Firm will decide which professionals will work on your case. The Firm will charge a reasonable fee for professional services based primarily on an hourly rate which is in effect at the time the services are rendered. The factors the Firm will take into account in determining the ultimate fee are set forth in the American Bar Association Rules, a copy of which is enclosed for your review. The Firm bills in minimum units of one-tenths (.1) of an hour. Hourly rates for professionals and staff are adjusted from time to time. As of the date of this letter, the Firm's hourly rates are as follows:

| Partners | Rates | Of Counsel | Rates | Paralegals | Rates |
|---|---|---|---|---|---|
| Richard A. Marshack | $650 | Kristine A. Thagard | $550 | Pamela Kraus | $280 |
| D. Edward Hays | $650 | Matthew W. Grimshaw | $550 | Chanel Mendoza | $260 |
| Chad V. Haes | $490 | **Associates** | **Rates** | Layla Buchanan | $260 |
| David A. Wood | $490 | Judith E. Marshack | $410 | Cynthia Bastida | $260 |
| | | Laila Masud | $390 | Kathleen Frederick | $200 |
| | | Tinho Mang | $350 | | |

## ADJUSTMENTS TO RATES

The Firm will bill for services based on the considerations discussed with at your initial meeting or meetings with the Firm and based on future decisions made by you and the Firm

August 23, 2021
Page 5 of 13

regarding the representation. The Firm will send statements for fees and expenses to your attention on a periodic basis. Statements for fees, costs, and other expenses are due and payable upon presentation. Any other arrangements, such as deferred payment or payment by installment, must be agreed to by the Firm in writing. The Firm's professionals' hourly rates are reviewed and changed from time to time. Your periodic billing statements will reflect any adjustment in billing rates. If you decline to pay increased rates, the Firm will have the right to withdraw as your attorneys.

In certain cases, a judge, arbitrator, or other judicial officer may order the other party to pay a portion of a client's attorneys' fees. Such an order does not establish the total fees you owe the Firm, but upon payment will be credited against any outstanding fees for services rendered by the Firm on your behalf. If your bill is paid in full, then any payments received from the other party will be paid to you or credited against future fees, at your discretion.

To aid in the preparation of your case, it may become necessary to hire expert witnesses, consultants, or investigators. Unless otherwise agreed to in writing, the Firm will not retain such persons on your behalf. You must retain the expert witnesses, consultants, or investigators to be hired, and you will be directly responsible for payment of their fees and costs. The Firm will help you choose the appropriate expert witnesses, consultants, or investigators to be hired.

## TEAM REPRESENTATION AND INTRA-OFFICE COLLABORATION

The Firm takes a "team" approach to the matters it accepts and the clients it agrees to represent. As a part of this team approach to legal representation, the supervising attorney analyzes the needs of each client and staffs each case according to the level of expertise and experience needed. A team of professionals has therefore been assigned to your case. This team consists of a supervising attorney, an associate, and a paralegal. On occasion, additional attorneys or staff may participate in your case when the Firm believes it is necessary, will be in your best interests, or will increase the efficiency of our representation of you.

A key to the team concept is communication among the members of the team. While it may not be necessary for all team members to be aware of all of the intricacies of your case, the supervising attorney must be informed of all aspects of your case in order to ensure the highest level of representation. Moreover, from time to time, it is essential for the supervising attorney to provide to junior members of the team advice on matters that arise in the course of the Firm's representation of you. The Firm believes that intra-office conferencing is a necessary part of its ability to efficiently and effectively represent its clients. Therefore, from time to time attorneys and paralegals working on your case will bill for intra-office conferences, meetings, and finalization of pleadings. The Firm also reserves the right, on occasion, to have more than one attorney present to represent you in Court proceedings where the supervising attorney believes it will be in your best interests and is necessary for the most efficient and highest representation in your case.

August 23, 2021
Page 6 of 13

## INITIAL RETAINER

The Firm requests a retainer when it begins working on a new matter, to secure the payment of its fees, costs, and expenses. You must pay an initial retainer of $45,000 pre-petition. The Firm has advised Client that the total fees and costs in the Chapter 11 case will undoubtedly exceed the retainer payments. Any fees and costs allowed by the bankruptcy court will be paid from the retainer and assets of the bankruptcy estate.

