2/9/22, 11:… Yahoo Mail - Re: In re Jinzheng Group (USA) LLC.

Case 2:21-bk-16674-ER    Doc 103-5    Filed 02/09/22    Entered 02/09/22 23:31:22    Desc
Index 5    Page 1 of 4

**Re: In re Jinzheng Group (USA) LLC.**

From:   Donna Bullock Carrera (donnabullockcarrera@yahoo.com)

To:     schang@slclawoffice.com

Date:   Friday, December 10, 2021, 03:38 PM PST

Mr. Chang:

The only original documents in my possession is the corporate kit. I do not require the client to provide me original documents as a general rule, and usually only maintain electronic and some paper copies as a file. I can have the corporate kit book available for pick up on Monday, December 13, 2021 after 1:30 p.m., as I have a morning court appearance where I must appear in person.

Prior counsel was instructed to wire transfer the balance of their retainer after they deducted their fees to my trust account as of 8/23rd, which was the last contact between prior counsel and the client. The client's representatives were fully advised and approved this action. The Petition was filed on 8/24th, the same day as the foreclosure sale. I am in process of compiling billing statements.

Among your questions, you make an affirmatively false statement for which you have no factual support. You claim I 'gave legal advice' to the CRO Mike Carlin. If you are referring to your current dispute with him, that statement is not correct, and you have no grounds to make such a statement. You terminated my representation of the Debtor. Prior to my termination as counsel, Mr. Carlin was an employee of the Debtor and the Debtor was my client. We had regular meetings concerning performance of duties in this bankruptcy case. The work is reflected in the timely filing of all requisite documents with the Court and the US Trustee until you terminated my representation of the Debtor.

For reasons not supportable by any facts, you are apparently threatening legal action by the Debtor against me, which among other things would waive the attorney/client privilege. All decisions and strategy in this case were made for the express purpose of benefitting the client and successfully reorganizing, which decisions were always fully discussed and approved by the Debtor and its company officers. I no longer represent Jinzheng Group due to your actions, and it is not a current, but instead a former client at this point. I am obligated to maintain confidences and secrets, unless there is a dispute raised against me by the client. If you proceed with an examination, you will violate your own client's privilege, which would not be beneficial to the debtor or to Mr. Yang. I understand that you have threatened 2004 examinations of every other unsecured creditors, but examination of former counsel is unwise.

I do not understand your focus on Mr. Carlin. He graciously and diligently performed work on this case for a fee of $50 an hour, when every other service provider seeking the CRO position requested retainers between $15,000 and $150,000, accompanied by demands for authority to dispose of company assets. Mr. Carlin did not demand and did not receive any such authority, and was still willing to take the position. Your own paralegals bill out at $125 an hour. His services are far more valuable, and his fees are significantly lower. Mr. Carlin was invaluable in preparing the MOR's - for which the least expensive quote I received for someone to just prepare the MOR's was a minimum estimate of $2,500 monthly increased by hourly rates with no other services offered. His work was impeccable and his fees were extremely reasonable. He never

sought to take advantage of the Debtor, or take any action adverse to reorganization of the project.  For your information, I am a tenant on the same floor as the former Project Manager of the Oro Vista Estates project, although I have other office locations and do not use this address exclusively.  I worked remotely throughout the pandemic, and continue to do so.  When the Debtor had no one to file the emergency petition after hours and the night before the 8/24th foreclosure sale, I happened to be visiting that location and so was the closest in proximity, had an electronic filing account with Pacer, significant real estate and bankruptcy experience, and I was the only option to save the project and the property from foreclosure, which I did.  I was the sole reason no foreclosure sale took place.  There was no other option for the Debtor.  In fact, although I had formally informed the foreclosure trustee and the foreclosing creditor of the filing of the bankruptcy, by email and telephone before the auction sale date, Rommy Shy was physically present at the foreclosure sale apparently ready to proceed.  I have a photograph of him at the sale sitting in his vehicle.

*Sincerely,*
*Donna Bullock Carrera*
 Attorney at Law
800 W. 6th St., Ste. 1250
Los Angeles, CA 90017
(562) 726-0778
facsimile:  (562) 683-0319

CONFIDENTIALITY NOTICE: This message and any attached documents may contain confidential information.  The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or an employee or agent responsible for the delivery of this message to the intended recipient, the reader is hereby notified that any dissemination, distribution or copying of this message or of any attached documents, or the taking of any action or omission to take any action in reliance on the contents of this message or of any attached documents, is strictly prohibited. If you have received this communication in error, please delete the message immediately.

