Gene H. Shioda – SBN 186780
ghs@slclawoffice.com
Christopher J. Langley – SBN 258851
chris@slclawoffce.com
Steven P. Chang – SBN 221783
schang@slclawoffce.com
**SHIODA, LANGLEY & CHANG LLP**
1063 E. Las Tunas Dr.
San Gabriel, CA 91776
Tel: (626)281-1232
Fax: (626)281-2919

Counsel for Jinzheng Group (USA) LLC
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:21-bk-16674-ER<br>Chapter 11 |
| JINZHENG GROUP (USA) LLC | |
| Debtor and Debtor in Possession. | **OBJECTION TO PROOF OF CLAIM NO. 20 OF PENNINGTON CONSTRUCTION ADVISORS, INC; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHRISTOPHER J. LANGLEY IN SUPPORT THEREOF**<br><br>**HEARING DATE:**<br><br>Date:    March 22, 2022<br>Time:    10:00am<br>Location: Ctrm 1568<br>          255 E. Temple St.<br>          Los Angeles, CA 90012 |

**TO THE HONORABLE ERNEST M. ROBLES, U.S. BANKRUPTCY JUDGE,**

**OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

JINZHENG GROUP (USA) LLC ("Debtor"), the chapter 11 debtor and debtor-in-possession respectfully submits the motion ("Motion") objection to Claim 20 of Pennington Construction Advisors, Inc.

1

The Motion is based on this Notice, the Motion and its accompanying Memorandum of Points and Authorities, the Declaration of Christopher J. Langley, the pleadings and files in the Debtor's bankruptcy cases, and upon such further oral and documentary evidence as may be presented to the Court. The Motion will be heard on March 22, 2022, at 10:00 a.m., in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, located at 255 E. Temple St. Los Angeles, CA 90012 in Courtroom 1568.

**NOTICE TO CLAIMANT IS HEREBY GIVEN**: the Debtor has filed an objection to your Proof of Claim ("Claim") identified as follows:

| Claim No. | Date Filed | Claimant | Alleged Claim Amount | Disputed Amount | Claim To Be Allowed |
|---|---|---|---|---|---|
| 20 | 2/2/2022 | Pennington Construction Advisors, Inc. | $75,000.00 | $75,000.00 | $0.00 |

The Motion seeks to alter your rights by reducing your Proof of Claim based on the grounds set forth in the Motion detailed below.

PLEASE TAKE FURTHER NOTICE that any response to the objections must be in the form as required by Rule 9013-1(f) of the Local Bankruptcy Rules ("LBR") and filed with the Clerk of the above-entitled Court no later than fourteen (14) days prior to the hearing date set forth above, and a copy served on Christopher J. Langley at the address indicated above. A copy of any response must also be served on the Office of the United States Trustee, 915 Wilshire Blvd. Ste 1850, Los Angeles, CA 90017. Failure to timely respond may be deemed as acceptance of the proposed objections and the Court may grant the relief requested in the Objection Motion without further notice or hearing. *See* LBR 3007-1(b) and 9013-1(h).

Dated:  February 16, 2022          SHIODA, LANGLEY & CHANG LLP
                                   /s/Christopher J. Langley
                                   By: Christopher J. Langley
                                   Attorneys for Debtor and Debtor in Possession

2

1

2   **1.      Summary of Argument**

3          The basis for objection to the Claim is both simple and dispositive. Specifically, the Claim

4   arises from an agreement between Claimant and a third party, Betula Lenta Inc. ("Betula") The

5   Debtor is not a party to the contract. Betula allegedly hired Pennington for

6   "Design/Preconstruction process and Construction Approach Planning."  Claimant was hired by

7   Betula to support Betula in fulfilling its obligations to the Debtor. Betula was either already paid

8   by the Debtor for those services or is making a claim for payment on the same. Allowing this

9   Claim would require double payment from the Debtor.

10         Therefore, and for the reasons stated below, this Court must sustain this Objection and

11  disallow the claim in its entirely.

12  **2.      Statement of Facts**

13      **A.      Factual Background**

14         Debtor is a single member LLC that is wholly owned by Mr. Jiaqing Yang. Between

15  August 2016 and July 2017, the Debtor acquired approximately 32 contiguous acres in Los

16  Angeles that it intended to develop (the "Los Angeles Properties").  All funds used to obtain the

17  Los Angeles Properties were contributed by Mr. Yang as capital contributions into the Debtor.

18  The Los Angeles Properties have a collectively value of $26,316,600.

19         The Debtor contracted with Betula, a real estate consultancy company, to assist it with the

20  development of the Los Angeles Properties.  In order to fund the development of the Los Angeles

21  Properties, Debtor borrowed $7,000,000 in September of 2018 which was cross-collateralized by a

22  first priority deed of trust held by Royal Equity Lending. Only $530,833.59 of the $7,000,000.00

23  loan was paid to the Debtor directly, the majority of the funds were dispersed directly to Betula

24  and its related entities.

25         Despite being paid over $6,971,726.00 in development fees; the status of the entitlement

26  progress did not change or improve during the 18-month loan term with Royal Equity Lending.

27  Because of that Debtor was unable to refinance the short-term loan with Royal Equity Lending.

28  Debtor incurred roughly $900,000 in loan extension fees, per the proof of claim filed by Royal

Equity Lending. The alleged claim totaled $9,353,009.00 at the time of filing. See Langley

Declaration.

### B.    Debtor's Chapter 11 Bankruptcy

On August 24, 2021 ("Petition Date"), the Debtor filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District

of California.

On December 9, 2021, Debtor filed a Notice of Bar Date for Filing Proofs of Claim. The

deadline for filing claims in this case was February 4, 2022. To date, the 21 proofs of claims have

been filed against the Debtor's bankruptcy estate:

| Claim | Creditor | Secured | Priority | Unsecured | Total |
|---|---|---|---|---|---|
| 1 | LA County Tax Collector | $163,520.10 | -- | -- | $163,520.10 |
| 2 | Royalty Equity Lending LLC | $9,353,009.29 | -- | -- | $9,353,009.29 |
| 3 | IRS | -- | $28,700.70 | -- | $28,700.70 |
| 4 | Michael and Shari Dorff | $50,000.00 | -- | -- | $50,000.00 |
| 5 | Investment Management Company | $350,000.00 | -- | -- | $350,000.00 |
| 6 | Testa Capital Group | -- | $13,650.00 | $672,900.00 | $686,550.00 |
| 7 | Home Loans Unlimited Inc. | -- | $13,650.00 | $672,900.00 | $686,550.00 |
| 8 | Corona Capital Group, LLC | $540,000.00 | -- | -- | $540,000.00 |
| 9 | Michael Carlin | -- | $15,650.00 | -- | $15,650.00 |
| 10 | Michael Carlin | -- | $15,650.00 | -- | $15,650.00 |
| 11 | UltraSystems Environmental | -- | -- | $37,106.50 | $37,106.50 |
| 12 | Land Design Consultants, Inc. | -- | -- | $48,145.00 | $48,145.00 |
| 13 | Craig Fry & Associates, LLC | -- | -- | $240,700.47 | $240,700.47 |
| 14 | Breezeblock Capital LLC | $124,653.99 | -- | -- | $124,653.99 |
| 15 | Betty Zheng | -- | -- | $95,000.00 | $95,000.00 |
| 16 | Shawn Charles Sourgose | -- | 13,650.00 | $672,900.00 | $686,550.00 |
| 17 | The Phalanx Group | -- | -- | $158,845.00 | $158,845.00 |
| 18 | Betula Lenta Inc. | -- | -- | $1,643,977.00 | $1,643,977.00 |
| 19 | Donna Bullock | $45,000 | -- | $97,803.00 | $142,803.00 |
| 20 | Pennington Construction Advisors | -- | -- | $75,000.00 | $75,000.00 |
| 21 | DNQ LLC | $420,000.00 | -- | -- | $420,000.00 |
| | | $11,046,183.38 | $110,950.70 | $4,415,276.97 | $15,562,411.05 |

There four distinct types of claims in the case; 1) Secured claims on the Debtor's real

estate assets (#1,#2,#4,#5,#8,#14,#21). 2) Alleged administrative claims by pre-petition

bankruptcy counsel, and an appointed restructuring officer (#9, #10, #19). 3) Claims for services

provided to third parties on which the Debtor should not be liable (#11, #12, #13, #20). 4) Claims

for services provide to Debtor directly (#7,#8,#15,#16,#17,#18).

On January 18, 2022, the Court approved the employment of Debtor's Counsel with the

effective date of November 21, 2021.

On January 18, 2022, the Court extended the exclusivity period for Debtor to file a plan to

April 21, 2020, as well as extending the exclusivity deadline to solicit acceptances of its Plan to

May 20, 2022.

On January 25, 2022, The United States Trustee filed a notice of appointment of Creditors'

Committee naming Betula Lenta, Inc, Pennington Construction Advisors, Inc and The Phalanx

Group Inc. as committee members.

Debtor is currently in the process of drafting the disclosure statement and proposed plan of

reorganization.

## C.    Proof of Claim

On February 2, 2022, Pennington Construction Advisors, Inc. ("Claimant") filed proof of

claim no. 20 ("Claim"). A true and correct copy of the Claim is attached to the Declaration of

Christopher J. Langley ("Langley Declaration") as **Exhibit "A".**  The Claim asserts an unsecured

claim in the amount of $75,000.00 based on a contract entered with Betula. Claimant alleges

claims for services performed and not paid. In the claim from when asked about other names the

creditor used with the debtor, Claimant stated "Several exist. My company entered contract with

Betula Lenta, Inc."

The Claim attaches a signed consulting services proposal to Betula Lenta, Inc. dated

September 25, 2019. The parties to the signed contract are the Claimant and Betula Lenta, Inc. The

contract is witnessed by Dona Bullock, the Debtor's pre-petition counsel. The contract is for a

fixed $5,000 a month for 20 hours of work. The claim also attaches multiple invoices. The

invoices do not give an itemization of the time and provide descriptions for the services performed

that seem to be duplicative. Based on a review of the claim, it appears that the Debtor has already

paid Betula Lenta, Inc for the services performed by Claimant.

Claimant fails to provide any documentation to support a claim against the Debtor.

Prior to the filing the Claim, Claimant provided a copy of the Claim to Debtor's counsel. On January 31, 2022, Christopher Langley requested that Mr. Pennington provide clarification on his claim, since the only evidence of the indebtedness is a contract with Betula. Counsel tried to ascertain if Claimant was alleging an alter ego claim, but never received a response.

If Debtor is forced to pay Claimant for a contract made by Betula, and then pay Betula for the same fees then Debtor will be paying twice.

Based on the above, Claimant has failed to demonstrate that he is a creditor of the Debtor with a right to payment, that he has a right to an "equitable remedy" against Debtor, or that Debtor is liable to Claimant. As such, the objection to the Claim should be sustained.

