| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Gene H. Shioda – SBN 186780<br>ghs@slclawoffice.com<br>Christopher J. Langley – SBN 258851<br>chris@slclawoffce.com<br>Steven P. Chang – SBN 221783<br>schang@slclawoffice.com<br>SHIODA, LANGLEY & CHANG LLP<br>1063 E. Las Tunas Dr.<br>San Gabriel, CA 91776<br>Tel: (626)281-1232<br>Fax: (626)281-2919<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:*  Jinzheng Group (USA), LLC | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>JINZHENG GROUP (USA), LLC<br><br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:21-bk-16674-ER<br><br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION FOR:**<br><br>MOTION TO CHANGE MEMBERSHIP AND DISBAND OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 1102(a)(4) AND 105(a)<br><br><br>(*Specify name of Motion*) |
| | DATE: 03/22/2022<br>TIME:  10:00 am<br>COURTROOM: 1568<br>PLACE: 255 E. Temple Street, Los Angeles, CA 90012 |

1. TO (*specify name*):  Official Committee of Unsecured Creditors, U.S. Trustee and All Parties in Interest

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

Case 2:21-bk-16674-ER    Doc 135    Filed 03/01/22    Entered 03/01/22 16:02:36    Desc
Main Document    Page 2 of 29

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  03/01/2022

SHIODA, LANGLEY & CHANG LLP
Printed name of law firm


/s/Christopher J. Langley
Signature


Christopher J. Langley
Printed name of attorney

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 2                    **F 9013-1.1.HEARING.NOTICE**

Gene H. Shioda – SBN 186780
ghs@slclawoffice.com
Christopher J. Langley – SBN 258851
chris@slclawoffce.com
Steven P. Chang – SBN 221783
schang@slclawoffice.com
**SHIODA, LANGLEY & CHANG LLP**
1063 E. Las Tunas Dr.
San Gabriel, CA 91776
Tel: (626)281-1232
Fax: (626)281-2919

Counsel for Jinzheng Group (USA) LLC
Debtor and Debtor-in-Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:21-bk-16674-ER |
| JINZHENG GROUP (USA) LLC | Chapter 11 |
| Debtor and Debtor in Possession. | **MOTION TO CHANGE MEMBERSHIP AND DISBAND OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 1102(a)(4) AND 105(a)** |
| | **DECLARATION OF CHRISTOPHER J. LANGLEY IN SUPPORT THEREOF** |
| | Hearing: |
| | Date:        March 22, 2022<br>Time:        10:00 a.m.<br>Location:   Courtroom 1568<br>                255 E. Temple St.<br>                Los Angeles, CA 90012 |

1

## I.  INTRODUCTION

By this Motion, Jinzheng Group (USA), LLC ("Debtor") moves for an order to change membership and disband the Official Committee of Unsecured Creditors ("Committee") pursuant to 11 U.S.C. §§ 1102(a)(4) and 105(a).  The Committee consists of three members: Betula Lenta, Inc. ("Betula"), Pennington Construction Advisors, Inc. ("Pennington"), and The Phalanx Group, Inc. ("Phalanx").  Each of the members have filed proofs of claim.  Debtor has objected to each of their claims, which are set for hearing concurrently with this Motion.

The Committee does not and cannot adequately represent the interests of unsecured creditors.  Betula is an insider with an actual and unavoidable conflict of interest as it is currently being sued by Debtor for breach of contract, intentional misrepresentation, and negligence.  Pennington is a creditor of Betula—not Debtor.  And Phalanx admits it was not licensed to perform the services contracted for and, to date, has failed to provide any explanation or documentation for the services it allegedly provided Debtor.  Therefore, Betula, Pennington, and Phalanx should be removed as members of the Committee.

The Committee should be disbanded because there is no need for its services.  Within days, Debtor will propose a reorganization plan that will pay allowed general unsecured claims in full.  Debtor disputes most, if not all, of the general unsecured claims that have been filed against the estate and is prosecuting claim objections.  To date, ten proofs of claim asserting general unsecured claims have been filed.  Five of those holders are already represented by counsel.  The other five holders assert claims that Debtor has already objected to or will be objecting to.  The Committee was appointed five months after the Petition Date and is being organized by Betula to thwart Debtor's new counsel for investigating and prosecuting its mismanagement claims against Betula.

Accordingly, good cause exists to grant this Motion.  Debtor respectfully requests the Court enter an order that (i) removes Betula, Pennington, and Phalanx as members of the Committee, and (ii) disbands the Committee, pursuant to 11 U.S.C. §§ 1102(a)(4) and 105(a).

## II.    STATEMENT OF FACTS

### A.    The Debtor and Real Property

Debtor is a single member LLC that is wholly owned by Mr. Jiaqing Yang.  Mr. Yang currently resides in China and has not been to the United States since the global outbreak of Covid-19.  Debtor was managed by Betty Zheng.

Between August 2016 and July 2017, the Debtor acquired approximately 32 contiguous acres in Los Angeles that it intended to develop (the "Los Angeles Properties").  All funds used to obtain the Los Angeles Properties were contributed by Mr. Yang as capital contributions into the Debtor.  The Los Angeles Properties have a collectively value of $26,316,600.  They are cross-collateralized with a first priority deed of trust held by Royal Equity Lending to secure the amount of $9,353,009.  POC 2.  They are also encumbered with a tax lien for tax years 2019 and 2020. (The Debtor is current on property taxes in 2021.)  POC 1.  A table summarizing the Debtor's real property holdings is attached to the Langley Declaration as **Exhibit 1**.

To further fund the development of the Los Angeles Properties, Mr. Yang transferred to the Debtor two single family homes that he personally owned ("Transferred Properties") and which the Debtor borrowed against.  See Langley Dec., Ex. 1.

### B.    The Debtor Contracts with Betula Lenta, Inc. to Develop the
### Los Angeles Properties

Beginning in December 2017, Ms. Zheng caused the Debtor to contract with Betula Lenta, Inc. ("Betula"), a real estate consultancy company, to assist it with the development of the Los Angeles Properties. Betula describes itself as "a team of the best real estate consultants providing solutions for real estate investors looking for opportunities to invest in development or investors for their developments."  https://www.betulalenta.com/about-us.  Betula was directed by Jonathan Pae and David Park.

Ultimately, Debtor and Betula entered into three contracts (collectively, the "Betula Agreements"):

- A "Predevelopment Consulting Agreement" dated December 7, 2017, in which the Debtor agreed to pay Betula $2,594,000 for consulting services.

1    • A "Construction Management Agreement" dated June 22, 2018, in which the

2        Debtor agreed to pay Betula an additional $4,517,913.00 for "phase 2" services.[1]

3    • A "CFD Bonds Procurement – CM – Development Agreement" dated March 13,

4        2019, in which the Debtor agreed to pay Betula an additional $6,224,490.00 for

5        "construction" services.

