Jeffrey W. Dulberg (State Bar No. 181200)
Robert M. Saunders (State Bar No. 226172)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:    jdulberg@pszjlaw.com
          rsaunders@pszjlaw.com

[Proposed] Counsel to the Official Committee of
Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JINZHENG GROUP (USA) LLC,<br><br>    Debtor and Debtor in Possession. | Case No. 2:21-bk-16674-ER<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR (I) THE APPOINTMENT OF A CHAPTER 11 TRUSTEE, OR IN THE ALTERNATIVE, (II) (A) TERMINATION OF PLAN AND SOLICITATION EXCLUSIVITIES AND (B) AUTHORIZING STANDING FOR THE COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS TO PROSECUTE ACTIONS AGAINST INSIDERS OF THE DEBTOR; DECLARATIONS OF DAVID PARK AND JEFFREY W. DULBERG IN SUPPORT**<br><br>Date:        March 22, 2022<br>Time:        10:00 a.m.<br>Location:  U.S. Bankruptcy Court<br>           Courtroom 1568<br>           255 E. Temple St.<br>           Los Angeles, CA 90012<br>Judge:    Hon. Ernest M. Robles |

# <u>TABLE OF CONTENTS</u>

**Page**

I. PRELIMINARY STATEMENT ................................................................................. 3

II. STATEMENT OF FACTS................................................................................. 5

III. ARGUMENT ................................................................................. 12

    A.    The Court Must Appoint a Trustee Upon a Finding of Cause of Where It is in the Interests of Creditors and Other Interests of the Estate. ................................ 12

    B.    As an Alternative to the Appointment of a Trustee, the Court Should Terminate Exclusivity for Cause. ........................................................ 18

    C.    Also, in the Absence of a Trustee, this Court Should Grant the Committee Derivative Standing to Prosecute Estate Claims against Insiders........................ 21

IV. CONCLUSION................................................................................. 25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:342496.8 46360/002

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Cajun Electric Power Coop., Inc.*,
74 F.3d 599 (5th Cir. 1996) .................................................................................. 14

4

*Century Glove, Inc. v. First American Bank*,
860 F.2d 94 (3rd Cir. 1988) .................................................................................. 20

5

*Commodity Futures Trading Com v. Weintraub*,
471 U.S. 343 (1985)........................................................................................ 13, 14

6

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*,
330 F.3d 548 (3d Cir. 2003).................................................................................. 22

7

*The Golden Gate v. Marincovich*,
286 F. 105 (9th Cir. 1923) ...................................................................................... 5

8

*3dfx Interactive v. nVidia Corp. (In re 3dfx Interactive)*,
2009 Bankr. LEXIS 120, at *17-18 (Bankr. N.D. Cal. Jan. 6, 2009) .................. 21

9

*In re Adelphia Comm. Corp.*,
352 B.R. 578 (Bankr. S.D.N.Y. 2006)................................................ 18, 21, 22, 24

10

*In re All Seasons Indus., Inc.*,
121 B.R. 1002 (Bankr. N.D. Ind. 1990)........................................................... 18, 20

11

*In re America's Hobby Ctr.*,
223 B.R. 275 (Bankr. S.D.N.Y. 1998) ................................................................. 22

12

*In re Bellevue Place Assocs.*,
171 B.R. 615 (Bankr. N.D. Ill. 1994) ................................................................... 12

13

*Fukutomi v. U.S. Trustee (In re Bibo, Inc.)*,
76 F.3d 256 (9th Cir. 1996) ............................................................................ 12, 16

14

*In re Borders Group, Inc.*,
460 B.R. 818 (Bankr. S.D.N.Y. 2011) ................................................................. 18

15

*In re Bowman*,
181 B.R. 836 (Bankr. D. Md. 1995) ..................................................................... 13

16

*Hirsch v. Pa. Textile Corp., Inc. (In re Centennial Textiles, Inc.)*,
227 B.R. 606 (Bankr. S.D.N.Y. 1998)................................................................... 13

17

*In re Crescent Beach Inn, Inc.*,
22 B.R. 155 (Bankr. D. Me. 1982)........................................................................ 20

18

*In re Deena Packaging Indus., Inc.*,
29 B.R. 705 (Bankr. S.D.N.Y. 1983) ................................................................... 16

19

*In re Euro-American Lodging Corp.*,
365 B.R. 427 ......................................................................................................... 17

20

*In re First Capital Holdings Corp.*,
146 B.R. 7 (Bankr. C.D. Cal. 1992)...................................................................... 23

21

*In re G-I Holdings*,
313 B.R. 612 (Bankr. N.J. 2004) .......................................................................... 23

22

*In re Hathaway Ranch Partnership*,
116 B.R. 208 (Bankr, C.D. Cal. 1990).................................................................. 15

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp. (In re Henry Mayo Newhall Mem'l Hosp.),*
    282 B.R. 444 (BAP 9th Cir. 2002) ........................................................... 1, 18, 19

*In re Hotel Assocs., Inc.,*
    3 B.R. 343 (Bankr. E.D. Pa. 1980) ......................................................... 16

*Aceituno v. Vowell (In re Intelligent Direct Mktg.),*
    2015 U.S. Dist. LEXIS 28824, at *4 (E.D. Cal. Mar. 3, 2015) .................... 5

*In re Intercat, Inc.,*
    247 B.R. 911 (Bankr. S.D. Ga. 2000) ...................................................... 14

*In re Ionosphere Clubs, Inc.,*
    113 B.R. 164 (Bankr. S.D.N.Y. 1990) .................................................. 13, 16

*In re iPCS, Inc.,*
    297 B.R. 283 (Bankr. N.D. Ga. 2003) ................................................. 22, 23

*In re Joyanna Holitogs, Inc.,*
    21 B.R. 323 (Bankr. S.D.N.Y. 1982) ....................................................... 23

*In re L.S. Good & Co.,*
    8 B.R. 312 (Bankr. N.D. W.Va. 1980) ..................................................... 17

*In re La. World Exposition,*
    832 F.2d 1391 ......................................................................................... 23

*In re Lehigh Valley Prof'l Sports Club, Inc.,*
    2000 WL 290187, at *2 (Bankr. E.D. Pa. Mar. 14, 2000) ........................ 18

*In re Marvel Entm't Grp., Inc.,*
    140 F.3d 472 ................................................................................. 13, 14, 16

*In re Microwave Prods. of Am., Inc.,*
    102 B.R. 666 (Bankr. W.D. Tenn. 1989) .......................................... 13, 14, 17

*In re Morningstar Marketplace, Ltd.,*
    544 B.R. 297 (Bankr. M.D. Pa. 2016) ..................................................... 17

*In re Nat'l Forge Co.,*
    326 B.R. 532 (W.D. Pa. 2005) ................................................................ 23

*In re Nationwide Sports Distrib., Inc.,*
    227 B.R. 455 (Bankr. E.D. Pa. 1998) ..................................................... 24

*In re New Meatco Provisions, LLC,*
    2014 Bankr. LEXIS 914, at *8-10 (Bankr. C.D. Cal. Mar. 10, 2014) ......... 19

*Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC),*
    530 B.R. 711 (Bankr. C.D. Cal. 2015) ..................................................... 5

*In re Pasadena Adult Residential Care, Inc.,*
    2015 Bankr. LEXIS 3601, at *44-49 (Bankr. C.D. Cal. Oct. 23, 2015) ...... 12

*In re Pied Piper Casuals, Inc.,*
    40 B.R. 723 (Bankr. S.D.N.Y. 1984) ....................................................... 13

*In re PRS Ins. Grp., Inc.,*
    274 B.R. 381 (Bankr. D. Del. 2001) ................................................... 15, 17

*In re Savino Oil & Heating Co.,*
    99 B.R. 518 (Bankr. E.D.N.Y. 1989) ................................................... 14, 16

*In re Sharon Steel Corp.,*
    86 B.R. 455 (Bankr. W.D. Pa. 1988) ......................................... 13, 14, 16, 18

iii

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*In re STN Enters.*,
   779 F.2d 904 ................................................................................................ 21, 22, 23

*Official Committee of Unsecured Creditors v. Morgan Stanley & Co., Inc.,*
   *(In re Sunbeam Corp.)*,
   84 B.R. 355 (Bankr. S.D.N.Y 2002) .......................................................................... 22

*United States Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers*
   *of Inwood Forest Assocs., Ltd.)*,
   808 F.2d 363 (5th Cir. 1987) ..................................................................................... 18

*Tuma v. Firstmark Leasing Corp. (In re Tuma)*,
   916 F.2d 488 (9th Cir. 1990) ....................................................................................... 5

*In re Valley Park*,
   217 B.R. 864 (Bankr. D. Mont. 1998) ....................................................................... 22

*In re Van Brunt*,
   46 B.R. 29 (Bankr. W.D.Wis. 1984) .......................................................................... 14

*In re William H. Vaughan & Co.*,
   40 B.R. 524 (Bankr. E.D. Pa. 1984) .......................................................................... 15

*In re Wings Digital Com.*,
   2005 Bankr. LEXIS 3476, at *14 (Bankr. S.D.N.Y. May 16, 2005) ......................... 16

*Off. Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp.*
   *(In re W.R. Grace & Co.)*,
   285 B.R. 148 (Bankr. D. Del. 2002) .......................................................................... 12

*King v. Export Dev. Can. (In re Zetta Jet United States, Inc.)*,
   2021 Bankr. LEXIS 2317, at *22-23 (Bankr. C.D. Cal. Aug. 17, 2021) ...................... 5

## STATUTES

11 U.S.C. §101 ................................................................................................................ 1

11 U.S.C. §105(a) ........................................................................................................... 1

11 U.S.C. §327 .............................................................................................................. 15

11 U.S.C. §502(d) ......................................................................................................... 15

11 U.S.C. §510(b) ......................................................................................................... 10

11 U.S.C. §1102 .............................................................................................................. 5

11 U.S.C. §1103(c) .......................................................................................................... 1

11 U.S.C. §1103(c)(5) ................................................................................................... 21

11 U.S.C. §1104(a) ....................................................................................................... 12

11 U.S.C. §1104(a)(1) ................................................................................... 1, 12, 13, 16

11 U.S.C. §1104(a)(2) ....................................................................................... 13, 16, 17

11 U.S.C. §1107(a) .......................................................................................................... 5

11 U.S.C. §1108 .............................................................................................................. 5

11 U.S.C. §1109(b) ................................................................................................... 1, 21

11 U.S.C. §1121(c) .......................................................................................................... 1

11 U.S.C. §1121(d) ......................................................................................... 1, 18, 21

Fed. R. Bankr. P. 1007(a)(1) .......................................................................................... 7

Fed. R. Bankr. P. 2007.1(a) ............................................................................................ 1

DOCS_LA:342496.8 46360/002

Fed. R. Bankr. P. 7007.1 ................................................................................................. 7

Fed. R. Bankr. P. 9014 ................................................................................................... 1

Fed. R. Bankr. P. 9017 ................................................................................................... 5

Fed. R. Evid. 201(b) ...................................................................................................... 5

L.B.R. 1007-4 ................................................................................................................. 7

L.B.R. 9013-1 ................................................................................................................. 1

**OTHER AUTHORITIES**

1 Collier Comp, Employ & Appoint of Trustees & Prof. ¶ 2.05[3] n.8 ..................................... 15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:342496.8 46360/002

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE UNITED STATES TRUSTEE, PARTIES REQUESTING SPECIAL NOTICE, AND ALL CREDITORS:**

**PLEASE TAKE NOTICE** that the Committee of Creditors Holding Unsecured Claims (the "Committee") appointed in chapter 11 case (the "Case") of debtor and debtor in possession Jinzheng Group (USA) LLC (the "Debtor"), hereby moves (the "Motion") the Court for the entry of an order (I) pursuant to sections 1104(a)(1) and (a)(2) of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), Rules 2007.1(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules, seeking the immediate appointment of a chapter 11 trustee in the Case; or, in the alternative, (II)(A) pursuant to 11 U.S.C. § 1121(d) and paragraph 4 of this Court's *Order Granting Motion of Debtor For Order Extending Debtor's Exclusivity Period to File Chapter 11 Plan and Solicit Acceptances Thereto*,[1] terminating the periods under 11 U.S.C. § 1121(c) in which the Debtor has the exclusive right to solicit and obtain acceptances of a plan and during which time competing plans may not be filed as to the Committee, and authorizing the Committee to file and proceed with a plan and disclosure statement; and (B) pursuant to 11 U.S.C. §§ 105(a), 1103(c), 1109(b) of the Bankruptcy Code granting leave, standing and authority to prosecute causes of action against the Debtor's equity owner Jianqing Yang and/or other insiders (the "Insiders")[2] on behalf of the Debtor's bankruptcy estate (the "Estate").

