Peter A. Kim, Esq.
(SBN 250470)
LAW OFFICES OF PETER KIM
3450 Wilshire Blvd Ste 1200,
Los Angeles, CA 90010-2214
Phone: 213-387-0800 | Fax: 213-387-0880
Email: peter@pkimlaw.com

Attorneys for Creditor BETULA LENTA, INC.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No:  2:21-BK-16674-ER |
| | Chapter 11 |
| JINZHENG GROUP (USA) LLC | **DECLARATION OF DAVID PARK IN OPPOSITION TO MOTION TO DISALLOW THE PROOF OF CLAIM OF CREDITOR BETULA LENTA, INC.** |
| Debtor and Debtor in Possession. | |
| | **Date:  March 22, 2022** |
| | **Time:  10:00 a.m.** |
| | **Location:  Courtroom 1568** |
| | **255 E. Temple St.** |
| | **Los Angeles, CA 90012** |

//

- 1 -

DECLARATION OF DAVID PARK IN OPPOSITION TO MOTION TO DISALLOW CLAIM OF BETULA LENTA, INC., AND RESPONSE TO OBJECTION TO CLAIM

I, DAVID PARK, declare as follows:

1. I am over the age of 18, and if called upon as a witness I could and would testify competently to the following facts from my own personal knowledge. I am the authorized agent of Creditor Betula Lenta, Inc. ("BLI").

2. In 2016, Debtor Jinzheng Group (USA) LLC ("Debtor") had entered into a contract with a previous developer TL Pacific, Inc., through a third party: Rich Lamphere, for the development of the property commonly known as 2929 Amethyst, consisting of 32 acres of raw, vacant land, without permits or entitlements, and zoned for 10 equestrian estate lots (the "Property"). This zoning had been in place since the 1920's, and there could be no feasible development of this Property without a zoning change to permit a residential housing development. The Property was bought by Debtor in 2016, with an $18,500,000 cash payment through the Debtor's majority member Jianqing Yang, a resident of Beijing, China. Neither myself or anyone working for BLI was involved in this property purchase transaction. I am informed and believe the recommendation for Debtor to purchase this property in 2016 was made by Rich Lamphere. Lamphere received over $1,500,000 in payments from the initial contract, without having performed the entitlements work. Much later, Lamphere contacted me to actually manage and perform entitlements services. Then Lamphere was incarcerated in Northern California, at which time Debtor entered into the initial contract with BLI to continue the entitlements work and as Project Manager. BLI agreed to accept the remaining balance of the initial contract, with most of the payments having been made to Rich Lamphere and TL Pacific. Neither BLI, myself or anyone involved with the entitlements work for this project other than Lamphere and his company TL Pacific received any of the payments made initially to TL Pacific.

3. The initial contract between Debtor and BLI was the "Pre-development Consulting Agreement" dated December 7, 2017, ("First Contract") attached to Creditor BLI's proof of claim. The First Contract, on page 9 states as follows:

"ADDENDUM TO DECEMBER 7, 2017 CONTRACT BETWEEN JINZHENG GROUP (USA) LLC AND BETULA LENTA , INC. for Consultant Services for 2929 Amethyst Consultant Betula Lenta, Inc. agrees and is engaged to complete the scope of services listed in the agreement with TL Pacific, Inc., a copy of which is attached as Exhibit "A.""

4.    Under the First Contract the original contract price was $2,594,500.00, of which only the remaining balance of $1,012,525 was to be paid to BLI.  The rest was paid by Jianqing Yang and Debtor to TL Pacific, and was not paid to BLI.  Work has been performed for Debtor on the Property, and a balance is due on this Contract.

5.    A second contract was entered between BLI and Debtor, attached to BLI's Proof of Claim, entitled "The Construction Management Agreement dated June 22, 2018 in which Debtor requested BLI perform significant additional work required for the project different from the First Contract (the "Second Contract").  The Second Contract had specified payments and milestones required under its express terms.  In the Second Contract, Exhibit B, it specifically states that phase 2 "Funding Needed" is $4,817,913.  This clearly details how the payments the Debtor are to be distributed among the entitlements service providers and pre-construction work. Work has been performed for Debtor, and a balance is due on this Contract.

