Jeffrey W. Dulberg (State Bar No. 181200)
Robert M. Saunders (State Bar No. 226172)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:   jdulberg@pszjlaw.com
              rsaunders@pszjlaw.com

[Proposed] Counsel to the Official Committee of
Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>JINZHENG GROUP (USA) LLC,<br><br>             Debtor and Debtor in Possession. | Case No. 2:21-bk-16674-ER<br><br>Chapter 11<br><br>**OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION TO CHANGE MEMBERSHIP AND DISBAND OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 1102(a)(4) AND 105(a)**<br><br>[Relates to Docket No. 135]<br><br>Date:         May 17, 2022<br>Time:        10:00 a.m.<br>Location:   U.S. Bankruptcy Court<br>                   Courtroom 1568<br>                   255 E. Temple St.<br>                   Los Angeles, CA 90012<br>Judge:       Hon. Ernest M. Robles |

The Official Committee of Unsecured Creditors (the "Committee") of Jinzheng Group (USA) LLC, the above-captioned debtor and debtor in possession (the "Debtor"), hereby files this opposition (the "Opposition") to the Debtor's *Motion to Change Membership and Disband Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 1102(a)(4) and 105(a)* (the "Disbandment Motion") [Docket No. 135], and respectfully states as follows:

DOCS_LA:342668.8 46360/002

# I.

## PRELIMINARY STATEMENT

This chapter 11 case has reached a decisive moment. Pending before this Court for hearing on May 16 and 17, 2022, are a stay-relief motion by the Debtor's principal secured creditor, which the Debtor and Committee jointly oppose (May 16); a motion by the Committee for the appointment of a chapter 11 trustee or, in the alternative, termination of the Debtor's plan filing and solicitation exclusivities (May 17); an application to employ Pachulski Stang Ziehl & Jones LLP as Committee counsel, to which the Debtor objected (May 17); a motion of the Debtor to disband the Committee or replace its members (May 17); and a motion to extend its exclusivities (May 17).

Notwithstanding having yet to reach a term-sheet agreement with the Committee regarding its content, the Debtor filed a combined chapter 11 plan and disclosure statement on March 14, 2022. The Debtor has not sought a hearing date for its approval. In the meantime, the Committee-Debtor plan negotiations, while perhaps well-intentioned, have not led to an overall fruitful outcome.[1] Unfortunately, the Debtor is unable or unwilling to include the critical Committee terms required to garner the Committee's support, leaving the plan unacceptable to the Committee acting on behalf of its constituency of general unsecured creditors.

However, such negotiations (as well as the Debtor's and Committee's joint opposition to the pending relief-from-stay motion) proved the need for the Committee in this case, along with the need for approval of the employment of the Committee's chosen counsel. In addition, this Court has *denied* the Debtor's objection to the claim of Committee member Phalanx Group, and has continued the Debtor's claim objection to the claim of Committee member Betula Lenta, Inc. to an evidentiary hearing scheduled for the week of October 24, 2022.[2] As well, the Office of United States Trustee reappointed Phalanx Group and Betula Lenta, Inc. to the Committee, essentially making the Debtor's

---

[1] The Plan negotiations between the Committee and Debtor resulted in stipulations (and resulting orders) continuing the hearings on the relevant motions and application.

[2] *Order Setting Litigation Deadlines Pertaining to the Evidentiary Hearing on the Validity of Claim 18-1, Asserted by Betula Lenta, Inc*., entered April 25, 2022 [Docket No. 189] ("Betula Claim Validity Scheduling Order").

2

DOCS_LA:342668.8 46360/002

request for replacement of the Committee members moot.[3] (The Committee has previously requested that the Debtor simply withdraw the motion to disband the Committee or replace its members but the Debtor has refused to do so.)

