Gene H. Shioda – SBN 186780
ghs@slclawoffice.com
Christopher J. Langley – SBN 258851
chris@slclawoffce.com
Steven P. Chang – SBN 221783
schang@slclawoffice.com
**SHIODA, LANGLEY & CHANG LLP**
1063 E. Las Tunas Dr.
San Gabriel, CA 91776
Tel: (626)281-1232
Fax: (626)281-2919

Counsel for Jinzheng Group (USA) LLC
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

|  |  |
|---|---|
| In re:<br><br>JINZHENG GROUP (USA) LLC<br><br><br>Debtor in Possession. | Case No. 2:21-bk-16674-ER<br><br>Chapter 11<br><br>**DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED MAY 4, 2022**<br><br>Plan Confirmation Hearing (TBD) |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................1

   A.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing..............1

      1.   Time and Place of the Confirmation Hearing ......................................1

      2.   Deadline for Voting For or Against the Plan ......................................1

      3.   Deadline for Objecting to the Confirmation of the Plan.......................2

      4.   Identity of Person to Contact for More Information Regarding the Plan .........2

   B.   Disclaimer.................................................................................2

II.    BACKGROUND INFORMATION ................................................................2

   A.   Principals and Management of Debtor's Business .........................................2

   B.   Description and History of Debtor's Business................................................2

   C.   Events Leading to Debtor's Chapter 11 Filing ...............................................4

   D.   Significant Events During the Bankruptcy Case ............................................5

      1.   The Debtor's Bankruptcy Filing ...................................................5

      2.   The Debtor Employs Shioda Langley & Chang LLP as General Counsel .......5

      3.   The Claims Bar Date and Claims Filed Against Bankruptcy Estate ...............5

      4.   The Debtor Files Motions for 2004 Examinations of Mr. Carlin,
         Mr. Pae, and Mr. Park ...............................................................6

      5.   The Court Extends the Debtor's Exclusivity Period to File Plan and
         Solicit Acceptances ...................................................................6

      6.   The Debtor Employs Jay Wu as Real Estate Agent to Sell
         San Marino Property ..................................................................6

      7.   The U.S. Trustee Appoints the Committee Which Seeks to Employ
         Pachulski Stang Ziehl & Jones LLP as General Counsel ..........................6

      8.   The Debtor Moves for Return of Legal Retainer From Ms. Bullock ...............7

      9.   The Debtor Objects to Proofs of Claim ............................................7

     10.   The Debtor Files State Court Actions Against Insiders and
         Real Estate Brokers ...................................................................8

        a.   The Betula Action, Los Angeles Superior Court,
            Case 22STCV04623...........................................................8

        b.   The Broker Action, Los Angeles Superior Court,
            Case 22AHCV00093 .........................................................8

     11.   Royalty Equity Lending Moves for Relief from Stay Against the
         Los Angeles Properties ..............................................................10

     12.   The Debtor Moves to Change Membership of the Committee and
         Disband the Committee..............................................................10

     13.   The Committee Moves for Appointment of Chapter 11 Trustee or,
         In the Alternative, Termination of Exclusivity Order and Authorizing
         Standing to Prosecute Insider Actions ...........................................11

     14.   The Debtor's Investigation of Fraudulent Transfer Claims Involving
         150 East La Sierra Drive, Arcadia, CA ...........................................11

     15.   The Debtor's Renewed Efforts to Entitle the Los Angeles Properties
         and Paradise Drive Lots ............................................................11

III.    THE PLAN OF REORGANIZATION................................................................11

    A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan.......12

    B.    Unclassified Claims ..............................................................................12

        1.    Administrative Expenses ..............................................................12

        2.    Priority Tax Claims .....................................................................13

    C.    Classified Claims and Interests ..............................................................13

        1.    Classes of Secured Claims ............................................................14

        2.    Classes of Priority Unsecured Claims.............................................19

        3.    Classes of General Unsecured Claims .............................................19

        4.    Class of Interest Holders ..............................................................21

    D.    Means of Effectuating the Plan ...............................................................21

        1.    Funding for the Plan.....................................................................21

        2.    Composition of the Debtor After the Effective Date ..........................21

        3.    Post-Confirmation Management and Compensation ...........................22

        4.    Disbursing Agent ........................................................................22

        5.    Objections to Claim .....................................................................22

        6.    Avoidance Actions, Strong Arm Powers, and Causes of Action...................22

        7.    Employment of Professionals by the Reorganized Debtor and Payment
           of Professional Fees and Expenses After the Effective Date.......................23

        8.    Exemption from Transfer Taxes .....................................................23

        9.    Distributions to Be Made Pursuant to the Plan .................................23

        10.    Exculpations and Releases ............................................................23

        11.    Injunctions.................................................................................24

        12.    Executory Contracts and Unexpired Leases .....................................25

        13.    Changes in Rates Subject to Regulatory Commission Approval...................26

        14.    Retention of Jurisdiction ..............................................................26

IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES .............................26

    A.    Classification and Treatment of Claims.....................................................26

    B.    Who May Object to Confirmation of the Plan.............................................27

    C.    Who May Vote to Accept or Reject the Plan ..............................................27

        1.    Allowed Claims ..........................................................................27

        2.    Voting Requirements ....................................................................27

        3.    Votes Necessary for a Class to Accept the Plan ...............................28

        4.    Votes Necessary for a Class to Accept the Plan ...............................28

    D.    Cramdown: Treatment of Nonaccepting Classes.........................................28

    E.    Liquidation Analysis............................................................................29

    F.    Feasibility..........................................................................................29

    G.    Risk Factors ......................................................................................30

    H.    Tax Consequences of the Plan ...............................................................30

V.    EFFECT OF CONFIRMATION ................................................................30

    A.    Discharge ..........................................................................................30

    B.    Revesting of Property in the Reorganized Debtor .......................................31

    C.    Modification of Plan ............................................................................31

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

D.     Post-Confirmation Status Reports ............................................................... 31

E.     Quarterly Fees .............................................................................................. 31

F.     Post-Confirmation Conversion or Dismissal ............................................. 31

G.    Final Decree ................................................................................................. 32

DECLARATION OF SHAO XING MAX  YANG ...................................................... 33

Exhibit 1 – Summary of Debtor's Real Property Holdings

Exhibit 2 – Summary of Claims Against Debtor's Bankruptcy Estate

Exhibit 3 – Liquidation Analysis

Exhibit 4 – Summary of Plan Payments

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

## I. INTRODUCTION

JINZHENG GROUP (USA), LLC ("Debtor") is the debtor in a Chapter 11 bankruptcy case.  The document you are reading is the *Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement Dated May 4, 2022* (the "Plan").   All exhibits to this Plan are considered part of this Plan but, in the event of any conflict between this Plan and its exhibits, the terms of this Plan control.  The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

This Plan is a reorganizing plan.  In other words, the Debtor seeks to make payments under the Plan by a new value contribution and new financing as described herein.  The Effective Date of the Plan is14 days after the Bankruptcy Court enters the Order confirming this Plan.

### A. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

THE COURT HAS NOT YET CONFIRMED THE PLAN, SO THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

#### 1. Time and Place of the Confirmation Hearing

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2022, in Courtroom 1568, United States Bankruptcy Court, Los Angeles Division, 255 E. Temple St. Los Angeles, CA 90012.

#### 2. Deadline for Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Christopher J. Langley, Esq., SHIODA LANGLEY & CHANG LLP, 1063 E. Las Tunas Dr., San Gabriel, CA 91776 phone: (626)281-1232, facsimile (626)281-2919

Your ballot must be received by _____ or it will not be counted.

3. **Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Christopher J. Langley, Esq., SHIODA LANGLEY & CHANG LLP, 1063 E. Las Tunas Dr., San Gabriel, CA 91776; Phone: (626) 281-1232; Facsimile (626) 281-2919 by _____.

4. **Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Christopher J. Langley, Esq., SHIODA LANGLEY & CHANG LLP, 1063 E. Las Tunas Dr., San Gabriel, CA 91776; Phone: (626) 281-1232; Facsimile (626) 281-2919.

B. **Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records. The information contained in this Disclosure Statement is provided by the Debtor. The Debtor represents that everything stated in the Plan is true to the Debtor's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

II. **BACKGROUND INFORMATION**

A. **Principals and Management of Debtor's Business**

Debtor is a California limited liability company. Its sole member is Jianqing Yang. Mr. Yang currently resides in China and has not been to the United States since the global outbreak of Covid-19.

Before its bankruptcy filing, the Debtor was managed by Betty Zheng. On or about November 29, 2021, Ms. Zheng resigned as manager. Max Yang, who is Jianqing Yang's attorney-in-fact, now runs the day-to-day management of the Debtor.

B. **Description and History of Debtor's Business**

The Debtor is in the business of acquiring and developing real estate. A table summarizing the Debtor's real estate holdings, and the liens thereon, is attached hereto as **Exhibit 1**. Generally, the Debtor's real estate holdings are classified in four categories.

The "Los Angeles Properties" refers to over raw land as well as adjacent multi-family buildings that the Debtor intends to develop into homes in the Lincoln Heights neighborhood of

Los Angeles.  The Los Angeles Properties include: (i) 2929 Amethyst Street, Los Angeles, CA (APN 5209-009-001), (ii) 2526-2528 Lincoln Park, Los Angeles, CA (APN 5208-025-001), (iii) 2520-2522 Lincoln Park, Los Angeles, CA (APN 5208-025-002), (iv) 2602 Lincoln Park, Los Angeles, CA (APN 5208-025-014); and (v) 2600 Sierra Street, Los Angeles, CA (APN 5209-005-003).  The Debtor acquired the Los Angeles Properties from August 2016 to July 2017 with funds contributed by Mr. Yang and without the need for financing.  Pursuant to an appraisal by Cushman & Wakefield Western, Inc., dated June 22, 2021, the Los Angeles Properties have a collective as-is value of $23,450,000.00.

As discussed below, the Debtor employed Betula Lenta, Inc. ("Betula") as a real estate consultancy company, to assist it with the development of the Los Angeles Properties.  The Debtor then used the Los Angeles Properties as collateral to obtain loans for developing them into a residential development.  These loan proceeds were then used to pay exorbitant consulting fees to Betula and other companies without little progress (if any) being made towards the development. The Los Angeles Properties are encumbered by liens held by (a) the Los Angeles County Treasurer and Tax Collector, and (b) Royalty Equity Lending, LLC.  These secured claims are treated in Classes 1 and 2, respectively.

