1 | **ALLAN D. SARVER** SBN 106282
Attorney at Law
2 | 16000 Ventura Boulevard
Suite 1000
3 | Encino, California 91436

4 | Telephone No.: (818) 981-0581
Facsimile No.: (818) 981-0026
5 | Email: ads@asarverlaw.com

6 | Attorney for Secured Creditors
Investment Management Company, LLC

7 |

8 |

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **LOS ANGELES DIVISION**

12 |

13 | IN RE:

14 | JINZHENG GROUP (USA) LLC

15 |

16 |

17 |                    Debtors

18 |

19 |

20 |

21 |

| ) |
| ) | Chapter 11 |
| ) | Case No.: 2:21-BK-16674ER |
| ) |
| ) | OPPOSITION TO DEBTOR'S |
| ) | COMBINED PLAN OF |
| ) | REORGANIZATION AND DISCLOSURE |
| ) | STATEMENT DATED MAY 4, 2022 |
| ) |
| ) |
| ) |
| ) |
| ) | Date:  June 15, 2022 |
| ) | Time:  10:00 a.m. |
| ) | Place: 1568 |
|   |        255 E. Temple Street |
|   |        Los Angeles, CA. 90012 |

22 |

23 | TO: ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE

24 | DEBTOR, AND ALL OTHER INTERESTED PARTIES:

25 |     **Comes Now** Investment Management Company, LLC in

26 | opposition to Debtor Jinzheng Group (USA) LLC's Chapter 11

27 | Plan of Reorganization (hereinafter "Plan").

28 | Opposition to Debtor's Plan of Reorganization                    1

I. STATEMENT OF FACTS:

1. Investment Management Company, LLC ("IMC") is a secured creditor of Debtor and payee of a promissory note secured by second deed of trust which encumbers the real property commonly known as 6840 De Celis Place, Unit 9, Van Nuys, California 91406 (the "Property").

2. IMC filed its proof of claim (Claim No. 5) on November 9, 2021, which reflects a principal amount due of $350,000.00, together with interest at the default rate of 24%, together with late charges, attorney fees and costs.  The balance due as of November 17, 2021 was $362,390.00.  A true and correct copy of said proof of claim is Exhibit "A" hereto.

3. As of the date of this Objection, no payments have been made by the Debtor and the Debtor has not sought to employ a broker to market and sell the Property.

A. The treatment of the IMC Claim under Class 9 (Plan, at Page 18) is as follow:

"Impaired: YES

Treatment: Within sixty days of the Effective Date, the Reorganized Debtor shall pay the Class 9 Claim in full; however, all interest accrued after the Petition Date shall be at the rate of 18% per annum instead of the contractual rate. The lien securing the Class 9 Claim shall release upon payment in full.

In addition to these payment obligations, the Reorganized Debtor shall remain current on all property taxes and

Opposition to Debtor's Plan of Reorganization          2

1  homeowner's association dues accrued by the Van Nuys

2  Property. The holder of the Class 9 Claim may request from the

3  Reorganized Debtor proof that all such obligations are current

4  and in good standing. Such request shall be made

5  in writing to the Reorganized Debtor's counsel. Within ten

6  (10) business days after receipt of such request, the

7  Reorganized Debtor shall provide to proof that all applicable

8  property taxes and homeowner's association dues

9  accrued by the Van Nuys Property are current and in good

10  standing.

11  **A.    The IMC Objections:**

12      *A. The IMC Lien Survives Confirmation and Binds the*

13  *Reorganized Debtor.*

14      While the Plan implies that the IMC lien will survive the

15  chapter 11 plan confirmation, specific language should be

16  included such that the IMC lien will survive confirmation,

17  unaltered.

18      The Plan at Section V(B) should provide: Effect of

19  Confirmation should unequivocally state that confirmation of

20  the Plan revests all of the property of the estate in the

21  Reorganized Debtor with liens and encumbrances of recorded,

22  unmodified.

