ZEV SHECHTMAN (State Bar No. 266280)
*zs@DanningGill.com*
ALPHAMORLAI L. KEBEH (State Bar No. 336798)
*akebeh@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

General Bankruptcy Counsel for Jinzheng Group
(USA) LLC, Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>JINZHENG GROUP (USA) LLC,<br><br>       Debtor and Debtor in<br>       Possession. | Case No. 2:21-bk-16674-ER<br><br>Chapter 11<br><br>**DEBTOR'S NOTICE OF OPPOSITION AND OPPOSITION TO MOTION FOR RELIEF FROM STAY FILED BY CORONA CAPITAL GROUP, LLC; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ZEV SHECHTMAN**<br><br>Date:    August 22, 2022<br>Time:   10:00 a.m.<br>Crtrm.:  1568<br>        255 East Temple Street<br>        Los Angeles, CA 90012 |

TO THE HONORABLE ERNEST M. ROBLES AND INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT Debtor and Debtor in Possession, Jinzheng Group (USA), LLC (the "Debtor") hereby opposes the motion for relief from stay (doc. no. 320) (the "Motion") filed by Corona Capital Group, LLC ("Corona" or "Movant").

Any reply must be filed and served not later than 7 days before the hearing on the Motion.

DATED:  August 8, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

By: _____

ZEV SHECHTMAN
General Bankruptcy Counsel for Jinzheng Group
(USA) LLC, Debtor and Debtor in Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

The Debtor has negotiated a Carveout Agreement with the third lienholder which will make it feasible for the Debtor to sell the Property in the near term.  All parties will benefit from such a sale.  Relief from stay is not appropriate or necessary because there is now equity generated by the Carveout Agreement and the sale of the Property by the Debtor will be beneficial to the estate and creditors, including Movant who will be paid on account of its claim sooner from proceeds of a sale by Debtor under section 363 of the Bankruptcy Code than it would in a foreclosure.

**II.**

**FACTUAL BACKGROUND**

On August 24, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The assets of the bankruptcy estate include a number of real properties, including a parcel of real property located at 2240 Lorain Road, San Marino, California 91108 (the "Property").

There are three consensual liens on the Property.  The holders of those liens are Royal Business Bank ("RBB"), in first position; Corona, in second position; and DNQ LLC ("DNQ"), in third position.

Corona filed the Motion, seeking relief from the automatic stay.  According to the Motion, Corona was owed $580,924 as of July 18, 2022 on account of its secured claim.[1]  Pursuant to the Motion, RBB is owed $1,096,772 and DNQ is owed $530,465.  The total debt on the Property is $2,220,064.  The combined debt of the first and second liens is $1,677,696.  The Property's value

---

[1] While the Debtor reserves the right to challenge the amounts of claims and other values alleged by Movant, the Debtor will accept Movant's assertions of the amounts and other dollar amounts set forth in the Motion, for purposes of responding to this Motion on the merits of section 362(d).

1    is $2,070,000 as established by the Debtor's previous attempt to short sell the Property.  Corona

2    also supplies a declaration from a broker stating that the Property is worth $2,045,000.

3          The Debtor attempted to short sell the Property for $2,070,000.  The Debtor attempted to

4    gain DNQ's approval of that short sale, but was unsuccessful.  The Debtor terminated the listing

5    agreement with its former broker who was attempting the short sale and has engaged a new broker

6    effective July 1, 2022.  Thus, the transaction involving the former broker is no longer pending.  The

7    current list price of $2,300,000, although higher than the fair market value asserted in the Motion,

8    was around the minimum sale price necessary absent the consent of lienholders to a sale for a price

9    below the debt secured by the Property.

