BRIAN T. HARVEY (SBN: 238991)
NICHOLAS S. COUCHOT (SBN:  331971)
BUCHALTER, a Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-1730
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: bharvey@buchalter.com
ncouchot@buchalter.com

Attorneys for Secured Creditor
ROYAL BUSINESS BANK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:21-bk-16674-ER |
| JINZHENG GROUP (USA) LLC, | Chapter 11 |
| Debtor. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ROYAL BUSINESS BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |
| | [Notice of Motion and Motion for Relief from Automatic Stay, Memorandum of Points & Authorities, Continuation Declaration of Peter Tam concurrently filed] |
| | **Hearing:**<br>Date:        September 6, 2022<br>Time:        10:00 AM<br>Place:       Courtroom 1568<br>            United States Bankruptcy Court<br>            255 East Temple Street<br>            Los Angeles, California 90012 |

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, AND ALL PARTIES IN INTEREST:**

Royal Business Bank ("Royal") respectfully requests that this Court take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence of the following documents in support of Royal's *Motion for Relief from the Automatic Stay under 11 U.S.C. § 362* concurrently filed in the

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

above-captioned chapter 11 bankruptcy case of Jinzheng Group (USA) LLC (the "Debtor") as

follows:

1.  The **Application to Employ Jay Wu as Real Estate Agent for Debtor in Possession** filed by the Debtor on January 24, 2022 as Docket No. 91 in the above-captioned bankruptcy case, a true and complete copy of which was obtained from this Court's website located at http://ecf.cacb.uscourts.gov/ is attached hereto as **Exhibit 1**.

2.  The **Order Granting Application by Debtor-in-Possession to Employ Jay Wu as Real Estate Agent for Estate** entered on February 22, 2022 by this Court as Docket No. 124 in the above-captioned bankruptcy case, a true and complete copy of which was obtained from this Court's website located at http://ecf.cacb.uscourts.gov/ is attached hereto as **Exhibit 2**.

3.  The **Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022** filed by the Debtor on May 4, 2022 as Docket No. 204 in the above-captioned bankruptcy case, a true and complete copy of which was obtained from this Court's website located at http://ecf.cacb.uscourts.gov/ is attached hereto as **Exhibit 3**.

4.  The **Stipulation to Continue Hearing on Motion for Order Approving Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022** filed by Official Committee of Unsecured Creditors as Docket No. 235 in the above-captioned bankruptcy case, a true and complete copy of which obtained from this Court's website located at http://ecf.cacb.uscourts.gov/ is attached hereto as **Exhibit 4**.

5.  The **Stipulation to (1) Withdraw Debtor's Combined Plan of Reorganization and Disclosure Statement without Prejudice and (2) Withdraw Official Committee of Unsecured Creditors' Motion for Appointment of a Chapter 11 Trustee without Prejudice** filed by the Debtor on June 16, 2022 as Docket No. 250 in the above-captioned bankruptcy case, a true and complete copy of which obtained from this Court's website located at http://ecf.cacb.uscourts.gov/ is attached hereto as **Exhibit 5**.

6.  The **Order Approving Stipulation to (1) Withdraw Debtor's Combined Plan of Reorganization and Disclosure Statement without Prejudice and (2) Withdraw Official Committee of Unsecured Creditors' Motion for Appointment of a Chapter 11 Trustee without Prejudice** entered on June 17, 2022 by the Court as Docket No. 253 in the above-captioned bankruptcy case, a true and complete copy of which obtained from this Court's website located at http://ecf.cacb.uscourts.gov/ is attached hereto as **Exhibit 6**.

7.  The **Debtor's Notice of Application and Application to Employ Re/Max of Cerritos and Coldwell Banker as Real Estate Brokers and to Enter into an Exclusive Listing Agreement** filed by the Debtor on July 15, 2022

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 70398372v4

2

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ROYAL BUSINESS BANK'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

as Docket No. 307 in the above-captioned bankruptcy case, a true and complete copy of which obtained from this Court's website located at http://ecf.cacb.uscourts.gov/ is attached hereto as **Exhibit 7**.

8.    The **Notice of Motion and Motion for Relief from the Automatic Stay** filed by Corona Capital Group LLC on July 20, 2022 as Docket No. 320 in the above-captioned bankruptcy case, a true and complete copy of which obtained from this Court's website located at http://ecf.cacb.uscourts.gov/ is attached hereto as **Exhibit 8**.

The above-referenced documents are properly the subject of judicial notice pursuant to Federal Rule of Evidence 201, which provides that a court may take judicial notice of facts "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Further, it is generally accepted that a bankruptcy judge may take judicial notice of the bankruptcy court's records. "It is not error . . . for a court to take judicial notice of related proceedings and records in cases before that court." *State of Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975); *see also In re Earl*, 140 B.R. 728, 730 (Bankr. N.D. Ind. 1992) (finding that judicial notice of four related bankruptcy cases of Debtor was proper).

Additionally, "[a]court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (citing *United States ex rel. Geisler v. Walters*, 510 F.2d 887, 890 n. 4 (3d Cir. 1975)). Therefore, Royal respectfully requests that this Court take judicial notice of the documents attached hereto as Exhibits 1 through 8.

Dated:  August 10, 2022                    BUCHALTER, a Professional Corporation

                                           By:            */s/ Nicholas S. Couchot*
                                                NICHOLAS S. COUCHOT

                                           Attorneys for Secured Creditor
                                           ROYAL BUSINESS BANK

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 70398372v4                                3

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ROYAL BUSINESS BANK'S**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

# EXHIBIT 1

Gene H. Shioda – SBN 186780
ghs@slclawoffice.com
Christopher J. Langley – SBN 258851
chris@slclawoffce.com
Steven P. Chang – SBN 221783
schang@slclawoffice.com
**SHIODA, LANGLEY & CHANG LLP**
1063 E. Las Tunas Dr.
San Gabriel, CA 91776
Tel: (626)281-1232
Fax: (626)281-2919

Proposed Counsel for Jinzheng Group (USA) LLC
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>JINZHENG GROUP (USA) LLC<br><br><br>Debtor and Debtor in Possession. | Case No. 2:21-bk-16674-ER<br><br>Chapter 11<br><br>**APPLICATION TO EMPLOY JAY WU AS REAL ESTATE AGENT FOR DEBTOR IN POSSESSION; DECLARATIONS OF JAY WU AND SHAO XING MAX YANG IN SUPPORT THEREOF**<br><br>Hearing Upon Request Per Local Bankruptcy Rule 2014-1 |

**TO THE HONORABLE ERNEST ROBLES, U.S. BANKRUPTCY JUDGE,**

**OFFICE OF THE U.S. TRUSTEE, AND ALL PARTIES IN INTEREST:**

Jinzheng Group (USA) LLC ("Debtor"), the chapter 11 debtor in possession in the above-captioned case, hereby submits this application ("Application") to employ Jay Wu ("Mr. Wu" or "Agent") as the Debtor's real estate agent to assist the Debtor in the listing, marketing and negotiating a sale of the bankruptcy estate's interests in the real property identified below.  This Application is supported by the attached declarations of Jay Wu ("Wu Declaration") and Shao

1

Xing Max Yang ("Yang Declaration"). In support of this Application, the Debtor respectfully represents as follows:

## I.    BACKGROUND INFORMATION

Debtor is a single member LLC that is wholly owned by Jiaqing Yang ("J. Yang") who currently resides in China and has not been to the United States since the global outbreak of Covid-19. Shao Xing Max Yang ("M. Yang") is the attorney-in-fact for J. Yang. While they share the same surname, J. Yang and M. Yang are not related.

Debtor owns the real property located at 2240 Lorain, San Marino, CA ("San Marino Property"). A table summarizing the liens against the San Marino Property is below:

| 2240 Lorain, San Marino, CA | Sch AB 55.6 | $3,000,000 |
|---|---|---|
| Less Liens | | |
| Royal Business Bank | Sch D 2.2 | $1,100,000 |
| Corona Capital | Sch D 2.3 | $540,000 |
| DNQ | Sch D 2.4 | $420,000 |
| | | |
| Net Equity | | $940,000 |

## II.    SERVICE TO BE PERFORMED

To market the San Marino Property for sale in the most effective manner, the Debtor has solicited the assistance of Mr. Wu, which is a California licensed real estate agent (DRE 01761071). Mr. Wu will oversee the listing and marketing of the San Marino Property for sale. Mr. Wu has over 15 years of experience in the real estate industry. He is dynamic, energetic, and highly experienced in both residential and commercial property management with solid history of success in leasing analysis, project coordination, tenant retention through renewals, and assistance in account collections. A copy of the Mr. Wu's resume is attached to the Wu Declaration as **Exhibit 1**.

Mr. Wu, on the Debtor's behalf, has examined the San Marino Property and has agreed to advertise it at its expense, to show it to interested parties, to represent the Debtor as seller in connection with the sale of the San Marino Property, and to advise the Debtor with respect to obtaining the highest and best offer available in the present market. A copy of the Listing Agreement and related addenda for the San Marino Property is attached to the Wu Declaration as **Exhibit 2**. The San Marino Property will be listed for sale at $2,450,000.00

Exhibit 1, Page 6

### III.    COMPENSATION PROCEDURE

In consideration for Mr. Wu's services, subject to further application and court order, Mr. Wu will receive, upon consummation of sale of the San Marino Property, a sales commission as follows:

- If another real estate broker or agent (other than Mr. Wu) represents the purchaser of the San Marino Property (a "Buyer Agent"), the commission will be four percent (4%) of the total purchase price to be split as follows: (i) one and a half percent (1.5%) to Mr. Wu, and (ii) two and a half percent (2.5%) to the Buyer Agent.
- If Mr. Wu jointly represents the purchaser of the San Marino Property (as well as the Debtor), the commission will be three percent (3%) of the total purchase price payable to Mr. Wu.

Mr. Wu has been informed and understands that no sale of the San Marino Property may be consummated until after (1) notice to creditors with the opportunity for a hearing on the proposed sale, and (2) entry of a Court order approving the sale.

Mr. Wu has agreed to be compensated subject to the provisions of 11 U.S.C. § 328.  Mr. Wu is aware of the provisions of § 328(a) and has agreed, notwithstanding the terms and conditions of employment herein, that the Court may allow compensation different from the compensation provided herein if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of the fixing of such terms and conditions.

### IV.    THE BROKER IS DISINTERESTED

To the best of Mr. Wu's knowledge after full investigation, and as set forth in the Wu Declaration, Mr. Wu is a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

Mr. Wu is not a creditor or an equity security holder of the Debtor.  Likewise, Mr. Wu is not an insider of the Debtor because he is not a director, officer, or person in control of the Debtor.  And Mr. Wu is not a relative of a director, officer, or person in control of the Debtor.

That said, Mr. Wu is employed by the real estate brokerage, LT Management Group ("Broker") (DRE 02062595).  The CEO of the Broker is M. Yang (DRE 02044638) who, as described above, is the attorney-in-fact for the Debtor's managing member, J. Yang.  Mr. Wu is

3

1  not related to either J. Yang or M. Yang.  This relationship, however, does not arise to being an

2  insider under 11 U.S.C. § 101(31)(B).

3      Finally, Mr. Wu does not represent an interest adverse to the Debtor notwithstanding his

4  prior relationship with the Broker.  Mr. Wu will not share any compensation from the sale of the

5  San Marino Property with the Broker.

6      Accordingly, the Debtor believes the employment of Mr. Wu on the terms and conditions

7  provided for herein is in the best interest of the bankruptcy estate.  Mr. Wu is well qualified to

8  sell the San Marino Property and has agreed to below-market compensation to do so.

9      **WHEREFORE**, the Debtor requests that it be authorized to employ Mr. Wu on the

10  terms and conditions set forth herein, and approve the Listing Agreement and related addenda

11  for the San Marino Property attached to the Wu Declaration as **Exhibit 2**, and grant such other

12  and further relief that it deems appropriate and just.

13

14  Dated:  January 19, 2022

15  _____

16  Max Yang, Attorney-in-Fact for Jiaqing Yang,
    Managing Member for Jinzheng Group (USA), LLC,
17  Debtor and Debtor in Possession

18

19

20

21

22

23

24

25

26

27

28

<u>**DECLARATION OF JAY WU**</u>

2      I, Jay Wu, am a licensed real estate salesperson with LT Management Group ("Broker")
3 and the proposed real estate agent for Jinzheng Group (USA), LLC ("Debtor"), the chapter 11
4 debtor in possession in this bankruptcy case.  I make this declaration in support of the *Application*
5 *to Employ Jay Wu as Real Estate Agent for Debtor in Possession* ("Application"), to which this
6 declaration is attached.  Any capitalized terms not otherwise defined herein have the same
7 meanings as they do in the Application.

8      1.      I have read the Application and am familiar with the San Marino Property
9 described in the Application.

10      2.      I believe that I am qualified to represent the Debtor in connection with the
11 marketing of the San Marion Property and negotiating a sale.  I have over 15 years of experience
12 in the real estate industry.  I am dynamic, energetic, and highly experienced in both residential and
13 commercial property management and have a solid history of success in leasing analysis, project
14 coordination, tenant retention through renewals, and assistance in account collections.  A summary
15 of my credentials is attached hereto as **Exhibit 1**.

16      3.      I have been informed and understand that no sale of the Properties may be
17 consummated until after (1) notice to creditors with the opportunity for a hearing on the proposed
18 sale, and (2) entry of a court order approving the sale.

19      4.      I have agreed to accept employment on the terms and conditions set forth in the
20 Application.  I have been informed and understand that no sale of the Properties may be
21 consummated until after (1) notice to creditors with the opportunity for a hearing on the proposed
22 sale, and (2) entry of a court order approving the sale.  A copy of the Listing Agreement and
23 related addenda for the San Marino Property is attached hereto as **Exhibit 2**.

24      5.      Under the terms of the proposed listing agreement, a real estate commission shall
25 be paid upon closing of a court-approved sale of either of the Properties.  In consideration for my
26 services, subject to further application and court order, I will receive, upon consummation of sale
27 of the San Marino Property, a sales commission as follows:

28

5

1    • If another real estate broker or agent (other than myself) represents the

2    purchaser of the San Marino Property (a "Buyer Agent"), the commission will be

3    four percent (4%) of the total purchase price to be split as follows: (i) one and a half

4    percent (1.5%) of the total purchase price to myself, and (ii) two and a half percent

5    (2.5%) of the total purchase price to the Buyer Agent.

6    • If I jointly represent the purchaser of the San Marino Property (as well as

7    the Debtor), the commission will be three percent (3%) of the total purchase price

8    payable to me.

9    6. I believe that I am a disinterested person within the meaning of 11 U.S.C. §

10    101(14) for the following reasons.

11    7. First, I am not a creditor or an equity security holder of the Debtor. I do not have a

12    no prepetition claim against the Debtor's bankruptcy estate. And I have not received a retainer for

13    the services to be performed on behalf of the Debtor related to the San Marino Property.

14    8. Second, I am not an insider of the Debtor because I am not a director, officer, or

15    person in control of the Debtor. I am also not a relative of a director, officer, or person in control

16    of the Debtor. That said, I am employed by the Broker (DRE 02062595). The CEO of the Broker

17    is Shao Xing Max Yang ("M. Yang") (DRE 02044638) who, as described in the Application, is

18    the attorney-in-fact for the Debtor's managing member, Jiaqing Yang ("J. Yang"). I am not

19    related to either J. Yang or M. Yang. Accordingly, I do not believe my relationship with the

20    Broker qualifies me as an "insider" within the meaning of 11 U.S.C. § 101(31)(B).

21    9. Finally, notwithstanding my employment with the Broker, I do not represent an

22    interest adverse to the Debtor. The Broker will not receive any compensation on behalf of my

23    services to the Debtor. I will not share any compensation from the Debtor or the sale of the San

24    Marino Property with the Broker.

25    I declare under penalty of perjury that the foregoing is true and correct to the best of my

26    knowledge.

27

28    Dated: 1-19-2022

Jay Wu

6

Exhibit 1, Page 10

## DECLARATION OF SHAO XING MAX YANG

I, Shao Xing Max Yang, am the attorney-in-fact for Jiaqing Yang ("J. Yang"), the managing member of Jinzheng Group (USA), LLC ("Debtor"), the debtor in possession in the above captioned bankruptcy case.  I make this declaration in support of the *Application to Employ the Jay Wu as Real Estate Agent for Debtor in Possession* ("Application"), to which this declaration is attached.  Any capitalized terms not otherwise defined herein have the same meanings as they do in the Application.

1.      The Debtor commenced this bankruptcy case by filing a voluntary chapter 11 bankruptcy petition on August 24, 2021 (the "Petition Date"). The Debtor continues to manage its financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107, 1108.

2.      J. Yang is the sole member of the Debtor.  I am the attorney-in-fact of J. Yang who currently resides in China and has not been to the United States since the global outbreak of Covid-19

3.      Debtor owns the real property located at 2240 Lorain, San Marino, CA ("San Marino Property").  A table summarizing the liens against the San Marino Property is below:

| **2240 Lorain, San Marino, CA** | Sch AB 55.6 | $3,000,000 |
|---|---|---|
| Less Liens | | |
| Royal Business Bank | Sch D 2.2 | $1,100,000 |
| Corona Capital | Sch D 2.3 | $540,000 |
| DNQ | Sch D 2.4 | $420,000 |
| | | |
| Net Equity | | $940,000 |

4.      I am informed and believe that Jay Wu ("Mr. Wu") is experienced in real estate transactions and is well qualified in negotiating the sale of the San Marino Property.  I believe the Debtor's employment of Mr. Wu as real estate agent is in the best interests of the Debtor's bankruptcy estate.

7

Exhibit 1, Page 11

5.      To the best of my knowledge, Mr. Wu is a disinterested person within the meaning of 11 U.S.C. § 101(14) for the following reasons.

6.      First, Mr. Wu is not a creditor or an equity security holder of the Debtor.  He does not have a no prepetition claim against the Debtor's bankruptcy estate.  And he has not received a retainer for the services to be performed on behalf of the Debtor related to the San Marino Property.

7.      Second, Mr. Wu is not an insider of the Debtor because he is not a director, officer, or person in control of the Debtor.  He is also not a relative of a director, officer, or person in control of the Debtor, including J. Yang and myself.

8.      Finally, Mr. Wu does not represent an interest adverse to the Debtor.  While Mr. Wu is employed by the Broker, the Broker has agreed to not accept any compensation for Mr. Wu's services to the Debtor or from the sale of the San Marino Property.

9.      I believe that the Debtor's employment is in the best interest of the Debtor's bankruptcy estate because Mr. Wu is well qualified to represent the Debtor and he has agreed to do so for the less than market-rate compensation.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: _1-19-2022_                            _____

                                             Shao Xing Max Yang

Exhibit 1, Page 12

12/14/21, 11:00 AM

**STATE OF CALIFORNIA**
**DEPARTMENT OF REAL ESTATE**

In reviewing a licensee�s information, please be aware that license discipline information may have been removed from a licensee�s record pursuant to Business & Professions Code Section 10083.2 (c). However, discipline information may be available from the California Department of Real Estate upon submittal of a request, or by calling the Department�s public information line at 1-877-373-4542.

The license information shown below represents public information. It will not reflect pending licensing changes which are being reviewed for subsequent updating. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

Some historical disciplinary action documents may not be in compliance with certain accessibility functions. For assistance with these documents, please contact the Department's Licensing Flag Section.

License information taken from records of the Department of Real Estate on 12/14/2021 10:59:52 AM

| | |
|---|---|
| **License Type:** | SALESPERSON |
| **Name:** | Wu, Jay S C |
| **Mailing Address:** | 418 E LAS TUNAS DR, SUITE 3F<br>SAN GABRIEL, CA 91776 |
| **License ID:** | 01761071 |
| **Expiration Date:** | 09/25/25 |
| **License Status:** | LICENSED |
| **Salesperson License Issued:** | 07/20/06 |
| **Former Name(s):** | Wu, Shu-Chieh |
| **Responsible Broker:** | License ID: 02062595<br>LT Management Group<br>1414 S AZUSA AVE B23<br>WEST COVINA, CA 91791 |
| **Comment:** | NO DISCIPLINARY ACTION<br>NO OTHER PUBLIC COMMENTS |

>>>> Public information request complete <<<<

Exhibit 1, Page 13

# EXHIBIT 1

# Jay Wu

Leasing & Maintenance Director
**jaywu@LTGmanagement.com**
**626.727.6100**
DRE: 01761071

As a Leasing & Maintenance Director, Jay Wu is dynamic, energetic, and highly experienced in both residential and commercial property management with solid history of success in leasing analysis, project coordination, tenant retention through renewals, and assistance in account collections.

Jay is also professional in revamping processes to enhance operation quality and effectiveness, aligning with the strategic goals and support future growth. Jay also has talent for cultivating and supporting tenant relationships, leading to high occupancy rates, minimal turnover, and renewal of long-term leases.

Jay is fluent in English, Mandarin, Spanish, and Taiwanese.

Licensed from: July 2006 till now

Numerous transactions in Leasing, Listing for both residential and commercial

Costar Power Broker Award Q3, 2020

Dominee Costar Power Broker Award Q4 2021

# EXHIBIT 2

CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP

(Seller's Brokerage Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

## SELLER AND BUYER RESPONSIBILITIES

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

| ☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant | Date |
|---|---|
| JINZHENG GROUP USA LLC | |

| ☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant | Date |
|---|---|

| Agent | LT Management Group | DRE Lic. # 02062595 |
|---|---|---|
| | Real Estate Broker (Firm) | |

| By | DRE Lic. # 01761071 | Date |
|---|---|---|
| (Salesperson or Broker-Associate, if any) Jay Wu | | |

© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

LT Management Group, 1414 S. Azusa Ave, Unit # B22 West Covina CA 91791       Phone: 6267276100       Fax:       2240 LORAIN
Jay Wu       Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Exhibit 1, Page 17

## CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions.
(b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation.(g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm    DO NOT COMPLETE. SAMPLE ONLY    License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent    DO NOT COMPLETE. SAMPLE ONLY    License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm    DO NOT COMPLETE. SAMPLE ONLY    License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent    DO NOT COMPLETE. SAMPLE ONLY    License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 (a) A dual agent may not, without the express permission of the principal, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com    2240 LORAIN

**CALIFORNIA ASSOCIATION OF REALTORS®**

## FAIR HOUSING & DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, 10/20)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.

2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§12900-12996,12955; 2 California Code of Regulations ("CCR") §§12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") §51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: Section 504 of Rehabilitation Act of 1973 29 U.S.C. §794; Ralph Civil Rights Act CC §51.7.; California Disabled Persons Act; CC §§54-55.32; any local city or county fair housing ordinances, as applicable.

3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**

4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership to, any of the following classes or categories is prohibited.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Sex | Sexual Orientation | Gender | Gender Identity | Gender Expression |
| Marital Status | Familial Status (family with a child or children under 18) | Source of Income (e.g., Section 8 Voucher) | Disability (Mental & Physical) | Medical Condition |
| Citizenship | Primary Language | Immigration Status | Military/Veteran Status | Age |
| Criminal History (non-relevant convictions) | | | Any arbitrary characteristic | |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") §10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation §2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR §2780

6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.

7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.

9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2020, California Association of REALTORS®, Inc.
FHDA 10/20 (PAGE 1 OF 2)

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

LT Management Group, 1414 S. Azusa Ave, Unit # B22 West Covina CA 91791          Phone: 6267276100          Fax:          2240 LORAIN
Jay Wu          Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheel chair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii) Charging that person higher rent or increased security deposit, or
   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://www.dfeh.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**,

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | |
|---|---|
| Buyer/Tenant _____ | Date _____ |
| Buyer/Tenant _____ | Date _____ |
| Seller/Landlord _____ **JINZHENG GROUP USA LLC** | Date _____ |
| Seller/Landlord _____ | Date _____ |

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**FHDA 10/20 (PAGE 2 OF 2)**

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

**CALIFORNIA ASSOCIATION OF REALTORS®**

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller | *JINZHENG GROUP USA LLC* Date | |
| Seller | | Date |
| Buyer | | Date |
| Buyer | | Date |
| Buyer's Brokerage Firm | DRE Lic # | Date |
| By | DRE Lic # | Date |
| Seller's Brokerage Firm *LT Management Group* | DRE Lic # *02062595* | Date *01/21/2022* |
| By | DRE Lic # *01761071* | Date |

*Jay Wu*

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**PRBS REVISED 12/18 (PAGE 1 OF 1)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

LT Management Group, 1414 S. Azusa Ave, Unit # B12 West Covina CA 91791    Phone: 6267276100    Fax:    2240 LORAIN
Jay Wu    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
(C.A.R. Form WFA, Revised 12/17)

Property Address: **2240 LORAIN RD, SAN MARINO, CA 91108** _____ ("Property").

### WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| Buyer/Tenant | _____ | Date _____ |
|---|---|---|
| Buyer/Tenant | _____ | Date _____ |
| Seller/Landlord | **JINZHENG GROUP USA LLC** | Date _____ |
| Seller/Landlord | _____ | Date _____ |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/17 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| CALIFORNIA ASSOCIATION OF REALTORS® | **RESIDENTIAL LISTING AGREEMENT**<br>(Exclusive Authorization and Right to Sell)<br>(C.A.R. Form RLA, Revised 6/21) |
|---|---|

**Date Prepared:** _01/21/2022_

1. **EXCLUSIVE RIGHT TO SELL:** _____ _JINZHENG GROUP USA LLC_ _____ ("Seller")
   hereby employs and grants _____ _LT Management Group_ _____ ("Broker")
   beginning (date) _February 1, 2022_ and ending at 11:59 P.M. on (date) _August 1, 2022_ ("Listing Period")
   the exclusive and irrevocable right to sell or exchange the real property described as _2240 LORAIN RD_
   _____, situated in _____ _SAN MARINO_ (City),
   _Los Angeles_ (County), California, _91108_ (Zip Code), Assessor's Parcel No. _5365-019-052_ ("Property").
   ☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing Addendum and Advisory (C.A.R. form PLA) for additional terms.
2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Two Million, Four Hundred Fifty Thousand_
      _____ Dollars ($ _2,450,000.00_ ).
   B. Listing Terms: _____.

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
      AND _____, as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
      OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _Four Percent (4%) If dual agency._ _____.
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ _2.500_ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____.
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2021, California Association of REALTORS®, Inc.

**RLA REVISED 6/21 (PAGE 1 OF 5)**                    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

LT Management Group, 1414 S. Azusa Ave, Unit # B22 West Covina CA 91791       Phone: 6367276100       Fax:       2240 LORAIN
Jay Wu       Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com

Exhibit 1, Page 23

Property Address: **2240 LORAIN RD, SAN MARINO, CA 91108** _____ Date: **01/21/2022**

4.  **A.   ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _____
**ADDITIONAL ITEMS INCLUDED:** _____
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.  (1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
☐ Other _____
**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5.  **MULTIPLE LISTING SERVICE:**
**A.  WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
**B.  WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
**C.  WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to ___ **West San Gabriel Valley** ___ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by paragraph 7 or by the MLS, Property will be listed with the MLS(s) specified above.

---

6.  **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
**A.  EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
**B.  IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
**C.  REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
**D.  NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

| **Seller's Initials** _____ / _____ | **Broker's/Agent's Initials** _____ / _____ |
|---|---|

---

7.  **PUBLIC MARKETING OF PROPERTY:**
**A.  CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see 7F) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
**B.  PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i) Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
**C.  "COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.
**D.  Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
(1) Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).

**RLA REVISED 6/21 (PAGE 2 OF 5)**     Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          **2240 LORAIN**

Exhibit 1, Page 24

Property Address: **2240 LORAIN RD, SAN MARINO, CA 91108**

OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

**E.** Whether 7D(1) or 7D(2) is selected, Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

**F.** ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** Paragraphs 7A (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**8. MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**A. PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**B. FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**9. SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**10. BROKER'S AND SELLER'S DUTIES:**

**A. Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 10D as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B. Presentation of Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

**C. Buyer Supplemental Offer Letters (Buyer Letters):**

(1) Paragraph 8 of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.

(2) **(A)** Seller instructs Broker not to present Buyer Letters, whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR **(B)** ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: (i) Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and (ii) if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E. Investigations and Reports:** Seller agrees, within **5 (or _____ ) Days** of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____ .
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**RLA REVISED 6/21 (PAGE 3 OF 5)**   Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   2240 LORAIN

Property Address: **2240 LORAIN RD, SAN MARINO, CA  91108**

**11. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**12. AGENCY RELATIONSHIPS:**

    **A. Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

    **B. Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

    **C. POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

    **D. CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

    **E. POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**13. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**14. PHOTOGRAPHS AND INTERNET ADVERTISING:**

    **A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Seller and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

    **B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**15. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

    **A.** Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.

    **B. TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**16. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**17. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 22A.

