**ALLAN D. SARVER**
Attorney at Law,  SBN106282
LAW OFFICES OF ALLAN D. SARVER
16000 Ventura Boulevard
Suite 1000
Encino, California 91436

Telephone No.: (818) 981-0581
Facsimile No.: (818) 981-0026
E-Mail: ADS@asarverlaw.com

Attorney for Secured Creditor
Investment Management Company, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:21-bk-16674-ER |
| JINZHENG GROUP (USA) LLC | Chapter 11 |
| Debtor and Debtor In Possession. | **OPPOSITION OF INVESTMENT MANAGEMENT COMPANY, LLC TO DEBTOR'S MOTION TO AUTHORIZE SALE OF REAL PROPERTY LOCATED AT 6840 DE CELIS PLACE, APT. 9, VAN NUYS, CALIFORNIA, FREE AND CLEAR OF LIENS; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF AHZO PU YANG, EMMANUEL D. MARGEN, JR., ANALIE E. MARGEN, DARREN HUBERT, AND ALPHAMORLAI L. KEBEH, AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF.** |
| | Hearing Date:<br>Date: October 24, 2022<br>Time: 11:00 a.m.<br>Ctrm: Courtroom 1568<br>       255 E. Temple Street<br>       15th Floor<br>       Los Angeles, CA 90012 |

Opposition to Motion for Order Authorizing
Sale of Real Property, etc.

1      **COMES NOW** Secured Creditor, Investment Management Company,

2   LLC ("IMC") in its Opposition to the motion by Jinzheng Group

3   (USA) LLC ("Debtor") as above captioned, and contends and objects

4   as follows:

5   **I. STATEMENT OF FACTS AND INTRODUCTION:**

6      1.   Debtor filed for relief under chapter 11 on August 24,

7   2021. Prior to the petition date, and until now no motion to sell

8   the property hereinafter described had been filed. <u>The main</u>

9   <u>asset of the Estate is the real property identified by debtor in</u>

10  <u>its earlier Plan documents (Dkt. 205@P. 1) as the Lincoln Heights</u>

11  <u>neighborhood of Los Angeles with a collective value of</u>

12  <u>$23,450,000.00</u>

13     2. IMC is a secured creditor as evidenced by that certain

14  Promissory Note Secured by Deed of Trust, together with the

15  remaining loan documents, true and correct copies of which are

16  attached to IMC's proof of claim which is Exhibit "A" hereto.

17  Said trust deed encumbers the real property located at 6840 De

18  Celis Place, Apt 9, Van Nuys, CA 91406 (the "Property").

19     3.   IMC timely filed its Proof of Claim (Claim No. 5, the

20  "Claim") on November 9, 2021, (the IMC Obligation) and which

21  claim continues to bear interest at the Note (default) Rate,

22  together with attorney fees and costs.

23     4.   No objection to the Claim has as ever been filed.

24  Further, as noted in the Declaration of Allan Sarver, prior

25  counsel for Debtor had negotiated an agreement with IMC to reduce

26  the default interest rate from 24% to 18% which is the amount

27  reflected in the Motion, and which offer is clearly rejected by

28

Debtor.   Unfortunately, the agreement was never submitted to the Court for approval.   IMC has not wavered from its position to reduce its default interest rate, until now.

5.   The Note was due in full on September 1, 2021. Therefore, interest accrues at the default rate as provided for therein, together with attorney fees and costs.

6.   Debtor seeks to sell the Property at a duly noticed sale hearing on October 24, 2022 subject to overbid.   While IMC does not object to the sale, it does object to the withholding of any net sale proceeds over and above the total IMC secured claim, which is supplemented herewith.

7.   IMC is the first trust deed holder. Holding back funds pending an objection which could have been addressed at any time postpetition to avoid undue harm to unsecured creditors and specifically, since Debtor's counsel substituted into the case on June 3, 2022 never occurred.   The undersigned has had regular communications with Debtor's counsel regarding the Property, which communications included referencing the contents of the earlier agreement (now obviously rejected) for IMC's willingness to accept a lesser default rate payment of 18% and its sale.

8.   The balance due IMC exceeds that stated in the Motion. Attached hereto as Exhibit "B-3" is a true and correct copy of a ledger showing interest at 24%.   To the extent the sale is approved, but the Court fails to order payment of the IMC obligation at the reduced 18% default interest rate, the Court is respectfully requested to require Debtor to hold in escrow in an interest-bearing account, the unpaid interest over and above

1  principal and interest at the Note (24% rate pending resolution

2  of the IMC Claim.

3        9.   While debtor proposes the deputed portions of net

4  proceeds of the sale shall be withheld with the "same force,

5  effect, validity and priority that they have with respect to the

6  Property" the amount withheld should also include additional

7  funds to cover interest at the Note (default) rate, with interest

8  thereon to accrue on the unpaid balance pending resolution of any

9  objection to claim.

10  **II.   MEMORANDUM OF POINTS AND AUTHORITIES**

11  **A.   IMC RESPECTFULLY REQUESTS THIS COURT CONDITION ANY SALE ON**

12  **PAYMENT OF ITS SECURED PROMISSORY NOTE IN FULL**

13  11 U.S.C. §363(e)-(f) provides in part:

14        "(e) Notwithstanding any other provision of this section,
      at any time, on request of an entity that has an interest in
15  property used, sold, or leased, or proposed to be used, sold, or
      leased, by the trustee, the court, with or without a hearing,
16  shall prohibit or condition such use, sale, or lease as is
      necessary to provide adequate protection of such interest. This
17  subsection also applies to property that is subject to any
      unexpired lease of personal property (to the exclusion of such
18  property being subject to an order to grant relief from the stay
      under section 362)."
19
        "(f) The trustee may sell property under subsection (b) or
20  (c) of this section free and clear of any interest in such
      property of an entity other than the estate, only if-
21
            (1) applicable nonbankruptcy law permits sale of such
22  property free and clear of such interest;
            (2) such entity consents;
23        (3) such interest is a lien and the price at which
      such property is to be sold is greater than the aggregate value
24  of all liens on such property;
            (4) such interest is in bona fide dispute; or
25        (5) such entity could be compelled, in a legal or
      equitable proceeding, to accept a money satisfaction of such
26  interest.
      11 U.S.C. Sec. 363 Use, sale, or lease of property."
27

28

1      **1.  The Failure to Earlier Market the Property:**

2          Debtor's case has been pending for over a year and now with

3    its third set of lawyers.   Nothing is mentioned of IMC's

4    requests to Debtor's counsel and its predecessor to market and

5    sell the Property  before the pending motion was filed.