## COURT APPROVAL

The terms set forth in this agreement are subject to approval of the U S Bankruptcy Court. If the above terms are not approved by the United States Bankruptcy Court, Firm shall have the absolute right to decline representation and, to the extent necessary, to withdraw from the case and all obligations to represent clients set forth herein. Firm shall be paid for the services rendered.

## COSTS

In addition to the Firm's fees for the legal services provided, costs will be incurred on your behalf in the course of this representation. All costs and expenses which the Firm in its discretion incurs in connection with representing you will be for your account and benefit. Costs and expenses shall include, but not be limited to: filing fees; photocopy charges; computer research fees; telephone usage; incoming and outgoing faxes; postage; travel; parking; court and deposition reporter's fees; clerical staff overtime; word processing charges; processor fees; and messenger and delivery fees. The Firm may, in its discretion, advance such costs and expenses on your behalf, and you must pay any such sums advanced upon presentation of the invoice reflecting costs incurred by the Firm on your behalf. The Firm charges:

| | |
|---|---|
| In-office photocopying: | $0.20/page |
| In-house scanning: | $0.10/page |
| Facsimile charges: | $0.50/page |

The Firm is under no obligation to advance any costs on your behalf, and may require you to pay directly for certain costs and expenses in connection with your case.

## PRIVILEGED COMMUNICATIONS, CELL PHONES, AND E-MAILS

All communications between you and the Firm are protected by the attorney-client privilege. In other words, except for very limited exceptions, no one can force you to produce written communications between you and the Firm to see what you and the Firm have discussed or make you answer questions in order to find out what you and the Firm have discussed. This privilege, however, can be waived if you voluntarily disclose substantive communications to third parties. Execution of this agreement constitutes your acknowledgement of this potential for waiver of privilege and your agreement not to divulge any form of communications between you and the Firm to any third party. This includes forwarding emails to other persons, showing emails to other persons, or divulging the content of privileged communications to other persons. If you choose to

August 23, 2021
Page 7 of 13

waive the attorney-client privilege without first consulting with the Firm, the Firm has the right to withdraw as your counsel at its discretion.

The Firm's attorneys regularly communicate with their clients and their clients' professionals and agents by cellular telephone. Such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege. You must inform the Firm in writing if you do not wish the Firm to discuss privileged matters on cell telephones with you or your professionals or agents.

The Firm's attorneys regularly communicate with their clients and their clients' professionals and agents by unencrypted e-mail. Such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege. You must inform the Firm in writing if you wish to institute a system to encode all e-mail between the Firm and you or your professionals or agents.

## COOPERATION

The Firm will provide services to you in accordance with this agreement and in reliance upon information and guidance provided by you. The Firm will keep you reasonably informed of progress and developments, and will respond to your inquiries. To enable the Firm to consult with you effectively, you agree to cooperate fully with the Firm in all developments and to fully and accurately disclose all facts and documents that may be relevant to the matter or that the Firm may otherwise request. You will make yourself and other appropriate client personnel reasonably available to attend meetings, conferences, hearings, and other proceedings as may be necessary. You will behave and speak respectfully to the Firm's attorneys, staff, and other employees, and the Firm's attorneys, staff, and other employees will behave and speak respectfully to you. Should your communications with or behavior toward the Firm's attorneys, staff, or other employees become disrespectful or abusive, the Firm has the right to withdraw as your counsel at its discretion.

## CIVILITY AND CLIENT DECISIONS

You may find the current Rules of Professional Conduct promulgated and enforced by the State Bar of California at the following website: http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Rules/Rules-of-Professional-Conduct/Current-Rules.

Pursuant to the guidelines promulgated by the United States District Court for the Central District of California as well as the California State Bar Rules of Professional Conduct, attorneys have a duty of civility to each other, to their clients, and to judges. This Firm strives always to practice with the highest degree of civility while representing our clients with zeal, loyalty, and the highest standards of competence. In almost every case, civility to opposing counsel and opposing parties results in a more expeditious resolution of the matter, minimizes attorneys' fees, and prevents the court from developing a negative view of the client and the attorneys: which negative view, if developed, can impact the outcome of litigation. As such:

August 23, 2021
Page 8 of 13

1. We will practice our profession with a continuing awareness that our role is to advance the legitimate interests of our clients. We will endeavor to achieve our clients' lawful objectives in legal transactions and in litigation as quickly and economically as possible.