On Thursday, December 9, 2021, 11:00:03 AM PST, Steven Chang <schang@slclawoffice.com> wrote:

Donna,

Your response fails to address the request for the files and original documents.  We are aware that you provided us a link to some documents, but you have yet to deliver the corporate kit and any other original documents in your possession.  We expect these documents and repeated demands have been made for these documents.

It appears you have not read my letter carefully. We are aware of the Pacer information, but my question to you is when did you deposit the retainer in your account. Also a copy of your retainer agreement is again requested with any and all billing statements.

Interestingly, rather than focus on the questions asked of you, you appear to focus more on my career. So you know, I was a certified bankruptcy specialist and I am a litigator. As a litigator, my office protects the interest of our client and investigates any appearance or possible impropriety. As such, we have asked you direct questions like why do you share the same address as Betula Lenta, why you did certain things in the case and who you retained, why you procured Mr. Carlin as the CRO and then offering him legal advice when you owe a fiduciary duty to Jinzheng.

So please let me know when I should expect the client file and the original documents I've requested as well as the information I've requested from you. If you cannot provide a reasonable response by close of business Friday, you will leave the client no choice but to conduct an examination of you and your office under FRBP 2004.

Regards,
Steven

On Wed, Dec 8, 2021 at 6:44 PM Donna Bullock Carrera <donnabullockcarrera@yahoo.com> wrote:
> Mr Chang:
>
> The source of my $45,000 retainer was disclosed in the schedules as being paid from the balance of Marshack Hayes's $65,000 retainer. That retainer was paid in cash to Marshak Hayes prepetition by Betty Zheng as manager, and authorized agent at the debtor; with a personal power of attorney for Jianqing Yang. Marshack Hayes deducted legal fees representing 1/2 days services on August 23 2021, leaving the balance of $45,000. The source of my retainer was clearly listed as being received directly from Marshack Hayes. There has been no failure to disclose this fact. You have access to Pacer to confirm that fact.
>
> I have provided you with The file on hand and am compiling PDFs of remaining documents.
>
> I see no progress towards reorganization in your current strategy of attacking myself, debtors employees and the other creditors who contributed to this development pre and post petition. I also note that you are a civil litigator and not a certified bankruptcy specialist. ==I myself am a civil litigator, with about 4 years of practice devoted specifically to bankruptcy law,== but I'm still likewise not a certified bankruptcy specialist. I was surprised to learn that the one certified bankruptcy specialist in your firm was of counsel to the current attorneys for the foreclosing creditor Bob's LLC, the resolution of which would lead to reorganization. This is concerning.
>
> I request that you not needlessly threaten me about this case. I'm recovering from surgery and doing the best I can.
>
> Dictated but not read.
>
> Sent from Yahoo Mail on Android
>
>> On Wed, Dec 8, 2021 at 6:18 PM, schang@slclawoffice.com
>> <schang@slclawoffice.com> wrote:

Dear Donna,

It has come to our attention that you had Client instructed Marshack Hays LLP. to deposit the client's retainer refund directly to your attorney-client trust account post-petition. The ramification and the legal impropriety of this request and action is ethically improper and illegal under the both attorney's professional conduct and bankruptcy law. You took asset of the bankruptcy estate post-petition and deposited where you should never have done so all the while never properly advising the client of your action. Moreover, this information was never disclosed anywhere to the Court, OUST or to the creditors.

You are instructed to immediately provide a full accounting of all the fees your firm has been paid from Jinzheng, an itemized billing statement for all the services you have rendered, and the issuance of the approximately $45,000.00 wrongly taken from the bankruptcy estate which was deposited into your attorney-client trust account.

Moreover, we are still waiting on access to the entire client case file and the original to be returned. Please advise as to the status and when client can retrieve its entire client file.

Please return the estate and client's assets by **Friday 12/10/2021 Noon** otherwise any and all legal remedies will be undertaken. In addition, please provide the name of your malpractice carrier. We look forward to your immediate response and action to rectify the harm caused to the estate and client.



Steven P. Chang, Attorney at Law

Managing Partner
1063 E. Las Tunas Dr.

San Gabriel, California 91776

o. 626/281-1232 | f. 626/281-2919

Serving California since 1996
Additional Offices in Riverside, Santa Ana and Santa Rosa

This message is being sent by or on behalf of a lawyer and legally privileged. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately and delete all copies of the message. IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. CAUTION: Unauthorized interception of this transmittal is a federal and state crime.