3.    **Memorandum of Points and Authorities**

a.    **Claim No. 20 must be disallowed because Claimant is not a creditor of the Debtor.**

Under the Bankruptcy Code, to assert a "claim" and be treated as a creditor, a claimant must have a "right to payment" or a right to an "equitable remedy." 11 U.S.C. §101(5)(A)(B). Further, under Section 502(b)(1) of the Bankruptcy Code, a claim may not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. 502(b)(1).

Here, Claimant asserts to have an unsecured claim of $75,000 arising from a contract with a third party.

Based on the Claim as filed and exhibit attached thereto, because Claimant neither asserts nor provides any evidence that shows that Claimant is owed anything by the Debtor, or that the Debtor is otherwise liable to it, Claimant is not a creditor of the Debtor. *See e.g., In re Jeter,* 2014 Bankr. LEXIS 969, at *38 (Bankr. E.D. Tenn. Mar. 13, 2014 ) (stating party was creditor of debtor where it held contingent right to payment under the agreement at issue); *In re B-Bar Tavern Inc.,* 506 B.R. 879, 914 (Bankr. D. Mont. 2013) (finding, notwithstanding the broad definitions under 11 U.S.C. 101, that party was not creditor of debtor with a right to payment of debt alleged in its proof of claim where no written evidence existed in the record of a note or other promise by debtor

1  to repay for the alleged loans); *In re Player Wire Wheels, Ltd.*, 428 B.R. 767, 769-770 (Bankr.

2  N.D. Ohio 2010) (finding ex-wife of deceased debtor's principal was not a creditor of debtor

3  where debtor did not owe her any money). Claimant fails to provide any documents on its

4  purported against the Debtor, or any other evidence that would support his assertion that he is a

5  creditor of the Debtor, or that he has a right to an equitable remedy against Debtor.

6      Based on the above, Claimant has failed to provide evidence that he is a creditor of Debtor.

7  As such, the Court should sustain this Objection and disallow the Claim in its entirely.

8          **b.    Claimant has not met his burden of proof.**

9      A proof of claim executed and filed in accordance with Federal Rule of Bankruptcy

10  Procedure 3001 constitutes *prima facie* evidence of the validity and amount of the claim. FRBP

11  3001(f). The proof of claim is deemed allowed "unless a party in interest" objects. 11 U.S.C.

12  §502(a). "[I]f such objection to a claim is made, the court, after notice and a hearing, shall

13  determine the amount of such claim in lawful currency of the United States as of the date of the

14  filing of the petition, and shall allow such claim in such amount[.]" 11 U.S.C. §502(b).

15      It is an objecting party's burden to submit sufficient evidence to overcome the

16  presumption of the validity of the proof of claim executed and filed in accordance with FRBP

17  3001. *See* LBR 3007-1(c)(1); *In re Lundell*, 223 F.3d 1035, 1039 (9th Cir. 2000). The objecting

18  party is not required to disprove the claim. *In re Kahn*, 114 B.R. 40 (Bankr. S.D.N.Y. 1990). The

19  objecting party only has the initial burden of producing facts sufficient to demonstrate that an

20  actual dispute regarding the validity or amount of the claim exists.  *In re Hydorn*, 94 B.R. 608

21  (Bankr. W.D. Mo. 1988). If the objecting party provides sufficient evidence to negate one or

22  more of the sworn facts in the proof of claim, then the burden reverts back to the claimant to

23  prove the validity by a preponderance of the evidence. *In re Lundell*, 233 F.3d at 1039. The

24  ultimate burden of persuasion remains at all times with the claimant. *Id.*; *In re Holms*, 931 F.2d

25  620 (9th Cir. 1991).

26      In the present case, Debtor has raised issues sufficient to demonstrate an actual dispute

27  regarding the validity of the claim. As stated above, the Claim of $75,000 is on account for an

28  obligation of third party, not Debtor.  Based on the Claim as filed, and the supporting document

1   attached thereto, Claimant has failed to meet his burden of proof that he is a creditor of the

2   Debtor, that Debtor owes him any money, or that Debtor is otherwise liable to Claimant. Because

3   Claimant does not have a "right to payment" or an "equitable remedy," he cannot assert a claim

4   under the Bankruptcy Code. Claimant therefore must establish by a preponderance of the

5   evidence that the Claim should be allowed, and based upon the substance of this Objection, the

6   burden of persuasion squarely rests with him.

7   Based on the foregoing, the Objection to the Claim should be sustained and the claim

8   disallowed in its entirety as set forth herein.

9   **c.      The Objection should be sustained absent a response.**

10  Rule 3007-1(b)(6) of this Court's Local Bankruptcy Rules provides that in the event of an

11  objection to claim, "If the claimant does not timely file and serve a response, the court may

12  sustain the objection without a hearing. (A) The objector must file a declaration attesting that no

13  response was timely filed and served upon the objector. The declaration must identify the docket

14  number and filing date of the objection to claim, notice, and proof of service of the notice and

15  objection to claim and be served on the claimant. (B) The objector must also lodge a proposed

16  order prepared and served in accordance with LBR 9021-1 and the Court Manual. (C) The

17  objecting party must serve the entered order on the claimant and counsel, if any."

18  Absent a response by Claimant, this Objection should be sustained without hearing and

19  the Claim should be disallowed in its entirety.

20  **4.      Conclusion**

21  Based on the foregoing, the Objection to the Claim must be sustained, disallowing the

22  claim in its entirety without the right to amend and for such other and further relief as the Court

23  may deem just and proper.

24  Dated:  February 16, 2022

Respectfully Submitted,

25  /s/Christopher J. Langley
By: Christopher J. Langley

26  Shioda, Langley & Chang LLP
Attorneys for Debtor and Debtor in Possession

27

28

## DECLARATION OF CHRISTOPHER J. LANGLEY

I, Christopher J. Langley, am the attorney duly authorized and admitted to practice law in this jurisdiction. I represent the Debtor and Debtor-in-possession Jinzhang Group (USA) LLC. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I make this declaration in support of OBJECTION TO PROOF OF CLAIM NO. 20 OF PENNINGTON CONSTRUCTION ADVISORS, INC; which this declaration is attached to.

1.    A true and correct copy of Official Claim #20 filed by Pennington Construction Advisors, Inc attached as Exhibit A. It was served on me through the Court's electronic noticing system and is a true and correct copy of the claim on file with the Court

2.    On August 24, 2021 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.

3.    On December 9, 2021, Debtor filed a Notice of Bar Date for Filing Proofs of Claim. The deadline for filing claims in this case was February 4, 2022. To date, the 21 proofs of claims have been filed against the Debtor's bankruptcy estate:

| Claim | Creditor | Secured | Priority | Unsecured | Total |
|---|---|---|---|---|---|
| 1 | LA County Tax Collector | $163,520.10 | -- | -- | $163,520.10 |
| 2 | Royalty Equity Lending LLC | $9,353,009.29 | -- | -- | $9,353,009.29 |
| 3 | IRS | -- | $28,700.70 | -- | $28,700.70 |
| 4 | Michael and Shari Dorff | $50,000.00 | -- | -- | $50,000.00 |
| 5 | Investment Management Company | $350,000.00 | -- | -- | $350,000.00 |
| 6 | Testa Capital Group | -- | $13,650.00 | $672,900.00 | $686,550.00 |
| 7 | Home Loans Unlimited Inc. | -- | $13,650.00 | $672,900.00 | $686,550.00 |
| 8 | Corona Capital Group, LLC | $540,000.00 | -- | -- | $540,000.00 |
| 9 | Michael Carlin | -- | $15,650.00 | -- | $15,650.00 |
| 10 | Michael Carlin | -- | $15,650.00 | -- | $15,650.00 |
| 11 | UltraSystems Environmental | -- | -- | $37,106.50 | $37,106.50 |
| 12 | Land Design Consultants, Inc. | -- | -- | $48,145.00 | $48,145.00 |
| 13 | Craig Fry & Associates, LLC | -- | -- | $240,700.47 | $240,700.47 |
| 14 | Breezeblock Capital LLC | $124,653.99 | -- | -- | $124,653.99 |
| 15 | Betty Zheng | -- | -- | $95,000.00 | $95,000.00 |
| 16 | Shawn Charles Sourgose | -- | 13,650.00 | $672,900.00 | $686,550.00 |
| 17 | The Phalanx Group | -- | -- | $158,845.00 | $158,845.00 |

9

| 18 | Betula Lenta Inc. | -- | -- | $1,643,977.00 | $1,643,977.00 |
|----|------------------|-----|-----|--------------|--------------|
| 19 | Donna Bullock | $45,000 | -- | $97,803.00 | $142,803.00 |
| 20 | Pennington Construction Advisors | -- | -- | $75,000.00 | $75,000.00 |
| 21 | DNQ LLC | $420,000.00 | -- | -- | $420,000.00 |
| | | $11,046,183.38 | $110,950.70 | $4,415,276.97 | $15,562,411.05 |

4.      There four distinct types of claims in the case; 1) Secured claims on the Debtor's real estate assets (#1,#2,#4,#5,#8,#14,#21). 2) Alleged administrative claims by pre-petition bankruptcy counsel, and an appointed restructuring officer (#9, #10, #19). 3) Claims for services provided to third parties on which the Debtor should not be liable (#11, #12, #13, #20). 4) Claims for services provide to Debtor directly (#7,#8,#15,#16,#17,#18).

5.      On January 18, 2022, the Court approved the employment of Debtor's Counsel with the effective date of November 21, 2021.

6.      On January 18, 2022, the Court extended the exclusivity period for Debtor to file a plan to April 21, 2020, as well as extending the exclusivity deadline to solicit acceptances of its Plan to May 20, 2022.

7.      On January 25, 2022, The United States Trustee filed a notice of appointment of Creditors' Committee naming Betula Lenta, Inc, Pennington Construction Advisors, Inc and The Phalanx Group Inc. as committee members.