6        While the Betula Agreements totaled over $13,336,903.00 and much of the fees were paid,

7    the Los Angeles Properties remain unentitled and undeveloped.

8        **C.    The Bankruptcy Case and Debtor's Employment of New Counsel**

9        On August 24, 2021, Ms. Zheng and Betula caused the Debtor to file a voluntary petition

10   under Chapter 11, initiating this Bankruptcy Case.

11       Betula and Mr. Pae were personally involved with the Debtor's bankruptcy filing.  Mr.

12   Pae, as CEO of Betula, signed the Debtor's corporate authorization to file this bankruptcy case.

13   Doc. 14 (Corporate Authorization).  Likewise, Debtor's SOFA, filed by its former attorney, Donna

14   Bullock, represents that Betula owned a 10% interest in the Debtor.  Doc. 30 (SOFA).  It also

15   represents that the Debtor paid $324,194 to Betula on "1/1 & 4/22/21" for the purpose of

16   "Developer/Project Manager."  *Id.*  Copies of the Corporate Authorization and SOFA are attached

17   to the Langley Declaration as **Exhibit 6**.[2]

18       On November 29, 2021, Ms. Zheng resigned as the Debtor's manager when its new

19   counsel, Shioda Langley & Chang, LLP ("SLC"), began inquiring about the Debtor's dealings

20   with Betula, Mr. Pae, and Mr. Park.

21       On December 6, 2021, the Debtor filed a substitution of attorney naming SLC as its new

22   counsel.  That same day, the Debtor filed a motion to employ new counsel and a motion to set a

23

24   [1] It appears that to pay for this contract, Betula assisted Debtor in obtaining a short-term loan (18 months) for

25   $7,000,000 from BOBS LLC with a balloon payment due April 1, 2020. BOBS LLC later transferred the claim to
     Royalty Equity Lending (POC 2).

26   [2] Ms. Bullock has described Betula as the "Project Manager" for the Debtor's development of the Los Angeles
     Properties, and was responsible for, among other things, obtaining financing for the project and employing Ms.

27   Bullock to file this bankruptcy case.  *See Opposition to Motion by Debtor to Determine Whether Compensation Paid
     to Counsel Was Excessive Under 11 USC § 329 and FRBP 2017* [Doc. 101] at 4-7; *Declaration of Donna Bullock in*

28   *Opposition to Motion by Debtor to Determine Whether Compensation Paid to Counsel Was Excessive* [Doc. 103] at
     ¶¶ 2-5.  In these pleadings, Ms. Bullock repeatedly refers to Betula, specifically Mr. Pae and Mr. Park, as party to
     Debtor's management team.

1  claims bar date.  Doc. 49 (SLC Employment App); Doc. 51 (Motion for Bar Date).  The Debtor's

2  new counsel bills at the hourly rates of $360 (associates) to $450 (partners), and $180 for

3  paralegals.  Doc. 49 (SLC Employment App).

4      Shortly thereafter, SLC started formally investigating the Debtor's dealings with Betula by

5  noticing the 2004 examinations of Mr. Pae and Mr. Park.  See Doc. 60, 72, 73 (Orders Approving

6  2004 Examinations).  To date, neither Mr. Pae nor Mr. Park have appeared for their 2004

7  examinations.  Pursuant to a stipulation by the Parties, Mr. Pae and Mr. Park are to appear for their

8  examinations on March 2 and 3, 2022, respectively.

9      The claims bar date was February 4, 2022.  Doc. 55 (Order Setting Last Day to File

10  Claim).  To date, twenty-one (21) proofs of claim have been filed against the Debtor's bankruptcy

11  estate.  A table summarizing the proofs of claim filed is attached to the Langley Declaration as

12  **Exhibit 2**.

13          **D.     The State Court Action**

14      On February 7, 2022, Debtor filed a complaint against two sets of defendants (i) Mr.  Pae,

15  Mr. Park, and Betula (the "Betula Parties"), and (ii) Ms. Zheng and her real estate company, CBW

16  Global, Inc. (the "Zheng Parties"), with the Superior Court of California, County of Los Angeles,

17  initiating *Jinzheng Group (USA), LLC v. Pae et al*, Case No. 22STCV04623 ("SC Action").  A

18  copy of the complaint ("SC Complaint") is attached to the Langley Declaration as **Exhibit 3**.

19      In the SC Complaint, the Debtor alleges that Betula is the alter ego of Mr. Pae and Mr.

20  Park, and that CBW Global is the alter ego of Ms. Zheng.  The Debtor alleges that Ms. Zheng

21  introduced the Debtor's sole managing member, Mr. Yang, to Mr. Pae and Mr. Park, on behalf of

22  themselves and Betula, to assist Debtor in developing the Los Angeles Properties.  The Debtor

23  alleges that Ms. Zheng, Mr. Pae, and Mr. Park conspired to charge it over $12 million in false

24  service fees pursuant to the Betula Agreements described above.

25      The SC Complaint pleads causes of action for (i) breach of contract against the Betula

26  Parties, (ii) intentional misrepresentation against the Betula and Zheng Parties, (iii) negligent

27  misrepresentation against the Betula and Zheng Parties, (iv) negligence against the Betula and

28  Zheng Parties, (v) breach of fiduciary duty against the Zheng Parties, (vi) aiding and abetting

1  against the Betula and Zheng Parties, an (vii) unfair business practices against the Betula and

2  Zheng Parties.  The Debtor seeks general damages in excess of $5,000,000, plus special damages,

3  punitive damages, and attorney's fees and costs.

4      To date, the Betula and Zheng Parties have not responded to the complaint.

5      **E.**    **The Appointment of the Committee and Debtor's Objections to Committee**

6      **Members' Claims**

7      On January 25, 2022, the United States Trustee ("UST") filed a notice appointing the

8  Committee, including Betula, Pennington, and Phalanx.  Doc. 93.

9      Each of the Committee's members have filed proofs of claim.  Debtor has objected to each

10  those claims, which are set for hearing concurrently with this Motion.

11      **1.**    **The Betula Claim (POC 18) and Betula Claim Objection [Doc. 120]**

12      Betula filed a proof of claim (POC 18) for a general unsecured claim in the amount of

13  $1,643,977.00 ("Betula Claim").  The basis of the Betula Claim is "Services performed. Expenses

14  paid to 3rd parties per contract. Consulting."  It attaches copies of the Betula Agreements but does

15  not provide any narrative or accounting beyond that.