As set forth in the annexed Memorandum of Points and Authorities ("P&A"), the Committee believes that ample cause exists for the appointment of a chapter 11 trustee, or, in the alternative, termination of the Debtor's plan and solicitation exclusivities and granting of standing to the Committee to prosecute claims against Insiders.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the facts and legal analysis set forth in P&A, the annexed *Declaration of Jeffrey W. Dulberg* (the "Dulberg

---

[1] Entered January 18, 2022 [Docket No. 80] at ¶ 2 (extending filing exclusivity to April 21, 2022), 3 (extending solicitation exclusivity to May 20, 2022) and ¶ 4 ("This ruling is without prejudice to any party in interest filing a motion for early termination of exclusivity upon a showing that the *Henry Mayo Newhall* factors no longer support the extensions granted herein.") ("Exclusivity Extension Order").

[2] Subject to investigation, potentially Shao Xing Max Yang and/or Betty Zheng ("BZ") and any other relevant Insiders that are discovered.

1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  <u>Declaration</u>") and *Declaration of David Park* (the "<u>Park Declaration</u>"), the record in this Case and

2  any other evidence before the Court prior to or at any hearing on the Motion, and all facts of which

3  this Court may properly take judicial notice.

4  **PLEASE TAKE FURTHER NOTICE** that, if you wish to oppose this Motion, you must

5  file a written response with the Court and serve a copy of it upon the undersigned counsel no later

6  than fourteen (14) days prior to the hearing on the Motion.  The failure to properly file and serve an

7  opposition may be deemed consent to the relief requested in the Motion or a waiver of any right to

8  oppose the Motion.

9  **WHEREFORE**, the Committee respectfully requests that the Court enter an order

10  (i) granting the Motion; (ii) (a) directing the appointment of a chapter 11 trustee in the Case, or, in

11  the alternative, (b) terminating the Debtor's plan and solicitation exclusivity and granting leave,

12  standing and authority to the Committee to prosecute causes of action against any of the Insiders;

13  and (iii) granting such and further relief as may be just and appropriate.

14  Dated:    March 1, 2022                   PACHULSKI STANG ZIEHL & JONES  LLP

15

16                                           By    */s/ Jeffrey W. Dulberg*
                                                  Jeffrey W. Dulberg

17                                                 [Proposed] Counsel to the Official Committee
                                                   of Unsecured Creditors
18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Committee of Creditors Holding Unsecured Claims (the "Committee") appointed in the chapter 11 case (the "Case") of Jinzheng Group (USA) LLC, the above-captioned debtor and debtor in possession (the "Debtor"), hereby submits this *Motion for (I) the Appointment of a Chapter 11 Trustee, or in the Alternative, (II) (A) Termination of Plan and Solicitation Exclusivities and (B) Authorizing Standing for the Committee of Creditors Holding Unsecured Claims to Prosecute Actions Against Insiders of the Debtor* (the "Motion"), and in support thereof respectfully states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT

The Committee is compelled to seek the critical relief requested herein to put a stop to a Debtor that is proceeding in bad faith and putting the interests of its principal ahead of creditors. Notably, Max Yang, purportedly acting under a power of attorney issued by Jianqing Yang, and advised by replacement bankruptcy counsel funded by an affiliate of **both** Jianqing Yang and Max Yang, is all but running amok.[3]  For instance, the Debtor's new management and counsel strategically re-scheduled **all** non-insider general unsecured claims as "contingent, unliquidated and/or disputed," and objected to the proofs of claim of the Committee members individually, as well as the claims of two non-Committee members so far, leaving only the more than $43 million claim of Insider Jianqing Yang as the sole general unsecured claim.  The Debtor also told this Court in a filing that it will seek to **disband** the Committee, despite the Committee's constructive role so far in obtaining a promise from the Debtor of a 100% recovery for general unsecured creditors under

---

[3] *Application of Debtor and Debtor-In-Possession to Employ Shioda Langely & Chang LLP as General Insolvency Counsel [Local Rule 2014(b)(2)]*, filed December 6, 2021 [Docket No. 49 at 2:28 and 3:1-4] ("SLC Employment Application") (Shioda Langely & Chang LLP ("SLP LLP") states that it was "retained after the filing of the case to substitute out Donna C. Bullock, the filing attorney, SLP LLP received total retainer in the amount of $40,000 from LT Global Investment on behalf of Jianqing Yang, the majority member of the Debtor.  None of the payment came from property of the Chapter 11 estate or other estate assets.  The payment was placed in SLC LLP's segregated Attorney/Client Trust account.").  Max Yang's LinkedIn profile states that he is the "CEO of LT Global Investment." *See Id*. at Exhibit A ¶¶ 3 and 4 ("The source of the retainer was payment by the Applicant's managing member Jianqing Yang. . . .  Shioda Langley & Chang LLP received total a pre-representation retainer of $40,000, which payment was placed in Shioda Langley & Chang LLP's segregate Attorney/Client Trust account.").

3

the chapter 11 plan the Debtor says that it will file by March 8, 2022.[4]  While the Debtor is loathe to acknowledge it, this likely would not have occurred but for the Committee's efforts in this Case to date – which the Debtor has suggested is somehow worthy of dissolution.  However, after the Debtor's proposed disallowance of all other general unsecured claims, the proposed 100% recovery would only apply to its principal's $43 million general unsecured claim.  Management's and counsel's action – and inaction – have also garnered a motion for relief from stay from a secured lender regarding (among others) its most valuable property, which demonstrates that new management and its chosen counsel is alienating virtually all potential classes of creditors in this Case.[5]

The Committee, after due deliberation and a vote, has decided that it must seek the replacement of Max Yang and SLC LLP as the protectors of the estate's assets by asking this Court to direct the Office of United States Trustee to appoint a chapter 11 trustee.  Alternatively, the Committee seeks an order of this Court terminating the Debtor's plan filing and solicitation exclusivities so that the Committee may propose a confirmable plan that takes in to account all legitimate claims, as well as authorizing the Committee to investigate and, if appropriate, bring and prosecute one or more avoidance and/or other actions against Insiders, including Jianqing Yang, whom the Debtor admitted received hundreds of thousands of dollars from the Debtor prior to the commencement of this Case.[6]

This is a straight-forward non-operating real estate case, with a duly appointed Committee consisting of three creditors with ordinary vendor claims for construction and security services that provided valuable contributions to the value of the Debtor's assets prepetition. The Debtor has embroiled this Case in contentiousness when it should be seeking consensus.  Rather than do so, the

---

[4] *Objection and Request for a Hearing on Application for an Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors, effective as of as of January 25, 2022*, filed February 22, 2022 [Docket No. 125 at 2:24-26].

[5] On February 24, 2022, secured lender Royalty Equity Lending LLC/Bobs LLC (the "REL") filed the REL RFS Motion in which it claims that the Debtor is mismanaging its estate, not performing its postpetition obligations under its loan, and asserting that the collateral value of the real properties are less than the amounts owed by the Debtor on their loan. Docket No. 128 at 3:12-18.

[6] *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, filed September 11, 2021 [Docket No. 30] ("SoFA") at 4.2, 30.1 and continuation sheets 3.3.

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtor has refused to schedule an agreed-upon date for Max Yang's examination, repeatedly

avoided moving forward with key reorganization initiatives and chosen anti-creditor activity versus

explaining funds received by the principal while creditors remain unpaid.

## II.

### STATEMENT OF FACTS

On August 24, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor

continues in possession of its property and is operating and managing its business as a debtor in

possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.  No trustee or examiner has

been appointed in the Case.

On January 25, 2022, the United States Trustee appointed the Committee to represent the

interests of all unsecured creditors in this Case pursuant to 11 U.S.C. § 1102 of the Bankruptcy

Code.  The members appointed to the Committee are: (i) Betula Lenta, Inc.; (ii) Pennington

Construction Advisors, Inc.; and (iii) The Phalanx Group, Inc. *See Notice of Appointment and

Appointment of Committee of Creditors Holding Unsecured Claims* [Docket No. 93].[7] Betula and

Pennington provided construction services and Phalanx provided security services.