6.    A third contract was personally requested of me with BLI by Jianqing Yang for Debtor entitled "CFD Bonds Procurement – CM – Development Agreement" dated March 13, 2019 attached to BLI's Proof of Claim for additional bond procurement services required for development of the subject Property project (the "Third Contract").  A professional pre-construction report had been done by Creditor Build Group, estimating the infrastructure requirements for development of the raw hillside land into residential housing.  Reports were provided to Debtor and it was personally explained to Jianqing Yang in my presence about the infrastructure costs (consisting of work on everything under and up to foundation grade).  Mr. Yang was fully informed about the costs also including the fact that ½ million cubic yards of dirt had to be cut, dug, filled, compacted and/or removed and taken off-site, in addition to other improvements required for residential housing.  To explain the massive costs involved, for example: one large truck holds only **10.5 cubic yards of dirt.**  Jianqing Yang personally asked

me, on behalf of Debtor, for another solution to pay for the infrastructure, and based on those negotiations Debtor entered into the written Third Contract with BLI to perform the additional development services to make the project meet the requirements of, and to perform additional services to apply and procure, bond financing.   The Third Contract, Exhibit A, provides and requires additional funding **through construction** of $43,045,000.  Debtor's housing project was projected to gross a minimum of $200,000,000 on sale of the residential housing, and the fees under this Third Contract, and the other two contracts, still assured Debtor's housing project would be highly profitable to Debtor.  The Third Contract, was in addition to the fees under the First and Second Contracts.  Significant work has been done on this Third Contract, and a balance is due from Debtor as stated in BLI's Proof of Claim.  Debtor has only paid BLI and its subcontractors under $7,000,000 total of the $43,045,000, or the $11,754,928.00 contractually due to BLI **through entitlement.**  It was Debtor who stopped making payments, causing work to stop on the entitlements and other services under the 3 contracts.

7.   In Exhibit A to the Third Contract, the $43,045,000, was further broken down and BLI's subcontractors were named by name, and estimated Total Fees through Construction, including, but not limited to:  The Code Solution, Land Design Consultants, Pacific Geotech, Craig Fry and Associates, Overland Traffic Consultants, and other unnamed providers for categories and scope of work required for the development of the Property through entitlements, permits and construction.  Jianqing Yang, on behalf of Debtor and during meetings and communications at which I was personally present, agreed and accepted, and personally signed written contracts (The First Contract, the Second Contract and the Third Contract, attached to BLI's Proof of Claim and all other approvals) or approved their signing through his manager and attorney in fact (by Power of Attorney) Betty Zheng.

8.   Between 2017 and August 24, 2021 when the Petition was filed commencing this Bankruptcy, Betula Lenta and its direct affiliate, The Code Solution as the project designer, performed the services required under the terms of the First Contract, the Second Contract and the Third Contract.  Attached hereto, marked as Exhibit "A" and incorporated herein by this reference is a breakdown of the actual hours on these three contracts, by BLI and its affiliate The Code Solution, showing **16,041.5 hours** of billable work and services, at varying levels of

compensation, performed by BLI.  BLI has completed at least 65% of the scope of work for entitlements in the written contracts attached to its Proof of Claim, and is entitled for BLI alone a total of $1,643,977.00 (Claim No. 18) balance due for work actually performed and unpaid under the terms of the 3 written contracts.  The fact that the contracts have not been fully performed, and work has stopped, is caused only by Debtor having stopped making payments on the contracts.