The Committee believes that the best alternative for creditors is for this Court to continue the relief-from-stay motion until the October 11, 2022 pretrial conference date already scheduled in this case[4] to (for among other reasons) to let the plan process continue,[5] deny the Debtor's Committee disbandment and member-replacement motion because (for among other reasons) it is moot, grant the Committee's suggested termination of exclusivity (so that it may propose an acceptable, confirmable alternative plan), and approve the employment of Committee counsel as requested in the application.[6]

With regard to the Disbandment Motion, the Debtor provides only one reason for its request, that "[t]he Committee should be disbanded because there is no need for its services." Disbandment Motion at 2:15. The Debtor requests this drastic step despite the express tasks committees are given to investigate the acts of the Debtor, participate in the formulation of a chapter 11 plan and, if needed, seek the appointment of a trustee.[7] All of these tasks are relevant for the Committee in this case. In fact the Committee's constructive role thus far is clearly evident. It obtained a promise from

---

[3] This Court did sustain the Debtor's objection to the claim of Pennington Construction Advisors, Inc.; nevertheless, as stated above, the Office of United States Trustee reappointed the other initial Committee members to the reconstituted Committee without the need for Pennington as a member.

[4] *See* Betula Claim Validity Scheduling Order.

[5] If the relief-from-stay motion is granted, this chapter 11 case is over because there will be no assets to reorganize around, and the Court will need to convert the case to a chapter 7 case. However, it is not clear that such motion will be granted (as expressed in this Court's tentative ruling issued before the March 30 hearing) because the reason for the continuance to May 16 was to provide an opportunity of the parties to present additional evidence of valuation, which may or may not result in a decision of this Court on or shortly after such date and could result in a further continuance.

[6] The Debtor's objection to the employment application for Pachulski Stang Ziehl & Jones LLP is that it is unneeded because the Committee should be disbanded and because the Debtor alleges it is too expensive. As stated above, the disbandment motion should be denied because the Committee is obviously necessary here, as detailed above and, as to expense, the Debtor will have ample opportunity to object to Committee's counsel's fees at the interim and final fee application stages. The Committee's reply to the Debtor's objection to such application is due May 10, 2022, or the date that is seven days before any continued hearing date under this Court's local Bankruptcy Rules.

[7] 11 U.S.C. § 1103(c)(2)-(4) ("A committee appointed under section 1102 of this title may – . . . (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan; (4) request the appointment of a trustee or examiner under section 1104 of this title . . . .").

3

DOCS_LA:342668.8 46360/002

the Debtor of a 100% recovery for general unsecured creditors under the Debtor's proposed chapter 11 plan.[8] The Committee asks that this Court permit the Committee to continue to do its job and seek the best results for its constituency, rather than disband it (or de facto disband it by removing all of its members). Therefore, with respect to the Debtor's Disbandment Motion, the Committee requests that this Court deny it.

## II.

## STATEMENT OF FACTS

On August 24, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues in possession of its property and is operating and managing its business as a debtor in possession pursuant to the provisions of Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the chapter 11 case (the "Case").

On January 25, 2022, the U.S. Trustee appointed the Committee to represent the interests of all unsecured creditors in this Case pursuant to section 1102 of the Bankruptcy Code. The members appointed to the Committee initially were: (i) Betula Lenta, Inc. ("Betula"); (ii) Pennington Construction Advisors, Inc. ("Pennington"); and (iii) The Phalanx Group, Inc. ("Phalanx"). *Notice of Appointment and Appointment of Committee of Creditors Holding Unsecured Claims* [Docket No. 93].

On March 1, 2022, the Committee filed its *Notice of Motion for (I) the Appointment of a Chapter 11 Trustee or, in the Alternative, (II)(A) Termination of Plan and Solicitation Exclusivities and (B) Authorizing Standing for the Committee of Creditors Holding Unsecured Claims to Prosecute Actions Against Insiders*, with the Declarations of David Park and Jeffrey W. Dulberg in Support of such motion annexed thereto [Docket No. 136] (the "Trustee and Exclusivity Termination Motion").[9] Also, on March 1, 2022, the Debtor filed its Disbandment Motion.

---

[8] *Objection and Request for a Hearing on Application for an Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors, effective as of as of January 25, 2022*, filed February 22, 2022 [Docket No. 125 at 2:24-26].

[9] The Committee requests that this Court consider the evidence annexed to the Committee's Trustee and Exclusivity Termination Motion as evidence in support of this Response.