The "Paradise Drive Lots" are 10 parcels of raw land adjacent to 2929 Amethyst Street that the Debtor intends to develop with the Los Angeles Properties.  The Paradise Drive Lots include APNs (i) 5209-021-002, -005, -006; (ii) 5209-022-007; (iii) 5209-023-022, -029; -030; -031; -032; and (iv) 5209-025-006.  The Paradise Drive Lots are encumbered by liens held by (a) the Los Angeles County Treasurer and Tax Collector, and (b) Breezeblocks Capital, LLC.  These secured claims are treated in Classes 3 and 4, respectively.

The "San Marino Property" is a three-bedroom single-family home located at 2240 Lorain, San Marino, CA.  Mr. Yang caused the San Marino Property to be transferred to the Debtor for no consideration, which the Debtor then used as collateral to obtain loans for the purpose of developing the Los Angeles Properties and Paradise Drive Lots.  The Debtor has employed Jay Wu to market and sell the San Marino Property.  It is currently listed for sale at $2,350,000.  The San Marino Property is encumbered with liens held by (a) Royal Business Bank, (b) Corona

3

Capital Group, LLC, and (c) DNQ LLC.  These secured claims are treated in Classes 5, 6, and 7, respectively.

The "Van Nuys Property" is a four-bedroom condominium located at 6840 De Celis Place, Apartment 9, Van Nuys, CA 91406.  Mr. Yang caused the Van Nuys Property to be transferred to the Debtor for no consideration, which the Debtor then used as collateral to obtain loans for the purpose of developing the Los Angeles Properties and Paradise Drive Lots.  The Debtor intends to either sell or refinance the Van Nuys Property.  The Van Nuys Property is encumbered with liens held by (a) the Los Angeles County Treasurer and Tax Collector, (b) Investment Management Company, and (c) Michael and Shari Dorff.  These secured claims are treated in Class 8, 9, and 10, respectively.

### C.    Events Leading to Debtor's Chapter 11 Filing

Beginning in December 2017, Ms. Zheng caused the Debtor to contract with Betula Lenta, Inc. ("Betula"), a real estate consultancy company, to assist it with the development of the Los Angeles Properties. Betula describes itself as "a team of the best real estate consultants providing solutions for real estate investors looking for opportunities to invest in development or investors for their developments."  https://www.betulalenta.com/about-us.  Betula was directed by Jonathan Pae and David Park.

Ultimately, Debtor and Betula entered into three contracts (collectively, the "Betula Agreements"):

- A "Predevelopment Consulting Agreement" dated December 7, 2017, in which the Debtor agreed to pay Betula $2,594,000 for consulting services.
- A "Construction Management Agreement" dated June 22, 2018, in which the Debtor agreed to pay Betula an additional $4,517,913.00 for "phase 2" services.
- A "CFD Bonds Procurement – CM – Development Agreement" dated March 13, 2019, in which the Debtor agreed to pay Betula an additional $6,224,490.00 for "construction" services.

While the Betula Agreements totaled over $13,336,903.00 and much of the fees were paid, the Los Angeles Properties remain unentitled and undeveloped.  Debtor's payment of these

4

1  consulting fees precluded it from timely paying its secured debt obligations, which eventually

2  resulted in Royalty Equity Lending, LLC noticing a non-judicial trustee sale of the Los Angeles

3  Properties for August 24, 2021.

4      **D.     Significant Events During the Bankruptcy Case**

5          **1.     The Debtor's Bankruptcy Filing**

6      On August 24, 2021 ("Petition Date"), the Debtor filed an emergency voluntary Chapter 11

7  petition, initiating this Bankruptcy Case.  Debtor was represented at the time by the Law Offices

8  of Donna Bullock ("Bullock").  And Debtor was managed, at least nominally, by Michael Carlin

9  as Chief Restructuring Officer.

10     Little ostensible progress, if any, was made towards Debtor's reorganization during Ms.

11  Bullock's representation and Mr. Carlin's management.  Neither Ms. Bullock nor Mr. Carlin

12  sought court approval of their employment.

13         **2.     The Debtor Employs Shioda Langley & Chang LLP as General Counsel**

14     On December 6, 2021, the Debtor filed a substitution of counsel to name Shioda, Langley

15  & Chang LLP ("SLC") as its general bankruptcy counsel.  That same day, the Debtor filed an

16  *Application to Employ Shioda Langley & Chang LLP as General Insolvency Counsel* [Doc. 49].

17  No opposition was timely filed.  And on January 18, 2022, the Court entered an order approving

18  same [Doc. 81].

19         **3.     The Claims Bar Date and Claims Filed Against Bankruptcy Estate**

20     On December 7, 2021, the Court entered an *Order Setting Bar Date for Filing Proofs of*

21  *Claim* [Doc. 55], which set the claims bar date for February 4, 2022 ("Claims Bar Date").

22     On December 9, 2021, the Debtor served a *Notice of Bar Date for Filing Proofs of Claim*

23  [Doc. 56] on all creditors.  So far, twenty-one (21) proofs of claims have been filed against the

24  Debtor's bankruptcy estate.  A table summarizing the claims against Debtor's bankruptcy estate is

25  attached hereto as **Exhibit 2**.

26

27

28

1      **4.     The Debtor Files Motions for 2004 Examinations of Mr. Carlin, Mr. Pae,**

2      **and Mr. Park**

3      In December 2021, the Debtor filed separate motions to conduct examinations of Mr.

4  Carlin, Mr. Pae, and Mr. Park pursuant to Rule 2004 of the Federal Rules of Bankruptcy

5  Procedure [Docs. 57, 68, 69], which the Court granted by written orders [Docs. 60, 72, 73].

6      **5.     The Court Extends the Debtor's Exclusivity Period to File Plan and Solicit**

7      **Acceptances**

8      On December 13, 2021, the Debtor filed a *Motion for Order Extending Debtor's*

9  *Exclusivity Period to File Chapter 11 Plan and Solicit Acceptances Thereto* [Doc. 61]

10  ("Exclusivity Motion").  Royalty Equity Lending opposed.  The Court granted the Exclusivity

11  Motion pursuant to an Order entered on January 18, 2022 [Doc. 80] ("Exclusivity Order").

12      Pursuant to the Exclusivity Order, the exclusivity periods for Debtor to file a plan was

13  extended to April 21, 2020, and to solicit acceptances of its Plan was extended to May 20, 2022.

14      **6.     The Debtor Employs Jay Wu as Real Estate Agent to Sell San Marino**

15      **Property**

16      On January 24, 2022, the Debtor filed an *Application to Employ Jay Wu as Real Estate*

17  *Agent* [Doc. 91] ("Real Estate Agent Application").  In it, the Debtor sought to employ Jay Wu as

18  real estate agent to market and sell the San Marino Property.  No opposition was filed.

19      On February 22, 2022, the Court entered an order approving the Broker Application and

20  Debtor's employment of Mr. Wu to sell the San Marino Property [Doc. 124] ("Real Estate Agent

21  Order").

22      **7.     The U.S. Trustee Appoints the Committee Which Seeks to Employ**

23      **Pachulski Stang Ziehl & Jones LLP as General Counsel**

24      On January 25, 2022, the United States Trustee filed a *Notice of Appointment and*

25  *Appointment of Committee of Creditors Holding Unsecured Claims* [Doc. 93], which named

26  Betula, Pennington Construction Advisors, Inc. ("Pennington"), and The Phalanx Group Inc.

27  ("Phalanx") as committee members.

28

1    On February 8, 2022, the Committee filed an *Application for Order Authorizing and*

2  *Approving Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official*

3  *Committee of Unsecured Creditors, Effective as of January 25, 2022* [Doc. 98] ("Committee

4  Counsel Employment Application").  The Committee seeks to employ Pachulski Stang Ziehl &

5  Jones LLP ("PSZJ") at hourly rates more than double those charged to the Debtor by SLC.

6    On February 22, 2022, the Debtor filed an objection to the Committee Counsel

7  Employment Application.  A hearing on the Committee Counsel Employment Application is

8  currently scheduled for May 17, 2022 at 10:00 a.m.

9    **8.    The Debtor Moves for Return of Legal Retainer From Ms. Bullock**

10    On February 2, 2022, the Debtor filed a *Motion to Determine Compensation Paid to*

11  *Counsel Was Excessive Under 11 U.S.C. § 329 and FRBP 2017* [Doc. 96] ("Disgorgement

12  Motion"), which requested the Court order Ms. Bullock to return all compensation paid to her by

13  or on behalf of the Debtor because she was never employed as a professional under 11 U.S.C. §

14  327.  Ms. Bullock opposed.  A hearing was held on February 23, 2022, during which the Court

15  granted in part and denied in part the Disgorgement Motion.

16    On February 28, 2022, the Court entered an *Order Granting Disgorgement Motion* [Doc.

17  134] ("Disgorgement Order"), which ordered Ms. Bullock to return to Debtor all payments

18  received in excess of $6,268 (the "Disgorged Funds"). The Disgorged Funds shall be maintained

19  in the attorney-client trust account of the Debtor's current counsel, SLC, and shall not be

20  disbursed absent further order of the Court. Bullock shall transfer the Disgorged Funds to SLC's

21  attorney-client trust account within fourteen days of the date of issuance of this Order.  The

22  Disgorgement Order further provided that it was without prejudice to Ms. Bullock's ability to file

23  an application seeking authorization to be retained as the Debtor's general bankruptcy counsel

24  nunc pro tunc.  To date, Ms. Bullock has not filed such an application.

25    **9.    The Debtor Objects to Proofs of Claim**

26    In February 2022, the Debtor filed objections to several proofs of claim, including (i)

27  Claims 9 and 10 filed by Mr. Carlin [Doc. 116], (ii) Claim 13 filed by Fry & Associates [Doc.

28

7

110], (iii) Claim 17 filed by Phalanx [Doc. 113], (iv) Claim 18 filed by Betula [Doc. 120], and (v) Claim 20 filed by Pennington [Doc. 107].

Hearings on these claim objections are currently scheduled for May 17, 2022.  The Debtor intends to file objections to additional proofs of claim in due course.  The Debtor reserves all rights to object to further proofs of claim.

### 10.    The Debtor Files State Court Actions Against Insiders and Real Estate Brokers

During this Bankruptcy Case, the Debtor has filed two separate lawsuits against parties responsible for its financial problems that necessitated the Debtor's bankruptcy filing.

### a.    The Betula Action, Los Angeles Superior Court, Case 22STCV04623

On February 7, 2022, the Debtor filed a complaint against two sets of defendants (i) Mr. Pae, Mr. Park, and Betula (the "Betula Parties"), and (ii) Ms. Zheng and her real estate company, CBW Global, Inc. (the "Zheng Parties"), with the Superior Court of California, County of Los Angeles, initiating *Jinzheng Group (USA), LLC v. Pae et al*, Case No. 22STCV04623 ("Betula Action").