23  **III.    CONCLUSION:**

24      For all of the foregoing reasons, it is respectfully

25  requested that unless the Debtor modifies its proposed Plan

26  consistent with the within objections that the Court deny

27

28  Opposition to Debtor's Plan of Reorganization          3

1  confirmation of the proposed chapter 11 plan and enter an

2  order dismissing the proceeding.

3

4  Dated: May 27, 2022                LAW OFFICE OF ALLAN D. SARVER

5

6                                     ALLAN D. SARVER,
                                       Attorney for Secured Creditor
7                                     Investment Management Company,
                                       LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  Opposition to Debtor's Plan of Reorganization          4

**EXHIBIT A**

Central District of California

Notice of Electronic Claims Filing

The following transaction was received from Sarver, Allan on 11/9/2021 at 4:40 PM PST

File another claim

| | |
|---|---|
| **Case Name:** | JINZHENG GROUP (USA) LLC |
| **Case Number:** | 2:21-bk-16674-ER |
| **Creditor Name:** | Investment Management Company<br>1507 7th Street, #344<br>Santa Monica, CA 90401 |
| **Claim Number:** | 5   Claims Register |

**Amount Claimed:** $350,000.00
**Amount Secured:** $350000.00
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**FiledProofofClaim110921.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=11/9/2021] [FileNumber=101422417
] [0e453a36ac06d188f1614b349c6350d9eeb31fe5e8a1d7dfecfabbbbf776446b9
b85121272525e9e74da87806ccae1cd383c34e2236986a9658faae725eaad]]

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | JINZHENG GROUP (USA) LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:21-BK-16674-ER |

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:  Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | INVESTMENT MANAGEMENT COMPANY, LLC <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes.  From whom? _____ |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Investment Management Company LLC <br> Name <br> 1507 7th Street #344 <br> Number    Street <br> Santa Monica        CA        90401 <br> City        State        ZIP Code <br><br> Contact phone 310-395-4620 <br><br> Contact email brian@imcproperty.com <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _ | **Where should payments to the creditor be sent?** (if different) <br><br> Name <br> Number    Street <br> City        State        ZIP Code <br><br> Contact phone _____ <br><br> Contact email _____ |
| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____ <br><br> Filed on _____ <br> MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

---

**7. How much is the claim?**  $ ___*350,000.00___  **Does this amount include interest or other charges?**

*Beginning 9/1/2021 interest at default rate -24% plus late charges, attorneys fees and costs Balance due as of 11/1/21 $362,390.00

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Promissory Note and Deed of Trust

---

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe:  6840 DeCelis Pl. #9, Van Nuys, CA. 91406

**Basis for perfection:**  Promissory Note Secured by Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $ ___660,000.00___

Amount of the claim that is secured:  $ ___350,000.00___ *Continuing interest costs and atttorneys fees.

Amount of the claim that is unsecured:  $ ___0.00___ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $ ___350,000.00___

**Annual Interest Rate** (when case was filed) ___12.00___ %
☑ Fixed  Note due in full 9/1/2021. Default rate: 24%
☐ Variable  at 9/1/2021.

---

**10. Is this claim based on a lease?**

☐ No
☑ Yes. **Amount necessary to cure any default as of the date of the petition.**  $ _____

---

**11. Is this claim subject to a right of setoff?**

☐ No
☐ Yes. Identify the property: _____

---

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check all that apply:

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$ _____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  11 / 09 / 2021
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

Name        BRIAN BOREN
            First name        Middle name        Last name

Title       DIRECTOR OF ACQUISITIONS

Company     INVESTMENT MANAGEMENT COMPANY LLC
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     1507 7TH STREET, SUITE 344
            Number    Street

            SANTA MONICA            CA        90401
            City                    State     ZIP Code

Contact phone   310-395-4620        Email  brian@imcproperty.com

1 **DECLARATION OF BRIAN BOREN**

2 I, BRIAN BOREN, declare that:

3 1.  If called upon as a witness, I would testify that the

4 within declaration is true and correct of my own personal

5 knowledge.