10          Recognizing that an agreement would be necessary to avoid foreclosure by senior

11    lienholders, the Debtor (through its current counsel) commenced renewed discussions with DNQ as

12    of around June 10, 2022.[2]  The sale of the Property by the Debtor would be unlikely absent the

13    consent of the third lienholder to sell the Property for an amount less than the total value of the

14    liens against the Property.  Accordingly, the Debtor sought a carveout agreement from DNQ.  After

15    extensive negotiations, on August 6, 2022, the Debtor and DNQ entered into the Carveout

16    Agreement Subject to Court Approval (the "Carveout Agreement") attached to the Declaration of

17    Zev Shechtman as Exhibit "1."  The material terms of the Carveout Agreement include:

18          3.    Consent to Sale. Subject to Court approval and compliance with the terms of
      this Agreement, DNQ consents to the sale of the Property free and clear of any lien,
19    right, or claim it may have with respect to the Property, including, but not limited to
      the DNQ Lien.  DNQ will not object to the sale of the Property, regardless of the
20    sale price. DNQ will cooperate with the Debtor in closing a sale and will execute
      such documents as necessary to release its lien on the Property and allow the
21    transfer of title to the Property to a new owner.  Any order approving the sale of the
      Property shall be free and clear of the DNQ Lien even if DNQ breaches this
22    Agreement by later objecting to the sale or failing to cooperate with the sale.

23          4.    Sale of the Property.  The Debtor agrees to market the Property for sale
      through the Brokers and invite overbids to any offers received. The Debtor agrees to
24    sell the Property to a buyer subject to Court approval under section 363 of the
      Bankruptcy Code. If the Debtor sells the Property, the Debtor shall receive 25% of
25    the net sale proceeds (the "Carveout Amount"), to the extent available, after
      payment of the first and second liens, any other liens senior to DNQ's, any property
26    tax liabilities, any other escrow or closing costs and brokers' commissions (the "Net
      Sale Proceeds"). The DNQ Lien shall attach to the Net Sale Proceeds remaining

27    _____

28    [2] Current counsel was employed effective as of May 31, 2022.

1    after the Carveout Amount up to an amount of $420,000. DNQ shall be entitled to a
     distribution of such amount, if any, within forty five (45) days following the closing
2    of the sale of the Property (the "DNQ Distribution"). For purposes of the sale of the
     Property only, DNQ subordinates the DNQ Lien to the Debtor's rights hereunder to
3    aid in the expeditious sale of the Property.

4   See Exhibit "1.

5       The Debtor engaged with Committee Counsel on negotiation of the Carveout Agreement to

6   ensure that it would be acceptable to the Committee.  By the Carveout Agreement, DNQ has

7   consented to the Debtor's sale of the Property, and the Debtor will receive 25% of the net sale

8   proceeds that would otherwise have been paid to DNQ.  Now, the Debtor can sell the Property for

9   less than the aggregate value of the liens pursuant to section 363(f).  The first and second liens will

10  be paid in full from any sale on account of their secured claims, assuming a price at or around the

11  value asserted in the Motion, and the balance of the sale proceeds will be paid out pursuant to the

12  Carveout Agreement.  The Debtor will be filing a motion for approval of the Carveout Agreement.

13  The Carveout Agreement will result in some proceeds to the estate, and it will also reduce

14  unsecured debt that would otherwise be added to the unsecured creditor body in the event of

15  foreclosure.

16      The Carveout Agreement authorizes the Debtor to reduce the listing price of the Property,

17  so that the Debtor will be able to sell the Property for its fair market value, subject to overbidding,

18  even if the current list price proves high.

19

20                                    **III.**

21                          **LEGAL DISCUSSION**

22  **A.    Movant is Adequately Protected Pursuant to 11 U.S.C § 362(d)(1)**

23      Corona asserts that relief from stay should be granted because the Debtor has not supplied

24  proof of insurance on the Property.  The Property is insured and the Debtor will supply proof of

25  insurance on the Property to Corona prior to the hearing on the Motion.

26

27

28

**B.      Movant is Not Entitled to Relief from Stay Under 11 U.S.C. § 362(d)(2)(A) and (B) as a Result of the Carveout Agreement**

Under 11 U.S.C. § 362(d)(2), the moving party is entitled to relief from stay against property of the debtor if the debtor does not have equity in the property and the property is not necessary to an effective reorganization.  Neither of these factors is satisfied as a result of the Carveout Agreement.