**19. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

    ☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

    *Seller is aware that the property will not be submitted to the MLS until all marketing materials are prepared.*

---

**RLA REVISED 6/21 (PAGE 4 OF 5)**  Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com    2240 LORAIN

Exhibit 1, Page 26

Property Address: **2240 LORAIN RD, SAN MARINO, CA 91108**

**20. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**21. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**22. DISPUTE RESOLUTION:**

**A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 22B.

**B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: **(i)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; **(ii)** an unlawful detainer action; **(iii)** the filing or enforcement of a mechanic's lien; and **(iv)** any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

**C. ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**23. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**24. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

☐ **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller **(i)** represents that the entity for which the individual is signing already exists and **(ii)** shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____   Date _____

*JINZHENG GROUP USA LLC*

Address _____ City _____ State ____ Zip _____

Telephone _____ Fax _____ E-mail _____

Seller _____   Date _____

Address _____ City _____ State ____ Zip _____

Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) **LT Management Group** _____ DRE Lic. # **02062595**

Address **1414 S. Azusa Ave, Unit # B22** _____ City **West Covina** _____ State **CA** Zip **91791**

By _____ Tel. **(626)993-5558** E-mail **jaywu@ltgmanagement.com** DRE Lic.# **01761071** Date _____

*Jay Wu*

By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2021 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**RLA REVISED 6/21 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com          2240 LORAIN

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: **_2240 LORAIN RD, SAN MARINO, CA  91108_** _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      **(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      **(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      **(3)** If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      **(4)** If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.

Seller's Initials ( _____ ) ( _____ )

**SA REVISED 12/15 (PAGE 1 OF 2)**

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Exhibit 1, Page 28

Property Address: **2240 LORAIN RD, SAN MARINO, CA  91108**                                    Date: **01/21/2022**

    **B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

    **C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

    **D. Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do not have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

    **E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

    **F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

    **A. Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

    **B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

    **C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

    **D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____   Date _____
Print Name **JINZHENG GROUP USA LLC**

Seller _____   Date _____
Print Name

| Real Estate Broker (Listing Firm) **LT Management Group** | | | DRE Lic.#: **02062595** |
|---|---|---|---|
| By _____ | **Jay Wu** DRE Lic.# **01761071** | Date | |
| By _____ | DRE Lic.# | Date | |
| Address **1414 S. Azusa Ave, Unit # B22** | City **West Covina** | State **CA** | Zip **91791** |
| Telephone **(626)993-5558**      Fax _____ | E-mail **jaywu@ltgmanagement.com** | | |

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SA REVISED 12/15 (PAGE 2 OF 2)**

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          2240 LORAIN

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY**
(C.A.R. Form CCPA, 12/19)

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

Buyer/Seller/Landlord/Tenant _____ Date _____
                          **JINZHENG GROUP USA LLC**
Buyer/Seller/Landlord/Tenant _____ Date _____

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA 12/19 (PAGE 1 OF 1)**



**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

LT Management Group, 1414 S. Azusa Ave, Unit # B22 West Covina CA 91791        Phone: 6267276100        Fax:        2240 LORAIN
Jay Wu        Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Exhibit 1, Page 30

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# ARBITRATION AGREEMENT
### (C.A.R. Form ARB, 12/15)

**Property Address** _2240 LORAIN RD, SAN MARINO, CA  91108_

1. **ARBITRATION OF DISPUTES:**
   The Parties signing below ("Parties") agree that any dispute or claim in Law or equity arising, or having arisen, between them out of the ☐ Purchase Agreement, or ☒ Listing Agreement, or ☐ Buyer Representation Agreement, ☐ Other _____ or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who have not signed this Arbitration Agreement, but who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this Arbitration Agreement shall be governed by the Federal Arbitration Act. Exclusions from this Arbitration Agreement are specified below.

   "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

   "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

   Seller/Buyer Initials _____ / _____          Broker/Agent Initials _____ / _____

2. **ADDITIONAL ARBITRATION TERMS:**
   A. **EXCLUSIONS:** The following matters are excluded from arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.
   B. **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
   C. **BROKERS:** Brokers who have not signed this Arbitration Agreement shall not be obligated nor compelled to arbitrate unless they agree to do so in writing. Any Broker(s) participating in arbitration but who have not signed this Arbitration Agreement shall not be deemed a party to this Arbitration Agreement.

| | |
|---|---|
| ☒ Seller ☐ Buyer ☐ Broker/Agent | _JINZHENG GROUP USA LLC_ |
| | (Signature)                                               (Date) |
| ☐ Seller ☐ Buyer ☒ Broker/Agent | _Jay Wu_ |
| | (Signature)                                               (Date) |
| ☐ Seller ☐ Buyer ☐ Broker/Agent | |
| | (Signature)                                               (Date) |
| ☐ Seller ☐ Buyer ☐ Broker/Agent | |
| | (Signature)                                               (Date) |

© 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

**ARB 12/15 (PAGE 1 OF 1)**

### ARBITRATION AGREEMENT (ARB PAGE 1 OF 1)

Case 2:21-bk-16674-ER Doc 91 Filed 01/24/22 Entered 01/24/22 17:39:17 Desc
Main Document Page 28 of 31

CALIFORNIA ASSOCIATION OF REALTORS®

# REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (FOR SELLER REPRESENTATIVES)

(C.A.R. Form RCSD-S, Revised 6/19)

This form is not an assignment. It should not be used to add new parties after a contract has been formed. The purpose of this form is to identify who the principal is in the transaction and who has authority to sign documents on behalf of the principal.

This is a disclosure to one or more of the following: Listing Agreement, Purchase Agreement, or Other Agreement, specified below in which ***JINZHENG GROUP USA LLC*** is identified as ("Seller").

If a trust, identify Seller as the trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust 3.) Full name of trust should be identified in 1A below. If power of attorney, insert principal's name as Seller.

1. A. ☐ **TRUST:** (1) The Property is held in trust pursuant to a trust document, titled (full name of trust): ______

(2) The person(s) signing below is/are Sole/Co/Successor Trustee(s) of the Trust.

B. ☒ **ENTITY:** Seller is a ☐ Corporation, ☒ Limited Liability Company, ☐ Partnership ☐ Other: ______ which has authorized the officer(s), managing member(s), partner(s) or person(s) signing below to act on its behalf. An authorizing resolution of the applicable body of the entity described above ☐ is ☐ is not attached.

C. ☐ **POWER OF ATTORNEY:** Seller ("Principal") has authorized the person(s) signing below ("Attorney-In-Fact", "Power of Attorney" or "POA") to act on his/her behalf pursuant to a General Power of Attorney ( ☐ Specific Power of Attorney for the Property), dated ______. **This form is not a Power of Attorney. A Power of Attorney must have already been executed before this form is used.**

D. ☐ **ESTATE:** (1) Seller is an ☐ estate, ☐ conservatorship, ☐ guardianship, or ☐ ______ identified by Superior Court Case name as ______, Case # ______. (2) The person(s) signing below is/are court approved representatives (whether designated as Sole or Co-Executor, Administrator, Conservator, Guardian) of the estate, conservatorship or guardianship identified above.

2. Seller's Representative represents that the trust, entity or power of attorney for which that Party is acting already exists.

**Seller:**

By ______ Date: ______
(Sign Name of Trustee, Officer, Managing Member, Partner, Attorney-in-Fact or Administrator/Executor)

(Print Representative Name) ***JINZHENG GROUP USA LLC*** Title: ***Seller***

By ______ Date: ______
(Sign Name of Trustee, Officer, Managing Member, Partner, Attorney-in-Fact or Administrator/Executor)

(Print Representative Name) ______ Title: ______

**Acknowledgement of Receipt:**

**AT TIME OF LISTING**

Seller and ***LT Management Group*** ("Seller's Broker") are parties to a Listing Agreement dated ***01/21/2022*** for property known as ***2240 LORAIN RD, SAN MARINO, CA 91108***.

Real Estate Broker ***LT Management Group***

By ______ Date ______

***Jay Wu***

© 2019, California Association of REALTORS®, Inc.

LT Management Group, 1414 S. Azusa Ave, Unit # B22 West Covina CA 91791 Phone: 6267276100 Fax: 2240 LORAIN
Jay Wu Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com

**AT TIME OF SALE**

Seller and _____ ("Buyer") are parties to a

Purchase Agreement dated _____ for property known as **2240 LORAIN RD, SAN MARINO, CA  91108** .

Buyer _____    Date _____

Buyer _____    Date _____

---

**AT TIME OF OTHER AGREEMENT**

Seller and _____ ("Other Party") are

parties to an _____ Agreement

dated _____, if applicable, for property known as **2240 LORAIN RD, SAN MARINO, CA  91108** .

Other Party _____

By _____    Date _____

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RCSD-S REVISED 6/19 (PAGE 2 OF 2)

**REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (RCSD-S PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com          2240 LORAIN

1

**PROOF OF SERVICE OF DOCUMENT**

2

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1063 E. Las Tunas Dr., San Gabriel, CA 91776

3

4

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION TO EMPLOY JAY WU AS REAL ESTATE AGENT FOR DEBTOR IN POSSESSION; DECLARATIONS OF JAY WU AND SHAO XING MAX YANG IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

5

6

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 24, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

7

8

9

- Donna C Bullock      donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- Michael F Chekian      mike@cheklaw.com, chekianmr84018@notify.bestcase.com

10

- Susan Titus Collins      scollins@counsel.lacounty.gov
- Richard Girgado      rgirgado@counsel.lacounty.gov

11

- M. Jonathan Hayes      jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmf

12

irm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- Christopher J Langley      chris@slclawoffice.com,

13

omar@slclawoffice.com;langleycr75251@notify.bestcase.com
- Benjamin R Levinson      ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com

14

- Eric A Mitnick      MitnickLaw@aol.com, mitnicklaw@gmail.com
- Giovanni Orantes      go@gobklaw.com, gorantes@orantes-

15

law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify. b estcase.com

16

- Matthew D. Resnik      matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rh m

17

firm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;slo an@rhmfirm.com

18

- Allan D Sarver      ADS@asarverlaw.com
- United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov

19

- Hatty K Yip      hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

20

☐        Service information continued on attached page

21

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) January 24, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

22

23

24

- Hon. Ernest Robles, 255 E. Temple Street, Suite 1560, Los Angeles, CA 90012
- Office of the U.S. Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017

25

26

☐        Service information continued on attached page

27

28

9

Exhibit 1, Page 34

1

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on

2
(*date*) January 24, 2022, I served the following persons and/or entities by personal delivery, overnight mail
service, or (for those who consented in writing to such service method), by facsimile transmission and/or
email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight

3
mail to, the judge will be completed no later than 24 hours after the document is filed.

4
☐      Service information continued on attached page

5
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

6
January 24, 2022          John Martinez                              /s/John Martinez
_Date_                          _Printed Name_                        _Signature_

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

Exhibit 1, Page 35

# EXHIBIT 2

1   Gene H. Shioda – SBN 186780
    ghs@slclawoffice.com
2   Christopher J. Langley – SBN 258851
    chris@slclawoffice.com
3   Steven P. Chang – SBN 221783
    schang@slclawoffice.com
4   **SHIODA, LANGLEY & CHANG LLP**
5   1063 E. Las Tunas Dr.
    San Gabriel, CA 91776
6   Tel: (626) 281-1232
    Fax: (626) 281-2919
7

8   Counsel for Jinzheng Group (USA) LLC
    Debtor and Debtor-in-Possession
9

> FILED & ENTERED
>
> FEB 22 2022
>
> CLERK U.S. BANKRUPTCY COURT
> Central District of California
> BY gonzalez DEPUTY CLERK

CHANGES MADE BY COURT

10              **UNITED STATES BANKRUPTCY COURT**

11     **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

12

| | |
|---|---|
| 13  In re | Case No. 2:21-bk-16674-ER |
| 14 | Chapter 11 |
| 15  JINZHENG GROUP (USA) LLC | **ORDER GRANTING APPLICATION BY DEBTOR-IN-POSSESSION TO EMPLOY JAY WU AS REAL ESTATE AGENT FOR ESTATE** |
| 16 | |
| 17       Debtor and Debtor in Possession. | |
| 18 | [Unopposed Motion – No Service of Proposed Order of Lodgment Period Required Pursuant to LBR 9021-1(b)(4)] |
| 19 | |
| 20 | |

21

22      The Court having read and considered the Chapter 11 Debtor and Debtor-in-possession's

23  Application to Employ Jay Wu of LT Management Group Estate as the Debtor-in-Possession's

24  Real Estate Agent (the "Application") January 24, 2020 as Docket No. 91 and, it appearing that

25  proper notice has been given and good cause has been shown, the Court makes its Order as

26  follows:

27      IT IS ORDERED:

28      1. The Application is approved;

1

2. The Debtor and Debtor-in-possession is authorized to employ Jay Wu of LT

Management Group Estate as the Estate's Real Estate Agent ("Agent"), effective January 24,

2022, to market and sell real property located at 2240 Lorain Rd. San Marino, CA 91108, on the

terms and conditions set forth in the Application, with compensation pursuant to § 328;

3. Agent's fees and costs are to be paid as set forth in the Application and upon further

application and approval of this Court;

IT IS SO ORDERED.

# # #

Date: February 22, 2022

Ernest M. Robles
United States Bankruptcy Judge

2

# EXHIBIT 3

Gene H. Shioda – SBN 186780
ghs@slclawoffice.com
Christopher J. Langley – SBN 258851
chris@slclawoffce.com
Steven P. Chang – SBN 221783
schang@slclawoffice.com
**SHIODA, LANGLEY & CHANG LLP**
1063 E. Las Tunas Dr.
San Gabriel, CA 91776
Tel: (626)281-1232
Fax: (626)281-2919

Counsel for Jinzheng Group (USA) LLC
Debtor and Debtor-in-Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JINZHENG GROUP (USA) LLC<br><br><br>Debtor in Possession. | Case No. 2:21-bk-16674-ER<br><br>Chapter 11<br><br>**DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED MAY 4, 2022**<br><br>Plan Confirmation Hearing (TBD) |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1
        A.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing..............1
                1.      Time and Place of the Confirmation Hearing ................................................1
                2.      Deadline for Voting For or Against the Plan ..................................................1
                3.      Deadline for Objecting to the Confirmation of the Plan................................2
                4.      Identity of Person to Contact for More Information Regarding the Plan .........2
        B.      Disclaimer ......................................................................................................2
II.     BACKGROUND INFORMATION .................................................................2
        A.      Principals and Management of Debtor's Business .......................................2
        B.      Description and History of Debtor's Business................................................2
        C.      Events Leading to Debtor's Chapter 11 Filing ............................................4
        D.      Significant Events During the Bankruptcy Case .........................................5
                1.      The Debtor's Bankruptcy Filing ...................................................................5
                2.      The Debtor Employs Shioda Langley & Chang LLP as General Counsel.......5
                3.      The Claims Bar Date and Claims Filed Against Bankruptcy Estate ...............5
                4.      The Debtor Files Motions for 2004 Examinations of Mr. Carlin,
                        Mr. Pae, and Mr. Park ...................................................................................6
                5.      The Court Extends the Debtor's Exclusivity Period to File Plan and
                        Solicit Acceptances.......................................................................................6
                6.      The Debtor Employs Jay Wu as Real Estate Agent to Sell
                        San Marino Property .....................................................................................6
                7.      The U.S. Trustee Appoints the Committee Which Seeks to Employ
                        Pachulski Stang Ziehl & Jones LLP as General Counsel ..................................6
                8.      The Debtor Moves for Return of Legal Retainer From Ms. Bullock ...............7
                9.      The Debtor Objects to Proofs of Claim .........................................................7
                10.     The Debtor Files State Court Actions Against Insiders and
                        Real Estate Brokers.......................................................................................8
                        a.      The Betula Action, Los Angeles Superior Court,
                                Case 22STCV04623.........................................................................8
                        b.      The Broker Action, Los Angeles Superior Court,
                                Case 22AHCV00093 ........................................................................8
                11.     Royalty Equity Lending Moves for Relief from Stay Against the
                        Los Angeles Properties.................................................................................10
                12.     The Debtor Moves to Change Membership of the Committee and
                        Disband the Committee................................................................................10
                13.     The Committee Moves for Appointment of Chapter 11 Trustee or,
                        In the Alternative, Termination of Exclusivity Order and Authorizing
                        Standing to Prosecute Insider Actions ........................................................11
                14.     The Debtor's Investigation of Fraudulent Transfer Claims Involving
                        150 East La Sierra Drive, Arcadia, CA .......................................................11
                15.     The Debtor's Renewed Efforts to Entitle the Los Angeles Properties
                        and Paradise Drive Lots ...............................................................................11

ii

III.  THE PLAN OF REORGANIZATION..................................................................11
    A.  What Creditors and Interest Holders Will Receive Under the Proposed Plan.......12
    B.  Unclassified Claims ......................................................................12
        1.  Administrative Expenses ....................................................12
        2.  Priority Tax Claims ............................................................13
    C.  Classified Claims and Interests ...................................................13
        1.  Classes of Secured Claims ..................................................14
        2.  Classes of Priority Unsecured Claims ................................19
        3.  Classes of General Unsecured Claims ................................19
        4.  Class of Interest Holders ....................................................21
    D.  Means of Effectuating the Plan ....................................................21
        1.  Funding for the Plan...........................................................21
        2.  Composition of the Debtor After the Effective Date ...........21
        3.  Post-Confirmation Management and Compensation ...........22
        4.  Disbursing Agent ...............................................................22
        5.  Objections to Claim ...........................................................22
        6.  Avoidance Actions, Strong Arm Powers, and Causes of Action....................22
        7.  Employment of Professionals by the Reorganized Debtor and Payment
           of Professional Fees and Expenses After the Effective Date...........................23
        8.  Exemption from Transfer Taxes.........................................23
        9.  Distributions to Be Made Pursuant to the Plan ..................23
        10.  Exculpations and Releases ................................................23
        11.  Injunctions........................................................................24
        12.  Executory Contracts and Unexpired Leases ......................25
        13.  Changes in Rates Subject to Regulatory Commission Approval...................26
        14.  Retention of Jurisdiction ..................................................26
IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES .............................26
    A.  Classification and Treatment of Claims .......................................26
    B.  Who May Object to Confirmation of the Plan..............................27
    C.  Who May Vote to Accept or Reject the Plan................................27
        1.  Allowed Claims .................................................................27
        2.  Voting Requirements .........................................................27
        3.  Votes Necessary for a Class to Accept the Plan .................28
        4.  Votes Necessary for a Class to Accept the Plan .................28
    D.  Cramdown: Treatment of Nonaccepting Classes..........................28
    E.  Liquidation Analysis ...................................................................29
    F.  Feasibility ...................................................................................29
    G.  Risk Factors ................................................................................30
    H.  Tax Consequences of the Plan .....................................................30
V.  EFFECT OF CONFIRMATION .......................................................................30
    A.  Discharge .....................................................................................30
    B.  Revesting of Property in the Reorganized Debtor ........................31
    C.  Modification of Plan ....................................................................31

iii

1

D.     Post-Confirmation Status Reports ...........................................................31

E.     Quarterly Fees ...........................................................................................31

F.     Post-Confirmation Conversion or Dismissal ..........................................31

G.     Final Decree ..............................................................................................32

DECLARATION OF SHAO XING MAX YANG ......................................................33

2

3

4

5

Exhibit 1 – Summary of Debtor's Real Property Holdings

Exhibit 2 – Summary of Claims Against Debtor's Bankruptcy Estate

Exhibit 3 – Liquidation Analysis

Exhibit 4 – Summary of Plan Payments

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

## I.    INTRODUCTION

JINZHENG GROUP (USA), LLC ("Debtor") is the debtor in a Chapter 11 bankruptcy case.  The document you are reading is the *Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement Dated May 4, 2022* (the "Plan").   All exhibits to this Plan are considered part of this Plan but, in the event of any conflict between this Plan and its exhibits, the terms of this Plan control.  The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

This Plan is a reorganizing plan.  In other words, the Debtor seeks to make payments under the Plan by a new value contribution and new financing as described herein.  The Effective Date of the Plan is14 days after the Bankruptcy Court enters the Order confirming this Plan.

### A.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

THE COURT HAS NOT YET CONFIRMED THE PLAN, SO THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

#### 1.    Time and Place of the Confirmation Hearing

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2022, in Courtroom 1568, United States Bankruptcy Court, Los Angeles Division, 255 E. Temple St. Los Angeles, CA 90012.

#### 2.    Deadline for Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Christopher J. Langley, Esq., SHIODA LANGLEY & CHANG LLP, 1063 E. Las Tunas Dr., San Gabriel, CA 91776 phone: (626)281-1232, facsimile (626)281-2919

Your ballot must be received by _____ or it will not be counted.

**3.      Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Christopher J. Langley, Esq., SHIODA LANGLEY & CHANG LLP, 1063 E. Las Tunas Dr., San Gabriel, CA 91776; Phone: (626) 281-1232; Facsimile (626) 281-2919 by _____.

**4.      Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Christopher J. Langley, Esq., SHIODA LANGLEY & CHANG LLP, 1063 E. Las Tunas Dr., San Gabriel, CA 91776; Phone: (626) 281-1232; Facsimile (626) 281-2919.

**B.      Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records.  The information contained in this Disclosure Statement is provided by the Debtor.  The Debtor represents that everything stated in the Plan is true to the Debtor's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

**II.      BACKGROUND INFORMATION**

**A.      Principals and Management of Debtor's Business**

Debtor is a California limited liability company.  Its sole member is Jianqing Yang.  Mr. Yang currently resides in China and has not been to the United States since the global outbreak of Covid-19.

Before its bankruptcy filing, the Debtor was managed by Betty Zheng.  On or about November 29, 2021, Ms. Zheng resigned as manager.  Max Yang, who is Jianqing Yang's attorney-in-fact, now runs the day-to-day management of the Debtor.

**B.      Description and History of Debtor's Business**

The Debtor is in the business of acquiring and developing real estate. A table summarizing the Debtor's real estate holdings, and the liens thereon, is attached hereto as **Exhibit 1**.  Generally, the Debtor's real estate holdings are classified in four categories.

The "Los Angeles Properties" refers to over raw land as well as adjacent multi-family buildings that the Debtor intends to develop into homes in the Lincoln Heights neighborhood of

2

1   Los Angeles. The Los Angeles Properties include: (i) 2929 Amethyst Street, Los Angeles, CA

2   (APN 5209-009-001), (ii) 2526-2528 Lincoln Park, Los Angeles, CA (APN 5208-025-001), (iii)

3   2520-2522 Lincoln Park, Los Angeles, CA (APN 5208-025-002), (iv) 2602 Lincoln Park, Los

4   Angeles, CA (APN 5208-025-014); and (v) 2600 Sierra Street, Los Angeles, CA (APN 5209-005-

5   003). The Debtor acquired the Los Angeles Properties from August 2016 to July 2017 with funds

6   contributed by Mr. Yang and without the need for financing. Pursuant to an appraisal by

7   Cushman & Wakefield Western, Inc., dated June 22, 2021, the Los Angeles Properties have a

8   collective as-is value of $23,450,000.00.

9   As discussed below, the Debtor employed Betula Lenta, Inc. ("Betula") as a real estate

10  consultancy company, to assist it with the development of the Los Angeles Properties. The Debtor

11  then used the Los Angeles Properties as collateral to obtain loans for developing them into a

12  residential development. These loan proceeds were then used to pay exorbitant consulting fees to

13  Betula and other companies without little progress (if any) being made towards the development.

14  The Los Angeles Properties are encumbered by liens held by (a) the Los Angeles County

15  Treasurer and Tax Collector, and (b) Royalty Equity Lending, LLC. These secured claims are

16  treated in Classes 1 and 2, respectively.

17  The "Paradise Drive Lots" are 10 parcels of raw land adjacent to 2929 Amethyst Street that

18  the Debtor intends to develop with the Los Angeles Properties. The Paradise Drive Lots include

19  APNs (i) 5209-021-002, -005, -006; (ii) 5209-022-007; (iii) 5209-023-022, -029; -030; -031; -032;

20  and (iv) 5209-025-006. The Paradise Drive Lots are encumbered by liens held by (a) the Los

21  Angeles County Treasurer and Tax Collector, and (b) Breezeblocks Capital, LLC. These secured

22  claims are treated in Classes 3 and 4, respectively.

23  The "San Marino Property" is a three-bedroom single-family home located at 2240 Lorain,

24  San Marino, CA. Mr. Yang caused the San Marino Property to be transferred to the Debtor for no

25  consideration, which the Debtor then used as collateral to obtain loans for the purpose of

26  developing the Los Angeles Properties and Paradise Drive Lots. The Debtor has employed Jay

27  Wu to market and sell the San Marino Property. It is currently listed for sale at $2,350,000. The

28  San Marino Property is encumbered with liens held by (a) Royal Business Bank, (b) Corona

3

1   Capital Group, LLC, and (c) DNQ LLC.  These secured claims are treated in Classes 5, 6, and 7,
2   respectively.

3       The "Van Nuys Property" is a four-bedroom condominium located at 6840 De Celis Place,
4   Apartment 9, Van Nuys, CA 91406.  Mr. Yang caused the Van Nuys Property to be transferred to
5   the Debtor for no consideration, which the Debtor then used as collateral to obtain loans for the
6   purpose of developing the Los Angeles Properties and Paradise Drive Lots.  The Debtor intends to
7   either sell or refinance the Van Nuys Property.  The Van Nuys Property is encumbered with liens
8   held by (a) the Los Angeles County Treasurer and Tax Collector, (b) Investment Management
9   Company, and (c) Michael and Shari Dorff.  These secured claims are treated in Class 8, 9, and
10  10, respectively.

11  **C.    Events Leading to Debtor's Chapter 11 Filing**

12      Beginning in December 2017, Ms. Zheng caused the Debtor to contract with Betula Lenta,
13  Inc. ("Betula"), a real estate consultancy company, to assist it with the development of the Los
14  Angeles Properties. Betula describes itself as "a team of the best real estate consultants providing
15  solutions for real estate investors looking for opportunities to invest in development or investors
16  for their developments."  https://www.betulalenta.com/about-us.  Betula was directed by Jonathan
17  Pae and David Park.

18      Ultimately, Debtor and Betula entered into three contracts (collectively, the "Betula
19  Agreements"):

20          • A "Predevelopment Consulting Agreement" dated December 7, 2017, in which the
21            Debtor agreed to pay Betula $2,594,000 for consulting services.
22          • A "Construction Management Agreement" dated June 22, 2018, in which the
23            Debtor agreed to pay Betula an additional $4,517,913.00 for "phase 2" services.
24          • A "CFD Bonds Procurement – CM – Development Agreement" dated March 13,
25            2019, in which the Debtor agreed to pay Betula an additional $6,224,490.00 for
26            "construction" services.

27      While the Betula Agreements totaled over $13,336,903.00 and much of the fees were paid,
28  the Los Angeles Properties remain unentitled and undeveloped.  Debtor's payment of these

4

consulting fees precluded it from timely paying its secured debt obligations, which eventually

resulted in Royalty Equity Lending, LLC noticing a non-judicial trustee sale of the Los Angeles

Properties for August 24, 2021.

### D. Significant Events During the Bankruptcy Case

#### 1. The Debtor's Bankruptcy Filing

On August 24, 2021 ("Petition Date"), the Debtor filed an emergency voluntary Chapter 11

petition, initiating this Bankruptcy Case. Debtor was represented at the time by the Law Offices

of Donna Bullock ("Bullock"). And Debtor was managed, at least nominally, by Michael Carlin

as Chief Restructuring Officer.

Little ostensible progress, if any, was made towards Debtor's reorganization during Ms.

Bullock's representation and Mr. Carlin's management. Neither Ms. Bullock nor Mr. Carlin

sought court approval of their employment.

#### 2. The Debtor Employs Shioda Langley & Chang LLP as General Counsel

On December 6, 2021, the Debtor filed a substitution of counsel to name Shioda, Langley

& Chang LLP ("SLC") as its general bankruptcy counsel. That same day, the Debtor filed an

*Application to Employ Shioda Langley & Chang LLP as General Insolvency Counsel* [Doc. 49].

No opposition was timely filed. And on January 18, 2022, the Court entered an order approving

same [Doc. 81].

#### 3. The Claims Bar Date and Claims Filed Against Bankruptcy Estate

On December 7, 2021, the Court entered an *Order Setting Bar Date for Filing Proofs of

Claim* [Doc. 55], which set the claims bar date for February 4, 2022 ("Claims Bar Date").

On December 9, 2021, the Debtor served a *Notice of Bar Date for Filing Proofs of Claim*

[Doc. 56] on all creditors. So far, twenty-one (21) proofs of claims have been filed against the

Debtor's bankruptcy estate. A table summarizing the claims against Debtor's bankruptcy estate is

attached hereto as **Exhibit 2**.

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

1

       **4.**      **The Debtor Files Motions for 2004 Examinations of Mr. Carlin, Mr. Pae,**

2

       **and Mr. Park**

3

      In December 2021, the Debtor filed separate motions to conduct examinations of Mr.

4

Carlin, Mr. Pae, and Mr. Park pursuant to Rule 2004 of the Federal Rules of Bankruptcy

5

Procedure [Docs. 57, 68, 69], which the Court granted by written orders [Docs. 60, 72, 73].

6

       **5.**      **The Court Extends the Debtor's Exclusivity Period to File Plan and Solicit**

7

      **Acceptances**

8

      On December 13, 2021, the Debtor filed a *Motion for Order Extending Debtor's*

9

*Exclusivity Period to File Chapter 11 Plan and Solicit Acceptances Thereto* [Doc. 61]

10

("Exclusivity Motion").  Royalty Equity Lending opposed.  The Court granted the Exclusivity

11

Motion pursuant to an Order entered on January 18, 2022 [Doc. 80] ("Exclusivity Order").