6      **2.  Refusing To Pay Default Interest On Equitable Grounds:**

7          Debtor argues that payment of default interest may be

8    challenged on "equitable grounds" thus justifying proceeding

9    under §363(d) (Motion 4:23) Legal grounds however, are ignored.

10   Debtor contends further that payment of default interest which

11   was contracted for would "cause significant harm to the Debtor's

12   creditors and the estate."   This argument ignores the Debtor's

13   anticipated attorney fees and costs attendant to prosecuting an

14   objection to the IMC Claim and which fees and costs are clearly

15   detrimental to the interests of unsecured creditors and the

16   Estate, especially in light of the fact that IMC has already

17   offered to reduce its default interest rate to 18%.

18        The legal Maxim that "He who seeks equity must do equity"

19   is relevant here.

20        i. Counsel for Debtor had been advised months ago that IMC

21   was willing to reduce the default interest rate from 24% to 18%,

22   but no negotiations followed;

23        ii. No prior objection was ever filed against the IMC Claim

24   despite is filing in November, 2021.

25        iii. No discussions ever took place over any objection or

26   intended objection, despite notice of the pending issue even

27   though is relevant to plan confirmation.   Now, when the Debtor

28

1  has decided to finally market the property, the notice of intent

2  to oppose default interest is asserted as being equitable while

3  forcing IMC to  incur additional and avoidable attorney fees and

4  costs.  This is equity?

5      Debtor would have this Court believe that litigating over

6  $29,012.68 plus attorney fees is really in the best interest of

7  creditors and the estate. (See Exhibits "B-1-B-3")  Said figure

8  is derived from the following: interest at 12% (the note rate

9  pre-default) is $52,718.96; Interest at 18% is $81,731.64 and at

10  24%, $112,657.78. (Boren Declaration)

11      The IMC Note came due September 1, 2021.  No effort to

12  modify, or negotiate the terms has occurred. Debtor has had ample

13  time to market and sell the Property in what was one of the

14  hottest real estate markets our local economy has seen in

15  decades.  Debtor chose not to act, and now seeks to do equity by

16  forcing litigation upon IMC over its rightful claim.

17      There is no sound business reason why the IMC Note should

18  not be paid directly from escrow in full.  The law supports the

19  payment, as do the equities.  If Debtor agrees, IMC will accept

20  default interest at the 18% figure.

21      Placing funds in the possession of a third party pending

22  resolution of a claims objection only serves to further damage

23  IMC which has been incredibly patient in waiting for the Debtor

24  to list and sell the Property, all the while depriving IMC of the

25  use of the loan proceeds.

26

27

28  Opposition to Motion for Order Authorizing
    Sale of Real Property, etc.    - 6 -

**B.   DEFAULT INTEREST WAS PART OF THE LOAN'S NEGOTIATION AND AND AN ALLOWABLE PERCENTAGE.   DEBTOR'S CONTENTION THAT AN ACTUAL DISPUTE EXISTS UNDER 365(D)(4) IS UNSUPPORTED BY THE LOAN DOCUMENTS AND IGNORES THE ACTUAL IMPACT UPON THE ESTATE.**

Debtor cites to numerous authorities outside the Ninth Circuit to support its claim that default interest is inequitable under the circumstances and therefore, creates a bona fide dispute. However, the court in *In re 3MB*, LLC (Bankr ED Cal 2019) 609 BR 841 found that default interest provision to be enforceable. Further, and while outside of this jurisdiction, the court in *In re Heavey* (Bankr ED NY 2019) 608 BR 341 found that a default interest rate of 24 percent did not constitute penalty and did not diminish debtor's fresh start.

Contrary to Debtor's contention, this is not a case where the right to a "fresh start" applies.  Debtor is in chapter 11 and will one day file its disclosure statement and plan, (extension of time for which IMC already stipulated to (Dkt. 238).  It will emerge as a reorganized debtor. <u>What unsecured creditors receive after costs of administration depends upon Debtor's ability to maximize the value of its primary asset</u>: The <u>real property identified by debtor in its earlier Plan documents (Dkt. 205@P. 1) as the Lincoln Heights neighborhood of Los Angeles with a collective value of $23,450,000.00.  If unsecured creditors are to be paid, it is from the major asset of the estate and not the challenged default interest rightfully charged by IMC.</u>

1       The IMC loan is a commercial transaction between IMC and

2   Debtor, which bargained for an executed a Default Rider (See

3   Motion: Exhibit 4) as part of the transaction.   Subsequent to

4   default and the failure to pay for more than a year, in a

5   disingenuous effort to force IMC into protracted litigation and

6   costs, it now opposes payment of what was a negotiated default

7   rate which IMC is legally allowed to charge

8       ***1.   Allowance of Default Interest:***

9       "A provision in the note increasing the interest rate on

10  default should be enforceable in bankruptcy cases if they would

11  be enforceable under applicable nonbankruptcy law 11 U.S.C.

12  §502(b)."   CEB Mortgages, Deeds of Trust and Foreclosure

13  Litigation (4th Ed. Cal CEB) P.7-228, §7.123

14      California recognizes the imposition of default interest

15  which is further payable in a bankruptcy proceeding.

16      Default interest may be collectible in conjunction with a

17  sale of the property during the bankruptcy.   *Casa Blanca Project*

18  *Lenders v. City Commerce Bank*  27 F3d 241;  *McElwee v Scarff Bros*

19  (BAP 9th Cir. 2012) 469 BR 566.   *Great W. Bank & Trust v Entz-*

20  *White Lumber & Supply* ((th Cir. 1988) 850 F2d 1338.

21      The law is further clear that default interest is

22  authorized in a case where there is a sale of property pursuant

23  to Section 363 of the Code. In *Wells Fargo Bank v. Beltway One*

24  *Dev. Group, LLC* (BAP 9th Cir 2016) 547 BR 819 the court held that

25  "when chapter 11 plan does not provide cure for prebankrutpcy

26  default, bankruptcy court should apply presumption of

27  allowability for contractual default rate in determining in

28

1  postpetition interest rate to which over secured lender is

2  entitled, as long as rate is not unenforceable.    P. 7-219 ; Sec.

3  7.117 <u>See also: General Elec. Capital Corp. V Future Media</u>

4  <u>Prods., Inc.</u> (9th Cir 2008) 536 F3d 969.

5       The IMC claim is over secured and both State and applicable

6  bankruptcy law support its full payment, notwithstanding Debtor's

7  equitable arguments to the contrary to attempt to give rise to a

8  good faith dispute.

9       ***2.   The Motion Fails to Address the Presumption of Validity***

10 ***of the Note's Terms As Being Valid and Enforceable***.