2. We will be loyal and committed to our clients' lawful objectives, but we will not permit that loyalty and commitment to interfere with our duty to provide objective and independent advice.

3. Civility and courtesy are expected of us as professionals and are not a sign of weakness.

4. We will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that we act in an abusive manner or indulge in any offensive conduct.

5. We will not pursue conduct that is intended primarily to harass or drain the financial resources of the opposing party.

6. We reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect our clients' lawful objectives, including all matters of scheduling. Clients have no right to instruct us to refuse reasonable requests made by other counsel.

7. We will advise our clients regarding availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

8. Clients have the final authority with respect to matters which affect the client's substantive rights. Attorneys, on the other hand, have general authority to control the procedural aspects of litigation and litigation tactics or strategies.

In general, attorneys have implied authority to make all decisions regarding "procedural" matters, but the client retains the right to make ultimate decisions affecting the client's "essential" or "substantive" rights. This means that while you have the right to make the final decision regarding matters that do or potentially may affect the outcome of your case, the Firm can make unilateral "procedural" decisions to: accede to reasonable requests of opposing counsel that do not prejudice your rights; avoid tactics that the Firm views as offensive or unethical; be punctual in fulfilling the Firm's professional obligations; and treat all persons involved in the legal process with courtesy and consideration. As California attorneys, we abide by an oath as officers of the court to strive to conduct ourselves at all times with dignity, courtesy, and integrity. The Firm reserves the right to withdraw as your counsel if you ask us to conduct ourselves or the prosecution of your legal matter in any way contrary to these ethical obligations.

With these guidelines in view, by executing this Agreement you acknowledge that the Firm can and will make independent decisions regarding civility and professional demeanor and regarding procedural aspects of the representation.

August 23, 2021
Page 10 of 13

## TERMINATION

You may terminate this agreement at any time by written notice to the Firm. Your termination of the Firm's services will not affect your responsibility for payment of outstanding invoices for fees for services performed and costs incurred by the Firm before termination or in connection with an orderly transition of the matter in which the Firm has represented you pursuant to this agreement. If such termination occurs, the Firm will promptly return to you your papers and property. The Firm's own files pertaining to the representation will be retained. You may request access to the portion of the file which the Firm retains. All fees and costs accrued at the time of withdrawal will be immediately due and payable.

The Firm may terminate this agreement and withdraw from providing further services to you: if you fail to fulfill your obligations under this agreement, including your obligation to pay the Firm's fees and expenses as they become due; as permitted or required under any applicable standards of professional conduct; upon the Firm's reasonable notice to you; or if irreconcilable differences develop between the Firm and you which, in the Firm's sole discretion, would significantly impair the ability of the Firm to satisfactorily and effectively discharge its duties to you.

The Firm may withdraw from representing you with your consent or for good cause. Good cause includes, but is not limited to: breach of this retainer agreement; refusal to cooperate with the Firm or to follow the Firm's advice on a material matter; or any fact or circumstances that would render Attorneys' continuing representation unlawful or unethical. The Firm's obligations under this agreement are subject to Court orders, statutes, laws, rules, and regulations governing your legal rights and by execution of this agreement you authorize the Firm to take whatever action is necessary to comply with the requirements of such authorities.

## FIRM RELATIONSHIPS

The Firm is not required to disclose to you any personal matters relating to its attorneys, staff, or other employees that do not affect the Firm's representation of you. You shall respect the privacy and dignity of all persons associated with the Firm. Nevertheless, and while reserving all rights of privacy of its attorneys, staff, and other employees, the Firm discloses the following relationships:

1. Each of the Firm's attorneys, who have a combined practice of more than 75 years in this community and take an active role in community development, are personal friends with many of the attorneys in this community; and

2. Several of the Firm's attorneys have previous professional relationships with United States Bankruptcy Court Judges resulting from judicial clerkships, internships, or externships prior to employment with the Firm.