8.      Debtor is currently in the process of drafting the disclosure statement and proposed plan of reorganization.

9.      While representing the Debtor, I have reviewed all the claims filed in this case and wells as multiple document production requests. I have reviewed the multiple contracts with Betula, which are attached to its official proof of claim. I am unable to confirm if the Debtor has already paid Betula for the services of Claimant, since Betula has not provided with sufficient evidence to make that determination. In reply to my multiple requests for an accounting from Betula, all I have been sent to date is an email from David Park, one of the principals of Betula, through his counsel with a breakdown as follows:

**2929 Amethyst**

| | |
|---|---|
| Original Contract Amount | 11,754,928 |
| Change Order Amount | 1,500,000 |
| Total Amount | 13,254,928 |

| Amount Received from Jinzheng group (As of 2/3/2022) | 6,971,726 |
|---|---|
| % work done | 65% |
| The Calculated amount by work done | 8,615,703.20 |
| Outstanding amount | 1,643,977 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: February 2, 2022                    By: /s/Christopher J. Langley
                                               Christopher Langley

EXHIBIT A

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Jinzheng Group (USA) LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:21-16674-ER |



**FILED**

FEB 02 2022

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                              Deputy Clerk

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Pennington Construction Advisors, Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  Serveral exist. my company entered contract with Betula Lenta, Inc

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Todd C. Pennington
Name

79 Bell Pasture Road
Number        Street

Ladera Ranch          CA          92694
City                    State        ZIP Code

Contact phone  949-637-6210

Contact email  todd@penncoinc.com

**Where should payments to the creditor be sent? (if different)**

Name

Number        Street

City                    State        ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
            MM / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

Official Form 410                              Proof of Claim                              page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7. **How much is the claim?** $_____75,000.00. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Services performed per contract and not paid</u>

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

                                                      **Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.  $_____

    \* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/28/2022
               MM / DD / YYYY

Todd C. Pennington
Signature

**Print the name of the person who is completing and signing this claim:**

Name  Todd      Charles      Pennington
      First name      Middle name      Last name

Title  CEO

Company  Pennington
      Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  79 Bell Pasture Road
      Number    Street
      Ladera Ranch      ca      92694
      City      State    ZIP Code

Contact phone  949-637-6210      Email Todd@penncoinc.com



**PENNINGTON**
CONSTRUCTION ADVISORS, INC.

January 29, 2022

United States Bankruptcy Court

Edward R. Roybal Courthouse

255 E. Temple Street, Room 940

Los Angeles, CA 90012-1576

Re Case # 2:21-16674-ER, Jinzheng Group (USA), LLC

Subject: Pennington Construction Advisors, Inc Proof of Claim Submission

Dear Sirs,

Please find attached my proof of claim submission for the above reference case. The last four digits of my Social Security number is 0647 and the last four digits of my tax identification number is 0223. In the event of settlement please contact me for bank wiring information to ease in this process.

I am also I have also been selected to be a member of the creditor committee and have started that process with the other creditors assigned to the committee as assigned by Hatty Yip of the US Bankruptcy Court.

Please don't hesitate to give me a call should there be any questions alright can be of any further assistance so terribly

Sincerely

Todd C Pennington

CEO

Pennington Construction Advisors Inc.



# PENNINGTON
## CONSTRUCTION ADVISORS, LLC

September 25, 2019

David Park, Managing Principal

Betula Lenta, Inc.

800 West 6th Street, Suite 1250

Los Angeles, Ca 91170

## RE: 2929 Amethyst project – Preconstruction/Construction Management Scope of Services Proposal

Dear David,

On Behalf of Pennington Consultant Advisors, Inc., (Pennco), I am pleased to present to you this Consulting Services Proposal for your review and approval. The purpose of these services is to support you and your team in leadership, planning and delivery of this project. I have outlined below the basic steps of the project which has provided the basis for my understanding of these services and this proposal. In order to develop a clear and methodical process, I would like to propose the following steps;

- **Step 1- Design/Preconstruction process and Construction Approach Planning** – Consultant to work with Company in in the oversight of these scopes of work in preparation for permitting or design permitting financing and ultimately construction. Company will oversee consultant oversee break construction support from do you see a *trade contractors* 2 monitor changes initiating from design and entitlement let's take

1 | P a g e

current with market it needs. Upon land entitlement plan GC/trade bids, GC selection approach, overall budget qualifications, Construction schedule, VE ideas, GMP agreement Plan and CM approach for consultant during project construction. During this phase attend periodic meetings with the team to support needs and progress. It is intended that only Step 1 partial services are included in initial release defined herein.

- **Step 2 Construction Monitoring and Support –** During above process a plan would be develop of how and when this stage will be managed and delivered. The Consultant will develop an onsite CM team to support Company is Such oversight per draft scope defined herein. All Such Step services will be developed yet are not included herein.
- **Step 3- Close-out and claim Support** – After above steps or portions thereof reach initial TCO, further support will be offered to effectively turnover this asset and close out all above services. All Such Step services will be developed yet are not included herein.

This proposal includes step 1 only. It is a getting started approach to support getting the job started and plan forward. Due to the unclear total needs at this time, it is not practical to develop an overall fixed price, so the Scope of work pricing and schedule defined herein has been established on a monthly Cost basis per rates defined herein and assuming 50% of time in order to meet needs of the Company and support the overall project and team success.

After execution of this agreement and as part of the first step, I would like to set up a meeting with you to review the overall "plan", review information available and establish timelines and priority goals for this work.  If agreed, I would approach be prepared to commence work immediately. If you should have any questions or ideas to further discuss, please don't hesitate to give me a call @ 949-637-6210. Thank you for your consideration!

Sincerely,

Todd C. Pennington, CEO

Pennington Construction Advisors, Inc.

949-637-6210



## PENNINGTON
## CONSTRUCTION ADVISORS, LLC

### Consulting Service Proposal

## Project- 2929 Amethyst Site infrastructure Project

## Description- Site infrastructure, including grading, site retaining walls, utilities, roads, curbs and walks, landscape and fencing among other site amenities.

## Location- Los Angeles, CA

## Role Overview- Overall Project Consulting Services

## Preliminary Schedule (not validated)

- Step 1- September 23, 2019- Open Date (Monthly retainer services)
- Step 2- Pending, to be developed during above phase
- Step 3- Pending, to be developed during above phase

## Step 1- Design/Preconstruction & GC selection process and Construction Approach Planning

## Scope of Work;

The Step 1 scope of work is contemplated to be inclusive of the below scope of work but is meant to be fluid to react to GC bids coming in near budget and enabling award. However, some

1. Review plans, specs, and related AEC reports developed for project. Review needs for ongoing weekly Design coordination and review meetings.
2. Confirm status of city permit and related other approvals.
3. Attend Meetings by phone or in person. (Assume 1/mo)
4. Conduct weekly calls with bidders to verify status of submission and then review completeness and contents of bid once submitted.
5. Develop spreadsheet of bid comparisons
6. Merge together all VE items and review with company and A/E team for approvals, and design comments, etc.
7. Verify Company point(s) of contact and best communication channels, frequencies and means.
8. Review release of DB and long lead trade bids to catch up to rest of design.
9. Discuss GC selection approach and best value Gc and team for the project.
10. Once selected, work with GC and finalization of all GMP agreement exhibits.
11. Conduct meetings with current AEC design and consulting team to get current on status of plans and needs to secure permit approvals.
12. Discuss completeness for all third-party consulting, including, acoustical, Water intrusion, ada, title 24, peer reviews, city permit expeditor/liaison, wet/dry utilities, Utility expeditor, testing, inspection and commissioning, LEED, etc.
13. Discuss A/E and Other consultant Construction Administration (CA) inclusion and reps.
14. Discuss how FF&E procurement is being procured, installed and budgeted.
15. Conduct meeting with City Case Manager with Permit expeditor, Architect, wet/dry consultants' local utilities and other agencies to gain a clear understanding of the full plan review and permit process and status. If above consultants are not hired, may need to add staff and adjust time to support hiring and or to support roles.
16. Establishment of "pre-development/pre-construction schedule to manage consultant team to construction.
17. Review Company set up project FTP site along with review of chart of account with Company IT group. The goal is to centralize all files of entire project, including plans.
18. Review status of all plan utility point of connections with wet and dry utility consultants.
19. Review of GC agreement and needed exhibits. Discuss Edit and approval process.
20. Review status of environmental, planning and other approvals
21. Review of Owner total budget goals for projects as well as financing and current status. Work with Owner on review of soft and hard cost budgets and contingency planning.
22. Develop project communication plan with Owner, AEC & GC teams to make sure clear lines exist as well as Owner decision making channels.

23. Work with Owner on establishment step 2- Construction staffing by Consultant and determine timing well in advance of need.

24. Review Company staffing to be in coordination with Consultant staffing, like legal, financing, CA, Controls, On/off-site management, community liaisons, expeditors, etc. Discuss Role of Pennco team in support of this team.

25. Finalize Consultant CM project support staffing plan and assign Pennco project staffing personnel.

26. Review with AEC/GC and Owner in development of project differentiation of responsibility matrix.

27. Finalize approach to DB trades and confirm hand-off point and performance criteria of all systems and DB components. Possible early release and contracting ahead of GC role. Currently not contemplated in this scope.

28. Discuss key processes and related to project control needs both internally and externally, like bi-weekly and monthly reports during construction.

29. Work with Company Finance team on early cash flow projections and contingency needs

30.  Review SOV prepared by Contractor as well as other contract exhibits.

31. Review GC Estimates of VE alternates, allowances, Plan gaps, GC Constructability review, Permits, to final GMP and updates Owner budget and contingency needs.

32. Review Owner pay app review process, needs for deposits, retention, and turnaround times to insert in GC agreement Work with Owner legal to work on GC agreement

33. Review GC use of textura and role of Company Accounting, like reconciliation of waivers, etc.

34. Conduct Value Engineering implementation process and confirmation of price and scope with each budget phase per trade awards.

35. Establish Owner Approval process and areas of sign off prior to issuances as well as Owner Admin support to Consultant

36. Discuss Company sign off process on all GMP trade awards by GC.

37. Overall Goal is to select GC and reach desired GMP no later than 3 months prior to construction commencement and to enter GMP or LS agreement with All exhibits complete to release buy out and commence construction.