16      In response to SLC's requests, Betula has provided a summary that is devoid of

17  meaningful detail (other than acknowledging Debtor paid $6,971,726 to Betula):

**2929 Amethyst**

| | |
|---|---|
| Original Contract Amount | 11,754,928 |
| Change Order Amount | 1,500,000 |
| Total Amount | 13,254,928 |
| | |
| Amount Received from Jinzheng group (As of 2/3/2022) | 6,971,726 |
| % work done | 65% |
| The Calculated amount by work done | 8,615,703.20 |
| Outstanding amount | 1,643,977 |

27

28  Betula Claim Objection [Doc. 120], Langley Dec., Ex. B (Email from Betula counsel).

On February 19, 2022, Debtor objected to the Betula Claim [Doc. 120] ("Betula Claim Objection"), arguing that Betula, Mr. Pae, and Mr. Park have not (i) provided a report describing the services Betula provided to Debtor under the Betula Agreements, (ii) explained why it is entitled to payment on 65% of the contracted services, or (iii) appeared to testify at the 2004 examinations of Mr. Pae and Mr. Park (which are now scheduled for March 2 and 3, 2022).

**2.    The Pennington Claim (POC 20) and Pennington Claim Objection [Doc. 107]**

Pennington filed a proof of claim (POC 20) for a general unsecured claim in the amount of $75,000.00 ("Pennington Claim"). The basis of the Pennington Claim is "Services performed <u>per contract</u> and not paid." Emphasis added. It attaches copies of proposals and agreements between it and Betula. Debtor is not a party to those proposals and agreements. The Pennington Claim does not attach any agreement between it and Debtor.

On February 16, 2020, Debtor objected to the Pennington Claim [Doc. 107] ("Pennington Claim Objection"), arguing that there is no contract between Debtor and Pennington and therefore the Pennington Claim (based on contract) must be disallowed.

**3.    The Phalanx Claim (POC 17)**

Phalanx filed a proof of claim (POC 17) for a general unsecured claim in the amount of $158,845.00 ("Phalanx Claim"). The basis of the Phalanx Claim is "services performed." It attaches a copy of a "Security Consulting Agreement" between Phalanx and Debtor.[3] The agreement's recitals define Phalanx as either a "Security Company" or "Security Consultant" that "operates a business of providing security recommendations and management services of security related matters." It further recites that "[Phalanx] desires to provide security and patrol services recommendation to [Debtor] at [Debtor's] property and [Debtor] desires to obtain such services from [Phalanx]."

---

[3] The Security Consulting Agreement was signed by Anthony Rodriguez on behalf of Phalanx on May 1, 2019, and by Betty Zheng on behalf of Debtor on August 1, 2019. Phalanx Claim, Part 2 (Security Consulting Agreement) at 5 (of 6). It is not clear why three months passed between the parties executing the agreement. Nonetheless, Phalanx issued invoices to Betula (not Debtor) on April 29, June 1, July 1, and August 1, 2019. *Id.*, Part 4 (Invoices) at 1-4 (of 32).

1    On February 17, 2022, Debtor objected to the Phalanx Claim [Doc. 1133] ("Phalanx Claim

2    Objection"), arguing there is no evidence that Phalanx actually performed the services contracted

3    for or that Phalanx (as a private patrol operator) was licensed to perform such security consulting

4    services.  *See* Bus. & Prof. Code § 7582.3, L.A. Municipal Code § 52.34(b).

5    In response to the Phalanx Claim Objection, a legal assistant for Phalanx's counsel sent an

6    email to SLC that (i) acknowledged Phalanx does not have a private patrol operator license, (ii)

7    insisted Phalanx provided "consultation for security issues and not actual private guard work for

8    which a security license is required", and (iii) represented that none of the fees owed are for any

9    guard services or for services provided by a 3rd party vendor.  A copy of said email is attached to

10    the Langley Declaration as **Exhibit 4**.  To date, Phalanx has not provided any explanation of what

11    "consultation" services it provided Debtor to justify its claim against Debtor's bankruptcy estate.

12    **F.    Debtor's Efforts to Meet and Confer with U.S. Trustee to Reconsider Its**

13    **Appointment of the Committee**

14    On February 1, 2022, SLC sent a letter to the Hatty Yip, Trial Attorney with the Office of

15    the United States Trustee ("UST"), asking her to reconsider her office's appointment of the

16    Committee.  A copy of said letter is attached to the Langley Declaration as **Exhibit 5**.  Ms. Yip

17    responded that she would look into Debtor's concerns.  To date, however, the UST has not taken

18    any action to address them.

19    On February 8, 2022, the Committee filed an application to employ Pachulski Stang Ziehl

20    & Jones LLP ("PSZJ") as counsel.  Doc. 98.  PSZJ's attorneys bill at the hourly rates of $975 to

21    $1,145 (partners), and $495 for paralegals.  PSZJ's attorneys bill at hourly rates that are more than

22    double that of Debtor's counsel.  Even PSZJ's paralegals bill at rates higher than Debtor's

23    attorneys.

24    On February 22, 2022, Debtor objected to the PSZJ employment application and requested

25    a hearing.  Doc. 125.

26    **G.    The Debtor's Proposed Reorganization**

27    Before the hearing on this Motion, Debtor will propose a plan of reorganization that will

28    restructure the secured debt against the Los Angeles Properties, sell the San Marino Property, sell

8

1  or refinance the Van Nuys Property, and pay all allowed general unsecured claims in full after

2  claim objections and pending state court litigation.  The plan will be funded by capital

3  contributions by Debtor's principal, Mr. Yang  As the plan will pay allowed general unsecured

4  claims in full, Debtor believes there is no need for the Committee in this case.

5  ### H.    The Requested Relief

6  By this Motion, the Debtor asks the Court to order the UST to (i) change the membership

7  of the Committee by removing Betula, Pennington, and Phalanx as members, and (ii) disband the

8  Committee pursuant to 11 U.S.C. § 1102.

9  ## III.    ARGUMENT

10  ### A.    Applicable Law

11  Section 1102(a)(1) requires the UST to appoint a committee of creditors holding unsecured

12  claims.  However, on request of a party in interest and after notice and hearing, the court may

13  order the UST to change the membership of a committee appointed, if the court determines that

14  the change is necessary to ensure <u>adequate representation</u> of creditors or equity security holders.

15  11 U.S.C. § 1102(a)(4).  Likewise, the court may issue any order appropriate or necessary to carry

16  out the provisions of the Code.  11 U.S.C. § 105(a); *In re Shorebank Corp.*, 467 B.R. 156, 160

17  (Bankr. N.D. Ill. 2012) ("Despite the repeal of section 1102(c), however, courts continued to inject

18  themselves into the committee process, often invoking section 105(a) ... as a basis for 'reviewing

19  the U.S. Trustee's appointments.").

20  Courts review "adequate representation" under § 1102(a)(4) independently of the UST's

21  decision.  *Shorebank*, 467 B.R. at 161-162.  The bankruptcy court does not serve an appellate

22  function or a role akin to administrative review.  *Id.*  Instead, the Code "explicitly permits litigants

23  to seek judicial review of the UST's administrative acts.  *In re Cont'l Cast Stone*, 625 B.R. 203,

24  207 (Bankr. D. Kan. 2020).  "Because adequate representation is a purely legal question, it must

25  be resolved judicially after the U.S. trustee's administrative task is complete.  Because the U.S.