**The Debtor Has Been Mismanaged Postpetition.**  The Debtor is currently managed by

Max Yang, who is neither a member nor manager of the Debtor.  He has no links to the Debtor other

than he was appointed "attorney in fact" for Jianqing Yang.  In his Declarations filed in the case, he

---

[7] This Court may take judicial notice of its own docket and other public records.  Fed. R. Bankr. P. 9017, incorporating Fed. R. Evid. 201(b) ("Kinds of Facts That May Be Judicially Noticed.  The court may judicially notice a fact that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") and 901(b)(7) (public records are self-authenticating and self-identifying: "Evidence About Public Records. Evidence that: (A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept."); *King v. Export Dev. Can. (In re Zetta Jet United States, Inc.)*, 2021 Bankr. LEXIS 2317, at *22-23 (Bankr. C.D. Cal. Aug. 17, 2021), citing (among other cases) *Tuma v. Firstmark Leasing Corp. (In re Tuma)*, 916 F.2d 488, 491 (9th Cir. 1990) (indicating that when adjudicating issues in an adversary proceeding, judicial notice can be taken of bankruptcy records in an underlying proceeding) and *Aceituno v. Vowell (In re Intelligent Direct Mktg.)*, 2015 U.S. Dist. LEXIS 28824, at *4 (E.D. Cal. Mar. 3, 2015) (granting a request for judicial notice of proofs of claims filed in the underlying bankruptcy case because they were public records, and their authenticity was undisputed); *Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC)*, 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records. *See, e.g., The Golden Gate v. Marincovich*, 286 F. 105, 106 (9th Cir. 1923) 'Every court takes judicial notice of its own records in the same case'").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:342496.8 46360/002

does not describe his background or skills or relationship with Jianqing Yang. He acknowledged

that the Debtor had been mismanaged before he became Jianqing Yang's attorney in fact, and that in

December 2021 he was still at his "early stages of ascertaining the facts." Nothing in the Court

record since that time shows that he has improved his ability to manage the Debtor. For instance, in

the *Declaration of Max Yang* annexed to the *Motion of Debtor for Order Extending Debtor's*

*Exclusivity Period to File Chapter 11 Plan and Solicit Acceptances Thereto, filed December 13,*

*2021* [Docket No. 61] (the "Exclusivity Motion"), Max Yang states under penalty of perjury that he

is the "attorney in fact for Jianqing Yang, the managing member of Debtor and Debtor-in-

Possession, Jinzheng Group (USA) LLC," *id.* at 5:2-3, and that the

> Debtor is a real estate development company owned by Jianqing Yang.
> Debtor was registered in California on May 25, 2016. Jianqing Yang
> currently reside in China and has not been to the United States since the
> global outbreak of Covid-19. Betty Zheng managed the Debtor on
> behalf of Jianqing Yang. . . . Concerned about the Chapter 11 case and
> the current economic situation of the Debtor, Jianqing Yang appointed
> me as his attorney-in-fact and requested that he oversee the Chapter 11
> case. No one was able to give me a straight answer on the financial
> affairs of the Debtor or the alleged refinancing efforts. . . . . [W]e are
> still at the early stages of ascertaining the facts and what led to the
> financial difficulties of the Debtor.

Docket No. 61 at 11:19-22, 12:12-15 and 12:18-19.

Consistent with Max Yang's assessment of the Debtor's management, the Debtor's secured

lender REL has recently contended:

> Throughout the tenure of the loan, Movant [REL, the secured lender]
> has learned that the Debtor has engaged in mismanagement of the estate
> both pre-petition and post-petition. Furthermore, despite the yeoman
> efforts of Debtor's second counsel, the Debtor in Possession has not
> demonstrated that it can properly manage the bankruptcy effectively
> following the filing. The Debtor's Monthly Operating Reports
> ("MORS") provide very little insight into the expenses however what is
> most concerning outside of payroll and accounting expenses, the
> property is not being serviced.

*Memorandum of Points and Authorities for Relief from Stay*, filed February 24, 2022 [Docket No.

128 at 3:12-17].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**The Debtor's filings with this Court are inconsistent and misleading**.  The Debtor recently described itself in filings with this Court[8] as a "single member LLC that is wholly-owned by Mr. Jiaqing Yang" that acquired prepetition "approximately 32 contiguous acres in Los Angeles that it intended to develop. . . ."[9]  The Debtor's other filings, however, are inconsistent with representations made to this Court recently.

The chapter 11 petition was signed by Betty Zheng, as Manager of the Debtor, which is a California limited liability company (LLC).  *Voluntary Petition for Non-Individuals Filing for Bankruptcy, filed on the Petition Date* [Docket No. 1 at 4 of 11].  The *Corporate Resolution Authorizing Filing*, filed on September 7, 2021 [Docket No. 14], lists Betty Zheng as a "Member-Manager" (with the word "member" presumably meaning "an owner of a membership interest in an LLC"), Jianqing Yang's signature is that of his unidentified "attorney in fact" and Betula is a signatory but its relationship to the Debtor and the other signatories is not identified therein; in the resolution, the Debtor is said to be managed by Betty Zheng.  The *Corporate Ownership Statement Pursuant to* Fed. R. Bankr. P. 1007(a)(1) *and 7007.1, and LBR 1007-4*, filed September 7, 2021 [Docket No. 15] is signed by Betty Zhang as Manager, but identifies no 10% or more direct or indirect owners of the Debtor.  Betty Zheng also signed the *Declaration Under Penalty of Perjury for Non-Individual Debtors*, also filed September 7, 2021 [Docket No. 16], as Manager, in which she stated that Schedules A/B, D, G and H are true and correct. The *List of Equity Security Holders*, filed September 7, 2021 [Docket No. 18], shows Jianqing Yang and Betula as members, and Jianqing Yang, Betula and Betty Zhen as "co-managers of the Debtor."

**The Debtor's valuation of its assets is wildly inconsistent with its lender's appraisals, and so must be investigated**.  The Debtor's valuation of its assets has been challenged by its secured lender REL, with an alleged differential of approximately $21 million in value – an

---

[8] E.g., *Objection to Proof of Claim No. 20 of Pennington Construction Advisors, Inc*., filed February 16, 2022 [Docket No. 107] ("Objection to Pennington Claim") at 3:14-16.

[9] The Debtor's 32 acres of land property is located at 2929 Amethyst Street, Los Angeles 90032, and is referred to by parties as the "Amethyst Property."

approximately **72% discrepancy**.  The Debtor earlier represented to this Court[10] that it owns real

property with an aggregate value of $29,976,000 that is subject to only $9,233,000 of secured debt

on its most valuable property (the Amethyst Property) with a collateral value of $26,440,000, and a

value of $23,450,000 for such property per an appraisal.  Also, Max Yang declared under penalty of

perjury that the "Los Angeles Properties were purchased between August 2016 and July of 2017

[for] a little over 36 million dollars all of which was contributed by Jianqing Yang as a capital

contribution to the Debtor.  Jianqing Yang also contributed at least 2 properties personally owned by

him to the Debtor."  *Declaration of Max Yang* in support of the Exclusivity Motion, Docket No. 61

at 11:23-27.

However, the Debtor's secured lender for the vast majority of the Debtor's real property (by

size and value) recently stated to this Court that the appraised aggregate value of three of the

Debtor's real properties, including the Amethyst Property, is **less than** its approximately $10 million

of secured debt.  As stated above, on February 24, 2022, the secured lender filed a motion for relief

from stay in order to proceed with its remedies outside of bankruptcy [Docket No. 127] and also

filed its related memorandum of points and authorities [Docket No. 128] (collectively the "<u>REL RFS

Motion</u>") in which it claims that the Debtor is not performing its postpetition obligations under their

loans (as it says is demonstrated in part by its Monthly Operating Reports lacking expected

information), asserting that the collateral value of these real properties are less than the amounts

owed by the Debtor on their loans.  The *Declaration of Rommy Shy* annexed to the REL RFS Motion

asserts an appraised value of $6,890,000 for the Amethyst Property, $795,000 for the 2526 Lincoln

Park Property (as defined by such lender) and $1,050,000 for the 2520 Lincoln Park Property, for a

total of $8,735,000.  The discrepancy between the Debtor's valuation of its estate's real property

assets and the lender's valuation needs to be investigated and evaluated by either the Committee or,

as requested herein, a chapter 11 trustee.

**The Debtor effectively proposes to pay its principal's claim a 100% recovery but not

pay any other general unsecured claims anything**.  As recently as February 22, 2022, the Debtor

---

[10] *Schedule A/B: Assets – Real and Personal Property*, filed September 7, 2021 [Docket No. 19] at Part 1(3) (Cash and cash equivalents); Part 9(55-56) and *Schedule D: Creditors Who Have Claims Secured by Property* at Part 1.  Neither of these two schedules were subsequently amended (per this Court's docket).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

stated that it "will be filing a plan and disclosure statement within two weeks [i.e., by March 8, 2022] that will pay allowed unsecured claims in full. The Plan will be funded by new contributions from the Debtor's sole member, Jianqing Yang."[11]

However, the Debtor is not honoring any nonpriority general unsecured claims save Jianqing Yang's. On September 11, 2021, the Debtor filed its *Schedule E/F: Creditors Who Have Unsecured Claims* [Docket No. 31]. In it, the Debtor listed each of the Committee members. For Betula and Phalanx, the Debtor lists their claims **without** checking the boxes for "contingent, unliquidated or disputed ("C/U/D Boxes"); for Pennington, it checked only the "unliquidated" box. *Id.* at 3.4 (Betula), 3.16 (Pennington) and 3.2 (Phalanx). Then, once Max Yang stepped in, the Debtor started implementing a bad faith, scorched earth strategy against its unsecured creditors and their Committee. On the day before the Committee was appointed, the Debtor filed its amended *Schedule E/F*, checking all of the C/U/D Boxes for Betula, Pennington and Phalanx, as well as one or more of the C/U/D Boxes for **all** other nonpriority general unsecured creditors, **except** for its principal Jianqing Yang for his claim for $43,523,255.42 for "Loans to company." *Id.* at 3.13. In other words, suspiciously, the Debtor's amended *Schedule E/F* left the estate with **no** non-insider general unsecured creditors with allowed claims despite the Debtor's prepetition business as a real estate developer.

Also, less than a month after the Committee was appointed, the Debtor objected to the proofs of claim of each Committee member [Docket Nos. 107, 113 and 120], and announced it would seek to disband the Committee and deny it its counsel of choice at this Court's March 22, 2022 hearing [Docket No. 125 at 2:5-7]. Such threat would be carried out only after the Committee's presence and actions forced the Debtor to announce that it would propose a 100 cents on the dollar plan funded by a supposedly new contribution from Jianqing Yang. *Id.* at 2:22-26. Such promise, however, could easily prove illusory if the Committee is disbanded. What happens to this promised equity contribution and 100% recovery if a significant amount of non-insider general unsecured claims are ultimately allowed and/or Jianqing Yang's $43,523,255.42 claim is disallowed or if such

---

[11] *Objection and Request for a Hearing on Application for an Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors, effective as of as of January 25, 2022*, filed February 22, 2022 [Docket No. 125 at 2:24-26].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

claim is equitably subordinated under 11 U.S.C. § 510(b) of the Bankruptcy Code or recharacterized as equity?  Will he still make the contribution?

**Jianqing Yang received substantial prepetition transfers that the Debtor is not challenging**.  The Debtor admits that Jianqing Yang was paid the amounts of $46,800, $184,483.28 and $133,246 within one year before the Petition Date, identifying such payments as loan repayments, particularly stating that the $133,246 amount was for "Unsecured loan repayments."[12]  Despite requests from the Committee, the Debtor has offered no evidence that is has investigated the propriety of these payments.

**The Debtor's counsel is protecting the Insiders by its obstreperous behavior and general uncooperativeness towards the Committee**.  The copies of emails annexed to the Dulberg Declaration as **Exhibits A - D**[13] demonstrate the SLC's obstreperous behavior and general uncooperativeness that often occurs when a debtor is seeking to inordinately benefit one or more Insiders.  SLC was retained by the Debtor as of November 21, 2021,[14] and proceeded to do little in this Case until February 15, 2022 when the Debtor's counsel revealed the Debtor's and SLC's course of action:

> By the end of the week, I would like to try to get out at least 4-5 claim objections including those of committee members. We plan on try to get a hearing to dissolve the committee set for hearing on March 22 along with the claim objections.  I would suggest you set your employment application for the same day.  We will be filing a notice of objection along with the motion to disband the committee.