9.    The other subcontractors of BLI were engaged for other required services and reports, all for the direct benefit of Debtor to improve the 2929 Amethyst property owned by Debtor for entitlement of its housing project including, but not limited to:  Craig Fry & Associates (Claim No. 13), Ultrasystems Environmental (Claim No. 11), Land Design Consultants (Claim No. 12) and Pennington Construction Advisors, Inc. (Claim No. 20).  In addition, BLI contracted for services required to complete BLI's contracts with Debtor, with other providers who did not file separate Proofs of Claim but are listed in Debtor's Schedules E/F as follows:  The Code Solution (project design), Build Group Construction Co. (construction cost estimation services), EFI Global (for revision of the Environmental Study), Overland Traffic Consultants (for an update of the Traffic Study Report) and Pacific Geotech, Inc. (to update the Soils Engineering Report). These other subcontractors performed their hours separately, and provided the reports and documentation required for the entitlements process through the City of Los Angeles.

10. The actual total of all 3 contracts with BLI is $48,875,438 through construction.  BLI is contractually entitled to a minimum of $13,336,903.00 through entitlements (of which $1,589,175 was actually paid by Debtor to prior developer TL Pacific) leaving $11,754,928.00 payable under all 3 contracts to BLI and its subcontractors for entitlement.  Debtor has only paid to BLI just under $7,000,000, and then stopped payments.  BLI performed about 65% of the total scope of work for entitlements.  The work has not been fully paid under the terms of the 3 written contracts attached to BLI's Proof of Claim, and BLI was expecting to complete entitlements, which would create a large increase in the market value of the Amethyst Property upon entitlement available to refinance for construction financing –originally estimated at 18 months after filing of the Chapter 11 Petition but now delayed by Debtor's prior breach.  Debtor stopped the work, by terminating BLI <u>after BLI got DIP financing for Debtor on the Property</u>

<u>sufficient to fully fund the reorganization plan, of $13 to 20 million, and complete Debtor's
housing project.</u>  The BLI Proof of Claim is due and outstanding for work performed and unpaid
as of the date of filing of the Chapter 11 Petition in the amount of $1,643,977.00 (Claim No. 18),
plus the amounts of the entitlements subcontractors Proof of Claims objected to by Debtor:
Claim No. 11  Ultrasystems $37,106.50;  Claim No. 12 Land Design Consultants $48,145.00;
Claim No. 13 Craig Fry & Associates $240,700.47;  Claim No. 29 Pennington Construction
Advisors $75,000.  If Debtor succeeds in its objections to Claims 11, 12, 13 & 29, BLI's total
claim should be increased to a minimum of $2,044,928.97 in services actually performed for
Debtor, at Debtor's request and behest, under written contracts attached to BLI's Proof of Claim.

11.  In the Declaration of Max Yang, he states that he reviewed records of the County of Los
Angeles and gives his unfounded opinion that the Amethyst property is "not entitled" as the only
grounds for denial of all of BLI's Proof of Claim without any further explanation why BLI
would not be entitled to payment for partial performance.  Also, the property and the project are
under the jurisdiction of the agencies of the City of Los Angeles for all entitlements and permits.
Max Yang does not understand the nature of this development, or the agencies which would be
involved in the entitlements process.

12. Max Yang states that there "are no entitlements" because he reviewed "County records."
Max Yang's statement appears intentionally dishonest, as he knows BLI was not paid the full
contract price for full performance.  He was provided a dropbox link on which I was "cc'ed" as
early as May 21, 2021, containing the files, reports and approvals for the status of the entitlement
of the Amethyst Property, a true and correct copy of the confirming email for which is attached
hereto, marked as Exhibit "B" and incorporated herein by reference.  For example, I have seen
the Traffic Study Report with an official stamp across the front, for  approval by the US
Department of Transportation, a critical requirement for entitlement of this property for
residential housing.

13. In an email string on which I was "cc'ed", Max Yang had communicated with Betty
Lindsey of Creditor Ultrasystems, admitting in an email dated January 10, 2022 that he was in
possession of Ultrasystems "EIR" or Environmental Impact Report and wanted to use it to

"move this project forward on its CEQUA process." This proves that Max Yang had direct and personal knowledge of the completion of services by BLI's entitlements subcontractors including Ultrasystems; but also shows Max Yang's lack of knowledge or experience with real estate entitlements. He refers phonetically referred to CEQA as "CEQUA" calling it a process, when it is actually a law. I understood from this email that Max Yang was then attempting to circumvent BLI and interfere with its existing contract, to poach BLI's entitlements subcontractors and take over BLI's First Contract, Second Contract and Third Contract for his own personal profit. Ultrasystems and the other entitlements subcontractors did not participate in the attempt to tortiously interfere with or breach BLI's contracts with Debtor, attempted by Max Yang. A true and correct copy of this email string is attached hereto, marked as Exhibit "C" and incorporated herein by this reference.