4

DOCS_LA:342668.8 46360/002

On March 30, 2022, this Court issued its tentative ruling that became this Court's Order [Docket No. 174] stating that (among other things) it would schedule an evidentiary hearing to adjudicate Betula's claim and, on April 25, 2022, this Court entered its Order scheduling a pretrial conference for October 11, 2022, at 11:00 a.m. and an evidentiary hearing on the validity of such claim for the week of October 24, 2022.[10]

Also March 30, 2022, this Court issued its tentative ruling that became this Court's Order [Docket No. 173] overruling the Debtor's objection to the claim of Phalanx and allowing such claim as a general unsecured claim in the amount of $158,845. On April 25, 2022, this Court entered its *Order Overruling Debtor's Objection to Claim No. 17-1 Without Prejudice* [Docket No. 192], which overruled the Debtor's objection to Phalanx's claim and allowed it as a general unsecured claim, permitting the Debtor to file a renewed objection to such claim after conducting further discovery.

Additionally, on March 30, 2022, this court issued its tentative ruling that became this Court's Order [Docket No. 172] sustaining the Debtor's objection to Pennington's claim and disallowing it. *Order Disallowing Claim No. 20-1, Asserted by Pennington Construction Advisors, Inc.* [Docket No. 190]. After its claim was disallowed, Pennington resigned from the Committee.

On March 31, 2022, the United States Trustee filed its *Amended Notice of Appointment of Committee of Creditors Holding Unsecured Claims* [Docket No. 178], amending the Committee's membership to Betula and Phalanx.

### III.

### **ARGUMENT**

**A.    The Better View Is That Bankruptcy Courts Do Not Have the Authority to Disband a Committee**

As one of the *Collier* treatises states:

> The Bankruptcy Code does not contain any provision explicitly authorizing the court to disband a committee appointed by the United States trustee under section 1102(a)(1).

*Collier Handbook for Creditors' Committees* ¶ 22.02 (2022)("Collier Handbook"). *Collier on Bankruptcy* also states:

---

[10] *See* Betula Claim Validity Scheduling Order.

5

DOCS_LA:342668.8 46360/002

> There is disagreement about whether a court otherwise has the power to disband a committee. One view is that applying the interpretive doctrine *ex pressio unius est exclusio alterius*—the expression of one thing is the exclusion of another[11]—the court has no power to disband a committee because section 1102(a) is exhaustive in its grant of powers to the court with respect to the formation and change of composition of committees. A different view is that under section 105(a) the court has the power to disband a committee in appropriate circumstances because the Code does not explicitly prohibit the court from doing so. **If a court has the power to disband a committee, that power should be exercised sparingly**.

7 *Collier on Bankruptcy* ¶ 1102.07[1] (16th ed. 2022)(emphasis added; footnotes omitted).

The United States Supreme Court, the United States Court of Appeals for the Ninth Circuit and the Ninth Circuit's Bankruptcy Appellate Panel (BAP) have applied the *ex pressio unius est exclusio alterius* statutory interpretation doctrine. In 1992, the BAP interpreted the bankruptcy court's power to change the membership or size of a creditors committee after then section 1102(c) was deleted in the 1986 amendments to the Bankruptcy Code. *Smith v. Wheeler Tech. (In re Wheeler Tech.)*, 139 B.R. 235, 238 (BAP 9th Cir. 1992). Such subsection had provided bankruptcy courts with the authority to change the membership and size of committees. *Id*. n.6. The BAP concluded that, after the 1986 amendments, the bankruptcy court no longer had the power to change the membership or size of committees. *Id*. at 239 (including no authority under section 105(a)).[12] The BAP expressly rejected the use of section 105(a) of the Bankruptcy Code "to achieve a result contrary to the legislative history and Congressional intent in deleting subsection (c) of § 1102(c)." *Id.* [13]

However, in 2005,[14] the Bankruptcy Code was amended to add section 1102(a)(4), which

---

[11] Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts* 107-111 (2012) ("*Expressio unius . . .* is the Latin name for the communicative device known as negative implication . . . . [T]he negative implication canon is so intuitive that courts often apply it correctly without calling it by name.") (citing, among other cases, *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 8 (2000) (per Scalia, J.) ("holding that a statute expressly granting a bankruptcy trustee right to recover does not also impliedly give an administrative claimant a right to recover")).