In the Betula Action, the Debtor that Ms. Zheng, Mr. Pae, and Mr. Park conspired to charge it over $12 million in false service fees pursuant to the Betula Agreements described above. The Debtor pleads causes of action for (i) breach of contract against the Betula Parties, (ii) intentional misrepresentation against the Betula and Zheng Parties, (iii) negligent misrepresentation against the Betula and Zheng Parties, (iv) negligence against the Betula and Zheng Parties, (v) breach of fiduciary duty against the Zheng Parties, (vi) aiding and abetting against the Betula and Zheng Parties, an (vii) unfair business practices against the Betula and Zheng Parties. The Debtor seeks general damages exceeding $5,000,000, plus special damages, punitive damages, and attorney's fees and costs.

### b.    The Broker Action, Los Angeles Superior Court, Case 22AHCV00093

On February 23, 2022, the Debtor filed a complaint against three sets of the defendants (i) Testa Capital Group and Thomas L. Testa ("Testa Parties"), (ii) Homes Loans Unlimited, Inc., Daniel Triana, James Shields, and Shawn Sourgose ("HLU Parties"), and (ii) Betty Zheng and

CBW Global, Inc. ("Zheng Parties"), with the Superior Court of California, County of Los Angeles, initiating *Jinzheng Group (USA), LLC v. Testa Capital Group, et al.*, Case No. 22AHCV00093 ("Broker Action").

In the Broker Action, the Debtor alleges that Ms. Zheng had a scheme to defraud and harm the Debtor by arranging for unscrupulous lenders to lend or otherwise negotiate loans for the Debtor while charging the Debtor unconscionable rates and fees for their loan services. Specifically, in October 2020, the Debtor's loan with BOBS, LLC (predecessor in interest to Royalty Equity Lending) had matured.  The Debtor was introduced to the Testa Parties and HLU Parties (collectively, the "Broker Parties") to obtain a new loan or in the alternative to obtain a new loan for the Debtor.  However, the Broker Parties failed to actually provide any services or shop for new loans for the Debtor.  The Broker Parties ultimately obtained a 3-month extension for the Debtor and were compensated 2% of the total combined gross loan amount funded by lender or minimum of $287,000.00 whichever is higher. In addition, each of the three brokers (Testa, HLU, and Sourgouse) would receive a $500,000.00 fee when the loan is paid off.  There is no explanation or justification why three loan brokers were needed for this project and why three separate fees were necessary.  There is absolutely no evidence of any effort by any of the Broker Parties to attempt to obtain a favorable terms either through a new lender or in good faith negotiated with the existing lender for the extension or reduction in terms.  As a result of these payments, the Debtor has suffered great economic loss.

The Debtor pleads causes of action for (i) breach of fiduciary duties against all defendants, (ii) intentional misrepresentation against all defendants, (iii) negligent misrepresentation against all defendants, (iv) negligence against all defendants, (v) aiding and abetting against all defendants, (vi) unfair business practices against all defendants.  The Debtor seeks general damages exceeding $5,000,000, plus special damages, punitive damages, and attorney's fees and costs.

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

11.    **Royalty Equity Lending Moves for Relief from Stay Against the Los Angeles Properties**

On February 24, 2022, Royalty Equity Lending filed a *Motion for Relief for the Automatic Stay Under 11 U.S.C. § 362* [Doc. 127] ("Royalty Equity Lending MRS"), which seeks relief from stay to foreclose against the Los Angeles Properties.  Royalty Equity Lending seeks relief under 11 U.S.C. § 362(d)(1) and (2).  The Royalty Equity Lending MRS values the Los Angeles Properties in the amount of $9,335,000.00, which is approximately 40% of the appraised value according to Cushman & Wakefield, Inc. in June 2021 ($23,450,000.00).  Royalty Equity Lending argues that its interest in the Los Angeles Properties is under-secured.  A hearing on the Royalty Equity Lending MRS is currently scheduled for March 21, 2022, at 10:00 a.m.

For the purposes of this Plan, the Debtor has used Royalty Equity Lending's valuation of the Los Angeles Properties for determining the secured status of its claim against the Debtor's bankruptcy estate.

12.    **The Debtor Moves to Change Membership of the Committee and Disband the Committee**

On March 1, 2022, the Debtor filed a *Motion to Change Membership and Disband Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. § 1102(a)* [Doc. 135] ("Committee Membership Motion").  In it, the Debtor argued Betula, Pennington, and Phalanx cannot adequately represent the interests of unsecured creditors because (i) Betula is an insider with an actual and unavoidable conflict of interest as it is currently being sued by Debtor in the Betula Action, (ii) Pennington is a creditor of Betula—not Debtor, and (iii) Phalanx admits it was not licensed to perform the services contracted for and, to date, has failed to provide any explanation or documentation for the services it allegedly provided Debtor.  The Debtor further argued that the Committee should be disbanded because there is no need for its services as Debtor would be proposing a plan that will pay allowed general unsecured claims in full.

A hearing on the Committee Membership Motion is currently scheduled for May 17, 2022, at 10:00 a.m.

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

13. **The Committee Moves for Appointment of Chapter 11 Trustee or, In the Alternative, Termination of Exclusivity Order and Authorizing Standing to Prosecute Insider Actions**

Also, on March 1, 2022, the Committee filed a *Motion for (I) the Appointment of a Chapter 11 Trustee, or In the Alternative, (II) (A) Termination of Plan and Solicitation Exclusivities and (B) Authorizing Standing for the Committee to Prosecute Actions Against Insiders of the Debtor* [Doc. 135] ("Trustee Motion").  In it, the Committee alleged that the Debtor was proceeding in bad faith by challenging the unsecured claims asserted against its bankruptcy estate and protecting insiders.

A hearing on the Trustee Motion is currently scheduled for May 17, 2022, at 10:00 a.m.

14. **The Debtor's Investigation of Fraudulent Transfer Claims Involving 150 East La Sierra Drive, Arcadia, CA**

The Debtor is investigating a potential claim against 150 Sierra LLC for recovery of the property commonly known as 150 East La Sierra Drive, Arcadia, CA 91006, which was transfer by the Debtor to 150 Sierra LLC for no consideration on January 23, 2020. 150 Sierra LLC is a California limited liability company owned jointly by the Debtor and The Code Solutions LLC (an entity related to Betula Lenta LLC).

15. **The Debtor's Renewed Efforts to Entitle the Los Angeles Properties and Paradise Drive Lots**

Debtor believes that its pre-petition financial problems arose from its relationship with Betula.  Debtor is in the process of interviewing firms that have the necessary expertise to obtain the entitlements.  These firms have represented to Debtor that this is a 20-month process that will cost approximately $800,000.  Debtor believes that obtaining the necessary entitlements to develop the Los Angeles Properties and Paradise Drive Lots will result in substantial appreciation. In the June 2021 appraisal conducted by Cushman & Wakefield, the firm appraised the hypothetical value of the properties, as entitled for 70 lots, at $38,200,000.00.  Upon obtaining the necessary entitlements, Debtor will be able to either sell or refinance the Los Angeles Properties and Paradise Drive Lots, and pay all allowed claims in full from the proceeds.

11

## III.    THE PLAN OF REORGANIZATION

### A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead, they are unclassified. They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class.

#### 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under 11 U.S.C. § 507(a)(2).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Shioda Langley & Chang LLP | $150,000.00 (est.) | Paid in full upon the latter of (i) the Effective Date, or (ii) within three business days after entry of a final, nonappealable order of the Bankruptcy Court allowing the claim. |
| Pachulski Stang Ziehl & Jones LLP | $125,000.00 (est.) | |
| Michael Carlin | $0.00 | |
| Donna Bullock | $0.00 | |
| Clerk's Office Fees | $0.00 | Reorganized Debtor shall set aside the estimated amount of administrative claims to ensure payment in full of all allowed administrative expense claims pursuant to this Plan. |
| Office of the U.S. Trustee Fees | $0.00 | |

1    <u>Court Approval of Fees Required:</u>

2        The Court must rule on all fees listed in this chart before the fees will be owed. For all fees

3    except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve

4    a properly noticed fee application and the Court must rule on the application.  Only the amount of

5    fees allowed by the Court will be owed and required to be paid under this Plan.  The Debtor

6    reserves all rights to challenge and object to any administrative claims.

7        **2.    Priority Tax Claims**

8        Priority tax claims are certain unsecured income, employment and other taxes described by

9    11 U.S.C. § 507(a)(8).  The Code requires that each holder of such a claim receive the present

10   value of such claim in deferred cash payments, over a period not exceeding six years from the date

11   of the assessment of such tax.  The following chart lists all § 507(a)(8) priority tax claims against

12   the Debtor's bankruptcy estate and their treatment under the Plan:

| Description | | Treatment |
|---|---|---|
| Claimant: | Internal Revenue Service | Paid in full within 120 days of the Effective Date |
| Type: | Estimated FICA withholdings | |
| Amount: | $28,700.70 | |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan.

| Class | Description | | Treatment |
|---|---|---|---|
| 1 | Claimant: | LA County Treasurer and Tax Collector | Impaired: NO<br><br>Treatment: The Plan leaves unaltered the legal, equitable, and contractual rights of the LA County Treasurer and Tax Collector.  The Debtor will continue to make all payments to LA County Treasurer and Tax Collector pursuant to applicable law. |
| | Collateral: | Los Angeles Properties | |
| | Collateral Value: | $9,335,000.00 | |
| | Lien Priority: | 1st | |
| | Claim Amount: | $0.00 | |
| | Secured Amount: | $0.00 | |
| | Unsecured Amount: | $0.00 | |