6 2.  I am the director of acquisitions of Investment

7 Management Company, LLC, a limited liability corporation ("IMC"),

8 which is the secured creditor of the Debtor and payee of a

9 promissory note secured by a second deed of trust (the Loan

10 Documents) which encumbers the real property commonly known as

11 6840 De Celis Place, Unit 9, Van Nuys, California 91406 (the

12 "Property"). True and correct copies of the IMC promissory note

13 and deed of trust and related loan documents are Exhibits "A" and

14 "B."

15 3.  I am the custodian of records for and have personally

16 worked on the books, records and files regarding the underlying

17 loan to Debtor and which loan is secured by the Property, and as

18 to the following facts, I know them to be true of my own

19 knowledge.  All charges, fees, interest, costs and attorney fees

20 charged to the subject loan are reflected in IMC's records which

21 are maintained in the ordinary course of its business at or near

22 the time of the acts, conditions or events to which they relate.

23 4.  As of the Petition date the balance due was $350,500.00.

24 The Debtor's loan came due in full on September 1, 2021. Default

25 interest has thereafter accrued at the default interest rate of

26 24%.

27 5.  As of November 1, 2021 the outstanding loan balance due,

28 on this obligation is $362,390.00.  Said amount includes

4

1  accruing interest, attorney fees and costs as summarized on the

2  attached ledger which is Exhibit "C."

3      6.   Nothing contained herein should be construed as waiving

4  or in any manner limiting the rights of IMC with respect to any

5  rights, remedies or claims, interests or otherwise it may have as

6  same relate to the subject obligation as evidenced by the Loan

7  Documents.

8      7. The undersigned on behalf of IMC does hereby reserve the

9  right to amend or supplement in any manner this Proof of Claim

10 for all purposes including the assertion of additional proofs of

11 claims or amendments hereto as later discovered information

12 provides a basis therefor.

13     8.   I declare under penalty of perjury that the foregoing is

14 true and correct and that this declaration was executed in the

15 City of Santa Monica, State of California on the 9 day of

16 November, 2021.

17                          BRIAN BOREN, Declarant

18

19

20

21

22

23

24

25

26

27

28

5

# EXHIBIT "A"

Loan Number: 1464

# INTEREST-ONLY PERIOD FIXED RATE NOTE

AUGUST 11, 2020                          SANTA MONICA                        CALIFORNIA
[Date]                                   [City]                             [State]

6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 350,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY                                           .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         12.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first  11  months, and then will consist of principal and interest.

I will make my monthly payment on the  1st  day of each month beginning on    OCTOBER 1   , 2020            . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on    SEPTEMBER 1, 2021      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  1507 7TH STREET #344, SANTA MONICA, CALIFORNIA 90401

                                               or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  3,500.00        for the first  11   months of this Note, and thereafter will be in the amount of U.S. $ 353,500.00       . The Note Holder will notify me prior to the date of change in monthly payment.

## 4.   BORROWER'S RIGHT TO PREPAY   ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
US3271.NOT  09/03/15                         Page 1 of 4                         DocMagic eForms
                                                                                www.docmagic.com

the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of          5 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000** % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
US3271.NOT  09/03/15                                    Page 2 of 4                    DocMagic eForms
                                                                                    www.docmagic.com



## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
US3271.NOT  09/03/15                                        Page 3 of 4                                        DocMagic *eForms*
www.docmagic.com

9

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____ (Seal)          _____ (Seal)
BETTY ZHENG                   -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                      -Borrower


*[Sign Original Only]*

——————————————————— [Space Above This Line For Recording Data] ———————————————————

Loan Number: 1464

# BALLOON RIDER

THIS BALLOON RIDER is made this 11th day of AUGUST 2020                    , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note (the "Note") to INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or
anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE
PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS
UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL,
THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY
OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE
THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN
AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM
THE SAME LENDER.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

**JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

8-12-2020

| Borrower BETTY ZHENG | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

MULTISTATE BALLOON RIDER
04/26/04                                     Page 2 of 2                          DocMagic eForms
                                                                                  www.docmagic.com

12

Loan Number: 1464

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 11th day of AUGUST, 2020 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss
in addition to the other hazards for which insurance is required by Section 5.