**1.      There is Equity in the Property for the Benefit of the Estate and Creditors**

Equity is the amount that can be realized from the sale for the benefit of unsecured creditors.  *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984).  Now that the Debtor has negotiated a binding Carveout Agreement with DNQ, the Debtor will be able to realize value to the estate and creditors above the other secured debt.  Even if the Debtor sells the Property for less than the value estimated by Corona, there will be equity for the benefit of creditors.  For example, if the Debtor sells the Property for $2,000,000, the Debtor estimates that distributions from such sale will be as follows:

| | |
|---|---|
| Hypothetical Sale Price | $    2,000,000.00 |
| RBB (1st) | $  (1,096,772.00) |
| Corona (2nd) | $     (580,924.00) |
| 5% Brokers' Commission | $     (100,000.00) |
| 2% Escrow / Costs of Sale (estimated) | $       (40,000.00) |
| Net Sale Proceeds | $        182,304.00 |
| Estate's 25% Share of Sale Proceeds | $          45,576.00 |

The benefit to the estate of such a sale is greater than the cash component estimated at $45,576.00, because it will reduce the amount of unsecured debt owed by the Debtor.  That is because, if Corona forecloses, DNQ will receive nothing on account of its secured claim and the entire amount owed to DNQ will be added to the unsecured creditor body.

**2.**      <u>**The Property is Necessary to an Effective Reorganization or Liquidating Plan**</u>

Liquidation in chapter 11 may be an "effective reorganization" for purposes of section 362(d)(2)(B), since liquidation is a legitimate chapter 11 purpose. *See In re EM Lodgings, LLC*, 580 B.R. 803, 813–14 (Bankr. C.D. Ill. 2018) (collecting cases). To satisfy its burden in the event of liquidation, the Debtor should show that it is making progress toward an effective liquidation. *Id*. at 814.

Within the last 60 days, the Debtor has taken decisive action to list all of its real properties for a sale, as part of its global liquidation strategy. See applications to employ brokers at docket nos. 298 (15 parcels comprising over 30 acres in Lincoln Heights), 304 (Van Nuys condominium), 307 (the subject Property), and 325 (Arcadia).[3] The Carveout Agreement negotiated with DNQ and this opposition is in furtherance of the same liquidation strategy. Once the Debtor has made substantial progress in the sale of its properties, the Debtor will either file a liquidating plan or pursue structured dismissal. These efforts are made with the intended effect of moving this case toward a reasonable resolution in the near term.

---

[3] The Debtor previously filed a motion to approve a settlement involving a transfer of the Arcadia property from a nondebtor LLC back to the Debtor, in order to prevent a foreclosure and preserve that asset for the benefit of the estate. See doc. no. 278.

# IV.

## CONCLUSION

As a result of the Carveout Agreement, the Debtor is equipped to sell the Property for its fair market value.  The estate, Movant, and all other creditors will be better off if the Debtor sells the Property.  For these reasons and those set forth above, the Debtor respectfully requests that the Court deny the Motion, and enter such other and further relief that is just and proper in the circumstances.

DATED:  August 8, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP


By:  _____
      ZEV SHECHTMAN
      General Bankruptcy Counsel for Jinzheng Group
      (USA) LLC, Debtor and Debtor in Possession

## DECLARATION OF ZEV SHECHTMAN

I, Zev Shechtman, declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am the principal of a professional corporation that is a partner of Danning, Gill, Israel & Krasnoff, LLP, attorneys of record for Debtor and Debtor in Possession, Jinzheng Group (USA), LLC.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.     I make this declaration in support of Debtor's Opposition to Motion for Relief From Stay Filed by Corona Capital Group, LLC.

3.     On August 24, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.     The assets of the bankruptcy estate include, among other properties, a parcel of real property located at 2240 Lorain Road, San Marino, California 91108 (the "Property").

5.     The Debtor attempted to short sell the Property for $2,070,000.  The Debtor attempted to gain the approval of third lien holder DNQ, LLC ("DNQ") for that short sale but was unsuccessful.  The Debtor terminated the listing agreement with its former broker who was attempting the short sale and has engaged a new broker effective July 1, 2022.  Thus, the transaction involving the former broker is no longer pending.