12

      Pursuant to the Exclusivity Order, the exclusivity periods for Debtor to file a plan was

13

extended to April 21, 2020, and to solicit acceptances of its Plan was extended to May 20, 2022.

14

       **6.**      **The Debtor Employs Jay Wu as Real Estate Agent to Sell San Marino**

15

      **Property**

16

      On January 24, 2022, the Debtor filed an *Application to Employ Jay Wu as Real Estate*

17

*Agent* [Doc. 91] ("Real Estate Agent Application").  In it, the Debtor sought to employ Jay Wu as

18

real estate agent to market and sell the San Marino Property.  No opposition was filed.

19

      On February 22, 2022, the Court entered an order approving the Broker Application and

20

Debtor's employment of Mr. Wu to sell the San Marino Property [Doc. 124] ("Real Estate Agent

21

Order").

22

       **7.**      **The U.S. Trustee Appoints the Committee Which Seeks to Employ**

23

      **Pachulski Stang Ziehl & Jones LLP as General Counsel**

24

      On January 25, 2022, the United States Trustee filed a *Notice of Appointment and*

25

*Appointment of Committee of Creditors Holding Unsecured Claims* [Doc. 93], which named

26

Betula, Pennington Construction Advisors, Inc. ("Pennington"), and The Phalanx Group Inc.

27

("Phalanx") as committee members.

28

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

On February 8, 2022, the Committee filed an *Application for Order Authorizing and Approving Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as of January 25, 2022* [Doc. 98] ("Committee Counsel Employment Application").  The Committee seeks to employ Pachulski Stang Ziehl & Jones LLP ("PSZJ") at hourly rates more than double those charged to the Debtor by SLC.

On February 22, 2022, the Debtor filed an objection to the Committee Counsel Employment Application.  A hearing on the Committee Counsel Employment Application is currently scheduled for May 17, 2022 at 10:00 a.m.

**8.    The Debtor Moves for Return of Legal Retainer From Ms. Bullock**

On February 2, 2022, the Debtor filed a *Motion to Determine Compensation Paid to Counsel Was Excessive Under 11 U.S.C. § 329 and FRBP 2017* [Doc. 96] ("Disgorgement Motion"), which requested the Court order Ms. Bullock to return all compensation paid to her by or on behalf of the Debtor because she was never employed as a professional under 11 U.S.C. § 327.  Ms. Bullock opposed.  A hearing was held on February 23, 2022, during which the Court granted in part and denied in part the Disgorgement Motion.

On February 28, 2022, the Court entered an *Order Granting Disgorgement Motion* [Doc. 134] ("Disgorgement Order"), which ordered Ms. Bullock to return to Debtor all payments received in excess of $6,268 (the "Disgorged Funds"). The Disgorged Funds shall be maintained in the attorney-client trust account of the Debtor's current counsel, SLC, and shall not be disbursed absent further order of the Court. Bullock shall transfer the Disgorged Funds to SLC's attorney-client trust account within fourteen days of the date of issuance of this Order.  The Disgorgement Order further provided that it was without prejudice to Ms. Bullock's ability to file an application seeking authorization to be retained as the Debtor's general bankruptcy counsel nunc pro tunc.  To date, Ms. Bullock has not filed such an application.

**9.    The Debtor Objects to Proofs of Claim**

In February 2022, the Debtor filed objections to several proofs of claim, including (i) Claims 9 and 10 filed by Mr. Carlin [Doc. 116], (ii) Claim 13 filed by Fry & Associates [Doc.

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

110], (iii) Claim 17 filed by Phalanx [Doc. 113], (iv) Claim 18 filed by Betula [Doc. 120], and (v) Claim 20 filed by Pennington [Doc. 107].

Hearings on these claim objections are currently scheduled for May 17, 2022.  The Debtor intends to file objections to additional proofs of claim in due course.  The Debtor reserves all rights to object to further proofs of claim.

### 10.    The Debtor Files State Court Actions Against Insiders and Real Estate Brokers

During this Bankruptcy Case, the Debtor has filed two separate lawsuits against parties responsible for its financial problems that necessitated the Debtor's bankruptcy filing.

#### a.    The Betula Action, Los Angeles Superior Court, Case 22STCV04623

On February 7, 2022, the Debtor filed a complaint against two sets of defendants (i) Mr. Pae, Mr. Park, and Betula (the "Betula Parties"), and (ii) Ms. Zheng and her real estate company, CBW Global, Inc. (the "Zheng Parties"), with the Superior Court of California, County of Los Angeles, initiating *Jinzheng Group (USA), LLC v. Pae et al*, Case No. 22STCV04623 ("Betula Action").

In the Betula Action, the Debtor that Ms. Zheng, Mr. Pae, and Mr. Park conspired to charge it over $12 million in false service fees pursuant to the Betula Agreements described above. The Debtor pleads causes of action for (i) breach of contract against the Betula Parties, (ii) intentional misrepresentation against the Betula and Zheng Parties, (iii) negligent misrepresentation against the Betula and Zheng Parties, (iv) negligence against the Betula and Zheng Parties, (v) breach of fiduciary duty against the Zheng Parties, (vi) aiding and abetting against the Betula and Zheng Parties, an (vii) unfair business practices against the Betula and Zheng Parties. The Debtor seeks general damages exceeding $5,000,000, plus special damages, punitive damages, and attorney's fees and costs.

#### b.    The Broker Action, Los Angeles Superior Court, Case 22AHCV00093

On February 23, 2022, the Debtor filed a complaint against three sets of the defendants (i) Testa Capital Group and Thomas L. Testa ("Testa Parties"), (ii) Homes Loans Unlimited, Inc., Daniel Triana, James Shields, and Shawn Sourgose ("HLU Parties"), and (ii) Betty Zheng and

1  CBW Global, Inc. ("Zheng Parties"), with the Superior Court of California, County of Los

2  Angeles, initiating *Jinzheng Group (USA), LLC v. Testa Capital Group, et al.*, Case No.

3  22AHCV00093 ("Broker Action").

4       In the Broker Action, the Debtor alleges that Ms. Zheng had a scheme to defraud and harm

5  the Debtor by arranging for unscrupulous lenders to lend or otherwise negotiate loans for the

6  Debtor while charging the Debtor unconscionable rates and fees for their loan services.

7  Specifically, in October 2020, the Debtor's loan with BOBS, LLC (predecessor in interest to

8  Royalty Equity Lending) had matured.  The Debtor was introduced to the Testa Parties and HLU

9  Parties (collectively, the "Broker Parties") to obtain a new loan or in the alternative to obtain a

10  new loan for the Debtor.  However, the Broker Parties failed to actually provide any services or

11  shop for new loans for the Debtor.  The Broker Parties ultimately obtained a 3-month extension

12  for the Debtor and were compensated 2% of the total combined gross loan amount funded by

13  lender or minimum of $287,000.00 whichever is higher. In addition, each of the three brokers

14  (Testa, HLU, and Sourgouse) would receive a $500,000.00 fee when the loan is paid off.  There is

15  no explanation or justification why three loan brokers were needed for this project and why three

16  separate fees were necessary.  There is absolutely no evidence of any effort by any of the Broker

17  Parties to attempt to obtain a favorable terms either through a new lender or in good faith

18  negotiated with the existing lender for the extension or reduction in terms.  As a result of these

19  payments, the Debtor has suffered great economic loss.

20       The Debtor pleads causes of action for (i) breach of fiduciary duties against all defendants,

21  (ii) intentional misrepresentation against all defendants, (iii) negligent misrepresentation against

22  all defendants, (iv) negligence against all defendants, (v) aiding and abetting against all

23  defendants, (vi) unfair business practices against all defendants.  The Debtor seeks general

24  damages exceeding $5,000,000, plus special damages, punitive damages, and attorney's fees and

25  costs.

26

27

28

9

11. **Royalty Equity Lending Moves for Relief from Stay Against the Los Angeles Properties**

On February 24, 2022, Royalty Equity Lending filed a *Motion for Relief for the Automatic Stay Under 11 U.S.C. § 362* [Doc. 127] ("Royalty Equity Lending MRS"), which seeks relief from stay to foreclose against the Los Angeles Properties.  Royalty Equity Lending seeks relief under 11 U.S.C. § 362(d)(1) and (2).  The Royalty Equity Lending MRS values the Los Angeles Properties in the amount of $9,335,000.00, which is approximately 40% of the appraised value according to Cushman & Wakefield, Inc. in June 2021 ($23,450,000.00).  Royalty Equity Lending argues that its interest in the Los Angeles Properties is under-secured.  A hearing on the Royalty Equity Lending MRS is currently scheduled for March 21, 2022, at 10:00 a.m.

For the purposes of this Plan, the Debtor has used Royalty Equity Lending's valuation of the Los Angeles Properties for determining the secured status of its claim against the Debtor's bankruptcy estate.

12. **The Debtor Moves to Change Membership of the Committee and Disband the Committee**

On March 1, 2022, the Debtor filed a *Motion to Change Membership and Disband Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. § 1102(a)* [Doc. 135] ("Committee Membership Motion").  In it, the Debtor argued Betula, Pennington, and Phalanx cannot adequately represent the interests of unsecured creditors because (i) Betula is an insider with an actual and unavoidable conflict of interest as it is currently being sued by Debtor in the Betula Action, (ii) Pennington is a creditor of Betula—not Debtor, and (iii) Phalanx admits it was not licensed to perform the services contracted for and, to date, has failed to provide any explanation or documentation for the services it allegedly provided Debtor.  The Debtor further argued that the Committee should be disbanded because there is no need for its services as Debtor would be proposing a plan that will pay allowed general unsecured claims in full.

A hearing on the Committee Membership Motion is currently scheduled for May 17, 2022, at 10:00 a.m.

13.    **The Committee Moves for Appointment of Chapter 11 Trustee or, In the Alternative, Termination of Exclusivity Order and Authorizing Standing to Prosecute Insider Actions**

Also, on March 1, 2022, the Committee filed a *Motion for (I) the Appointment of a Chapter 11 Trustee, or In the Alternative, (II) (A) Termination of Plan and Solicitation Exclusivities and (B) Authorizing Standing for the Committee to Prosecute Actions Against Insiders of the Debtor* [Doc. 135] ("Trustee Motion").  In it, the Committee alleged that the Debtor was proceeding in bad faith by challenging the unsecured claims asserted against its bankruptcy estate and protecting insiders.

A hearing on the Trustee Motion is currently scheduled for May 17, 2022, at 10:00 a.m.

14.    **The Debtor's Investigation of Fraudulent Transfer Claims Involving 150 East La Sierra Drive, Arcadia, CA**

The Debtor is investigating a potential claim against 150 Sierra LLC for recovery of the property commonly known as 150 East La Sierra Drive, Arcadia, CA 91006, which was transfer by the Debtor to 150 Sierra LLC for no consideration on January 23, 2020. 150 Sierra LLC is a California limited liability company owned jointly by the Debtor and The Code Solutions LLC (an entity related to Betula Lenta LLC).

15.    **The Debtor's Renewed Efforts to Entitle the Los Angeles Properties and Paradise Drive Lots**

Debtor believes that its pre-petition financial problems arose from its relationship with Betula.  Debtor is in the process of interviewing firms that have the necessary expertise to obtain the entitlements.  These firms have represented to Debtor that this is a 20-month process that will cost approximately $800,000.  Debtor believes that obtaining the necessary entitlements to develop the Los Angeles Properties and Paradise Drive Lots will result in substantial appreciation. In the June 2021 appraisal conducted by Cushman & Wakefield, the firm appraised the hypothetical value of the properties, as entitled for 70 lots, at $38,200,000.00.  Upon obtaining the necessary entitlements, Debtor will be able to either sell or refinance the Los Angeles Properties and Paradise Drive Lots, and pay all allowed claims in full from the proceeds.

## III.   THE PLAN OF REORGANIZATION

### A.   What Creditors and Interest Holders Will Receive Under the Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

### B.   Unclassified Claims

Certain types of claims are not placed into voting classes; instead, they are unclassified.  They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class.

#### 1.   Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under 11 U.S.C. § 507(a)(2).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Shioda Langley & Chang LLP | $150,000.00 (est.) | Paid in full upon the latter of (i) the Effective Date, or (ii) within three business days after entry of a final, nonappealable order of the Bankruptcy Court allowing the claim.

Reorganized Debtor shall set aside the estimated amount of administrative claims to ensure payment in full of all allowed administrative expense claims pursuant to this Plan. |
| Pachulski Stang Ziehl & Jones LLP | $125,000.00 (est.) | |
| Michael Carlin | $0.00 | |
| Donna Bullock | $0.00 | |
| Clerk's Office Fees | $0.00 | |
| Office of the U.S. Trustee Fees | $0.00 | |

12

1    Court Approval of Fees Required:

2        The Court must rule on all fees listed in this chart before the fees will be owed. For all fees

3    except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve

4    a properly noticed fee application and the Court must rule on the application. Only the amount of

5    fees allowed by the Court will be owed and required to be paid under this Plan. The Debtor

6    reserves all rights to challenge and object to any administrative claims.

7        2.    Priority Tax Claims

8        Priority tax claims are certain unsecured income, employment and other taxes described by

9    11 U.S.C. § 507(a)(8). The Code requires that each holder of such a claim receive the present

10    value of such claim in deferred cash payments, over a period not exceeding six years from the date

11    of the assessment of such tax. The following chart lists all § 507(a)(8) priority tax claims against

12    the Debtor's bankruptcy estate and their treatment under the Plan:

| Description | | Treatment |
|---|---|---|
| Claimant: | Internal Revenue Service | Paid in full within 120 days of the Effective Date |
| Type: | Estimated FICA withholdings | |
| Amount: | $28,700.70 | |

13

1

C.    **Classified Claims and Interests**

2

1.    **Classes of Secured Claims**

3

Secured claims are claims secured by liens on property of the estate.  The following chart

4

lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan.

5

| Class | Description | | Treatment |
|---|---|---|---|
| 1 | Claimant: | LA County Treasurer and Tax Collector | Impaired: NO |
| | Collateral: | Los Angeles Properties | Treatment: The Plan leaves unaltered the legal, equitable, and contractual rights of the LA County Treasurer and Tax Collector.  The Debtor will continue to make all payments to LA County Treasurer and Tax Collector pursuant to applicable law. |
| | Collateral Value: | $9,335,000.00 | |
| | Lien Priority: | 1st | |
| | Claim Amount: | $0.00 | |
| | Secured Amount: | $0.00 | |
| | Unsecured Amount: | $0.00 | |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

| Class | Description | | Treatment |
|---|---|---|---|
| 2 | Claimant: | Royalty Equity Lending, LLC | Impaired: YES<br><br>Treatment: The Class 2 Claim shall be bifurcated into: (a) an Allowed Secured Claim in the amount of $9,335,000.00, and (b) an Allowed General Unsecured Claim in the amount of $18,009.29.<br><br>Royalty Equity Lending, LLC shall retain the first priority liens against the Los Angeles Properties.<br><br>Beginning of the first day of the first month after the Effective Date, the Reorganized Debtor shall remit to Royalty Equity Lending LLC monthly payments ($71,788.07) as calculated over a 30-year fully amortized term at 8.5% interest per annum.<br><br>Within 3 years of the Effective Date, the Reorganized Debtor shall make a balloon payment for the total amount outstanding ($9,104,028.35).<br><br>The total payout on the Class 2 Claim will be $11,616,610.80.<br><br>The Allowed General Unsecured Claim will receive treatment pursuant to Class 11A. |
| | Collateral: | Los Angeles Properties | |
| | Collateral Value: | $9,335,000.00 | |
| | Lien Priority: | 2nd | |
| | Claim Amount: | $9,353,009.29 | |
| | Secured Amount: | $9,335,000.00 | |
| | Unsecured Amount: | $18,009.29 | |

15

| Class | Description | Treatment |
|-------|-------------|-----------|
| 3 | Claimant: LA County Treasurer and Tax Collector<br><br>Collateral: Paradise Drive Lots<br><br>Collateral Value: $266,600.00<br>Lien Priority: 1st<br><br>Claim Amount: $0.00<br>Secured Amount: $0.00<br>Unsecured Amount: $0.00 | Impaired: NO<br><br>Treatment: The Plan leaves unaltered the legal, equitable, and contractual rights of the LA County Treasurer and Tax Collector.  The Debtor will continue to make all payments to LA County Treasurer and Tax Collector pursuant to applicable law. |
| 4 | Claimant: Breezeblocks Capital, LLC<br><br>Collateral: Paradise Drive Lots<br><br>Collateral Value: $266,600.00<br>Lien Priority: 2nd<br><br>Claim Amount: $124,653.99<br>Secured Amount: $124,653.99<br>Unsecured Amount: $0.00 | Impaired: YES<br><br>Treatment: Within sixty days of the Effective Date, the Reorganized Debtor shall pay the Class 4 Claim in full; however, all interest accrued after the Petition Date shall be at the rate of 18% per annum instead of the contractual rate.<br><br>The lien securing the Class 4 Claim shall release upon payment in full. |
| 5 | Claimant: Royal Business Bank<br><br>Collateral: San Marino Property<br><br>Collateral Value: $2,350,000.00<br>Lien Priority: 1st<br><br>Claim Amount: $1,100,000.00<br>Secured Amount: $1,100,000.00<br>Unsecured Amount: $0.00 | Impaired: NO<br><br>Treatment: The Plan leaves unaltered the legal, equitable, and contractual rights of the holder of the Class 5 Claim.  Unless previously sold by noticed motion in this Bankruptcy Case, the San Marino Property shall be surrendered on the Effective Date in full satisfaction of the Class 5 Claim. |

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

| Class | Description | | Treatment |
|---|---|---|---|
| 6 | Claimant: | Corona Capital | **Impaired:** NO<br><br>**Treatment:** The Plan leaves unaltered the legal, equitable, and contractual rights of the holder of the Class 6 Claim.  Unless previously sold by noticed motion in this Bankruptcy Case, the San Marino Property shall be surrendered on the Effective Date in full satisfaction of the Class 6 Claim. |
| | Collateral: | San Marino Property | |
| | Collateral Value:<br>Lien Priority: | $2,350,000.00<br>2nd | |
| | Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | $540,000.00<br>$540,000.00<br>$0.00 | |
| 7 | Claimant: | DNQ LLC | **Impaired:** NO<br><br>**Treatment:** The Plan leaves unaltered the legal, equitable, and contractual rights of the holder of the Class 7 Claim.  Unless previously sold by noticed motion in this Bankruptcy Case, the San Marino Property shall be surrendered on the Effective Date in full satisfaction of the Class 7 Claim. |
| | Collateral: | San Marino Property | |
| | Collateral Value:<br>Lien Priority: | $2,350,000.00<br>3rd | |
| | Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | $420,000.00<br>$420,000.00<br>$0.00 | |
| 8 | Claimant: | LA County Treasurer and Tax Collector | **Impaired:** NO<br><br>**Treatment:** The Plan leaves unaltered the rights of the LA County Treasurer and Tax Collector.  The Debtor will continue to make all payments to LA County Treasurer and Tax Collector pursuant to applicable law. |
| | Collateral: | Van Nuys Property | |
| | Collateral Value:<br>Lien Priority: | $600,000.00<br>1st | |
| | Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | $0.00<br>$0.00<br>$0.00 | |

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

| Class | Description | | Treatment |
|---|---|---|---|
| 9 | Claimant: | Investment Management Co. | <u>Impaired:</u> YES |
| | Collateral: | Van Nuys Property | <u>Treatment:</u>  Within sixty days of the Effective Date, the Reorganized Debtor shall pay the Class 9 Claim in full; however, all interest accrued after the Petition Date shall be at the rate of 18% per annum instead of the contractual rate. |
| | Collateral Value:<br>Lien Priority: | $600,000.00<br>2nd | |
| | Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | $350,000.00<br>$350,000.00<br>$0.00 | The lien securing the Class 9 Claim shall release upon payment in full.<br><br>In addition to these payment obligations, the Reorganized Debtor shall remain current on all property taxes and homeowner's association dues accrued by the Van Nuys Property.  The holder of the Class 9 Claim may request from the Reorganized Debtor proof that all such obligations are current and in good standing.  Such request shall be made in writing to the Reorganized Debtor's counsel.  Within ten (10) business days after receipt of such request, the Reorganized Debtor shall provide to proof that all applicable property taxes and homeowner's association dues accrued by the Van Nuys Property are current and in good standing. |

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

| Class | Description | | Treatment |
|---|---|---|---|
| 10 | Claimant:<br><br>Collateral:<br><br>Collateral Value:<br>Lien Priority:<br><br>Claim Amount:<br>Secured Amount:<br>Unsecured Amount: | Michael and Shari Dorff<br><br>Van Nuys Property<br><br>$600,000.00<br>3rd<br><br>$50,000.00<br>$50,000.00<br>$0.00 | <u>Impaired:</u> YES<br><br><u>Treatment:</u>  Within sixty days of the Effective Date, the Reorganized Debtor shall pay the Class 10 Claim in full; however, all interest accrued after the Petition Date shall be at the rate of 18% per annum instead of the contractual rate.<br><br>The lien securing the Class 10 Claim shall release upon payment in full.<br><br>In addition to these payment obligations, the Reorganized Debtor shall remain current on all property taxes and homeowner's association dues accrued by the Van Nuys Property.  The holder of the Class 10 Claim may request from the Reorganized Debtor proof that all such obligations are current and in good standing.  Such request shall be made in writing to the Reorganized Debtor's counsel.  Within ten (10) business days after receipt of such request, the Reorganized Debtor shall provide to proof that all applicable property taxes and homeowner's association dues accrued by the Van Nuys Property are current and in good standing. |

**2.**     **Classes of Priority Unsecured Claims**

Certain priority claims under 11 U.S.C. § 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  There are no such claims against Debtor's bankruptcy estate.

**3.**     **Classes of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under 11 U.S.C. § 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims:

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

Exhibit 3, Page 62

| Class | Description | Treatment |
|-------|-------------|-----------|
| 11A | General Unsecured Claims<br><br>Filed Claims: $4,317,473.97<br><br>Amount of allowed claims to be determined pending the outcome of Debtor's objections to claim and pending state court litigation. | Impaired: YES<br><br>Treatment: In full and final satisfaction of each, any, and allow Class 11A allowed claim will be paid in full with interest at the federal judgment rate as of the Petition Date (0.07%), from the Petition Date until paid in full.<br><br>The allowance of Class 11A claims will be subject to Debtor's right to object to such claims as well as the conclusion of related litigation in which the Debtor asserts offsetting claims against the holder of the Class 11A claim.<br><br>Each Class 11A claim shall be paid in full upon the latter of (i) three years after the Effective Date, or (ii) upon adjudication by final, non-appealable order or judgment resolving claim objections and related litigation.<br><br>Notwithstanding, should the Debtor in its sole discretion decide to pay any allowed Class 11A claim early and within two years of the Effective Date, the Debtor shall be entitled to a 20% early-payment discount such that Debtor may pay 80% of the allowed Class 11A claim amount, plus interest at the federal judgment rate as of the Petition Date (0.07%), in full and final satisfaction of said Class 11A claim. |
| 11B | Subordinated Unsecured Claim of Jianqing Yang<br><br>Filed Claim: $43,523,255.42 | Impaired: YES<br><br>Treatment: No payments under the Plan will be made on behalf of the Class 11B claim. |

20

4. **Class of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following chart identifies the Plan's treatment of the Class of interest holders:

| Class | Description | Treatment |
|---|---|---|
| 12 | Equity interests in the Debtor (100% held by Jianqing Yang). | <u>Impaired:</u> NO<br><br><u>Treatment:</u> Each Class 12 interest holder will retain its rights and interests without impairment.<br><br>Class 12 will not receive any payments on account of its equity interests during the life of the Plan. |

D. **Means of Effectuating the Plan**

1. **Funding for the Plan**

The Plan will be funded by the following:

a.    Cash on hand in the approximate amount of $250,000;

b.    Rental income of approximately $42,504/year from Debtor's expired leases (to holdover tenants) of 2520 and 2526 Lincoln Park, Los Angeles, CA 9003;1

c.    A $4,000,000 capital contribution by Jianqing Yang on the Effective Date;

d.    The sale of the San Marino Property;

e.    The sale of the Van Nuys Property;

f.    Additional capital contributions by Jianqing Yang to the extent necessary to fund Debtor's payment obligations during the term of the Plan.

2. **Composition of the Debtor After the Effective Date**

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor."  The sole member of the Debtor, Jianqing Yang, will remain as the sole member of the Reorganized Debtor.

### 3.    Post-Confirmation Management and Compensation

The current manager of the Debtor, Jianqing Yang, will remain as the manager of the Reorganized Debtor and will be responsible for the management and operation of the Debtor's business.  Mr. Yang will not receive any compensation for his services as manager of the Reorganized Debtor.

### 4.    Disbursing Agent

The Reorganized Debtor will act as the disbursing agent under the Plan and submit a quarterly report to the Court within 45 days after the end of each quarter, detailing the payees and amounts of payments to creditors under the Plan, along with updates on Debtor's progress reorganizing under the Plan.  The Reorganized Debtor will not charge any fee for acting as the disbursing agent and for making Plan distributions.

### 5.    Objections to Claim

The Debtor or Reorganized Debtor, as the case may be, will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable to the Debtor unless the Debtor deems the inconsistency to be insignificant.  With respect to disputed claims that are not resolved prior to the Plan's Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval.  As provided by 11 U.S.C. § 502(c), the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan.  As of the Effective Date, the Reorganized Debtor shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case to resolve such objections to claims following the confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim.

### 6.    Avoidance Actions, Strong Arm Powers, and Causes of Action

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the

22

Bankruptcy Code, shall irrevocably vest in the Debtor and be transferred in total to the

Reorganized Debtor upon confirmation of the Plan.  The deadline for the Debtor or Reorganized

Debtor to file such actions shall be the latter of (i) the statute of limitations for such cause of

action and (ii) two years after the Petition Date.  Regardless of whether they are listed on the

Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the

Debtor shall vest in the Reorganized Debtor unless specifically settled with such settlement

approved by order of the Bankruptcy Court prior to the confirmation of the Plan.

**7.    Employment of Professionals by the Reorganized Debtor and Payment of Professional Fees and Expenses After the Effective Date**

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and

compensate professionals as the Reorganized Debtor determines is appropriate and to compensate

any such professionals without the need for any notice or further order of the Court.

**8.    Exemption from Transfer Taxes**

Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of a security, or the

making or delivery of an instrument of transfer under a plan confirmed under 11 U.S.C. § 1129

may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that

are exempt from taxes under 11 U.S.C. § 1146(c) include all transfers by the Debtor after the

commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective

Date.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales

and use taxes, transfer taxes, and other similar taxes.

**9.    Distributions to Be Made Pursuant to the Plan**

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be

made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage

prepaid, to the address shown in the Debtor's schedules, as they may from time to time be

amended in accordance with Bankruptcy Rule 1009 or, if a different address is stated in a proof of

claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay allowed claims

shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

**10.    Exculpations and Releases**

23

1       To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor,

2   their management, the Committee, its members, nor any of their professionals employed or

3   retained by any of them, whether or not by Bankruptcy Court order, shall have or incur any

4   liability to any person or entity for any act taken or omission made in good faith in connection

5   with or related to the formulation and implementation of the Plan, or a contract, instrument,

6   release, or other agreement or document created in connection therewith, the solicitation of

7   acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan

8   and the transactions contemplated therein, including the distribution of estate funds.

9           **11.    Injunctions**

10      The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or

11  otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action,

12  equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the

13  Plan.  Except as provided in the Plan or the Plan Confirmation Order, as of the Plan Effective

14  Date, all entities that have held, currently hold or may hold a claim or other debt or liability or

15  equitable remedy that was stayed or is discharged or an interest or other right of an equity security

16  holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking

17  any of the following actions against: (I) (a) the Debtor, (b) the Reorganized Debtor, or (c) the

18  officers, directors, managers, and equity holders of the Debtor as their alleged alter egos, or (II)

19  their property; on account of any such discharged claims, debts or liabilities or extinguished

20  interests or rights: (i) commencing or continuing, in any manner or in any place, any action or

21  other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment,

22  award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv)

23  asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or

24  obligation due to the Debtor; and (iv) commencing or continuing any action in any manner, in any

25  place, that does not comply with or is inconsistent with the provisions of the Plan.  By accepting

26  distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant

27  to the Plan shall be deemed to have specifically consented to the injunctions set forth in this

28  Section; provided, however, that this sentence shall only be operative (and thereby providing an

injunction, as set forth in this Section) in favor of the officers, directors, managers, and equity

holders of the Debtor as their alleged alter egos so long as there are no uncured material defaults

under this Plan.  The injunction described in this paragraph is applicable to ***all*** creditors and

parties in interest with respect to claims or causes of action arising or existing prior to the Plan

Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation

Order are charged with actual knowledge of this injunction and with actual knowledge that the

injunction is applicable to said creditor and/or party in interest, such that it is impossible for said

creditor and/or party in interest to have a good faith belief that the injunction does not apply to

said creditor's and/or party in interest's claim or cause of action.  Accordingly, any creditor and/or

party in interest charged with actual knowledge may be held in contempt for violation the

injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable

attorneys' fees and costs for enforcing the injunction.