11      In <u>East West Bank v. Altadena Lincoln Crossing</u>, LLC, 598

12 B.R. 633 (C.D. Cal. 2019) overturned on appeal, the court found

13 that a

14      "(b) [A] provision in a contract liquidating the damages

15 for the breach of the contract is valid unless the party seeking

16 to invalidate the provision establishes that the provision was

17 unreasonable under the circumstances existing at the time the

18 contract was made. <u>Cal. Civ. Code § 1671(b).</u>

19      "Because such provisions are presumed valid, the burden of

20 proving that the clause is unreasonable, and thus, unenforceable,

21 is on the party challenging the provision. See<u> Weber, Lipshie &</u>

22 <u>Co. v. Christian,</u> 52 Cal.App.4th 645, 654, 60 Cal.Rptr.2d 677

23 (1997). <u>East West Bank v. Altadena Lincoln Crossing, LLC</u>, 598

24 B.R. 633 (C.D. Cal. 2019)

25      Debtor's position lacks admissible evidence to support an

26 argument that the Note's default interest rate is inequitable.

27

28 Opposition to Motion for Order Authorizing
   Sale of Real Property, etc.        - 9 -

1  It is a negotiated term of the loan documents and fully

2  enforceable and should be paid directly from escrow upon closing.

3  **C.  THE AMOUNT OF THE IMC LIEN IS MISSTATED IN VIEW OF AN OBVIOUS**

4  **REFUSAL BY DEBTOR TO ACCEPT THE 18% DEFAULT INTEREST RATE.**

5  Submitted herewith is the declaration of Brian Boren

6  attesting to the updated payoff figures utilizing a 24% default

7  rate, consistent with the underlying Proof of Claim.  The balance

8  due with interest fees and costs is presently $467,660.08 with

9  attorneys fees and interest continuing to rise.

10  **II.  CONCLUSION:**

11  For all of the foregoing reasons, it is respectfully

12  requested that the Debtor's Motion for Order Approving the Sale

13  of Real Property of the Estate Free and Clear of Liens and other

14  interests if granted as prayed for be conditioned upon payment in

15  full of the IMC lien but with interest at the proposed 18%

16  default interest rate.  Alternatively, Debtor should be required

17  to hold back default interest in excess of the Note rate of 12%

18  at the rate of 24% per annum in an interest bearing account,

19  together with such additional amounts as necessary to satisfy the

20  Note Balance, and which amount should continue to accrue interest

21  at the default rate, pending resolution of any claims objection

22  process. Any disputed amounts owed under the NOTE shall further

23  attach to the disputed portions of the net proceeds of the sale

24  with the same force, effect, validity and priority that they have

25

26

27

28

Opposition to Motion for Order Authorizing
Sale of Real Property, etc.          - 10 -

1   with respect to the Property.

2

3   Dated: October 7, 2022         Respectfully Submitted,

4

     ALLAN D. SARVER

5      Attorney for Creditor,
     Investment Management Company,

6      LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 Opposition to Motion for Order Authorizing
Sale of Real Property, etc.      - 11 -

1                         **DECLARATION OF ALLAN D. SARVER**

2       I, ALLAN D. SARVER declare that:

3       1.   I am an attorney, duly licensed to practice law before

4 this court.   I am the attorney for Investment Management Company,

5 LLC, a secured creditor of the Debtor in the above captioned

6 proceeding.

7       2.   If called upon as a witness, I would testify

8 competently and under oath that the within declaration is true

9 and correct with the exception of those matters stated on

10 information and belief, which I believe to be true and correct.

11       3. The exhibits submitted herewith is a true and correct

12 copy of that maintained by me in the ordinary and normal course

13 of my law practice and over which I am the custodian of record.

14 The Proof of Claim which is Exhibit "A" is a true and correct

15 copy of same filed by IMC in this proceeding.

16       4. The IMC Note secured by deed of trust is a valid and

17 properly perfected lien against the Debtor's real property,

18 located at 6840 De Celis Place, Apt 9, Van Nuys, CA 91406 (the

19 "Property").

20       5. As stated above, prior counsel for Debtor had negotiated

21 an agreement with IMC to reduce the default interest rate from

22 24% to 18%. IMC has not wavered from its position to reduce its

23 default interest rate, until now.

24       6.   The subject Note was due in full on September 1, 2021.

25 Therefore, in accordance with the Note, interest accrues at the

26 default rate of 24% as provided for in therein, together with

27 attorney fees and costs which continue to be incurred.

28

1      7.   I declare under penalty of perjury that the within

2 declaration is true and correct and that this declaration was

3 executed in the City of Encino, California, on October 7, 2022.

4

                               ALLAN D. SARVER

5                                Declarant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 Opposition to Motion for Order Authorizing
Sale of Real Property, etc             - 13 -

### DECLARATION OF BRIAN BOREN

I, BRIAN BOREN declare that:

1.   If called upon as a witness, I would testify that the within declaration is true and correct of my own personal knowledge.

2.   I have read the statement of facts submitted herewith and know same to be true and correct.

3.   I am the director of acquisitions of Investment Management, LLC, a limited liability company, with respect to the subject loan which encumbers the real property commonalty known as 6840 De Celis Place, Apt 9, Van Nuys, CA 91406 (the "Property").

True and correct copies of the IMC promissory note and deed of trust are a part of the IMC Proof of Claim attached to hereto as Exhibit "A."

4. I am the custodian of records for and have personally worked on the books, records and files regarding the underlying Loan to the Debtor and which loan is secured by the Collateral, and as to the following facts, I know them to be true of my own knowledge.

5.   All charges, fees, interest and costs charged to the subject loan were made at or about the time of the events recorded, as reflected in the records which are maintained in the ordinary course of Investment Management Company, LLC's ("IMC") business at or near the time of the acts, conditions or events to which they relate.

6.   I am familiar with and have reviewed the loan file and the subject obligation which came due in full on September 1, 2021.

1   No payments have been made against said obligation since August,
2   2021.

3       7.    Attached hereto as Exhibit "B-1, B-2 & B-3 are true and
4   correct copies ledgers showing the balance due with interest
5   calculated at 12%, 18% and 24% the right to assert which IMC
6   reserves. The monetary difference between the interest rates of
7   12%, 18% and 24% on the IMC Claim are as follows: interest at 12%
8   (the note rate pre-default) is $52,718.96; Interest at 18% is
9   $81,731.64 and at 24%, $112,657.78.

10      8. IMC had agreed to accept interest at 18%, which offer is
11  obviously rejected thereby reinstating the IMC claim to interest at
12  24%.

13      9.   I declare under penalty of perjury that the foregoing is
14  true and correct and that this declaration was executed in the City
15  of Santa Monica, State of California on the 17th day of October,
16  2022.