All of these relationships comply with the California Rules of Professional Conduct and the ethical rules governing attorneys. The Firm takes care to ensure that the personal relationships of its attorneys enhance efficiency and reduce costs for the Firm's clients and do not result in

August 23, 2021
Page 11 of 13

duplication of services. The Firm will inform you in writing if any of the Firm's relationships are believed to impact the Firm's representation of you.

### FILE STORAGE

In providing legal services to you, the Firm may generate, receive, or accumulate materials and documents. Upon your request and prior to the closing of our files for this representation, the Firm will forward to you all important, original documents that it has accumulated. After the Firm closes its file, all remaining documents or materials may be archived without further notice to you. After five to seven years, the Firm reserves the right to permanently dispose of any unclaimed materials.

The Firm strives to be paperless wherever possible, and therefore generally maintains only electronic records of client documents and pleadings. There are certain risks of maintaining only electronic records, including that the electronic files may be destroyed by computer mishap or accessed by unauthorized people ("hackers"). By execution of this agreement, you acknowledge and consent to the Firm maintaining only electronic records of documents and pleadings in connection with your case.

### CONSENT TO USE OF INFORMATION

Our future materials that, for marketing purposes, describe facets of our law practice and recite examples of matters we handle on behalf of clients may identify you as a client, may contain factual synopses of your matters, and may indicate generally the results achieved. By execution of this agreement you agree that if those materials avoid disclosing your confidences and secrets as defined by applicable ethical rules, the Firm may publish such materials.

### BINDING EFFECT

This is a binding legal contract. The Firm has, by this contract, agreed to expend reasonable efforts and exercise reasonable judgment on your behalf for legal representation, and may have to forego other engagements with other actual or potential clients in order to spend time on your matter and give it the attention it deserves. In consideration of the Firm's opportunity cost, you have agreed to provide reasonable cooperation and assistance to the Firm and have agreed that the Firm shall be entitled to payment pursuant to this agreement, regardless of the outcome of the work and regardless of whether you are or are not satisfied with the results obtained by the Firm. This agreement is made and some or all services will be performed in the State of California and California law will govern our relationship.

### SEVERABILITY

If any of these provisions is stricken in an arbitration or court proceeding, the remainder shall constitute the agreement between you and the Firm.

August 23, 2021
Page 12 of 13

**AUTHORITY AND COUNTERPARTS**

Each person counter-signing this agreement warrants that he or she has authority to do so. This agreement may be executed in counterparts.

**REVIEW**

By execution of this agreement, you acknowledge that the Firm has discussed the terms of this agreement with you and that the Firm has given you the opportunity to have this agreement reviewed by an independent attorney or other person of your choosing prior to your execution of the agreement.

Thank you again for retaining Marshack Hays LLP to act as your legal counsel. We appreciate the confidence that you have placed in the Firm and we look forward to working with you.

Sincerely,

DAVID A. WOOD

**ACKNOWLEDGED AND AGREED:**

I, BETTY ZHENG, on behalf of JINZHENG GROUP (USA) LLC, as its Manager, and Power of Attorney for Jianqing Yang, Owner and Principal of Jinzheng Group (USA) LLC, have agreed to the terms for the provision of legal services by Marshack Hays LLP as set forth in this retainer agreement, and I agree to such terms and conditions as of August 23, 2021.

JINZHENG GROUP (USA) LLC

Dated: 8-23-2021       By: _____
BETTY ZHENG
Its: Manager and Power of Attorney for Jianqing Yang, Owner and Principal of Jinzheng Group (USA) LLC

**Rule 1.5: Fees**

*Client-Lawyer Relationship*
*Rule 1.5 Fees*

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

   (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

   (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

   (3) the fee customarily charged in the locality for similar legal services;

   (4) the amount involved and the results obtained;

   (5) the time limitations imposed by the client or by the circumstances;

   (6) the nature and length of the professional relationship with the client;

   (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

   (8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

   (1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or

   (2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

   (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

   (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

   (3) the total fee is reasonable.