## Schedule

- See below

## Price

- See below

# Step 2- Construction Monitoring and Support (Draft Alternate #1)

## <u>Scope of Services;</u>

The Construction Execution phase of the Consulting services shall be inclusive of the following:

1. **Participate in weekly OAC project meeting, GC to prepare meeting minutes and distribute for use and to memorialize key open/closed issues and action discussions.**
2. **Review GC and or AEC issues with Owner as requested focusing on key decisions needed by Owner for direction to GC and or AEC team. Discuss prep log of pending issues with origin and resolution of the issue.**
3. **Review of GC and AEC contracts executed by Owner, inclusive of change orders and billing reviews. All Accounting and check processing to be by Owner.**
4. **Review of GC change orders to confirm Owner is receiving sufficient fair value and meeting contract rates for proposed work and entitlement exists for all such change.**
5. **Monitor with Owner monthly budgets based on committed and uncommitted trade work within GMP as well as potential Owner exposures and or Owner/GC contingency status updates.**
6. **Review progress of Design-Build coordination with AEC team and all Allowances in GMP to monitor status of the project budget. Possible add BIM execution plan monitor.**
7. **Assign person to field to monitor field progress per schedule, QAQC, amount continues to track. As project grows, may need people per area of project, (i.e. hotel, retail, etc.)**
8. **Review payments tied to the progress via site inspections and review prior months waivers within the schedule of values to provide the AEC and GC are paid for completed work.**
9. **Monitor GC schedule to identify problem areas and ensure they develop a corrective action plan as necessary.**
10. **Monitor Submittals & RFIs as well as other GC project controls with APM/PE to review compliance and maintenance.**
11. **Review GC Monthly report for accuracy and status with team above.**
12. **Work with overall team to maintain open communications and cooperation with existing all parties, inspections and city.**

13. **Monitor field quality-control and prep periodic corrective action lists. Also collect such QAQC lists from AEC team to see GC is responding to all actions requested.**

14. **Conduct Owner meeting to talk thru updates, needs and discuss strategic approach to resolution of open issues and overall of project status**

15. **Maintain contact with owner points of contact throughout the project. Owner team to be develop per area of project (Finance, Condo Sales, Retail/leasing, hotel/operations, etc.)**

16. **Start early TCO, turnover and completion coordination meeting among all parties.**

17. **Review OCIP insurance program, enrollment and admin process of carrier/agent in conjunction with Owner legal insurance team.**

18. **Overall step #2 scope of work is draft now and to be confirmed and planned during phase 1.**

## Schedule

- See below

## Price

- See below

# Step 3- Close-Out and Claim Support- (Draft Alternate #2)

## Scope of Work

The Close –out phase will include the following;

1. **Review with Owner, AEC and GC to facilitate implementation of a training plan for operations staff on new systems and equipment**

2. **Review handover of all keys, attic stock, manuals, as-built drawings, warranties and other documentation.**

3. **Review the electronic archive file project file existence and documents created and collected during project by self and staff for Owner turnover. GC and AEC to upload all documents for Owner FTP site final records**

4. **Support Owner in review of the Owner/AEC punch list by GC. Provide field staff to support.**

5. **Review the final project budget to cost reports, final change orders and pay applications with Owner and others**

6. **Review all contract close –out items completed per contract, including change orders, Review final pay app, waivers and back-up documentation.**
7. **Conduct lesson learned and best practice session at project completion**
8. **Overall step #3 scope of work is draft now and to be confirmed and planned during phase 1 and 2.**

## Schedule

- See below

## Price

- See below

## General Overview of Proposal

This proposal for consulting services shall provide for the services defined herein as per the schedule and rate defined below. Therefore, during the initial step, Consultant will work with Owner and their team assembled to move project forward into construction. However, additional capacity is planned from Consultant and Owner to be added as progress reached closer to GC bid and commencement planning. It takes a well-organized and lead team to deliver successful projects prior to, during construction and through close-out to support overall needs.

## Schedule

- This initial Step 1 will be planned for the below schedule yet since AEC team progress and GC selection process are not yet confirmed is only an estimate at this time. The costs and time of staffing per month with increase and decrease with progress and needs. Staff additions outside Consultant Principal will be approved by Owner. Future steps and work will be developed with client to mutual agreement during prior steps.



- 8-12 mos. tentative
- Pending
- Pending

### Price;

- **Step 1** – Consultant Principal will support Company and get additional staff support as service grows after entitlement for GC selection and more help will be transitioned in leading up to full time onsite person for step #2 and timing gets closer to Construction. Consultant and Company will set goals for initial step and priorities after initial project knowledge is established. Need to confirm dates of weekly planned meetings. The step #1 scope in generally defined herein, yet timeline may vary. Additional Staff will be phased in during step #1 for future steps as agreed by client in coordination with their staffing.   There is no time limit on scope of work defined herein.  Build Group Estimating will be used under separate agreement with Company for initial trade bidding, QTOs and estimating as needed.

- **Step 2** – This phase will commence with construction pending selection of GC which may require earlier start of additional onsite staff.  The commencement of initial work and include addition of field PM and support as collectively deemed necessary. Consultant principal will stay engage in oversight and monitoring all progress on/offsite. We expect team to work normal weekly hours. Site monitoring should include controls on review of progress, quality, safety, changes, issues, payment and cost or other issues.

- **Step 3** – This Phase will include same team off/onsite reviewing punch and issue close out along with GC. Consultant principal to support onsite team as needed. Assume Owner support during phase for definition of acceptance and closure to all open issues.

### Breakdown of People Price per Team Member

**The overall scope, schedule and service total price development is not committed at this time. It will be developed together and budgeted during initial step #1.**

| | Design & Precon phase | Construction | Close-out | Total | Notes |
|---|---|---|---|---|---|
| Billing schedule | Fixed amount | Pending | pending | pending | |
| Monthly Step #1 Billing Amount | $5,000 / month | pending | pending | pending | Fixed Fee monthly retainer |
| | 20 hours/month | | | | |

*t is noted that this is a fixed service and amount per month to support front-end support of company. As the project grows closer to permit, financing and GC/Subcontracting services to commence construction such rates and staffing will be adjusted by company and consultant to mutual agreement.

**Schedule of Billing Rates**

| Title | Hourly billing Rate | Hour per week | Duration (weeks) | Total Budget | Notes |
|---|---|---|---|---|---|
| Principal | 269.92 | Pending | Pending | Pending | |
| SPM | 189.86 | Pending | Pending | Pending | |
| PM | 169.77 | Pending | Pending | Pending | |
| APM | 119.68 | Pending | Pending | Pending | |
| PE | 89.62 | Pending | Pending | Pending | |
| Field QAQC | 129.87 | Pending | Pending | Pending | |
| BIM Coord Mgr | 117.89 | Pending | Pending | Pending | |
| MEP mgr | 145.27 | Pending | Pending | Pending | |
| Accounting | 89.96 | Pending | Pending | Pending | |
| Admin | 69.95 | Pending | Pending | Pending | |
| Scheduler | 122.347 | Pending | Pending | Pending | |

**Questions and Clarifications**

10 | P a g e

## Information Requested;

1. Project/Team Directory
2. Sample GC GMP agreement
3. Current Master schedule
4. Bank Funding requirements
5. Current AEC agreements
6. Initial City plan check comments
7. Current design or other documents
8. Differentiation Resp Matrix
9. GMP agreement draft
10. Note- we should set up a drop box/ FTP site

## Alternate Scope of Services

1. Accounting and finance/lender controls
2. FF&E procurement and coordination
3. Project claims Mgt and related consulting
4. Project risk mitigation/Insurance planning
5. Point of Entry Control and Site Safety mgt / First aid station
6. Project control and Bim Execution plans coordination
7. Cost estimating and quantity surveys
8. Team building meeting facilitation
9. Project master scheduling and estimating
10. GMP agreement preparation/negotiation
11. Direct trade work or bidding, assume GC in lead role
12. Meeting facilitation and oversight

## Qualifications and Exclusions;

1. These qualifications shall prevail over agreement and above scope
2. This proposal is valid for 30 days
3. All above services are limited to fixed rate and hours per month. Support needs identified by Company will prevail. The above the listing is generic of tasks desired to be done prior to construction commencement. All such tasks will be evaluated between consultant and company before further proceeding with any additional services.
4. Exclusions
   a. *Professional Liability insurances, Consultant has GL insurance only.*

11 | P a g e

      b.  **GC licensing, N/A to services.**

      c.  **Design and or other licenses/services**

      d.  **Legal, Accounting, Insurance, marketing, permit expediting and 3rd party reports and other professional services.**

      e.  **Travel, Mileage, parking, lodging/temp housing, meals, entertainment***

      f.  **Office supplies & equipment, postage, printing/copying, office space, etc. ***

      g.  **All 3rd party expenses for consultants or other support as needed to best support Company as needs evolve.**

      h.  **All Project Design and Construction Services as well as financing.**

      i.  **Overtime, shift-time and weekend work**

      j.  **Check cutting and cost and project control software, etc. Consultant uses full MS suite. All above**

      k.  **System software/hardware or equipment specifically for jobsite.**

      l.  **Owner Installation or FF&E supervision or procurement.**

5.  **Payments per below terms to be billed in advanced on or about first of each month and paid no later than month end. This is a fixed lump sum amount and no further billing documentation is required. No retention will be held. All reimbursable expenses will be billed with back up documentation as incurred and shall be reimbursed by Company within 15 calendar days.**

6.  **\* see reimbursable costs in contract terms.**

This proposal is acceptable by the Company and Pennco (Consultant) is authorized to proceed in accordance with the service scope of work, schedule and prices defined herein. Such terms of the agreement are defined below;

Todd C. Pennington, CEO

Pennington Construction Advisors, Inc.

33 Gray Stone Way

Laguna Niguel, CA 92677

By: _____

Name Todd C. Pennington

Title: CEO

Witness: _____

Name: Donna Bullock

Contact information: donna.bullock@
yuail.com

David Park, Managing director

Betula Lenta, Inc.

800 West 6th street, Suite 1250

Los Angeles, Ca 90017

By: _____

Name: David Park

Title: Managing Director

Witness: _____

Name: _____

Contact Information: _____



## PENNINGTON
### CONSTRUCTION ADVISORS, LLC

**Terms and Conditions of Proposal**

This Consulting Agreement (this "Agreement") is effective as of the above date executed (the "Effective Date"), by and between **Pennington Construction Advisors, Inc.**, a California S-Corporation ("Consultant"), and **Betula Lenta, Inc.**, a *Cal Corp.* (the "Company").

### RECITAL

WHEREAS, this Agreement is not an employment agreement, nor does there exist any intent between Consultant and the Company to create an employment relationship through the operation of, or performance of services under, this Agreement.

WHEREAS, The Consultant will render opinions, advice and recommendations to the Company and the Architect in order to help reduce the overall cost or time of the Project. These services are provided by the Consultant as part of base services at no additional fee, provided such base fees have been paid. By doing so, the Consultant has not assumed any of the duties or obligations of the Owner or the Architect. The final decision as to the use of any opinions, advice or recommendations supplied by the Consultant is, and remains, the responsibility of the Company.

WHEREAS, Notwithstanding anything to the contrary in this Agreement, the Consultant's obligation to review design drawings and specifications during the preconstruction phase does not confer any liability on the Consultant for errors and omissions in the design drawings and specifications, as the Consultant is expected only to identify potential issues, and provide general comments on those issues an experienced Consultant would typically identify in the exercise of reasonable care and diligence.

WHEREAS, The Company agrees to cooperate with the Consultant in fulfilling the Services that the Company Authorizes the Consultant to perform the during the term of these Services in the best way and most expeditious manner by furnishing information necessary and making applicable timely payments defined herein or the performance of the Consultant's authorized obligations.

**14 | P a g e**

# AGREEMENT

NOW, THEREFORE, in consideration of their respective promises and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Retention as Consultant.  Subject to each of the terms, conditions and provisions of this Agreement, the Company hereby retains Consultant to serve, and Consultant hereby agrees to serve, as a consultant to the Company.  Consultant shall provide the Services to the Company as requested by the Company at such times and places as are requested by the Company during normal business hours and/or after hours at rates as defined herein without limitation to daily, weekly or monthly durations worked. It is understood that there is no cap or maximum price to these services unless defined by scope and price in a limited authorization to proceed (ATP) defined herein.