26  trustee does not produce a record or rationale for its decision, it is inaccurate to consider the

27  standard of review under § 1102.  Instead, it more appropriate to treat the court's inquiry as an

28  independent review of the adequacy of representation."  *Id.*

1    Adequate representation is not defined under § 1102.  *Id.*  Courts have employed a variety

2    of factors to determine whether representation is adequate, including (1) the ability of the

3    committee to function, (2) the nature of the case, (3) the standing and desires of the various

4    constituencies, (4) the ability for creditors to participate in the case without an official committee,

5    (5) the possibility that different classes would be treated differently under a plan and need

6    representation, and (6) the motivation of the movant.  *Id.* at 207-208 (quoting *Shorebank*, 467 B.R.

7    at 162).

8    In addition, courts may also consider whether a committee member has a conflict of

9    interest with the creditor body it represents.  *Shorebank*, 467 B.R. at 161; *Cont'l Cast Stone*, 625

10    B.R. at 208.  "The mere presence of conflicts, though, is insufficient to show a lack of adequate

11    representation."  *Shorebank*, 467 B.R. at 161.  "Because a committee represents the interests of all

12    unsecured creditors, and because those creditors inevitably have different interests, courts

13    recognize that conflicts are inherent in any committee."  *Id.*  "Before a conflict necessitates

14    reconstitution of a committee, then, there must be specific evidence that the committee member or

15    members with the conflict have breached or are likely to breach their fiduciary duties [to the other

16    creditors]."  *Id.* (citing cases).

17    Conflicts of interest often arise when insiders are placed on a committee.  7 COLLIER ON

18    BANKRUPTCY ¶ 1102.02[2][a][vi].[4]  "[I]nsiders have an obvious potential conflict of interest in

19    that they have a relationship to the debtor separate from their relationship as a creditor. There is

20    also the concern that confidential communications among creditors' committee members will be

21    disclosed to the debtors."  *Id.*

22    "Most decisions considering this issue have held that insiders should not be excluded on a

23    *per se* basis from serving on a creditors' committee.  Instead, "[t]he relationship between a

24    particular insider and the debtor can be examined ... on a case by case basis to determine whether

25    the relationship justifies exclusion of the person from the creditors' committee."  *Id.* (citing *In re*

26

27    _____

28    [4] As a practical matter, this is a relatively rare occurrence as "most insiders with claims against the debtor do not get
invited to serve on the creditors' committee for the simple reason that they do not appear on the list of 20 largest
creditors filed by the debtor pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure."  *Id.*

1   *Venturelink Holdings, Inc.*, 299 B.R. 420 (Bankr. N.D. Tex. 2003) (as a matter of public policy,

2   former officers or directors should not be allowed to serve on a creditors' committee); *In re Nyack*

3   *Autopartstores Holding Co.*, 98 B.R. 659 (Bankr. S.D.N.Y. 1989) (insiders not per se excluded

4   from committee; cousin of chief operating officer allowed to serve on committee); *In re Swolsky*,

5   13 C.B.C.2d 985, 55 B.R. 144 (Bankr. N.D. Ohio 1985) (husband of key employee of debtor

6   removed from committee); *In re Salant Corp.*, 53 B.R. 158 (Bankr. S.D.N.Y. 1985) (non-

7   management employees with claims should be represented on creditors' committee); *In re*

8   *Glendale Woods Apts.*, Ltd., 25 B.R. 414 (Bankr. D. Md. 1982) (insiders removed from committee

9   due to concerns over confidentiality of communications among committee members); *In re*

10  *Vermont Real Estate Inv. Trust*, 6 C.B.C.2d 862, 20 B.R. 33 (Bankr. D. Vt. 1982) (insiders not per

11  se excluded from committee; wife of former president of debtor who is also defendant in lawsuit

12  brought by debtor allowed to serve on creditors' committee); *In re Daig Corp.*, 17 B.R. 41 (Bankr.

13  D. Minn. 1981) (father of debtor's chairman should not serve on creditors' committee)).

14       Finally, it is axiomatic that a creditors committee consisting of a single creditor should not

15  be appointed "for that is inherently inconsistent with the notion of a committee.  Any single

16  creditor ought to look after its rights in its own name."  *In re M.H. Corp.*, 30 B.R. 266, 267

17  (Bankr. S.D. Ohio 1983).  *See also* 7 COLLIER ON BANKRUPTCY ¶ 1102.02[2][a][vi] ("A

18  committee of one has been held insufficient." (citing *M.H. Corp.*)).

19       **B.    The Committee Does Not Adequately Represent the Interests of Unsecured**

20            **Creditors**

21       The Committee does not adequately represent the interests of unsecured creditors.

22       First, regarding the ability of the Committee to function, the Committee's members have

23  not cooperated with Debtor's discovery efforts as to the most basic issue—the basis and amount

24  for their claims against Debtor's bankruptcy estate.  Likewise, Betula and Phalanx have not

25  explained nor documented the basis of their claims against Debtor's bankruptcy estate.

26  Meanwhile, Pennington has provided a contract and invoices demonstrating that has a claim

27  against Betula—not the Debtor.

28

Second, regarding the nature of the case, the Committee was appointed on January 25, 2022, exactly *five months* after the petition date and *two months* after Betty Zheng resigned as manager and SLC substituted in as Debtor's counsel.  The Debtor will propose a plan that (i) restructures the secured debt against the Los Angeles Properties, (ii) sells or refinances the Transferred Properties, (iii) prosecutes litigation claims against Debtor's former management, including Betula, and (iv) pays 100% to allowed general unsecured claims (after resolving claim objections and state court litigation).  There is no need for a committee in this case, especially at this late stage.

Third, regarding the standing and desires of various constituencies, the Debtor will propose a plan that pays 100% to allowed general unsecured claims.  There is no need for a Committee to protect the interests of holders of general unsecured claims that will receive 100% payment under the plan.

Fourth, regarding the ability of creditors to participate in the case without an official committee, there are ten proofs of claim that assert general unsecured claims filed against Debtor's estate.  Five of those claimants are already represented by counsel: (1) Testa Capital Group, Inc. [POC 6] (represented by Giovanni Orantes), (2) Home Loans Unlimited, Inc. [POC 7] (represented by Giovanni Orantes), (3) Shawn Charles Sougose [POC 11] (represented by David Shevitz), (4) Phalanx (represented by Michael Chekian), and (5) Betula (represented by Peter Kim).  The other five claimants assert claims that Debtor has already objected to (Craig Fry & Associates [Doc. 110], Pennington [Doc. 107]) or intends to object to in the near term (UltraSystems Environmental [POC 11], Land Design Consultants [POC 12], Betty Zheng [POC 15]).  All general unsecured creditors that the Committee represents are able to participate in this bankruptcy case and represent their self-interests without the Committee.

Fifth, regarding the possibility that different classes would be treated differently, the Debtor's proposed plan includes a single class of general unsecured claims in which all allowed claims will be paid in full.  The allowance of these claims will be determined through Debtor's claim objections and not through any efforts by the Committee.