Email re Jinzheng from Christopher Langley to Jeffrey Dulberg, cc Steven Chang, sent Feb. 15,

---

[12] SoFA at 4.2, 30.1 and continuation sheets 3.3.  It is unclear if any of the amounts listed in a particular item of the SoFA are subsumed within other item(s) in the SoFA referencing Jianqing Yang.

[13] [Exhibits include:  (a) Email re Jinzheng from Christopher Langley to Jeffrey Dulberg, sent Feb. 15, 2022 at 7:54 pm; (b) Email re Jinzheng from Jeffrey Dulberg to Christopher Langley, sent Feb. 17, 2022 at 4:20 pm; (c) Email re Jinzheng from Christopher Langley to Jeffrey Dulberg, sent Feb. 17, 2022 at 5:04 pm; and (d) Email re Jinzheng from Jeffrey Dulberg to Christopher Langley sent Feb. 17, 2022 at 11:56 pm.

[14] *Order Granting Application to Employ Shioda, Langley & Change LLP as General Insolvency Counsel for Debtor in Possession*, entered January 18, 2022 [Docket No 81 ¶ 2].  *See Addendum to Employment Application of Shioda Langley & Chang LLP as General Counsel to Add Effective Date of November 21, 2021*, filed December 16, 2021 [Docket No. 65 ¶ 4] ("The effective date of employment should have been listed as November 21, 2021, which is the date the substitution of attorney was signed by Jianqing Yang, the Applicant's manager."); *Substitution of Attorney [LBR 2091-1(b)]*, filed December 16, 2021 [Docket No. 48].

2022 at 7:57 pm.  The Committee's counsel replied:

> Choosing litigation in the face of that consideration [an offer by Committee counsel to resign if Committee is dissolved] would make it clear that Max's prerogative is to disenfranchise legitimate creditors versus meeting his fiduciary obligation to work with stakeholders, etc. Please reconsider so that we can collectively stay focused on restructuring.

Email re Jinzheng from Jeffrey Dulberg to Christopher Langley, cc Steven Chang, sent Feb. 17, 2022 at 4:20 pm.  Langley replied:

> I do not see what benefit you serve in this case. We don't believe that any of your committee members have valid claims against the Debtor.
> . . .
> Please tell me who you believe the legitimate creditors to be.

Email re Jinzheng from Christopher Langley to Jeffrey Dulberg, sent Feb. 17, 2022 at 5:04 pm.  Dulberg replied:

> . . . .In any event, as you have refused all requests for informal discussions, the Committee going is compelled to take Max's deposition regarding the control issues, his appointment, the state of the case, etc. Let me know if you will have him sit on March 7, 10, or 11 at 10 am for that in our offices in Century City or if you and he are refusing to do so and will require a Court order. . . .

> It seems to me the proper cause of action would be for you to reach out to the United States Trustee's office to ask them to investigate their selection. It's only if that office were to refuse to do so that you should even consider taking action in Court to reform the Committee.

Email re Jinzheng from Jeffrey Dulberg to Christopher Langley sent Feb. 17, 2022 at 11:56 pm.

As of the date of the filing of this Motion, the Debtor's counsel has yet to respond with an available date for Max Yang's examination, nor any principled reason to not conduct such examination, despite persistent requests from counsel to the Committee.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### III.

### ARGUMENT

**A.    The Court Must Appoint a Trustee Upon a Finding of Cause of Where It is in the Interests of Creditors and Other Interests of the Estate.**

11 U.S.C. § 1104(a) of the Bankruptcy Code provides that the Bankruptcy Court **shall** order the appointment of a trustee, at any time after the commencement of the case but prior to confirmation of a plan, on request of a party in interest or the U.S. Trustee, and after notice and a hearing:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

*Id.* § 1104(a)(1)-(2).

Subsection (a)(1) addresses management's pre- and post-petition misdeeds or mismanagement, while subsection (a)(2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement.  *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994).  Where the court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is **mandatory**. *Off. Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp.* (*In re W.R. Grace & Co.*), 285 B.R. 148, 158 (Bankr. D. Del. 2002); *Fukutomi v. U.S. Trustee (In re Bibo, Inc.)*, 76 F.3d 256, 258 (9th Cir. 1996) (The [Bankruptcy] Code says a trustee 'shall' be appointed.").[15]

---

[15] *In re Pasadena Adult Residential Care, Inc.* 2015 Bankr. LEXIS 3601, at *44-49 (Bankr. C.D. Cal. Oct. 23, 2015) ("The parties seeking appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a) have the burden of proving appropriate grounds exist for such appointment by the preponderance of the evidence; holding appointment of a trustee warranted under both subsections (1) and (2) of 1104(a) of the Bankruptcy Code:  "The evidentiary record above demonstrates, the Pasadena Debtors have acted in bad faith in making the misrepresentations to their creditors, including those represented by the Committee and the Professionals, and have not acted responsibly in the treatment of the creditors and the patients under their charge, in reckless disregard for the dire financial realities of its businesses."); *id*. at 45 ("Some cases have held that, once a court finds that 'cause' exists to appoint a trustee under 11 U.S.C. § 1104(a)(1), a

DOCS_LA:342496.8 46360/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The presumption that a debtor should remain in possession of its estate and in control of its

2    affairs holds only if management "can be depended upon to carry out the fiduciary responsibilities of

3    a trustee." *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 355, 105 S. Ct. 1986

4    (1985); *see also In re Marvel Ent. Grp.*, 140 F.3d 463, 473 (3d Cir. 1998) ("[I]n the appropriate case,

5    the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve

6    the integrity of the bankruptcy process and to insure that the interests of creditors are served."); *In re*

7    *Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) ("a debtor-in-possession must act

8    as a 'fiduciary of his creditors' to 'protect and to conserve property in his possession for the benefit

9    of creditors,' and to refrain [ ] from acting in a manner which could damage the estate . . ." (citing *In*

10    *re Sharon Steel Corp.* 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3d Cir.

11    1989)).

12    Among the fiduciary duties of a debtor in possession is the primary goal of the bankruptcy

13    process: "to get the creditors paid." *In re Ionosphere Clubs*, 113 B.R. at 169 (quoting *In re Pied*

14    *Piper Casuals, Inc.*, 40 B.R. 723, 727 (Bankr. S.D.N.Y. 1984). Importantly, "because the [debtor in

15    possession's] fiduciary obligation is to the estate, and not to one group, the [debtor in possession]

16    must act to benefit the estate as a whole." *In re Microwave Prods. of Am., Inc.*, 102 B.R. 666, 671

17    (Bankr. W.D. Tenn. 1989) (emphasis added); *Hirsch v. Pa. Textile Corp., Inc. (In re Centennial*

18    *Textiles, Inc.)*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) (a chapter 11 debtor and its managers owe

19    fiduciary duties to the estate). Moreover, a debtor in possession's fiduciary duties also "include a

20    duty of care to protect the assets, a duty of loyalty and a duty of impartiality." *In re Bowman*, 181

21    B.R. 836, 843 (Bankr. D. Md. 1995). To fulfill its duty of loyalty, a debtor in possession must

22    "avoid self-dealing, conflicts of interest and the appearance of impropriety." *Id.*

23    As explained more fully below, the appointment of a chapter 11 trustee is warranted under

24    the circumstances, pursuant to either 11 U.S.C. § 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code.

27    trustee shall be appointed and there is no discretion to deny relief."); *In re Pasadena Adult Residential Care, Inc.*, 2015
Bankr. LEXIS 3579, at *44 (Bankr. C.D. Cal. Oct. 22, 2015)(same).

13

DOCS_LA:342496.8 46360/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

While section 1104(a)(l) of the Bankruptcy Code expressly identifies four bases upon which "cause" may be found—fraud, dishonesty, incompetence, and gross mismanagement—those enumerated grounds are not exclusive.  Additional grounds may be determined on a case-by-case basis.  *See In re Savino Oil & Heating Co.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989); *In re Sharon SteelCorp.*, 871 F.2d at 1226.  Cause also may be established by the: (1) materiality of the misconduct of the debtor's management; (2) evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors; (3) existence of prepetition voidable preferences or fraudulent transfers; (4) unwillingness or inability of management to pursue estate causes of action; (5) conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; and (6) self-dealing by management or waste or squandering of corporate assets.  *In re Marvel Entm't Grp., Inc.*, 140 F.3d at 472-73; *In re Sharon Steel Corp.*, 871 F.2d at 1228; *In re Intercat, Inc.*, 247 B.R. 911, 920-21 (Bankr. S.D. Ga. 2000).

"Cause" is often found based on a conflict of interest between a debtor's management and the interests of the estate and its creditors.  *Cajun Electric Power Coop., Inc.*, 74 F.3d 599 (5th Cir. 1996), *cert. denied* 519 U.S. 808, 117 S. Ct. 51 (1996) (conflict of interest is sufficient reason for appointment of a chapter 11 trustee).  This conflict arises out of the debtor-in-possession's duty to operate the estate as would a trustee.  "If a debtor remains in possession, the debtor's directors have essentially the same fiduciary obligations to creditors and shareholders as would the trustee for a debtor out of possession."  *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. at 355; *In re Marvel Entertainment Group, Inc.*, 140 F.3d at 474 (breach of a debtor's fiduciary duty "to protect and conserve property in its possession for the benefit of creditors" warrants appointment of a trustee).

Because the debtor's fiduciary obligation is to the estate and creditors, and not to its officers, the obligation carries an inherent prohibition against self-dealing.  *In re Van Brunt*, 46 B.R. 29, 30 (Bankr. W.D.Wis. 1984); *In re Microwave Products of America, Inc.*, 102 B.R. 666, 671 (Bankr. W.D.Tenn. 1989).  As described at length in *Microwave*, the prohibition against self-dealing precludes directors and management from using their positions and control to further their own private interest or otherwise exploit their position.  *Id.* at 672.  In *Microwave*, a trustee was

1    appointed based on attempts by board members to structure deals on terms more favorable to them

2    than to other creditors.  *Id.  See also In re PRS Ins. Grp., Inc.,* 274 B.R. 381, 387 (Bankr. D. Del.

3    2001) (use of corporate assets for the personal benefit of insiders, resulting in the deterioration of the

4    debtors' assets , further evidences "gross mismanagement" and mandates appointment of a

5    chapter 11 trustee.).  Thus, *In re William H. Vaughan & Co.*, 40 B.R. 524, 526 (Bankr. E.D. Pa.

6    1984) held that appointment of a trustee was necessary because the debtor could not be trusted to

7    scrutinize dealings between debtor and debtor's president.