14. Max Yang interviewed me face-to-face for over three (3) hours when I explained the entitlements work performed to him. On or about October 22, 2021, I sent a dropbox link containing the documentation and files on the entitlements work done to Jianqing Yang's personal attorney David Z. Su with whom Max Yang regularly communicates. Attorney David Su was sent dropbox links containing the files on the entitlements work for the Property on October 5, 2021 and again on October 22, 2021, a true and correct copy of which is attached hereto, marked respectively as Exhibits "D" and "E" and incorporated herein by this reference.

15. Max Yang was fully briefed on the status of entitlements, received and reviewed the files, and discussed the services of BLI and its entitlements subcontractors, for the benefit of Debtor's housing project, at all times. But work stopped when Debtor stopped making the payments on the 3 contracts attached to BLI's Proof of Claim, 18 months from completion of entitlements. This cannot and does not relieve Debtor of the obligation to pay for services rendered to date under the written contracts with BLI.

16. BLI states at the beginning of this Chapter 11, that it could complete entitlement of the 2929 Amethyst Property in 18 months, under the plan then approved by Jianqing Yang to obtain financing (or DIP financing) to pay off the foreclosing creditor, the property taxes and funding to continue the entitlements under the BLI contracts. Debtor was promising to pay all of the

creditors 100%, if they worked together in a plan to pre-package a Chapter 11 plan of reorganization by the first due date, if we all would defer some part of our outstanding fees until construction or other refinancing.  BLI was promised a share in Debtor if we procured the financing.  When BLI got a term sheet from a qualified DIP lender in November of 2021, Debtor through Jianqing Yang terminated BLI, the Creditors working on the entitlements, fired its management team and its attorney, and turned the entire project and bankruptcy over to the unqualified Max Yang.

17. The initial entitlement strategy for Oro Vista was 310-homes, designed to look more like small, stacked townhouses.  The Code Solution (project design) and BLI (Project Manager/Developer) were contracted by Debtor late in 2017 to try and seek the approvals for Debtor's housing project which rapidly changed requiring additional work.  City Council District 1 executive staff instructed the Project Manager first provide adequate proof that the site could physically fit such a dense development as well as prove the capacity of such a development; stating that justification was necessary prior to formal submittal as the housing was desperately needed.  BLI engaged civil engineers for Debtor to coordinate with the design architect to work with the Los Angeles Bureau of Engineering and Grading Department to a create viable master site plan; complete with manageable retention walls, grades, street widths, and easements.

18. On February 7, 2018 a Memorandum of Understanding (MOU) was reached with LADOT to begin the arduous review of the traffic study and ultimate mitigation approval negotiations.  By May 14, 2019, final mitigation and findings were approved and accepted for the Oro Vista development; where traffic impact was reduced through solutions by developer/engineers and LADOT from 7% to 3%, down to 1%; then finally to a zero-impact site through a traffic mitigation plan, marking  a huge milestone for the project.  The DOT approval was one of the most critical clearances received for this project, and the traffic impact was a major factor in the failure of efforts by previous owners to entitle 2929 Amethyst for residential housing.

19. The Sewer Capacity Availability Request (SCAR) and water capacity studies were done from March 23, 2018 through summer 2018, to find that there was ample water pressure for 310 homes for utilities and fire safety, along with the sewer capacity to handle the 310 homes.

20. The Environmental Impact Report (EIR) studies were conducted beginning early in winter 2019 to test biological, plant, animal, prehistoric, and other environmental issues.  During the EIR studies and after ample "proof" had due diligence had been performed, a formal General Plan Amendment Filing was submitted in July 2019 for the 310-homes and a zone change from (Q)A1-1D to (Q)RD4-1D.