[12] 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

[13] *See Collier Handbook* ¶ 6.09 ("The legislative history of the 1986 Act offers little guidance in discerning the import of the repeal of section 1102(c), which had provided that the court could change the membership or size of the committee if it was not adequately represented.").

[14] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). Bankruptcy Code section 1102(a)(4) reads: "On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this

6

restored the bankruptcy court's authority and power to change the membership or size of committees, **but did not grant bankruptcy courts the authority or power to disband committees.** As a commentator observed in 2019:

> The debate over a bankruptcy judge's authority over a committee has evolved since the passage of the BAPCPA in 2005. Instead of being a broad question of whether a judge can alter the membership of a committee, the dispute has narrowed to determining whether a judge can eliminate a creditor committee. In this dispute, there is little case law which directly addresses the question. In fact, the universe of cases which are directly on point is populated by only eight decisions: three of these cases concluding that a bankruptcy judge has the authority to disband a committee; two cases arriving at the opposite conclusion, holding that the Bankruptcy Code imparts no such authority to bankruptcy judges; and three other cases addressing the issue but, despite having taken notice of the split, declining to decide the question. Consequently, there is no majority rule on the question, which has left the courts to engage in the unique practice of arguing canons of interpretation and trying to divine the policy goals of Congress.

Mark D. Gensburg, *Rogue Committees or Rogue Judges: The Limits of A Bankruptcy Judge's Authority to Disband Chapter 11 Committees*, 35 Emory Bankr. Dev. J. 601, 620-21 (2019) (footnotes omitted).

Nevertheless, based upon the presumption afforded to the *ex pressio unius est exclusio alterius* doctrine[15] and the BAP's holding in *Wheeler Technologies* that section 105(a) cannot be used to counteract the express provisions of section 1102, arguably the better view, as expressed in the Ninth Circuit, is that a bankruptcy court does not have the statutory authority to disband an official committee, although it does have the statutory authority to change its membership and/or

---

subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders. The court may order the United States trustee to increase the number of members of a committee to include a creditor that is a small business concern (as described in section 3(a)(1) of the Small Business Act), if the court determines that the creditor holds claims (of the kind represented by the committee) the aggregate amount of which, in comparison to the annual gross revenue of that creditor, is disproportionately large.").

[15] *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) ('The doctrine of ***expressio unius est exclusio alterius*** **'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions**.'") (quoting *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)), *followed by Diamond v. Mesisca Riley & Kreitenberg, LLP (In re Castle Trading, Inc.)*, 2017 Bankr. LEXIS 1462, at *16 (BAP 9th Cir. May 31, 2017) ("The doctrine of *expressio unius est exclusio alterius*, meaning 'to express or include one thing implies the exclusion of the other, or of the alternative,' Black's Law Dictionary 620 (8th ed.), 'creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'").

DOCS_LA:342668.8 46360/002

size.

B. **Nevertheless, the Committee Here Should Not Be Disbanded**

As quoted above from the treatise *Collier on Bankruptcy*, even if a bankruptcy court determines that it has the authority to disband an official committee it should do so "sparingly." 7 *Collier on Bankruptcy* ¶ 1102.07[1]. Regardless of whether this Court determines if it has the authority and power to disband an official committee, it should not in this Case.

**1.    A Creditors' Committee Is Needed in This Case**

The appointment of a creditors' committee in a debtor in possession's non-small business chapter 11 case is not only typical, it is mandated.  Section 1102(a)(1) of the Bankruptcy Code states that: "the United States trustee **shall** appoint a committee of creditors holding unsecured claims . . . ." 11 U.S.C. § 1102(a)(1) (emphasis added).[16] As stated above, while such section 1102 has been amended twice regarding membership in a committee, it has never authorized disbandment of such mandatory committee.