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

| Class | Description | | Treatment |
|---|---|---|---|
| 2 | Claimant: | Royalty Equity Lending, LLC | <u>Impaired:</u> YES<br><br><u>Treatment:</u> The Class 2 Claim shall be bifurcated into: (a) an Allowed Secured Claim in the amount of $9,335,000.00, and (b) an Allowed General Unsecured Claim in the amount of $18,009.29.<br><br>Royalty Equity Lending, LLC shall retain the first priority liens against the Los Angeles Properties.<br><br>Beginning of the first day of the first month after the Effective Date, the Reorganized Debtor shall remit to Royalty Equity Lending LLC monthly payments ($71,788.07) as calculated over a 30-year fully amortized term at 8.5% interest per annum.<br><br>Within 3 years of the Effective Date, the Reorganized Debtor shall make a balloon payment for the total amount outstanding ($9,104,028.35).<br><br>The total payout on the Class 2 Claim will be $11,616,610.80.<br><br>The Allowed General Unsecured Claim will receive treatment pursuant to Class 11A. |
| | Collateral: | Los Angeles Properties | |
| | Collateral Value:<br>Lien Priority: | $9,335,000.00<br>2nd | |
| | Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | $9,353,009.29<br>$9,335,000.00<br>$18,009.29 | |

| Class | Description | | Treatment |
|---|---|---|---|
| 3 | Claimant: | LA County Treasurer and Tax Collector | **Impaired:** NO<br><br>**Treatment:** The Plan leaves unaltered the legal, equitable, and contractual rights of the LA County Treasurer and Tax Collector.  The Debtor will continue to make all payments to LA County Treasurer and Tax Collector pursuant to applicable law. |
| | Collateral: | Paradise Drive Lots | |
| | Collateral Value:<br>Lien Priority: | $266,600.00<br>1st | |
| | Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | $0.00<br>$0.00<br>$0.00 | |
| 4 | Claimant: | Breezeblocks Capital, LLC | **Impaired:** YES<br><br>**Treatment:** Within sixty days of the Effective Date, the Reorganized Debtor shall pay the Class 4 Claim in full; however, all interest accrued after the Petition Date shall be at the rate of 18% per annum instead of the contractual rate.<br><br>The lien securing the Class 4 Claim shall release upon payment in full. |
| | Collateral: | Paradise Drive Lots | |
| | Collateral Value:<br>Lien Priority: | $266,600.00<br>2nd | |
| | Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | $124,653.99<br>$124,653.99<br>$0.00 | |
| 5 | Claimant: | Royal Business Bank | **Impaired:** NO<br><br>**Treatment:** The Plan leaves unaltered the legal, equitable, and contractual rights of the holder of the Class 5 Claim.  Unless previously sold by noticed motion in this Bankruptcy Case, the San Marino Property shall be surrendered on the Effective Date in full satisfaction of the Class 5 Claim. |
| | Collateral: | San Marino Property | |
| | Collateral Value:<br>Lien Priority: | $2,350,000.00<br>1st | |
| | Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | $1,100,000.00<br>$1,100,000.00<br>$0.00 | |

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

| Class | Description | | Treatment |
|---|---|---|---|
| 6 | Claimant: | Corona Capital | Impaired: NO |
| | Collateral: | San Marino Property | Treatment: The Plan leaves unaltered the legal, equitable, and contractual rights of the holder of the Class 6 Claim.  Unless previously sold by noticed motion in this Bankruptcy Case, the San Marino Property shall be surrendered on the Effective Date in full satisfaction of the Class 6 Claim. |
| | Collateral Value: | $2,350,000.00 | |
| | Lien Priority: | 2nd | |
| | Claim Amount: | $540,000.00 | |
| | Secured Amount: | $540,000.00 | |
| | Unsecured Amount: | $0.00 | |
| 7 | Claimant: | DNQ LLC | Impaired: NO |
| | Collateral: | San Marino Property | Treatment: The Plan leaves unaltered the legal, equitable, and contractual rights of the holder of the Class 7 Claim.  Unless previously sold by noticed motion in this Bankruptcy Case, the San Marino Property shall be surrendered on the Effective Date in full satisfaction of the Class 7 Claim. |
| | Collateral Value: | $2,350,000.00 | |
| | Lien Priority: | 3rd | |
| | Claim Amount: | $420,000.00 | |
| | Secured Amount: | $420,000.00 | |
| | Unsecured Amount: | $0.00 | |
| 8 | Claimant: | LA County Treasurer and Tax Collector | Impaired: NO |
| | Collateral: | Van Nuys Property | Treatment: The Plan leaves unaltered the rights of the LA County Treasurer and Tax Collector.  The Debtor will continue to make all payments to LA County Treasurer and Tax Collector pursuant to applicable law. |
| | Collateral Value: | $600,000.00 | |
| | Lien Priority: | 1st | |
| | Claim Amount: | $0.00 | |
| | Secured Amount: | $0.00 | |
| | Unsecured Amount: | $0.00 | |

| Class | Description | | Treatment |
|---|---|---|---|
| 9 | Claimant: | Investment Management Co. | <u>Impaired:</u> YES |
| | Collateral: | Van Nuys Property | <u>Treatment:</u>  Within sixty days of the Effective Date, the Reorganized Debtor shall pay the Class 9 Claim in full; however, all interest accrued after the Petition Date shall be at the rate of 18% per annum instead of the contractual rate. |
| | Collateral Value: | $600,000.00 | |
| | Lien Priority: | 2nd | |
| | Claim Amount: | $350,000.00 | The lien securing the Class 9 Claim shall release upon payment in full. |
| | Secured Amount: | $350,000.00 | |
| | Unsecured Amount: | $0.00 | In addition to these payment obligations, the Reorganized Debtor shall remain current on all property taxes and homeowner's association dues accrued by the Van Nuys Property.  The holder of the Class 9 Claim may request from the Reorganized Debtor proof that all such obligations are current and in good standing.  Such request shall be made in writing to the Reorganized Debtor's counsel.  Within ten (10) business days after receipt of such request, the Reorganized Debtor shall provide to proof that all applicable property taxes and homeowner's association dues accrued by the Van Nuys Property are current and in good standing. |

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

| Class | Description | | Treatment |
|---|---|---|---|
| 10 | Claimant: | Michael and Shari Dorff | Impaired: YES |
| | Collateral: | Van Nuys Property | Treatment:  Within sixty days of the Effective Date, the Reorganized Debtor shall pay the Class 10 Claim in full; however, all interest accrued after the Petition Date shall be at the rate of 18% per annum instead of the contractual rate. |
| | Collateral Value: Lien Priority: | $600,000.00 3rd | |
| | Claim Amount: Secured Amount: Unsecured Amount: | $50,000.00 $50,000.00 $0.00 | The lien securing the Class 10 Claim shall release upon payment in full. |
| | | | In addition to these payment obligations, the Reorganized Debtor shall remain current on all property taxes and homeowner's association dues accrued by the Van Nuys Property.  The holder of the Class 10 Claim may request from the Reorganized Debtor proof that all such obligations are current and in good standing.  Such request shall be made in writing to the Reorganized Debtor's counsel.  Within ten (10) business days after receipt of such request, the Reorganized Debtor shall provide to proof that all applicable property taxes and homeowner's association dues accrued by the Van Nuys Property are current and in good standing. |

2.    **Classes of Priority Unsecured Claims**

Certain priority claims under 11 U.S.C. § 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  There are no such claims against Debtor's bankruptcy estate.

3.    **Classes of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under 11 U.S.C. § 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims:

| Class | Description | Treatment |
|-------|-------------|-----------|
| 11A | General Unsecured Claims<br><br>Filed Claims: $4,317,473.97<br><br>Amount of allowed claims to be determined pending the outcome of Debtor's objections to claim and pending state court litigation. | Impaired: YES<br><br>Treatment: In full and final satisfaction of each, any, and allow Class 11A allowed claim will be paid in full with interest at the federal judgment rate as of the Petition Date (0.07%), from the Petition Date until paid in full.<br><br>The allowance of Class 11A claims will be subject to Debtor's right to object to such claims as well as the conclusion of related litigation in which the Debtor asserts offsetting claims against the holder of the Class 11A claim.<br><br>Each Class 11A claim shall be paid in full upon the latter of (i) three years after the Effective Date, or (ii) upon adjudication by final, non-appealable order or judgment resolving claim objections and related litigation.<br><br>Notwithstanding, should the Debtor in its sole discretion decide to pay any allowed Class 11A claim early and within two years of the Effective Date, the Debtor shall be entitled to a 20% early-payment discount such that Debtor may pay 80% of the allowed Class 11A claim amount, plus interest at the federal judgment rate as of the Petition Date (0.07%), in full and final satisfaction of said Class 11A claim. |
| 11B | Subordinated Unsecured Claim of Jianqing Yang<br><br>Filed Claim: $43,523,255.42 | Impaired: YES<br><br>Treatment: No payments under the Plan will be made on behalf of the Class 11B claim. |

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

### 4.    Class of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following chart identifies the Plan's treatment of the Class of interest holders:

| Class | Description | Treatment |
|-------|-------------|-----------|
| 12 | Equity interests in the Debtor (100% held by Jianqing Yang). | <u>Impaired:</u> NO<br><br><u>Treatment:</u> Each Class 12 interest holder will retain its rights and interests without impairment.<br><br>Class 12 will not receive any payments on account of its equity interests during the life of the Plan. |

### D.    Means of Effectuating the Plan

#### 1.    Funding for the Plan

The Plan will be funded by the following:

a.    Cash on hand in the approximate amount of $250,000;

b.    Rental income of approximately $42,504/year from Debtor's expired leases (to holdover tenants) of 2520 and 2526 Lincoln Park, Los Angeles, CA 9003;1

c.    A $4,000,000 capital contribution by Jianqing Yang on the Effective Date;

d.    The sale of the San Marino Property;

e.    The sale of the Van Nuys Property;

f.    Additional capital contributions by Jianqing Yang to the extent necessary to fund Debtor's payment obligations during the term of the Plan.

#### 2.    Composition of the Debtor After the Effective Date

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor."  The sole member of the Debtor, Jianqing Yang, will remain as the sole member of the Reorganized Debtor.

**3.      Post-Confirmation Management and Compensation**

The current manager of the Debtor, Jianqing Yang, will remain as the manager of the Reorganized Debtor and will be responsible for the management and operation of the Debtor's business.  Mr. Yang will not receive any compensation for his services as manager of the Reorganized Debtor.

**4.      Disbursing Agent**

The Reorganized Debtor will act as the disbursing agent under the Plan and submit a quarterly report to the Court within 45 days after the end of each quarter, detailing the payees and amounts of payments to creditors under the Plan, along with updates on Debtor's progress reorganizing under the Plan.  The Reorganized Debtor will not charge any fee for acting as the disbursing agent and for making Plan distributions.

**5.      Objections to Claim**

The Debtor or Reorganized Debtor, as the case may be, will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable to the Debtor unless the Debtor deems the inconsistency to be insignificant.  With respect to disputed claims that are not resolved prior to the Plan's Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval.  As provided by 11 U.S.C. § 502(c), the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan.  As of the Effective Date, the Reorganized Debtor shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case to resolve such objections to claims following the confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim.

**6.      Avoidance Actions, Strong Arm Powers, and Causes of Action**

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the

1   Bankruptcy Code, shall irrevocably vest in the Debtor and be transferred in total to the

2   Reorganized Debtor upon confirmation of the Plan.  The deadline for the Debtor or Reorganized

3   Debtor to file such actions shall be the latter of (i) the statute of limitations for such cause of

4   action and (ii) two years after the Petition Date.  Regardless of whether they are listed on the

5   Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the

6   Debtor shall vest in the Reorganized Debtor unless specifically settled with such settlement

7   approved by order of the Bankruptcy Court prior to the confirmation of the Plan.

8                    **7.    Employment of Professionals by the Reorganized Debtor and Payment of**

9                          **Professional Fees and Expenses After the Effective Date**

10          On and after the Effective Date, the Reorganized Debtor shall have the right to employ and

11  compensate professionals as the Reorganized Debtor determines is appropriate and to compensate

12  any such professionals without the need for any notice or further order of the Court.