13

**E.  "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F.  BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G.  ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

14

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

    **I.  CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____(Seal)
BETTY ZHENG                              -Borrower

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01              Page 3 of 3                      *DocMagic eForms*

Loan Number: 1464

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 11th day of            AUGUST, 2020            ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for
property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

---

MULTISTATE CONDOMINIUM RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                    Page 1 of 3

DocMagic *eForms*

16

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11       .

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

17

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
BETTY ZHENG                    -Borrower

Loan Number: 1464

# DEFAULT INTEREST RATE RIDER

**The last sentence of Paragraph 2 of the Note is hereby deleted and the following provisions are substituted in its place in the Note, and added to the Mortgage or Security Agreement:**

## EXTENDED DEFAULT

If, for any reason, (1) I fail to make a full monthly payment on or before the last day of the month in which said monthly payment is due; or (2) I fail to pay the entire amount due on my loan on the maturity date or other date on which I am required to make immediate payment in full of the entire amount due on my loan, whether by reason of acceleration of my loan or otherwise, or (3) I fail to perform any of my obligations under the loan note or the Mortgage (Security Instrument); or (4) If this is a loan on a cooperative apartment unit, the (Collateral Note and Security Agreement) for more than thirty (30) days, then my loan, and any other connected or related loan held by you, will be in Extended Default, and I will be obligated to pay interest at the Default Interest Rate, as set forth below.

## DEFAULT INTEREST RATE

If I am in Extended Default, as described above, the interest rate on my loan, and on any other connected or related loan held by you (Note Holder), will be increased to      24.000 % per annum (the "Default Interest Rate") without prior notice to me, until either of the following two events occurs: (1) all amounts which are due and unpaid on the loan, including monthly payments and charges due (including interest at the Default Interest Rate imposed hereunder), are paid in full, and all other defaults under the loan documents have been cured, provided that the loan has not matured, by acceleration or otherwise, and I have complied with all requirements contained in the loan documents to correct defaults; or (2) the entire amount due on the loan, including all principal, interest (including interest at the Default Interest Rate imposed hereunder) and all other amounts and charges due, are paid in full.  Interest at the Default Interest Rate will be charged from the first day of the month immediately following the month in which any monthly payment in Extended Default was due, or from the date of the occurrence of any other event which causes my loan to be in Extended Default.  Accrual of interest at the Default Interest Rate shall be in addition to, and not in place of, any late fees or charges, or any other charges which may become due under the loan documents.  In no event shall I be required to pay interest at an interest rate greater than the maximum interest rate permitted by law, or interest at the Default Interest Rate for a period greater than permitted by law.  In the event that you determine that interest at the Default Interest Rate is in excess of the above requirements, such excess will be credited to reduce the principal balance due on the loan.  You may, at your option, notify me of the increase of the interest rate on my loan due to the Default Interest Rate, and the increased monthly payment due by reason of the application of the Default Interest Rate, on subsequent monthly billing statements.

DEFAULT INTEREST RATE RIDER
DIRR.MSC  08/21/12

Page 1 of 2

*DocMagic eForms*
*www.docmagic.com*

(9

I agree to the terms of this Default Interest Rate Rider.

**JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

_____  8-12-2020  _____
Borrower BETTY ZHENG          Date      Borrower                    Date


_____           _____
Borrower                      Date      Borrower                    Date


_____           _____
Borrower                      Date      Borrower                    Date

DEFAULT INTEREST RATE RIDER
DIRR.MSC  08/21/12                    Page 2 of 2                    DocMagic eForms
                                                                     www.docmagic.com

20

# PREPAYMENT RIDER

Loan Number:  1464

Date: AUGUST 11, 2020

Borrower(s):  JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED
LIABILITY COMPANY

      THIS PREPAYMENT RIDER (the "Rider") is made this  11th  day of  AUGUST  ,
2020  , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY
COMPANY
("Lender").  The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

      6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406
[Property Address]

      ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   PREPAYMENT CHARGE

The Note provides for the payment of a prepayment charge as follows:

### 4  . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

      I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment."  When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so.  I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

      The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note.  However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.