6.     My firm was engaged by the Debtor as general bankruptcy counsel on or about May 31, 2022.  On behalf of the Debtor, I first contacted DNQ on or about June 10, 2022.  The Debtor recognized that the sale of the Property by the Debtor was unlikely absent the consent of DNQ, the third lienholder, to sell the Property for an amount less than the total value of the liens against the Property.  Accordingly, the Debtor sought a carveout agreement with DNQ.  On August 6, 2022, the Debtor and DNQ entered into the Carveout Agreement Subject to Court Approval (the "Carveout Agreement") attached hereto as Exhibit "1."

7.    I have been in regular communication with Committee Counsel regarding the negotiation of the Carveout Agreement to ensure that it would be acceptable to the Committee.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of August, 2022, at Los Angeles, California.

_____
Zev Shechtman

# EXHIBIT "1"

## CARVEOUT AGREEMENT SUBJECT TO COURT APPROVAL
### Between Jinzheng Group (USA) LLC, and DNQ LLC
### August 6, 2022

**Jinzheng Group (USA) LLC:**
Zev Shechtman, Esq.
Danning, Gill, Israel & Krasnoff, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles CA 90067-6006
(310) 903-6344
ZS@DanningGill.com

**DNQ LLC:**
Jason D. Wang
6145 W. Spring Mountain Road #205
Las Vegas NV 89146
702-595-3399
JasonWang3399@Hotmail.com

## CARVEOUT AGREEMENT

This carveout agreement (the "Agreement") executed on August 6, 2022, is made by and between Jinzheng Group (USA) LLC debtor and debtor-in-possession in bankruptcy case no. 2:21-bk-16674 (the "Debtor"), on the one hand, and DNQ LLC ("DNQ") on the other hand (collectively, the "Parties").

## FACTUAL BACKGROUND

1.     On August 24, 2021 (the "Petition Date"), the Debtor, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues in possession of its property and is operating and managing its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108. No Trustee or examiner has been appointed in the Debtor's Chapter 11 Case.

2.     The assets of the bankruptcy estate include, among other things, a parcel of real property located at 2240 Lorain Road, San Marino, California 91108 (the "Property"). The Debtor is currently listing the Property for sale at $2,300,000.

3.     The Debtor is informed that there are three liens on the Property. The holders of the liens are Royal Business Bank (first position), Corona Capital Group, LLC (second position), and DNQ LLC (third position) (collectively, the "Lienholders").

4.     Royal Business Bank has asserted that it is owed at least $1,084,642.80 on account of its fist priority lien.

5.     Corona Capital Group, LLC has asserted that it is owed at least $583,194.21 on account of its second priority lien.

6.     DNQ LLC has asserted that it is owed at least $420,000 on account of its third priority lien (the "DNQ Lien"), and on or about February 9, 2022, DNQ filed claim no. 21 asserting this claim against the debtor's estate (the "DNQ Proof of Claim").

7.     The Debtor has yet to receive an offer on the Property that would be sufficient to pay all liens, brokers' commissions and closing costs in full. The Property was formerly listed with another broker for Debtor who attempted a short sale, to which DNQ did not consent.

CARVEOUT AGREEMENT SUBJECT TO COURT APPROVAL
Between Jinzheng Group (USA) LLC, and DNQ LLC
August 6, 2022

8.      On or about July 15, 2022, the Debtor filed an application to employ brokers (the "Brokers") to sell the Property (Docket No. 307), and the application remains pending before the Court.

9.      Corona Capital Group, LLC has filed a motion for relief from stay to foreclose on the Property in the Debtor's bankruptcy case, set for hearing on August 22, 2022.  Any opposition to such motion is due by August 8, 2022.  Royal Business Bank has also indicated that it would likely file a motion for relief from stay to initiate foreclosure proceedings.

10.     In order to protect the Property from foreclosure, generate equity in the Property for the Debtor's estate, and to afford DNQ the opportunity for a recovery on account of its secured claim, the Debtor and DNQ have entered into this carveout agreement.

## AGREEMENT

Based on the mutual promises contained herein and for other good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows:

1.      Recitals Acknowledged. The above recitals are incorporated herein by reference.

2.      Court Approval Required. This Agreement is subject to the approval of the Bankruptcy Court after notice and a hearing.