### 12.    Executory Contracts and Unexpired Leases

The Debtor does not believe it is a party to any executory contracts or unexpired leases as

the Debtor contends that Betula breached the Betula Agreement before the Petition Date.

However, as of the Effective Date, any executory contract or unexpired lease to which the Debtor

is a party shall be deemed to be rejected by the Debtor effective as of 11:59 P.M. PST on the Plan

Effective Date.  **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A**

**CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR**

**UNEXPIRED LEASE WHICH IS REJECTED ON THE PLAN EFFECTIVE DATE WILL**

**BE THIRTY DAYS AFTER THE PLAN EFFECTIVE DATE.**  Any claim resulting from the

Debtor's rejection of an executory contract or unexpired lease will be barred if the proof of claim

is not timely filed, unless the Court orders otherwise.  Any allowed claim resulting from the

Debtor's rejection of an unexpired lease or executory contract will constitute a Class 5 allowed

claim, subject to the limitations set forth in 11 U.S.C. § 502(b) and other applicable sections of the

Bankruptcy Code.

25

**13.    Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**14.    Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

### A.    Classification and Treatment of Claims

The Plan must classify different claims against the Debtor into separate classes based upon their legal nature. 11 U.S.C. § 1122. Claims of a substantially similar legal nature may be classified together but are not required to be. 11 U.S.C. § 1122(a). Separate classification of administrative expense claims and certain priority claims is not required because such claims are afforded specific treatment under the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(9).

The Debtor believes that the classification of claims in the Plan is appropriate and consistent with the requirements of the Bankruptcy Code. The Court will determine the appropriateness of the classification of the claims under the Plan in conjunction with the hearing on confirmation of the Plan.

The Plan must designate each separate class of claims and interests either as impaired or unimpaired. If a Class is impaired, then holders of claims in that class are entitled to (1) vote to

26

accept or reject the plan (unless the Plan provides for no distribution to the class, in which case the class is deemed to reject the Plan), and (2) receive payment at least equal to the value that the claimant would under a chapter 7 liquidation. If a Class is unimpaired, then Creditors holding claims in that class are deemed to accept the Plan and not entitled to vote.

**B.    Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**C.    Who May Vote to Accept or Reject the Plan**

To be eligible to vote on the Plan, a creditor must have a claim that is allowed and impaired.  Persons holding claims that are disallowed or unimpaired are not entitled to vote. 11 U.S.C. § 1129(a)(8).

**1.    Allowed Claims**

Generally, a claim is allowed only if (1) a proof of claim is properly filed before the Claims Bar Date, and (a) no party in interest has objected to the Proof of Claim, or (b) the Court has entered an order allowing the Claim; or (2) the claim is listed on the Debtor's Schedules and not identified as disputed, contingent, or unliquidated. 11 U.S.C. §§ 501(a), 1111(a).

A claim that is allowed for voting purposes may still be subject to later objections and disallowance.  A person whose claim is subject to an objection is not eligible to vote on the Plan unless and until that objection is resolved in that person's favor, or the Court temporarily allows the claim for the purpose of voting on the Plan after notice and a hearing under Bankruptcy Rule 3018(a).  Any person that seeks temporary allowance of its Claim for voting purposes must promptly file an appropriate motion and take the steps necessary to arrange a timely hearing.

**2.    Voting Requirements**

A creditor holding a claim against the estate may vote to accept or reject the Plan. 11 U.S.C. § 1126(a).  Creditors holding claims in an unimpaired class are conclusively presumed to accept the Plan and are ineligible to vote on acceptance.  11 U.S.C. § 1126(f).  The Court may designate any creditor whose acceptance or rejection of the Plan was not in good faith or in accordance with the Bankruptcy Code.  11 U.S.C. § 1126(e).

27

1

3.      **Votes Necessary for a Class to Accept the Plan**

2        A class has accepted the Plan only when more than one-half (1/2) in number and at least

3   two-thirds (2/3) in amount of the Allowed Claims in that Class vote to accept the plan. 11 U.S.C. §

4   1126(c).

5

4.      **Votes Necessary for a Class to Accept the Plan**

6        The Plan may be confirmed if at least one impaired class has voted to accept the Plan

7   (without counting the votes of any insiders whose claims are classified within that class) and if

8   certain statutory requirements are met both as to non-consenting members within a consenting

9   class and as to dissenting Classes. *See* 11 U.S.C. §§ 1126(c), 1129(a)(10).

10       Even if Debtor receives the requisite number of votes to confirm the Plan, the Plan will not

11  become binding unless and until, among other things, the Court makes an independent

12  determination that confirmation is appropriate. This determination will be the subject of the

13  hearing on confirmation of the Plan.

14

D.      **Cramdown: Treatment of Nonaccepting Classes**

15       Even if all classes do not consent to confirmation of the Plan, the Plan may be confirmed

16  nonetheless if each dissenting class is treated in the manner prescribed by the Bankruptcy Code.

17  The process by which a dissenting class is forced to abide by the terms of a Plan is commonly

18  referred to as "cramdown."

19       The Bankruptcy Code allows a dissenting class to be crammed down if the plan does not

20  "discriminate unfairly" and is "fair and equitable" as to such class. 11 U.S.C. § 1129(b). The

21  Bankruptcy Code does not define unfair discrimination, but it does set forth certain minimum

22  requirements for "fair and equitable" treatment. For secured claims, "fair and equitable" can mean

23  that the creditors retain their liens and receive deferred cash payments equal to the present value of

24  their lien interests in the collateral. For unsecured claims, the Plan is fair and equitable if the

25  allowed unsecured claims receive if (a) they receive payment in full under the Plan, or (b) no

26

27

28

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

1    junior claim or interest receives or retains any payment under the Plan.

2        **E.    Liquidation Analysis**

3        Section 1129(a)(7) requires each holder of a claim in an impaired class to either (a) accept

4    the plan, and (b) receive not less than the holder would so receive if the estate was liquidated

5    under chapter 7. This is known as the best interests of creditors' test.

6        In a chapter 7 case, a chapter 7 trustee is appointed to sell property the bankruptcy estate.

7    Secured creditors are paid first from the sales proceeds of properties on which the secured creditor

8    has a lien. Administrative expenses and priority claims are paid next.  Next, unsecured claims are

9    paid from any remaining sales proceeds, according to their rights to priority.  Unsecured claims

10   with the same priority share in proportion to the amount of their allowed claim in relationship to

11   the amount of total allowed unsecured claims. Finally, interest holders receive the balance that

12   remains after all creditors are paid, if any.

13       To confirm a plan of reorganization, the bankruptcy court must find that all creditors and

14   interest holders who do not accept the plan will receive at least as much under the plan as such

15   holders would receive under a liquidation under chapter 7.  The Debtor believes this requirement

16   is met here because all holders of allowed claims will be paid in full.  Nonetheless, table

17   summarizing the Debtor's liquidation analysis is attached hereto as **Exhibit 3**.

18       **F.    Feasibility**

19       To confirm the Plan, the Court must find that confirmation of the Plan is not likely to be

20   followed by the liquidation, or the need for further financial reorganization, of the Debtor or any

21   successor to Debtor under the Plan. 11 U.S.C. § 1129(a)(11).

22       There are at least two important aspects of a feasibility analysis. The first aspect considers

23   whether there will be enough cash on hand on the Effective Date to pay all the claims on such

24   date. The second aspect considers whether the Reorganized Debtor will earn sufficient income to

25   make all required payments under the Plan.

26       With respect to the first aspect of feasibility, the Debtor will have sufficient cash on hand

27   to make Effective Date payments.  Jianqing Yang will make a capital contribution of $4,000,000,

28   which fund the Effective Date Plan payments, which are estimated to total $275,000.

1    With respect to the second aspect of feasibility, the Debtor will have sufficient cash to

2  make all payments during the term of the Plan.  A table summarizing the Debtor's plan payments

3  and necessary funding is attached hereto as **Exhibit 4**.

4    **G.    Risk Factors**

5    The primary risk factor of the Plan is the ability of the Debtor to obtain the entitlements for

6  the Los Angeles Properties and Paradise Drive Lots, and sell or refinance those properties, within

7  the Plan's three-year term.  Other lesser risk factors include (1) the Debtor's ability to sell the San

8  Marino and Van Nuys Properties in a timely manner, and (2) Jianqing Yang's ability to make

9  further capital contributions to the Debtor to fund its payment obligations under the Plan.

10   **H.    Tax Consequences of the Plan**

11   CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

12 MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

13 ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

14   The following disclosure of possible tax consequences is intended solely for the purpose of

15 alerting readers about possible tax issues this Plan may present to the Debtor.  The Debtor

16 CANNOT and DOES NOT represent that the tax consequences contained below are the only tax

17 consequences of the Plan because the Tax Code embodies many complicated rules which make it

18 difficult to state completely and accurately all the tax implications of any action.

19   The following are the tax consequences which the Plan will have on the Debtor's tax

20 liability: Debtor will incur taxes on the amounts collected as lease payments from 2520 and 2560

21 Lincoln Park, Los Angeles, CA 90031.  There may be additional tax consequences.  Creditors and

22 parties-in-interest should conduct their own independent investigation of the Debtor's tax returns

23 and potential tax consequences.

24 **V.    EFFECT OF CONFIRMATION**

25   **A.    Discharge**

26   This Plan provides that upon entry of a final decree, the Debtor shall be discharged of

27 liability for payment of debts incurred before confirmation of the Plan, to the extent specified in

28 11 U.S.C. § 1141.  However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Reorganized Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtor.

**C.    Modification of Plan**

The Debtor may modify the Plan at any time before confirmation.  However, the Court may require re-voting on the Plan if the Debtor modifies the Plan before confirmation in a manner that materially and adversely affects a creditor or interest holder that had voted in favor of the Plan.  The Reorganized Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Reports**

Until a final decree closing the Bankruptcy Case is entered, the Reorganized Debtor will file quarterly post-confirmation status reports with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.    Post-Confirmation Conversion or Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under 11 U.S.C. § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

1    The order confirming the Plan may also be revoked under very limited circumstances.  The

2    Court may revoke the order if the order of confirmation was procured by fraud and if the party in

3    interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

4    the order of confirmation.

5    **G.    Final Decree**

6    Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

7    Debtor, or other party as the Court shall designate in the Plan Confirmation Order, shall file a

8    motion with the Court to obtain a final decree to close the case.

9

10    Dated:  May 3, 2022                SHIODA LANGELY & CHANG, LLP

11                                By: /s/Christopher J. Langley

12                                Christopher J. Langley, Counsel for
                                    Jinzheng Group (USA), LLC, Debtor

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022

## DECLARATION OF SHAO XING MAX YANG

I, Shao Xing Max Yang, am the attorney-in-fact for Jianqing Yang, sole member of Jinzheng Group (USA), LLC ("Debtor"), the chapter 11 debtor in this bankruptcy case. I make this declaration in support of the *Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022* ("Plan"), to which this declaration is attached.

1.    I have reviewed the Plan and believe that all statements and representations therein are truthful and accurate to the best of my knowledge, and I support confirmation of same.

I declare under the penalty of perjury under the laws of the United States of America is true and correct.

Date: May 3, 2022

_____
Shao Xing Max Yang

| Property | Property Value | First Priority Lien Claimant | Amount | Second Priority Lien Claimant | Amount | Third Priority Lien Claimant | Amount | Total Liens |
|---|---|---|---|---|---|---|---|---|
| Los Angeles Properties | | | | | | | | |
| 2929 Amethyst | $ 6,890,000.00 | | | | | | | |
| 2526-2528 Lincoln Park | $ 795,000.00 | | | | | | | |
| 2520-2522 Lincoln Park | $ 1,050,000.00 | LA County Tax Collector | $ - | Royalty Equity Lending LLC | $ 9,353,009.29 | | | $ 9,353,009.29 |
| 2602 Lincoln Park | $ 300,000.00 | | | | | | | |
| 2600 Sierra Street | $ 300,000.00 | | | | | | | |
| | $ 9,335,000.00 | | | | | | | |
| Paradise Drive Lots | $ 266,600.00 | LA County Tax Collector | $ - | Breezeblocks Capital LLC | $ 124,653.99 | | | $ 124,653.99 |
| San Marino Property | $ 2,350,000.00 | Royal Business Bank | $ 1,100,000.00 | Corona Capital Group, LLC | $ 540,000.00 | DNQ LLC | $ 420,000.00 | $ 2,060,000.00 |
| Van Nuys Property | $ 660,000.00 | LA County Tax Collector | $ - | Investment Management Co. | $ 350,000.00 | Michael and Sheri Dorff | $ 50,000.00 | $ 400,000.00 |

*In re Jinzheng Group (USA), LLC*, Case No. 2:21-bk-16674-ER
Exhibit 1 - Summary of Debtor's Real Property Holdings

| Source | Creditor | Secured Claims | | | Unsecured Claims | | | Duplicate | Plan Treatment | | SC Litigation / Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Amount | Collateral | Lien Type | Administrative | Priority | Unsecured | | Classification | Claim Objection | |
| Sch D 2.2 | Royal Business Bank | $ 1,100,000.00 | San Marino | 1st DOT | $ - | $ - | $ - | | Class 6 | | |
| Sch D 2.3 | Corona Capital | $ 540,000.00 | San Marino | 2nd DOT | $ - | $ - | $ - | POC 8 | -- | | |
| Sch D 2.4 | DNQ LLC | $ 420,000.00 | San Marino | 3rd DOT | $ - | $ - | $ - | POC 21 | -- | | |
| Sch D 2.5 | Investment Management Co. | $ 350,000.00 | Van Nuys | 1st DOT | $ - | $ - | $ - | POC 2 | -- | | |
| Sch D 2_ | The Alison Company | $ 50,000.00 | Van Nuys | 2nd DOT | $ - | $ - | $ - | POC 4 | -- | | |
| Sch D 2_ | Pacific Mortgage Exchange | $ 127,000.00 | Paradise Lots | 1st DOT | $ - | $ - | $ - | POC 14 | -- | | |
| | | | | | | | | | | | |
| Sch EF 3.13 | Jianqing Yang | $ - | | | $ - | $ - | $ 43,523,255.42 | -- | Class 11B | | |
| | | | | | | | | | | | |
| POC 1 | LA Treasurer and Tax Collector | $ - | | | $ - | $ - | $ - | | -- | | |
| POC 2 | Royalty Equity Lending, LLC (BOB's LLC) | $ 9,335,000.00 | Los Angeles | 1st DOT | $ - | $ - | $ 18,009.29 | | Class 2 | | Proof of Claim Withdrawn |
| POC 3 | Internal Revenue Service | $ - | | | $ - | 28,700.70 | $ - | | Class 11 | | |
| POC 4 | Michael and Shari Dorff | $ 50,000.00 | Van Nuys | 2nd DOT | $ - | $ - | $ - | | Class 11 | | |
| POC 5 | Investment Management Company | $ 350,000.00 | Van Nuys | 1st DOT | $ - | $ - | $ - | | Class 10 | | |
| POC 6 | Testa Capital Group | $ - | | | $ - | 13,650.00 | $ 672,900.00 | | Class 11A | | Broker Action, 22AHCV00093 |
| POC 7 | Home Loans Unlimited, Inc. | $ - | | | $ - | 13,650.00 | $ 672,900.00 | | Class 11A | | Broker Action, 22AHCV00093 |
| POC 8 | Corona Capital Group, LLC | $ 540,000.00 | San Marino | 2nd DOT | $ - | $ - | $ - | | Class 7 | Doc. 116 | |
| POC 9 | Michael Carlin | $ - | | | 15,650.00 | $ - | $ - | | Admin | Doc. 116 | |
| POC 10 | Michael Carlin | $ - | | | 15,650.00 | $ - | $ - | | Admin | Doc. 116 | |
| POC 11 | Ultrasystems Environmental | $ - | | | $ - | $ - | 37,106.50 | | Admin | | |
| POC 12 | Land Design Consultants | $ - | | | $ - | $ - | 48,145.00 | | Admin | Doc. 110 | |
| POC 13 | Craig Fry and Associates | $ - | | | $ - | $ - | 240,700.47 | | Admin | | |
| POC 14 | Breezeblock Capital, LLC | $ 124,653.99 | Paradise Lots | 1st DOT | $ - | $ - | $ - | | Class 5 | | |
| POC 15 | Betty Zheng | $ - | | | $ - | $ - | 95,000.00 | | Class 11A | | Betula Action, 22STCV04623 |
| POC 16 | Shawn Charles Sourgose | $ - | | | $ - | $ - | 672,900.00 | | Class 11A | | Broker Action, 22AHCV00093 |
| POC 17 | The Phalanx Group | $ - | | | $ - | 13,650.00 | 158,845.00 | | Class 11A | Doc. 113 | Broker Action, 22AHCV00093 |
| POC 18 | Betula Lenta Inc. | $ - | | | $ - | $ - | 1,643,977.00 | | Class 11A | Doc. 120 | Betula Action, 22STCV04623 |
| POC 19 | Donna Bullock Esq | $ 45,000.00 | Retainer Funds | | 138,303.00 | $ - | $ - | | Admin | | |
| POC 20 | Pennington Construction Advisors Inc | $ - | | | $ - | $ - | 75,000.00 | | Class 11A | Doc. 107 | |
| POC 21 | DNQ LLC | $ 420,000.00 | San Marino | 3rd DOT | $ - | $ - | $ - | | Class 8 | | |
| | Total | $ 11,964,653.99 | | | $ 169,603.00 | 69,650.70 | $ 47,858,738.68 | | | | |

Note: Disputed Claims. Debtor reserves all rights to object to claims and assert affirmative claims against claimant.

In re Jinzheng Group (USA), LLC, Case No. 2:21-bk-16674-ER
Exhibit 2 - Summary of Claims Against Debtor's Bankruptcy Estate

## Assets

| Los Angeles Properties | | |
|---|---|---|
| 2929 Amethyst | $ | 6,890,000.00 |
| 2526-2528 Lincoln Park | $ | 795,000.00 |
| 2520-2522 Lincoln Park | $ | 1,050,000.00 |
| 2602 Lincoln Park | $ | 300,000.00 |
| 2600 Sierra Street | $ | 300,000.00 |
| | $ | 9,335,000.00 |
| | | |
| Paradise Drive Lots | $ | 266,600.00 |
| | | |
| San Marino Property | $ | 2,350,000.00 |
| | | |
| Van Nuys Property | $ | 660,000.00 |
| | | |
| **Total Assets** | **$** | **12,611,600.00** |

**Less Secured Debt**

| Los Angeles Properties | | |
|---|---|---|
| Los Angeles County Tax Collector | $ | - |
| Royalty Equity Lending (POC 2) | $ | 9,353,009.29 |
| | $ | 9,353,009.29 |
| | | |
| Paradise Drive Lots | | |
| Los Angeles County Tax Collector | $ | - |
| Pacific Mortgage Exchange | $ | 127,000.00 |
| | $ | 127,000.00 |
| | | |
| San Marino Property | | |
| Royal Business Bank | $ | 1,100,000.00 |
| Corona Capital | $ | 540,000.00 |
| DNQ | $ | 420,000.00 |
| | $ | 2,060,000.00 |
| | | |
| Van Nuys Property | | |
| Los Angeles County Tax Collector | $ | - |
| Investment Management Co. | $ | 350,000.00 |
| Michael and Sheri Dorff | $ | 50,000.00 |
| | $ | 400,000.00 |
| | | |
| **Total Secured Debt** | **$** | **11,940,009.29** |
| | | |
| **Available Equity in Real Properties To Administer** | **$** | **689,600.00** |

**Less Chapter 7 Administrative Expenses (Estimated)**

| Chapter 7 Trustee Statutory Fees | $ | 82,312.60 |
|---|---|---|
| Chapter 7 Trustee Legal Fees | $ | 150,000.00 |
| Broker Commissions | $ | 163,830.00 |
| | $ | 396,142.60 |

**Less Prepetition Priority Tax Claims**

| Internal Revenue Service | $ | 28,700.70 |
|---|---|---|

| **Balance Available to Pay General Unsecured Claims in Chapter 7** | **$** | **264,756.70** |
|---|---|---|

In re Jinzheng Group (USA), LLC, Case No. 2:21-bk-16674-ER
Exhibit 4 - Summary of Plan Payments



| | CLAIM AMOUNT | Effective Date | 2022 Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|
| **OPENING CASH BALANCE** | | | $ 3,905,349.30 | $ 3,793,561.23 | $ 3,681,773.16 | $ 3,569,985.09 |
| **REVENUE** | | | | | | |
| Sale or Refinance of Los Angeles Properties | | $ 250,000.00 | | | | |
| Sale of Van Nuys Property | | | | | | |
| Capital Contributions by Jianjing Yang | | $ 4,000,000.00 | | | | |
| | | $ 4,000,000.00 | | | | |
| **OPERATING EXPENSES** | | | | | | |
| Developer Expenses | | | | | | |
| State Court Litigation Expenses (Paid to SLC Outside of Plan) | | | | | | |
| **PLAN PAYMENTS** | | | | | | |
| **Administrative Claims (Estimated, Subject to Court Approval)** | | | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 |
| Shioda Langley & Chang, LLP (Debtor's Counsel) | $ 150,000.00 | $ 150,000.00 | | | | |
| Pachulski Stang Ziehl & Jones (Committee's Counsel) | $ 125,000.00 | $ 125,000.00 | | | | |
| Michael Carlin | | | | | | |
| Michael Carlin | | | | | | |
| Donna Bullock | | | | | | |
| Clerk's Office Fees | | | | | | |
| Office of the U.S. Trustee Fees | | | | | | |
| | $ 275,000.00 | $ 275,000.00 | | | | |
| **Priority Claims (Disputed, Unliquidated)** | | | | | | |
| Internal Revenue Service | $ 28,700.70 | $ 28,700.70 | | | | |
| Testa Capital Group | $ 13,650.00 | $ 13,650.00 | | | | |
| Home Loans Unlimited, Inc. | $ 13,650.00 | $ 13,650.00 | | | | |
| Shawn Charles Sourgose | $ 13,650.00 | $ 13,650.00 | | | | |
| | $ 69,650.70 | $ 69,650.70 | | | | |
| **Secured Claims (Collateral)** | | | | | | |
| Class 1 - LA County (616 Angeles Properties) | $ 141,610.20 | | | | | $ 141,610.20 |
| Class 2 - Royalty Equity Lending, LLC (Los Angeles Properties) | $ 9,335,000.00 | | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 |
| Class 3 - LA County (Paradise Drive Lots) | $ 7,559.50 | | | | | $ 7,559.50 |
| Class 4 - Breezeblock Capital (Paradise Drive Lots) | $ 124,653.99 | | | | | |
| Class 5 - Royal Business Bank (San Marino Property) | $ 1,100,000.00 | | | | | |
| Class 6 - Corona Capital (San Marino Property) | $ 540,000.00 | | | | | |
| Class 7 - DNQ (San Marino Property) | $ 420,000.00 | | | | | |
| Class 8 - LA County (Van Nuys Property) | $ 7,527.20 | | | | | $ 7,527.20 |
| Class 9 - Investment Management Co. (Van Nuys Property) | $ 350,000.00 | | | | | |
| Class 10 - Michael & Sherri Dorff (Van Nuys Property) | $ 50,000.00 | | | | | |
| | | | $ 71,788.07 | $ 71,788.07 | $ 71,788.07 | $ 228,493.97 |
| **Unsecured Claims** | | | | | | |
| **Class 11A - General Unsecured Claims** | | | | | | |
| Betty Zheng | $ 95,000.00 | | | | | |
| Befula Lenda Inc. | $ 1,643,977.00 | | | | | |
| Craig Fry and Associates | $ 240,760.47 | | | | | |
| Home Loans Unlimited, Inc. | $ 672,900.00 | | | | | |
| Land Design Consultants | $ 48,145.00 | | | | | |
| Pennington Construction Advisors Inc. | $ 75,000.00 | | | | | |
| Royalty Equity Lending, LLC | $ 18,009.29 | | | | | |
| Shawn Charles Sourgose | $ 672,900.00 | | | | | |
| Testa Capital Group | $ 672,900.00 | | | | | |
| The Phalane Group | $ 158,845.00 | | | | | |
| UltraSystems Environmental | $ 37,106.50 | | | | | |
| | $ 4,335,483.26 | | | | | |
| **Class 11B - Subordinated Unsecured Claims** | | | | | | |
| Jianjing Yang | $ 50,000.00 | | | | | |
| **CLOSING CASH BALANCE** | $ 43,521,255.42 | | $ 3,905,349.30 | $ 3,793,561.23 | $ 3,681,773.16 | $ 3,569,985.09 / $ 3,301,491.12 |

In re Jinzheng Group (USA), LLC, Case No. 2:21-bk-16674-ER
Exhibit 4 - Summary of Plan Payments

| | CLAIM AMOUNT | Jan. | Feb. | Mar. | Apr. | May | Jun. 2023 | Jul. | Aug. | Sep. | Oct. | Nov. | Dec. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OPENING CASH BALANCE | -- | 3,301,491.12 | 3,189,703.05 | 3,077,914.98 | 3,409,421.01 | 3,297,632.94 | 3,185,844.87 | 3,574,056.80 | 3,462,268.73 | 3,350,480.66 | 3,238,692.59 | 3,126,904.52 | 3,015,116.45 |
| REVENUE | | | | | | | | | | | | | |
| Sale or Refinance of Los Angeles Properties | -- | | | | | | | | | | | | |
| Sale of Van Nuys Property | -- | | | 600,000.00 | | | 500,000.00 | | | | | | |
| Capital Contributions by Jianjing Yang | | | | | | | 500,000.00 | | | | | | |
| OPERATING EXPENSES | | | | | | | | | | | | | |
| Developer Expenses | | | | | | | | | | | | | |
| State Court Litigation Expenses (Paid to SLC Outside of Plan) | | | | | | | | | | | | | |
| PLAN PAYMENTS | | | | | | | | | | | | | |
| Administrative Claims (Estimated, Subject to Court Approval) | | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 |
| Shioda Langley & Chang, LLP (Debtor's Counsel) | 150,000.00 | | | | | | | | | | | | |
| Pachulski Stang Ziehl & Jones (Committee's Counsel) | 125,000.00 | | | 600,000.00 | | | 500,000.00 | | | | | | |
| Michael Carlin | - | | | | | | | | | | | | |
| Michael Carlin | - | | | | | | | | | | | | |
| Donna Bullock | - | | | | | | | | | | | | |
| Clerk's Office Fees | - | | | | | | | | | | | | |
| Office of the U.S. Trustee Fees | - | | | | | | | | | | | | |
| | 275,000.00 | | | | | | | | | | | | |
| Priority Claims (Disputed, Unliquidated) | | | | | | | | | | | | | |
| Internal Revenue Service | 28,700.70 | | | | | | | | | | | | |
| Testa Capital Group | 13,650.00 | | | | | | | | | | | | |
| Home Loans Unlimited, Inc. | 13,650.00 | | | | | | | | | | | | |
| Shawn Charles Sourgose | 13,650.00 | | | | | | | | | | | | |
| | 69,650.70 | | | | | | | | | | | | |
| Secured Claims (Collateral) | | | | | | | | | | | | | |
| Class 1 - LA County (Los Angeles Properties) | 141,619.20 | | | 141,619.20 | | | | | | | | | 141,619.20 |
| Class 2 - Royalty Equity Lending, LLC (Los Angeles Properties) | 9,335,000.00 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 |
| Class 3 - LA County (Paradise Drive Lots) | 7,559.50 | | | 7,559.50 | | | | | | | | | 7,559.50 |
| Class 4 - Breezeblocks Capital (Paradise Drive Lot) | 124,653.99 | | | | | | | | | | | | |
| Class 5 - Royal Business Bank (San Marino Property) | 1,100,000.00 | | | | | | | | | | | | |
| Class 6 - Corona Capital (San Marino Property) | 560,000.00 | | | | | | | | | | | | |
| Class 7 - DMG (San Marino Property) | 420,000.00 | | | | | | | | | | | | |
| Class 8 - LA County (Van Nuys Property) | 7,527.20 | | | 7,527.20 | | | | | | | | | |
| Class 9 - Investment Management Co. (Van Nuys Property) | 350,000.00 | | | | | | | | | | | | |
| Class 10 - Michael & Sherri Dorff (Van Nuys Property) | 50,000.00 | | | | | | | | | | | | |
| | | 71,788.07 | 71,788.07 | 228,693.97 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 220,966.77 |
| Unsecured Claims | | | | | | | | | | | | | |
| Class 11A - General Unsecured Claims | | | | | | | | | | | | | |
| Betty Zheng | 95,000.00 | | | | | | | | | | | | |
| Betula Lenta Inc. | 1,643,977.00 | | | | | | | | | | | | |
| Craig Fry and Associates | 240,700.47 | | | | | | | | | | | | |
| Home Loans Unlimited, Inc. | 672,900.00 | | | | | | | | | | | | |
| Land Design Consultants | 48,145.00 | | | | | | | | | | | | |
| Pennington Construction Advisors Inc. | 75,000.00 | | | | | | | | | | | | |
| Royalty Equity Lending, LLC | 18,009.29 | | | | | | | | | | | | |
| Shawn Charles Sourgose | 672,900.00 | | | | | | | | | | | | |
| Testa Capital Group | 672,900.00 | | | | | | | | | | | | |
| The Phalanx Group | 158,845.00 | | | | | | | | | | | | |
| UltraSystems Environmental | 37,126.50 | | | | | | | | | | | | |
| | 4,335,483.26 | | | | | | | | | | | | |
| Class 11B - Subordinated Unsecured Claims | | | | | | | | | | | | | |
| Jianjing Yang | | | | | | | | | | | | | |
| CLOSING CASH BALANCE | 43,521,255.42 | 3,189,703.05 | 3,077,914.98 | 3,409,421.01 | 3,297,632.94 | 3,185,844.87 | 3,574,056.80 | 3,462,268.73 | 3,350,480.66 | 3,238,692.59 | 3,126,904.52 | 3,015,116.45 | 2,754,149.68 |