17                                    _____
18                                    BRIAN BOREN
                                      Declarant
19
20
21
22
23
24
25
26
27
28  Opposition to Motion for Order Authorizing
    Sale of Real Property, etc              - 15 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

16000 Ventura Blvd., Suite 1000, Encino, CA 91436

A true and correct copy of the foregoing document entitled Opposition of Investment Management Company, LLC to Debtor's Motion to Authorize Sale of Real Property Located at 6840 DeCelis Place, Apt. 9, Van Nuys, California, Free and Clear of Liens; Memorandum of Points and Authorities; Declarations of Ahzo Pu Yang, Emanuel D. Margen Jr., Analie E. Margen, Darren Hubert, and Alphamorlai L. Kebeh and Request for Judicial Notice in Support, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

## 1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 10/07/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Donna C Bullock**   donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- **Steven P Chang**   heidi@spclawoffice.com, schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com
- **Michael F Chekian**   mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Heidi M Cheng**   heidi@slclawoffice.com, assistant1@spclawoffice.com;schang@spclawoffice.com;chenghr75251@notify.bestcase.com
- **Susan Titus Collins**   scollins@counsel.lacounty.gov
- **Nicholas S Couchot**   ncouchot@buchalter.com, docket@buchalter.com;marias@buchalter.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Oscar Estrada**   oestrada@ttc.lacounty.gov
- **Danielle R Gabai**   dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- **Runmin Gao**   ivy.gao@aalrr.com, alicia.mcmaster@aalrr.com
- **Richard Girgado**   rgirgado@counsel.lacounty.gov
- **Brian T Harvey**   bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
- **M. Jonathan Hayes**   jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Teddy M Kapur**   tkapur@pszjlaw.com, mdj@pszjlaw.com
- **Alphamorlai Lamine Kebeh**   akebeh@danninggill.com
- **Peter A Kim**   peter@pkimlaw.com, peterandrewkim@yahoo.com
- **Christopher J Langley**   chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Paul J Leeds**   Pleeds@fsl.law, ssanchez@fsl.law
- **Benjamin R Levinson**   ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
- **Damian J. Martinez**   damian.martinez@aalrr.com, julissa.ruiz@aalrr.com
- **Eric A Mitnick**   MitnickLaw@aol.com, mitnicklaw@gmail.com
- **Giovanni Orantes**   go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    **F 9013-3.1.PROOF.SERVICE**

- **Donald W Reid**    don@donreidlaw.com, ecf@donreidlaw.com
- **Matthew D. Resnik**    matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- **Peter J Ryan**    ryan@floresryan.com, schneider@floresryan.com
- **Allan D Sarver**    ADS@asarverlaw.com
- **Zev Shechtman**    zshechtman@DanningGill.com,
  danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **David Samuel Shevitz**    david@shevitzlawfirm.com,
  shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- **John N Tedford**    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.courtdrive.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov,
  hatty.k.yip@usdoj.gov;dare.law@usdoj.gov;eryk.r.escobar@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) 10/07/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 10\07\2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Honorable Ernest M. Robles    Via Federal Express
United States Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, California 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/07/2022 | M. Swanston | |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "A"

| Fill in this information to identify the case: |
| --- |

| Debtor 1 | JINZHENG GROUP (USA) LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:21-BK-16674-ER |

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

| | | |
| --- | --- | --- |
| 1. Who is the current creditor? | **INVESTMENT MANAGEMENT COMPANY, LLC** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Investment Management Company LLC | |
| | Name | Name |
| | 1507 7th Street #344 | |
| | Number    Street | Number    Street |
| | Santa Monica    CA    90401 | |
| | City    State    ZIP Code | City    State    ZIP Code |
| | Contact phone 310-395-4620 | Contact phone _____ |
| | Contact email brian@imcproperty.com | Contact email _____ |
| | | |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | — — — — — — — — — — — — — — — — — — — — | |

| 4. Does this claim amend one already filed? | ☑ No | |
| --- | --- | --- |
| | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on ___/___/_____ MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| --- | --- | --- |
| | ☐ Yes. Who made the earlier filing? _____ | |

19

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**   $_____ * 350,000.00 . Does this amount include interest or other charges?

*Beginning 9/1/2021 interest at default rate -24% plus late charges, attorneys fees and costs Balance due as of 11/1/21 $362,390.00

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Promissory Note and Deed of Trust

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:   6840 DeCelis Pl. #9, Van Nuys, CA. 91406

**Basis for perfection:**   Promissory Note Secured by Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ 660,000.00

**Amount of the claim that is secured:**   $ 350,000.00 *Continuing interest costs and attorneys fees.

**Amount of the claim that is unsecured:**   $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 350,000.00

**Annual Interest Rate** (when case was filed) 12.00 %

☑ Fixed   Note due in full 9/1/2021. Default rate: 24%

☐ Variable   at 9/1/2021.

**10. Is this claim based on a lease?**

☐ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☐ Yes. Identify the property: _____

Official Form 410

Proof of Claim

page 2

| | | Amount entitled to priority |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  11 / 09 / 2021
　　　　　　　　　 MM / DD / YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | **BRIAN BOREN** |
| | First name　　　Middle name　　　Last name |
| Title | **DIRECTOR OF ACQUISITIONS** |
| Company | **INVESTMENT MANAGEMENT COMPANY LLC** |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | **1507 7TH STREET, SUITE 344** |
| | Number　　Street |
| | **SANTA MONICA**　　　　　　　**CA**　　**90401** |
| | City　　　　　　　　　　　State　　ZIP Code |
| Contact phone | **310-395-4620**　　　Email **brian@imcproperty.com** |



## DECLARATION OF BRIAN BOREN

I, BRIAN BOREN, declare that:

1.  If called upon as a witness, I would testify that the within declaration is true and correct of my own personal knowledge.

2.  I am the director of acquisitions of Investment Management Company, LLC, a limited liability corporation ("IMC"), which is the secured creditor of the Debtor and payee of a promissory note secured by a second deed of trust (the Loan Documents) which encumbers the real property commonly known as 6840 De Celis Place, Unit 9, Van Nuys, California 91406 (the "Property"). True and correct copies of the IMC promissory note and deed of trust and related loan documents are Exhibits "A" and "B."

3.  I am the custodian of records for and have personally worked on the books, records and files regarding the underlying loan to Debtor and which loan is secured by the Property, and as to the following facts, I know them to be true of my own knowledge.  All charges, fees, interest, costs and attorney fees charged to the subject loan are reflected in IMC's records which are maintained in the ordinary course of its business at or near the time of the acts, conditions or events to which they relate.