2.      Duties of Consultant.  Consultant shall perform the services as defined above for the Company as defined herein and/or as requested by the Company for a development project, related due diligence, planning, reviews, consulting and advisory support, meeting attendance and other services to the Company ("Services").  It is understood by the Company that the Consultant shall provide additional staff where additional services require but only with the prior approval of the Company. All such additional staffing, skills and applicable rates shall be approved by the Company prior to start date and such retainer shall be additionally advanced for month as defined herein.

3.      Compensation.  All services as defined herein shall be billed on an hourly rate basis per the rates defined herein, unless defined by a Fixed or lump sum fee approved by Company herein. All such rates shall escalate 5% per annum effect each July 1st.  In current or future steps of services such compensation may be adjusted by rates or lump sum amounts paid and paid on a straight-line basis over duration of services by mutual agreement and amendment to this agreement. No overall budget has been assembled at this time due to uncertainty of scope timeframes and support needs.  All such time shall accrue whether on/off site or office while services are being rendered for Company. The proposal scope of services is fully defined herein in step above, and any additional services would need to be developed for the Company with pre-approval of expected time, staffing needed, and applicable hourly rates as defined herein. These costs and hours would apply to all hours worked, traveled or on/offsite in connection to this project as requested and directed by the Company for the Term (the "Consulting Fee(s)") unless defined different differently above.

4.      The Consulting Fee(s) shall be billed in advance each month of service and be paid by each month end of which such services where delivered. More specifically, each month the projected on or about the first thru month end, submitted for payment to be paid by month end and then documented in arrears to reconcile exact hours while projecting next month in advance and truing up any credits or debits from prior month. This documentation process does not apply to Lump sum services billing agreed in each ATP. Payments billed on or about the first are due by the 15th each month and considered late by the 30th. In the phase 2 and 3 of such services such payments will be made on both the 1st and 15th of each month. The parties agree that the payments by the Company to Consultant set forth in this Section **Error! Reference source not found.**

represent the total compensation to Consultant for all Services rendered under this Agreement, and Consultant is not entitled to any further consideration or compensation, except as otherwise may be provided for certain commissions or bonuses which shall be handled in a separate written agreement between Consultant and the Company, entered into subsequent to this Agreement.

5.     Business Expenses. Consultant will be reimbursed for all Company requested and reasonable travel and other out-of-pocket or service-related expenses incurred by Consultant or at the request of the Company in connection with the Services under this Agreement, provided that Consultant provides the Company with receipts and /or descriptions for such expenses in direct or indirect performance of these consulting services. The actual reimbursement rate shall be direct costs times a 1.2x overhead multiplier mark-up. The costs of travel in excess of single night or Southern California shall be advanced to the consultant, if requested, but all such expenses reimbursed to consultant by company within 10 days of submission. All mileage will be reimbursed at the rate of $0.555/business mile traveled, inclusive of to/from jobsite and Company office.

6.     Billing Process. The consultant shall submit to the Company a monthly or bi-weekly Consultant service billing for each such period, inclusive of consultant time sheet(s) multiplied times each billing rate at summary level, unless ATP or agreement defines such services as Lump sum. Such total shall be the monthly amount due plus any reimbursable defined in section 5 above. An initial retainer will not be required, prior to service commencement, unless defined in ATP. However, the initial month shall be due within 15 days of signing this agreement. Each billing shall be consistent with this summary for this set time period. In the event the time or scope of services are extended, the consultant shall be entitled to additional compensation for the hour's services are provided per rates defined herein. Reimbursable Expense billings may be submitted in tandem to such Consultant service billing or separate based on when such expenses are incurred and shall always include applicable receipts or credit card statements and mileage reports. These services are based on working normal work hours 5 days per week. However, if Consultant chooses to accelerate on his own on weekend, such time shall still be reimbursed for hours services are provided.

7.     Late Payments. In the event that any payment has not been made, whether for Consultant services or reimbursable expenses when due and without explanation, the consultant shall have the right to stop work and withhold services or work product after late payment notice and until such funds are brought current. Further, payments later than 30 days late from the date of submission shall bear a late fee charge of 1% per month on the full balance of unpaid invoices unit paid in full. This amount will be added to following months billing.

8.     Place of Services. Consultant shall maintain and perform Services pursuant to this Agreement at his own place of work, with the exception of Services that must or can more efficiently be performed on the Company's premises due to the nature of the work.  In the event that this service grows beyond the staffing of just the principal of the consulting firm, office space would be considered a reimbursable cost with pre approval and verification of long-term need.

9.     Authority of Consultant; Independent Contractor.  Consultant shall have authority only to act as a Consultant and advisor to the Company and, in his capacity as such, Consultant shall have no authority to enter into any agreement or to make any representation, commitment or

Case 22-11644-EIR   Doc 107   Filed 02/26/22   Entered 02/26/22 16:28:43   Page 21 of
Main Document 48   Page 33 of 62


warranty binding upon the Company or to obtain or incur any right, obligation or liability on behalf of the Company. Consultant and any agent of Consultant who performs work for the Company is an independent contractor. Consultant will not act, and none of Consultant's agents will act, as an agent of the Company nor shall any of them be deemed an employee of the Company for the purposes of any employee benefit program, income tax withholding, FICA taxes, unemployment benefits, insurance coverage or otherwise. Consultant shall not enter into any agreement or incur any obligations on the Company's behalf or commit the Company in any manner without the Company's prior written consent.

10.   Term. Unless terminated earlier pursuant to Section 11 and 12 below, the term of this Agreement shall commence on the Effective Date and continue for a period of no less than six (6) months or completion of step 1 services when it may be terminated or be extended for additional year(s) or steps 2 and 3 based upon on mutual agreement and related terms unless defined to the contrary in the executed service proposal above (the "Term"). It is noted, that the above hourly rate shall escalate by 5% per annum effective each July 1st or the anniversary or renewal of this agreement effective date, whichever is earlier.

11.   Termination of Agreement.

11.1   Termination by Company for Convenience. This Agreement may be terminated by the Owner upon thirty (30) days' written notice to the Consultant, without regard to cause and without regard to any failure to perform by the Consultant. Such termination may be solely for the Owner's convenience. In the event of such termination, the Consultant shall be paid for Labor Costs per rates and Allowable Reimbursable Expenses incurred prior to the date of termination plus the notice period. The Company shall have no further liability to the Consultant and the Consultant shall be entitled to no damages or recovery whatsoever in excess of any compensation earned to the time of notice of termination plus the related notice period. It is expressly acknowledged and agreed that Consultant has no right to recovering damages against the Company related to lost profits or any other form of consequential damages.

11.2   Termination by Company for Cause. At the option of the Company, the following events shall result in  termination of this Agreement for cause upon 30 days' written notice from  the Company to  the Consultant:

11.2.1 the Preconstruction Contractor's g r o s s  failure to perform its Services, yet this does not include subjective opinions on the quality of work. Such work standard applies to all Consultant team. However, it does not apply to such delays, changes or fault of company or 3rd parties to them.

11.2.2 the Company's failure to maintain the insurance coverages required by this Agreement;

11.2.3 insolvency or bankruptcy of the Consultant;

11.2.4 Consultant's material breach of this Agreement, or any other agreement between the parties, if such breach is not cured within above period as provided above;

17 | P a g e

11.3  Termination by Consultant. This Agreement may be terminated by the Consultant only for failure of the Company to make payment(s) to the Consultant in accordance with the terms of this Agreement. If the Company fails to pay the Consultant, through no fault of the Consultant, within thirty (30) days from the time payment should have been made as provided in this Agreement, the Consultant, may upon fifteen (15) days additional written notice to the Company, cease work until payment has been received. It is expressly understood that the above-described time periods and notice requirements are an express condition precedent to the Consultant's right of termination under this Agreement.

12.    This Agreement shall terminate automatically on the earlier of the following: (in) the expiration of the Term or completion of the defined scope of work in step 1 or such work authorized to proceed by Company, or (ii) a material breach by the Company or Consultant of any of this agreement hereunder, which breach, if curable in the Company's reasonable discretion, shall not have been cured, if curable, within thirty (30) days after written notice by the Company. Upon termination, Consultant shall immediately cease all further Services and be paid the actual number of hours worked through the point of termination, plus above notice period.  The Consultant shall then promptly submit a final service invoice with related expenses as a final payment for services hereunder.  Further, this agreement can also be terminated by the Consultant, with 30 days written notice, in the event "personal reasons" arise during the term.

13.    Confidential and Proprietary Information. As needed from time to time by third parties, The Consultant shall be willing to execute mutually agreeable confidentiality agreements as requested and related to his services to the Company as a condition of Consultant's retention for certain services anticipated but not confirmed at this time. In the event that such agreement requires a legal review and such internal Company council is not available, the related legal fees of the Consultant shall be a reimbursable cost to be paid by the Company. It is understood that the entire Consultant's work product(s) shall remain owned by the Consultant but shall be shared with the Company who can use such work Products for the use intended.

14.    Conflicting Agreements.  Consultant represents that his performance of all the terms of this Agreement and the does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by Consultant in confidence prior to this Agreement with the Company, and Consultant will not disclose to the Company, or induce the Company to use, any confidential or proprietary information or material belonging to others. The Consultant is not exclusive to the company, yet agrees not to enter into any agreement, in conflict with the provisions of this Agreement. However, it is understood that the Consultant does provide services to others which shall remain confidential from the Company.

15.    Disclosure- the Consultant has informed the client that he has recently left the day to day leadership as President of Build Group Construction Company Inc. (Another firm). It is noted because the Company may or may not be a bidder on future projects. This is pointed out to avoid conflict and ensure autonomy from such decision making of said firm. It is accepted to Company at time of execution of this agreement that the Consultant has a non-leadership nor any daily involvement with this Other firm.

16.    Outside Services and Third-party Services. It is agreed and understood that the Consultant provides outside services to "other" companies which are not related to or in conflict

with this Company and this agreement. Further it is agreed and understood that from time to time the Consultant may be asked by the Company to retain additional staff and skills to provide additional services for the Company which may or may not be employees of the Consultant and at the sole discretion of the Consultant may elect to hire such a person by a 3rd party agreement or additional consulting agreement. The Fixed hourly or service rates, services and terms for such a position(s), if needed an approved by the Company shall be authorized by written amended to this agreement, yet all such terms herein shall apply. The Company shall not seek to hire and make any direct employment offers to any Employees or 3rd party to Consultant.

17.     Assignments; Binding Effect.  The terms and conditions contained herein shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns.  Consultant shall not be entitled to assign any of his rights or obligations under this Agreement without the prior written consent of an authorized officer of the Company.