1    Sixth, regarding the motivation of the movant, the Debtor is proceeding in good faith by

2    proposing a plan that pays all general unsecured claims in full.  It is attempting to effectively

3    reorganize.  It is also notable that the Committee seeks to employ one of the most expensive

4    bankruptcy law firms in the region, PSZJ, whose attorneys bill at twice the rate of Debtor's

5    attorneys (SLC) and whose paralegals even bill at rates higher than Debtor's attorneys.

6    These six factors demonstrate that the Committee does not adequately represent the

7    interests of general unsecured claims.

8            **C.    The Court Should Remove Each Member of the Committee**

9    Finally, and most importantly, the Committee's members are incapable of adequately

10   representing the interests of the constituency they represent.

11   Betula is an insider as it was a "person in control of the debtor" within the meaning of 11

12   U.S.C. § 101(31)(B)(iii).  As an insider, Betula has an "obvious potential conflict of interest in that

13   they have a relationship to the debtor separate from their relationship as a creditor."  7 COLLIER ON

14   BANKRUPTCY ¶ 1102.02[2][a][vi].  This conflict is more than potential—it is actual and

15   unavoidable—as Debtor is prosecuting litigation claims against Betula.  Any recovery by the

16   Debtor on these claims will inure to the benefit of holders of allowed general unsecured claims.

17   Betula is likely to breach its fiduciary duties to general unsecured creditors by using the

18   Committee to thwart Debtor's prosecution of these claims.  This makes Betula's membership on

19   the Committee untenable and grossly more offensive than those cases cited in COLLIER above in

20   which courts removed insiders from committees for far more benign reasons.

21   Pennington is a creditor Betula—not the Debtor.  The Pennington Claim is frivolous in that

22   it asserts a contract claim against Debtor when the contract attached to the Pennington Claim

23   clearly shows it is between Pennington and Betula.  Pennington simply does not have a contract

24   with, or contract claim against, Debtor.

25   Phalanx also does not have a claim against Debtor.  While there is a signed contract

26   between Phalanx and Debtor, Phalanx has failed to provide any explanation or documentation

27   supporting its proof of claim.  If Phalanx cannot answer the most basic questions about its proof of

28   claim, then how can it be expected to fulfill its fiduciary obligations to other general unsecured

1  creditors?  Moreover, even if the Court deferred deciding the merits of the Phalanx Claim pending

2  an evidentiary hearing, it should be obvious that a single member committee "is inherently

3  inconsistent with the notion of a committee."  *M.H. Corp.*, 30 B.R. at 267.  Phalanx "ought to look

4  after its rights in its own name."  *Id.*

5  **IV.    CONCLUSION**

6  Based on the foregoing, the Debtor respectfully requests the Court change the membership

7  of the Committee by removing Betula, Pennington, and Phalanx as members, and disbanding the

8  Committee pursuant to 11 U.S.C. §§ 1102(a)(4) and 105(a), and any further relief the Court deems

9  appropriate and just.

10                                             Respectfully Submitted,

11  Dated:  March 1, 2022                      SHIODA, LANGLEY & CHANG, LLP

12

13                                             /s/Christopher J. Langley
                                               Counsel for Jinzheng Group (USA), LLC,
14                                             Debtor and Debtor in Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF CHRISTOPHER J. LANGLEY

I, Christopher J. Langley, am the attorney duly authorized and admitted to practice law in this jurisdiction. I represent the Debtor and Debtor-in-possession Jinzhang Group (USA) LLC.  I make this declaration in support of the *Motion to Change Membership and Disband Official Committee of General Unsecured Creditors Pursuant to 11 U.S.C. §§ 1102(a)(4) and 105(a)* ("Motion"), to which this declaration is attached.

1.      Debtor is a single member LLC that is wholly owned by Mr. Jiaqing Yang.  Mr. Yang currently resides in China and has not been to the United States since the global outbreak of Covid-19.  Debtor was managed by Betty Zheng before the filing of this bankruptcy case.

2.      Between August 2016 and July 2017, the Debtor acquired approximately 32 contiguous acres in Los Angeles that it intended to develop (the "Los Angeles Properties").  The Los Angeles Properties have a total scheduled value of $26,316,600.  They are cross-collateralized with a first priority deed of trust held by Royal Equity Lending to secure the amount of $9,353,009.  POC 2.  They are also encumbered with a tax lien for tax years 2019 and 2020.  POC 1.  A table summarizing the Debtor's real property holdings is attached hereto as **Exhibit 1**.

3.      I am informed and believe that to further fund the development of the Los Angeles Properties, Mr. Yang transferred to the Debtor two single family homes that he personally owned ("Transferred Properties") and which the Debtor borrowed against.  See Ex. 1.

4.      Beginning in December 2017, Ms. Zheng caused the Debtor to contract with Betula Lenta, Inc. ("Betula"), a real estate consultancy company, to assist it with the development of the Los Angeles Properties. Betula describes itself as "a team of the best real estate consultants providing solutions for real estate investors looking for opportunities to invest in development or investors for their developments."  https://www.betulalenta.com/about-us.  Betula was directed by Jonathan Pae and David Park.

5.      Ultimately, Debtor and Betula entered into three contracts (collectively, the "Betula Agreements"):

- A "Predevelopment Consulting Agreement" dated December 7, 2017, in which the Debtor agreed to pay Betula $2,594,000 for consulting services.

1

- A "Construction Management Agreement" dated June 22, 2018, in which the Debtor agreed to pay Betula an additional $4,517,913.00 for "phase 2" services.[1]

- A "CFD Bonds Procurement – CM – Development Agreement" dated March 13, 2019, in which the Debtor agreed to pay Betula an additional $6,224,490.00 for "construction" services.

6.      Debtor alleges that while the Betula Agreements totaled over $13,336,903.00 and much of the fees were paid, the Los Angeles Properties remain unentitled and undeveloped.

7.      On August 24, 2021, Ms. Zheng and Betula caused the Debtor to file a voluntary petition under Chapter 11, initiating this Bankruptcy Case.[2]  Mr. Pae, as CEO of Betula, signed the Debtor's corporate authorization to file this bankruptcy case.  Doc. 14 (Corporate Authorization).  Likewise, Debtor's SOFA, filed by Ms. Bullock, represents that Betula owned a 10% interest in the Debtor.  Doc. 30 (SOFA).  It also represents that the Debtor paid $324,194 to Betula on "1/1 & 4/22/21" for the purpose of "Developer/Project Manager." *Id.*  True and correct copies of the Debtor's Corporate Authorization and SOFA are attached hereto as **Exhibit 6**.

8.      On or about November 29, 2021, Ms. Zheng resigned as the Debtor's manager when my firm, Shioda Langley & Chang, LLP ("SLC"), began inquiring about the Debtor's dealings with Betula, Mr. Pae, and Mr. Park.