8            Here, as discussed above, (1) the Debtor's replacement management and second bankruptcy

9    counsel are doing all they can to pay Jianqing Yang's claims and maintain his equity interest in the

10   Debtor, while contesting the claims of legitimate creditors; (2) the Debtor lacks any semblance of

11   evenhandedness between creditors and the Insiders, clearly favoring Jianqing Yang; (3) the Debtor

12   admits that Jianqing Yang received prepetition transfers, which may be avoidable, yet has not

13   objected to his claim, *inter alia*, under section 502(d) of the Bankruptcy Code for not repaying an

14   avoidable transfer; (4) the re-scheduling of all claims in Schedule E/F to CUD Claims other than

15   Jianqing Yang's over $43 million claim and second counsel's strategic uncooperativeness (bereft of

16   even common courtesies between counsel) demonstrates that Max Yang and the Debtor's second

17   counsel – paid for by Jianqing Yang [16] – would be unwilling to pursue estate causes of action against

18   Jianqing Yang; (5) Max Yang and its Jianqing Yang -paid for second counsel have conflicts of

19   interest that interfere with their ability to fulfill fiduciary duties to the Debtor, and (6) the Debtor

20   through its gross mismanagement has wasted and squandered its assets, particularly by allowing

21

22

---

23   [16] *Accord In re Hathaway Ranch Partnership*, 116 B.R. 208, 219 (Bankr, C.D. Cal. 1990) (Zurzulo) ("Third parties do
not transfer property or funds to an attorney to represent a debtor in possession unless that representation is in the best

24   interest of the third party. It is often the case that the interests of the third party are not identical to the interests of the
debtor in possession in its role as fiduciary of the bankruptcy estate. Thus by accepting payment from a third party, the

25   proposed counsel for the debtor in possession necessarily has a conflict of interest in that counsel is serving two masters -
- the one who paid counsel and the one counsel is paid to represent. I find that this is an actual conflict of interest that

26   disqualifies a professional from being employed pursuant to 11 U.S.C. § 327 absent a showing that the interests of the
third party and the bankruptcy estate are identical upon notice to all creditors, equity security holders and other parties in

27   interest.") (cited in 1 Collier Comp, Employ & Appoint of Trustees & Prof. ¶ 2.05[3] n.8).  Such Collier states "[w]here
the insider has received payments that are *prima facie* preferences under section 547(b), there is a potential conflict of

28   interest which is almost certain to ripen into an actual conflict one the payments are investigated and prosecuted.  Id. at
text after n.23 reference).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  them to be the subject of a secured lender's relief from stay motion that if granted would deprive the

2  estate and its creditors of the vast majority of the Debtor's assets (by size and value).

3  Once a party has proven "cause" under section 1104(a)(1), a bankruptcy court must grant the

4  requested relief.  *See Bibo*, 76 F.3d at 258; *In re V. Savino Oil,* 99 B.R. at 525; *In re Deena*

5  *Packaging Indus., Inc.*, 29 B.R. 705, 706 (Bankr. S.D.N.Y. 1983).  Quoting *V. Savino Oil*

6  approvingly, the Third Circuit stated:

7
> The willingness of Congress to leave a debtor-in-possession is premised
> on an expectation that current management can be depended upon to
8
> carry out the fiduciary responsibilities of a trustee.  And if the debtor-
> in-possession defaults in this respect, Section 1104(a)(1) ***commands***
9
> that the stewardship of the reorganization effort must be turned over to
> an ***independent trustee***.
10

11  *In re Marvel Entertainment Grp., Inc.*, 140 F.3d at 474 (quoting *In re V. Savino Oil*, 99 B.R. at 526)

12  (emphasis added).

13  Section 1104(a)(2) of the Bankruptcy Code allows the appointment of a trustee even when no

14  "cause" exists.  *See In re Sharon Steel Corp.*, 871 F.2d at 1226; *In re Ionosphere Clubs*, 113 B.R. at

15  168.  Under section 1104(a)(2), the Court may appoint a trustee, in its discretion, to address "the

16  interests of the creditors, equity security holders, and other interests of the estate." 11 U.S.C. §

17  1104(a)(2), 871 F.2d at 1226.

18  In determining the best interests of creditors and the estate, courts "resort to [their] broad

19  equity powers ... equitable remedies are a special blend of what is necessary, what is fair and what is

20  workable." *In re Hotel Assocs., Inc.*, 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980); *see In re Wings Digital*

21  *Com.*, 2005 Bankr. LEXIS 3476, at *14 (Bankr. S.D.N.Y. May 16, 2005) (section 1104(a)(2) is a

22  "lesser standard" than section 1104(a)(1)).  In exercising these broad equitable powers to appoint a

23  trustee under Bankruptcy Code § 1104(a)(2), courts "eschew rigid absolutes and look to the practical

24  realities and necessities inescapably involved in reconciling competing interests." *In re Hotel*

25  *Assocs., Inc.*, 3 B.R. at 345. Accordingly, the standard for appointment of a chapter 11 trustee under

26  section 1104(a)(2) is flexible.  *See* 124 Cong. Rec. H11, 102 (daily ed. Sept. 28, 1978); S17, 419

27  (daily ed. October 6, 1978).

28

16

Under section 1104(a)(2), courts "look to the practical realities and necessities." *In re Euro-American Lodging Corp.*, 365 B.R. at 427. Among the factors courts consider are "(i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence – or lack thereof – of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment." *Id.* (citations omitted). Each of the four considerations described above warrants appointment of a trustee here.

An independent trustee should be appointed under section 1104(a)(2) of the Bankruptcy Code where, as here, a debtor and/or its management and insiders suffer(s) from material conflicts of interest and cannot be trusted to conduct independent investigations of questionable transactions in which they were involved. *See, e.g., In re PRS Ins. Group, Inc.*, 274 B.R. at 389 (appointment of trustee appropriate under section 1104(a)(2) where causes of action against insiders are a significant asset of the estate); *In re Microwave Prods. of Am., Inc.*, 102 B.R. at 676 (chapter 11 trustee appointed where debtor was "not in a strong-posture to pursue possible claims" due to conflicts of interest and fraudulent transfers, and "a trustee would likely be able to investigate claims that could result in additional sums of money coming into the estate"); *In re L.S. Good & Co.*, 8 B.R. 312 (Bankr. N.D. W.Va. 1980) (appointing trustee under section 1104(a)(2) where "[t]he magnitude of the number of inter-company transactions places current management of [the debtor] in a position of having grave potential conflicts of interest and the presumption arises that the current management of [the debtor] will be unable to make the impartial investigations and decisions demanded in evaluating and pursuing inter-company claims on behalf of [the debtor]").

Further, "[a] court is more likely to appoint a trustee under § 1104(a)(2) when reorganization is not possible, and a Debtor's principal may be motivated to protect his own interests rather than the interests of creditors. [citation omitted]  When coupled with a lack of confidence in management, and the benefits of appointing a trustee outweigh the cost, courts often find the argument for appointment of a trustee to be compelling." *In re Morningstar Marketplace, Ltd.*, 544 B.R. 297, 305 (Bankr. M.D. Pa. 2016).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

1    There is another benefit to the appointment of a chapter 11 trustee: since the trustee will be

2    the holder of the Debtor's attorney-client privilege, the estate will avoid the prospect of costly

3    discovery disputes over the Committee's ability to obtain documents asserted to be privileged that

4    are pertinent to any investigation and essential for concluding it quickly and effectively.

5    **B.      As an Alternative to the Appointment of a Trustee, the Court Should Terminate
         Exclusivity for Cause.**

6

7    Bankruptcy Code section 1121(d) provides that the court may shorten a debtor's plan

8    exclusivity periods for "cause."  11 U.S.C. § 1121(d).  Although the term "cause" is not defined in

9    the Bankruptcy Code, it is well-established that "cause" is a flexible standard designed to balance the

10   competing interests of debtors and their stakeholders.  *United States Savings Ass'n v. Timbers of*

11   *Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 372 (5th

12   Cir. 1987), *aff'd*, 484 U.S. 365 (1988) (the intent of section 1121 is to "limit the delay that makes

13   creditors the hostages of Chapter 11 debtors").  Ultimately, whether cause exists is based on the

14   "facts and circumstances in each individual case," and "the court is granted broad discretion to

15   determine what is sufficient cause."  *In re Sharon Steel Corp.*, 78 B.R. 762, 763-65 (Bankr. W.D. Pa.

16   1987).  *See also In re Borders Group, Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) (same); *In*

17   *re Adelphia Comm. Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) (same); *In re Lehigh Valley*

18   *Prof'l Sports Club, Inc.*, 2000 WL 290187, at *2 (Bankr. E.D. Pa. Mar. 14, 2000) (same). The

19   legislative history of section 1121(d) makes clear that exclusivity "should not be employed as a

20   tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory."

21   Senate Report No. 99-764 & House Conference Report No. 99-958 (reprinted in 1986 U.S. Code

22   Cong. & Adm. News, at 5227)  *see also In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1006 (Bankr.

23   N.D. Ind. 1990) (denying extension of exclusivity when "such an extension would have the result of

24   continuing to hold creditors hostage to the Chapter 11 process and pressuring them to accept a plan

25   they believe to be unsatisfactory").

26   As noted above, in paragraph 4 of its Exclusivity Extension Order, this Court stated: "[t]his

27   ruling is without prejudice to any party in interest filing a motion for early termination of exclusivity

28   upon a showing that the *Henry Mayo Newhall* factors no longer support the extensions granted

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18

herein." The *Henry Mayo Newhall* factors are:

> (1) a first extension;  (2) in a complicated case;  (3) that had not been pending for a long time, relative to its size and complexity;  (4) in which the debtor did not appear to be proceeding in bad faith;  (5) had improved operating revenues so that it was paying current expenses;  (6) had shown a reasonable prospect for filing a viable plan;  (7) was making satisfactory progress negotiating with key creditors; (8) did not appear to be seeking an extension of exclusivity to pressure creditors; and (9) was not depriving the Committee of material or relevant information. . . .  [A] transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution.  The key question to us, then, is whether the first extension of exclusivity functioned to facilitate movement towards a fair and equitable resolution of the case, taking into account all the divergent interests involved.

*Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp. (In re Henry Mayo Newhall Mem'l Hosp.)*, 282 B.R. 444, 452-53 (BAP 9th Cir. 2002).[17]

There are compelling grounds for terminating the Debtor's plan exclusivity in this Case because the currently known facts here do not support *Henry Mayo Newhall* factors four through nine, inclusive. As discussed above, the Debtor has been mired in mismanagement and blatant favoritism toward Insiders (i.e., failing factor four due to bad faith), has not improved the Debtor's revenues or paid all expenses (e.g., per the REL RFS Motion and its MORs) postpetition (i.e., failing factor five), as discussed herein, would not be proposing a viable plan (i.e., failing factor six), and has been unresponsive to the Committee's and creditors' concerns (i.e., failing factors seven, eight and nine).

Patently, this Case calls for creditors, through the Committee as their fiduciary representative, to ensure, among other things, that an unbiased, highly competent and experienced plan trustee is in charge of managing and liquidating estate assets and prosecuting litigation against

---

[17] Cited in *In re New Meatco Provisions, LLC*, 2014 Bankr. LEXIS 914, at *8-10 (Bankr. C.D. Cal. Mar. 10, 2014) ("New Meatco is not an operating entity. There is no business to reorganize. This is a liquidation case which is neither large or complex . . . . [T]here are no unresolved contingencies that would prevent New Meatco from proposing a plan to distribute to creditors the liquidated funds of the estate. The court also questions whether New Meatco thoroughly appreciates its fiduciary duties to the estate and its creditors. . . . [T]here is little credible evidence upon which the court can base a finding that New Meatco will either make further progress in negotiating with creditors or be able to present a plan of liquidation that has creditor support and a prospect at confirmation within a reasonable period of time. The court agrees with the Creditors' Committee that it is time the playing field is leveled so that all the players, including the debtor, have an even chance in proposing a plan which might be acceptable to the creditors in the case.") (citation omitted).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

insiders.  Indeed, terminating exclusivity is needed to protect the interests of creditors.  The *quid pro quo* for maintaining the panoply of rights of a debtor in possession is acting as a fiduciary for the estate and its creditors; without a trustworthy mechanism for making decisions on behalf of the Debtor and proper books and records, the Debtor certainly cannot fulfill such duties.