21. During the Covid-19 pandemic city planners had suggested to developer that they consider a move to bridge the zoning closer to the RE zoning to ensure a more efficient path to approval.  BLI, as the Developer agreed to run a feasibility analysis and found that as the comparable sales in the area increased, the move to less density, larger homes, in more traditional single-family residence lots created a less risky and more net profitable development. The proposals were as follows:

**310-home development Proforma:**

Total Infrastructure estimate: $63,769,648

Total development Budget: $334,687,354

Total Net Profit: $126,420,346 (38% ROI)

**70-home development Proforma:**

Total Infrastructure estimate: $38,261,788 – Smaller CFD Bonds/less property taxes

Total development Budget: $223,829,027 – Less liabilities and risk

Total Net Profit: $104,135,896 (47% ROI) – Higher profit

22.  BLI worked to revise Debtor's housing project into a RE9 development and the move netted a 70-home development with lats large enough to facilitate ADUs to coincide with the state ADU housing initiative.

23. A Case Management Pre-development Meeting was held with BLI via video conference on April 6, 2021 with all interested Los Angeles City departments to advise all interested parties of the revision of development; with the biggest ringing endorsement being the approval of

LADOT and Los Angeles City Planning to allow for all prior 310-home environmental submissions and 3rd-party reports to remain in city without revision.

24. BLI intended to submit a revised GPA by September 7-9th of 2021.  However, Debtor stopped paying BLI, causing all work on the First Contract, Second Contract and Third Contract to stop, as is required under the terms of those contract.  Debtor filed its emergency Chapter 11 Petition on August 24, 2021, also stopping the work for the GPA submission.  However, representatives of Jianqing Yang, including most recently Max Yang and his attorneys, have attempted to intimidate and even to defraud BLI into continuing to work on false promises of payment and then terminating them.  Debtor through Max Yang has attempted to demand Creditors make the GPA submission without ongoing payments under the three contracts with threats of expensive and protracted litigation. Debtor has filed a civil lawsuit in Los Angeles Superior Court attempting to get back the money paid to BLI to date, without bankruptcy court approval or in a case under its jurisdiction.

25. BLI had no obligation to continue work without payment.  Debtor was in breach of all payment obligations on all 3 contracts on the date the Petition was filed on August 24, 2021.  However, BLI and all of the principals and most of the creditors, had agreed to work with Debtor to refinance the project, complete the entitlements and use the increased equity upon entitlement to fully reorganize, with full payments to all creditors, to the principal Jianqing Yang and his obligations in China, and complete the development.  But Debtor by Jianqing Yang instead terminated all work on entitlements, and abandoned the reorganization efforts by November of 2021.  Debtor made false promises of payment through an earlier proposed Chapter 11 reorganization plan through Debtor's prior counsel, that Jianqing Yang and Max Yang reneged upon when Debtor rejected the financing and terminated everyone.  This happened in November of 2021, after BLI had actually found a DIP lender willing to lend up to $20 million based upon BLI and my entitlements progress, which could have funded a full plan of reorganization which would have repaid all creditors in full and repaid all capital contributions, in 3-5 years on completion of the housing project.  The lender is willing only to work with BLI based upon its progress toward entitlements, knowing that a change in the entitlements service provider would

delay entitlement of the Property for years.  In fact, in October of 2021 Debtor attempted to deceive BLI's principals into not only providing the financing, but contributing money into the bankrupt Debtor, but refusing to allow it to be categorized as a loan by a Motion to this Court, and then followed through with a plan to fire everyone anyway.

26.   Nothing has been done to continue payments to BLI by Debtor, under its new representation and management, or to reorganize.