Also, as quoted above, Bankruptcy Code section 1103(c) provides creditors' committees with express roles of investigating the acts of the Debtor, participating in the formulation of a chapter 11 plan and requesting the appointment of a trustee,[17] which are particularly needed here. As influential commentators have stated: "the concept of debtor in possession is premised largely on the existence of an opposing force—the creditors' committee—capable of assuming many of the watchdog functions that would otherwise be performed by a trustee."[18]

Here, the Committee has sought the appointment of a trustee in this Case; however, it has

---

[16] Kenneth N. Klee & K. John Shaffer, *Creditors' Committees Under Chapter 11 of the Bankruptcy Code*, 44 S.C. L. Rev. 995, 1004 (1993) ("The plain language of section 1102(a)(1) suggests that in all cases under chapter 11, the prompt appointment of at least one creditors' committee is mandatory, and courts and commentators appear to generally support this view. Furthermore, the concept of debtor in possession is premised largely on the existence of an opposing force – the creditors' committee – capable of assuming many of the watchdog functions that would otherwise be performed by a trustee.").

[17] 11 U.S.C. § 1103(c)(2)-(4) ("A committee appointed under section 1102 of this title may – . . .(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan; (4) request the appointment of a trustee or examiner under section 1104 of this title. . . .").

[18] Kenneth N. Klee and K. John Shaffer, *supra* n.16 at 1004.

8

DOCS_LA:342668.8 46360/002

proposed the alternative that the Committee take on the roles proposing a chapter 11 plan by negating exclusivity and of prosecuting claims against the Debtor's insiders. Either a trustee should be appointed or the Committee be permitted to continue to do its job; the Debtor cannot be left alone without a creditors' watchdog around either in the form of a trustee or committee.

**2.    The Committee Is Properly Constituted**

As discussed above, Bankruptcy Code section 1102 authorizes bankruptcy courts to review committee member appointments for "adequate representation." 11 U.S.C. § 1102(a)(4) ("the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders."). It provides no other reason for change in membership other than if necessary to ensure adequate representation and, while the phase "adequate representation" is not defined in the Bankruptcy Code, "[w]hat is required is adequate representation of various creditor types." *In re Hills Stores Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992), *quoted in In re Roman Catholic Church of the Archdiocese of New Orleans*, 2021 Bankr. LEXIS 302, at *35 (Bankr. E.D. La. Feb. 8, 2021). Therefore, even if thebBankruptcy court has the statutory authority to disband a flawed creditors' committee, it should do so for the express reason stated in section 1102 (inadequate representation of its constituency), not for other reasons. In fact, "the motivation of the movants" and "the point in the proceeding when the motion is made" are factors in determining whether committee members should be replaced by a bankruptcy court for lack of adequate representation. *In re Park West Circle Realty, LLC*, 2010 Bankr. LEXIS 2463, at *8 (Bankr. S.D.N.Y. Aug. 11, 2010). Here, the Debtor's motivation is its goal of running roughshod over its creditors, depriving them of representation as a body. Its timing is suspect because it is about to propose its chapter 11 plan, paying unsecured creditors 100 cents on the dollar, yet does not wish to garner the support of the Committee or its constituency.[19] Instead (as discussed above), it disputed every general

---

[19] The timing of the Motion is also suspect because the Debtor did not seek to thwart the Committee at its inception (other than by objecting to its members' claims a day before the Committee was appointed); instead, it seeks the disbandment of an Committee that has made significant contributions to this Case on behalf of its constituency. As of the scheduled hearing date on the Motion, the Committee will have been in existence and functioning for approximately two months. Rather than disbanding it because its services are unneeded by the Debtor, it should be granted the relief sought in its Trustee Motion, which is either the appointment of a trustee or in the alternative termination of exclusivity so the Committee may propose a chapter 11 plan and standing to prosecute estate claims against the Debtor's insiders.

9

DOCS_LA:342668.8 46360/002

unsecured claim other than an Insider's claim (as discussed above) when its new management and its selected replacement bankruptcy counsel took charge. *See In re Daig*, 17 B.R. 41, 43 (Bankr. D. Minn. 1981) ("The fact the debtor disputes INCO's claim is insufficient to warrant the Court's interference with the [United States] Trustee's choice which meets statutory criteria.").[20] In fact, only a committee member's behavior after it is appointed to a committee and thereby becomes a fiduciary is relevant. *In re Continental Cast Stone*, LLC, 625 B.R. 203, 208 (Bankr. D. Kan. 2020).[21]