13                   **8.    Exemption from Transfer Taxes**

14          Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of a security, or the

15  making or delivery of an instrument of transfer under a plan confirmed under 11 U.S.C. § 1129

16  may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that

17  are exempt from taxes under 11 U.S.C. § 1146(c) include all transfers by the Debtor after the

18  commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective

19  Date.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales

20  and use taxes, transfer taxes, and other similar taxes.

21                   **9.    Distributions to Be Made Pursuant to the Plan**

22          Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be

23  made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage

24  prepaid, to the address shown in the Debtor's schedules, as they may from time to time be

25  amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of

26  claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay allowed claims

27  shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

28                   **10.   Exculpations and Releases**

1   To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor,

2 their management, the Committee, its members, nor any of their professionals employed or

3 retained by any of them, whether or not by Bankruptcy Court order, shall have or incur any

4 liability to any person or entity for any act taken or omission made in good faith in connection

5 with or related to the formulation and implementation of the Plan, or a contract, instrument,

6 release, or other agreement or document created in connection therewith, the solicitation of

7 acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan

8 and the transactions contemplated therein, including the distribution of estate funds.

9   **11. Injunctions**

10   The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or

11 otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action,

12 equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the

13 Plan.  Except as provided in the Plan or the Plan Confirmation Order, as of the Plan Effective

14 Date, all entities that have held, currently hold or may hold a claim or other debt or liability or

15 equitable remedy that was stayed or is discharged or an interest or other right of an equity security

16 holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking

17 any of the following actions against: (I) (a) the Debtor, (b) the Reorganized Debtor, or (c) the

18 officers, directors, managers, and equity holders of the Debtor as their alleged alter egos, or (II)

19 their property; on account of any such discharged claims, debts or liabilities or extinguished

20 interests or rights: (i) commencing or continuing, in any manner or in any place, any action or

21 other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment,

22 award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv)

23 asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or

24 obligation due to the Debtor; and (iv) commencing or continuing any action in any manner, in any

25 place, that does not comply with or is inconsistent with the provisions of the Plan.  By accepting

26 distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant

27 to the Plan shall be deemed to have specifically consented to the injunctions set forth in this

28 Section; provided, however, that this sentence shall only be operative (and thereby providing an

injunction, as set forth in this Section) in favor of the officers, directors, managers, and equity holders of the Debtor as their alleged alter egos so long as there are no uncured material defaults under this Plan.  The injunction described in this paragraph is applicable to *all* creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of this injunction and with actual knowledge that the injunction is applicable to said creditor and/or party in interest, such that it is impossible for said creditor and/or party in interest to have a good faith belief that the injunction does not apply to said creditor's and/or party in interest's claim or cause of action.  Accordingly, any creditor and/or party in interest charged with actual knowledge may be held in contempt for violation the injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the injunction.

### 12.    Executory Contracts and Unexpired Leases

The Debtor does not believe it is a party to any executory contracts or unexpired leases as the Debtor contends that Betula breached the Betula Agreement before the Petition Date. However, as of the Effective Date, any executory contract or unexpired lease to which the Debtor is a party shall be deemed to be rejected by the Debtor effective as of 11:59 P.M. PST on the Plan Effective Date. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WHICH IS REJECTED ON THE PLAN EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE PLAN EFFECTIVE DATE.**  Any claim resulting from the Debtor's rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.  Any allowed claim resulting from the Debtor's rejection of an unexpired lease or executory contract will constitute a Class 5 allowed claim, subject to the limitations set forth in 11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

### 13.    Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

### 14.    Retention of Jurisdiction

The Court will retain jurisdiction to the extent provided by law.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

### A.    Classification and Treatment of Claims

The Plan must classify different claims against the Debtor into separate classes based upon their legal nature. 11 U.S.C. § 1122. Claims of a substantially similar legal nature may be classified together but are not required to be. 11 U.S.C. § 1122(a). Separate classification of administrative expense claims and certain priority claims is not required because such claims are afforded specific treatment under the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(9).

The Debtor believes that the classification of claims in the Plan is appropriate and consistent with the requirements of the Bankruptcy Code. The Court will determine the appropriateness of the classification of the claims under the Plan in conjunction with the hearing on confirmation of the Plan.

The Plan must designate each separate class of claims and interests either as impaired or unimpaired. If a Class is impaired, then holders of claims in that class are entitled to (1) vote to

26

accept or reject the plan (unless the Plan provides for no distribution to the class, in which case the class is deemed to reject the Plan), and (2) receive payment at least equal to the value that the claimant would under a chapter 7 liquidation. If a Class is unimpaired, then Creditors holding claims in that class are deemed to accept the Plan and not entitled to vote.

### B. Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### C. Who May Vote to Accept or Reject the Plan

To be eligible to vote on the Plan, a creditor must have a claim that is allowed and impaired. Persons holding claims that are disallowed or unimpaired are not entitled to vote. 11 U.S.C. § 1129(a)(8).

### 1. Allowed Claims

Generally, a claim is allowed only if (1) a proof of claim is properly filed before the Claims Bar Date, and (a) no party in interest has objected to the Proof of Claim, or (b) the Court has entered an order allowing the Claim; or (2) the claim is listed on the Debtor's Schedules and not identified as disputed, contingent, or unliquidated. 11 U.S.C. §§ 501(a), 1111(a).

A claim that is allowed for voting purposes may still be subject to later objections and disallowance. A person whose claim is subject to an objection is not eligible to vote on the Plan unless and until that objection is resolved in that person's favor, or the Court temporarily allows the claim for the purpose of voting on the Plan after notice and a hearing under Bankruptcy Rule 3018(a). Any person that seeks temporary allowance of its Claim for voting purposes must promptly file an appropriate motion and take the steps necessary to arrange a timely hearing.

### 2. Voting Requirements

A creditor holding a claim against the estate may vote to accept or reject the Plan. 11 U.S.C. § 1126(a). Creditors holding claims in an unimpaired class are conclusively presumed to accept the Plan and are ineligible to vote on acceptance. 11 U.S.C. § 1126(f). The Court may designate any creditor whose acceptance or rejection of the Plan was not in good faith or in accordance with the Bankruptcy Code. 11 U.S.C. § 1126(e).

27

### 3.    Votes Necessary for a Class to Accept the Plan

A class has accepted the Plan only when more than one-half (1/2) in number and at least two-thirds (2/3) in amount of the Allowed Claims in that Class vote to accept the plan. 11 U.S.C. § 1126(c).

### 4.    Votes Necessary for a Class to Accept the Plan

The Plan may be confirmed if at least one impaired class has voted to accept the Plan (without counting the votes of any insiders whose claims are classified within that class) and if certain statutory requirements are met both as to non-consenting members within a consenting class and as to dissenting Classes. *See* 11 U.S.C. §§ 1126(c), 1129(a)(10).

Even if Debtor receives the requisite number of votes to confirm the Plan, the Plan will not become binding unless and until, among other things, the Court makes an independent determination that confirmation is appropriate. This determination will be the subject of the hearing on confirmation of the Plan.

### D.    Cramdown: Treatment of Nonaccepting Classes

Even if all classes do not consent to confirmation of the Plan, the Plan may be confirmed nonetheless if each dissenting class is treated in the manner prescribed by the Bankruptcy Code. The process by which a dissenting class is forced to abide by the terms of a Plan is commonly referred to as "cramdown."

The Bankruptcy Code allows a dissenting class to be crammed down if the plan does not "discriminate unfairly" and is "fair and equitable" as to such class. 11 U.S.C. § 1129(b). The Bankruptcy Code does not define unfair discrimination, but it does set forth certain minimum requirements for "fair and equitable" treatment. For secured claims, "fair and equitable" can mean that the creditors retain their liens and receive deferred cash payments equal to the present value of their lien interests in the collateral. For unsecured claims, the Plan is fair and equitable if the allowed unsecured claims receive if (a) they receive payment in full under the Plan, or (b) no

junior claim or interest receives or retains any payment under the Plan.

### E.    Liquidation Analysis

Section 1129(a)(7) requires each holder of a claim in an impaired class to either (a) accept the plan, and (b) receive not less than the holder would so receive if the estate was liquidated under chapter 7. This is known as the best interests of creditors' test.

In a chapter 7 case, a chapter 7 trustee is appointed to sell property the bankruptcy estate. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative expenses and priority claims are paid next.  Next, unsecured claims are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured claims with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

To confirm a plan of reorganization, the bankruptcy court must find that all creditors and interest holders who do not accept the plan will receive at least as much under the plan as such holders would receive under a liquidation under chapter 7.  The Debtor believes this requirement is met here because all holders of allowed claims will be paid in full.  Nonetheless, table summarizing the Debtor's liquidation analysis is attached hereto as **Exhibit 3**.

### F.    Feasibility

To confirm the Plan, the Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to Debtor under the Plan. 11 U.S.C. § 1129(a)(11).

There are at least two important aspects of a feasibility analysis. The first aspect considers whether there will be enough cash on hand on the Effective Date to pay all the claims on such date. The second aspect considers whether the Reorganized Debtor will earn sufficient income to make all required payments under the Plan.

With respect to the first aspect of feasibility, the Debtor will have sufficient cash on hand to make Effective Date payments.  Jianqing Yang will make a capital contribution of $4,000,000, which fund the Effective Date Plan payments, which are estimated to total $275,000.

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

With respect to the second aspect of feasibility, the Debtor will have sufficient cash to make all payments during the term of the Plan.  A table summarizing the Debtor's plan payments and necessary funding is attached hereto as **Exhibit 4**.

**G.     Risk Factors**

The primary risk factor of the Plan is the ability of the Debtor to obtain the entitlements for the Los Angeles Properties and Paradise Drive Lots, and sell or refinance those properties, within the Plan's three-year term.  Other lesser risk factors include (1) the Debtor's ability to sell the San Marino and Van Nuys Properties in a timely manner, and (2) Jianqing Yang's ability to make further capital contributions to the Debtor to fund its payment obligations under the Plan.

**H.     Tax Consequences of the Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtor's tax liability: Debtor will incur taxes on the amounts collected as lease payments from 2520 and 2560 Lincoln Park, Los Angeles, CA 90031.  There may be additional tax consequences.  Creditors and parties-in-interest should conduct their own independent investigation of the Debtor's tax returns and potential tax consequences.

**V.     EFFECT OF CONFIRMATION**

**A.     Discharge**

This Plan provides that upon entry of a final decree, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141.  However, the discharge will not discharge any liability imposed by the Plan.

### B.    Revesting of Property in the Reorganized Debtor

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtor.