      If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment.  However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

      If within  SIX  (  6  ) months from the date the Security
Instrument is executed I make a full Prepayment or one or more partial Prepayments, and
the total of all such Prepayments in any 12-month period exceeds  TWENTY
percent (  20.000  %) of the original principal amount of the loan, I will pay a

21

Prepayment charge in an amount equal to  SIX        (    6    ) months' advance
interest on the amount by which the total of my Prepayments within any 12-month period
exceeds  TWENTY                percent (    20.000 %) of the original principal
amount of the loan.

     If the Note contains provisions for a variable interest rate, the purpose of the loan
is to finance the purchase or construction of real property containing four or fewer
residential units or on which four or fewer residential units are to be constructed, and the
Note Holder is not a "supervised financial organization," as defined in California Civil
Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment
charge within 90 days of notification of any increase in the rate of interest.

     Notwithstanding the foregoing provisions, I may make a full Prepayment without
paying a Prepayment charge in connection with a bona fide and arms-length sale of all or
any part of, or any legal or beneficial interest in, the Property  within   the first  6
months of the term of the Note.  The phrase "bona fide and arms-length sale" means a sale
in which all of the parties involved in the transaction, including without limitation, the
buyer, seller, lender, real estate agent or broker, are independent of one another and
unrelated by familial or financial interests.  I agree to provide the Note Holder with any
and all evidence reasonably requested by the Note Holder to substantiate that the sale of
the Property is bona fide and arms-length.

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Rider.

**JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY
COMPANY**

_____ (Seal)        _____ (Seal)
BETTY ZHENG              -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                -Borrower

22

# EXHIBIT "B"

23

Recording Requested By:
INVESTMENT MANAGEMENT COMPANY, LLC

And After Recording Return To:
INVESTMENT MANAGEMENT
COMPANY, LLC
1507 7TH STREET #344
SANTA MONICA, CALIFORNIA 90401
Loan Number: 1464

*This is to certify that this is a true*

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated          AUGUST 11, 2020          , together with all Riders to this document.
**(B)** "Borrower" is JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY BORROWER'S ADDRESS IS 100 EAST HUNTINGTON DRIVE 207, ALHAMBRA, CALIFORNIA 91801.


Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is  INVESTMENT MANAGEMENT COMPANY, LLC

Lender is a          CALIFORNIA LIMITED LIABILITY COMPANY          organized and existing under the laws of                    CALIFORNIA
Lender's address is   1507 7TH STREET #344, SANTA MONICA, CALIFORNIA 90401

Lender is the beneficiary under this Security Instrument.
**(D)** "Trustee" is  SBS TRUST DEED NETWORK, A CALIFORNIA CORPORATION
31194 LA BAYA DRIVE, SUITE 106, WESTLAKE VILLAGE, CALIFORNIA 91362

**(E)** "Note" means the promissory note signed by Borrower and dated          AUGUST 11, 2020
The Note states that Borrower owes Lender  THREE HUNDRED FIFTY THOUSAND AND 00/100
                                        Dollars (U.S. $ 350,000.00          )

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005  1/01

*DocMagic eForms*
*www.docmagic.com*

Page 1 of 15

24

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **SEPTEMBER 1, 2021** .

(F)    **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G)    **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)    **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☒ Balloon Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Second Home Rider |
| ☒ Condominium Rider | ☒ Other(s) [specify]  `Default Interest Rate Rider,` `Prepayment Rider` |

(I)    **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)    **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)    **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)    **"Escrow Items"** means those items that are described in Section 3.