3.      Consent to Sale. Subject to Court approval and compliance with the terms of this Agreement, DNQ consents to the sale of the Property free and clear of any lien, right, or claim it may have with respect to the Property, including, but not limited to the DNQ Lien.  DNQ will not object to the sale of the Property, regardless of the sale price. DNQ will cooperate with the Debtor in closing a sale and will execute such documents as necessary to release its lien on the Property and allow the transfer of title to the Property to a new owner.  Any order approving the sale of the Property shall be free and clear of the DNQ Lien even if DNQ breaches this Agreement by later objecting to the sale or failing to cooperate with the sale.

4.      Sale of the Property.  The Debtor agrees to market the Property for sale through the Brokers and invite overbids to any offers received. The Debtor agrees to sell the Property to a buyer subject to Court approval under section 363 of the Bankruptcy Code. If the Debtor sells the Property, the Debtor shall receive 25% of the net sale proceeds (the "Carveout Amount"), to the extent available, after payment of the first and second liens, any other liens senior to DNQ's, any property tax liabilities, any other escrow or closing costs and brokers' commissions (the "Net Sale Proceeds"). The DNQ Lien shall attach to the Net Sale Proceeds remaining after the Carveout Amount up to an amount of $420,000. DNQ shall be entitled to a distribution of such amount, if any, within forty five (45) days following the closing of the sale of the Property (the "DNQ Distribution"). For purposes of the sale of the Property only, DNQ subordinates the DNQ Lien to the Debtor's rights hereunder to aid in the expeditious sale of the Property.

5.      Waiver of Claims.  The Debtor agrees that the DNQ Proof of Claim shall be deemed an allowed claim in the amount of $420,000, without prejudice to DNQ seeking

1690563.1 27086

**2 |** P a g e

DOCS_LA:344724.2 46360/002

**13**

**CARVEOUT AGREEMENT SUBJECT TO COURT APPROVAL**
**Between Jinzheng Group (USA) LLC, and DNQ LLC**
**August 6, 2022**

allowance of a higher claim amount. DNQ shall be entitled to the DNQ Distribution described in Paragraph 4 above, and if the DNQ Distribution is less than $420,000, the amount of such deficiency shall be deemed an allowed general unsecured claim. DNQ waives any other claims against the Debtor's estate.

6.   <u>Mutual Releases.</u>   The Parties hereby release and discharge each other from any and all claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, and costs, whether at law or equity, known or unknown, suspected or unsuspected, contingent or fixed, except for their mutual obligations arising under this Agreement.

7.   <u>Notices.</u>   All notices, demands or communications pursuant to this agreement shall be in writing and shall be deemed to have been duly given if delivered via email, as follows:

   a.   To the Debtor:

    c/o Zev Shechtman
    Danning, Gill, Israel & Krasnoff, LLP
    zs@DanningGill.com

   b.   To DNQ:

    c/o Jason D. Wang
    JASONWANG3399@hotmail.com

8.   **<u>Counsel.</u>   DNQ acknowledges that DNQ has been afforded adequate opportunity to consult with an attorney in this matter and that Debtor's counsel has repeatedly urged DNQ to hire an attorney to assist DNQ with this matter.   DNQ's choice not to hire counsel shall not impact the validity of this Agreement.**

9.   <u>Interpretation.</u>   If there is a dispute over the meaning of any provision, this agreement shall not be interpreted against any of the Parties, regardless of which one prepared the initial draft hereof.

10.   <u>Jurisdiction; Applicable Law.</u>   The Bankruptcy Court presiding over the bankruptcy case shall have and retain sole and exclusive jurisdiction to interpret and enforce the terms of this agreement as a core matter, without a right to jury trial or, if required by any applicable law, with a jury before such Bankruptcy Court, and the Parties hereby consent and submit to entry of a final order or final judgment by the Bankruptcy Court. This agreement shall be interpreted and enforced pursuant to the laws of the United States of America, and where State law is required to be applied, California law shall apply.

11.   <u>Costs and Attorneys' Fees.</u>   Each Party shall bear his, her, their or its own costs, expenses and attorneys' fees, if any, heretofore incurred in the matters that are the subject of this agreement to date.  However, in the event it becomes necessary for any Party to take any action

1690563.1  27086

CARVEOUT AGREEMENT SUBJECT TO COURT APPROVAL
Between Jinzheng Group (USA) LLC, and DNQ LLC
August 6, 2022

to compel enforcement of the terms of this agreement, the prevailing party shall be entitled to all reasonable attorneys' fees and costs incurred to compel such enforcement.