Exhibit 3, Page 81

| | CLAIM AMOUNT | Jan. | Feb. | Mar. | Apr. | May | Jun. | Jul. | Aug. | Sep. | Oct. | Nov. | Dec. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **OPENING CASH BALANCE** | | 2,754,169.68 | 2,642,361.61 | 2,530,573.54 | 2,369,606.77 | 2,157,818.70 | 2,086,030.63 | 2,014,242.56 | 1,942,454.49 | 1,870,666.42 | 1,798,878.35 | 1,727,090.28 | 1,655,302.21 |
| **REVENUE** | | | | | | | | | | | | | |
| Sale or Refinance of Los Angeles Properties | — | | | | | | | | | | | | |
| Sale of Van Nuys Property | — | | | | | | | | | | | | |
| Capital Contributions by Jianjing Yang | | | | | | | | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| Developer Expenses | | | | | | | | | | | | | |
| State Court Litigation Expenses (Paid to SLC Outside of Plan) | | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | | | | | | | | |
| **PLAN PAYMENTS** | | | | | | | | | | | | | |
| **Administrative Claims (Estimated, Subject to Court Approval)** | | | | | | | | | | | | | |
| Shinda Langley & Chang, LLP (Debtor's Counsel) | 150,000.00 | | | | | | | | | | | | |
| Pachulski Stang Ziehl & Jones (Committee's Counsel) | 125,000.00 | | | | | | | | | | | | |
| Michael Carlin | — | | | | | | | | | | | | |
| Michael Carlin | — | | | | | | | | | | | | |
| Donna Bullock | — | | | | | | | | | | | | |
| Clerk's Office Fees | — | | | | | | | | | | | | |
| Office of the U.S. Trustee Fees | — | | | | | | | | | | | | |
| | 275,000.00 | | | | | | | | | | | | |
| **Priority Claims (Disputed, Unliquidated)** | | | | | | | | | | | | | |
| Internal Revenue Service | 28,700.70 | | | | | | | | | | | | |
| Testa Capital Group | 13,650.00 | | | | | | | | | | | | |
| Home Loans Unlimited, Inc. | 13,650.00 | | | | | | | | | | | | |
| Shawn Charles Scurggoe | 13,650.00 | | | | | | | | | | | | |
| | 69,650.70 | | | | | | | | | | | | |
| **Second Claims (Collateral)** | | | | | | | | | | | | | |
| Class 1 - LA County (Los Angeles Properties) | 141,619.20 | | | 141,619.20 | | | | | | | | 141,619.20 | 141,619.20 |
| Class 2 - Royalty Equity Lending, LLC (Los Angeles Properties) | 9,335,000.00 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 |
| Class 3 - LA County (Paradise Drive Lot) | 7,559.50 | | | 7,559.50 | | | | | | | | 7,559.50 | 7,559.50 |
| Class 4 - Breeninbiock Capital (Paradise Drive Lot) | 124,653.99 | | | | | | | | | | | | |
| Class 5 - Royal Business Bank (San Marino Property) | 1,100,000.00 | | | | | | | | | | | | |
| Class 6 - Corona Capital (San Marino Property) | 540,000.00 | | | | | | | | | | | | |
| Class 7 - DNKJ (San Marino Property) | 420,000.00 | | | | | | | | | | | | |
| Class 8 - LA County (Van Nuys Property) | 7,527.20 | | | | | | | | | | | | |
| Class 9 - Investment Management Co. (Van Nuys Property) | 350,000.00 | | | | | | | | | | | | |
| Class 10 - Michael & Sherri Dorff (Van Nuys Property) | 50,000.00 | | | | | | | | | | | | |
| | | 71,788.07 | 71,788.07 | 220,966.77 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 220,966.77 |
| **Unsecured Claims** | | | | | | | | | | | | | |
| Class 11A - General Unsecured Claims | | | | | | | | | | | | | |
| Betty Zheng | 95,000.00 | | | | | | | | | | | | |
| Befula Lenda Inc. | 1,643,977.00 | | | | | | | | | | | | |
| Craig Fry and Associates | 240,700.00 | | | | | | | | | | | | |
| Home Loans Unlimited, Inc. | 672,900.00 | | | | | | | | | | | | |
| Land Design Consultants | 48,145.00 | | | | | | | | | | | | |
| Pennington Construction Advisors Inc. | 75,000.00 | | | | | | | | | | | | |
| Royalty Equity Lending, LLC | 18,009.29 | | | | | | | | | | | | |
| Shawn Charles Scurggoe | 672,900.00 | | | | | | | | | | | | |
| Testa Capital Group | 672,900.00 | | | | | | | | | | | | |
| The Phalane Group | 158,845.00 | | | | | | | | | | | | |
| UltraSystems Environmental | 37,106.50 | | | | | | | | | | | | |
| Class 11B - Subordinated Unsecured Claims | | | | | | | | | | | | | |
| Jianjing Yang | 4,335,483.26 | | | | | | | | | | | | |
| | 43,521,255.42 | | | | | | | | | | | | |
| **CLOSING CASH BALANCE** | | 2,642,361.61 | 2,530,573.54 | 2,369,606.77 | 2,157,818.70 | 2,086,030.63 | 2,014,242.56 | 1,942,454.49 | 1,870,666.42 | 1,798,878.35 | 1,727,090.28 | 1,655,302.21 | 1,434,335.44 |

In re Jinzheng Group (USA), LLC, Case No. 2:21-bk-16674-ER
Exhibit 4 - Summary of Plan Payments

| | CLAIM AMOUNT | Jan. | Feb. | Mar. | Apr. 2025 | May | June | Jul. | Aug. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **OPENING CASH BALANCE** | -- | 1,434,335.44 | 1,362,547.37 | 1,290,759.30 | 1,218,971.23 | 1,147,183.16 | 1,075,395.09 | 1,003,607.02 | 931,818.95 | |
| **REVENUE** | | | | | | | | | | |
| Sale or Refinance of Los Angeles Properties | -- | | | | | | | | | 13,500,000.00 |
| Sale of Van Nuys Property | -- | | | | | | | | 13,500,000.00 | 13,500,000.00 |
| Capital Contributions by Jiaqing Yang | | | | | | | | | | 4,500,000.00 |
| **OPERATING EXPENSES** | | | | | | | | | | |
| Developer Expenses | | | | | | | | | | 800,000.00 |
| State Court Litigation Expenses (Paid to SLC Outside of Plan) | | | | | | | | | | |
| **PLAN PAYMENTS** | | | | | | | | | | |
| **Administrative Claims (Estimated, Subject to Court Approval)** | | | | | | | | | | 275,000.00 |
| Shioda Langley & Chang, LLP (Debtor's Counsel) | 150,000.00 | | | | | | | | | 150,000.00 |
| Pachulski Stang Ziehl & Jones (Committee's Counsel) | 125,000.00 | | | | | | | | | 125,000.00 |
| Michael Carlin | - | | | | | | | | | - |
| Michael Carlin | - | | | | | | | | | - |
| Donna Bullock | - | | | | | | | | | - |
| Clerk's Office Fees | - | | | | | | | | | - |
| Office of the U.S. Trustee Fees | - | | | | | | | | | - |
| | 275,000.00 | | | | | | | | | 275,000.00 |
| **Priority Claims (Disputed, Unliquidated)** | | | | | | | | | | |
| Internal Revenue Service | 28,700.70 | | | | | | | | | 28,700.70 |
| Testa Capital Group | 13,650.00 | | | | | | | | | 13,650.00 |
| Home Loans Unlimited, Inc. | 13,650.00 | | | | | | | | | 13,650.00 |
| Shawn Charles Scurpose | 13,650.00 | | | | | | | | | 13,650.00 |
| | 69,650.70 | | | | | | | | | 69,650.70 |
| **Secured Claims (Collateral)** | | | | | | | | | | |
| Class 1 - LA County (Los Angeles Properties) | 141,610.20 | | | | | | | | | 708,096.00 |
| Class 2 - Royalty Equity Lending, LLC (Los Angeles Properties) | 9,335,000.00 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 9,104,028.35 | 11,616,610.80 |
| Class 3 - LA County (Paradise Drive Lots) | 7,559.50 | | | | | | | | | 37,797.50 |
| Class 4 - BreezeStock Capital (Paradise Drive Lots) | 124,653.99 | | | | | | | | | - |
| Class 5 - Royal Business Bank (San Marino Property) | 1,100,000.00 | | | | | | | | | - |
| Class 6 - Corona Capital (San Marino Property) | 540,000.00 | | | | | | | | | - |
| Class 7 - DMG (San Marino Property) | 420,000.00 | | | | | | | | | - |
| Class 8 - LA County (Van Nuys Property) | 7,527.20 | | | | | | | | | - |
| Class 9 - Investment Management Co. (Van Nuys Property) | 350,000.00 | | | | | | | | | 15,054.40 |
| Class 10 - Michael & Sherri Dorff (Van Nuys Property) | 50,000.00 | | | | | | | | | - |
| | | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 71,788.07 | 9,104,028.35 | 12,377,558.70 |
| **Unsecured Claims** | | | | | | | | | | |
| **Class 11A - General Unsecured Claims** | | | | | | | | | | |
| Betty Zheng | 95,000.00 | | | | | | | | | 95,000.00 |
| Beilu Lenda Inc. | 1,643,977.00 | | | | | | | | | 1,643,977.00 |
| Craig Fry and Associates | 240,769.47 | | | | | | | | | 240,769.47 |
| Home Loans Unlimited, Inc. | 672,900.00 | | | | | | | | | 672,900.00 |
| Land Design Consultants | 48,145.00 | | | | | | | | | 48,145.00 |
| Pennington Construction Advisors Inc. | 75,000.00 | | | | | | | | | 75,000.00 |
| Royalty Equity Lending, LLC | 18,009.29 | | | | | | | | | 159,628.49 |
| Shawn Charles Scurgose | 672,900.00 | | | | | | | | | 672,900.00 |
| Testa Capital Group | 672,900.00 | | | | | | | | | 672,900.00 |
| The Phalanx Group | 158,845.00 | | | | | | | | | 158,845.00 |
| UltraSystems Environmental | 37,106.50 | | | | | | | | | 37,106.50 |
| | 4,335,483.26 | | | | | | | | | 4,977,102.46 |
| **Class 11B - Subordinated Unsecured Claims** | | | | | | | | | | |
| Jianjing Yang | | | | | | | | | | |
| **CLOSING CASH BALANCE** | 43,521,255.42 | 1,362,547.37 | 1,290,759.30 | 1,218,971.23 | 1,147,183.16 | 1,075,395.09 | 1,003,607.02 | 931,818.95 | 850,688.14 | |

# EXHIBIT 4

1   Jeffrey W. Dulberg (State Bar No. 181200)
    Robert M. Saunders (State Bar No. 226172)
2   PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
3   Los Angeles, CA 90067
    Telephone: 310/277-6910
4   Facsimile:  310/201-0760
    E-mail:   jdulberg@pszjlaw.com
5             rsaunders@pszjlaw.com

6   Counsel to the Official Committee of
    Unsecured Creditors

7
                    UNITED STATES BANKRUPTCY COURT
8
                    CENTRAL DISTRICT OF CALIFORNIA
9
                         LOS ANGELES DIVISION
10

11  In re                              Case No. 2:21-bk-16674-ER
                                        Chapter 11
12  JINZHENG GROUP (USA) LLC
                                        **STIPULATION TO CONTINUE**
13       Debtor and Debtor in Possession.  **HEARING ON MOTION FOR ORDER**
                                        **APPROVING DEBTOR'S COMBINED**
14                                      **PLAN OF REORGANIZATION AND**
                                        **DISCLOSURE STATEMENT DATED**
15                                      **MAY 4, 2022 AS CONTAINING**
                                        **ADEQUATE INFORMATION AND**
16                                      **DISCLOSURE PURSUANT TO 11 U.S.C.**
                                        **§ 1125**
17
18                                      **[Relates to Docket Nos. 204, 205 and 206]**

19                                      *Current Hearing:*
20                                      Date:       June 15, 2022
                                        Time:       10:00 a.m.
21                                      Location:   Courtroom 1568
                                                    255 E. Temple St.
22                                                  Los Angeles, CA 90012

23                                      *Proposed Continued Hearing:*
24                                      Date:       July 6, 2022
                                        Time:       10:00 a.m.
25                                      Location:   Courtroom 1568
                                                    255 E. Temple St.
26                                                  Los Angeles, CA 90012
27
28

DOCS_LA:343872.1

Jinzheng Group (USA) LLC (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), and Investment Management Company, LLC ("IMC, and together with the Debtor and the Committee, the "Parties"), by and through their respective attorneys, agree and stipulate to the following:

**RECITALS**

A.      On May 4, 2022, the Debtor filed its *Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022* [Docket No. 204] (the "Plan & Disclosure Statement").

B.      May 4, 2022 the Debtor filed its *Motion for Order Approving Debtor's Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022 as Containing Adequate Information and Disclosures Pursuant to 11 U.S.C. § 1125* [Docket No. 205] (the "Motion to Approve Plan and Disclosure Statement"), which is currently set to be heard on June 15, 2022.

C.      On May 27, 2022, IMC filed an opposition to the Plan & Disclosure Statement [Docket No. 234].

D.      The hearing on the *Committee's Motion for (I) the Appointment of a Chapter 11 Trustee, or in the Alternative, (II)(A) Termination of Plan and Solicitation Exclusivities and (B) Authorizing Standing for the Committee of Creditors Holding Unsecured Claims to Prosecute Actions Against Insiders of the Debtor* [Docket No. 136] (the "Motion to Appoint Trustee") is set to be heard on July 6, 2022 at 10:00 a.m.

E.      The Parties recognize and agree that in the interests of judicial economy, the hearing on the Motion to Approve Plan and Disclosure Statement should be conducted at the same date and time as the Motion to Appoint Trustee.

**NOW THEREFORE,** the Parties have conferred and stipulate as follows:

**STIPULATION**

The Parties request to have the Motion to Approve Plan and Disclosure Statement heard on July 6, 2022 at 10:00 a.m., which is the same date and time as the Motion to Appoint Trustee.

1

DOCS_LA:343872.1

1    **IN WITNESS WHEREOF,** counsel for the Debtor, the Committee, and IMC have executed

2    this Stipulation as of the dates set forth below.

3

4    Dated:  May 31, 2022                    SHIODA, LANGLEY & CHANG LLP

5    _____

6                                            By: Christopher J. Langley
                                             Counsel for Debtor and Debtor in Possession

7    Dated:  May 31, 2022                    PACHULSKI STANG ZIEHL & JONES LLP

8                                            /s/ Jeffrey W. Dulberg
                                             _____
9                                            By:  Jeffrey W. Dulberg
                                             Counsel to the Official Committee of
10                                           Unsecured Creditors

11   Dated: May 31, 2022                     LAW OFFICE OF ALLAN D. SARVER

12                                           _____
                                             By: Allan D. Sarver
13                                           Counsel to Investment Management Company, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **STIPULATION TO CONTINUE HEARING ON MOTION FOR ORDER APPROVING DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED MAY 4, 2022 AS CONTAINING ADEQUATE INFORMATION AND DISCLOSURE PURSUANT TO 11 U.S.C. § 1125** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **May 31, 2022,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **May 31, 2022,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA US MAIL**
JINZHENG GROUP (USA) LLC
1414 S. Azusa Avenue, Suite B-22
West Covina, CA  91791

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 31, 2022,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA FEDERAL EXPRESS**
United States Bankruptcy Court
Central District of California
Attn: Hon. Ernest Robles
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1560
Los Angeles, CA  90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 31, 2022 | Nancy H. Brown | /s/ *Nancy H. Brown* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:343552.2 46360/002

## SERVICE INFORMATION FOR CASE NO. 2:21-bk-16674-ER

### 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

- **Donna C Bullock**   donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- **Steven P Chang**   heidi@spclawoffice.com,
  schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr
  75251@notify.bestcase.com
- **Michael F Chekian**   mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Susan Titus Collins**   scollins@counsel.lacounty.gov
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Oscar Estrada**   oestrada@ttc.lacounty.com
- **Richard Girgado**   rgirgado@counsel.lacounty.gov
- **M. Jonathan Hayes**   jhayes@rhmfirm.com,
  roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.
  com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Teddy M Kapur**   tkapur@pszjlaw.com, mdj@pszjlaw.com
- **Peter A Kim**   peter@pkimlaw.com, peterandrewkim@yahoo.com
- **Christopher J Langley**   chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Benjamin R Levinson**   ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
- **Eric A Mitnick**   MitnickLaw@aol.com, mitnicklaw@gmail.com
- **Giovanni Orantes**   go@gobklaw.com, gorantes@orantes-
  law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Donald W Reid**   don@donreidlaw.com, ecf@donreidlaw.com
- **Matthew D. Resnik**   matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfi
  rm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- **Peter J Ryan**   ryan@floresryan.com, schneider@floresryan.com
- **Allan D Sarver**   ADS@asarverlaw.com
- **David Samuel Shevitz**   david@shevitzlawfirm.com,
  shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**   hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov


### 2. TO BE SERVED BY EMAIL

- Gene H. Shioda – ghs@slclawoffice.com
- Steven P. Chang – schang@slclawoffice.com
- Donald W. Reid – don@donreidlaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:343552.2 46360/002

# EXHIBIT 5

1 | ZEV SHECHTMAN (State Bar No. 266280)
*zs@DanningGill.com*
2 | ALPHAMORLAI L. KEBEH (State Bar No. 336798)
*akebeh@DanningGill.com*
3 | DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
4 | Los Angeles, California 90067-6006
Telephone: (310) 277-0077
5 | Facsimile: (310) 277-5735

6 | Attorneys for Jinzheng Group (USA) LLC

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 |

| | |
|---|---|
| 12  In re | Case No. 2:21-bk-16674-ER |
| 13  JINZHENG GROUP (USA) LLC, | Chapter 11 |
| 14        Debtor. | **STIPULATION TO (1) WITHDRAW DEBTOR'S COMBINED PLAN OF** |
| 15 | **REORGANIZATION AND DISCLOSURE STATEMENT WITHOUT PREJUDICE** |
| 16 | **AND (2) WITHDRAW OFFICIAL COMMITTEE OF UNSECURED** |
| 17 | **CREDITORS' MOTION FOR THE APPOINTMENT OF A CHAPTER 11** |
| 18 | **TRUSTEE WITHOUT PREJUDICE** |
| 19 | [No Hearing Required] |

20 |

21 |     Jinzheng Group (USA) LLC (the "Debtor"), the Official Committee of Unsecured Creditors

22 | (the "Committee"), and Investment Management Company, LLC ("IMC") (collectively, the

23 | "Parties"), by and through their respective attorneys, agree and stipulate to the following:

24 | <div align="center">**RECITALS**</div>

25 |     A.     On March 1, 2022, the Committee filed its Motion for (I) the Appointment of a

26 | Chapter 11 Trustee, or in the Alternative, (II)(A) Termination of Plan and Solicitation Exclusivities

27 | and (B) Authorizing Standing for the Committee of Creditors Holding Unsecured Claims to

28 | Prosecute Actions Against Insiders of the Debtor (doc. no. 136) (the "Motion to Appoint Trustee").

1684558.2  27086

<div align="center">1</div>

1    B.    On May 4, 2022, the Debtor filed its *Combined Plan of Reorganization and*
2  *Disclosure Statement Dated May 4, 2022* (doc. no. 204) (the "Plan and Disclosure Statement").

3    C.    On May 4, 2022 the Debtor filed its *Motion for Order Approving Debtor's*
4  *Combined Plan of Reorganization and Disclosure Statement Dated May 4, 2022 as Containing*
5  *Adequate Information and Disclosures Pursuant to 11 U.S.C. § 1125* (doc. no. 205) (the "Motion to
6  Approve Plan and Disclosure Statement").

7    D.    On May 31, 2022, the Committee filed a *Stipulation to Continue Hearing on Motion*
8  *for Order Approving Debtor's Combined Plan of Reorganization and Disclosure Statement Dated*
9  *May 4, 2022 as Containing Adequate Information and Disclosure Pursuant to 11 U.S.C. § 1125*
10  (doc. no. 235) (the "Stipulation to Continue the Motion").

11    E.    On May 31, 2022, the Court entered an order approving the Stipulation to Continue
12  the Motion (doc. no. 238).  The hearing on the Motion to Approve Plan and Disclosure Statement is
13  currently scheduled to July 6, 2022 at 10:00 a.m.

14    F.    On June 1, 2022, Danning, Gill, Israel & Krasnoff LLP ("Danning Gill") filed its
15  *Application of Debtor and Debtor-in-Possession to Employ Danning, Gill, Israel & Krasnoff, LLP*
16  *as its General Bankruptcy Counsel; Motion to Approve Debtor-in-Possession Financing; and*
17  *Statement of Disinterestedness* (doc. no. 239) (the "Application").

18    G.    Since on or about June 1, 2022, the Debtor and Committee have been
19  communicating regularly through counsel regarding the Debtor's bankruptcy strategy and potential
20  exit options, which include an orderly liquidation of assets in chapter 11 to the extent necessary to
21  make distributions to holders of allowed claims and on account of administrative expenses
22  approved by the Court.

23    H.    In light of the foregoing, the Parties agree that the Debtor should be afforded time to
24  execute on its updated chapter 11 strategy and the Parties recognize and agree that the both the
25  Motion to Appoint Trustee and the Plan and Disclosure Statement should be withdrawn without
26  prejudice.

27
28

1684558.2  27086                                    2

1    **NOW THEREFORE,** the Parties have conferred and stipulate as follows:

2

3    <div align="center">**STIPULATION**</div>

4    1.    The above recitals are incorporated herein by reference.

5    2.    The Debtor's Plan and Disclosure Statement is hereby withdrawn without prejudice.

6    3.    The Committee's Motion to Appoint Trustee is hereby withdrawn without prejudice.

7    4.    The Debtor will lodge an order approving and giving effect to this stipulation.

8

9    IT IS SO STIPULATED

10

11    DATED: June 16 , 2022                DANNING, GILL, ISRAEL & KRASNOFF, LLP

12

13                                          By: _____

14                                          ZEV SHECHTMAN
                                            Attorneys for Jinzheng Group (USA) LLC
15

16    DATED: June ___, 2022                PACHULSKI STANG ZIEHL & JONES LLP

17

18                                          By: _____

19                                          ROBERT SAUNDERS
                                            Counsel to the Official Committee of Unsecured
20                                          Creditors

21

22    DATED: June 16 , 2022                LAW OFFICE OF ALLAN D. SARVER

23

24                                          By: _____

25                                          ALLAN D. SARVER
                                            Counsel to Investment Management Company,
26                                          LLC

27

28

1684558.2  27086                            3

1    **NOW THEREFORE,** the Parties have conferred and stipulate as follows:

2

3                              **STIPULATION**

4    1.    The above recitals are incorporated herein by reference.

5    2.    The Debtor's Plan and Disclosure Statement is hereby withdrawn without prejudice.

6    3.    The Committee's Motion to Appoint Trustee is hereby withdrawn without prejudice.

7    4.    The Debtor will lodge an order approving and giving effect to this stipulation.

8

9    IT IS SO STIPULATED

10

11   DATED: June ___, 2022            DANNING, GILL, ISRAEL & KRASNOFF, LLP

12

13                                    By: _____

14                                        ZEV SHECHTMAN

15                                        Attorneys for Jinzheng Group (USA) LLC

16   DATED: June **15**, 2022          PACHULSKI STANG ZIEHL & JONES LLP

17

18                                    By: _____

19                                        ROBERT SAUNDERS

20                                        Counsel to the Official Committee of Unsecured

21                                        Creditors

22   DATED: June ___, 2022            LAW OFFICE OF ALLAN D. SARVER

23

24                                    By: _____

25                                        ALLAN D. SARVER

26                                        Counsel to Investment Management Company,
                                          LLC

27

28

1684558.2  27086                            3                          **004**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  STIPULATION TO (1) WITHDRAW DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT WITHOUT PREJUDICE AND (2) WITHDRAW OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE WITHOUT PREJUDICE  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  June 16, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 16, 2022 | Patricia Morris | /s/ Patricia Morris |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1685211.1  27086 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**

Exhibit 5, Page 95

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Donna C Bullock**    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- **Steven P Chang**    heidi@spclawoffice.com,
  schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notif
  y.cincompass.com;changsr75251@notify.bestcase.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Heidi M Cheng**    heidi@slclawoffice.com,
  assistant1@spclawoffice.com;schang@spclawoffice.com;chenghr75251@notify.bestcase.com
- **Susan Titus Collins**    scollins@counsel.lacounty.gov
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Richard Girgado**    rgirgado@counsel.lacounty.gov
- **M. Jonathan Hayes**    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhm
  firm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Teddy M Kapur**    tkapur@pszjlaw.com, mdj@pszjlaw.com
- **Alphamorlai Lamine Kebeh**    akebeh@danninggill.com
- **Peter A Kim**    peter@pkimlaw.com, peterandrewkim@yahoo.com
- **Christopher J Langley**    chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Benjamin R Levinson**    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
- **Eric A Mitnick**    MitnickLaw@aol.com, mitnicklaw@gmail.com
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-
  law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify
  .bestcase.com
- **Donald W Reid**    don@donreidlaw.com, ecf@donreidlaw.com
- **Matthew D. Resnik**    matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@r
  hmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;
  sloan@rhmfirm.com
- **Peter J Ryan**    ryan@floresryan.com, schneider@floresryan.com
- **Allan D Sarver**    ADS@asarverlaw.com
- **Zev Shechtman**    zshechtman@DanningGill.com,
  danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **David Samuel Shevitz**    david@shevitzlawfirm.com,
  shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- **John N Tedford**    jtedford@DanningGill.com,
  danninggill@gmail.com;jtedford@ecf.courtdrive.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

1685211.1  27086 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**
                                                                                              Exhibit 5, Page 96

# EXHIBIT 6

1  ZEV SHECHTMAN (State Bar No. 266280)
   *zs@DanningGill.com*
2  ALPHAMORLAI L. KEBEH (State Bar No. 336798)
   *akebeh@DanningGill.com*
3  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
4  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
5  Facsimile: (310) 277-5735
6  Proposed Attorneys for Jinzheng Group (USA)
   LLC

FILED & ENTERED

JUN 17 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

7

8

9                    **UNITED STATES BANKRUPTCY COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11                      **LOS ANGELES DIVISION**

12  In re                                Case No. 2:21-bk-16674-ER

13  JINZHENG GROUP (USA) LLC,            Chapter 11

14            Debtor and Debtor-in-     **ORDER APPROVING STIPULATION TO
              Possession.               (1) WITHDRAW DEBTOR'S COMBINED
15                                       PLAN OF REORGANIZATION AND
                                         DISCLOSURE STATEMENT WITHOUT
16                                       PREJUDICE AND (2) WITHDRAW
                                         OFFICIAL COMMITTEE OF
17                                       UNSECURED CREDITORS' MOTION
                                         FOR THE APPOINTMENT OF A
18                                       CHAPTER 11 TRUSTEE WITHOUT
                                         PREJUDICE

19                                       [Related to Docket Nos. 136 and 205]**

20

21

22

23

24

25

26

27

28

1    The Court, having read and considered the *Stipulation to (1) Withdraw Debtor's Combined*

2    *Plan of Reorganization and Disclosure Statement (the "Plan and Disclosure Statement") Without*

3    *Prejudice and (2) Withdraw Official Committee of Unsecured Creditors' Motion for the*

4    *Appointment of a Chapter 11 Trustee (the "Motion to Appoint Trustee") Without Prejudice* (the

5    "Stipulation") (docket no. 250), and with good cause shown,

6       **IT IS ORDERED:**

7       1.    The Stipulation is approved.

8       2.    The Debtor's Plan and Disclosure Statement is hereby withdrawn without prejudice,

9    and the July 6, 2022 hearing thereon is vacated.

10      3.    The Committee's Motion to Appoint Trustee is hereby withdrawn without prejudice,

11   and the July 6, 2022 hearing thereon is vacated.