4.  As of the Petition date the balance due was $350,500.00. The Debtor's loan came due in full on September 1, 2021. Default interest has thereafter accrued at the default interest rate of 24%.

5.  As of November 1, 2021 the outstanding loan balance due, on this obligation is $362,390.00.  Said amount includes

4/22

1 │ accruing interest, attorney fees and costs as summarized on the

2 │ attached ledger which is Exhibit "C."

3 │     6.   Nothing contained herein should be construed as waiving

4 │ or in any manner limiting the rights of IMC with respect to any

5 │ rights, remedies or claims, interests or otherwise it may have as

6 │ same relate to the subject obligation as evidenced by the Loan

7 │ Documents.

8 │     7. The undersigned on behalf of IMC does hereby reserve the

9 │ right to amend or supplement in any manner this Proof of Claim

10 │ for all purposes including the assertion of additional proofs of

11 │ claims or amendments hereto as later discovered information

12 │ provides a basis therefor.

13 │     8.   I declare under penalty of perjury that the foregoing is

14 │ true and correct and that this declaration was executed in the

15 │ City of Santa Monica, State of California on the 9 day of

16 │ November, 2021.

17 │

18 │ BRIAN BOREN, Declarant

19 │

# EXHIBIT "A"

6/24

Loan Number: 1464

# INTEREST-ONLY PERIOD FIXED RATE NOTE

AUGUST 11, 2020                    SANTA MONICA                    CALIFORNIA
[Date]                            [City]                          [State]

6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 350,000.00            (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY                                         .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      12.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first   11   months, and then will consist of principal and interest.

I will make my monthly payment on the   1st   day of each month beginning on      OCTOBER 1      , 2020             . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on      SEPTEMBER 1, 2021      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   1507 7TH STREET #344, SANTA MONICA, CALIFORNIA 90401

                                        or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  3,500.00         for the first   11    months of this Note, and thereafter will be in the amount of U.S. $  353,500.00         . The Note Holder will notify me prior to the date of change in monthly payment.

## 4.   BORROWER'S RIGHT TO PREPAY   ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in

the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        5 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        10.000 % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
US3271.NOT  09/03/15                                Page 2 of 4                        DocMagic eForms
                                                                                      www.docmagic.com

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
US3271.NOT  09/03/15                                     Page 3 of 4                    DocMagic eForms
www.docmagic.com



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____ (Seal)          _____ (Seal)
BETTY ZHENG                   -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                     -Borrower

*[Sign Original Only]*

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
US3271.NOT  09/03/15                    Page 4 of 4          **DocMagic eForms**
                                                            **www.docmagic.com**



———————————————— [Space Above This Line For Recording Data] ————————————————

Loan Number: 1464

# BALLOON RIDER

THIS BALLOON RIDER is made this 11th day of AUGUST 2020 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

---



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

8-12-2020

_____     _____     _____     _____
Borrower BETTY ZHENG                 Date                Borrower                              Date


_____     _____     _____     _____
Borrower                             Date                Borrower                              Date


_____     _____     _____     _____
Borrower                             Date                Borrower                              Date

MULTISTATE BALLOON RIDER
04/26/04                                    Page 2 of 2                          DocMagic EForms
                                                                                www.docmagic.com

Loan Number: 1464

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **11th** day of **AUGUST, 2020** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406**
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                    Page 1 of 3

*DocMagic* **EForms**

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
BETTY ZHENG                          -Borrower

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 3 of 3                          *DocMagic eForms*

Loan Number: 1464

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 11th day of          AUGUST, 2020          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.  Condominium Obligations. Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

B.  Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for
property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.
   What Lender requires as a condition of this waiver can change during the term of the loan.

---

MULTISTATE CONDOMINIUM RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                              Page 1 of 3                      *DocMagic eForms*

16/34

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11    .

**E.  Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

17/35

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____(Seal)
BETTY ZHENG                        -Borrower

Loan Number: 1464

# DEFAULT INTEREST RATE RIDER

**The last sentence of Paragraph 2 of the Note is hereby deleted and the following provisions are substituted in its place in the Note, and added to the Mortgage or Security Agreement:**

## EXTENDED DEFAULT

If, for any reason, (1) I fail to make a full monthly payment on or before the last day of the month in which said monthly payment is due; or (2) I fail to pay the entire amount due on my loan on the maturity date or other date on which I am required to make immediate payment in full of the entire amount due on my loan, whether by reason of acceleration of my loan or otherwise, or (3) I fail to perform any of my obligations under the loan note or the Mortgage (Security Instrument); or (4) If this is a loan on a cooperative apartment unit, the (Collateral Note and Security Agreement) for more than thirty (30) days, then my loan, and any other connected or related loan held by you, will be in Extended Default, and I will be obligated to pay interest at the Default Interest Rate, as set forth below.

## DEFAULT INTEREST RATE

If I am in Extended Default, as described above, the interest rate on my loan, and on any other connected or related loan held by you (Note Holder), will be increased to       24.000 % per annum (the "Default Interest Rate") without prior notice to me, until either of the following two events occurs: (1) all amounts which are due and unpaid on the loan, including monthly payments and charges due (including interest at the Default Interest Rate imposed hereunder), are paid in full, and all other defaults under the loan documents have been cured, provided that the loan has not matured, by acceleration or otherwise, and I have complied with all requirements contained in the loan documents to correct defaults; or (2) the entire amount due on the loan, including all principal, interest (including interest at the Default Interest Rate imposed hereunder) and all other amounts and charges due, are paid in full.  Interest at the Default Interest Rate will be charged from the first day of the month immediately following the month in which any monthly payment in Extended Default was due, or from the date of the occurrence of any other event which causes my loan to be in Extended Default.  Accrual of interest at the Default Interest Rate shall be in addition to, and not in place of, any late fees or charges, or any other charges which may become due under the loan documents.  In no event shall I be required to pay interest at an interest rate greater than the maximum interest rate permitted by law, or interest at the Default Interest Rate for a period greater than permitted by law.  In the event that you determine that interest at the Default Interest Rate is in excess of the above requirements, such excess will be credited to reduce the principal balance due on the loan.  You may, at your option, notify me of the increase of the interest rate on my loan due to the Default Interest Rate, and the increased monthly payment due by reason of the application of the Default Interest Rate, on subsequent monthly billing statements.

DocMagic *eForms*
www.docmagic.com



I agree to the terms of this Default Interest Rate Rider.

JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____    8-12-2020    _____
Borrower BETTY ZHENG    Date    Borrower    Date


_____    _____
Borrower    Date    Borrower    Date


_____    _____
Borrower    Date    Borrower    Date

DEFAULT INTEREST RATE RIDER
DIRR.MSC  08/21/12    Page 2 of 2    DocMagic eForms
www.docmagic.com

# PREPAYMENT RIDER

Loan Number:   1464

Date: **AUGUST 11, 2020**

Borrower(s): **JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED
LIABILITY COMPANY**

THIS PREPAYMENT RIDER (the "Rider") is made this   **11th**      day of **AUGUST**      ,
**2020**                 , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
**INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY
COMPANY**
("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

**6840 DE CELIS PLACE #9, LOS ANGELES, CALIFORNIA 91406**
[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

### 4    .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so.  I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note.  However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment.  However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.
If within **SIX**           (    **6**    ) months from the date the Security
Instrument is executed I make a full Prepayment or one or more partial Prepayments, and
the total of all such Prepayments in any 12-month period exceeds  **TWENTY**
percent (   **20.000**       %) of the original principal amount of the loan, I will pay a

---

CALIFORNIA PREPAYMENT RIDER - SPP
(CIVIL CODE PROVISION)
12/13/05                                    Page 1 of 2

DocMagic *eForms*
www.docmagic.com

Prepayment charge in an amount equal to **SIX** ( **6** ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds **TWENTY** percent ( **20.000 %**) of the original principal amount of the loan.

  If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

  Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property within the first **6** months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

  BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

**JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

_____ (Seal)　　　　　　_____ (Seal)
**BETTY ZHENG**　　　　　　-Borrower　　　　　　　　　　　　　　　　　-Borrower


_____ (Seal)　　　　　　_____ (Seal)
　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　-Borrower


_____ (Seal)　　　　　　_____ (Seal)
　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　-Borrower

CALIFORNIA PREPAYMENT RIDER - SPP
(CIVIL CODE PROVISION)
12/13/05
Page 2 of 2

*DocMagic ＥＦoｒｍｓ*
www.docmagic.com



# EXHIBIT "B"

Recording Requested By:
INVESTMENT MANAGEMENT COMPANY, LLC

And After Recording Return To:
INVESTMENT MANAGEMENT
COMPANY, LLC
1507 7TH STREET #344
SANTA MONICA, CALIFORNIA 90401
Loan Number: 1464

*This is to certify that this is a true*

—————————— [Space Above This Line For Recording Data] ——————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated      AUGUST 11, 2020      , together with all Riders to this document.
(B)  "Borrower" is JINZHENG GROUP (USA) LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
BORROWER'S ADDRESS IS 100 EAST HUNTINGTON DRIVE 207, ALHAMBRA, CALIFORNIA
91801.

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is   INVESTMENT MANAGEMENT COMPANY, LLC

Lender is a               CALIFORNIA LIMITED LIABILITY COMPANY               organized and existing under the laws of               CALIFORNIA
Lender's address is    1507 7TH STREET #344, SANTA MONICA, CALIFORNIA 90401

Lender is the beneficiary under this Security Instrument.
(D)  "Trustee" is   SBS TRUST DEED NETWORK, A CALIFORNIA CORPORATION
31194 LA BAYA DRIVE, SUITE 106, WESTLAKE VILLAGE, CALIFORNIA 91362

(E)  "Note" means the promissory note signed by Borrower and dated      AUGUST 11, 2020
The Note states that Borrower owes Lender   THREE HUNDRED FIFTY THOUSAND AND 00/100
Dollars (U.S. $ 350,000.00                    )

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005  1/01
Page 1 of 15

*DocMagic eForms*
*www.docmagic.com*



plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    **SEPTEMBER 1, 2021**

(F)   "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)   "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)   "**Riders**" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☐ | Planned Unit Development Rider |
| ☒ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☒ | 1-4 Family Rider | ☐ | Second Home Rider |
| ☒ | Condominium Rider | ☒ | Other(s) [specify]  **Default Interest Rate Rider, Prepayment Rider** |

(I)   "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)   "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)   "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)   "**Escrow Items**" means those items that are described in Section 3.

(M)   "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)   "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.



**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | LOS ANGELES | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2225-001-043

which currently has the address of **6840 DE CELIS PLACE #9**

[Street]

**LOS ANGELES** , California **91406** ("Property Address"):

[City]     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights

hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower. Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

---

2⁸⁄₄₆

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for


*DocMagic eForms*
*www.docmagic.com*



Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

---

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**'16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which *can* be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such



other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

34/52

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

### NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

---

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

8-12-2020

_____
Borrower BETTY ZHENG                        Date

_____          _____
Witness                                   Witness

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005  1/01

DocMagic eForms
www.docmagic.com

Page 14 of 15

37/55

──────────────── [Space Below This Line For Acknowledgment] ────────────────

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **CALIFORNIA** )

County of **LOS ANGELES** )

On __8/12/2020__ before me, _Brooke D. Rodriguez, Notary Public_
     Date                          Here Insert Name and Title of the Notarizing Officer

personally appeared __BETTY ZHENG__

_____

_____

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



BROOKE D. RODRIGUEZ
Notary Public - California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023

Notary Seal

_____
Signature of Notary Public

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005  1/01

DocMagic *eForms*
www.docmagic.com

36/56

# EXHIBIT A
## LEGAL DESCRIPTION

PARCEL 1:

AN UNDIVIDED ONE-THIRTY SIXTH (1/36TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO THE COMMON AREA OF MODULE "A" OF LOT 1 OF TRACT NO. 62442, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES AS PER MAP RECORDED IN BOOK 1331, PAGES 20 THROUGH 21, INCLUSIVE, OF MAPS, AS SHOWN ON THAT CERTAIN CONDOMINIUM PLAN FOR MODULES "A" AND "B" OF SAID LOT 1 OF TRACT NO. 62442, WHICH CONDOMINIUM PLAN WAS RECORDED ON MAY 31, 2007, AS INSTRUMENT NO. 07-1312424 AND AMENDED BY DOCUMENT RECORDED MARCH 21, 2008 AS INSTRUMENT NO. 08-489155, ("CONDOMINIUM PLAN") ALL IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.


EXCEPT THEREFROM THE UNITS AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL 2:

UNIT NO. 9, OF SAID MODULE "A" OF LOT NO. 1 OF TRACT NO. 62442, AS SHOWN AND DESCRIBED IN SAID CONDOMINIUM PLAN. RESERVING FROM SAID PARCELS 1 AND 2 ABOVE, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS IN INTEREST, AND OTHERS, EASEMENTS FOR ACCESS, USE, ENJOYMENT, DRAINAGE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE DECLARATION OF ESTABLISHMENT OF CONDITIONS, COVENANTS AND RESTRICTIONS FOR DE CELIS COURT ("DECLARATION"), RECORDED ON 5/31, 2007 AS INSTRUMENT NO. 07-1312425, OF THE OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA, INCLUDING ANY AMENDMENTS THERETO, ALL OF WHICH ARE INCORPORATED HEREIN BY THIS REFERENCE.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES ALL AS DESCRIBED IN THE DECLARATION RECORDED 5/31/07 AS 07-1312425; AND THE CONDOMINIUM PLAN.