18.     Applicable Law; Severability.  This document shall, in all respects, be governed by the laws of the State of California, without giving effect to conflicts of laws principles.  Nothing contained herein shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provisions contained herein and any contrary present or future statute, law, ordinance or regulation, the latter shall prevail, but the provision of this document which is affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law.

19.     Further Assurances.  Each of the parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties hereto. However, the consultant must be paid to be required to furnish additional work product as defined herein.

20.     Integration.  This Agreement contains the complete, final and exclusive agreement of Consultant and the Company relating to the terms and conditions of Consultant's retention as a consultant and supersedes all prior and contemporaneous oral and written employment agreements or arrangements between the parties.

21.     Modifications or Amendments.  No amendment, change or modification of this document shall be valid unless it is in writing and signed by all the parties hereto and expressly states that it is an amendment, change or modification of this Agreement is intended.

22.     Attorneys' Fees and Costs.  The Consultant shall not be liable or obligated to pay for any proceeding brought to enforce or interpret any provision of this Agreement and shall be entitled to recover its reasonable attorneys' fees, costs and disbursements incurred in connection with such proceeding including but not limited to the reasonable costs of experts, accountants and consultants and all other reasonable costs and services related to the proceeding, including those incurred in any appeal, jointly and severally, from the non-prevailing party or parties.

23.     Venue. Orange County, California shall be the venue of this agreement. All such claims and or related damages and legal fees to be borne by Consultant shall be limited in all cases to those paid by Insurance carriers on coverages and limits provided by Consultant.

**24.**     Indemnification. The Company and Consultant waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate General or trade contractors described herein, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by insurance obtained pursuant to this agreement or other insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Company or Owner as fiduciary. The Company or Consultant as appropriate, shall require of the Architect, Architect's consultants, separate General or trade contractors described in this agreement, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

24.1     Notwithstanding anything in this Agreement to the contrary, Consultant's defense and indemnity obligations herein are expressly capped at and limited to available insurance proceeds. Further, this Agreement, and any defense and indemnity obligations pursuant thereto, shall be null and void upon the execution by Consultant of a Prime Contract to build the Project or termination of this agreement.

25.     Dispute Resolution. In the case of any dispute, controversy, or claim arising from, out of, or in connection with, or relating to, any term, provision, or condition of this contract, or any breach or alleged breach of this contract, the parties shall meet and confer in an attempt to resolve their differences. At any time after fifteen (15) days following notice in writing by any party that it desires to so locally meet and confer (the "meet and confer notice"), any party may require mediation, yet such costs shall be borne by company and then, if the mediation is unsuccessful, within fifteen (15) days from the end of such mediation, judicial reference pursuant to the provisions of California code of civil procedure section 638, et seq. Both the mediation and the judicial reference shall be conducted by a judge of the Judicial Arbitration and Mediation Services, inc. ("JAMS") in Los Angeles, California. For judicial reference, the parties shall agree upon a single referee who shall then try all issues, whether of fact or law, and report in writing a finding and judgment thereon. If the parties are unable to agree upon a referee, either party may seek to have one appointed, pursuant to sections 639 and 640 of the California code of civil procedure. Any party may commence a reference by sending a written demand for reference to the other party. Such demand shall set forth the nature of the matter to be resolved by reference. Both parties shall mutually select the place of the reference. The substantive law of the state of California shall be applied by the referee to the resolution of the dispute. The parties after initial sessions paid by Company shall pay for all initial costs of reference. However, the prevailing party shall be entitled to reimbursement of attorney fees only incurred in connection with the reference. The parties agree that each party shall have the right to cause an appeal to be taken from the

referee's decision to a court of competent jurisdiction in the same manner as a judicial appeal arising out of an order or judgment from a California superior court in a civil action and all of the same rules, rights and remedies shall be applied to both parties with respect to any such appeal including matters of fact, matters of law, standards for review and substantive and procedural laws. Judgment may be entered upon any such final decision in accordance with applicable law in any court having jurisdiction thereof. The referee (if permitted under applicable law) or such court may issue a writ of execution to enforce the referee's decision. Also, if no party commences mediation within forty-five (45) days of the meet and confer notice, then thereafter any party may require judicial reference as and where above-described. If for any reason JAMS in Los Angeles cannot administer the matter, then such jams as is selected by the parties in any county within a fifty (50) mile radius of Los Angeles county shall be utilized. Notwithstanding anything to the contrary contained herein, if JAMS does not exist at the time of such controversy then the American arbitration association ("AAA") shall be utilized in lieu of JAMS. in the event the AAA is utilized both the mediation and the judicial reference shall be conducted by a retired judge of any superior court of California and shall be selected by the AAA independent of the desire of any party hereunder unless the parties hereunder mutually agree on such mediator or referee.

notice: By initialing in the space below you are agreeing to have any dispute arising out of the matters included in this provision decided by judicial reference as provided by California law and you are giving up any rights you might possess to have the dispute litigated in a court or jury trial. By initialing in the space below you are giving up your judicial rights to discovery and appeal, unless those rights are specifically included in this provision. If you refuse to submit to judicial reference after agreeing to this provision, you may be compelled to do so under the authority of the California code of civil procedure. Your agreement to this provision is voluntary. We have read and understand the foregoing and agree to submit disputes arising out of the matters included in this provision to judicial reference.

Consultant: _____          Company: _____

Attorneys' Fees. If any litigation, judicial reference or arbitration proceeding is commenced between the parties hereto concerning this Contract and/or the rights and obligations of either party in relation herewith (including, but not limited to, claims in contract, tort or equity), the party prevailing in such litigation or arbitration proceeding, or the non-dismissing party in the event of a dismissal, with or without prejudice, shall be entitled, in addition to such other relief as may be granted, to a reasonable sum for any and all costs and expenses, including, without limitation, attorneys' fees, expert witness fees, consultants' fees, court costs, cost of paralegals, accounts, business office expenses of any kind or nature, including, but not limited to, staff, traveling expenses, telephone expenses, internal bookkeeping and accounting and any and all other costs and expenses of defense or prosecution incurred in connection therewith, whether specified herein or not. Any such attorneys' fees and other costs and expenses incurred by the prevailing or non-dismissing party in enforcing a judgment in its favor under this Contract, whether or not suit is filed, shall be recoverable separately from and in addition to any other amount included in such judgment or award, and such obligation is intended to be severable from the other provisions of this Contract and to survive and not be merged into any such judgment or award.

To the extent damages are covered by property provided by Company insurance during

construction, the Consultant waives all rights against Company, and Company's Contractors, AEC or Other Consultants, agents and employees for damages in excess of such collections, but only to the extent of the actual recovery of the proceeds of such insurance. The Consultant shall require of its subcontractors, sub-subcontractors, consultants, agents, suppliers, and employees of any of them similar waivers in favor of Company.

Consultant covenants and agrees that it shall require in any contract with a subcontractor, sub-subcontractor, supplier or consultant that the subcontractor, sub-subcontractor, supplier, or consultant shall be bound by the all the provisions contained in this Section above.

26.     Insurance Requirements. Consultant shall, prior to beginning work hereunder, shall include a $1 million General Liability policy for services defined herein. All OCIP or CCIP policies acquired by Company prior to construction commencement shall name Consultant as an additional insured.

27.     Separate Counterparts. This document may be executed in one or more separate counterparts, each of which, when so executed, shall be deemed to be an original. Such counterparts shall, together, constitute and be one and the same. Counterparts may be delivered via facsimile, electronic mail (including pdf) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

28.     The Company has designated David Park, (Title: Managing Director) or _____, (Title: _____) to act as its representatives (collectively and separately the "Owner's Representative") with respect to these Consultant Services for the Project, and no other employee, agent or representative of the Company shall have authority to bind the Company to any agreement, responsibility or liability unless the Company provides otherwise in writing.

29.     Decisions. The Company shall render decisions pertaining to documents submitted by the Consultant's and AEC developed documents, provided Company has received all necessary back-up information from others that would be required to make a decision. Such decisions will be rendered in a timely manner in order to avoid unreasonable delay in the orderly and sequential progress of the Consultant services. Extended time as a result of decisions or revisions beyond such submission shall be deemed as extra work and subject to change of scope.

30.     Company-generated Changes. Without invalidating this Agreement, the Company may direct the Consultant to perform additional services not contemplated by the express scope of services set forth in this Agreement, and the Consultant shall perform such additional services as the Company reasonably request. The Company shall, if necessary, propose for acceptance by the Consultant an adjustment in the not-to-exceed Consultant Services additional Fee, and such adjustment shall be set forth in a written change order or amendment agreed upon by the parties. Contractors rates for developing Fee for changes shall be in accordance with those defined herein. In the event the parties do not agree on additional service costs, the consultant shall have a right to stop after 30 days' notice to Company.

*[Remainder of page intentionally left blank.]*

# PENNINGTON CONSTRUCTION ADVISORS. INC.

*Driven to Build, Companies, Projects and People !*

79 bell pasture road
ladera ranch, ca 92694
Phone 949-637-6210   Fax 949-234-0050

**DATE:**     Jan 1.2020

**INVOICE** **October-December**
**INVOICE #**          1

**FOR:** *Baseline Initial CM*
*Services for 2929*
*Amethyst project,*
*Los Angeles, Ca. Per*
*Consulting*
*agreement Dated*
*9.25.19*

FEIN #45-278-0223

**Bill To:**
David Park
Betula Lenta
800 west 6th Street
Los Angeles, CA 90017
Telephone: (213) 537-0439 Email: david@jdevelopment.com

| Dates | Activity Descriptions | AMOUNT |
|---|---|---|
| Project  reviews and related consulting support for Client per above Agrement for month | | |
| October 2019 | | $        5,000.00 |
| November 2019 | | $        5,000.00 |
| December 2019 | | $        5,000.00 |
| | | |
| Summary of work planned this month | | |
| see ATTACHED | | |
| | | |
| Summary of work Completed from last month | | |
| see ATTACHED | | |
| | | |
| **Total this invoice** | | **15,000.00** |
| | | |
| **Total Service Cost this invoice** | | **15,000.00** |
| Reimbursable Expense (see attached) | | $              - |
| | **TOTAL Due** | **$  15,000.00** |

Please make all checks payable to Pennington Construction Advisors, Inc.
Please call for pick up  or fell free to mail
If you have any questions concerning this invoice, Please contact Todd C. Pennington
at 949-637-6210 or email me at the following email address- TODD@PennCoInc.com

**THANK YOU FOR YOUR BUSINESS!**



Work planned for month

Purpose- general goals for month, yet not all items will complete this month

| | | | |
|---|---|---|---|
| 1 | attend design review meetings | | |
| 2 | continue gc/trade outreach on pre-quals | | |
| 3 | review status and needs for entitlement | | |
| 4 | start scope development of project | | |
| 5 | review needs of david park | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| | | | |