9.      On December 6, 2021, the Debtor filed a substitution of attorney naming SLC as its new counsel.  That same day, Debtor filed a motion to employ SLC as new counsel and a motion to set a claims bar date.  Doc. 49 (SLC Employment App); Doc. 51 (Motion for Bar Date).  SLC bills at the hourly rates of $360 (associates) to $450 (partners), and $180 for paralegals.  Doc. 49 (SLC Employment App).

---

[1] It appears that to pay for this contract, Betula assisted Debtor in obtaining a short-term loan (18 months) for $7,000,000 from BOBS LLC with a balloon payment due April 1, 2020. BOBS LLC later transferred the claim to Royalty Equity Lending (POC 2).

[2] Ms. Bullock has described Betula as the "Project Manager" for the Debtor's development of the Los Angeles Properties, and was responsible for, among other things, obtaining financing for the project and employing Ms. Bullock to file this bankruptcy case.  *See Opposition to Motion by Debtor to Determine Whether Compensation Paid to Counsel Was Excessive Under 11 USC § 329 and FRBP 2017* [Doc. 101] at 4-7; *Declaration of Donna Bullock in Opposition to Motion by Debtor to Determine Whether Compensation Paid to Counsel Was Excessive* [Doc. 103] at ¶¶ 2-5.  In these pleadings, Ms. Bullock repeatedly refers to Betula, specifically Mr. Pae and Mr. Park, as party to Debtor's management team.

10.    Shortly thereafter, SLC started formally investigating the Debtor's dealings with Betula by noticing the 2004 examinations of Mr. Pae and Mr. Park.  See Doc. 60, 72, 73 (Orders Approving 2004 Examinations).  To date, neither Mr. Pae nor Mr. Park have appeared for their 2004 examinations.  Pursuant to a stipulation by the Parties, Mr. Pae and Mr. Park are to appear for their examinations on March 2 and 3, 2022, respectively.

11.    The claims bar date was February 4, 2022.  Doc. 55 (Order Setting Last Day to File Claim).  To date, twenty-one (21) proofs of claim have been filed against the Debtor's bankruptcy estate.  A table summarizing the proofs of claim filed is attached hereto as **Exhibit 2**.

12.    On February 7, 2022, Debtor filed a complaint against two sets of defendants (i) Mr. Pae, Mr. Park, and Betula Lenta, Inc. (the "Betula Parties"), and (ii) Ms. Zheng and her real estate company, CBW Global, Inc. (the "Zheng Parties"), with the Superior Court of California, County of Los Angeles, initiating *Jinzheng Group (USA), LLC v. Pae et al*, Case No. 22STCV04623 ("SC Action").  A copy of the complaint ("SC Complaint") is attached hereto as **Exhibit 3**.

13.    In the SC Complaint, the Debtor alleges that Betula is the alter ego of Mr. Pae and Mr. Park, and that CBW Global is the alter ego of Ms. Zheng.  The Debtor alleges that Ms. Zheng introduced the Debtor's sole managing member, Mr. Yang, to Mr. Pae and Mr. Park, on behalf of themselves and Betula, to assist Debtor in developing the Los Angeles Properties.  The Debtor alleges that Ms. Zheng, Mr. Pae, and Mr. Park conspired to charge it over $12 million in false service fees pursuant to the Betula Agreements described above.

14.    The SC Complaint pleads causes of action for (i) breach of contract against the Betula Parties, (ii) intentional misrepresentation against the Betula and Zheng Parties, (iii) negligent misrepresentation against the Betula and Zheng Parties, (iv) negligence against the Betula and Zheng Parties, (v) breach of fiduciary duty against the Zheng Parties, (vi) aiding and abetting against the Betula and Zheng Parties, an (vii) unfair business practices against the Betula and Zheng Parties.  The Debtor seeks general damages in excess of $5,000,000, plus special damages, punitive damages, and attorney's fees and costs.

15.    To date, the Betula and Zheng Parties have not responded to the complaint.

16.     On January 25, 2022, the United States Trustee ("UST") filed a *Notice of Appointment and Appointment of Committee of Creditors Holding Unsecured Claims* [Doc. 93], appointing a committee of unsecured creditors ("Committee") including (i) Betula Lenta, Inc., (ii) Pennington Construction Advisors, Inc., and (iii) The Phalanx Group.

17.     Each of the Committee's members have filed proofs of claim.  Debtor has objected to each those claims, which are set for hearing concurrently with this Motion.

18.     Betula filed a proof of claim (POC 18) for a general unsecured claim in the amount of $1,643,977.00 ("Betula Claim").  The basis of the Betula Claim is "Services performed. Expenses paid to 3rd parties per contract. Consulting."  It attaches copies of the Betula Agreements but does not provide any narrative or accounting beyond that.

19.     In response to SLC's requests, Betula has provided me a summary that is devoid of meaningful detail (other than acknowledging Debtor paid $6,971,726 to Betula):

**2929 Amethyst**

| | |
|---|---:|
| Original Contract Amount | 11,754,928 |
| Change Order Amount | 1,500,000 |
| Total Amount | 13,254,928 |
| | |
| | |
| Amount Received from Jinzheng group (As of 2/3/2022) | 6,971,726 |
| | |
| % work done | 65% |
| The Calculated amount by work done | 8,615,703.20 |
| | |
| Outstanding amount | 1,643,977 |

Betula Claim Objection [Doc. 120], Langley Dec., Ex. B (Email from Betula counsel).

20.     On February 19, 2022, Debtor objected to the Betula Claim [Doc. 120] ("Betula Claim Objection"), arguing that Betula has not (i) provided a report describing the services it performed to date, (ii) explained why it is entitled to payment on 65% of the contracted services, or (iii) appeared to testify at the 2004 examinations of Mr. Pae and Mr. Park (which are now scheduled for March 2 and 3, 2022).

4

21.    Pennington filed a proof of claim (POC 20) for a general unsecured claim in the amount of $75,000.00 ("Pennington Claim").  The basis of the Pennington Claim is "Services performed <u>per contract</u> and not paid."  Emphasis added.  It attaches copies of proposals and agreements between it and Betula.  Debtor is not a party to those proposals and agreements.  The Pennington Claim does not attach any contract between it and Debtor.

22.    On February 16, 2020, Debtor objected to the Pennington Claim [Doc. 107] ("Pennington Claim Objection"), arguing that there is no contract between Debtor and Pennington and therefore the Pennington Claim (based on contract) must be disallowed.

23.    Phalanx filed a proof of claim (POC 17) for a general unsecured claim in the amount of $158,845.00 ("Phalanx Claim").  The basis of the Phalanx Claim is "services performed."  It attaches a copy of a "Security Consulting Agreement" between Phalanx and Debtor.[3]  The agreement's recitals define Phalanx as either a "Security Company" or "Security Consultant" that "operates a business of providing security recommendations and management services of security related matters."  It further recites that "[Phalanx] desires to provide security and patrol services recommendation to [Debtor] at [Debtor's] property and [Debtor] desires to obtain such services from [Phalanx]."