For the foregoing reasons, the Committee has made clear to the Debtor that any Debtor's plan that does not clearly put the estate's interests first (as opposed to pursuing the interests of Insiders and their selected counsel for the Debtor) is unacceptable.  Any plan proposed by the Debtor that does not provide a meaningful recovery for legitimate creditors and no recovery for Insiders on their disallowable, equitably subordinated or recharacterizable as equity claims will **not** have the Committee's support and, the Committee believes, the support of most, if not substantially all, unsecured creditors. In light of the Debtor's history of mismanagement and failure to oppose Jianqing Yang's Insider claim, a number of unsecured creditors (including the Committee's members) have no faith in the Debtor and would vote against any plan unilaterally proposed by the Debtor that does not provide a meaningful recovery for all legitimate creditors, not just Jianqing Yang.  Thus, plan exclusivity serves no legitimate purpose here since the Debtor's plan (as anticipated) would not be confirmable, as it would not garner sufficient creditor support to provide one consenting impaired class, would not be feasible and likely not pass the best interests of creditors test, among other fatal flaws.

The Committee is prepared to offer an alternative plan that the Committee believes that unsecured creditors will favor, which further supports the termination of the Debtor's exclusivity. *See All Seasons Indus., Inc.*, 121 B.R. at 1006 (denying extension of exclusivity when "such an extension would have the result of continuing to hold creditors hostage to the Chapter 11 process and pressuring them to accept a plan they believe to be unsatisfactory"; "these creditors have lost faith in the capability and perhaps the integrity of debtor's management"); *In re Crescent Beach Inn, Inc.,* 22 B.R. 155, 160-61 (Bankr. D. Me. 1982) ("Shortening the debtor's exclusive period for filing a plan will permit any party in interest, including parties with perhaps a more objective view of the debtor's circumstances, to file a plan."); *Century Glove, Inc. v. First American Bank*, 860 F.2d 94, 102 (3rd Cir. 1988) ("The ability of a creditor to compare the debtor's proposals against other possibilities is a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

20

1    powerful tool by which to judge the reasonableness of proposals.  A broad exclusivity provision,

2    holding that only the debtor's plan may be 'on the table,' takes this tool from creditors.").

3         Congress intended that exclusivity would be terminated under section 1121(d) in

4    circumstances such as here.  The law is clear that exclusivity may not be used to exert leverage

5    upon creditors to accept a plan simply to avoid delay, and that terminating exclusivity is

6    warranted to level the playing field and allow creditors to consider competing plans, especially in

7    this context where the Debtor is steeped in mismanagement, and the Debtor has no hope of

8    reorganizing or ongoing stake, and are instead liquidating all of their assets.  The only reason for

9    a creditor to vote for the Debtor's plan would be that there is no alternative on the table.

10   Continuing the Debtor's exclusivity will only delay the process to promptly confirm an

11   acceptable plan, to which the Debtor's estate and creditors are entitled.

12   **C.    Also, in the Absence of a Trustee, this Court Should Grant the Committee Derivative
         Standing to Prosecute Estate Claims against Insiders**

14        While the Bankruptcy Code does not, in express terms, authorize committees to sue on behalf

15   of a debtor's estate, the majority of circuits reaching the issue have held that Bankruptcy Code

16   sections 1103(c)(5) and 1109(b) imply a "qualified right for creditors committees to initiate suit with

17   the approval of the Bankruptcy Court where the trustee or debtor in possession unjustifiably failed to

18   bring suit or abused its discretion in not suing on colorable claims likely to benefit the reorganization

19   estate."  *In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 424 (2d Cir. 2008); *Unsecured Creditors*

20   *Comm. of STN Enters. Inc v. Noves (In re STN Enterprises, Inc.)* ("STN"), 770 F.2d 901, 904 (2d

21   Cir. 1985) (same); *Adelphia Commc'ns Corp v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*

22   ("Adelphia"), 330 B.R. 364 (Bankr. S.D.N.Y. 2005) (same) (citing cases), cited in *3dfx Interactive v.*

23   *nVidia Corp. (In re 3dfx Interactive)*, 2009 Bankr. LEXIS 120, at *17-18 (Bankr. N.D. Cal. Jan. 6,

25   2009) ("There is no explicit authority in the Bankruptcy Code for a committee to initiate adversary

26   proceedings but it is clear that in certain situations, a committee may be permitted to proceed as the

27   Equity Committee is proceeding here - with derivative standing.").  *See also Official Comm. of*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21

*Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 559-60 (3d Cir. 2003)

("bankruptcy courts, pursuant to their equitable powers, can confer upon creditors' committees

standing to bring avoidance actions for the benefits.").

    In order to determine whether the debtor in possession has unjustifiably failed to bring suit so

as to give a creditors' committee standing to bring an action, this Court must determine (1) whether

the committee has presented "a colorable claim or claims for relief that on appropriate proof would

support a recovery," and (2) "whether an action asserting such claims is likely to benefit the

reorganization estate." *STN*, 779 F.2d. at 905; *Adelphia*, 330 B.R. at 374 and n. 19 ("A debtor's

failure to bring a claim is deemed to be unjustifiable when the committee has presented a colorable

claim that on appropriate proof would support recovery and the action is likely to benefit the

estate"); *Official Committee of Unsecured Creditors v. Morgan Stanley & Co., Inc (In re Sunbeam

Corp.)*, 84 B.R. 355, 374 (Bankr. S.D.N.Y 2002) (same).

    The case law construing the requirement for "colorable" claims clearly provides that the

requisite showing is a relatively low threshold to satisfy.  *See, e.g.*, *Adelphia.*, 330 B.R. at 376

(holding that the requisite standard for presenting a "colorable" claim is relatively easy to meet); *In

re America's Hobby Ctr.,* 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998) (observing that only if the

claim is "facially defective" should standing be denied).  Courts have held that, in determining

whether a colorable claim exists, the court must engage in an inquiry "much the same as that

undertaken when a defendant moves to dismiss a complaint for failure to state a claim."  *In re iPCS,

Inc.*, 297 B.R. 283, 291 (Bankr. N.D. Ga. 2003); *see also In re Valley Park*, 217 B.R. 864, 869 n.4

(Bankr. D. Mont. 1998) (holding that the committee "does not have to satisfy the quantum of proof

necessary for a judgment in order to show a colorable claim").

    Courts have also held that, in determining whether a claim is colorable, the court is not

required to conduct a mini-trial.  Instead, the court may "weigh the 'probability of success and

financial recovery,' as well as the anticipated costs of litigation, as part of a cost/benefit analysis

conducted to determine whether pursuit of colorable claims are likely to benefit the estate." *In re*

*iPCS*, 297 B.R. at 291.  Thus, the Committee is only required to establish the existence of plausible

claims – and that the claims to be brought have some value to the Debtor's estate and its unsecured

creditors.

Once a party has shown that it has asserted a colorable claim, to satisfy the prong that

requires the debtor to have unjustifiably refused to pursue the claim, a party seeking derivative

standing may show that: (a) demand was made of the debtor and the debtor unjustifiably failed to

bring suit or abused its discretion in determining not to bring suit, or (2) demand would be futile.

*STN*, 779, F.2d at 901; *In re G-I Holdings*, 313 B.R. 612, 630 (Bankr. N.J. 2004), aff'd / vac'd in

part, 2006 U.S. Dist. LEXIS 45510 (D.N.J. June 21, 2006); *In re STN Enters.*, 779 F.2d at 904.

Case law makes clear, however, that a committee is not required to demand formally that a

debtor take action where it is "plain from the record that no action on the part of the debtor would

have been forthcoming."  *See In re Nat'l Forge Co.*, 326 B.R. 532, 544 (W.D. Pa. 2005) (affirming

the bankruptcy court's excusal of the committee's failure to petition the debtor on the ground that

any request to file suit, under the facts of the case, would have been futile); *see also In re La. World

Exposition*, 832 F.2d at 1391 (court would not remand so that committee could make formal demand

upon debtor where conflicts would likely prevent debtor from pursuing litigation adverse to its

directors and officers); *In re First Capital Holdings Corp.*, 146 B.R. 7, 13 (Bankr. C.D. Cal. 1992)

(creditors' committee would be excused from making a demand on a debtor to pursue action against

its officers, directors and controlling shareholders where such a demand would be futile); *In re

Joyanna Holitogs, Inc.*, 21 B.R. 323, 326 (Bankr. S.D.N.Y. 1982) (holding that general right to be

heard would be an empty grant unless those who have such a right are also given the right to do

something where the debtors will not).

23

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Here, pursuit of causes of action on behalf of the Debtor's estate and its eligible creditors will maximize recovery for all creditors, which is in the best interest of the bankruptcy estate.  The Committee is the appropriate party to commence and prosecute causes of action because its purpose is to defend the interest of unsecured creditors and to ensure that the assets of the estate are maximized for unsecured creditors.  *See, e.g., In re Nationwide Sports Distrib., Inc.*, 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998) ("the purpose of such [unsecured creditors'] committees is to represent the interests of unsecured creditors and to strive to maximize the bankruptcy dividend paid to that class of creditors.").

In addition, the Committee does not expect that the costs and expenses to be incurred in connection with prosecuting causes of action will be excessive compared to potential recovery for the estate. While litigation costs are one factor to consider, the Committee only needs to provide comfort that the prosecution represents a sensible expenditure of the estate's resources.  *See, e.g., In re Adelphia Communications Corp.*, 330 B.R. 364, 386 (Bankr. S.D.N.Y. 2005).

Here, the potential benefits of prosecuting causes of action outweigh the costs to be incurred in connection therewith.  The causes of action here are potentially worth hundreds of thousands of dollars in recoveries and/or reducing or recharacterization of Jianqing Yang's over $43 million claim for repayment of purported general unsecured loans during the applicable avoidable transfer period.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

24

1

## IV.

2

## CONCLUSION

3      **WHEREFORE**, the Committee respectfully requests that the Court enter its order

4   (i) granting the Motion; (ii) directing the appointment of a chapter 11 trustee; (iii) in the alternative,

5   terminating the Debtor's exclusivity period and granting the Committee standing to prosecute estate

6   claims against Insiders; and (iv) granting the Committee such other and further relief as the Court

7   may deem appropriate.