27. New architectural, master site, and grading plans were expected to start after the April 6, 2021 CM Meeting with the revised GPA scheduled to be filed by September 7-9th This did not happen because Debtor stopped paying all of its creditors who were working on the entitlement of Debtor's property.  This prevented the GPA being initiated, or the revision of the Environmental Impact Reports (although all site and biological studies and visits have already occurred).  The Initial Public & Neighborhood Council Hearing to reintroduce project, Draft EIR availability and public notices, Zoning Administrator/Staff Public Hearing, EIR Review and Public Review Period, Planning Commission Hearing, Appeal Period and entitlements approval, CEQA, **are all stopped**.  Debtor, under the new management of Max Yang and Jianqing Yang stopped all progress on entitlements, when Debtor stopped paying its contractors.

28.   Even though Debtor agreed to pay the $13.3 million, Debtor also agreed that the balance of BLI's fees was to be paid by construction financing or bonds, which is an additional $36,820,510.00.  The actual balance of the entire contract price on all 3 contracts of $43,045,000. BLI's Proof of Claim is for $1.6 million due and outstanding for work performed pre-petition.

29. The Objection by Debtor to the Proof of Claim of BLI, and Debtor's objection to all of its financial obligations and to the claims of all of the other entitlements subcontractors, is founded upon the baseless "opinion" of Max Yang.  Max Yang has no qualification to render any opinions about the status of entitlements of this project, or the years of work performed by several companies, contractors and service providers, including BLI and The Code Solution. I believe his is a thinly veiled ploy for Debtor to keep its millions in equity in its real estate assets for the benefit of a Chinese national, Jianqing Yang, while avoiding its legal and contractual

//

1   obligations to its creditors.

2     I declare under penalty of perjury that the foregoing is true and correct, and that this

3   declaration is executed on March 8, 2022 at Los Angeles, California.

4

5

6                    David Park

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOURS

| Period | Vice President (ARA) | Junior Designer | Rendering | Other |
|---|---|---|---|---|
| 2018 Q1 | 34 | 65 | | |
| 2018 Q2 | 27 | 103 | | |
| 2018 Q3 | 31 | 123 | | |
| 2018 Q4 | 28 | 159 | | |
| 2019 Q1 | 355 | 1179 | 767.5 | |
| 2019 Q2 | 176 | 1059.5 | 505 | |
| 2019 Q3 | 210 | 1363.5 | 657 | |
| 2019 Q4 | 347 | 1388 | 446 | |
| 2020 Q1 | 352 | 1380 | 14 | |
| 2020 Q2 | 428 | 1908.5 | | |
| 2020 Q3 | 98 | 659.5 | | |
| 2020 Q4 | 19 | 64 | | |
| 2021 Q1 | 39 | 148 | | |
| 2021 Q2 | 154 | 910 | | |
| 2021 Q3 | 127 | 717 | | |
| 2021 Q4 | 0 | 0 | | |
| Total Hours | 2425 | 11227 | 2389.5 | 16041.5 |
| Rate | $225 | $125 | $145 | |
| | $545,625 | $ 1,403,375 | $ 346,478 | $2,295,478 |
| | VP | Designer | Project Designer | |

EXHIBIT 'A'

## Fwd: Oro Vista Dropbox share folder invitation

---------- Forwarded message ---------
From: **Simon Liu** <simon@thecodesolution.com>
Date: Fri, May 21, 2021 at 2:44 PM
Subject: Oro Vista Dropbox share folder invitation
To: max@ltglobalinvest.com <max@ltglobalinvest.com>, max@ltgmanagement.com <max@ltgmanagement.com>
Cc: Ara Meliksetyan <ara@thecodesolution.com>, Betty Link <bettylink77@yahoo.com>, David Park
<david@thecodesolution.com>

Hi Max,

This is Simon from the Code Solution. I have invited you to our Dropbox folder with two of your emails provided.

Please confirm the invitation. If you have any access issues, please let me know.