While the Committee does not represent each of its members individually, it is constituted by such creditors and the validity of their claims is important. Regarding Betula, the Debtor contests its claim by asserting (among other things) that as an insider that had allegedly controlled the Debtor prepetition, it should not be on the Committee. While the Committee takes no position on whether Betula had been an insider of the Debtor at any point in time, being an insider would not necessarily disqualify Betula (or any other creditor) from serving on the Committee. 7 *Collier on Bankruptcy* ¶ 1102.02[2][vi] ("Most decisions considering the issue have held that insiders should not be excluded on a *per se* basis from serving on a creditors' committee.") (citing cases). Also, the Debtor has not presented any evidence to this Court that Betula controlled the Debtor and was therefore an insider.[22]

---

[20] Cited in 7 *Collier on Bankruptcy* ¶ 1102.02[2][i] ("The courts have been nearly unanimous in holding that holders of disputed claims are eligible to serve on creditors' committees. They reason that forbidding holders of disputed claims to serve on committees would enable debtors to control the makeup of committees by deciding which creditors claims to to schedule as disputed. They also note that the definition of creditor is an entity with a claim and that the definition of claim includes contingent, unliquidated, and disputed claims."). Also cited in 9 Am. Jur. 2d. *Bankruptcy* § 678 n.3 (Change in membership or size).

[21] 625 B.R. at 208 ("Debtors allege that Sethmar is an inadequate representative because its efforts to collect prepetition debts at the beginning of the case demonstrate it has too great a conflict of interest to remain on the committee. No conflict of interest has been demonstrated here. Sethmar's attempt to collect prepetition debt existed when it was simply an unsecured creditor with no duty to other creditors or the Debtors. While that attempt was stayed, that does not demonstrate that Sethmar would then be unfit for future inclusion on a creditors' committee because the creditor did not violate any duty to any other entity. Members of the creditors' committee are now subject to a fiduciary duty to other creditors, and Sethmar has taken no actions while on the committee that would demonstrate it intends to violate that duty.").

[22] In comparison, as stated in the Trustee and Exclusivity Termination Motion at 7:6-20: "The chapter 11 petition was signed by Betty Zheng, as Manager of the Debtor, which is a California limited liability company (LLC). Voluntary Petition for Non-Individuals Filing for Bankruptcy, filed on the Petition Date [Docket No. 1 at 4 of 11]. The Corporate Resolution Authorizing Filing, filed on September 7, 2021 [Docket No. 14], lists Betty Zheng as a "Member Manager" (with the word "member" presumably meaning "an owner of a membership interest in an LLC"), Jianqing Yang's signature is that of his unidentified "attorney in fact" and Betula is a signatory but its relationship to the Debtor and the other signatories is not identified therein; in the resolution, the Debtor is said to be managed by Betty Zheng. The Corporate Ownership Statement Pursuant to Fed. R. Bankr. P. 1007(a)(1) and 7007.1, and LBR 1007-4, filed September

DOCS_LA:342668.8 46360/002

As stated above, the Committee is currently constituted with two members: Betula and Phalanx. Even if this Court decides at the late October 2022 hearing that Betula's claim is disallowed and Betula is therefore no longer on the Committee, the Committee would have Phalanx as its member. While the Committee takes no position on the Debtor's objection to Phalanx claim, such objection is based solely on the lack of a particular license the Debtor says Phalanx must have had to perform its services to the Debtor; however, as this Court ruled that even if Phalanx lacked a license the Debtor was not excused from paying it.[23]

In any event, the Debtor should let the U.S. Trustee undertake its statutory role and determine which creditors would serve on the Committee and the Committee requests that this Court honor the U.S. Trustee's determination.[24]

## IV.

## **CONCLUSION**

For the reasons set forth herein, the Committee respectfully requests that the Court deny the Disbandment Motion.

---

7, 2021 [Docket No. 15] is signed by Betty Zhang as Manager, but identifies no 10% or more direct or indirect owners of the Debtor. Betty Zheng also signed the Declaration Under Penalty of Perjury for Non-Individual Debtors, also filed September 7, 2021 [Docket No. 16], as Manager, in which she stated that Schedules A/B, D, G and H are true and correct. The List of Equity Security Holders, filed September 7, 2021 [Docket No. 18], shows Jianqing Yang and Betula as members, and Jianqing Yang, Betula and Betty Zhen as "co-managers of the Debtor."