### C.    Modification of Plan

The Debtor may modify the Plan at any time before confirmation.  However, the Court may require re-voting on the Plan if the Debtor modifies the Plan before confirmation in a manner that materially and adversely affects a creditor or interest holder that had voted in favor of the Plan.  The Reorganized Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

### D.    Post-Confirmation Status Reports

Until a final decree closing the Bankruptcy Case is entered, the Reorganized Debtor will file quarterly post-confirmation status reports with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.

### E.    Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

### F.    Post-Confirmation Conversion or Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under 11 U.S.C. § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

The order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

### G.    Final Decree

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Debtor, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.


Dated:  May 3, 2022                    SHIODA LANGELY & CHANG, LLP

                                        By: /s/Christopher J. Langley
                                        Christopher J. Langley, Counsel for
                                        Jinzheng Group (USA), LLC, Debtor

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

**DECLARATION OF SHAO XING MAX YANG**

I, Shao Xing Max Yang, am the attorney-in-fact for Jianqing Yang, sole member of Jinzheng Group (USA), LLC ("Debtor"), the chapter 11 debtor in this bankruptcy case.  I make this declaration in support of the *Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022* ("Plan"), to which this declaration is attached.

1.    I have reviewed the Plan and believe that all statements and representations therein are truthful and accurate to the best of my knowledge, and I support confirmation of same.

I declare under the penalty of perjury under the laws of the United States of America is true and correct.

Date: May 3, 2022

Shao Xing Max Yang

| Property | Property Value | First Priority Lien Claimant | Amount | Second Priority Lien Claimant | Amount | Third Priority Lien Claimant | Amount | Total Liens |
|---|---|---|---|---|---|---|---|---|
| Los Angeles Properties | | | | | | | | |
| 2929 Amethyst | $ 6,890,000.00 | | | | | | | |
| 2526-2528 Lincoln Park | $ 795,000.00 | | | | | | | |
| 2520-2522 Lincoln Park | $ 1,050,000.00 | LA County Tax Collector | $ - | Royalty Equity Lending LLC | $ 9,353,009.29 | | | $ 9,353,009.29 |
| 2602 Lincoln Park | $ 300,000.00 | | | | | | | |
| 2600 Sierra Street | $ 300,000.00 | | | | | | | |
| | $ 9,335,000.00 | | | | | | | |
| Paradise Drive Lots | $ 266,600.00 | LA County Tax Collector | $ - | Breezeblocks Capital LLC | $ 124,653.99 | | | $ 124,653.99 |
| San Marino Property | $ 2,350,000.00 | Royal Business Bank | $ 1,100,000.00 | Corona Capital Group, LLC | $ 540,000.00 | DNQ LLC | $ 420,000.00 | $ 2,060,000.00 |
| Van Nuys Property | $ 660,000.00 | LA County Tax Collector | $ - | Investment Management Co. | $ 350,000.00 | Michael and Sheri Dorff | $ 50,000.00 | $ 400,000.00 |

| Source | Creditor | Secured Claims | | | Unsecured Claims | | | Duplicate | Plan Treatment | | SC Litigation / Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Amount | Collateral | Lien Type | Administrative | Priority | Unsecured | | Classification | Claim Objection | |
| Sch D 2.2 | Royal Business Bank | $ 1,100,000.00 | San Marino | 1st DOT | $ - | $ - | $ - | -- | Class 6 | -- | |
| Sch D 2.3 | Corona Capital | $ 540,000.00 | San Marino | 2nd DOT | $ - | $ - | $ - | POC 8 | -- | | |
| Sch D 2.4 | DNQ LLC | $ 420,000.00 | San Marino | 3rd DOT | $ - | $ - | $ - | POC 21 | -- | | |
| Sch D 2.5 | Investment Management Co. | $ 350,000.00 | Van Nuys | 1st DOT | $ - | $ - | $ - | POC 2 | -- | | |
| Sch D 2_ | The Alison Company | $ 50,000.00 | Van Nuys | 2nd DOT | $ - | $ - | $ - | POC 4 | -- | | |
| Sch D 2_ | Pacific Mortgage Exchange | $ 127,000.00 | Paradise Lots | 1st DOT | $ - | $ - | $ - | POC 14 | -- | | |
| Sch EF 3.13 | Jianqing Yang | $ - | | | $ - | $ - | $ 43,523,255.42 | -- | Class 11B | | Proof of Claim Withdrawn |
| POC 1 | LA Treasurer and Tax Collector | $ - | | | $ - | $ - | $ - | | - | | |
| POC 2 | Royalty Equity Lending, LLC (BOB's LLC) | $ 9,335,000.00 | Los Angeles | 1st DOT | $ - | $ - | $ 18,009.29 | | Class 2 | | |
| POC 3 | Internal Revenue Service | $ - | | | $ - | $ 28,700.70 | $ - | | Class 11 | | |
| POC 4 | Michael and Shari Dorff | $ 50,000.00 | Van Nuys | 2nd DOT | $ - | $ - | $ - | | Class 11 | | |
| POC 5 | Investment Management Company | $ 350,000.00 | Van Nuys | 1st DOT | $ - | $ - | $ - | | Class 10 | | |
| POC 6 | Testa Capital Group | $ - | | | $ - | $ 13,650.00 | $ 672,900.00 | | Class 11A | | Broker Action, 22AHCV00093 |
| POC 7 | Home Loans Unlimited, Inc. | $ - | | | $ - | $ 13,650.00 | $ 672,900.00 | | Class 11A | | Broker Action, 22AHCV00093 |
| POC 8 | Corona Capital Group, LLC | $ 540,000.00 | San Marino | 2nd DOT | $ - | $ - | $ - | | Class 7 | | |
| POC 9 | Michael Carlin | $ - | | | $ 15,650.00 | $ - | $ - | | Admin | Doc. 116 | |
| POC 10 | Michael Carlin | $ - | | | $ 15,650.00 | $ - | $ - | | Admin | Doc. 116 | |
| POC 11 | Ultrasystems Environmental | $ - | | | $ - | $ - | $ 37,106.50 | | Class 11A | | |
| POC 12 | Land Design Consultants | $ - | | | $ - | $ - | $ 48,145.00 | | Class 11A | Doc. 110 | |
| POC 13 | Craig Fry and Associates | $ - | | | $ - | $ - | $ 240,700.47 | | Class 11A | | |
| POC 14 | Breezeblock Capital, LLC | $ 124,653.99 | Paradise Lots | 1st DOT | $ - | $ - | $ - | | Class 5 | | |
| POC 15 | Betty Zheng | $ - | | | $ - | $ - | $ 95,000.00 | | Class 11A | | Betula Action, 22STCV04623 |
| POC 16 | Shawn Charles Sourgose | $ - | | | $ - | $ 13,650.00 | $ 672,900.00 | | Class 11A | Doc. 113 | Broker Action, 22AHCV00093 |
| POC 17 | The Phalanx Group | $ - | | | $ - | $ - | $ 158,845.00 | | Class 11A | Doc. 120 | Broker Action, 22AHCV00093 |
| POC 18 | Betula Lenta Inc. | $ - | | | $ - | $ - | $ 1,643,977.00 | | Class 11A | | Betula Action, 22STCV04623 |
| POC 19 | Donna Bullock Esq | $ 45,000.00 | Retainer Funds | | $ 138,303.00 | $ - | $ - | | Admin | | |
| POC 20 | Pennington Construction Advisors Inc | $ - | | | $ - | $ - | $ 75,000.00 | | Class 11A | Doc. 107 | |
| POC 21 | DNQ LLC | $ 420,000.00 | San Marino | 3rd DOT | $ - | $ - | $ - | | Class 8 | | |
| | Total | $ 11,964,653.99 | | | $ 169,603.00 | $ 69,650.70 | $ 47,858,738.68 | | | | |

Note: Disputed Claims. Debtor reserves all rights to object to claims and assert affirmative claims against claimant.

In re Jincheng Group (USA), LLC, Case No. 2:21-bk-16674-ER
Exhibit 2 - Summary of Claims Against Debtor's Bankruptcy Estate

**Assets**

Los Angeles Properties

| | | |
|---|---|---|
| 2929 Amethyst | $ | 6,890,000.00 |
| 2526-2528 Lincoln Park | $ | 795,000.00 |
| 2520-2522 Lincoln Park | $ | 1,050,000.00 |
| 2602 Lincoln Park | $ | 300,000.00 |
| 2600 Sierra Street | $ | 300,000.00 |
| | $ | 9,335,000.00 |

| | | |
|---|---|---|
| Paradise Drive Lots | $ | 266,600.00 |
| San Marino Property | $ | 2,350,000.00 |
| Van Nuys Property | $ | 660,000.00 |
| **Total Assets** | **$ 12,611,600.00** | |

**Less Secured Debt**

Los Angeles Properties

| | | |
|---|---|---|
| Los Angeles County Tax Collector | $ | - |
| Royalty Equity Lending (POC 2) | $ | 9,353,009.29 |
| | $ | 9,353,009.29 |

Paradise Drive Lots

| | | |
|---|---|---|
| Los Angeles County Tax Collector | $ | - |
| Pacific Mortgage Exchange | $ | 127,000.00 |
| | $ | 127,000.00 |

San Marino Property

| | | |
|---|---|---|
| Royal Business Bank | $ | 1,100,000.00 |
| Corona Capital | $ | 540,000.00 |
| DNQ | $ | 420,000.00 |
| | $ | 2,060,000.00 |

Van Nuys Property

| | | |
|---|---|---|
| Los Angeles County Tax Collector | $ | - |
| Investment Management Co. | $ | 350,000.00 |
| Michael and Sheri Dorff | $ | 50,000.00 |
| | $ | 400,000.00 |

| | | |
|---|---|---|
| **Total Secured Debt** | **$ 11,940,009.29** | |
| **Available Equity in Real Properties To Administer** | **$** | **689,600.00** |

**Less Chapter 7 Administrative Expenses (Estimated)**

| | | |
|---|---|---|
| Chapter 7 Trustee Statutory Fees | $ | 82,312.60 |
| Chapter 7 Trustee Legal Fees | $ | 150,000.00 |
| Broker Commissions | $ | 163,830.00 |
| | $ | 396,142.60 |