(M)    **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)    **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|                        |      |                                  |   |
|------------------------|------|----------------------------------|---|
| **COUNTY**             | of   | **LOS ANGELES**                  | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2225-001-043

which currently has the address of   **6840 DE CELIS PLACE #9**

[Street]

| **LOS ANGELES** | , California | **91406** | ("Property Address"): |
|-----------------|--------------|-----------|------------------------|
| [City] | | [Zip Code] | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights

*DocMagic eForms*
*www.docmagic.com*

hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

---

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

29

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for

30

Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums

31

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

32

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**'16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such

other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

34

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

### NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

36

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____        8-12-2020
Borrower **BETTY ZHENG**                              Date

_____        _____
Witness                                                          Witness

37

———————————————— [Space Below This Line For Acknowledgment] ————————————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of  __CALIFORNIA__  )

County of __LOS ANGELES__  )

On __8/12/20 20__ before me, _Brooke O. Rodrigue, Notary Public_
  Date           Here Insert Name and Title of the Notarizing Officer

personally appeared __BETTY ZHENG__ _____

_____

_____ ,

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



BROOKE D. RODRIGUEZ
Notary Public - California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023

Notary Seal

_Signature of Notary Public_

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005  1/01
        Page 15 of 15

DocMagic eForms
www.docmagic.com

38

# EXHIBIT A
## LEGAL DESCRIPTION

PARCEL 1:

AN UNDIVIDED ONE-THIRTY SIXTH (1/36TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND
TO THE COMMON AREA OF MODULE "A" OF LOT 1 OF TRACT NO. 62442, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES AS PER MAP RECORDED IN BOOK 1331, PAGES 20 THROUGH 21,
INCLUSIVE, OF MAPS, AS SHOWN ON THAT CERTAIN CONDOMINIUM PLAN FOR MODULES "A" AND "B"
OF SAID LOT 1 OF TRACT NO. 62442, WHICH CONDOMINIUM PLAN WAS RECORDED ON MAY 31, 2007,
AS INSTRUMENT NO. 07-1312424 AND AMENDED BY DOCUMENT RECORDED MARCH 21, 2008 AS
INSTRUMENT NO. 08-489155, ("CONDOMINIUM PLAN") ALL IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.


EXCEPT THEREFROM THE UNITS AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL 2:

UNIT NO. 9, OF SAID MODULE "A" OF LOT NO. 1 OF TRACT NO. 62442, AS SHOWN AND DESCRIBED IN
SAID CONDOMINIUM PLAN. RESERVING FROM SAID PARCELS 1 AND 2 ABOVE, FOR THE BENEFIT OF
GRANTOR, ITS SUCCESSORS IN INTEREST, AND OTHERS, EASEMENTS FOR ACCESS, USE,
ENJOYMENT, DRAINAGE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE
DECLARATION OF ESTABLISHMENT OF CONDITIONS, COVENANTS AND RESTRICTIONS FOR DE CELIS
COURT ("DECLARATION"), RECORDED ON 5/31, 2007 AS INSTRUMENT NO. 07-1312425, OF THE OFFICIAL
RECORDS OF LOS ANGELES COUNTY, CALIFORNIA, INCLUDING ANY AMENDMENTS THERETO, ALL OF
WHICH ARE INCORPORATED HEREIN BY THIS REFERENCE.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE,
ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES ALL AS
DESCRIBED IN THE DECLARATION RECORDED 5/31/07 AS 07-1312425; AND THE CONDOMINIUM PLAN.

39

# EXHIBIT "C"

**INVESTMENT MANAGEMENT COMPANY, LLC**
1507 7th St #344
Santa Monica, CA 90401
TEL: (310)395-4620  *  (310)395-3174 :FAX
brian@imcproperty.com

*Jinzheng Group*
11/1/21

| | | | | | | | | | Beginning Prin. Balance |
|---|---|---|---|---|---|---|---|---|---|
| | Rate | 10.00% | 24.00% | | | | | | $350,000.00 |
| | | 0.008333333 | 0.02 | | | | | | |
| | Date Due | Scheduled Payment | Default Payment | Late Charge | Advance | Total Due | Credited Payment | Still Due-Accruing | Accruing Prin. Balance |
| 1 | 9/1/21 | $3,500.00 | $0.00 | $350.00 | $0.00 | $3,850.00 | $0.00 | $3,850.00 | $353,850.00 |
| 2 | 10/1/21 | $3,500.00 | $0.00 | $350.00 | $0.00 | $3,850.00 | $0.00 | $3,850.00 | $357,700.00 |
| 3 | 11/1/21 | $3,500.00 | $0.00 | $0.00 | $0.00 | $3,500.00 | $0.00 | $3,500.00 | $361,200.00 |
| | | | | | | | | Legal Service | $1,190.00 |
| As of | 11/1/21 | $10,500.00 | $0.00 | $700.00 | $0.00 | $11,200.00 | $0.00 | $11,200.00 | $362,390.00 |