12.    Execution.  This agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

13.    Entire Agreement.  This agreement constitutes the entire agreement between and among the Parties concerning the subject matter hereof.  There are no other understandings, representations, or agreements, oral or otherwise, between and among the Parties concerning the subject matter of this agreement.

14.    Amendments; Modifications; Waiver.  This agreement may not be modified, superseded, terminated, or amended and no provision hereto may be waived except by: (i) a writing, making specific reference hereto, signed by the Parties and approved by the Bankruptcy Court; or, (ii) an order of the Bankruptcy Court which has become final.

15.    Further Assurances.  The Parties shall promptly execute and deliver, as appropriate, such other and further documents as may be necessary to effectuate the terms of this agreement.

**AGREED**

DANNING, GILL, ISRAEL & KRASNOFF, LLP

ZEV SHECHTMAN, Attorneys, for Debtor and Debtor in Possession, JINZHENG GROUP (USA) LLC

**AGREED**

DNQ, LLC

Jason D. Wang        8/6/22

JASON D. WANG, as authorized representative of DNQ LLC.

DOCS_LA:344724.2 46360/002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  DEBTOR'S NOTICE OF OPPOSITION AND OPPOSITION TO MOTION FOR RELIEF FROM STAY FILED BY CORONA CAPITAL GROUP, LLC; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ZEV SHECHTMAN  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  August 8, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  August 8, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  August 8, 2022 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 8, 2022 | Patricia Morris | /s/ Patricia Morris |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1690625.1  27086 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Donna C Bullock**    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- **Steven P Chang**    heidi@spclawoffice.com,
  schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincom
  pass.com;changsr75251@notify.bestcase.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Heidi M Cheng**    heidi@slclawoffice.com,
  assistant1@spclawoffice.com;schang@spclawoffice.com;chenghr75251@notify.bestcase.com
- **Susan Titus Collins**    scollins@counsel.lacounty.gov
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Danielle R Gabai**    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- **Richard Girgado**    rgirgado@counsel.lacounty.gov
- **Brian T Harvey**    bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
- **M. Jonathan Hayes**    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.co
  m;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Teddy M Kapur**    tkapur@pszjlaw.com, mdj@pszjlaw.com
- **Alphamorlai Lamine Kebeh**    akebeh@danninggill.com
- **Peter A Kim**    peter@pkimlaw.com, peterandrewkim@yahoo.com
- **Christopher J Langley**    chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Paul J Leeds**    Pleeds@fsl.law, ssanchez@fsl.law
- **Benjamin R Levinson**    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
- **Eric A Mitnick**    MitnickLaw@aol.com, mitnicklaw@gmail.com
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-
  law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase
  .com
- **Donald W Reid**    don@donreidlaw.com, ecf@donreidlaw.com
- **Matthew D. Resnik**    matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.c
  om;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.c
  om
- **Peter J Ryan**    ryan@floresryan.com, schneider@floresryan.com
- **Allan D Sarver**    ADS@asarverlaw.com
- **Zev Shechtman**    zshechtman@DanningGill.com,
  danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **David Samuel Shevitz**    david@shevitzlawfirm.com,
  shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- **John N Tedford**    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.courtdrive.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

1690625.1  27086 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY U.S. MAIL**

Debtor
JINZHENG GROUP (USA) LLC
1414 S Azusa Ave, Suite B-22
West Covina, CA 91791-4084

The Honorable Ernest M. Robles
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1560
255 E. Temple Street
Los Angeles, CA 90012

DNQ LLC:
Jason D Wang,
6145 W. Spring Mountain RD. #205
Las Vegas NV 89146

Unsecured Creditors Committee

Betula Lenta, Inc.
David Park
800 W. 6th Street, Suite 1250
Los Angeles, CA 900171

The Phalanx Group, Inc.
Anthony Rodriguez
424 E. 15th Street, Unit #10
Los Angeles, CA 90015

Testa Capital Group
620 Newport Center Dr., #1100
Newport Beach, CA 92660

1690625.1  27086 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**