12                                                                                ###

13

14

15

16

17

18

19

20

21

22

23

24   Date: June 17, 2022

25                                                            Ernest M. Robles
                                                             United States Bankruptcy Judge
26

27

28

1685207.1  27086                              2

# EXHIBIT 7

1 | ZEV SHECHTMAN (State Bar No. 266280)
*zs@DanningGill.com*
2 | JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@DanningGill.com*
3 | ALPHAMORLAI L. KEBEH (State Bar No. 336798)
*akebeh@DanningGill.com*
4 | DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
5 | Los Angeles, California 90067-6006
Telephone: (310) 277-0077
6 | Facsimile: (310) 277-5735

7 | General Bankruptcy Counsel for Jinzheng Group
(USA) LLC, Debtor and Debtor in Possession

8

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

11

12

In re

13

JINZHENG GROUP (USA) LLC,

14

Debtor and Debtor in
15 | Possession.

16

17

18

19

20

21

Case No. 2:21-bk-16674-ER

Chapter 11

**DEBTOR'S NOTICE OF APPLICATION
AND APPLICATION TO EMPLOY
RE/MAX OF CERRITOS AND
COLDWELL BANKER AS REAL
ESTATE BROKERS AND TO ENTER
INTO AN EXCLUSIVE LISTING
AGREEMENT; DECLARATION RE
DISINTERESTEDNESS FOR
EMPLOYMENT OF PROFESSIONAL
PERSONS UNDER F.R.B.P. 2014**

[No Hearing Required]

22 | **PLEASE TAKE NOTICE** that Jinzheng Group (USA) LLC (the "Debtor"), hereby applies

23 | pursuant to 11 U.S.C. § 328 for entry of an order authorizing the Debtor to employ Re/Max of

24 | Cerritos and Coldwell Banker ( collectively, the "Brokers") through its agents Stephen Eng and

25 | William Friedman respectively as the Debtor's real estate brokers in this case, consistent with the

26 | terms set forth in the listing agreement attached as Exhibit "1,".

27 | In compliance with Local Bankruptcy Rule 2014-1(b)(3), the Debtor hereby provides the

28 | following information regarding the Application:

1688146.2  27086

1

1       1.   <u>Identity of professional and the purpose and scope for which it is being employed</u>

The Debtor seeks to employ Re/Max of Cerritos and Coldwell Banker (the "Brokers") through its agents Stephen Eng and William Friedman as the Debtor's real estate brokers in this case, to assist the Debtor in the marketing and sale of real property located at 2240 Lorain Road, San Marino, California 91108 (the "Property").

2.   <u>Whether professional seeks compensation pursuant to 11 U.S.C. § 328 or 11 U.S.C. § 330</u>

The Debtor will seek to compensate the Broker pursuant to 11 U.S.C. § 328.

3.   <u>Arrangements for compensation</u>

The proposed terms of the Broker's compensation are set forth in the Listing Agreement (including the addendums thereto), attached as Exhibit "1." Without limiting the detail in the Listing Agreement, the terms of compensation are as follows:  The Debtor proposes to hire the Brokers for a total commission of five percent (5%) of the selling price for the Property (payable only upon close of sale) to be shared as follows:  two percent (2%) to buyer's broker, if any, and the other three percent (3%) to the Brokers.  If the buyer does not have a broker or if the Brokers represent both the Debtor and the buyer, then the Brokers would be entitled to a total commission of four percent (4%).  The proposed listing price for the Property is $2,300,000.00.

4.   <u>Name, address and telephone number of person who will provide a copy of the Application</u>

A copy of the Application may be requested by contacting the Debtor's bankruptcy counsel, Attn.: Zev Shechtman at Danning, Gill, Israel & Krasnoff, LLP, at Email: ZS@DanningGill.com. The address for Debtor's counsel is Danning, Gill, Israel & Krasnoff, LLP, Attn.: Zev Shechtman, 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067 and the telephone number is (310) 277-0077.

By this Application, the Debtor also seeks the Court's authority to terminate the employment of the prior broker who listed this Property, Jay Wu, who's employment was previously authorized by this Court's order entered on February 22, 2022 (doc. no. 124), and any transactions related thereto.

1688146.2  27086

2

1    The Application is based upon this Notice of Application, the attached Memorandum of

2  Points and Authorities, the attached Declaration of Zhao Pu Yang, the attached Statements of

3  Disinterestedness, the complete files and records of this case, and such other evidentiary matters as

4  may be presented to the Court.

5    **PLEASE TAKE FURTHER NOTICE that**, pursuant to Local Bankruptcy Rule 9013

6  1(o)(1)(A)(ii), any objection and request for hearing must be in writing and must be filed and

7  served within fourteen (14) days after of the date of mailing of this Notice, plus an additional 3

8  days if this notice of motion was served by mail or pursuant to Fed. R. Civ. P. 5(b)(2)(D) or (F).

9  The response or opposition to the application shall be filed with the Bankruptcy Court and served

10  on the United States Trustee, at 915 Wilshire Boulevard, Suite 1850, Los Angeles, CA 90017, and

11  counsel for the Trustee, Zev Shechtman, at 1901 Avenue of the Stars, Suite 450, Los Angeles, CA

12  90067.

13    If you fail to file a written response within fourteen days of the date of the service of this

14  notice, plus an additional 3 days if this notice of motion was served by mail or pursuant to Fed. R.

15  Civ. P. 5(b)(2)(D) or (F), the Court may treat such failure as a waiver of your right to oppose the

16  application and may grant the requested relief.

17

18  DATED:  July __15__, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

19

20                                          By:  /s/ Zev Shechtman

21                                          _____
                                            ZEV SHECHTMAN
22                                          General Bankruptcy Counsel for Jinzheng
                                            Group (USA) LLC, Debtor and Debtor in
23                                          Possession

24

25

26

27

28

1688146.2  27086                              3

## **MEMORANDUM OF POINTS & AUTHORITIES**

1

2       Jinzheng Group (USA) LLC, the Debtor and Debtor in Possession herein ("Applicant" or

3  "Debtor"), respectfully applies for authority to employ Re/Max Of Cerritos and Coldwell Banker

4  (the "Brokers") through its agents Stephen Eng and William Friedman respectively as the Debtor's

5  real estate brokers in this case, pursuant to an exclusive listing agreement, based upon the

6  following:

7         1.     On August 24, 2021 (the "Petition Date"), Jinzheng Group (USA) LLC (the

8  "Debtor"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The

9  Debtor continues in possession of its property and is operating and managing its business as a

10  debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.  No trustee or

11  examiner has been appointed in the Debtor's Chapter 11 Case

12         2.     Included as property of the estate is real property located at 2240 Lorain

13  Road, San Marino, California 91108 (the "Property").  Applicant is informed and believes that

14  there are three liens on the Property.  Applicant is further informed that both the first and second

15  lienholders are preparing to file motions for relief from stay to foreclose on the Property.  Although

16  the Property was originally listed for $2.45 million with the former broker, Jay Wu of LT

17  Management Group, in or around February 2022, it has been in escrow for several months on an

18  attempted short sale.  The Debtor has been unable to obtain the consent of the third lienholder,

19  DNQ LLC to a sale which would not result in full pay of DNQ's lien.  Accordingly, the attempt to

20  market and sell the Property with the former broker has been unsuccessful.

21         3.     The former broker is also Debtor's former manager, and must be replaced.

22  Applicant has determined that, in order to attempt to market the Property for sale, Applicant

23  requires the services of new agents who are familiar with the bankruptcy sale process and will be

24  able to work effectively with the Debtor's management and professionals. By its terms the listing

25  agreement with the former broker expires August 1, 2022.  See docket no. 91 at ECF p. 19.

26  However, Applicant requests that the services of the former broker be terminated early, effective

27  June 30, 2022, to help facilitate a sale for the benefit of creditors, and that any transaction

28  contemplated under such listing agreement be voided, without prejudice to the right of parties who

1688146.2  27086

4

1  were interested in purchasing the Property previously presenting new offers to purchase the

2  Property.

3        4.    Applicant believes that there is urgency and need for these changes given the

4  threats of foreclosure made by the first and second lienholders.

5        5.    It is necessary for Applicant to sell the Property in order to pay expenses of

6  administration and the claims of creditors and to limit the Debtor's exposure to secured and

7  unsecured debts.  Applicant has determined that the best way to market the Property would be

8  through a licensed real estate broker with experience in marketing in the Los Angeles County area

9  where the Property is located, and who understands bankruptcy sale processes, to whom Applicant

10  would grant an exclusive listing.

11        6.    Applicant proposes to employ Re/Max Of Cerritos and Coldwell Banker

12  through their agents Stephen Eng and William Friedman respectively as its real estate brokers

13  because they are licensed real estate agents experienced in dealing with real property where the

14  Property is located.  Mr. Friedman is an expert in bankruptcy sales.

15        7.    Applicant proposes to hire Re/Max Of Cerritos And Coldwell Banker as its

16  real estate broker for a total commission of five percent (5%) of the selling price for the Property

17  (payable only upon close of sale) to be shared as follows:  two percent (2%) to buyer's broker, if

18  any, and the other three percent (3%) to the Brokers.  If the buyer does not have a broker or if the

19  Brokers represent both the Debtor and the buyer, then the Brokers would be entitled to a total

20  commission of four percent (4%).

21        8.    The terms of the exclusive listing agreement upon which the Debtor

22  proposes to enter into with Re/Max Of Cerritos and Coldwell Banker is reflected in Exhibit "1"

23  attached hereto and incorporated herein by this reference.

24        9.    The Debtor also seeks authorization from the Court to enter into the listing

25  agreement with Re/Max Of Cerritos And Coldwell Banker with regard to the Property and to

26  extend the agreement from time to time as it believes in its discretion to be appropriate under the

27  circumstances without further notice or order of the Court.

28

1688146.2  27086

5

10.     Applicant believes the employment of Re/Max Of Cerritos And Coldwell Banker is in the best interest of the estate, based on the above noted facts.  The Property will be advertised in Los Angeles County which will assist the Debtor in increasing the likelihood that an overbid will be received.

WHEREFORE, Applicant prays for entry of an order authorizing it to 1) employ Re/Max Of Cerritos And Coldwell Banker through its agents, Stephen Eng and William Friedman respectively as the Debtor's real estate brokers effective as of July 1, 2022; 2) execute an exclusive listing agreement consistent with the terms and conditions set forth in Exhibit "1" attached hereto, subject to price modifications as appropriate in consultation with the Brokers; 3) authorize Applicant to extend that agreement in its sole discretion without further notice or order of the Court; 4) authorize Applicant to take such other actions as necessary in furtherance of the marketing and sale of the Property, subject to the Court's approval of a sale after notice and a hearing under section 363 of the Bankruptcy Code; 5) authorize the termination of the listing agreement and the employment by the estate of Jay Wu of LT Management Group effective as of June 30, 2022 as well any transactions associated therewith, without prejudice to the ability of interested parties to submit new offers to the Debtor; and 6) for all other further and proper relief.

DATED:  July 15 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP


                                        By:  /s/ Zev Shechtman
                                             ─────────────────────────────────
                                             ZEV SHECHTMAN
                                             General Bankruptcy Counsel for Jinzheng Group
                                             (USA) LLC, Debtor and Debtor in Possession

1688146.2  27086                        6

### DECLARATION OF ZHAO PU YANG

I, ZHAO PU YANG, declare and state as follows:

1.     I have personal knowledge of each of the facts herein, except those set forth on information and belief and, as to those matters, I believe them to be true.  If called as a witness, I could and would testify competently with respect to such facts.

2.     I am the attorney in fact for Jianqing Yang, the managing member of Jinzheng Group (USA) LLC (the "Debtor").

3.     This declaration is submitted in support of the Debtor's Application for Authority to Employ Re/Max Of Cerritos And Coldwell Banker as its Real Estate Brokers Pursuant to 11 U.S.C. § 328 (the "Application").  To the best of my knowledge and belief, all of the statements made in the Application are true and correct.

4.     In my business judgment, the Debtor's employment of Re/Max Of Cerritos and Coldwell Banker, through its agents Stephen Eng and William Friedman as its real estate brokers is appropriate and in the best interests of the estate.  In my business judgment it is also necessary to terminate the employment of my former brokers for this Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July ___, 2022, at Los Angeles, California.

_____
ZHAO PU YANG, Attorney in Fact

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014
(Re/Max of Cerritos)**

1.      Name, address and telephone number of the professional ("the Professional") submitting this Statement:

RE/MAX OF CERRITOS
17212 Norwalk Boulevard
Cerritos, CA  90703
Telephone:  626-353-2384

2.      The services to be rendered by the Professional in this case are (specify):

To market and sell real property located at 2240 Lorain Road, San Marino, California 91108  (the "Property").  Attached as Exhibit "2" is a copy of my Resume which describes my expertise and experience.

3.      The terms and source of the proposed compensation and reimbursement of the Professional are (specify):
a total commission of five percent (5%) of the selling price for the Property (payable only upon close of sale) to be shared as follows:  two percent (2%) to buyer's broker, if any, and the other three percent (3%) to the Brokers.  If the buyer does not have a broker or if the Brokers represent both the Debtor and the buyer, then the Brokers would be entitled to a total commission of four percent (4%).

4.      The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

N/A

5.      The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

I have reviewed my files of past clients.  I was never involved with any transaction on this Property.

6.      The following is a complete description of all of the Professional's connections with the Chapter 11 Debtor, the debtors, principals of the debtors, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

The Debtor will also employ Re/Max of Cerritos (together with Mr. Friedman) to list and market property located at 150 East La Sierra Drive, Arcadia, California 91006 ("Arcadia") when and if that property is brought back into the estate.  Re/Max of Cerritos has already listed Arcadia.  Stephen Eng is also being employed as property manager for all of the Debtor's properties.

1688146.2  27086

8

Exhibit 7, Page 108

7.     The Professional is not a creditor, an equity security holder or an insider of the debtors, except as follows (specify, attaching extra pages as necessary):

None

8.     The Professional is not and was not an investment banker for any outstanding security of the Debtors.

9.     The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

10.     The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the debtors.

11.     The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the debtors, or for any other reason, except as follows (specify, attaching extra pages as necessary):

None

12.     Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Stephen Eng
RE/MAX OF CERRITOS
17212 Norwalk Boulevard
Cerritos, CA  90703
Telephone:  626-353-2384

13.     The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14.     Total number of attached pages of supporting documentation: 19

DocuSign Envelope ID: 63BF8338-BBAB-4C22-9984-B857DE4880EC

15.     After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on this _____ day of July, 2022 at Los Angeles, California.

_____
STEPHEN ENG

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014
{Coldwell Banker Residential Brokerage}**

1.      Name, address and telephone number of the professional ("the Professional") submitting this Statement:

William Friedman
Coldwell Banker Residential Brokerage
1608 Montana Avenue
Santa Monica, CA 90405
Telephone: (310) 829-3939

2.      The services to be rendered by the Professional in this case are (specify):

To list and aid the Trustee in marketing and selling real property located at 2240 Lorain Road, San Marino, California 91108.  Attached as Exhibit "3" is a copy of my Resume which describes my expertise and experience.

3.      The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

a total commission of five percent (5%) of the selling price for the Property (payable only upon close of sale) to be shared as follows:  two percent (2%) to buyer's broker, if any, and the other three percent (3%) to the Brokers.  If the buyer does not have a broker or if the Brokers represent both the Debtor and the buyer, then the Brokers would be entitled to a total commission of four percent (4%).

4.      The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):      N/A

5.      The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

I have reviewed my files of past clients.  I was never involved with any transaction on this Property.

6.      The following is a complete description of all of the Professional's connections with the Chapter 7 trustee, the Debtor, principals of the Debtor, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

None, except that I have previously been employed as broker by bankruptcy trustees who were either members of Danning, Gill, Israel & Krasnoff, LLP or were clients of that firm, unrelated to the Debtor.  In addition, the Debtor will also employ Coldwell Banker (together with Mr. Eng) to list and market property located at 150 East La Sierra Drive, Arcadia, California 91006 ("Arcadia") when and if that property is brought back into the estate.

7.      The Professional is not a creditor, an equity security holder or an insider of the Debtor, except as follows (specify, attaching extra pages as necessary):
None.

8.      The Professional is not and was not an investment banker for any outstanding security of the Debtor.

9.      The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10.     The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

11.     The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary):

None.

12.     Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

William Friedman , Coldwell Banker Residential Brokerage, 1608 Montana Avenue Santa Monica, CA  90405, Telephone: (310) 829-3939

13.     The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14.     Total number of attached pages of supporting documentation:  1

15.     After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on July 15, 2022, at Los Angeles, California.

WILLIAM FRIEDMAN

# EXHIBIT "1"

DocuSign Envelope ID: 93D883B3-741A-4396-BDDA-9F18530619B0

CALIFORNIA
ASSOCIATION
OF REALTORS®

## DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

### SELLER'S AGENT
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### BUYER'S AGENT
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### AGENT REPRESENTING BOTH SELLER AND BUYER
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

### SELLER AND BUYER RESPONSIBILITIES
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant  *zhaopu yang*    JINZHENG GROUP USA LLC  Date 7/11/2022
—34929D9DEA804CA...—

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant    Date _____

Agent   RE/MAX OF CERRITOS / COLDWELL BANKER    DRE Lic. # 02103723/00616212
                  Real Estate Broker (Firm)
By *Stephen Eng*    Stephen Eng DRE Lic. # 01946974    Date 7/11/2022
—6FEB306DC965411...—
     (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

RE/MAX OF CERRITOS, 17212 Norwalk Blvd Cerritos, CA 90703    Phone: 6263532384    Fax:    Listing - 2240
Stephen Eng    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

000014
Exhibit 7, Page 114

CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.24, inclusive, the following terms have the following meanings:

**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17 **(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

| | | |
|---|---|---|
| Seller's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

| | | |
|---|---|---|
| Seller's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

| | | |
|---|---|---|
| Buyer's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

| | | |
|---|---|---|
| Buyer's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

2079.18 (Repealed pursuant to AB-1289)

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**AD REVISED 12/21 (PAGE 2 OF 2)**



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Listing

Exhibit 7, Page 115

DocuSign Envelope ID: 93D83583-741A-4396-BDDA-E315DF006180

CALIFORNIA
ASSOCIATION
OF REALTORS®

# FAIR HOUSING & DISCRIMINATION ADVISORY
## (C.A.R. Form FHDA, 6/22)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT (Unruh) California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7.; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC § 10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2022, California Association of REALTORS®, Inc.

**FHDA REVISED 6/22 (PAGE 1 OF 2)**

| RE/MAX OF CERRITOS, 17212 Norwalk Blvd Cerritos, CA 90703 | Phone: 6263532384 | Fax: | Listing - 2240 |
|---|---|---|---|
| Stephen Eng | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com | | |

000016

Exhibit 7, Page 116

DocuSign Envelope ID: 93D883B3-741A-4396-BDDA-0E4EB5F08190

E.   inquiring about protected characteristics among tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);
F.   Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;
G.   Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);
H.   Denying a home loan or homeowner's insurance;
I.   Offering inferior terms, conditions, privileges, facilities or services;
J.   Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;
K.   Harassing a person;
L.   Taking an adverse action based on protected characteristics;
M.   Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheelchair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);
N.   Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i)   Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii)   Charging that person higher rent or increased security deposit, or
   (iii)   Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;
O.   Retaliating for asserting rights under fair housing laws.

**10.  EXAMPLES OF POSITIVE PRACTICES:**
A.   Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
B.   Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
C.   Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
D.   Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
E.   Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11.  FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
A.   Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
B.   State: **https://www.dfeh.ca.gov/housing/**
C.   Local: local Fair Housing Council office (non-profit, free service)
D.   DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
E.   Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.
F.   Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12.  LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**
A.   Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
B.   An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
C.   An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
D.   An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
E.   Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC,* 666 F.3d 1216 (2019).
F.   Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | |
|---|---|
| Buyer/Tenant _____ | Date _____ |
| Buyer/Tenant _____ | Date _____ |
| Seller/Landlord _sharpu yang_   **JINZHENG GROUP USA LLC** | Date 7/11/2022 |
| Seller/Landlord —34929D8DEA804CA... | Date _____ |

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**FHDA REVISED 6/22 (PAGE 2 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Listing - 7200
000017

Exhibit 7, Page 117

DocuSign Envelope ID: 93D883B3-741A-4395-BDDA-B518FF096180

CALIFORNIA
ASSOCIATION
OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | _shaopa yang_ (DocuSigned by) | _JINZHENG GROUP USA LLC_ Date | 7/11/2022 |
| Seller | 34929D9DEA804CA... | Date | |
| Buyer | | Date | |
| Buyer | | Date | |
| Buyer's Brokerage Firm | | DRE Lic # | Date |
| By | | DRE Lic # | Date |
| Seller's Brokerage Firm | _RE/MAX OF CERRITOS / COLDWELL BANKER_ | DRE Lic # 02103723/00616 | Date |
| By _Stephen Eng_  _B W Friedma_ | | DRE Lic # 01946974 | Date 7/11/2022 |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

RE/MAX OF CERRITOS, 17212 Norwalk Blvd Cerritos, CA 90703    Phone: 6263532394    Fax:    Listing - 2240
Stephen Eng    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

000018
Exhibit 7, Page 118

DocuSign Envelope ID: 93D89383-747A-4396-BDDA-DB15BF096180

CALIFORNIA
ASSOCIATION
OF REALTORS®

# WIRE FRAUD AND ELECTRONIC FUNDS
# TRANSFER ADVISORY
### (C.A.R. Form WFA, Revised 12/21)

Property Address: _2240 LORAIN RD, SAN MARINO, CA  91108_ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant | | Date |
| Buyer/Tenant | | Date |
| Seller/Landlord | _zhaopa yang_  *JINZHENG GROUP USA LLC* | Date 7/11/2022 |
| Seller/Landlord | —34929D9DEA804CA... | Date |

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/21 (PAGE 1 OF 1)**

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)

RE/MAX OF CERRITOS, 17212 Norwalk Blvd Cerritos, CA 90703    Phone: 6263532384    Fax:    Listing - 2240
Stephen Eng    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

000019
Exhibit 7, Page 119

DocuSign Envelope ID: 93D883B3-741A-4396-BDDA-97ABBF02CCF8

CALIFORNIA
ASSOCIATION
OF REALTORS®

# RESIDENTIAL LISTING AGREEMENT
### (Exclusive Authorization and Right to Sell)
#### (C.A.R. Form RLA, Revised 6/22)

Date Prepared: __07/11/2022__

1. **EXCLUSIVE RIGHT TO SELL:** _____ __JINZHENG GROUP USA LLC__ ("Seller")
hereby employs and grants _____ __RE/MAX OF CERRITOS / COLDWELL BANKER__ ("Broker")
beginning (date) ____ __July 11, 2022__ ____ and ending at 11:59 P.M. on (date) ___ __December 31, 2022__ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as __2240 LORAIN RD__
_____, situated in ____ __SAN MARINO__ ____ (City),
____ __LOS ANGELES__ ____ (County), California, ___ __91108__ (Zip Code), Assessor's Parcel No. __5365-019-052__ ("Property").
☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing Addendum and Advisory (C.A.R. Form PLA) for additional terms.
2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: __Two Million, Three Hundred Thousand__
      _____ Dollars ($ __2,300,000.00__ ).
   B. Listing Terms: __SUBJECT TO BANKRUPTCY COURT APPROVAL; ADDENDUM IS ATTACHED.__
   _____ :

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ __5.000__ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
      AND __TOTAL COMMISSION TO BE 4% IF LISTING BROKERAGE REPRESENTS BOTH SELLER AND BUYERS__ , as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      OR (2) If within __90__ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: **(i)** who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or **(ii)** for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under **paragraph 3A(2)** unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
      OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under **paragraph 3A** shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____.
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in **paragraph 3A**, either ☒ __2.000__ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 3A**, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____.
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

© 2022, California Association of REALTORS®, Inc.

**RLA REVISED 6/22 (PAGE 1 OF 5)**

Seller's Initials __2-Y__ / _____

## RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)

RE/MAX OF CERRITOS, 17212 Norwalk Blvd Cerritos, CA 90703      Phone: 6263532384      Fax:      Listing - 2240
Stephen Eng      Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      000020

Exhibit 7, Page 120

DocuSign Envelope ID: 93D893B3-741A-4396-BDDA-0B15B5996180
Property Address: 2240 LORAIN RD, SAN MARINO, CA 91108                                    Date: 07/11/2022

4.  A.  **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
        **ADDITIONAL ITEMS EXCLUDED:** _____
        **ADDITIONAL ITEMS INCLUDED:** _____
        Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

    B.  **(1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
        ☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
        ☐ Other

        **(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
        ☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
        ☐ Other

        Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5.  **MULTIPLE LISTING SERVICE:**
    A.  **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
    B.  **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
    C.  **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to            **CRMLS**            Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by **paragraph 7** or by the MLS, Property will be listed with the MLS(s) specified above.

6.  **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
    A.  **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
    B.  **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
    C.  **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
    D.  **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

    | Seller's Initials | ZY | / | | Broker's/Agent's Initials | SE | / | BF |
    |---|---|---|---|---|---|---|---|

7.  **PUBLIC MARKETING OF PROPERTY:**
    A.  **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see **paragraph 7F**) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
    B.  **PUBLIC MARKETING WITHIN CLEAR COOPERATION:** **(i)** Public marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
    C.  **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.
    D.  **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
        (1)  Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).

RLA REVISED 6/22 (PAGE 2 OF 5)                                     Seller's Initials | ZY | / |

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    Listing - 2240

000021

Exhibit 7, Page 121

OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

**E.** Whether paragraph 7D(1) or 7D(2) is selected, Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

**F.** ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY: Paragraphs 7A** (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**8.** **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**A.** **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**B.** **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**9.** **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**10.** **BROKER'S AND SELLER'S DUTIES:**

**A.** **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 10E as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** **Presentation of Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

**C.** **Buyer Supplemental Offer Letters (Buyer Letters):**

(1) **Paragraph 8** of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.

(2) (A) ☐ **Seller instructs Broker not to present Buyer Letters,** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR (B) ☐ **Seller instructs Broker to present Buyer Letters.** Buyer advises seller that: (i) Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and (ii) if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 3F,** referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E.** **Investigations and Reports:** Seller agrees, within 5 (or _____ ) **Days** of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____ .
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**11.** **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

RLA REVISED 6/22 (PAGE 3 OF 5)          Seller's Initials ⎣ 2Y ⎦ / ⎣_____⎦

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    Listing - 2240
000022

Exhibit 7, Page 122

12. **AGENCY RELATIONSHIPS:**

A. **DISCLOSURE:** The Seller acknowledges receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

B. **SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 3F.**

C. **POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

D. **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

E. **POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

F. **TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

13. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

14. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or [ ] if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons, (If checked) [ ] Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

15. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

A. Seller does (or if checked [ ] does not) authorize Broker to install a keysafe/lockbox.

B. **TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s) written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

16. **SIGN:** Seller does (or if checked [ ] does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

17. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

18. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs, except as otherwise specified in **paragraph 22A.**

19. **ADDITIONAL TERMS:** [ ] REO Advisory Listing (C.A.R. Form REOL) [ ] Short Sale Information and Advisory (C.A.R. Form SSIA)
[ ] Trust Advisory (C.A.R. Form TA)
[ ] Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

_____
_____
_____

20. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

21. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

22. **DISPUTE RESOLUTION:**

RLA REVISED 6/22 (PAGE 4 OF 5)                                          Seller's Initials  ___24___  / _____



Exhibit 7, Page 123

DocuSign Envelope ID: 93D88953-741A-4396-BDDA-3B168B008180
Property Address: 2240 LORAIN RD, SAN MARINO, CA 91108

A. **MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 18.** (4) Exclusions from this mediation agreement are specified in **paragraph 22B.**

B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

C. **ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

23. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

24. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____.

25. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall deliver to Broker, within 3 Days after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

☐ **ENTITY SELLERS:** (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)
(1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, other entity or holds a power of attorney.
(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 25** for additional terms.
(3) The name(s) of the Legally Authorized Signer(s) is: _____.
(4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**SELLER SIGNATURE(S):**

(Signature) By, _shaopu yang_                                              Date: 7/11/2022
Printed name of SELLER: SANZHENG GROUP USA LLC
☐ Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

(Signature) By, _____                                            Date: _____
Printed name of SELLER: _____
☐ Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____
☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *RE/MAX OF CERRITOS / COLDWELL BANKER*        DRE Lic. # 02103723/00616212
Address 17212 NORWALK BLVD                City *CERRITOS*        State *CA*  Zip *90703*
By _Stephen Eng_  Tel.(626)353-2384  E-mail stephen.eng@remaxofcerritos.c DRE Lic.#01946974  Date 7/11/2022
Stephen Eng
By _Bill Fried_  Tel.(213)200-2500  E-mail billfried@earthlink.net  DRE Lic.#00672015  Date 7/12/22
Bill Friedman

☒ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2022 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.) NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RLA REVISED 6/22 (RLA PAGE 5 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com        Listing - 2200024

Exhibit 7, Page 124

DocuSign Envelope ID: 93D88353-741A-439B-BDDA-B31EE696180

CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: <u>2240 LORAIN RD, SAN MARINO, CA  91108</u>                                    ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.                    Seller's Initials ( 2Y )( )

**SA REVISED 12/15 (PAGE 1 OF 2)**

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

RE/MAX OF CERRITOS, 17212 Norwalk Blvd Cerritos, CA 90703                 Phone: 6263532384              Fax:                  Listing - 2240
Stephen Eng                         Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

000026

DocuSign Envelope ID: 93D88353-741A-4396-BDDA-B516EF026180
Property Address: 2240 LORAIN RD, SAN MARINO

Date: 07/11/2022

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do not have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule began October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**

**A. Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection, an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. **OTHER ITEMS:** _____

_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _shaopu yang_   Date 7/11/2022
Print Name JINZHENG GROUP USA LLC

Seller _____   Date _____
Print Name

Real Estate Broker (Listing Firm) *RE/MAX OF CERRITOS / COLDWELL BANKER*   DRE Lic.#: 02103723/00616212
By _Stephen Eng_   Stephen Eng  DRE Lic.# 01946974   Date 7/11/2022
By _____ Bill Friedman   Bill Friedman DRE Lic.# 00672015   Date 7-12-22
Address 17212 NORWALK BLVD   City CERRITOS   State CA   Zip 90703
Telephone (626)353-2384   Fax (562)862-7797   E-mail stephen.eng@remaxofcerritos.com

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

SA REVISED 12/15 (PAGE 2 OF 2)



**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

000026

Exhibit 7, Page 126

DocuSign Envelope ID: 93D883B3-741A-4396-BDDA-2516BF096180

CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY,
## DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/21)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, "opt out" or stop the transfer of your PI to others, and the right to request that the business delete your PI entirely. You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Also, even businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant ____DocuSigned by:____ sharpe yang    Date 7/11/2022
JINZHENG GROUP USA LLC

Buyer/Seller/Landlord/Tenant _____    Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/21 (PAGE 1 OF 1)**



**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

RE/MAX OF CERRITOS, 17212 Norwalk Blvd Cerritos, CA 90703    Phone: 6263532384    Fax:    Listing - 2240
Stephen Eng    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

000027

Exhibit 7, Page 127

DocuSign Envelope ID: 93D883B3-741A-4396-BDDA-B516BF0B6180

CALIFORNIA
ASSOCIATION
OF REALTORS®

# ADDITIONAL BROKER ACKNOWLEDGEMENT
### (C.A.R. Form ABA, Revised 6/22)

This is an addendum to the Listing Agreement, OR ☐ Purchase Agreement, ☐ Buyer Representation Agreement, ☐ Other
_____ ("Agreement"),
dated _07/11/2022_ , between _____ *JINZHENG GROUP USA LLC* _____ ("Seller/Buyer/Broker")
and _____ *REMAX OF CERRITOS / COLDWELL BANKER* _____ ("Seller/Buyer/Broker")
if applicable, for the property described as: _____ *2240 LORAIN RD, SAN MARINO, CA  91108* _____.

1. **LISTING AGREEMENT:**
   _____ *REMAX OF CERRITOS* _____ (Broker 1) and
   _____ *COLDWELL BANKER* _____ (Broker 2)
   are Co-listing Brokers under the Listing Agreement identified above and agree to share responsibility and compensation for the
   representation of Seller as follows: *50/50*
   _____ OR ☐ on the terms of the attached agreement.

2. **BUYER REPRESENTATION AGREEMENT:**
   _____ (Broker 1) and
   _____ (Broker 2)
   are Co-Buyer Brokers under the Buyer Representation Agreement identified above and agree to share responsibility and
   compensation for the representation of Buyer as follows:
   _____ OR ☐ on the terms of the attached agreement.

3. **PURCHASE AGREEMENT/OTHER:**
   Check **ONE** box **ONLY**. If more than one applies, use separate forms for each.
   **A.** ☐ Multiple Brokers Representing Seller:
   _____ (Broker 1) and
   _____ (Broker 2)
   are parties to a Residential Listing Agreement, ☐ Other _____ dated _____
   in which they have agreed to share responsibility and compensation for the representation of Seller.
   **OR B.** ☐ Multiple Brokers Representing Buyer:
   _____ (Broker 1) and
   _____ (Broker 2)
   are real estate brokers who have entered into an agreement to share responsibility and compensation for the representation of
   Buyer.

4. ☐ Activity under the license of Broker 1 or Broker 2 or both as applicable will be conducted by multiple associate licensees, partners
   or teams as indicated on the attached Additional Agent Acknowledgement form(s) (C.A.R. Form AAA).

5. By signing below, all parties understand, acknowledge and agree that, wherever the name of either Broker 1 or Broker 2, as
   applicable, is indicated in the Agreement or related documents, as a representative for the Buyer or Seller specified in 1, 2 or 3
   above, the other Broker shall also be deemed to be named. Buyer signatures are not necessary if only **paragraph 1** of this form is
   completed. Seller signatures are not necessary if only **paragraph 2** of this form is completed.

Real Estate Broker (Broker 1) *REMAX OF CERRITOS* _____ DRE Lic. # *02103723*
By (Broker/Office Manager) _____ *Stephen Eng* DRE Lic. # *01946974* _____ Date _____
Real Estate Broker (Broker 2) *COLDWELL BANKER* _____ DRE Lic. # *00616212*
By (Broker/Office Manager) _____ *BM Fried* _____ *Bill Friedman* DRE Lic. # *00672015* _____ Date _____
Seller _____ *sharon yang* _____ *JINZHENG GROUP USA LLC* Date *7/11/2022*
Seller _____ 3492909DEA804CA... _____ Date _____
Buyer _____ Date _____
Buyer _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ABA REVISED 6/22 (PAGE 1 OF 1)**

## ADDITIONAL BROKER ACKNOWLEDGEMENT (ABA PAGE 1 OF 1)

000028
Exhibit 7, Page 128

## ADDENDUM TO RESIDENTIAL LISTING AGREEMENT

Jinzheng Group (USA), LLC solely in the capacity as the Chapter 11 Debtor and Debtor in Possession("Jinzheng Group") in the bankruptcy case in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), agrees to grant to the listing brokers ("Brokers") the exclusive right to negotiate a sale of the real property commonly described as 2240 Lorain Rd, San Marino, California ("Property") upon the terms and conditions of the Residential Listing Agreement ("Agreement"), as amended by the following terms and conditions:

1. Addendum. This Addendum applies to the Agreement. Notwithstanding any contrary terms and conditions in the Agreement, this Addendum shall apply.

2. Conditions of Sale. The Brokers agree and understand that any sale of the Property shall be subject to the following terms and conditions:

   a. If for any reason, or no reason whatsoever, Jinzheng Group is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

   b. Jinzheng Group is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property.

   c. The sale of the Property is subject to Bankruptcy Court approval after notice to the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

   d. The sale is subject to overbids in accordance with procedures approved or to be approved by the Bankruptcy Court..

   e. The purchaser is to arrange for all financing for the acquisition of the Property before the close of escrow.

   f. All escrow fees shall be shared and paid on a 50/50 basis by Jinzheng Group and the purchaser.

   g. The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if

2

000029

Exhibit 7, Page 129

any, low flush toilets and similar items, as now required by state or local law. Jinzheng Group is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

h. The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

i. If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense .

j. Any sale is subject to the following conditions being satisfied before the close of escrow:

    1) Jinzheng Group must prevail with respect to any objections to the proposed sale and the Bankruptcy Court must have entered an order approving thesale that is not subject to a stay pending appeal; and

    2) Jinzheng Group reserves the right to reject any and all offers.

k. The Property is being sold subject to:

    1) All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow; and

    2) Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property. Title, however, is to be transferred free and clear of secured claims of record.

3. Payment of Commission. The commission to be paid to the Brokers shall only be paid from the proceeds of the sale of the Property. The payment of the commission is subject to prior approval of the Bankruptcy Court. Pursuant to the application to employ the Brokers and/or to approve any sale of the Property, Jinzheng Group will seek approval from the Bankruptcy Court to pay such commission from escrow on closing.

000030

4. <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. Jinzheng Group may, in Jinzheng Group's sole discretion and business judgment and without further Court order, modify the Agreement by reducing the listing price and/or extending the term of the Agreement.

5. <u>Entire Agreement</u>. This Addendum and the Agreement, to the extent that such Agreement is not contrary to the terms and conditions herein, constitute the entire contract between the parties. All prior agreements between the parties are incorporated into this agreement. Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this Addendum and the Agreement constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Agreement.

6. <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Agreement. This Addendum and the Agreement and any disputes related thereto shall be governed by California law.

4

# EXHIBIT "2"

# STEPHEN ENG

**BROKER||CO-OWNER @ RE/MAX OF CERRITOS**
**BROKER||OWNER @ CONVOY REAL ESTATE ADVISORS PROPERTY MANAGEMENT**
**DRE:01946974**

(626) 353-2384
Stephen.eng@remaxofcerritos.com

17212 Norwalk Blvd,
Cerritos, CA 90703

## Profile

Stephen Eng, Founder and Principal of RE/MAX of Cerritos & Convoy Real Estate Advisors (A Property Management Company). He launched his real estate career in February 2014. Proudly expanded his property management profile from 15 doors to 150 doors in his first 3 years of property management career. At the meanwhile, consistently assisting home sellers, home buyers, real estate investors to achieve their real estate goals.

With over 8 years of property management experience, Stephen is currently managing over 60 properties, consisted of Residential Buildings, Multi-Family Properties / Apartments, Office Buildings, Warehouses and Luxury Residential Properties under Company of Convoy Real Estate Advisors. Experienced in leasing, eviction, tenants trouble shooting, with a team of four, Stephen & Team have consistently maintain low vacancy rate, minimal turnover rate, reasonable property maintenance cost control, and stable improvement on investment return for property owners.

In 2018, He found Convoy Real Estate Advisors，and Acquired RE/MAX Of Cerritos in 2019. As a Real Estate Broker, Stephan has experience in buying and selling Luxury Homes, Resales, New Home Sales, Multi Family, Mixed Use Properties, and Apartments. Stephen has devoted his career to real estate. With his own unique approach of marketing strategies，Stephen has track records of selling properties at above asking price and top market price within a short period of Day on the market. Stephen's strong analytic skills, unique marketing technique, efficient negotiation skills, those have provided him knowledge to educates and advises investors outside and inside the local market on major real estate investment decisions.

Additionally, his fluency in Cantonese, Mandarin and English, and education background of BS in Actuarial Science and MS in Finance have provided him a leverage to develop relationships and business more efficiently.

# EXHIBIT "3"

000034



RESIDENTIAL BROKERAGE

# William Friedman

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

**Trustees:**
Peter Mastan
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Peter Mastan
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

**Lenders:**
Countrywide Home Loans
Federal Home Loan Mortgage Corp
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank
Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

**Receivers:**
Adrian Stern
Samuel R. Biggs
David L. Ray

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  DEBTOR'S NOTICE OF APPLICATION AND APPLICATION TO EMPLOY REAL ESTATE BROKER AND TO ENTER INTO AN EXCLUSIVE LISTING AGREEMENT; DECLARATION RE DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSONS UNDER F.R.B.P. 2014  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  July 15, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  July 15, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| July 15, 2022 | Vivian Servin | */s/ Vivian Servin* |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Donna C Bullock**    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com

- **Steven P Chang**    heidi@spclawoffice.com,
  schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com

- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com

- **Heidi M Cheng**    heidi@slclawoffice.com,
  assistant1@spclawoffice.com;schang@spclawoffice.com;chenghr75251@notify.bestcase.com

- **Susan Titus Collins**    scollins@counsel.lacounty.gov

- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com

- **Oscar Estrada**    oestrada@ttc.lacounty.gov

- **Richard Girgado**    rgirgado@counsel.lacounty.gov

- **M. Jonathan Hayes**    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com

- **Teddy M Kapur**    tkapur@pszjlaw.com, mdj@pszjlaw.com

- **Alphamorlai Lamine Kebeh**    akebeh@danninggill.com

- **Peter A Kim**    peter@pkimlaw.com, peterandrewkim@yahoo.com

- **Christopher J Langley**    chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

- **Benjamin R Levinson**    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com

- **Eric A Mitnick**    MitnickLaw@aol.com, mitnicklaw@gmail.com

- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com

- **Donald W Reid**    don@donreidlaw.com, ecf@donreidlaw.com

- **Matthew D. Resnik**    matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;p

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**

riscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com

- **Peter J Ryan**    ryan@floresryan.com, schneider@floresryan.com

- **Allan D Sarver**    ADS@asarverlaw.com

- **Zev Shechtman**    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

- **David Samuel Shevitz**    david@shevitzlawfirm.com, shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com

- **John N Tedford**    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.courtdrive.com

- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

- **Hatty K Yip**    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

## 2. SERVED BY U.S. MAIL

| | |
|---|---|
| JINZHENG GROUP (USA) LLC<br>1414 S Azusa Ave, Suite B-22<br>West Covina, CA 91791-4084 | The Honorable Ernest M. Robles<br>U.S. Bankruptcy Court<br>255 E. Temple Street, Suite 1560<br>Los Angeles, CA 90012 |

COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS

| | | |
|---|---|---|
| Bentula Lenta, Inc.<br>David Park<br>800 W. 6th Street, Suite 1250<br>Los Angeles, CA 900171 | The Phalanx Group, Inc.<br>Anthony Rodriguez<br>424 E. 15th Street, Unit #10<br>Los Angeles, CA 90015 | Testa Capital Group<br>620 Newport Center Dr., #1100<br>Newport Beach, CA 92660 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                        F 9013-3.1.PROOF.SERVICE
Exhibit 7, Page 138

# EXHIBIT 8

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Eric Alan Mitnick (SBN 116042)<br>21515 Hawthorne Boulevard, Suite 1030<br>Torrance, CA 90503<br>(310) 792-5864 (tel)<br>(310) 347-4353 (fax)<br>MitnickLaw@gmail.com<br><br><br><br><br>☐  *Movant appearing without an attorney*<br>☒  *Attorney for Movant* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

</div>

| In re:<br><br>Jinzheng Group (USA), LLC,<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:21-bk-16674 ER |
|---|---|
| | CHAPTER: 11 |
| | **NOTICE OF MOTION AND MOTION<br>FOR RELIEF FROM THE AUTOMATIC<br>STAY UNDER 11 U.S.C. § 362<br>(with supporting declarations)<br>(REAL PROPERTY)** |
| | DATE: 08/22/2022<br>TIME: 10:00 a.m.<br>COURTROOM: 1568 |

**Movant:** Corona Capital Group, LLC

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012       ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee *(if any)*(Responding Parties), their attorneys *(if any)*, and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                  Page 1                          **F 4001-1.RFS.RP.MOTION**

Exhibit 8, Page 140

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 07/20/2022

Law Office of Eric Alan Mitnick
Printed name of law firm (if applicable)

Eric Alan Mitnick
Printed name of individual Movant or attorney for Movant

/s/ Eric Alan Mitnick
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 2                        F 4001-1.RFS.RP.MOTION

Exhibit 8, Page 141

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☐ Other (specify):

2. **The Property at Issue (Property):**

    a. Address:

    *Street address*: 2240 Lorain Road
    *Unit/suite number*:
    *City, state, zip code*: San Marino, CA 91108

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _2_ ):

3. **Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary bankruptcy petition under chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13 was filed on (date) _08/24/2021_ .

    b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (date) _____.

    c. ☐ A plan, if any, was confirmed on (date) _____.

4. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

    (1) ☒ Movant's interest in the Property is not adequately protected.

    (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

    (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

    (C) ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

    (2) ☐ The bankruptcy case was filed in bad faith.

    (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

    (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

    (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

    (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    (F) ☐ Other (see attached continuation page).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 3                         F 4001-1.RFS.RP.MOTION

Exhibit 8, Page 142

(3) ☐ *(Chapter 12 or 13 cases only)*

   (A) ☐ All payments on account of the Property are being made through the plan.
     ☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

   (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

   (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion: (Declaration(s) MUST be signed under penalty of perjury and attached to this motion)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:
Movant's payoff (Ex 3), Ins. (Ex 4), listing and Order (Ex 5), pending escrow est closing. stmt and payoff by 1st (Ex 6-7), DNQ proof claim (Ex 8), LACTC info (Ex 9), Carrese DRE and BPO (Exs 10, 11)

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017      Page 4      F 4001-1.RFS.RP.MOTION

Exhibit 8, Page 143

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☒ See attached continuation page for other relief requested.

Date: _07/20/2022_

Law Office of Eric Alan Mitnick
_____
Printed name of law firm (*if applicable*)
Eric Alan Mitnick
_____
Printed name of individual Movant or attorney for Movant

/s/ Eric Alan Mitnick
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                       Page 5                                       F 4001-1.RFS.RP.MOTION

Exhibit 8, Page 144

## Motion for Relief from Automatic Stay, Continuation Page

In addition to relief as to the subject real property, Movant seeks the following additional relief:

1. that the automatic stay, if any, that precludes Movant from reinstating, paying off or making payment(s) on the first deed of trust (Royal Business Bank) be terminated; and

2. alternatively, that this Court determine that no automatic stay exists as to Movant reinstating, paying off or making payment(s) on the first deed of trust (Royal Business Bank).

///

///

In re Jinzheng Group (USA), LLC,
Chapter 11, Case No. 2:21-bk-16674 ER

5A

## REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Richard Herrera _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 1 .

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 2 .

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

   *Street address*: 2240 Lorain Road
   *Unit/suite no.*:
   *City, state, zip code*: San Marino, CA 91108

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   Los Angeles County, APN 5365-019-052. Deed of Trust recorded in the Official Records of Los Angeles County on June 25, 2021 as Instrument No. 20211001850. See Exhibit A to Deed of Trust for legal description. (Exhibit 2)

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

   a. ☐  Debtor's principal residence      b. ☒  Other residence
   c. ☐  Multi-unit residential            d. ☐  Commercial
   e. ☐  Industrial                        f. ☐  Vacant land
   g. ☐  Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☒  Sole owner

   b. ☐  Co-owner(s) (*specify*):

   c. ☐  Lienholder (*specify*):

   d. ☐  Other (*specify*):

   e. ☒  The Debtor  ☒ did  ☐ did not  list the Property in the Debtor's schedules.

   f. ☒  The Debtor acquired the interest in the Property by  ☒ grant deed  ☐ quitclaim deed  ☐ trust deed.
      The deed was recorded on (*date*) 09/12/2019 .

7. Movant holds a   ☒ deed of trust  ☐ judgment lien  ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒  A true and correct copy of the document as recorded is attached as Exhibit 2 .

   b. ☒  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 1 .

   c. ☐  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 540,000 | $ | $ 540,000 |
| b. | Accrued interest: | $ | $ 32,356 | $ 32,356 |
| c. | Late charges | $ | $ 2,967 | $ 2,967 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ 4,592 | $ 4,592 |
| e. | Advances (property taxes, insurance): | $ | $ 1,009 | $ 1,009 |
| f. | Less suspense account or partial balance paid: | $[        ] | $[        ] | $[        ] |
| g. | TOTAL CLAIM as of (*date*): | $ 540,000 | $ 40,924 | $ 580,924  7/18/22 |

   h. ☒ Loan is all due and payable because it matured on (*date*) 07/01/2022

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) _____ or ☒ none recorded.

   b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                Page 7                F 4001-1.RFS.RP.MOTION

Exhibit 8, Page 147

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ N/A -loan matured _____ for the month of July 1,_____ 20 22.

    b. Number of payments that have come due and were not made: 6 _____. Total amount: $ 29,673 _____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

    An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $ 2,070,000_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☒ A real estate broker or other expert's declaration regarding value is attached as Exhibit 11___.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☒ Other (*specify*):
        Debtor's listing agreement approved by this court leading to the pending sale for $2,070,000.

    e. **Calculation of equity/equity cushion in Property:**

    Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Royal Business Bank | $ 1,100,000 | $ 1,096,772 |
| 2nd deed of trust: | Movant | $ 540,000 | $ 580,924 |
| 3rd deed of trust: | DNQ | $ 420,000 | $ 530,465 |
| Judgment liens: | | $ | $ |
| Taxes: | LACTC 2022-23 (1st installment) | $ | $ 11,903 |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ 2,220,064 | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 3, 7-9 and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☒ Other (*specify*): Payoff stmt of 1st re pending escrow; proof claim 3rd; LACTC tax info; Mitnick Decl.

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
    I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
    By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 0_____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

        Page 8         **F 4001-1.RFS.RP.MOTION**

i.  ☒ Estimated costs of sale: $ 165,600 _____ (estimate based upon  8 _____ % of estimated gross sales price)

j.  ☒ The fair market value of the Property is declining because:
   Mortgage interest rates have increased substantially, and are likely to increase, again, with anticipated upcoming interest rate increases by the federal reserve.

12. ☐ (Chapter 12 and 13 cases only) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (or concluded on) the following date: _____.
   A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
   A plan was confirmed on the following date (if applicable): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

d.  Postpetition advances or other charges due but unpaid:          $
   (For details of type and amount, see Exhibit _____)

e.  Attorneys' fees and costs:          $
   (For details of type and amount, see Exhibit _____)

f.  Less suspense account or partial paid balance:          $[          ]

               TOTAL POSTPETITION DELINQUENCY:          $

g.  Future payments due by time of anticipated hearing date (if applicable): _____.
   An additional payment of $_____ will come due on _____, and on
   the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
   charge of $_____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
   applied (if applicable):
   $_____ received on (date) _____
   $_____ received on (date) _____
   $_____ received on (date) _____

i.  ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
   A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
   13 trustee regarding receipt of payments under the plan (attach LBR form F 4001-1.DEC.AGENT.TRUSTEE).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☒  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐  The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐  The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐  Movant regained possession of the Property on (*date*) _____, which is  ☐ prepetition  ☐ postpetition.

17. ☐  The bankruptcy case was filed in bad faith:

    a.  ☐  Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b.  ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c.  ☐  The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d.  ☐  Other (*specify*):

18. ☐  The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b.  ☐  Multiple bankruptcy cases affecting the Property include:

        1.  Case name: _____
        Chapter: _____  Case number: _____
        Date dismissed: _____   Date discharged: _____   Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not  granted.

        2.  Case name: _____
        Chapter: _____  Case number: _____
        Date dismissed: _____   Date discharged: _____   Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not  granted.

        3.  Case name: _____
        Chapter: _____  Case number: _____
        Date dismissed: _____   Date discharged: _____   Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not  granted.

    ☐  See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/20/2022 | Richard Herrera | _Signature_ |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 11                        F 4001-1.RFS.RP.MOTION

Exhibit 8, Page 151

## DECLARATION OF PAUL V. CARRESE

I, Paul V. Carrese, declare:

    1.   Except as otherwise indicated below, I have first-hand and personal knowledge of the matters stated in this Declaration, and if called as a witness, I could and would testify thereto competently under oath.

    2.   I am a real estate broker licensed by the California Department of Real Estate. My license identification number is 01356791. I am an Associate Broker for Coldwell Banker Residential Brokerage Company, located at 300 Commerce, Suite 250, Irvine, CA 92602. My State of California Department of Real Estate licensing information is attached to this Declaration as Exhibit 10.

    3.   As a licensed real estate broker, I handle transactions throughout the Los Angeles area that which has made me familiar with the local real estate market. As a licensed broker, I have access to transactions and listings in the San Marino area by and through the multiple listing service ("MLS"). By and through the MLS, I have reviewed currently active listings and recently sold properties comparable to the residential property located at 2240 Lorain Road, San Marino, CA 91108 (the "Property").

    4.   I am the person responsible for preparing the Broker Price Opinion ("BPO") for the Property that is attached to this Declaration as Exhibit 11 and incorporated herein by this reference.

///

///

12

1        5.   It is my opinion, based upon the analysis, assumptions

2 and information on which my BPO is based, that the estimated

3 market value of the Property, as of July 19, 2022, was and is

4 $2,045,000.

5        6.   I have charged the total sum of $290 to prepare the BPO.

6 I have no present or contemplated future interest in the Property.

7 My engagement for the BPO was not contingent upon the price opinion

8 for the Property that I have determined.

9        I declare under penalty of perjury under the laws of the

10 United States of America that the foregoing is true and correct.

11        Executed on this 20th day of July, 2022, at Palos Verdes

12 Estates, California.

                                DocuSigned by:

13                                *Paul Carrese*

                                4A5FCC37144A489...

14                                  Paul V. Carrese

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              2

1

## DECLARATION OF ERIC ALAN MITNICK

2    1.   I am an attorney duly licensed to practice law in the
3    State of California and admitted to practice in the United States
4    District Court for the Central District of California.   I am the
5    attorney for Movant and secured creditor CORONA CAPITAL GROUP, LLC
6    ("CORONA" or "Movant") in this chapter 11 proceeding (the "Case").
7    Except as otherwise indicated below, I have first-hand and personal
8    knowledge of the matters stated in this Declaration, and if called
9    as a witness, I could and would testify thereto competently under
10   oath.

11   2.   Attached as Exhibit 5, is a true and correct copy of
12   this Court's order entered in the Case authorizing a real estate
13   broker to list for sale the subject real property located at 2240
14   Lorain Road in San Marino, CA (the "Property").   Also included in
15   the Exhibit 4 is a true and correct copy of the page from listing
16   agreement, included in the Application to Employ (filed January 24,
17   2022, Docket No. 91, at page 19) that indicates that the listing
18   price was $2,450,000.   On July 15, 2022, Debtor filed an
19   Application to employ new brokers with a listing price of
20   $2,300,000 (Docket No. 307).

21   3.   Subsequent to the original listing, Debtor and the
22   prospective purchasers opened escrow with Rowland Escrow ("Escrow")
23   to sell the Property for $2,070,000.   A true and correct copy of
24   the Seller's Estimated Closing Statement from Escrow is attached
25   this Declaration as Exhibit 6.   I spoke with Valerie Sun of Rowland
26   Escrow on July 14, 2022.   During our conversation, Ms.   Sun

27

28

3

14

1  indicated that the escrow for sale of the Property was open and

2  pending.

3        4.    In speaking with Christopher Langley, former counsel to

4  Debtor, Mr. Langley indicated that the broker for the pending

5  transaction was willing reduce the total commission to two percent

6  (2%) of the sale's price as he represents both the buyer and the

7  seller in the pending transaction.

8        5.        I am informed and believe that attached to this

9  Declaration as Exhibit 7 is a true and correct copy of the Payoff

10  Demand Statement submitted to Escrow by Royal Business Bank.  The

11  statement, plus accrued interest is the basis for the amount owed

12  to Royal Business Bank indicated in this Motion.

13        6.    Shortly after becoming involved in the Case, I had a

14  telephone conversation with Jason Wang, who filed the proof of

15  claim on behalf of DNQ, LLC, the beneficiary under the third deed

16  of trust[1] encumbering the Property.  At that time, Mr. Wang advised

17  me that omitted from the amount of DNQ's proof of claim (Register

18  No. 21) is interest that has accrued from the inception of the loan

19  at ten percent (10%) per annum. A true and correct copy of the

20  DNQ's claim is attached as Exhibit 8.  Based upon the Settlement

21  Statement that Mr. Wang has provided, accrued interest from and

22  after December 1, 2019 has been included in the amount of DNQ's

23  claim indicated in this Motion.

24

25

26        [1] See the recorded Subordination Agreement by and between

27  CORONA and DNQ included as a part of Exhibit 2 to this Motion.

28                                4

                                 15

1       7.    The amount owed to CORONA in the Motion, as of July 18,

2 2022, is based upon the contract rate of $10.990 percent per annum.

3 The loan documents provide for a default rate of interest that is

4 5% higher than the contract rate.  CORONA reserves the right to

5 seek and collect the default rate of interest on its loan.  Accrual

6 at the default rate would add $73.97 per day in additional interest

7 from and after December 1, 2021, totaling $14,720 as of July 18,

8 2022.

9       8.    On July 13, 2022, I spoke with Brian Harvey, counsel

10 for ROYAL BUSINESS BANK ("Bank") in this Case.    Mr. Harvey

11 indicated that, among other things, the Bank will not accept

12 payment from CORONA to reinstate the loan because accepting payment

13 could (somehow) violate the automatic stay in this Case.  While I

14 believe that the stay is inapplicable, in the Motion, out of

15 abundance of caution, I have requested the stay, if any, be

16 terminated to allow payment to by CORONA to Bank to reinstate (or

17 pay off) Bank's loan or for this Court to determine that no stay

18 exists as to such payment(s).

19     I declare under penalty of perjury under the laws of the

20 United States of America that the foregoing is true and correct,

21 except for those matters stated on information and belief, which I

22 believe to be true.

23     Executed on July 20, 2022 at Torrance, California.

24

25                             Eric Alan Mitnick

26

27

28                        5

16

**EXHIBIT 1**

Loan Number: YANG

# NOTE

JUNE 14, 2021                    TORRANCE                      CALIFORNIA
[Date]                              [City]                          [State]

2240 LORAIN ROAD, SAN MARINO, CALIFORNIA 91108
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $540,000.00       (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is CORONA CAPITAL GROUP LLC

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I also agree to do all things required in the Security Instrument (defined below) to protect the Property.  If you incur an expense because I do not fulfill all obligations under this Note or under the Security Instrument, I promise to pay those expenses under this Note.

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of       10.990 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on       AUGUST 1 2021       .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on       JULY 1, 2022       I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1222 CRENSHAW BLVD #B, TORRANCE, CALIFORNIA 90501

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments  ** See attached Interest Only Note Addendum.
My monthly payment will be in the amount of U.S. $4,945.50

## 4.  BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE
SECOND LIEN
USSEC.NOT 02/27/19                          Page 1 of 4                         ☆DocMagic

17

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.000% of my overdue payment

I will pay this late charge promptly but only once on each late payment.