39/57

# EXHIBIT "C"

40
/58

**INVESTMENT MANAGEMENT COMPANY, LLC**
1507 7th St #344
Santa Monica, CA 90401
TEL: (310)395-4620  *  (310)395-3174 :FAX
brian@imcproperty.com

Jinzheng Group
11/1/21

|  | Rate |  | | | | | | Beginning Prin. Balance |
|---|---|---|---|---|---|---|---|---|
|  |  | 10.00% | 24.00% |  |  |  |  | $350,000.00 |
|  |  | 0.008333333 | 0.02 |  |  |  |  |  |
|  | Date Due | Scheduled Payment | Default Payment | Late Charge | Advance | Total Due | Credited Payment | Still Due-Accruing | Accruing Prin. Balance |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 9/1/21 | $3,500.00 | $0.00 | $350.00 | $0.00 | $3,850.00 | $0.00 | $3,850.00 | $353,850.00 |
| 2 | 10/1/21 | $3,500.00 | $0.00 | $350.00 | $0.00 | $3,850.00 | $0.00 | $3,850.00 | $357,700.00 |
| 3 | 11/1/21 | $3,500.00 | $0.00 | $0.00 | $0.00 | $3,500.00 | $0.00 | $3,500.00 | $361,200.00 |
|  |  |  |  |  |  |  |  | Legal Service | $1,190.00 |
| As of | 11/1/21 | $10,500.00 | $0.00 | $700.00 | $0.00 | $11,200.00 | $0.00 | $11,200.00 | $362,390.00 |

41/59

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16000 Ventura Blvd, Suite 1000, Encino, CA 91436

A true and correct copy of the foregoing document entitled  PROOF OF CLAIM will be  served or was  served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)11/09/29/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

2.  **Donna C Bullock**  donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
3.  **Michael F Chekian**  mike@cheklaw.com, chekianmr84018@notify.bestcase.com
4.  **Susan Titus Collins**  scollins@counsel.lacounty.gov
5.  **Richard Girgado**  rgirgado@counsel.lacounty.gov
6.  **M. Jonathan Hayes**  jhayes@rhmfirm.com,
    roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
7.  **Benjamin R Levinson**  ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
8.  **Eric A Mitnick**  MitnickLaw@aol.com, mitnicklaw@gmail.com
9.  **Giovanni Orantes**  go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
10. **Matthew D. Resnik**  matt@rhmfirm.com,
    roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
11. **Allan D Sarver**  ADS@asarverlaw.com
12. **United States Trustee (LA)**  ustpregion16.la.ecf@usdoj.gov
13. **Hatty K Yip**  hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐  Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*)11/09/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012



**F 9013-3.1.PROOF.SERVICE**

**14. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date)11/09/2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/09/2021 | M.Swanston | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "B-1"

**INVESTMENT MANAGEMENT COMPANY, LLC**
1507 7th St #344
Santa Monica, CA 90401
TEL: (310)395-4620  *  (310)395-3174 :FAX
brian@imcproperty.com

Jinzheng Group
10/6/22

| | | | | | | | Beg. Prin. Balance |
|---|---|---|---|---|---|---|---|
| | Rate | 12.00% | 12.00% | | | | $350,000.00 |
| | | 0.01 | 0.01 | | | | |

| | Date Due | Scheduled Payment | Default Payment | Late Charge | Advance | Total Due | Credited Payment | Still Due-Accruing | Accruing Prin. Bal | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 9/1/21 | | $3,500.00 | $0.00 | $0.00 | $3,500.00 | $0.00 | $3,500.00 | $353,500.00 | |
| 2 | 10/1/21 | | $3,535.00 | $0.00 | $1,190.00 | $4,725.00 | $0.00 | $4,725.00 | $358,225.00 | Legal fees 10/5/21 |
| 3 | 11/1/21 | | $3,582.25 | $0.00 | $639.00 | $4,221.25 | $0.00 | $4,221.25 | $362,446.25 | Legal fees 11/3/21 |
| 4 | 12/1/21 | | $3,624.46 | $0.00 | $0.00 | $3,624.46 | $0.00 | $3,624.46 | $366,070.71 | |
| 5 | 1/1/22 | | $3,660.71 | $0.00 | $0.00 | $3,660.71 | $0.00 | $3,660.71 | $369,731.42 | |
| 6 | 2/1/22 | | $3,697.31 | $0.00 | $425.00 | $4,122.31 | $0.00 | $4,122.31 | $373,853.73 | Legal fees 1/28/22 |
| 7 | 3/1/22 | | $3,738.54 | $0.00 | $1,067.70 | $4,806.24 | $0.00 | $4,806.24 | $378,659.97 | Legal fees 3/11/22 |
| 8 | 4/1/22 | | $3,786.60 | $0.00 | $17.10 | $3,803.70 | $0.00 | $3,803.70 | $382,463.67 | Legal fees 4/8/22 |
| 9 | 5/1/22 | | $3,824.64 | $0.00 | $85.00 | $3,909.64 | $0.00 | $3,909.64 | $386,373.31 | Legal fees 5/5/22 |
| 10 | 6/1/22 | | $3,863.73 | $0.00 | $1,232.50 | $5,096.23 | $0.00 | $5,096.23 | $391,469.54 | Legal fees 6/03/22 |
| 11 | 7/1/22 | | $3,914.70 | $0.00 | $346.00 | $4,260.70 | $0.00 | $4,260.70 | $395,730.24 | Legal fees 6/30/22 |
| 12 | 8/1/22 | | $3,957.30 | $0.00 | $0.00 | $3,957.30 | $0.00 | $3,957.30 | $399,687.54 | |
| 13 | 9/1/22 | | $3,996.88 | $0.00 | $0.00 | $3,996.88 | $0.00 | $3,996.88 | $403,684.41 | |
| 14 | 10/1/22 | | $4,036.84 | $0.00 | $0.00 | $4,036.84 | $0.00 | $4,036.84 | $407,721.26 | |
| As of | 10/6/22 | $0.00 | $52,718.96 | $0.00 | $5,002.30 | $57,721.26 | $0.00 | $57,721.26 | $407,721.26 | |

63

# EXHIBIT "B-2"

44

**INVESTMENT MANAGEMENT COMPANY, LLC**
1507 7th St #344
Santa Monica, CA 90401
TEL: (310)395-4620  *  (310)395-3174 :FAX
brian@imcproperty.com