Summary of work planned for Month

| Item # | | ongoing | |
|---|---|---|---|
| 1 | several meetings with david park on updates | ongoing | |
| 2 | Meeting with Sukut, stine and others doing outreach | ongoing | |
| 3 | review Prior Estimates and breakdowns | ongoing | |
| 4 | general timeline planning | ongoing | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |

# PENNINGTON CONSTRUCTION ADVISORS, INC.

*Driven to Build, Companies, Projects and People !*

79 bell pasture road
ladera ranch, ca 92694
Phone 949-637-6210  Fax 949-234-0050

FEIN #45-278-0223

| | |
|---|---|
| **DATE:** | February 1`st 2020 |
| **INVOICE** | **January - February** |
| **INVOICE #** | **2** |

**FOR:** *Baseline Iniital CM Services for 2929 Amethyst project, Los Angeles, Ca. Per Consulting agreement Dated 9.25.19*

**Bill To:**
David Park
Betula Lenta
800 west 6th Street
Los Angeles, CA 90017
Telephone: (213) 537-0439 Email: david@jdevelopment.com

| Dates | Activity Descriptions | | AMOUNT |
|---|---|---|---|
| **Project  reviews and related consulting support for Client per above Agrement for months below** | | | |
| **January 2020** | | $ | 5,000.00 |
| **February  2020** | | $ | 5,000.00 |
| Summary of work planned this month | | | |
| see ATTACHED | | | |
| Summary of work Completed from last month | | | |
| see ATTACHED | | | |
| **Total this invoice** | | | **10,000.00** |
| **Total Service Cost this invoice** | | | **10,000.00** |
| Reimbursable Expense (see attached) | | $ | - |
| | **TOTAL Due** | **$** | **10,000.00** |

Please make all checks payable to Pennington Construction Advisors, Inc.
Please call for pick up  or fell free to mail
If you have any questions concerning this invoice, Please contact Todd C. Pennington
at 949-637-6210 or email me at the following email address- TODD@PennCohc. com

**THANK YOU FOR YOUR BUSINESS!**



Work planned for month

Purpose- general goals for month, yet not all items will complete this month

| | | | |
|---|---|---|---|
| 1 | attend design review meetings | | |
| 2 | continue gc/trade outreach on pre-quals | | |
| 3 | review status and needs for entitlement | | |
| 4 | start scope development of project | | |
| 5 | review needs of david park | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| | | | |



Summary of work planned for Month

| Item # | Description | | |
|---|---|---|---|
| 1 | several meetings with david park on updates | ongoing | |
| 2 | Meeting with Sukut, stine and others doing outreach | ongoing | |
| 3 | review Prior Estimates and breakdowns | ongoing | |
| 4 | general timeline planning | ongoing | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| | | | |

# PENNINGTON CONSTRUCTION ADVISORS, INC.

*Driven to Build, Companies, Projects and People !*

79 bell pasture Road
Ladera Ranch, Ca 92694
Phone 949-637-6210

FEIN #45-278-0223

| | |
|---|---|
| **DATE:** | March 30, 2020 |
| **INVOICE** | **March** |
| **INVOICE #** | **3** |

**FOR:** *Baseline Iniital CM Services for 2929 Amethyst project, Los Angeles, Ca. Per Consulting agreement Dated 9.25.19*

**Bill To:**
David Park
Betula Lenta
800 west 6th Street
Los Angeles, CA 90017
Telephone: (213) 537-0439 Email: david@jdevelopment.com

| Dates | Activity Descriptions | | AMOUNT |
|---|---|---|---|
| | | | |
| **Project reviews and related consulting support for Client per above Agrement for months** | | | |
| **March base CM Fee** | | $ | 5,000.00 |
| **Supplemental service for Eddie Aquino** | hours completed | | 42.00 |
| | 165/hour | $ | 6,930.00 |
| | $ 5.25 | | |
| Summary of work planned this month | | | |
| see ATTACHED | | | |
| | | | |
| Summary of work Completed from last month | | | |
| see ATTACHED | | | |
| | | | |
| **Total this invoice** | | | 11,930.00 |
| | | | |
| **Total Service Cost this invoice** | | | 11,930.00 |
| Reimbursable Expense (see attached) | | $ | - |
| TOTAL Due | | $ | **11,930.00** |

Please make all checks payable to Pennington Construction Advisors, Inc.
Please call for pick up or fell free to mail
If you have any questions concerning this invoice, Please contact Todd C. Pennington
at 949-637-6210 or email me at the following email address- TODD@PennCohc. com

**THANK YOU FOR YOUR BUSINESS!**



Work planned for month

Purpose- general goals for month, yet not all items will complete this month

| | | | |
|---|---|---|---|
| 1 | attend design review meetings | | |
| 2 | continue gc/trade outreach on pre-quals | | |
| 3 | review status and needs for entitlement | | |
| 4 | start scope development of project | | |
| 5 | review needs with david park | | |
| 6 | continue eddie aquino on estimate/schdule support for project as per amendment | | |
| 7 | update estimate with program changes and timelines | | |
| 8 | update master schedule | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| | | | |



Summary of work planned for Month

| # | | | |
|---|---|---|---|
| 1 | several meetings with david park on updates | ongoing | |
| 2 | Meeting with Sukut, stice, amrk company and 2 others in outreach | ongoing | |
| 3 | review Prior Estimates and breakdowns for updates and trends | ongoing | |
| 4 | general timeline planning on entitlement porcess | ongoing | |
| 5 | conduct meeting in review of nbew plans | ongoing | |
| 6 | review plannig to new options and advise on planning | ongoing | |
| 7 | review needs for refi and solicit contacts | ongoing | |
| 8 | meeting with fry and david on progress planning | ongoing | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| | | | |

# PENNINGTON CONSTRUCTION ADVISORS, INC.

*Driven to Build, Companies, Projects and People !*

79 bell pasture road
ladera ranch, ca 92694
Phone 949-637-6210  Fax 949-234-0050

FEIN #45-278-0223

| | |
|---|---|
| **DATE:** | April 30, 2020 |
| **INVOICE** | **April** |
| **INVOICE #** | **4** |

**FOR:** *Baseline Iniital CM Services for 2929 Amethyst project, Los Angeles, Ca. Per Consulting agreement Dated 9.25.19*

**Bill To:**
David Park
Betula Lenta
800 west 6th Street
Los Angeles, CA 90017
Telephone: (213) 537-0439 Email: david@jdevelopment.com

| Dates | Activity Descriptions | | AMOUNT |
|---|---|---|---|
| **Project reviews and related consulting support for Client per above Agrement for months** | | | |
| **April base CM Fee** | | $ | 5,000.00 |
| **Supplemental service for Eddie Aquino** | hours completed | | 29.00 |
| | 165/hour | $ | 4,785.00 |
| Summary of work planned this month | | | |
| see ATTACHED | | | |
| Summary of work Completed from last month | | | |
| see ATTACHED | | | |
| **Total this invoice** | | | **9,785.00** |
| **Total Service Cost this invoice** | | | **9,785.00** |
| Reimbursable Expense (see attached) | | $ | - |
| **TOTAL Due** | | **$** | **9,785.00** |

Please make all checks payable to Pennington Construction Advisors, Inc.
Please call for pick up  or fell free to mail
If you have any questions concerning this invoice, Please contact Todd C. Pennington
at 949-637-6210 or email me at the following email address- TODD@PennCohc. com

**THANK YOU FOR YOUR BUSINESS!**



Work planned for month

Purpose- general goals for month, yet not all items will complete this month

| | | | |
|---|---|---|---|
| 1 | attend design review meetings by phone | | |
| 2 | continue gc/trade outreach on pre-quals | | |
| 3 | review status and needs for entitlement | | |
| 4 | prep scope development of project | | |
| 5 | review needs with david park | | |
| 6 | continue eddie aquino on estimate/schdule support for project as per amendment | | |
| 7 | update estimate with program changes and timelines | | |
| 8 | update master schedule | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| | | | |



Summary of work planned for Month

| Item | Item Description | Status | Est. Cost Estimate |
|---|---|---|---|
| 1 | several meetings with david park on updates | ongoing | |
| 2 | Meeting with Sukut, stice, mark company and 2 others in outreach | ongoing | |
| 3 | review Prior Estimates and breakdowns for updates and trends | ongoing | |
| 4 | general timeline planning on entitlement porcess | ongoing | |
| 5 | conduct meeting in review of nbew plans | ongoing | |
| 6 | review plannig to new options and advise on planning | ongoing | |
| 7 | review needs for refi and solicit contacts | ongoing | |
| 8 | meeting with fry and david on progress planning | ongoing | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| | | | |

# PENNINGTON CONSTRUCTION ADVISORS, INC.

*Driven to Build, Companies, Projects and People !*

79 bell pasture road
Ladera ranch, ca 92694
Phone 949-637-6210  Fax 949-234-0050

FEIN #45-278-0223

| | |
|---|---|
| **DATE:** | May 30.2020 |
| **INVOICE** | **May** |
| **INVOICE #** | **5** |

**FOR:** *Baseline Initial CM Services for 2929 Amethyst project, Los Angeles, Ca. Per Consulting agreement Dated 9.25.19*

**Bill To:**
David Park
Betula Lenta
800 west 6th Street
Los Angeles, CA 90017
Telephone: (213) 537-0439 Email: david@jdevelopment.com

| Dates | Activity Descriptions | | AMOUNT |
|---|---|---|---|
| Project reviews and related consulting support for Client per above Agrement for months | | | |
| April base CM Fee- correction, this is for May | | $ | 5,000.00 |
| Supplemental service for Eddie Aquino | hours completed | | 22.00 |
| | 165/hour | $ | 3,630.00 |
| Summary of work planned this month | | | |
| see ATTACHED | | | |
| Summary of work Completed from last month | | | |
| see ATTACHED | | | |
| **Total this invoice** | | | **8,630.00** |
| **Total Service Cost this invoice** | | | **8,630.00** |
| Reimbursable Expense (see attached) | | $ | - |
| | **TOTAL Due** | **$** | **8,630.00** |

Please make all checks payable to Pennington Construction Advisors, Inc.
Please call for pick up or fell free to mail
If you have any questions concerning this invoice, Please contact Todd C. Pennington
at 949-637-6210 or email me at the following email address- TODD@PennCohc.com

**THANK YOU FOR YOUR BUSINESS!**



Work planned for month

Purpose- general goals for month, yet not all items will complete this month

| | | | |
|---|---|---|---|
| 1 | attend design review meetings by phone | | |
| 2 | continue gc/trade outreach on pre-quals | | |
| 3 | review status and needs for entitlement | | |
| 4 | prep scope development of project | | |
| 5 | review needs with david park | | |
| 6 | continue eddie aquino on estimate/schdule support for project as per amendment | | |
| 7 | update estimate with program changes and timelines | | |
| 8 | update master schedule | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |



Summary of work planned for Month

| Item # | Activity Description | Minutes | Minutes Monthly Accumulated |
|---|---|---|---|
| 1 | several meetings with david park on updates | ongoing | |
| 2 | Meeting with Sukut, stice, mark company and 2 others in outreach | ongoing | |
| 3 | review Prior Estimates and breakdowns for updates and trends | ongoing | |
| 4 | general timeline planning on entitlement porcess | ongoing | |
| 5 | conduct meeting in review of nbew plans | ongoing | |
| 6 | review plannig to new options and advise on planning | ongoing | |
| 7 | review needs for refi and solicit contacts | ongoing | |
| 8 | meeting with fry and david on progress planning | ongoing | |
| 9 | re-bid to 5 GCs to entire infrastructure bids and level | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |

# PENNINGTON CONSTRUCTION ADVISORS. INC.

*Driven to Build, Companies, Projects and People !*

| | |
|---|---|
| 79 bell pasture road- changed | **DATE:** June 1, 2020 |
| ladera ranch, ca 92694 | **INVOICE** **June** |
| Phone 949-637-6210   Fax 949-234-0050 | **INVOICE #** **6** |

FEIN #45-278-0223

**FOR:** *Baseline Initial CM Services for 2929 Amethyst project, Los Angeles, Ca. Per Consulting agreement Dated 9.25.19*

**Bill To:**
David Park
Betula Lenta
800 west 6th Street
Los Angeles, CA 90017
Telephone: (213) 537-0439 Email: david@jdevelopment.com

| Dates | Activity Descriptions | | AMOUNT |
|---|---|---|---|
| | Project  reviews and related consulting support for Client per above Agrement for months | | |
| | May-june base CM Fee | $ | 10,000.00 |
| | Supplemental service for Eddie Aquino | hours completed | 12.00 |
| | | 165/hour    $ | 1,980.00 |
| | Summary of work planned this month | | |
| | see ATTACHED | | |
| | | | |
| | Summary of work Completed from last month | | |
| | see ATTACHED | | |
| | **Total this invoice** | | **11,980.00** |
| | **Total Service Cost this invoice** | | **11,980.00** |
| | Reimbursable Expense (see attached) | $ | - |
| | **TOTAL Due** | **$** | **11,980.00** |

Please make all checks payable to Pennington Construction Advisors, Inc.
Please call for pick up  or fell free to mail
If you have any questions concerning this invoice, Please contact Todd C. Pennington
at 949-637-6210 or email me at the following email address- TODD@PennCohc. com

**THANK YOU FOR YOUR BUSINESS!**



Work planned for month

Purpose- general goals for month, yet not all items will complete this month

| | | | |
|---|---|---|---|
| 1 | attend design review meetings by phone | | |
| 2 | continue gc/trade outreach on pre-quals | | |
| 3 | review status and needs for entitlement | | |
| 4 | prep scope development of project | | |
| 5 | review needs with david park | | |
| 6 | continue eddie aquino on estimate/schdule support for project as per amendment | | |
| 7 | update estimate with program changes and timelines | | |
| 8 | update master schedule | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |



Summary of work planned for Month

| # | | | |
|---|---|---|---|
| 1 | several meetings with david park on updates | ongoing | |
| 2 | Meeting with Sukut, stice, mark company and 2 others in outreach | ongoing | |
| 3 | review Prior Estimates and breakdowns for updates and trends | ongoing | |
| 4 | general timeline planning on entitlement porcess | ongoing | |
| 5 | conduct meeting in review of nbew plans | ongoing | |
| 6 | review plannig to new options and advise on planning | ongoing | |
| 7 | review needs for refi and solicit contacts | ongoing | |
| 8 | meeting with fry and david on progress planning | ongoing | |
| 9 | re-bid to 5 GCs to entire infrastructure bids and level | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| | | | |

# PENNINGTON CONSTRUCTION ADVISORS. INC.

*Driven to Build, Companies, Projects and People !*

79 bell pasture road
Ladera Ranch ca 92692

Phone 949-637-6210

FEIN #45-278-0223

| | |
|---|---|
| **DATE:** | June 1, 2020 |
| | **Jinzheng Interest** |
| **INVOICE** | **costs** |
| **INVOICE #** | **8 interest** |

**FOR:** *Baseline Initial CM Services for 2929 Amethyst project, Los Angeles, Ca. Per Consulting agreement Dated 9.25.19*

Bill To:
David Park
Betula Lenta
800 west 6th Street
Los Angeles, CA 90017
Telephone: (213) 537-0439 Email: david@jdevelopment.com

| Dates | Activity Descriptions | AMOUNT |
|---|---|---|
| | this invoice is for the interest costs from invoice submission late paymnt date through 1.27.22 plus a $5,000 credit for May 2020 billing duplications in invocie #6 and related interest  on al unpaid invoices per contract terms section 7. | |
| | **total interest and credit reimburasment cost** | **$        5,042.15** |
| | This below amount is for Interest accumualted from date of invoice to date of settlment | |
| | Invoice #1- Services for October 2019-December 2019 | not paid |
| | Invoice #2- Services for January 2020-February  2020 | not paid |
| | Invoice #3- Services for march 2020 | not paid |
| | Invoice #4- Services for October 2019-December 2022 | not paid |
| | Invoice #5- Services for October 2019-December 2023 | not paid |
| | Invoice #6-  Services for October 2019-December 2024 | not paid |
| | Invoice #7  Collection and BK administrative costs- not yet submittd | not paid |
| | Invoice #8 interest and invoice #6 cresdt- see breakdown attached | $        5,042.15 |
| | | |
| | Sub total of above invoice due no | **5,042.15** |
| | | |
| | Reimbursable Expense (see attached) | $                - |
| | **TOTAL Due** | **$    5,042.15** |

Please make all checks payable to Pennington Construction Advisors, Inc.
Please call for pick up  or fell free to mail
If you have any questions concerning this invoice, Please contact Todd C. Pennington
at 949-637-6210 or email me at the following email address- TODD@PennCot. com

**THANK YOU FOR YOUR BUSINESS!**



Work planned for month

Purpose- general goals for month, yet not all items will complete this month

| | | | |
|---|---|---|---|
| 1 | attend design review meetings by phone | | |
| 2 | continue gc/trade outreach on pre-quals | | |
| 3 | review status and needs for entitlement | | |
| 4 | prep scope development of project | | |
| 5 | review needs with david park | | |
| 6 | continue eddie aquino on estimate/schdule support for project as per amendment | | |
| 7 | update estimate with program changes and timelines | | |
| 8 | update master schedule | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| | | | |



Summary of interest costs per month for late invoices from date of submission to 8.24.21 date of Bankruptcy which became case # 2:21-16674- -ER realted to the debtor Jinzheng Group (USA) LLC BK filing

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1.1.20 | 2.1.20 | Oct-dec 2019 | Project reviews, related consulting, estimating and planning consulting services per contract | $ 15,000.00 | 19 | 1.00% | $ 150.00 | $ 2,850.00 | |
| 2 | 2.28.20 | 4.1.20 | Jan-feb 2020 | Project reviews, related consulting, estimating and planning consulting services per contract | $ 10,000.00 | 17 | 1.00% | $ 100.00 | $ 1,700.00 | |
| 3 | 3.30.20 | 5.1.20 | Mar-20 | Project reviews, related consulting, estimating and planning consulting services per contract | $ 11,930.00 | 16 | 1.00% | $ 119.30 | $ 1,908.80 | |
| 4 | 4.30.20 | 6.1.20 | Apr-20 | Project reviews, related consulting, estimating and planning consulting services per contract | $ 9,785.00 | 15 | 1.00% | $ 97.85 | $ 1,467.75 | this was April billing |
| 5 | 5.30.20 | 7.1.20 | May-20 | Project reviews, related consulting, estimating and planning consulting services per contract | $ 8,630.00 | 14 | 1.00% | $ 86.30 | $ 1,208.20 | this was for may and not April |
| 6 | 6.30.20 | 8.1.20 | Jun-20 | Project reviews, related consulting, estimating and planning consulting services per contract | $ 11,980.00 | 13 | 1.00% | $ 119.80 | $ 1,557.40 | note actually billed May twice |
| 6R | not submitted yet | | | Credit of $5000 due to a duplicate billing of May which is reduced herein | $ (5,000.00) | 13 | 1.00% | $ (50.00) | $ (650.00) | |
| 6R | not submitted yet | | | credit for overbilling of May in invoice #6 | | | | | $ (5,000.00) | |
| | note: services put on hold by Betula lenta / Client due to non payment of services | | | | | | | | | |
| | | | | service sub total | $ 62,325.00 | | | | $5,042.15 | |
| | | | | | | | | | | total claim amount due exclusive of administrative costs |
| 7 | not submitted yet | | | Claim and BK administrative costs realted to this collection | pending | | | | $ 67,367.15 | |
| 8 | not submitted yet | | | Interest costs on unpaid invoices | | | | | | |
| | | | | | | | | | | |
| | | | | Total interest cost less adjustment of May duplicate billin | | | | | $ 5,042.15 | |
| | | | | | | | | | | |
| | | | per contract section 7, all late payments shall bare a fee of 1% per month of full balance due after late due date ( 30 days after submission) | | | | | | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **4158 14th Street, Riverside, CA 92501**

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION TO PROOF OF CLAIM NO. 20 OF PENNINGTON CONSTRUCTION ADVISORS, INC; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHRISTOPHER J. LANGLEY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 16, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Donna C Bullock    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com**
**Michael F Chekian    mike@cheklaw.com, chekianmr84018@notify.bestcase.com**
**Susan Titus Collins    scollins@counsel.lacounty.gov**
**Jeffrey W Dulberg    jdulberg@pszjlaw.com**
**Richard Girgado    rgirgado@counsel.lacounty.gov**
**M. Jonathan Hayes    jhayes@rhmfirm.com,**
**roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com**
**Christopher J Langley    chris@slclawoffice.com,**
**omar@slclawoffice.com;langleycr75251@notify.bestcase.com**
**Benjamin R Levinson    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com**
**Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com**
**Giovanni Orantes    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com**
**Matthew D. Resnik    matt@rhmfirm.com,**
**roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com**
**Allan D Sarver    ADS@asarverlaw.com**
**David Samuel Shevitz    david@shevitzlawfirm.com,**
**shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com**
**United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
**Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov**

☐    Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) February 16, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Ernest M. Robles
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

☐    Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:

(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 16, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 16, 2022 | John Martinez | /s/John Martinez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

DEBTOR-IN-POESSION'S OBJECTION TO CLAIM 20