24.    On February 17, 2022, Debtor objected to the Phalanx Claim [Doc. 1133] ("Phalanx Claim Objection"), arguing there is no evidence that Phalanx actually performed the services contracted for or that Phalanx (as a private patrol operator) was licensed to perform such security consulting services.  *See* Bus. & Prof. Code § 7582.3, L.A. Municipal Code § 52.34(b).

25.    In response to the Phalanx Claim Objection, a legal assistant for Phalanx's counsel sent an email to SLC that (i) acknowledged Phalanx does not have a private patrol operator license, (ii) insisted Phalanx provided "consultation for security issues and not actual private guard work for which a security license is required", and (iii) represented that none of the fees owed are for any guard services or for services provided by a 3rd party vendor.  A copy of said email is

---

[3] The Security Consulting Agreement was signed by Anthony Rodriguez on behalf of Phalanx on May 1, 2019, and by Betty Zheng on behalf of Debtor on August 1, 2019.  Phalanx Claim, Part 2 (Security Consulting Agreement) at 5 (of 6).  It is not clear why three months passed between the parties executing the agreement.  Nonetheless, Phalanx issued invoices to Betula (not Debtor) on April 29, June 1, July 1, and August 1, 2019.  *Id.*, Part 4 (Invoices) at 1-4 (of 32).

attached hereto as **Exhibit 4**.  To date, Phalanx has not provided any explanation of what

"consultation" services it provided Debtor to justify its claim against Debtor's bankruptcy estate.

26.    On February 1, 2022, SLC sent a letter to the Hatty Yip, Trial Attorney with the

Office of the United States Trustee ("UST"), asking her to reconsider her office's appointment of

the Committee.  A copy of said letter is attached hereto as **Exhibit 5**.  Ms. Yip responded that she

would look into Debtor's concerns.  To date, however, the UST has not taken any action to

address them.

27.    On February 8, 2022, the Committee filed an application to employ Pachulski

Stang Ziehl & Jones LLP ("PSZJ") as counsel.  Doc. 98.  PSZJ's attorneys bill at the hourly rates

of $975 to $1,145 (partners), and $495 for paralegals.  PSZJ's attorneys bill at hourly rates that are

more than double that of Debtor's counsel.  Even PSZJ's paralegals bill at rates higher than

Debtor's attorneys.

28.    On February 22, 2022, Debtor objected to the PSZJ employment application and

requested a hearing.  Doc. 125.

29.    Before the hearing on this Motion, Debtor will propose a plan of reorganization

that will restructure the secured debt against the Los Angeles Properties, sell the San Marino

Property, sell or refinance the Van Nuys Property, and pay all allowed general unsecured claims in

full after claim objections and pending state court litigation.  The plan will be funded by capital

contributions by Debtor's principal, Mr. Yang.  As the plan will pay allowed general unsecured

claims in full, I believe there is no need for the Committee in this case.

30.    Also, there are ten proofs of claim that asserts general unsecured claims filed

against Debtor's estate.  See Ex. 2.  Five of those claimants are already represented by counsel: (1)

Testa Capital Group, Inc. [POC 6] (represented by Giovanni Orantes), (2) Home Loans Unlimited,

Inc. [POC 7] (represented by Giovanni Orantes), (3) Shawn Charles Sougose [POC 11]

(represented by David Shevitz), (4) Phalanx (represented by Michael Chekian), and (5) Betula

(represented by Peter Kim).  The other five claimants assert claims that Debtor has already

objected to (Craig Fry & Associates [Doc. 110], Pennington [Doc. 107]) or intends to object to in

1  the near term (UltraSystems Environmental [POC 11], Land Design Consultants [POC 12], Betty

2  Zheng [POC 15]).

3

4          I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct to the best of my knowledge.

6

7  Dated: February 1, 2022                              By: /s/Christopher J. Langley_____
                                                            Christopher Langley

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **4158 14th Street, Riverside, CA 92501**

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION TO CHANGE MEMBERSHIP AND DISBAND OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. § 1102(a)(4) AND 105(a); DECLARATION OF CHRISTOPHER LANGLEY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>March 1, 2022</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐    Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) <u>March 1, 2022</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Ernest M. Robles
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

☒    Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>March 1, 2022</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 1, 2022 | John Martinez | /s/John Martinez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 1, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Donna C Bullock    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
Steven P Chang    heidi@spclawoffice.com,
schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com
Michael F Chekian    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
Susan Titus Collins    scollins@counsel.lacounty.gov
Jeffrey W Dulberg    jdulberg@pszjlaw.com
Richard Girgado    rgirgado@counsel.lacounty.gov
M. Jonathan Hayes    jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
Teddy M Kapur    tkapur@pszjlaw.com, mdj@pszjlaw.com
Christopher J Langley    chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com
Benjamin R Levinson    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
Giovanni Orantes    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
Matthew D. Resnik    matt@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
Allan D Sarver    ADS@asarverlaw.com
David Samuel Shevitz    david@shevitzlawfirm.com,
shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

Label Matrix for local noticing
0973-2
Case 2:21-bk-16674-ER
Central District of California
Los Angeles
Tue Mar  1 15:45:40 PST 2022

Chekian Law Office, Inc.
445 South Figueroa Street
31st Floor
Los Angeles, CA 90071-1635

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Investment Management Company LLC
Law Offices Allan Sarver
16000 Ventura Blvd
Suite 1000
Encino, CA 91436-2762

JINZHENG GROUP (USA) LLC
100 E. Huntington Drive
Ste. 207
Alhambra, CA 91801-1022

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

(p)OFFICE OF FINANCE   CITY OF LOS ANGELES
200 N SPRING ST RM 101 CITY HALL
LOS ANGELES CA 90012-3224

Orantes Law Firm, P.C.
The Orantes Law Firm, P.C.
3435 Wilshire Blvd., suite 2920
los angeles, CA 90010-2015

Securities & Exchange Commission
444 South Flower St., Suite 900
Los Angeles, CA 90071-2934

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Accutax Services
9040 Telstar Ave Ste 105
El Monte CA 91731-2838

American Modern Insurance
7000 Midland Blvd
Amelia OH 45102-2608

BETTY ZHENG
28 N. 3RD ST. #b513
ALHAMBRA, CA 91801-6234

BOBS LLC
Attn: Barry Shy
7525 Avalon Bay St
Las Vegas, NV 89139-5307

BREEZEBLOCK CAPITAL, LLC
c/o Pacific Mortgage Exchange, Inc.
P.O. Box 2836
Big Bear Lake, CA 92315-2836

Bamboo Insurance
7050 Union Park Center Ste 400B
Midvale UT 84047-6055

Bentula Lenta, Inc.
David Park
800 W. 6th Street
Suite 1250-B
Los Angeles, CA 90017-2704