8

9    Dated:    March 1, 2022                    PACHULSKI STANG ZIEHL & JONES  LLP

10                                             By      /s/ *Jeffrey W. Dulberg*
11                                                     Jeffrey W. Dulberg

12                                                     [Proposed] Counsel to the Official Committee
                                                       of Unsecured Creditors

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

25

1

### DECLARATION OF DAVID PARK

2       I, David Park, declare and state as follows:

3       1.      I am the Chair of the Official Unsecured Creditors' Committee of Jinzheng Group

4   (USA) LLC.

5       2.      I make this declaration in support of the *Motion for (I) the Appointment of a Chapter*

6   *11 Trustee, or in the Alternative, (II) (A) Termination of Plan and Solicitation Exclusivities and*

7   *(B) Authorizing Standing for the Committee of Creditors Holding Unsecured Claims to Prosecute*

8   *Actions Against Insiders of the Debtor.*

9       3.      The Committee, after due deliberation and a vote, has decided that it must seek the

10  replacement of Max Yang and SLC LLP as the protectors of the estate's assets by asking this Court

11  to direct the Office of United States Trustee to appoint a chapter 11 trustee.  Alternatively, the

12  Committee seeks an order of this Court terminating the Debtor's plan filing and solicitation

13  exclusivities so that the Committee may propose a confirmable plan that takes in to account all

14  legitimate claims, as well as authorizing the Committee to investigate and, if appropriate, bring and

15  prosecute one or more avoidance and/or other actions against Insiders, including Jianqing Yang,

16  whom the Debtor admitted received hundreds of thousands of dollars from the Debtor prior to the

17  commencement of this Case.[1]

18      I declare under penalty of perjury under the laws of the United States of America, that the

19  foregoing is true and correct.

20      Executed this 1st day of March, 2022, at Los Angeles , CA.

21

22                                                      David Park

23

24

25

26

27

------

28  [1] *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, filed September 11, 2021 [Docket No. 30] ("SoFA") at 4.2, 30.1 and continuation sheets 3.3.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:342496.7 46360/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### DECLARATION OF JEFFREY W. DULBERG

I, Jeffrey W. Dulberg, declare and state as follows:

1.        I am an attorney duly admitted to practice by the State of California and before this Court.

2.        I am a partner of the Firm and am duly admitted and licensed to practice in the State of California and to practice before this Court.

3.        I make this declaration in support of the *Motion for (I) the Appointment of a Chapter 11 Trustee, or in the Alternative, (II) (A) Termination of Plan and Solicitation Exclusivities and (B) Authorizing Standing for the Committee of Creditors Holding Unsecured Claims to Prosecute Actions Against Insiders of the Debtor* (the "Motion").

4.        Attached hereto as **Exhibit A** is a true and correct copy of an email from Christopher Langley to Jeffrey Dulberg, sent Feb. 15, 2022 at 7:57 pm.

5.        Attached hereto as **Exhibit B** is a true and correct copy of an email from Jeffrey Dulberg to Christopher Langley, sent Feb. 17, 2022 at 4:20 pm.

6.        Attached hereto as **Exhibit C** is a true and correct copy of an email from Christopher Langley to Jeffrey Dulberg, sent Feb. 17, 2022 at 5:04 pm.

7.        Attached hereto as **Exhibit D** is an email from Jeffrey Dulberg to Christopher Langley sent Feb. 17, 2022 at 11:56 pm.

DOCS_LA:342496.8 46360/002

1    I declare under penalty of perjury under the laws of the United States of America, that the

2    foregoing is true and correct.

3    Executed this 1st day of March, 2022, at Los Angeles, California.

4

5

6                                        */s/ Jeffrey W. Dulberg*
                                         Jeffrey W. Dulberg

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

28

# EXHIBIT A

**Jeffrey Dulberg**

| | |
|---|---|
| **From:** | Christopher Langley <chris@slclawoffice.com> |
| **Sent:** | Tuesday, February 15, 2022 7:57 PM |
| **To:** | Jeffrey Dulberg |
| **Cc:** | Steven Chang |
| **Subject:** | Re: Jinzheng |

The depo is at the San Gabriel office. Yes we are going forward this Thursday with Park at 10:00am. I will get back to you on your email in more detail tomorrow.

By the end of the week, I would like to try to get out at least 4-5 claim objections including those of the committee members.

We plan on try to get a hearing to dissolve the committee set for hearing on March 22 along with the claim objections. I would suggest that you set your employment application for the same day. We will be filing a notice of objection along with the motion to disband the committee.

Chris

On Tue, Feb 15, 2022, 3:13 PM Jeffrey Dulberg <jdulberg@pszjlaw.com> wrote:

Chris – Let me know your thoughts on my note below when you get a chance. Also, can you confirm you are going forward on 2/17 with the Park depo? If you are starting at 10am, I can make a couple of hours that morning in person. Your Santa Ana office is the site, correct? If you choose to move it, I'd prefer Friday 2.25 vs Thursday 2.24 to the extent you can schedule it then.

**Jeffrey Dulberg**
Pachulski Stang Ziehl & Jones LLP
Tel: 310.277.6910 | Fax: 310.201.0760
jdulberg@pszjlaw.com
vCard | Bio | LinkedIn

Los Angeles | San Francisco | Wilmington, DE | New York | Houston

**From:** Jeffrey Dulberg
**Sent:** Monday, February 14, 2022 1:57 PM
**To:** 'Christopher Langley' <chris@slclawoffice.com>
**Subject:** Jinzheng

Chris –

# EXHIBIT B

# Jeffrey Dulberg

| | |
|---|---|
| **From:** | Jeffrey Dulberg |
| **Sent:** | Thursday, February 17, 2022 4:20 PM |
| **To:** | 'Christopher Langley' |
| **Cc:** | Steven Chang |
| **Subject:** | RE: Jinzheng |

Chris – Following up on your email promising a more detailed response to mine.  Shall I assume that you intend to object to our application despite my offer to discuss it further and to effectively yield to what I think is your primary concern (i.e. to resign if and when the committee is dissolved)?  Choosing litigation in the face of that consideration would make it clear that Max's prerogative is to disenfranchise legitimate creditors versus meeting his fiduciary obligation to work with stakeholders, etc.  Please reconsider so we can collectively stay focused on restructuring.

Best,


**Jeffrey Dulberg**
Pachulski Stang Ziehl & Jones LLP
Tel: 310.277.6910 | Fax: 310.201.0760
jdulberg@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston


**From:** Christopher Langley [mailto:chris@slclawoffice.com]
**Sent:** Tuesday, February 15, 2022 7:57 PM
**To:** Jeffrey Dulberg
**Cc:** Steven Chang
**Subject:** Re: Jinzheng

The depo is at the San Gabriel office. Yes we are going forward this Thursday with Park at 10:00am.  I will get back to you on your email in more detail tomorrow.

By the end of the week, I would like to try to get out at least 4-5 claim objections including those of the committee members.

We plan on try to get a hearing to dissolve the committee set for hearing on March 22 along with the claim objections. I would suggest that you set your employment application for the same day. We will be filing a notice of objection along with the motion to disband the committee.

Chris

On Tue, Feb 15, 2022, 3:13 PM Jeffrey Dulberg <jdulberg@pszjlaw.com> wrote:

# EXHIBIT C

**Jeffrey Dulberg**

| | |
|---|---|
| **From:** | Christopher Langley <chris@slclawoffice.com> |
| **Sent:** | Thursday, February 17, 2022 5:04 PM |
| **To:** | Jeffrey Dulberg |
| **Cc:** | Steven Chang |
| **Subject:** | RE: Jinzheng |

Jeff,

Sorry I have been busy working on other matters in this case. Our position is that we see no reason for this committee. I do not see what benefit you serve in this case. We don't believe that any of your committee members have valid claims against the Debtor. I am in the process of objecting to the Phalanx claim, and have already filed the objection to the Pennington claim. The Betula objection should be filed tomorrow.

If you read Donna's objection to the disgorgement motion, it is clear that Betula was the managing the Debtor at the time of filing. Donna calls them part of the management team. I think that makes them illegible to be on committee but ultimately the judge will have to decide.

This is a small case. At your hourly rate, the administrative fees will very quickly get out of hand. It is in the estate's interest that you not be involved at all.

Please tell me who you believe the legitimate creditors to be.



Christopher J. Langley, Esq.
Partner
1800 N. Broadway Ste. 200,
Santa Ana, CA 92706
o. (714) 515-5656; f. (877) 483-4434
Additional Offices in Riverside, City of Industry and Santa Rosa
Please consider leaving a review to help others find us:
Yelp Google Avvo

Schedule an apointment here

ATTENTION: This e-mail message, including any attachment, is sent by the law firm of Shioda, Langley & Chang LLP and may contain PRIVILEGED and CONFIDENTIAL INFORMATION. If you are not the intended recipient, then please (i) do not print, forward, or copy this e-mail, (ii) notify us of the error by a reply to this e-mail, and (iii) delete this e-mail from your computer. Thank you.

**From:** Jeffrey Dulberg <jdulberg@pszjlaw.com>
**Sent:** Thursday, February 17, 2022 4:20 PM
**To:** 'Christopher Langley' <chris@slclawoffice.com>
**Cc:** Steven Chang <schang@slclawoffice.com>
**Subject:** RE: Jinzheng

Chris – Following up on your email promising a more detailed response to mine. Shall I assume that you intend to object to our application despite my offer to discuss it further and to effectively yield to what I think is your primary concern (i.e. to resign if and when the committee is dissolved)? Choosing litigation in the face of that consideration would make

# EXHIBIT D

**Jeffrey Dulberg**

| | |
|---|---|
| **From:** | Jeffrey Dulberg |
| **Sent:** | Thursday, February 17, 2022 11:56 PM |
| **To:** | Christopher Langley |
| **Cc:** | Steven Chang; Robert Saunders |
| **Subject:** | Re: Jinzheng |

Chris -

That's unfortunate because I thought there was an opportunity to work together but apparently you prefer otherwise. I'll tell you some things that you perhaps already know but don't want to acknowledge: the Debtor (Max) doesn't get to decide whether or not a committee is appointed, the Debtor does not get to choose the composition of the committee, and the debtor does not get to select who serves as committee counsel. In addition, as I'm sure you also know despite your request, committee counsel does not have to make any prove up to you or anyone else regarding the "legitimacy" of any or all of the two dozen claims filed against the estate. Just because you took the low road and re-scheduled every claim as contingent, unliquidated or disputed does not automatically make them so. There are judges around the country who regard that maneuver as bad faith in and of itself and it will be one more element of a motion to remove Max from control given his scorched earth approach.

In any event, as you have refused all requests for informal discussions, the Committee going is compelled to take Max's deposition regarding the control issues, his appointment, the state of the case, etc. Let me know if you will have him sit on March 7, 10, or 11 at 10am for that in our offices in Century City or if you and he are refusing to do so and will require a Court order.

With respect to the allegation about Betula, even if everything you're saying were true, it would not necessarily mean that they were illegitimate and in all likelihood given the circumstances they could serve as a committee member; if not replacement members can be identified.

It seems to me the proper cause of action would be for you to reach out to the United States Trustee's office to ask them to investigate their selection. It's only if that office were to refuse to do so that you should even consider taking action in Court to reform the Committee.