Thank you,

Simon
--

**Sincerely,**

**Simon Liu  |  Project Designer**



THE CODE SOLUTION

800 W. 6th Street, Suite 1250, Los Angeles, CA 90017
Phone: 212.537.0158
E-Mail: simon@thecodesolution.com

1/1

## Fwd: Greeting from Jinzheng USA LLC

---------- Forwarded message ---------
From: David P <david@thecodesolution.com>
Date: Thu, Mar 3, 2022 at 12:24 AM
Subject: Fwd: Greeting from Jinzheng USA LLC
To: Jeffrey Dulberg <jdulberg@pszjlaw.com>, Peter A. Kim <peter@pkimlaw.com>, Robert Saunders <rsaunders@pszjlaw.com>

Hello Gents,

I will forward the dropbox link which was provided to Max Yang twice and also printed documents once I get to the office in the morning.

I wanted you all to have an email exchange sent to me by Betsy Lindsay, principal of Ultrasystems.

Ultrasystems worked with all of the other unsecured creditors (of course except for the loan brokers) to provide the work needed for the Environmental Impact Report; which cannot be completed without the work of the unsecured creditors.

Please note that I believe Max Yang is guilty of perjury based upon his signed declarations.

You can see from his emails below he references not only speaking to the traffic engineer, "Liz" (Culhane) which I am sure he got the contact information from the STAMPED and approved traffic study, but he also references in his email to Betsy that he is attaching the EIR. Max further shows his inexperience when he calls the work needed for the "CEQUA process" where he is spelling phonetically the CEQA Act. Max also acknowledges work was done as he uses the word "produced" and also notes there were several versions as he uses the words "one of."

I have highlighted the areas of interest.

All the best,
David

## David Park | Partner
800 W. 6th Street, Suite 1250, Los Angeles, CA 90017
Phone:  213-537-0158, extension 103
www.thecodesolution.com
E-Mail: david@thecodesolution.com

**Check out our new real estate platform: Introducing Terrakan**

1/4

EXHIBIT 'C'

---------- Forwarded message ---------
From: **Betsy Lindsay** <blindsay@ultrasystems.com>
Date: Mon, Jan 10, 2022 at 1:48 PM
Subject: RE: Greeting from Jinzheng USA LLC
To: Max Yang <max@ltglobalinvest.com>
Cc: Jin Zheng USA LLC <jinzhengusa2021@gmail.com>

Max – I got your email.

UltraSystems Contact was with Mr. David Park.

Please contact him directly relating to the CEQA/Environmental work performed on the Oro Vista project. We were under Contract to his firm; and under NDA's – we are prohibited from disclosing information relating to this project.

Once you have his **written authorization** to proceed, I will be more than happy to speak with you relating to the Oro Vista project, and what we did for his firm on this project.

Thank you!

**Betsy A. Lindsay** | **President/CEO, ENV SP**

**UltraSystems Environmental** | **WBE/DBE/SBE/8(m) WOSB**

16431 Scientific Way | Irvine, CA  92618
**T: 949/788.4900  X 227 | F: 949/788-4901 | C: 949/274-3935**

**Website**: www.ultrasystems.com

**E-mail**: blindsay@ultrasystems.com



**E-Mail Confidentiality Notice**: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

IRVINE | GRASS VALLEY | EL CENTRO

*1994 – 2022 | Celebrating 27.5 Years in Business!*

**From:** Max Yang <max@ltglobalinvest.com>
**Sent:** Monday, January 10, 2022 12:49 PM
**To:** blindsay@ultrasystems.com
**Cc:** Jin Zheng USA LLC <jinzhengusa2021@gmail.com>
**Subject:** RE: Greeting from Jinzheng USA LLC


Hello Betsy,


     I am following up on my previous email and also just left you a voicemail at your office. I just got off phone with traffic consultant Liz and would like to get on a call with you. When you get a chance, please give me a call back with regard to 2929 amethyst project. As I mention in my previous email, I got your contact in your prepared initial EIR study which is attached in the email. I am looking forward to talking with you to move this project forward on its CEQUA process.


Regards,


Max


---

**From:** Max Yang
**Sent:** 2022年1月6日 15:30
**To:** blindsay@ultrasystems.com
**Cc:** Jin Zheng USA LLC <jinzhengusa2021@gmail.com>
**Subject:** Greeting from Jinzheng USA LLC


Hello Betsy,


     I hope this email finds you well. My name is Max. I am the current manager of Jinzheng USA LLC and in charge of all Jinzheng's matters including the BK case as well. I got your contact information from one of your produced EIR document. Please let me know when you are available for a quick phone call so I could better introduce myself and discuss how we move the project forward.