[23] Docket No. 174, entered March 30, 2022 ("The tentative Ruling will be the order . . . . The Court need not determine whether Phalanx was operating in violation of any state or local regulations pertaining to private security services in connection with the work it performed under the Contract. In California, private security services are subject to extensive regulation. . . . The purpose of these regulations is to protect the public, not provide a defense to payment. The Debtor has cited to no law or regulation stating that a private company's failure to maintain proper licensure excuses the Debtor from paying for services actually performed by company. Even if it is true that Phalanx is required to be licensed for the services it performed under the Contract (a finding that the Court does not make), at most that could subject Phalanx to liability to the State of California or the City of Los Angeles for violating applicable laws and regulations; it would not excuse the Debtor from paying Phalanx as required by the Contract.").

[24] Even if it is the sole member of the Committee (presumably temporarily until other creditors join), the Committee is not and should not be dissolved. The case cited by the Debtor regarding single-member committees is distinguishable because it involved the appointment of a single member committee not the resignation or removal of members from an existing multi-member committee. *Cf. In re M.H. Corp.,* 30 B.R. 266, 267 (Bankr. S.D. Ohio 1983) ("we will not **appoint** a creditors committee consisting of a single creditor . . . .") (emphasis added). Here, the Committee has already acted while it had two members by filing this Opposition, and when it had three members, filing the Trustee and Exclusivity Termination Motion and its application to employ its proposed counsel, each of which asks for relief for the collective good of the Committee's constituency.

11

DOCS_LA:342668.8 46360/002

Dated:   May 3, 2022              PACHULSKI STANG ZIEHL & JONES  LLP

By   /s/ *Jeffrey W. Dulberg*
     Jeffrey W. Dulberg

     [Proposed] Counsel to the Official Committee
     of Unsecured Creditors

DOCS_LA:342668.8 46360/002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION TO CHANGE MEMBERSHIP AND DISBAND OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 1102(a)(4) AND 105(a)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **May 3, 2022,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **May 3, 2022,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA US MAIL**
JINZHENG GROUP (USA) LLC
1414 S. Azusa Avenue, Suite B-22
West Covina, CA  91791

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 3, 2022,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA FEDERAL EXPRESS**
United States Bankruptcy Court
Central District of California
Attn:  Hon. Ernest Robles
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1560
Los Angeles, CA  90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 3, 2022 | Mary de Leon | /s/ *Mary de Leon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012 **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:343552.1 46360/002

**SERVICE INFORMATION FOR CASE NO. 2:21-bk-16674-ER**

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>

- **Donna C Bullock**   donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- **Steven P Chang**   heidi@spclawoffice.com, schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com
- **Michael F Chekian**   mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Susan Titus Collins**   scollins@counsel.lacounty.gov
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Oscar Estrada**   oestrada@ttc.lacounty.gov
- **Richard Girgado**   rgirgado@counsel.lacounty.gov
- **M. Jonathan Hayes**   jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Teddy M Kapur**   tkapur@pszjlaw.com, mdj@pszjlaw.com
- **Peter A Kim**   peter@pkimlaw.com, peterandrewkim@yahoo.com
- **Christopher J Langley**   chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com
- **Benjamin R Levinson**   ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
- **Eric A Mitnick**   MitnickLaw@aol.com, mitnicklaw@gmail.com
- **Giovanni Orantes**   go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Donald W Reid**   don@donreidlaw.com, ecf@donreidlaw.com
- **Matthew D. Resnik**   matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- **Peter J Ryan**   ryan@floresryan.com, pryancfi@gmail.com
- **Allan D Sarver**   ADS@asarverlaw.com
- **David Samuel Shevitz**   david@shevitzlawfirm.com, shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**   hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

2. <u>**TO BE SERVED BY EMAIL**</u>

- Gene H. Shioda – ghs@slclawoffice.com
- Steven P. Chang – schang@slclawoffice.com
- Donald W. Reid – don@donreidlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                              **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:343552.1 46360/002