**Less Prepetition Priority Tax Claims**

| | | |
|---|---|---|
| Internal Revenue Service | $ | 28,700.70 |

| | | |
|---|---|---|
| **Balance Available to Pay General Unsecured Claims in Chapter 7** | **$** | **264,756.70** |

| | CLAIM AMOUNT | Effective Date | 2022 Sep. | 2022 Oct. | 2022 Nov. | 2022 Dec. |
|---|---|---|---|---|---|---|
| **OPENING CASH BALANCE** | | -- | $ 3,905,349.30 | $ 3,793,561.23 | $ 3,681,773.16 | $ 3,569,985.09 |
| **REVENUE** | | | | | | |
| Sale or Refinance of Los Angeles Properties | | $ 250,000.00 | $ - | $ - | $ - | $ - |
| Sale of Van Nuys Property | | | $ - | $ - | $ - | $ - |
| Capital Contributions by Jianjing Yang | -- | $ 4,000,000.00 | $ - | $ - | $ - | $ - |
| | | $ 4,000,000.00 | | | | |
| **OPERATING EXPENSES** | | | | | | |
| Developer Expenses | | | | | | |
| State Court Litigation Expenses (Paid to SLC Outside of Plan) | | | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 |
| **PLAN PAYMENTS** | | | | | | |
| **Administrative Claims (Estimated; Subject to Court Approval)** | | | | | | |
| Shelia Langley & Chang, LLP (Debtor's Counsel) | $ 150,000.00 | 150,000.00 | | | | |
| Pachulski Stang Ziehl & Jones (Committee's Counsel) | 125,000.00 | 125,000.00 | | | | |
| Michael Carlin | - | - | | | | |
| Michael Carlin | - | - | | | | |
| Donna Bullock | - | - | | | | |
| Clerk's Office Fees | - | - | | | | |
| Office of the U.S. Trustee Fees | - | - | | | | |
| | $ 275,000.00 | 275,000.00 | | | | |
| **Priority Claims (Disputed; Unliquidated)** | | | | | | |
| Internal Revenue Service | 28,700.70 | 28,700.70 | | | | |
| Teela Capital Group | 13,650.00 | 13,650.00 | | | | |
| Home Loans Unlimited, Inc. | 13,650.00 | 13,650.00 | | | | |
| Shawn Charles Sourgose | 13,650.00 | 13,650.00 | | | | |
| | $ 69,650.70 | 69,650.70 | | | | |
| **Secured Claims (Collateral)** | | | | | | |
| Class 1 - LA County (Los Angeles Properties) | 141,619.20 | - | $ - | $ - | $ - | $ 141,619.20 |
| Class 2 - Royalty Equity Lending, LLC (Los Angeles Properties) | 9,335,000.00 | - | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 |
| Class 3 - LA County (Paradise Drive Lot) | 7,559.50 | - | $ - | $ - | $ - | $ 7,559.50 |
| Class 4 - Investeloans Capital (Paradise Drive Lot) | 124,653.99 | - | | | | |
| Class 5 - Royal Business Bank (San Marino Property) | 1,100,000.00 | - | | | | |
| Class 6 - Corona Capital (San Marino Property) | 540,000.00 | - | | | | |
| Class 7 - DMG (San Marino Property) | 420,000.00 | - | | | | |
| Class 8 - LA County (Van Nuys Property) | 7,527.20 | - | $ - | $ - | $ - | $ 7,527.20 |
| Class 9 - Investment Management Co. (Van Nuys Property) | 350,000.00 | - | | | | |
| Class 10 - Michael & Sherri Dorff (Van Nuys Property) | 50,000.00 | - | | | | |
| | | $ - | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 228,493.97 |
| **Unsecured Claims** | | | | | | |
| **Class 11A - General Unsecured Claims** | | | | | | |
| Betty Zheng | 95,000.00 | | $ - | $ - | $ - | $ - |
| Betula Lenta Inc. | 1,643,977.00 | | $ - | $ - | $ - | $ - |
| Craig Fry and Associates | 240,760.47 | | $ - | $ - | $ - | $ - |
| Home Loans Unlimited, Inc. | 672,900.00 | | $ - | $ - | $ - | $ - |
| Land Design Consultants | 48,145.00 | | $ - | $ - | $ - | $ - |
| Pennington Construction Advisors Inc. | 75,000.00 | | $ - | $ - | $ - | $ - |
| Royalty Equity Lending, LLC | 18,009.29 | | $ - | $ - | $ - | $ - |
| Shawn Charles Sourgose | 672,900.00 | | $ - | $ - | $ - | $ - |
| Teela Capital Group | 672,900.00 | | $ - | $ - | $ - | $ - |
| The Phalanx Group | 158,845.00 | | $ - | $ - | $ - | $ - |
| UltraSystems Environmental | 37,106.50 | | $ - | $ - | $ - | $ - |
| Jianjing Yang | - | | $ - | $ - | $ - | $ - |
| **Class 11B - Subordinated Unsecured Claims** | 4,335,483.26 | | | | | |
| **CLOSING CASH BALANCE** | $ 43,523,255.42 | $ 3,905,349.30 | $ 3,793,561.23 | $ 3,681,773.16 | $ 3,569,985.09 | $ 3,301,491.12 |

In re Jinzheng Group (USA), LLC, Case No. 2:21-bk-16674-ER
Exhibit 4 - Summary of Plan Payments

| | CLAIM AMOUNT | 2023 Jan. | Feb. | Mar. | Apr. | May | Jun. | Jul. | Aug. | Sep. | Oct. | Nov. | Dec. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OPENING CASH BALANCE | | 3,301,491.12 | 3,189,703.05 | 3,077,914.98 | 3,409,421.01 | 3,297,632.94 | 3,185,844.87 | 3,574,056.80 | 3,462,268.73 | 3,350,480.66 | 3,238,692.59 | 3,126,904.52 | 3,015,116.45 |
| **REVENUE** | | | | | | | | | | | | | |
| Sale or Refinance of Los Angeles Properties | -- | | | | | | | | | | | | |
| Sale of Van Nuys Properties | -- | | | 600,000.00 | | | 500,000.00 | | | | | | |
| Capital Contributions by Jianjing Yang | | | | | | | 500,000.00 | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| Developer Expenses | | | | | | | | | | | | | |
| State Court Litigation Expenses (Paid to SLC Outside of Plan) | | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 |
| **PLAN PAYMENTS** | | | | | | | | | | | | | |
| **Administrative Claims (Estimated, Subject to Court Approval)** | | | | | | | | | | | | | |
| Sheila Langley & Chang, LLP (Debtor's Counsel) | 150,000.00 | | | | | | | | | | | | |
| Pachulski Stang Ziehl & Jones (Committee's Counsel) | 125,000.00 | | | | | | | | | | | | |
| Michael Carlin | - | | | | | | | | | | | | |
| Michael Carlin | - | | | | | | | | | | | | |
| Donna Bullock | - | | | | | | | | | | | | |
| Clerk's Office Fees | - | | | | | | | | | | | | |
| Office of the U.S. Trustee Fees | - | | | | | | | | | | | | |
| | 275,000.00 | | | | | | | | | | | | |
| **Priority Claims (Disputed, Unliquidated)** | | | | | | | | | | | | | |
| Internal Revenue Service | 28,700.70 | | | | | | | | | | | | |
| Teeta Capital Group | 13,650.00 | | | | | | | | | | | | |
| Home Loans Unlimited, Inc. | 13,650.00 | | | | | | | | | | | | |
| Shawn Charles Sourgose | 13,650.00 | | | | | | | | | | | | |
| | 69,650.70 | | | | | | | | | | | | |
| **Second Claims (Collateral)** | | | | | | | | | | | | | |
| Class 1 - LA County (Los Angeles Properties) | 141,619.20 | | | 141,619.20 | | | | | | | | | 141,619.20 |
| Class 2 - Royalty Equity Lending, LLC (Los Angeles Properties) | 9,335,000.00 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 |
| Class 3 - LA County (Paradise Drive Lots) | 7,559.50 | | | 7,559.50 | | | | | | | | | 7,559.50 |
| Class 4 - Investindexia Capital (Paradise Drive Lots) | 124,633.99 | | | | | | | | | | | | |
| Class 5 - Royal Business Bank (San Marino Property) | 1,100,000.00 | | | | | | | | | | | | |
| Class 6 - Corona Capital (San Marino Property) | 540,000.00 | | | | | | | | | | | | |
| Class 7 - DMG (San Marino Property) | 420,000.00 | | | | | | | | | | | | |
| Class 8 - LA County (Van Nuys Property) | 7,527.20 | | | 7,527.20 | | | | | | | | | |
| Class 9 - Investment Management Co. (Van Nuys Property) | 350,000.00 | | | | | | | | | | | | |
| Class 10 - Michael & Sherri Darff (Van Nuys Property) | 50,000.00 | | | | | | | | | | | | |
| | | 71,788.07 | 71,788.07 | 228,493.97 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 220,966.77 |
| **Unsecured Claims** | | | | | | | | | | | | | |
| **Class 11 - General Unsecured Claims** | | | | | | | | | | | | | |
| Betty Zheng | 95,000.00 | | | | | | | | | | | | |
| Betula Lenta Inc. | 1,643,977.00 | | | | | | | | | | | | |
| Craig Fry and Associates | 240,000.67 | | | | | | | | | | | | |
| Home Loans Unlimited, Inc. | 672,900.00 | | | | | | | | | | | | |
| Land Design Consultants | 48,145.00 | | | | | | | | | | | | |
| Pennington Construction Advisors Inc. | 75,000.00 | | | | | | | | | | | | |
| Royalty Equity Lending, LLC | 18,000.29 | | | | | | | | | | | | |
| Shawn Charles Sourgose | 672,900.00 | | | | | | | | | | | | |
| Teeta Capital Group | 672,900.00 | | | | | | | | | | | | |
| The Phalanx Group | 158,845.00 | | | | | | | | | | | | |
| UltraSystems Environmental | 37,106.50 | | | | | | | | | | | | |
| Jianjing Yang | - | | | | | | | | | | | | |
| Class 11b - Subordinated Unsecured Claims | 4,316,483.26 | | | | | | | | | | | | |
| | 43,523,255.42 | | | | | | | | | | | | |
| CLOSING CASH BALANCE | | 3,189,703.05 | 3,077,914.98 | 3,409,421.01 | 3,297,632.94 | 3,185,844.87 | 3,574,056.80 | 3,462,268.73 | 3,350,480.66 | 3,238,692.59 | 3,126,904.52 | 3,015,116.45 | 2,754,149.68 |