41

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16000 Ventura Blvd, Suite 1000, Encino, CA 91436

A true and correct copy of the foregoing document entitled  PROOF OF CLAIM will be  served or was  served **(a)** on the
judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On
(*date*)11/09/29/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined
that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses
stated below:
2.  **Donna C Bullock**  donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
3.  **Michael F Chekian**  mike@cheklaw.com, chekianmr84018@notify.bestcase.com
4.  **Susan Titus Collins**  scollins@counsel.lacounty.gov
5.  **Richard Girgado**  rgirgado@counsel.lacounty.gov
6.  **M. Jonathan Hayes**  jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@
rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfir
m.com
7.  **Benjamin R Levinson**  ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
8.  **Eric A Mitnick**  MitnickLaw@aol.com, mitnicklaw@gmail.com
9.  **Giovanni Orantes**  go@gobklaw.com, gorantes@orantes-
law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@n
otify.bestcase.com
10. **Matthew D. Resnik**  matt@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscill
a@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfi
rm.com;sloan@rhmfirm.com
11. **Allan D Sarver**  ADS@asarverlaw.com
12. **United States Trustee (LA)**  ustpregion16.la.ecf@usdoj.gov
13. **Hatty K Yip**  hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐  Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*)11/09/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will
be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*



**F 9013-3.1.PROOF.SERVICE**

**14. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date)11/09/2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/09/2021 | M.Swanston | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16000 Ventura Blvd., Ste. 1000, Encino, CA 91436

A true and correct copy of the foregoing document entitled (specify):  **Opposition to Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On May 27, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Donna C Bullock    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com**
- **Steven P Chang    heidi@spclawoffice.com,
schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com**
- **Michael F Chekian    mike@cheklaw.com, chekianmr84018@notify.bestcase.com**
- **Susan Titus Collins    scollins@counsel.lacounty.gov**
- **Jeffrey W Dulberg    jdulberg@pszjlaw.com**
- **Oscar Estrada    oestrada@ttc.lacounty.gov**
- **Richard Girgado    rgirgado@counsel.lacounty.gov**
- **M. Jonathan Hayes    jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com**
- **Teddy M Kapur    tkapur@pszjlaw.com, mdj@pszjlaw.com**
- **Peter A Kim    peter@pkimlaw.com, peterandrewkim@yahoo.com**
- **Christopher J Langley    chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com**
- **Benjamin R Levinson    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com**
- **Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com**
- **Giovanni Orantes    go@gobklaw.com, gorantes@orantes-
law.com,cmh@gobklaw.com,gobklaw@gmail.com;go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com**
- **Donald W Reid    don@donreidlaw.com, ecf@donreidlaw.com**
- **Matthew D. Resnik    matt@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com**
- **Peter J Ryan    ryan@floresryan.com, schneider@floresryan.com**
- **Allan D Sarver    ADS@asarverlaw.com**
- **David Samuel Shevitz    david@shevitzlawfirm.com,
shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov**

☐   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On date, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Michael Douglas Carlin                 Peter J. Ryan
PO Box 67132                           115 W. California Blvd., #9010
Century City, CA 90067                 Pasadena, CA 91105

☐   Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**
2231900.1 - 30964.0001

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 27, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> The Honorable Ernest M. Robles
> United States Bankruptcy Court
> Central District of California
> Edward R. Roybal Federal Building and Courthouse
> 255 E. Temple Street, Suite 1560 / Courtroom 1568
> Los Angeles, CA 90012
> **_via Fed Ex_**

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 27, 2022 | Marvin J. Ramos | |
|---|---|---|
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                                                            **F 9013-3.1.PROOF.SERVICE**
2231900.1 - 30964.0001