### (B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me, or, if it is not mailed, 10 days after the date on which it is delivered to me.

### (C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Exhibit 8, Page 159

## 9.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Exhibit 8, Page 160

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

JINZHENG GROUP (USA), LLC, A
CALIFORNIA LIMITED LIABILITY
COMPANY

By: _____ (Seal)
BETTY ZHENG, MANAGING      -Borrower
MEMBER

Loan Originator: ROBERT DAVENPORT, NMLSR ID ████████
Loan Originator Organization: LEXXELFUNDING CORPORATION, NMLSR ID ██████

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE
SECOND LIEN
USSEC.NOT 02/27/19                    Page 4 of 4                    ☆ DocMagic

20

Loan Number: YANG

# INTEREST-ONLY ADDENDUM
## TO FIXED RATE NOTE
### (Second Lien)

Property Address:   2240 LORAIN ROAD
SAN MARINO, CALIFORNIA 91108

**THIS INTEREST-ONLY ADDENDUM** ("ADDENDUM") is made this            14th            day of
JUNE,   2021                        and is incorporated into and intended to form a part of the fixed rate Note
(the "Note") dated the same date as this Addendum executed by the undersigned and payable to
CORONA CAPITAL GROUP LLC                                                    (the "Lender").

**THIS ADDENDUM** supersedes and replaces Sections 3, 4, and 6 of the Note. This Addendum does not supersede,
replace or revise any other Section of the Note.

## 3.  PAYMENTS
### (A)  Time and Place of Payments
I will make a payment every month.  This payment will be for interest only for the first   11   months (the
"Interest Only Period"), and then will consist of principal and interest.

I will make my monthly payment on the   1st day of each month beginning on       AUGUST 1       ,
2021                    .  I will make these payments every month until I have paid all of the principal and interest and any
other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its
scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before
Principal. If, on JULY 1, 2022            , I still owe amounts under this Note, I will pay those amounts in
full on that date, which is called the "Maturity Date."

I will make my monthly payments at   1222 CRENSHAW BLVD #B, TORRANCE, CALIFORNIA
90501
                                                                   or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 4,945.50        for the first   11   months of
this Note, and thereafter will be in the amount of U.S. $ 544,945.50      .  The Note Holder will notify me
prior to the date of change in monthly payment.

## 4.  BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.
I have the right to make payments of Principal at any time before they are due.  A payment of Principal only
is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.
I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder
will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder
may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my
Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in
the due date of my monthly payment unless the Note Holder agrees in writing to those changes.

If the partial Prepayment is made during the Interest Only Period, the amount of the monthly payment will
decrease for the remainder of the term when my payments consist only of interest as well as during the time that my
payments consist of principal and interest.  If the partial Prepayment is made during the period when my payments

Exhibit 8, Page 162

consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)   Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       10.000 % of my overdue payment of interest during the Interest Only Period. At the end of the Interest Only Period, the amount of the late charge will be     10.000% of my overdue payment

I will pay this late charge promptly but only once on each late payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to the Fixed Rate Note.

JINZHENG GROUP (USA), LLC, A
CALIFORNIA LIMITED LIABILITY
COMPANY

By: _____    6-17-2021
Borrower BETTY ZHENG, MANAGING Date
MEMBER

Loan Originator: ROBERT DAVENPORT, NMLSR ID ▓▓▓▓
Loan Originator Organization: LEXXELFUNDING CORPORATION, NMLSR ID ▓▓▓▓

INTEREST ONLY ADDENDUM TO FIXED RATE NOTE (Second Lien)
©2006 DOCMAGIC, INC.
FIO2ND.ATN  11/26/19                                      Page 2 of 2                              ☆DocMagic

22

# DEFAULT ADDENDUM TO NOTE

If any payment due under this Note is not paid prior to the expiration of the Grace Period, defined as any payments that are not received within 30 days of the monthly payment due date which is stated in the Note, the entire outstanding principal balance, and all accrued interest thereon, shall at once become due and payable at the option of the Note Holder. The Note Holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance by Note Holder. In the event of any breach or other default, the Note Holder reserves the right to increase the interest rate by    FIVE AND 000/1000

                                percentage point(s) (        5.000 %) above the interest rate in effect at the time of breach or default; however, if the Note Holder does not elect to increase the interest rate subsequent to a breach or default, this Note shall continue to bear interest at the rate set forth herein. All sums extended to Borrower, or to others on behalf of Borrower, by the Trustee, Beneficiary or Note Holder shall earn interest at the Note rate in effect, and as determined, under the terms of this Note. Should any interest not be paid when due, it shall bear like interest as the principal. If suit is brought to collect this Note, the Note Holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorneys' fees.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


JINZHENG GROUP (USA), LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____ (Seal)        _____ (Seal)
BETTY ZHENG, MANAGING MEMBER -Borrower                                  -Borrower



_____ (Seal)        _____ (Seal)
                          -Borrower                                  -Borrower



_____ (Seal)        _____ (Seal)
                          -Borrower                                  -Borrower

DEFAULT ADDENDUM TO NOTE
DATN2.MSC  10/10/13                                                    ☆ DocMagic

23

Loan Number: YANG

# PREPAYMENT PENALTY ADDENDUM TO NOTE

THIS PREPAYMENT PENALTY ADDENDUM TO NOTE (the "Addendum") is made this   14th
day of JUNE, 2021                      , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of CORONA CAPITAL
GROUP LLC                                                                               ("Lender")
and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this
Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the
provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and
Lender further covenant and agree as follows:

Section   4      of the Note is amended to read in its entirety as follows:

## 4 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT PENALTY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only
is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.
I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note.
However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount,
before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will
be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
If within   3      months following the date the loan was consummated I make a full Prepayment or partial
Prepayment, I will pay a Prepayment penalty in an amount equal to: TWO AND 000/1000
percent (          2.000 %) of the outstanding loan balance prepaid if the Prepayment is made within the first
twelve-month period immediately following the date the loan was consummated;   N/A
                     percent (          N/A %) of the outstanding loan balance prepaid if the Prepayment is made
within the second twelve-month period immediately following the date the loan was consummated; and
N/A                          percent (          N/A %) of the outstanding loan
balance prepaid if the Prepayment is made within the third twelve-month period immediately following the date the
loan was consummated.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

JINZHENG GROUP (USA), LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____ 6-17-2021
Borrower BETTY ZHENG, MANAGING     Date       Borrower                              Date
MEMBER

_____                       _____
Borrower                           Date        Borrower                              Date

_____                       _____
Borrower                           Date        Borrower                              Date

MULTISTATE PREPAYMENT PENALTY ADDENDUM TO NOTE                                    ☆DocMagic
12 CFR §1026.43(g)
USPPA.PPF. 01/10/14

24

Loan Number: YANG

# BALLOON PAYMENT DISCLOSURE

*Notice: Read Before Signing Your Loan Documents*

This loan provides for     11     monthly payments of: (check one)

    |     | principal and interest   [ X ] interest only

in the amount of $ 4,945.50            each. Assuming that all of the monthly payments have been paid exactly on
the date that each is due, a final balloon payment of the then outstanding principal balance plus all earned interest remaining
unpaid estimated to be in the amount of $ 544,945.50                          shall become due and payable on
JULY 1, 2022                          (the "Maturity Date"). This loan is amortized over a     12     month period.

## DO NOT SIGN ANY LOAN DOCUMENTS IF YOU
## HAVE ANY QUESTIONS ABOUT YOUR LOAN PAYMENTS.

Unless otherwise expressly disclosed in the Note, or in an Addendum or a Rider to the Note, **THE LENDER IN THIS
TRANSACTION IS UNDER NO OBLIGATION TO REFINANCE THE OUTSTANDING PRINCIPAL BALANCE OF
THIS LOAN DUE ON THE MATURITY DATE.** You may be required to payoff the entire principal balance, plus any
unpaid interest due thereon, on the Maturity Date using personal assets. If this Lender, or any other Lender, agrees to
refinance the outstanding balance due on the Maturity Date, you may be required to pay the then prevailing interest rate, which
may be higher or lower than the interest rate specified in the Note, plus loan origination costs and fees as are typically incurred
when creating a new loan.

I hereby certify that the Borrower(s) have received an oral
explanation of the balloon payment provisions of this loan.

ALL BORROWERS MUST SIGN AND DATE

I/We hereby acknowledge receipt of the above notice
concerning the balloon payment provisions of this loan.
I/We further acknowledge that these provisions have also
been orally explained to me/us.

_____
(Signature of Loan Officer)

ROBERT DAVENPORT

JINZHENG GROUP (USA), LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY

25

**EXHIBIT 2**

This page is part of your document - DO NOT DISCARD



# 20211001850



**Pages:**
**0022**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

### 06/25/21 AT 08:00AM

| | |
|---|---:|
| FEES: | 87.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 162.00 |



**LEADSHEET**



202106251170014

**00020735097**



**SEQ:**
**02**

**SECURE – 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**


95004-21-0327

E494228

2-6

RECORDING REQUESTED BY:
NORTH AMERICAN TITLE CO.
~~~~~~~ 3271

Recording Requested By:
CORONA CAPITAL GROUP LLC

And After Recording Return To:
CORONA CAPITAL GROUP LLC
1222 CRENSHAW BLVD #B
TORRANCE, CALIFORNIA 90501
Loan Number: YANG

————————————— [Space Above This Line For Recording Data] —————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated       JUNE 14, 2021       , together with all Riders to this document.

(B) "Borrower" is    JINZHENG GROUP (USA), LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
BORROWER'S ADDRESS IS 100 E. HUNTINGTON DR #207, ALHAMBRA, CALIFORNIA 91801.

Borrower is the trustor under this Security Instrument.

(C) "Lender" is    CORONA CAPITAL GROUP LLC

Lender is a                                                                    organized
and existing under the laws of                    CALIFORNIA
Lender's address is   1222 CRENSHAW BLVD #B, TORRANCE, CALIFORNIA 90501

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is   WESTERN FIDELITY TRUSTEES
1222 CRENSHAW BLVD #B, TORRANCE, CALIFORNIA 90501

(E) "Note" means the promissory note signed by Borrower and dated          JUNE 14, 2021
The Note states that Borrower owes Lender   FIVE HUNDRED FORTY THOUSAND AND 00/100
                                            . Dollars (U.S. $540,000.00          )

CALIFORNIA SUBORDINATE LIEN DEED OF TRUST
© 2008 DOCMAGIC, INC.
CASEC.DOT 10/03/16                          Page 1 of 13                          ✰ DocMagic

27

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      JULY 1, 2022 .

(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ 1 - 4 Family Rider | ☐ Home Improvement Rider | ☐ Revocable Trust Rider |
| ☒ Other(s) [Specify]  Prepayment Rider | | |

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L)  Reserved.
(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)  Reserved.
(O)  "Periodic Payment" means the regularly scheduled amount due for principal and interest under the Note.
(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Exhibit 8, Page 170

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | LOS ANGELES | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A"
A.P.N.: 5365-019-052

which currently has the address of   2240 LORAIN ROAD

| | | [Street] | |
| SAN MARINO | , California | 91108 | ("Property Address"): |
| [City] | | [Zip Code] | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA SUBORDINATE LIEN DEED OF TRUST
© 2008 DOCMAGIC, INC.
CASEC.DOT 10/03/18                          Page 3 of 13                          ☆DocMagic

29

Exhibit 8, Page 171

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; and (b) principal due under the Note. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Reserved.**

4. **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security instrument that is a lien having priority over this Security Instrument. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Except for a lien Borrower disclosed to Lender in Borrower's application or in any title report Lender obtained, Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which

reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further

deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9. **Reserved.**

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the terms of any mortgage, deed of trust, or other security instrument with a lien which has priority over this Security Instrument.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or

Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, to the extent authorized by Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances:

gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

23. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                     , in Book
Page          , records of                                                                                    County,
(or filed for record with recorder's serial number                              )
County), California, executed by

as trustor (or mortgagor) in which    ROYAL BUSINESS BANK

is named as beneficiary (or mortgagee) and

as trustee be mailed to    CORONA CAPITAL GROUP LLC

at  1222 CRENSHAW BLVD #B, TORRANCE, CALIFORNIA 90501

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

JINZHENG GROUP (USA), LLC, A
CALIFORNIA LIMITED LIABILITY
COMPANY


By: _____ (Seal)
BETTY ZHENG, MANAGING          -Borrower
MEMBER


_____          _____
Witness                            Witness

38

Exhibit 8, Page 180

——————————— [Space Below This Line For Acknowledgment] ———————————

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___CALIFORNIA___ )

County of ___Los Angeles___ )

On ___June 17, 2021___ before me, ___S. Ruggiero, notary public___
    Date                          Here Insert Name and Title of the Notarizing Officer

personally appeared ___BETTY ZHENG___

_____
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

S. RUGGIERO
Notary Public—California
Orange County
Commission # 2227447
My Comm. Expires Jan 31, 2022

Notary Seal

Signature of Notary Public

Loan Originator: ROBERT DAVENPORT, NMLSR ID 262927
Loan Originator Organization: LEXXELFUNDING CORPORATION, NMLSR ID 355287

CALIFORNIA SUBORDINATE LIEN DEED OF TRUST
© 2008 DOCMAGIC, INC.
CASEC.DOT 10/03/18             Page 13 of 13             ☆ DocMagic

39

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this  14th  day of          JUNE, 2021          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to   CORONA CAPITAL GROUP LLC

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2240 LORAIN ROAD, SAN MARINO, CALIFORNIA 91108
[Property Address]

1-4 FAMILY COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition
to the Property described in the Security Instrument, the following items are added to the Property
description, and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be
used in connection with the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor
coverings now or hereafter attached to the Property, all of which, including replacements and additions
thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of
the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the
Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to
the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any
governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written
permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to
the other hazards for which insurance is required by Uniform Covenant 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Uniform Covenant 18 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, the
first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All
remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

MULTISTATE 1-4 FAMILY RIDER
SECOND MORTGAGE
US14.RDR  04/26/19                        Page 1 of 3                        ☆DocMagic

40

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

41

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

JINZHENG GROUP (USA), LLC,
A CALIFORNIA LIMITED
LIABILITY COMPANY

By: _____ (Seal)
BETTY ZHENG, MANAGING -Borrower
MEMBER

MULTISTATE 1-4 FAMILY RIDER
SECOND MORTGAGE
US14.RDR 04/26/19                    Page 3 of 3

☆DocMagic

42

———————————— [Space Above This Line For Recording Data] ————————————

Loan Number: YANG

# **BALLOON RIDER**

THIS BALLOON RIDER is made this 14th day of  JUNE 2021                   , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note (the "Note") to  CORONA CAPITAL GROUP LLC

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2240 LORAIN ROAD,  SAN MARINO,  CALIFORNIA 91108
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or
anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE ENTIRE
PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS
UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL,
THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY
OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE
THIS LOAN WITH, WILLING TO LEND YOU THE MONEY.  IF YOU REFINANCE THIS LOAN
AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM
THE SAME LENDER.

MULTISTATE BALLOON RIDER
04/26/04

Page 1 of 2

☆DocMagic

43

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon
Rider.

JINZHENG GROUP (USA), LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____  6-17-2021  _____
Borrower BETTY ZHENG, MANAGING   Date    Borrower                    Date
MEMBER

_____       _____
Borrower                Date    Borrower                    Date

_____       _____
Borrower                Date    Borrower                    Date

MULTISTATE BALLOON RIDER
04/26/04                        Page 2 of 2                    ☆DocMagic

44

Loan Number: YANG

# PREPAYMENT PENALTY RIDER

THIS PREPAYMENT PENALTY RIDER (the "RIDER") is made this          14th          day of
JUNE, 2021                       , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given
by the undersigned ("Borrower") to secure repayment of the Borrower's promissory note (the "Note") in
favor of    CORONA CAPITAL GROUP LLC
("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at:

2240 LORAIN ROAD, SAN MARINO, CALIFORNIA 91108

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A. PREPAYMENT PENALTY
The Note provides for the payment of a prepayment penalty as follows:

### 4 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT PENALTY
I have the right to make payments of Principal at any time before they are due. A payment of Principal
only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I
am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments
due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the
Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the
Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make
a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note
Holder agrees in writing to those changes.
If within    3    months following the date the loan was consummated I make a full Prepayment
or partial Prepayment, I will pay a Prepayment penalty in an amount equal to: TWO AND 000/1000
                                    percent (       2.000  %) of the outstanding loan balance
prepaid if the Prepayment is made within the first twelve-month period immediately following the date the
loan was consummated; N/A                                     percent (     N/A%)
of the outstanding loan balance prepaid if the Prepayment is made within the second twelve-month period
immediately following the date the loan was consummated; and  N/A
                    percent (          N/A %) of the outstanding loan balance prepaid if the Prepayment
is made within the third twelve-month period immediately following the date the loan was consummated.

Exhibit 8, Page 187

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

JINZHENG GROUP (USA), LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____ (Seal)       _____ (Seal)
BETTY ZHENG, MANAGING          -Borrower                           -Borrower
MEMBER


_____ (Seal)       _____ (Seal)
                          -Borrower                           -Borrower


_____ (Seal)       _____ (Seal)
                          -Borrower                           -Borrower


MULTISTATE PREPAYMENT PENALTY RIDER
12 CFR §1026.43(g)
USPPR.PPF  01/10/14                      Page 2 of 2                     ☆ DocMagic

46

# EXHIBIT A
## LEGAL DESCRIPTION

PARCEL 1:

LOT 149 OF TRACT NO. 8954, IN THE CITY OF SAN MARINO, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 145 PAGES 82 AND 83 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

THAT PORTION OF THE NORTHEAST QUARTER OF SECTION 2, TOWNSHIP 1 SOUTH, RANGE 12 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF SAN MARINO, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND ON FILE IN THE BUREAU OF LAND MANAGEMENT, INCLUDED WITHIN THAT PORTION OF THE 40 FEET OF STRIP OF LAND MARKED "SOUTHERN PACIFIC RAILWAY MONROVIA BRANCH" ON THE MAP OF SAN MARINO PARK, RECORDED IN BOOK 12, PAGE 74 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING BETWEEN THE SOUTHERLY PROLONGATION OF THE WEST LINE OF LOT 149 OF TRACT NO. 8954, AS PER MAP RECORDED IN BOOK 145 PAGES 82 AND 83 OF MAPS, IN THE OFFICE OF SAID COUNTY RECORDER, AND THE CENTER LINE OF SAN MARINO AVENUE, 80 FEET WIDE SHOWN ON THE MAP OF SAID TRACT NO. 8954.

Exhibit A (Legal Description)     47     95004-21-03271

This page is part of your document - DO NOT DISCARD

# 20211001452





**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/25/21 AT 08:00AM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 104.00 |



**LEADSHEET**



202106250260043

**00020734858**



012371619

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

95004-21-03274

48

RECORDING REQUESTED BY:
North American Title Company, Inc.

WHEN RECORDED MAIL TO AND MAIL
TAX STATEMENTS TO:
DNQ, LLC
6145 Spring Mountain Road #205
Las Vegas, NV 89146

Escrow No.: 95004-21-03271
Title No.: 95004-21-03271

APN: 5365-019-052                    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBORDINATION AGREEMENT

NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY
BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER
SECURITY INSTRUMENT.

THIS AGREEMENT, made June 9, 2021, by Jinzheng Group (USA) LLC, a California limited liability company owner of the
land hereinafter described and hereinafter referred to as "Owner," and DNQ LLC, a Nevada limited liability company,
present owner and holder of the deed of trust and note hereinafter described and hereinafter referred to as "Beneficiary";

### WITNESSETH

THAT WHEREAS, Jinzheng Group (USA) LLC, a California limited liability company did execute a deed of trust, dated
November 8, 2019, to North American Title Company, Inc., a California Corporation, as trustee, covering:

PARCEL 1:

LOT 149 OF TRACT NO. 8954, IN THE CITY OF SAN MARINO, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA,
AS PER MAP RECORDED IN BOOK 145 PAGES 82 AND 83 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

PARCEL 2:

THAT PORTION OF THE NORTHEAST QUARTER OF SECTION 2, TOWNSHIP 1 SOUTH, RANGE 12 WEST, SAN
BERNARDINO MERIDIAN, IN THE CITY OF SAN MARINO, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA,
ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND ON FILE IN THE BUREAU OF LAND
MANAGEMENT, INCLUDED WITHIN THAT PORTION OF THE 40 FEET OF STRIP OF LAND MARKED "SOUTHERN
PACIFIC RAILWAY MONROVIA BRANCH" ON THE MAP OF SAN MARINO PARK, RECORDED IN BOOK 12, PAGE 74
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING BETWEEN THE SOUTHERLY
PROLONGATION OF THE WEST LINE OF LOT 149 OF TRACT NO. 8954, AS PER MAP RECORDED IN BOOK 145
PAGES 82 AND 83 OF MAPS, IN THE OFFICE OF SAID COUNTY RECORDER, AND THE CENTER LINE OF SAN
MARINO AVENUE, 80 FEET WIDE SHOWN ON THE MAP OF SAID TRACT NO. 8954.

to secure a note in the sum of $420,000.00, dated November 8, 2019, in favor of DNQ LLC, a Nevada limited liability
company , which deed of trust was recorded as instrument no. 20191237663, on November 14, 2019, in Los Angeles
County, Official Records of said county; and

WHEREAS, Owner has executed, or is about to execute, a deed of trust and note in the sum of $540,000.00 dated June
14, 2021, in favor of Corona Capital Group, LLC, hereinafter referred to as "Lender," payable with interest and upon the
terms and conditions described therein, which deed of trust is to be recorded concurrently herewith; and

NotaryCam Doc ID: e5c28676-7131-4b1b-bc47-2d44d89d6d42

49

Exhibit 8, Page 191

APN: 5365-019-052

WHEREAS, it is a condition precedent to obtaining said loan that said deed of trust last above mentioned shall unconditionally be and remain at all times a lien or charge upon the land hereinbefore described, prior and superior to the lien or charge of the deed of trust first above mentioned; and

WHEREAS, Lender is willing to make said loan provided the deed of trust securing the same is a lien or charge upon the above described property prior and superior to the lien or charge of the deed of trust first above mentioned and provided that Beneficiary will specifically and unconditionally subordinate the lien or charge of the deed of trust first above mentioned to the lien or charge of the deed of trust in favor of Lender; and

WHEREAS, it is to the mutual benefit of the parties hereto that Lender make such loan to Owner; and Beneficiary is willing that the deed of trust securing the same shall, when recorded, constitute a lien or charge upon said land which is unconditionally prior and superior to the lien or charge of the deed of trust first above mentioned.

NOW, THEREFORE, in consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and in order to induce Lender to make the loan above referred to, it is hereby declared, understood and agreed as follows:

1.   That said deed of trust securing said note in favor of Lender, and any renewals or extensions thereof, shall unconditionally be and remain at all times a lien or charge on the property therein described, prior and superior to the lien or charge of the deed of trust above mentioned.

2.   That Lender would not make its loan above described without this subordination agreement.

3.   That this agreement shall be the whole and only agreement with regard to the subordination of the lien or charge of the deed of trust first above mentioned to the lien or charge of the deed of trust in favor of Lender above referred to and shall supersede and cancel, but only insofar as would affect the priority between the deeds of trust hereinbefore specifically described, any prior agreement as to such subordination including, but not limited, those provisions, if any, contained in the deed of trust first above mentioned, which provide for the subordination of the lien or charge thereof to another deed or deeds of trust or to another mortgage or mortgages.

Beneficiary declares, agrees and acknowledges that

a.   He consents to and approves (i) all provisions of the note and deed of trust in favor of Lender above referred to, and (ii) all agreements, including but not limited to any loan or escrow agreements, between Owner and Lender for the disbursement of the proceeds of Lender's loan;

b.   Lender in making disbursements pursuant to any such agreement is under no obligation or duty to, nor has Lender represented that it will, see to the application of such proceeds by the person or persons to whom Lender disburses such proceeds and any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or part;

c.   He intentionally and unconditionally waives, relinquishes and subordinates the lien or charge of the deed of trust first above mentioned in favor of the lien or charge upon said land of the deed of trust in favor of Lender above referred to and understands that in reliance upon, and in consideration of, this waiver, relinquishment and subordination, specific loans and advances are being and will be made and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination; and

d.   An endorsement has been placed upon the note secured by the deed of trust first above mentioned that said deed of trust has by this instrument been subordinated to the lien or charge of the deed of trust in favor of Lender above referred to.

NOTICE:   THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.

NotaryCam Doc.ID: e5c28676-7131-4b1b-bc47-2d44d89d6d42

50

APN: 5365-019-052

**IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS SUBORDINATION AGREEMENT, THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT THERETO.**

Beneficiary:                                         Owner:

DNQ LLC, a Nevada limited liability company          Jinzheng Group (USA) LLC, a California limited liability company

BY: _____*Yanzhao Dong*_____                    BY:_____*Betty Zheng*_____
        Yanzhao Dong, Manager                              Betty Zheng, Manager

NotaryCam Doc ID: e5c28676-7131-4b1b-bc47-2d44d89d6d42

5|

Exhibit 8, Page 193

APN: 5365-019-052

A notary public or other officer completing this
certificate verifies only the identity of the individual who
signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or validity
of that document.

STATE OF Virginia     . SS
COUNTY OF Roanoke              )

On __June 15th, 2021_____, before me, ___Wendy L Nelson_____.

Notary Public, personally appeared ____Betty Zheng and Yanzhao Dong_____

_____, who proved to me on the basis of satisfactory

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature

*[signature]*

This area for official notarial seal

*[notary seal:]* WENDY L NELSON
ELECTRONIC
NOTARY
PUBLIC
REG # 329033
EXPIRES
12/31/2023
COMMONWEALTH OF VIRGINIA

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

Completed via Remote Online Notarization using 2 way Audio/Video technology.

NotaryCam Doc ID: e5c28676-7131-4b1b-bc47-2d44d89d6d42

52

Exhibit 8, Page 194

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Buchalter, 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*): **REQUEST FOR JUDICIAL NOTICE**
**IN SUPPORT OF ROYAL BUSINESS BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
8/10/2022_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- **Donna C Bullock**    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- **Steven P Chang**    heidi@spclawoffice.com,
  schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.
  com;changsr75251@notify.bestcase.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Heidi M Cheng**    heidi@slclawoffice.com,
  assistant1@spclawoffice.com;schang@spclawoffice.com;chenghr75251@notify.bestcase.com
- **Susan Titus Collins**    scollins@counsel.lacounty.gov
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Danielle R Gabai**    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- **Richard Girgado**    rgirgado@counsel.lacounty.gov
- **Brian T Harvey**    bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
- **M. Jonathan Hayes**    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david
  @rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Teddy M Kapur**    tkapur@pszjlaw.com, mdj@pszjlaw.com
- **Alphamorlai Lamine Kebeh**    akebeh@danninggill.com
- **Peter A Kim**    peter@pkimlaw.com, peterandrewkim@yahoo.com
- **Christopher J Langley**    chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Paul J Leeds**    Pleeds@fsl.law, ssanchez@fsl.law
- **Benjamin R Levinson**    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
- **Damian J. Martinez**    damian.martinez@aalrr.com
- **Eric A Mitnick**    MitnickLaw@aol.com, mitnicklaw@gmail.com
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-
  law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Donald W Reid**    don@donreidlaw.com, ecf@donreidlaw.com
- **Matthew D. Resnik**    matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;par
  dis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- **Peter J Ryan**    ryan@floresryan.com, schneider@floresryan.com
- **Allan D Sarver**    ADS@asarverlaw.com
- **Zev Shechtman**    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **David Samuel Shevitz**    david@shevitzlawfirm.com,
  shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

- **John N Tedford**    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.courtdrive.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 8/10/2022_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| *Debtor* | *Presiding Judge:* |
|---|---|
| Jinzheng Group (USA) LLC | Hon. Ernest M. Robles |
| 1414 S Azusa Ave, Suite B-22 | U.S. Bankruptcy Court |
| West Covina, CA 91791 | 255 E. Temple Street, Suite 1560 |
| | Los Angeles, CA 90012 |

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/10/2022 | Margie Arias | */s/ Margie Arias* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**

2. **SERVED BY UNITED STATES MAIL (Cont'd.)**:

**Manual Notice List:**

Atkinson, Andelson, Loya, Ruud & Romo
201 S Lake Ave., Ste. 300
Pasadena, CA 91101

Avenue 8
c/o Darren Hubert
3900 Wilshire Blvd
Beverly Hills, CA 90212

Michael Douglas Carlin
PO Box 67132
Century City, CA 90067

Coldwell Banker Real Estate, LLC
388 S Lake Ave.
Pasadena, CA 91101

Pachulski Stang Ziehl & Jones
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067

Remax
1055 E Colorado Blvd.
Pasadena, CA 91106

Peter J. Ryan
FLORES RYAN, LLP
115 W. California Blvd., #9010
Pasadena, CA 91105

Shioda Langley and Chang LLP
1063 E Las Tunas Dr.
San Gabriel, CA 91776

The Crem Group
3900 W Alameda Ave., Suite 1200
Burbank, CA 91505

Jay Wu
LT Management Group Estate
1414 S. Azusa Avenue, B-22
West Covina, CA  91791

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**