Jinzheng Group
10/6/22

| | | | | | | | Beg. Prin. Balance |
|---|---|---|---|---|---|---|---|
| | | | | | | | $350,000.00 |

| | Rate | 12.00% | 18.00% | | | | |
|---|---|---|---|---|---|---|---|
| | | 0.01 | 0.015 | | | | |

| | Date Due | Scheduled Payment | Default Payment | Late Charge | Advance | Total Due | Credited Payment | Still Due-Accruing | Accruing Prin. Bal | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 9/1/21 | | $5,250.00 | $0.00 | $0.00 | $5,250.00 | $0.00 | $5,250.00 | $355,250.00 | |
| 2 | 10/1/21 | | $5,328.75 | $0.00 | $1,190.00 | $6,518.75 | $0.00 | $6,518.75 | $361,768.75 | Legal fees 10/5/21 |
| 3 | 11/1/21 | | $5,426.53 | $0.00 | $639.00 | $6,065.53 | $0.00 | $6,065.53 | $367,834.28 | Legal fees 11/3/21 |
| 4 | 12/1/21 | | $5,517.51 | $0.00 | $0.00 | $5,517.51 | $0.00 | $5,517.51 | $373,351.80 | |
| 5 | 1/1/22 | | $5,600.28 | $0.00 | $0.00 | $5,600.28 | $0.00 | $5,600.28 | $378,952.07 | |
| 6 | 2/1/22 | | $5,684.28 | $0.00 | $425.00 | $6,109.28 | $0.00 | $6,109.28 | $385,061.35 | Legal fees 1/28/22 |
| 7 | 3/1/22 | | $5,775.92 | $0.00 | $1,067.70 | $6,843.62 | $0.00 | $6,843.62 | $391,904.97 | Legal fees 3/11/22 |
| 8 | 4/1/22 | | $5,878.57 | $0.00 | $17.10 | $5,895.67 | $0.00 | $5,895.67 | $397,800.65 | Legal fees 4/8/22 |
| 9 | 5/1/22 | | $5,967.01 | $0.00 | $85.00 | $6,052.01 | $0.00 | $6,052.01 | $403,852.66 | Legal fees 5/5/22 |
| 10 | 6/1/22 | | $6,057.79 | $0.00 | $1,232.50 | $7,290.29 | $0.00 | $7,290.29 | $411,142.95 | Legal fees 6/03/22 |
| 11 | 7/1/22 | | $6,167.14 | $0.00 | $346.00 | $6,513.14 | $0.00 | $6,513.14 | $417,656.09 | Legal fees 6/30/22 |
| 12 | 8/1/22 | | $6,264.84 | $0.00 | $0.00 | $6,264.84 | $0.00 | $6,264.84 | $423,920.93 | |
| 13 | 9/1/22 | | $6,358.81 | $0.00 | $0.00 | $6,358.81 | $0.00 | $6,358.81 | $430,279.75 | |
| 14 | 10/1/22 | | $6,454.20 | $0.00 | $0.00 | $6,454.20 | $0.00 | $6,454.20 | $436,733.94 | |
| As of | 10/6/22 | $0.00 | $81,731.64 | $0.00 | $5,002.30 | $86,733.94 | $0.00 | $86,733.94 | $436,733.94 | |



# EXHIBIT "B-3"

66

**INVESTMENT MANAGEMENT COMPANY, LLC**
1507 7th St #344
Santa Monica, CA 90401
TEL: (310)395-4620  *  (310)395-3174 :FAX
brian@imcproperty.com

Jinzheng Group
10/6/22

| | Rate | 12.00% | 24.00% | | | | | Beg. Prin. Balance | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | 0.01 | 0.02 | | | | | $350,000.00 | |
| | Date Due | Scheduled Payment | Default Payment | Late Charge | Advance | Total Due | Credited Payment | Still Due-Accruing | Accruing Prin. Bal | Notes |
| 1 | 9/1/21 | | $7,000.00 | $0.00 | $0.00 | $7,000.00 | $0.00 | $7,000.00 | $357,000.00 | |
| 2 | 10/1/21 | | $7,140.00 | $0.00 | $1,190.00 | $8,330.00 | $0.00 | $8,330.00 | $365,330.00 | Legal fees 10/5/21 |
| 3 | 11/1/21 | | $7,306.60 | $0.00 | $639.00 | $7,945.60 | $0.00 | $7,945.60 | $373,275.60 | Legal fees 11/3/21 |
| 4 | 12/1/21 | | $7,465.51 | $0.00 | $0.00 | $7,465.51 | $0.00 | $7,465.51 | $380,741.11 | |
| 5 | 1/1/22 | | $7,614.82 | $0.00 | $0.00 | $7,614.82 | $0.00 | $7,614.82 | $388,355.93 | |
| 6 | 2/1/22 | | $7,767.12 | $0.00 | $425.00 | $8,192.12 | $0.00 | $8,192.12 | $396,548.05 | Legal fees 1/28/22 |
| 7 | 3/1/22 | | $7,930.96 | $0.00 | $1,067.70 | $8,998.66 | $0.00 | $8,998.66 | $405,546.71 | Legal fees 3/11/22 |
| 8 | 4/1/22 | | $8,110.93 | $0.00 | $17.10 | $8,128.03 | $0.00 | $8,128.03 | $413,674.75 | Legal fees 4/8/22 |
| 9 | 5/1/22 | | $8,273.49 | $0.00 | $85.00 | $8,358.49 | $0.00 | $8,358.49 | $422,033.24 | Legal fees 5/5/22 |
| 10 | 6/1/22 | | $8,440.66 | $0.00 | $1,232.50 | $9,673.16 | $0.00 | $9,673.16 | $431,706.41 | Legal fees 6/03/22 |
| 11 | 7/1/22 | | $8,634.13 | $0.00 | $346.00 | $8,980.13 | $0.00 | $8,980.13 | $440,686.54 | Legal fees 6/30/22 |
| 12 | 8/1/22 | | $8,813.73 | $0.00 | $0.00 | $8,813.73 | $0.00 | $8,813.73 | $449,500.27 | |
| 13 | 9/1/22 | | $8,990.01 | $0.00 | $0.00 | $8,990.01 | $0.00 | $8,990.01 | $458,490.27 | |
| 14 | 10/1/22 | | $9,169.81 | $0.00 | $0.00 | $9,169.81 | $0.00 | $9,169.81 | $467,660.08 | |
| As of | 10/6/22 | $0.00 | $112,657.78 | $0.00 | $5,002.30 | $117,660.08 | $0.00 | $117,660.08 | $467,660.08 | |

67