Best Alliance
16133 Ventura Blvd.
Suite 700
Encino, CA 91436-2406

Betula Lenta Inc.
800 West 6th Street
Suite 1250
Los Angeles, CA 90017-2721

Build Group Construction Co
700 Flower St 575
Los Angeles CA 90017-4122

California American Water
8657 Grand Ave
Rosemead CA 91770-1220

Corona Capital Group, LLC
1222 Crenshaw Blvd.
#B
Torrance, CA 90501-2496

Craig Fry & Associates
990 S. Arroya Pkwy, #4
Pasadena, CA 91105-3920

Craig Fry and Associates
990 Arroyo Parkway #4
Pasadena, CA 91105-3920

DNQ LLC
Jason D Wang
6145 W Spring Mountain Rd. #205
Las Vegas NV 89146-8819

David S Zu
100 N Citrus St Ste 330
West Covina CA 91791-1674

David Z. Su
100 N. Citrus Street Ste 615
West Covina, CA 91791-6600

Donna Bullock
Attorney at Law
800 W 6th St
Suite 1250
Los Angeles, CA 90017-2721

Donna Bullock Esq
Law Offices of Donna Bullock
800 W 6th Ste 1250
Los Angeles CA 90017-2721

XFL Global
5261 W Imperial Hwy
Los Angeles CA 90045-6231

Franchise Tax Board Chief Counsel
c/o General Counsel Section
P.O. Box 720, MS: A-260
Rancho Cordova, CA 95741-1720

Griffin Underwriters
PO Box 3867
Bellevue WA 98009-3867

Home Loans Unlimited
Attn Daniel Triana
28859 Phantom Trail
Santa Clarita, CA 91390-5295

Home Loans Unlimited, Inc
28859 Phantom Trail
Santa Clarita, CA 91390-5295

Investment Management Company
1507 7th Street, #344
Santa Monica, CA 90401-2605

Jade Capital
333 Thornall St Ste 101
Edison NJ 08837-2220

Jianqing Yang
PO Box 3702
Alhambra CA 91803-0702

LA City Treasurer and Tax Collector
255 N Hill St 1st Fl
Los Angeles CA 90012-2705

Land Design Consultants
800 Royal Oaks Drive
Suite 104
Monrovia, CA 91016-6364

Law Offices of Matthew C. Mullhofer
2107 N. Broadway
Suite 103
Santa Ana, CA 92706-2633

Los Angeles Treasurer Tax Collector
P.O. Box 54018
Los Angeles, CA 90054-0018

Marc Cohen
Cohen Law Group, APC
541 S. Spring Street
Ste. 1208
Los Angeles, CA 90013-1667

Michael Carlin
PO Box 67132
Century City, CA 90067-0132

Michael E. Dorff and Shari L. Dorff
3239 Bordero Lane
Thousand Oaks, CA 91362-4659

Office of the United States Trustee
915 Wilshire Blvd
Los Angeles, CA 90017-3409

Overland Traffic Consultants
952 Manhattan Beach Blvd 100
Manhattan Beach CA 90266-5112

Pacific Geotech Inc
Attn Jirayus Pukkansasut
15038 Clark Ave
Hacienda Heights CA 91745-1408

Pacific Mortgae Exchange, Inc.
73241 Hwy. 111, Ste. 1-A
Palm Desert, CA 92260-3921

Pennington Construction Advisors Inc
Attn: Todd C. Pennington
79 Bell Pasture Rd
Ladera Ranch CA 92694-1558

Phalanx
424 E. 15th Street
Suite 10
Los Angeles, CA 90015-3140

(p)ROYAL BUSINESS BANK
1055 WILSHIRE BLVD SUITE 1220
LOS ANGELES CA 90017-3103

Royalty Equity Lending LLC
600 S. Spring Street
Suite 106
Los Angeles, CA 90014-1979

Shawn Charles Sourgose
2111 Seville Drive
Santa Paula, CA 93060-8042

State Farm Insurance
PO Box 588002
North Metro GA 30029-8002

Testa Capital Group
Attn Thomas L Testa
620 Newport Center Drive
Suite 1100
Newport Beach, CA 92660-8011

The Alison Company
2060 D Avenida De Los Arboles
#471
Thousand Oaks, CA 91362-1376

The Code Solution, Inc.
Attn Jamie Cho
800 W. 6th Street
Suite 1250 A
Los Angeles, CA 90017-2721

The Orantes Law Firm APC
3435 Wilshire Blvd Ste 2920
Los Angeles, CA 90010-2015

The Phalanx Group
424 E. 15th St Ste 10
Los Angeles, CA 90015-3140

The Phalanx Group
Anthony Rodriguez
424 E 15th St Ste 10
Los Angeles CA 90015-3140

The Phallanx Group
Anthony Rodriguez
424 E. 1st Street, Unit #10
Los Angeles CA 90012

UltraSystems Environmental
Attn Hassan Ayati
16431 Scientific Way
Irvine, CA 92618-4355

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Yepez Gardening Services
2121 N Marengo Ave
Pasadena CA 91001

Christopher J Langley
Shioda, Langley & Chang LLP
4158 14th St
Riverside, CA 92501-3426

Donna Bullock Carrera
LAW OFFICES OF DONNA BULLOCK
800 W 6th St
Ste 1250
Los Angeles, CA 90017-2721

Matthew Resnik
RHM LAW LLP
17609 Ventura Blvd. Suite 314
Encino, CA 91316-5132

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

L.A. County Tax Collector
Bankruptcy Unit
P.O. Box 54110
Los Angeles, CA 90051-0110

Los Angeles City Clerk
P.O. Box 53200
Los Angeles, CA 90053-0200

(d)Los Angeles County Tax Collector
225 N. Hill Street #1
Los Angeles, CA 90012

(d)Los Angeles County Tax Collector
P.O. Box 54018
Los Angeles, CA 90054-0018

(d)Los Angeles County Treasurer and Tax Colle
Attn: Bankruptcy Unit
PO Box 54110
Los Angeles, CA 90054-0110

Royal Business Bank
1055 Wilshire Blvd.
Suite 1200
Los Angeles, CA 90017

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)INTERESTED PARTY

(u)Michael E. Dorff and Shari L. Dorff

(u)OFFICIAL COMMITTEE OF UNSECURED CREDITORS

(u)Royalty Equity Lending, LLC/Bobs LLC

(u)Shioda Langley and Chang LLP

(d)Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

(d)Franchise Tax Board
Bankruptcy Section, MS:A-340
P.O. Box 2952
Sacramento, CA 95812-2952

(d)Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

(u)Ji Anqi Ngyang
66 Yuhua West Rd
Shi Ji Azhuang Hebei Province 050000 Chi

(d)Linzhong Group (USA) LLC
100 E. Huntington Dr. Ste 207
Alhambra, CA 91801-1022

(u)Jay Wu
LT Management Group Estate


End of Label Matrix
Mailable recipients    68
Bypassed recipients    12
Total                  80