Best,

Jeff

> On Feb 17, 2022, at 5:04 PM, Christopher Langley <chris@slclawoffice.com> wrote:
>
> Jeff,
>
> Sorry I have been busy working on other matters in this case. Our position is that we see no reason for this committee. I do not see what benefit you serve in this case. We don't believe that any of your committee members have valid claims against the Debtor. I am in the process of objecting to the Phalanx claim, and have already filed the objection to the Pennington claim. The Betula objection should be filed tomorrow.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **NOTICE OF MOTION AND MOTION FOR (I) THE APPOINTMENT OF A CHAPTER 11 TRUSTEE, OR IN THE ALTERNATIVE, (II) (A) TERMINATION OF PLAN AND SOLICITATION EXCLUSIVITIES AND (B) AUTHORIZING STANDING FOR THE COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS TO PROSECUTE ACTIONS AGAINST INSIDERS OF THE DEBTOR; DECLARATIONS OF DAVID PARK AND JEFFREY W. DULBERG IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **March 1, 2022,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **March 1, 2022,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA US MAIL**
JINZHENG GROUP (USA) LLC
100 E. Huntington Drive, Ste. 207
Alhambra, CA  91801

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 1, 2022,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA FEDERAL EXPRESS**
United States Bankruptcy Court
Central District of California
Attn:  Hon. Ernest Robles
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1560
Los Angeles, CA  90012

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 1, 2022 | Mary de Leon | /s/ *Mary de Leon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:342631.1 46360/002

**SERVICE INFORMATION FOR CASE NO. 2:21-bk-16674-ER**

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- **Donna C Bullock**    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- **Steven P Chang**    heidi@spclawoffice.com, schang@spclawoffice.com,assistant1@spclawoffice.com;attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Susan Titus Collins**    scollins@counsel.lacounty.gov
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Richard Girgado**    rgirgado@counsel.lacounty.gov
- **M. Jonathan Hayes**    jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Teddy M Kapur**    tkapur@pszjlaw.com, mdj@pszjlaw.com
- **Christopher J Langley**    chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com
- **Benjamin R Levinson**    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
- **Eric A Mitnick**    MitnickLaw@aol.com, mitnicklaw@gmail.com
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Matthew D. Resnik**    matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- **Allan D Sarver**    ADS@asarverlaw.com
- **David Samuel Shevitz**    david@shevitzlawfirm.com, shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

2.    **TO BE SERVED BY EMAIL**

- Gene H. Shioda – ghs@slclawoffice.com
- Steven P. Chang – schang@slclawoffice.com
- Donald W. Reid – don@donreidlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Label Matrix for local noticing
0973-2
Case 2:21-bk-16674-ER
Central District of California
Los Angeles
Tue Mar  1 17:12:06 PST 2022

Chekian Law Office, Inc.
Chekian Law Office, Inc.
445 South Figueroa Street
31st Floor
Los Angeles, CA 90071-1635

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Investment Management Company LLC
Law Offices Allan Sarver
16000 Ventura Blvd
Suite 1000
Encino, CA 91436-2762

JINZHENG GROUP (USA) LLC
100 E. Huntington Drive
Ste. 207
Alhambra, CA 91801-1022

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

(p)OFFICE OF  FINANCE   CITY OF LOS ANGELES
200 N SPRING ST RM 101 CITY HALL
LOS ANGELES CA 90012-3224

Orantes Law Firm, P.C.
The Orantes Law Firm, P.C.
3435 Wilshire Blvd., suite 2920
los angeles, CA 90010-2015

Securities & Exchange Commission
444 South Flower St., Suite 900
Los Angeles, CA 90071-2934

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Accutax Services
9040 Telstar Ave Ste 105
El Monte CA 91731-2838

American Modern Insurance
7000 Midland Blvd
Amelia OH 45102-2608

BETTY ZHENG
28 N. 3RD ST. #b513
ALHAMBRA, CA 91801-6234

BOBS LLC
Attn: Barry Shy
7525 Avalon Bay St
Las Vegas, NV 89139-5307

BREEZEBLOCK CAPITAL, LLC
c/o Pacific Mortgage Exchange, Inc.
P.O. Box 2836
Big Bear Lake, CA 92315-2836

Bamboo Insurance
7050 Union Park Center Ste 400B
Midvale UT 84047-6055

Bentula Lenta, Inc.
David Park
800 W. 6th Street
Suite 1250-B
Los Angeles, CA 90017-2704

Best Alliance
16133 Ventura Blvd.
Suite 700
Encino, CA 91436-2406

Betula Lenta Inc.
800 West 6th Street
Suite 1250
Los Angeles, CA 90017-2721

Build Group Construction Co
700 Flower St 575
Los Angeles CA 90017-4122

California American Water
8657 Grand Ave
Rosemead CA 91770-1220

Corona Capital Group, LLC
1222 Crenshaw Blvd.
#B
Torrance, CA 90501-2496

Craig Fry & Associates
990 S. Arroya Pkwy, #4
Pasadena, CA 91105-3920

Craig Fry and Associates
990 Arroyo Parkway #4
Pasadena, CA 91105-3920

DNQ LLC
Jason D Wang
6145 W Spring Mountain Rd. #205
Las Vegas NV 89146-8819

David S Zu
100 N Citrus St Ste 330
West Covina CA 91791-1674

David Z. Su
100 N. Citrus Street Ste 615
West Covina, CA 91791-6600

Donna Bullock
Attorney at Law
800 W 6th St
Suite 1250
Los Angeles, CA 90017-2721

Donna Bullock Esq
Law Offices of Donna Bullock
800 W 6th St Suite 1250
Los Angeles CA 90017-2721

5261 W Imperial Hwy
Los Angeles CA 90045-6231

Franchise Tax Board Chief Counsel
c/o General Counsel Section
P.O. Box 720, MS: A-260
Rancho Cordova, CA 95741-1720

Griffin Underwriters
PO Box 3867
Bellevue WA 98009-3867

Home Loans Unlimited
Attn Daniel Triana
28859 Phantom Trail
Santa Clarita, CA 91390-5295

Home Loans Unlimited, Inc.
28859 Phantom Trail
Santa Clarita, CA 91390-5295

Investment Management Company
1507 7th Street, #344
Santa Monica, CA 90401-2605

Jade Capital
333 Thornall St Ste 101
Edison NJ 08837-2220

Jianqing Yang
PO Box 3702
Alhambra CA 91803-0702

LA City Treasurer and Tax Collector
255 N Hill St 1st Fl
Los Angeles CA 90012-2705

Land Design Consultants
800 Royal Oaks Drive
Suite 104
Monrovia, CA 91016-6364

Law Offices of Matthew C. Mullhofer
2107 N. Broadway
Suite 103
Santa Ana, CA 92706-2633

Los Angeles Treasurer Tax Collector
P.O. Box 54018
Los Angeles, CA 90054-0018

Marc Cohen
Cohen Law Group, APC
541 S. Spring Street
Ste. 1208
Los Angeles, CA 90013-1667

Michael Carlin
PO Box 67132
Century City, CA 90067-0132

Michael E. Dorff and Shari L. Dorff
3239 Bordero Lane
Thousand Oaks, CA 91362-4659

Office of the United States Trustee
915 Wilshire Blvd.
Los Angeles, CA 90017-3409

Overland Traffic Consultants
952 Manhattan Beach Blvd 100
Manhattan Beach CA 90266-5112

Pacific Geotech Inc
Attn Jirayus Pukkansasut
15038 Clark Ave
Hacienda Heights CA 91745-1408

Pacific Mortgae Exchange, Inc.
73241 Hwy. 111, Ste. 1-A
Palm Desert, CA 92260-3921

Pennington Construction Advisors Inc
Attn: Todd C. Pennington
79 Bell Pasture Rd
Ladera Ranch CA 92694-1558

Phalanx
424 E. 15th Street
Suite 10
Los Angeles, CA 90015-3140

(p)ROYAL BUSINESS BANK
1055 WILSHIRE BLVD SUITE 1220
LOS ANGELES CA 90017-3103

Royalty Equity Lending LLC
600 S. Spring Street
Suite 106
Los Angeles, CA 90014-1979

Shawn Charles Sourgose
2111 Seville Drive
Santa Paula, CA 93060-8042

State Farm Insurance
PO Box 588002
North Metro GA 30029-8002

Testa Capital Group
Attn Thomas L Testa
620 Newport Center Drive
Suite 1100
Newport Beach, CA 92660-8011

The Alison Company
2060 D Avenida De Los Arboles
#471
Thousand Oaks, CA 91362-1376

The Code Solution, Inc.
Attn Jamie Cho
800 W. 6th Street
Suite 1250 A
Los Angeles, CA 90017-2721

The Orantes Law Firm APC
3435 Wilshire Blvd. Ste 2920
Los Angeles, CA 90010-2015

The Phalanx Group
424 E. 15th St Ste 10
Los Angeles, CA 90015-3140

The Phalanx Group
Anthony Rodriguez
424 E 15th St Ste 10
Los Angeles CA 90015-3140

The Phalanx Group
Anthony Rodriguez
424 E. 1st Street, Unit #10
Los Angeles CA 90012

UltraSystems Environmental
Attn Hassan Ayati
16431 Scientific Way
Irvine, CA 92618-4355

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Yepez Gardening Services
2121 N Marengo Ave
Pasadena CA 91001

Christopher J Langley
Shioda, Langley & Chang LLP
4158 14th St.
Riverside, CA 92501-3426

Donna Bullock Carrera
LAW OFFICES OF DONNA BULLOCK
800 W 6th St
Ste 1250
Los Angeles, CA 90017-2721

Matthew Resnik
RHM LAW LLP
17609 Ventura Blvd. Suite 314
Encino, CA 91316-5132

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

L.A. County Tax Collector
Bankruptcy Unit
P.O. Box 54110
Los Angeles, CA 90051-0110

Los Angeles City Clerk
P.O. Box 53200
Los Angeles, CA 90053-0200

(d)Los Angeles County Tax Collector
225 N. Hill Street, #1
Los Angeles, CA 90012

(d)Los Angeles County Tax Collector
P.O. Box 54018
Los Angeles, CA 90054-0018

(d)Los Angeles County Treasurer and Tax Colle
Attn: Bankruptcy Unit
PO Box 54110
Los Angeles, CA 90054-0110

Royal Business Bank
1055 Wilshire Blvd.
Suite 1220
Los Angeles, CA 90017

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)INTERESTED PARTY

(u)Michael E. Dorff and Shari L. Dorff

(u)OFFICIAL COMMITTEE OF UNSECURED CREDITORS

(u)Royalty Equity Lending, LLC/Bobs LLC

(u)Shioda Langley and Chang LLP

(d)Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

(d)Franchise Tax Board
Bankruptcy Section, MS:A-340
P.O. Box 2952
Sacramento, CA 95812-2952

(d)Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

(u)Ji Anqi Ngyang
66 Yuhua West Rd
Shi Ji Azhuang Hebei Province 050000 Chi

(d)Linzhong Group (USA) LLC
100 E. Huntington Dr. Ste 207
Alhambra, CA 91801-1022

(u)Jay Wu
LT Management Group Estate

End of Label Matrix
Mailable recipients    68
Bypassed recipients    12
Total                  80