Sincerely,


Max

CEO

**LT** Global Investment, Inc

1414 S Azusa Ave B22
West Covina CA 91791 USA

Office: 626.727.6100

Cell: 213.709.3532

Email: Max@LTGlobalInvest.com

This communication is intended only for the exclusive use of the addressee and may contain information that is privileged or confidential. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy or distribute it. Any unauthorized dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please call us promptly and securely dispose of it. Thank you.

## Fwd: Team Ara shared "2929 Amethyst_ Oro Vista_ Max Yang" with you

---------- Forwarded message ---------
From: **Team Ara (via Dropbox)** <no-reply@dropbox.com>
Date: Tue, Oct 5, 2021 at 5:58 PM
Subject: Team Ara shared "2929 Amethyst_ Oro Vista_ Max Yang" with you
To: <david@thecodesolution.com>



Hi David,

Team Ara (teamara@thecodesolution.com) invited you to edit the folder
**"2929 Amethyst_ Oro Vista_ Max Yang"** on Dropbox.

Team Ara said:
*"Hello, You are invited to the 2929 Amethyst Oro Vista sharing folder. "*

To get started, add this to **David Park** (your member folder). Learn more.

Add to **David Park** folder

Enjoy!
The Dropbox team

1/2

EXHIBIT 'D'

3/8/22, 1:00 PM                          Yahoo Mail - Fwd: Team Ara shared "2929 Amethyst_ D. Su" with you

## Fwd: Team Ara shared "2929 Amethyst_ D. Su" with you

---------- Forwarded message ---------
From: **Team Ara (via Dropbox)** <no-reply@dropbox.com>
Date: Fri, Oct 22, 2021 at 4:27 PM
Subject: Team Ara shared "2929 Amethyst_ D. Su" with you
To: <david@thecodesolution.com>



Hi David,

Team Ara (teamara@thecodesolution.com) invited you to edit the folder
**"2929 Amethyst_ D. Su"** on Dropbox.

Team Ara said:

*"2929 Amethyst Oro Vista Dropbox invitation"*

To get started, add this to **David Park** (your member folder). Learn more.

Add to **David Park** folder

Enjoy!

The Dropbox team

1/2

EXHIBIT 'E'

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 3450
WILSHIRE BLVD STE 1200 LOS ANGELES CA 90010. A true and correct copy of the foregoing document entitled
(*specify*):

DECLARATION OF DAVID PARK IN OPPOSITION TO MOTION TO DISALLOW CLAIM OF
BETULA LENTA

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
2/4/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael F Chekian      mike@cheklaw.com, chekianmr84018@notify.bestcase.com
Susan Titus Collins      scollins@counsel.lacounty.gov
Jeffrey W Dulberg      jdulberg@pszjlaw.com
Richard Girgado      rgirgado@counsel.lacounty.gov
M. Jonathan Hayes      jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmf
irm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com Christopher J
Christopher Langley      chris@slclawoffice.com, omar@slclawoffice.com
Benjamin R Levinson      ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
Giovanni Orantes      go@gobklaw.com, gorantes@orantes-
law.com,cmh@gobklaw.com,gobklaw@gmail.com
Matthew D. Resnik      matt@rhmfirm.com,
Allan D Sarver      ADS@asarverlaw.com
David Samuel Shevitz      david@shevitzlawfirm.com,
shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com United States
Trustee (LA)      ustpregion16.la.ecf@usdoj.gov
Hatty K Yip      hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 3/8/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will
be completed</u> no later than 24 hours after the document is filed.

Honorable Ernest M. Robles
Edward R. Roybal Federal Building & Courthouse
255 E. Temple St, Suite 1560/Courtroom 1568
Los Angeles, CA 90012

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/8/2022 | Peter Kim | /s/ Peter Kim |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**