| | CLAIM AMOUNT | 2024 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Jan. | Feb. | Mar. | Apr. | May | Jun. | Jul. | Aug. | Sep. | Oct. | Nov. | Dec. |
| **OPENING CASH BALANCE** | – | 2,754,169.68 | 2,642,361.61 | 2,530,573.54 | 2,269,606.77 | 2,157,818.70 | 2,086,030.63 | 2,014,242.56 | 1,942,454.49 | 1,870,666.42 | 1,798,878.35 | 1,727,090.28 | 1,655,302.21 |
| **REVENUE** | | | | | | | | | | | | | |
| Sale or Refinance of Los Angeles Properties | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Sale of Van Nuys Properties | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Capital Contributions by Jianjing Yang | – | – | – | – | – | – | – | – | – | – | – | – | – |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| Developer Expenses | – | – | – | – | – | – | – | – | – | – | – | – | – |
| State Court Litigation Expenses (Paid to SLC Outside of Plan) | – | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | – | – | – | – | – | – | – | – |
| **PLAN PAYMENTS** | | | | | | | | | | | | | |
| **Administrative Claims (Estimated, Subject to Court Approval)** | | | | | | | | | | | | | |
| Sheela Langley & Chang, LLP (Debtor's Counsel) | 150,000.00 | | | | | | | | | | | | |
| Pachulski Stang Ziehl & Jones (Committee's Counsel) | 125,000.00 | | | | | | | | | | | | |
| Michael Carlin | – | | | | | | | | | | | | |
| Michael Carlin | – | | | | | | | | | | | | |
| Donna Bullock | – | | | | | | | | | | | | |
| Clerk's Office Fees | – | | | | | | | | | | | | |
| Office of the U.S. Trustee Fees | – | | | | | | | | | | | | |
| | 275,000.00 | | | | | | | | | | | | |
| **Priority Claims (Disputed, Unliquidated)** | | | | | | | | | | | | | |
| Internal Revenue Service | 28,700.70 | | | | | | | | | | | | |
| Testa Capital Group | 13,650.00 | | | | | | | | | | | | |
| Home Loans Unlimited, Inc. | 13,650.00 | | | | | | | | | | | | |
| Shawn Charles Sourgose | 13,650.00 | | | | | | | | | | | | |
| | 69,650.70 | | | | | | | | | | | | |
| **Second Claims (Collateral)** | | | | | | | | | | | | | |
| Class 1 - LA County (Los Angeles Properties) | 141,619.20 | | | 141,619.20 | | | | | | | | | 141,619.20 |
| Class 2 - Royalty Equity Lending, LLC (Los Angeles Properties) | 9,335,000.00 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 |
| Class 3 - LA County (Paradise Drive Lots) | 7,559.50 | | | 7,559.50 | | | | | | | | | 7,559.50 |
| Class 4 - Breezehollows Capital (Paradise Drive Lot) | 124,653.99 | | | | | | | | | | | | |
| Class 5 - Royal Business Bank (San Marino Property) | 1,100,000.00 | | | | | | | | | | | | |
| Class 6 - Corona Capital (San Marino Property) | 540,000.00 | | | | | | | | | | | | |
| Class 7 - DMG (San Marino Property) | 420,000.00 | | | | | | | | | | | | |
| Class 8 - LA County (Van Nuys Property) | 7,527.20 | | | | | | | | | | | | |
| Class 9 - Investment Management Co. (Van Nuys Property) | 350,000.00 | | | | | | | | | | | | |
| Class 10 - Michael & Sherri Dorff (Van Nuys Property) | 50,000.00 | | | | | | | | | | | | |
| | | 71,788.07 | 71,788.07 | 220,966.77 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 220,966.77 |
| **Unsecured Claims** | | | | | | | | | | | | | |
| Class 11 - General Unsecured Claims | | | | | | | | | | | | | |
| Betty Zheng | 95,000.00 | | | | | | | | | | | | |
| Betula Lenta Inc. | 1,643,977.00 | | | | | | | | | | | | |
| Craig Fry and Associates | 240,000.67 | | | | | | | | | | | | |
| Home Loans Unlimited, Inc. | 672,900.00 | | | | | | | | | | | | |
| Land Design Consultants | 48,145.00 | | | | | | | | | | | | |
| Pennington Construction Advisors Inc. | 75,000.00 | | | | | | | | | | | | |
| Royalty Equity Lending, LLC | 18,000.29 | | | | | | | | | | | | |
| Shawn Charles Sourgose | 672,900.00 | | | | | | | | | | | | |
| Testa Capital Group | 672,900.00 | | | | | | | | | | | | |
| The Phalanx Group | 158,845.00 | | | | | | | | | | | | |
| UltraSystems Environmental | 37,106.50 | | | | | | | | | | | | |
| Jianjing Yang | – | | | | | | | | | | | | |
| | 4,335,483.26 | | | | | | | | | | | | |
| Class 11B - Subordinated Unsecured Claims | | | | | | | | | | | | | |
| **CLOSING CASH BALANCE** | 43,523,255.42 | 2,642,361.61 | 2,530,573.54 | 2,269,606.77 | 2,157,818.70 | 2,086,030.63 | 2,014,242.56 | 1,942,454.49 | 1,870,666.42 | 1,798,878.35 | 1,727,090.28 | 1,655,302.21 | 1,434,335.44 |

In re Jinzheng Group (USA), LLC, Case No. 2:21-bk-16674-ER
Exhibit 4 - Summary of Plan Payments

| | CLAIM AMOUNT | 2025 Jan. | Feb. | Mar. | Apr. | May | June | Jul. | Aug. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **OPENING CASH BALANCE** | | $ 1,434,335.44 | $ 1,362,547.37 | $ 1,290,759.30 | $ 1,218,971.23 | $ 1,147,183.16 | $ 1,075,395.09 | $ 1,003,607.02 | $ 931,818.95 | $ 931,818.95 |
| **REVENUE** | | | | | | | | | | |
| Sale or Refinance of Los Angeles Properties | - | | | | | | | | $ 13,500,000.00 | $ 13,500,000.00 |
| Sale of Van Nuys Properties | - | | | | | | | | | $ 4,500,000.00 |
| Capital Contributions by Jiaxing Yang | - | | | | | | | | | $ 18,000,000.00 |
| | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 13,500,000.00 | $ 13,500,000.00 |
| **OPERATING EXPENSES** | | | | | | | | | | |
| Developer Expenses | | | | | | | | | | $ 800,000.00 |
| State Court Litigation Expenses (Paid to SLC Outside of Plan) | | | | | | | | | | |
| **PLAN PAYMENTS** | | | | | | | | | | |
| **Administrative Claims (Estimated; Subject to Court Approval)** | | | | | | | | | | |
| Shoola Langley & Chang, LLP (Debtor's Counsel) | $ 150,000.00 | | | | | | | | $ 150,000.00 | $ 150,000.00 |
| Pachulski Stang Ziehl & Jones (Committee's Counsel) | $ 125,000.00 | | | | | | | | $ 125,000.00 | $ 125,000.00 |
| Michael Carlin | $ - | | | | | | | | $ - | $ - |
| Michael Carlin | $ - | | | | | | | | $ - | $ - |
| Donna Bullock | $ - | | | | | | | | $ - | $ - |
| Clerk's Office Fees | $ - | | | | | | | | $ - | $ - |
| Office of the U.S. Trustee Fees | $ - | | | | | | | | $ - | $ - |
| | $ 275,000.00 | | | | | | | | $ - | $ 275,000.00 |
| **Priority Claims (Disputed, Unliquidated)** | | | | | | | | | | |
| Internal Revenue Service | $ 28,700.70 | | | | | | | | | $ 28,700.70 |
| Teeta Capital Group | $ 13,650.00 | | | | | | | | | $ 13,650.00 |
| Home Loans Unlimited, Inc. | $ 13,650.00 | | | | | | | | | $ 13,650.00 |
| Shawn Charles Sourgose | $ 13,650.00 | | | | | | | | | $ 13,650.00 |
| | $ 69,650.70 | | | | | | | | | $ 69,650.70 |
| **Second Claims (Collateral)** | | | | | | | | | | |
| Class 1 - LA County (Los Angeles Properties) | $ 141,619.20 | | | | | | | | | $ 708,096.00 |
| Class 2 - Royalty Equity Lending, LLC (Los Angeles Properties) | $ 9,335,000.00 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 9,104,028.35 | $ 11,616,610.80 |
| Class 3 - LA County (Paradise Drive Lots) | $ 7,559.50 | | | | | | | | | $ 37,797.50 |
| Class 4 - Breezehomes Capital (Paradise Drive Lots) | $ 124,603.99 | | | | | | | | | $ - |
| Class 5 - Royal Business Bank (San Marino Property) | $ 1,100,000.00 | | | | | | | | | $ - |
| Class 6 - Corona Capital (San Marino Property) | $ 540,000.00 | | | | | | | | | $ - |
| Class 7 - DMG (San Marino Property) | $ 420,000.00 | | | | | | | | | $ - |
| Class 8 - LA County (Van Nuys Property) | $ 7,527.20 | | | | | | | | | $ 15,054.40 |
| Class 9 - Investment Management Co. (Van Nuys Property) | $ 350,000.00 | | | | | | | | | $ - |
| Class 10 - Michael & Sherri Dorff (Van Nuys Property) | $ 50,000.00 | | | | | | | | | $ - |
| | | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 9,104,028.35 | $ 12,377,558.70 |
| **Unsecured Claims** | | | | | | | | | | |
| **Class 11A - General Unsecured Claims** | | | | | | | | | | |
| Betty Zheng | $ 95,000.00 | | | | | | | | $ 95,000.00 | $ 95,000.00 |
| Betula Lenta Inc. | $ 1,643,977.00 | | | | | | | | $ 1,643,977.00 | $ 1,643,977.00 |
| Cradle Fly and Associates | $ 240,700.47 | | | | | | | | $ 240,700.47 | $ 240,700.47 |
| Home Loans Unlimited, Inc. | $ 672,900.00 | | | | | | | | $ 672,900.00 | $ 672,900.00 |
| Land Design Consultants | $ 48,145.00 | | | | | | | | $ 48,145.00 | $ 48,145.00 |
| Pennsylvania Construction Advisors Inc. | $ 75,000.00 | | | | | | | | $ 75,000.00 | $ 75,000.00 |
| Royalty Equity Lending, LLC | $ 18,009.29 | | | | | | | | $ 159,628.49 | $ 159,628.49 |
| Shawn Charles Sourgose | $ 672,900.00 | | | | | | | | $ 672,900.00 | $ 672,900.00 |
| Teeta Capital Group | $ 672,900.00 | | | | | | | | $ 672,900.00 | $ 672,900.00 |
| The Phelan Group | $ 158,845.00 | | | | | | | | $ 158,845.00 | $ 158,845.00 |
| UltraSystems Environmental | $ 37,106.50 | | | | | | | | $ 37,106.50 | $ 37,106.50 |
| | $ 4,335,483.26 | | | | | | | | $ - | $ 4,477,102.46 |
| **Class 11B - Subordinated Unsecured Claims** | | | | | | | | | | |
| Jianjong Yang | | | | | | | | | | $ - |
| **CLOSING CASH BALANCE** | $ 43,523,255.42 | $ 1,362,547.37 | $ 1,290,759.30 | $ 1,218,971.23 | $ 1,147,183.16 | $ 1,075,395.09 | $ 1,003,607.02 | $ 931,818.95 | $ 850,688.14 | |