Matthew D. Resnik (Bar No. 182562)
**RHM LAW LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
Telephone: (818) 285-0100
Facsimile: (818) 855-7013
matt@RHMFirm.com

Attorneys for Creditor
Royalty Equity Lending LLC/ Bobs LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:21-bk-16674-ER |
| | |
| | Chapter 11 |
| JINZHENG GROUP (USA) LLC, | |
| | **MEMORANDUM OF POINTS AND AUTHORITIES RE MOTION FOR RELIEF FROM STAY DECLARATIONS OF ROMMY SHY AND PATRICK TOBIN, TOBIN REAL ESTATE ADVISORS, INC. AND PARDIS AKHAVAN IN SUPPORT THEREOF** |
| Debtor. | |
| | |
| | Date:  October 31, 2022 |
| | Time: 10:0 a.m. |
| | Place:  255 East Temple Street, |
| | Los Angeles, CA 90012 |
| | Courtroom 1568 |

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE; DEBTOR JINZHENG GROUP (USA) LLC; ITS ATTORNEYS OF RECORD; AND TO ALL INTERESTED PARTIES:**

Secured Creditor Royalty Equity Lending LLC/Bobs LLC ("REL") submits the following Memorandum of Points and Authorities in support of its Motion for Relief from the Automatic Stay [Dkt. *pending*] ("Motion"), seeking an order granting REL relief from the automatic stay in the instant bankruptcy case of JINZHENG GROUP (USA) LLC ("Jinzheng") pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2).

The Motion is made on the grounds that cause exists pursuant to 11 U.S.C. § 362(d)(1). In addition, relief would be appropriate under Section 362(d)(2) based on the appraisals for the subject properties as discussed below. Irrespective of relief under (d)(1) or (d)(2) cause is provided for relief from the automatic stay. In the alternative, Movant requests modification of the automatic stay to allow Movant to immediately cure the post-petition default and initiate adequate protection payments. The Motion is based on the memorandum of points and authorities below, the declarations of Rommy Shy and PATRICK TOBIN of REAL ESTATE ADVISORS, INC in support of the Motion and such other evidence as may be submitted orally or in writing to the Court at or before the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

REL seeks relief from the automatic stay under 11 U.S.C § 362(d)(1) and (d)(2) based on lack of adequate protection of its interest in the collateral set forth in the table below. A summary of the properties securing the debt is as follows:

"Properties"

| | |
|---|---|
| 31.33 acres of vacant land, 2929 Amethyst Street, E/S Sierra Street, East of Inyo Street and NEC Lincoln Park Avenue and INYO Street, Los Angeles, California<br><br>Fair Market Value as of September 8, 2022, per the appraisal obtained by the Movant:<br>**$6,800,000**<br><br>See **Exhibit "H"** to declaration of Patrick Tobin<br><br>*APN: 5209-009-001*<br>*APN 5209-005-003*<br>*APN: 5208-025-014* | 1st TD (mortgage):<br>REL<br>$9,353,009.29 (per POC No. 2-1) |

**MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF**

| | |
|---|---|
| 2526 Lincoln Park<br>Los Angeles, CA 90031<br><br>Fair Market Value as of September 8, 2022, per the appraisal obtained by the Movant:<br>**$800,000**<br><br>See **Exhibit "I"** to declaration of Patrick Tobin<br><br>*APN: 5208-025-001* | 1st TD (mortgage):<br>REL<br>$9,353,009.29 (per POC No. 2-1) |
| 2520 Linclon Park<br>Los Angeles, CA 90031<br><br><br>Fair Market Value as of September 8, 2022, per the appraisal obtained by the Movant:<br>**$1,000,000**<br><br>See **Exhibit "J"** to declaration of Patrick Tobin<br><br>*APN: 5208-025-002* | 1 st TD (mortgage):<br>REL<br>$9,353,009.29 (per POC No. 2-1) |
| **Total value of the Properties: $8,600,000** | **REL's Secured Claim: $9,353,009.29** |

The request for relief is based on traditional relief requests. REL is not adequately protected because there is no equity in the Properties and Properties are no longer necessary to an effective reorganization. As evidenced by the recent appraisal conducted by the Movant, the value of the Properties is less than the total amount of the secured debt. Movant obtained appraisal of the collateral and as of September 8, 2022, the Properties are collectively worth only $8,600,000. As such, REL's claim of no less than $9,353,009.29 exceeds the value of the Properties and therefore there is no equity in the collateral.

Moreover, REL is informed and believes that circumstances have changed since the initial proposed plan as there will be no reorganization and that the Debtor has proposed a liquidating chapter 11 plan, primarily by selling the estates largest asset. REL did not oppose the sale despite being skeptical that a sale can generate enough to pay the secured liens in full. Since no sale has been consummated and there are no pending offers committed to purchase the property, the Properties are no longer necessary to an effective reorganization. The attached appraisals provide ample proof that there is no equity in the Properties.  The property is bleeding equity of over $80,000.00 per month in interest payments.  Without a feasible reorganization as an alternative, relief from the automatic stay is warranted pursuant to Bankruptcy Code section 362(d)(2) as well.

No Payments Made on the Note Since Filing Jeopardizing Movants Security Interest - During the Bankruptcy, REL has not received a payment due under the promissory note and has not received any payment on the loan since July 2021. More importantly, the collateral securing Movant's claim has fallen into further disrepair. Any equity cushion is minimal, and the property continues to be encumbered by other creditors. The delay created by the bankruptcy filing has not preserved the status quo, but rather, diminished the value of the estate due to the ever-increasing principal balance of Movant and failure to raise enough capital to improve the property.  In short, REL is not adequately protected, and cause exists to grant REL relief from the automatic stay under 11 U.S.C § 362(d)(1). REL is facing a severe diminution in value of its interest because of this wait and see attitude that has not developed into any substantial value to the estate.

For the following reasons, Royal requests that this Court enter an order granting Royal relief from stay to enable Royal to move forward with its rights pursuant to the note and deed of trust.

## II.    __BACKGROUND__

On or about September 5, 2018, Bobs LLC made a short-term, business purpose loan to Jinzheng Group (USA) LLC ("Jinzheng" or "Borrower" or "Debtor"), the Debtor

MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF

herein, in the principal sum of $7,000,000 as capital funding for the vacant lot development project.  The loan was due April 1, 2020. A Loan Extension Agreement was entered into on April 8, 2020, which extended the note for six ("6") months as third-party funding was "imminent".

Since the initial principal sum as outlined above was provided to fund the project, and following the default post extension, the Debtors delay and request for an increase in capital funding has increased the loan balance to no less than $9,353,009.

The Promissory Note Secured By Deed of Trust, executed by Jianqing Yang, Debtor's president is attached to declaration of Rommy Shy ("Shy Declaration) as **Exhibit "A."**

The Note is secured by a first priority deed of trust encumbering the property located at *2929 Amethyst Street, Los Angeles, CA 90032* ("2929 Amethyst Property"). The Note is also cross-collateralized by a deed of trust encumbering the real properties located at *2526-2528 Lincoln Park Ave, Los Angeles, CA 90031* ("2526-2528 Lincoln Park Ave. Property); *2602 Lincoln Park Ave, Los Angeles, CA 90031*("2602 Lincoln Park Ave. Property). See **Exhibit "B"** attached to Shy Declaration[1].

Pursuant to the terms of the Note, Borrower was to repay the Loan in monthly payments of interest-only payments due and payable in consecutive monthly installments of $56,875.00 dollars on the first day of each month beginning on November 1, 2019, with a balloon payment of $7,056,875 due and payable on April 1, 2020 (the "Maturity Date").

The Debtor defaulted under the terms of the Note and Deed of Trust. They failed to make the balloon payment that became due and payable on April 1, 2020.

An accounting for the loan including all payments is attached to Shy Declaration as **Exhibit "E."**

---

[1] On December 22, 2018, Rommy Shy, the managing member of Bobs LLC, assigned the loan to Royalty Equity Lending LLC including all its rights, title and interest in all loan documents and its security interest in the collaterals securing the Loan. See **Exhibit "C"** attached to Shy Declaration.

**MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF**

With promises that the Debtor was close to receiving additional capital from its investors, Movant modified the note to allow for additional time rather than go through foreclosure.

On April 8, 2020, the parties entered into a loan extension agreement at which the maturity date for the Loan was extended an additional six ("6") months to October 1, 2020. The parties agreed all amounts due and owing from Jinzheng would balloon under the modified agreement and terms agreed to by the parties upon a breach. Under the terms of the Note and upon Borrower's failure to pay any installment or other sums as defined under the Note (i.e. property taxes on the collateralized properties) or in the event of default as defined in the Deed of Trust, or any breach of any other promise or obligation under the Note, Lender may declare the Note (including, without limitation, all fees and accrued interest) *due and payable immediately regardless of the Maturity Date.* Debtor missed several interest payments during this extension period and failed to pay property taxes. To avoid the foreclosure process Lender gave ANOTHER extension on November 25, 2020, extending the Maturity Date until June 1, 2021. At that time, Borrower had the option to extend another 6 months provided all delinquent property taxes were paid current and the Debtor would commence interest payments. Debtor failed to do either and after several documented attempts to at least secure monthly payments (which Debtor refused to pay), Lender proceeded with a Notice of Default with the intention to foreclose through Trustee sale[2].

Additionally, under the terms of the Note, Borrowers should at all times keep the mortgaged properties insured for the benefit of Movant and were required to procure and maintain or cause to be procured and maintained all insurance policies required pursuant to the Deed of Trust.  The Debtor has further breached its obligation under the Note and Deed of Trust because it has failed to provide proof of insurance coverage to Movant as required under the Note.

---

[2] On or around December 8,2021 Movant made a payment of $800,121.05 which was paid to cure the delinquency on Assessor ID No. 5209009001, 5209005003, 5208025002 and 5208025001. See **Exhibit "G"** attached to Shy Declaration.

**MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF**

**Change In Circumstances Since the Previous Relief From Stay Filing:**

This is the second motion for relief filed by REL. Movant filed its first motion for relief from automatic stay on February 24, 2022 (Docket No. 127) to prevent any further delay and loss of value to the property and to proceed under applicable nonbankruptcy law to enforce its state remedies and/or seek other relief as proper.

In its initial Motion, REL sought relief from the automatic stay on the basis that there is no equity in the Properties and that Debtor will be unable to effectively reorganize because it lacks sufficient capital. The Debtor opposed the Motion and disputed REL's valuation. Specifically, in its opposition, the Debtor noted that it purchased the 32 acres of vacant land located at 2929 Amethyst Street, Los Angeles, Ca 90031 for $18,500,000 in 2016. It was Debtor's position that an appraisal prepared by Cushman & Wakefield shortly prior to the Petition Date valued the vacant land at $23,450,000. Debtor contention was that it had proposed a viable plan, which included a new value contribution in the amount of $4 million to recapitalize the Debtor. Based on Debtor's assertions in its opposition, the court found that the fair market value at the time of the purchase[3] and the improvements since August 2016 likely increased the value of the property. As a result, the court ruled that there was likely equity in the Properties and based on the proposed plan, the Properties are necessary for an effective reorganization and denied REL's Motion.

Shortly after the court's ruling on Movant's prior Motion for Relief on May 18, 2022 (Docket No. 226), and for the third time since filing, Debtor retained new counsel who substituted into this case on June 3, 2022.[4] Subsequently, the plan of reorganization was withdrawn pursuant to the stipulation entered between the Debtor and the Official Committee of Unsecured Creditors (the "Committee") and Investment Management Company, LLC ("IMC") on June 16, 2022 (Docket No. 250).

---

[3] As a reference the Court pointed to the following quote in determining value of the property relating to what a third party would pay for the property is reasonable value "The best way to determine value is exposure to the market" *Bank of America v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 456-457.

[4] This is the third time that Debtor retained counsel. Debtor's prior counsel was substituted into this case on December 6, 2021 (Docket No. 48).

MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF

New counsel took a different course of action and proposed selling the Properties to which the liens of REL attach. REL did not oppose such a sale. REL is informed and believes that Debtor has marketed the Properties with limited success. Debtor employed *The Crem Group and Marcus & Millichap* as its real estate brokers, to assist Debtor in the marketing and sale of multiple properties including Jinzheng Properties.[5]  Debtor's application to employ real estate broker was unopposed and the Properties were listed for sale as of June 23, 2022. According to the terms of the listing agreement the listing period is 180 days from the date of filing the application to employ real estate broker. Such period is about to expire on or about December 20, 2022. See **Exhibit "K"** attached to declaration of Pardis Akhavan. However, after almost 4 months since the Properties were listed, there is clearly little interest in the property despite the brokers expertise in sales of vacant properties. The properties were listed for sale, in an unorthodox manner, without an actually selling price listed. The motion candidly admitted that the properties offer unique opportunities and challenges for developers. REL made the loan with the intent that Debtor would use loan proceeds to entitle the property for the construction of a housing subdivision. Over four ("4") years later, Debtor has not only downsized the scope and financial allure of the project but has also failed to achieve the entitlement for said downsized project. This modification to the project which was done without REL's consent or knowledge at the time significantly impacts the financial viability of that future development.

REL remains concerned that based on the lack of interest in the properties and what appears to be a difficult environment for sale of these types of properties, REL is likely no longer adequately protected through its equity in the property and there is apparently no reorganization of the property to pay off the secured lien currently held by REL. The housing market and home values are declining currently due to fears of impending

---

[5] The Properties include approximately 30 acres of undeveloped land in a single parcel at 2929 Amethyst St. As of December 2021, Royalty Equity Lending LLC asserted a $9,353,009.29 secured claim, secured by 2929 Amethyst (APN 5209-009-001), a triplex at 2526-28 Lincoln Park Ave. (APN 5208-025-001), a duplex at 2520-22 Lincoln Park Ave. (APN 5208-025-002), land at 2602 Lincoln Park Ave, (APN 5208-025-014) and land at 2600 Sierra Street (APN 5209-005-003).

**MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF**

recession and much higher interest rates which are impediments to a financially feasible development of the parcels.

## ARGUMENT

**A. The Court Should Grant Relief From The Automatic Stay Pursuant to 11 U.S.C Section 362 (d) (1).**

Movant now seeks relief from the automatic stay provisions of 11 U.S.C Section 362 so that it may proceed under applicable nonbankruptcy law to enforce its remedies as governed by the note and deed of trust. Section 362(d)(1) enables a creditor to obtain an order terminating the automatic stay to pursue foreclosure proceedings against estate property "for cause."

The "cause" explicitly referenced in § 362(d)(1) is lack of adequate protection, but it is only an example, rather than the exclusive grounds for relief, under § 362(d)(1) *Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 435 (9th Cir. BAP 1985).  What constitutes adequate cause to terminate the automatic stay is determined on a case-by-case basis. *Delaney-Morin v. Day (In re Delaney-Morin)*, 304 B.R. 365, 369 (9th Cir. BAP 2003) (citing *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985)). An insufficient equity cushion may support a finding that a secured creditor is not adequately protected. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1401 (9th Cir. 1984). An equity cushion of between 10% and 20% of the total value of the collateral may be adequate. *Id*.[6]

In the instant case, "cause" exists for the Court to grant relief from stay to REL under § 362(d)(1) for a number of reasons:

///

///

///

///

---

[6] Movant reserves the right to supplement this Motion as further information becomes available that may provide further cause for the relief requested by this Motion.

MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF

**i. The original note matured almost two years ago, and the equity cushion has been squeezed by the monthly interest delinquency of over $87,000.00 added to the balance each month while in Bankruptcy.**

Since the note initially ballooned, the Debtor's refinance efforts have failed and have not had enough interest to sell the property. In addition, the balance on the note continues to increase as there have been no payments made since July 2021. Since there has not been any evidence of investment into the actual property by the Debtor there are likely increased costs and expenses related to the property. In addition, any prefiling equity has been squeezed by over fifteen months of no payments furthering the basis for cause exists as REL is without adequate protection.

Movant has provided the following appraised values by Tobin Real Estate Advisors Inc. , Patrick Tobin, MAI, Principal for the properties secured by Movants Deed of Trust:

**2929 Amethyst Property**

Taking into account REL lien (securing debt of over $9 million) and the recent $8,600,000 appraised value of the 2929 Amethyst Property, there is 0% equity cushion.

**2526-2528 Lincoln Park**

Taking into account REL lien (securing debt of over $9 million) and the $800,000 appraised value of the 2526-2528 Lincoln Park Property, there is 0% equity cushion.

**2520-2522 Lincoln Park**
**Los Angeles, CA 90031**

Taking into account REL lien (securing debt of over $9 million) and the $1,000,000 appraised value of the 2520-2522 Lincoln Park Property, there is 0% equity cushion.

The lack of equity coupled with the reasons found in the Court's initial denial of the relief from stay (without prejudice)[7] provides the cause to move forward and obtain relief from stay. While the Debtor appreciates this Court's analysis as to the value of the 2929

---

[7]  Per the May 17, 2022 tentative adopted by the Court - "Based upon Debtor's substantial equity in the Properties and the necessity of the Properties for an effective reorganization, REL's requests for stay relief under §362(d)(1)(and (d)(2) are both denied.

Amethyst Property in its ruling on Movant's first Motion for Relief based on the purchase price paid by Debtor in August 2016 to buy the vacant land, Movant's position remains that Debtor clearly overpaid when it first purchased the vacant land. Unfortunately, this vacant land cannot be used for what the initial investment was initially intended; a large scale development project. The project was just too ambitious and riddled with entitlement and permitting restrictions.

Most importantly, with the diminution in value and the ever increasing principal amount owed to REL based on Jinzheng failure to make the monthly payments as required under the Note, REL is no longer adequately protected and appears to be facing a deficiency if they foreclose on the Properties. This is a serious concern for REL as the interest only monthly payment on the Note is $87,216.45.  There have been no monthly payments made on this loan since July 2021.

Without any substantial progress with respect to the sale of the property and the inability to reorganize, the NOTE which has ballooned along with the monthly interest delinquency provides grounds for relief.


**ii.  Absent a substantial capital infusion, the Debtor cannot offer any form of Adequate Protection payments to Movant:**

Debtor filed the instant bankruptcy case on August 24, 2021. It's now on its third counsel. Since filing this case, Debtor first filed its plan of reorganization on March 14, 2022 (Docket No. 158) which was later withdrawn on June 16, 2022, pursuant to the order approving the stipulation entered between the Debtor, the Committee and IMC (Docket No. 253).  REL is informed and believes that there will be no reorganization and that the Debtor intends to propose a liquidating chapter 11 plan.

Additionally, based on the most current Monthly Operating Reports, for the months of June, July and August, there appears to be little ability that such payments can be afforded by the Debtor. See **Exhibit "L"** attached to declaration of Pardis Akhavan. The

MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF

Debtor does not appear to be in the financial position nor condition to provide for a cure to the default that followed them into the Chapter 11 bankruptcy.

Therefore, it is evident that the Debtor does not appear to be in the financial position nor condition to provide for a cure to the default that followed them into the Chapter 11 bankruptcy. As such cause exists to grant relief.

### iii. The Debtor has Failed to Maintain its Fiduciary Commitment and Conserve Property in its Possession:

In the Chapter 11 context, the debtor-in-possession is a fiduciary of the estate, the creditors, and the court. As a fiduciary, the Debtor is obligated to protect and conserve property in her possession. See *Devers v. Bank of Sheridan* (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985).

Despite the yeoman efforts of new counsel for the Debtor, there has been little done with respect to the Properties and the maintenance thereof. It is a vacant land. Admittedly there is not much to maintain. However, at one point in time the property was preserved by the improvements and the progress towards obtaining entitlements for a large scale development project. With the sale of the Properties, the Debtor is no longer required to continuously monitor the progress of the development, including but not limited to permitting and entitlements. Permits expire. Entitlements have reserved deadlines. Absent substantial involvement by the Debtor, the property has remained stale.

REL is most concerned about the state of affairs with respect to the property. Apparently when the appraiser for REL, Patrick Tobin, went to the properties to appraise their values, the 2602 Lincoln Park property was completely razed to the ground[8]. This waste of collateral without the Court's and certainly without REL's permission has jeopardized REL's claim and further diminished the overall equity on the property.

---

[8] Debtor has not mentioned any intention with this property and the Application to Employ Stephen Eng as Property Manager for the Debtor and Debtor in Possession filed on July 18, 2022 and approved on September 6, 2022 fails to include this property. Prior to filing and at the time of REL note and deed of trust, this property was a free standing building.

**MEMORANDUM OF POINTS AND AUTHORITIES RE MOTION FOR RELIEF**

Lastly, the Debtor has a duty to segregate the post-petition rents received from the Properties as they are Movant's cash collateral. See 11 U.S.C. § 363(c)(4). Movant has not received evidence that Debtor has properly segregated income, has failed to define where revenue is generated and there is absolutely no evidence that the property has been maintained and preserved for the benefit of the estate. In fact, apparently the opposite is true as explained above with respect to the total destruction of 2602 Lincoln Park.

### iv. The Property Has not been Properly Permitted, Insured nor Bonded:

The Debtor has been overwhelmed by its own ambition to create a large subdivision without adequate capitalization and clearly under insured for completion. As a result, the properties were listed for sale. In the absence of the property protections such as insurance coverage or some form of bond to complete the project, it is clear that Movant is not adequately protected for contingencies. If a calamitous insurance event occurs, the bare collateral securing the amounts due to Movant could be destroyed. See *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr.S.D.N.Y. 1994) (holding that a secured creditor lacks adequate protection if there is a threat of a decline in the value of the property, which includes failure to maintain property insurance). Despite the Amethyst lots being vacant, the funds provided by REL were allegedly used to improve the property and provide a footprint for the eventual development. These improvements have largely been diminished and if not outdated by the sheer passage of time without proper maintenance on the property. This failure to protect the improved state of the property amounts to waste.

The Debtor has the burden of proving that Movant is adequately protected. The Debtor has failed to sustain its burden since the filing of the bankruptcy.  Based on the foregoing, cause exists to terminate the automatic stay under § 362 (d)(1).

///

///

///

///

**B.  The Court Should Grant Relief From The Automatic Stay Pursuant to 11 U.S.C Section 362 (d) (2).**

Title 11 U.S.C. § 362(d)(2) states, in pertinent part, as follows:

On request of a party in interest and after notice of the hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

    ….

    (2) with respect to a stay of an act against property under subsection (a) of this section, if—

        (A) the debtor does not have any equity in such property; and

        (B) such property is not necessary to effective reorganization.

11 U.S.C. § 362(d)(2).

While the movant has the burden of establishing the lack of equity, the debtor has the burden to show "all other issues," including that the property is necessary to an effective reorganization. *See* 11 U.S.C. § 362(g). Property is necessary to an effective reorganization only where there is a "reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 376 (1988) (citation omitted).

"Equity" is defined as "the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984). In determining whether equity exists in the property for purposes of section 362(d)(2), the court evaluates the value of the property as against all encumbrances, not just the liens of the moving party seeking relief from stay. *Sun Valley Newspapers, Inc., v. Sun World Corp. (In re Sun Valley Newspapers, Inc.)*, 171 B.R. 71, 75 (9th Cir. BAP 1994), citing *Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir. 1984).

Based on current available information, the estimated liens, and encumbrances against the Properties (as identified above as "Jinzheng Properties") show little to no demonstrable equity in the property. Any equity for 2602 Lincoln Park has been eviscerated. With a significant monthly interest payment that is not currently being paid, the equity

position, if any, has been delayed by the lack of interest in the property, the Debtor's pre filing delays and likely mismanagement upon filing the case.

Based on the Debtor's history of failure to pay mortgage obligations, the Debtor's inability to self-finance the projects and to maintain a credible development plan, Movant anticipates that the property will require extensive rehabilitative maintenance.

Moreover, the Debtor has proposed what amounts to a liquidation plan. A liquidation plan would require an independent third party purchasing the assets of the Debtor. It is unfortunate that there has been little to no interest in the Amethyst lots which makes up the largest portion of debt owed by the Debtor.  Debtor now has the burden to show liquidation is a legitimate chapter 11 purpose and to satisfy its burden in the event of liquidation, the Debtor should show that it is making progress toward an effective liquidation. *In re EM Lodgings, LLC*, 580 B.R. 803, 814 (Bankr. C.D. Ill. 2018).

As of the date of this Motion, the Debtor is on its third counsel, management has changed hands and not a single member of management has gone through any form of examination. There remains little if no information provided outside of the bare monthly operating reports. Although Debtor listed the Properties for sale in June 2022, there has been no legitimate offer on the Properties, the listing period is about to expire without reasonable progress and one of the properties securing the collateral has been destroyed. In the interim, costs continue to accrue on the loan at the expense of the collateral and REL's security interest.

///
///
///
///
///
///
///
///

MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF

### III.    <u>CONCLUSION</u>

Based on the foregoing, Movant requests the Court to terminate the automatic stay as to the Properties so that Movant may enforce its security interest and pursue its remedies under state law, including, but not limited to, commencing, continuing, and completing the foreclosure process.

WHEREFORE, Movant respectfully prays for an Order of this Court as follows:

1.  Terminating the automatic stay of 11 U.S.C. 362, as it applies to the enforcement by Movant of all of its rights in the Properties under the deeds of trust;

2.  For such other and further relief as the Court deems just and proper.

Dated:  October 10, 2022                              **RHM LAW LLP**

                                         **By:** _____/s/ Matthew D. Resnik_____
                                                      Matthew D. Resnik

                                                      *Attorney for Secured Creditor*
                                                      Royal Equity Lending LLC

## DECLARATION OF ROMMY SHY

I, Rommy Shy, declare as follows:

1.  I am the sole Managing Member of Royalty Equity Lending LLC, the creditor in this case ("Creditor"). I am over the age of eighteen (18).  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.  On or about September 5, 2018, Bobs LLC made a short-term, business purpose loan to Jinzheng Group (USA) LLC ("Jinzheng" or "Borrower" or "Debtor"), the Debtor herein, in the principal sum of $7,000,000.  A true and correct copy of the Note is attached hereto as **Exhibit "A."**

3.  The Note is secured by a first priority deed of trust encumbering the property located at *2929 Amethyst Street, Los Angeles, CA 90032* ("2929 Amethyst Property"). The Note is also cross-collateralized by a deed of trust encumbering the real properties located at *2526-2528 Lincoln Park Ave, Los Angeles, CA 90031* ("2526-2528 Lincoln Park Ave. Property); *2602 Lincoln Park Ave, Los Angeles, CA 90031*("2602 Lincoln Park Ave. Property). True and correct copies of the deeds of trust are attached hereto as **Exhibit "B."**

4.  On December 22, 2018, I assigned the loan to Royalty Equity Lending LLC including all its rights, title and interest in all loan documents and its security interest in the collaterals securing the Loan. A true and correct copy of the assignment is attached hereto as **Exhibit "C."**

5.  Pursuant to the terms of the Note, Borrower was to repay the Loan in monthly payments of interest-only payments due and payable in consecutive monthly installments of $56,875 dollars on the first day of each month beginning on November 1, 2019, with a balloon payment of $7,056,875 due and payable on April 1, 2020 (the "Maturity Date").

6.  The Debtor defaulted under the terms of the Note and Deed of Trust. They failed to make the balloon payment that became due and payable on <u>April 1, 2020.</u>

MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF

7.      The loan was originally due April 1, 2020. A Loan Extension Agreement was entered into on April 8, 2020, which extended the note for six ("6") months to October 1, 2020, as third-party funding was "imminent". A true and correct copy of the extension agreement is attached hereto as **Exhibit "D."**

8.      Since the initial principal sum as outlined above was provided to fund the project, and following the default post extension, the Debtor's delay and request for an increase in capital funding has increased the loan balance to over $9,353,009.  A true and correct copy of my accounting for the loan including all payments is attached hereto as **Exhibit "E."**

9.       With promises that the Debtor was close to receiving additional capital from its investors, the note was modified to allow for additional time rather than go through foreclosure.

10.      The parties agreed all amounts due and owing from Jinzheng would balloon under the modified agreement and terms agreed to by the parties upon a breach. Under the terms of the Note and upon Borrower's failure to pay any installment or other sums as defined under the Note (i.e. property taxes on the collateralized properties) or in the event of default as defined in the Deed of Trust, or any breach of any other promise or obligation under the Note, Lender may declare the Note (including, without limitation, all fees and accrued interest) *due and payable immediately regardless of the Maturity Date.*

11.      Debtor missed several interest payments during this extension period and failed to pay property taxes. In order to avoid the foreclosure process Lender gave ANOTHER extension on November 25, 2020, extending the Maturity Date until June 1, 2021. A true and correct copy of the second extension agreement is attached hereto as **Exhibit "F."**

12.      At that time, Borrower had the option to extend another 6 months provided all delinquent property taxes were paid current and the Debtor would commence interest payments. Debtor failed to do either and after several documented attempts to at least

**MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF**

secure monthly payments (which Debtor refused to pay), Lender proceeded with a Notice of Default with the intention to foreclose through Trustee sale.

13.    On or around December 8, 2021, REL made a payment of $800,121.05 which was paid to cure the delinquency on Assessor ID No. 5209009001, 5209005003, 5208025002 and 5208025001. A true and correct copy of the receipts of payment is attached hereto as **Exhibit "G."**

14.    Additionally, under the terms of the Note, Borrower should at all times keep the mortgaged properties insured for the benefit of Movant and were required to procure and maintain or cause to be procured and maintained all insurance policies required pursuant to the Deed of Trust.  The Debtor has further breached its obligation under the Note and Deed of Trust because it has failed to provide proof of insurance coverage to Movant as required under the Note.

15.    As a result of the Debtor's conduct and failure to cure their breach, the Movant filed its initial motion for relief from automatic stay to prevent any further delay and loss of value to the property on February 24, 2022 (Docket No. 127).

16.    This is the second motion for relief filed by REL. In its initial Motion, REL sought relief from the automatic stay on the basis that there is no equity in the Properties and that Debtor will be unable to effectively reorganize because it lacks sufficient capital.

17.    The Debtor opposed the Motion and disputed REL's valuation. Debtor's contention was that it had proposed a viable plan, which included a new value contribution in the amount of $4 million to recapitalize the Debtor. Based on Debtor's assertions in its opposition, the court found that the fair market value at the time of the purchase and the improvements since August 2016 likely increased the value of the property. As a result, the court ruled that there was likely equity in the Properties and based on the proposed plan, the Properties are necessary for an effective reorganization and denied REL's Motion.

18.    Shortly after the court's ruling on Movant's initial Motion for Relief on May 18, 2022 (Docket No. 226), and for the third time since filing, Debtor retained new counsel who substituted into this case on June 3, 2022. Subsequently, the plan of reorganization

was withdrawn pursuant to the stipulation entered between the Debtor and the Official Committee of Unsecured Creditors (the "Committee") and Investment Management Company, LLC ("IMC) on June 16, 2022 (Docket No. 250).

19.    New counsel took a different course of action and proposed selling the Properties to which the liens of REL attach. REL did not oppose such a sale. REL is informed and believes that Debtor has marketed the Properties with limited success.

20.    According to the terms of the listing agreement the listing period is 180 days from the date of filing the application to employ real estate broker. Such period is about to expire on or about December 20, 2022.

21.    However, after almost 4 months since the Properties were listed, there is clearly little interest in the property despite the brokers expertise in sales of vacant properties. The properties were listed for sale, in an unorthodox manner, without an actually selling price listed.

22.    REL remains concerned that based on the lack of interest in the properties and what appears to be a difficult environment for sale of these types of properties, REL is likely no longer adequately protected through its equity in the property and there is apparently no reorganization of the property to pay off the secured lien currently held by REL.

23.    Thus, I respectfully request that the Court grant this motion and lift the automatic stay and allow Creditor to proceed under applicable nonbankruptcy law to enforce its state remedies and/or seek other relief as proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Monday, October 10, 2022, at _____, California.

By: _____
        See Next Page
        **Rommy Shy**
        *Declarant*

**MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF**

was withdrawn pursuant to the stipulation entered between the Debtor and the Official Committee of Unsecured Creditors (the "Committee") and Investment Management Company, LLC ("IMC) on June 16, 2022 (Docket No. 250).

19.    New counsel took a different course of action and proposed selling the Properties to which the liens of REL attach. REL did not oppose such a sale. REL is informed and believes that Debtor has marketed the Properties with limited success.

20.    According to the terms of the listing agreement the listing period is 180 days from the date of filing the application to employ real estate broker. Such period is about to expire on or about December 20, 2022.

21.    However, after almost 4 months since the Properties were listed, there is clearly little interest in the property despite the brokers expertise in sales of vacant properties. The properties were listed for sale, in an unorthodox manner, without an actually selling price listed.

22.    REL remains concerned that based on the lack of interest in the properties and what appears to be a difficult environment for sale of these types of properties, REL is likely no longer adequately protected through its equity in the property and there is apparently no reorganization of the property to pay off the secured lien currently held by REL.

23.    Thus, I respectfully request that the Court grant this motion and lift the automatic stay and allow Creditor to proceed under applicable nonbankruptcy law to enforce its state remedies and/or seek other relief as proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Monday, October 10, 2022, at _____Los Angeles_____, California.

By: _____
        **Rommy Shy**
        *Declarant*

**MEMORANDUM OF POINTS
AND AUTHORITIES RE
MOTION FOR RELIEF**

## <u>DECLARATION OF PATRICK TOBIN</u>

I, Patrick Tobin, declare as follows:

1. I am an Accredited Senior Appraiser (ASA) with Tobin Real Estate Advisors, Inc. My California Certified General license number is 30004963-005 with an Expiration of August 24, 2023. I am the principal at Tobin Real Estate Advisors, Inc. I am over the age of eighteen (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2. My offices are located at 180 North Stetson Avenue, Suite 3500, Chicago, Illinois, 60601. I have over 25 years of experience in commercial real estate appraisal and valuation consulting services. My Curriculum Vitae is attached with the appraisal representing a wide diversity of unique properties.

3. Rommy Shy, Managing Member of Creditor Royalty Equity Lending LLC (hereinafter "Creditor" or "REL"), retained me to prepare a value appraisal report of the following properties:

i.    2929 Amethyst Street, Los Angeles, CA 90032 (hereinafter ("Amethyst Property");

ii.   2526 Lincoln Park, Los Angeles, CA 90031(hereinafter "2526 Lincoln Park Property");

iii.  2520 Lincoln Park, Los Angeles, CA 90031 (hereinafter "2520 Lincoln Park Property").

4. I have no preexisting relationship with the Debtor. I do not own an interest in the Properties and have not been offered an interest in it.

5. I thereafter prepared the report which values the Amethyst Property at $6,800,000, as of September 8, 2022. Attached hereto as **Exhibit "H"** is a true and correct copy of the appraisal report.

1   6.  I also prepared the report which values the 2526 Lincoln Park Property at

2  $800,000, as of September 8, 2022. Attached hereto as **Exhibit "I"** is a true and correct

3  copy of the appraisal report.

4   7.  Lastly, I prepared the report which values the 2520 Lincoln Park at

5  $1,000,000, as of September 8, 2022. Attached hereto as **Exhibit "J"** is a true and correct

6  copy of the appraisal report.

7   8.  On or around September 8, 2022, I went to look at the 2602 Lincoln Avenue

8  property. I was surprised to see the building was demolished. I did not value that property.

9   9.  In the course of preparing the appraisal reports, I followed the practices and

10  procedures required of my profession in determining the value of real property.

11

12   I declare under penalty of perjury pursuant to the laws of the United States of

13  America that the foregoing is true and correct.

14

15   Executed on Monday, October 10, 2022, at _____, in the State of

16  _____.

17

              See Net Page
           _____

18           **Patrick Tobin**

19           *Declarant*

20

21

22

23

24

25

26

27

28

6.      I also prepared the report which values the 2526 Lincoln Park Property at $800,000, as of September 8, 2022. Attached hereto as **Exhibit "I"** is a true and correct copy of the appraisal report.

7.      Lastly, I prepared the report which values the 2520 Lincoln Park at $1,000,000, as of September 8, 2022. Attached hereto as **Exhibit "J"** is a true and correct copy of the appraisal report.

8.      On or around September 8, 2022, I went to look at the 2602 Lincoln Avenue property. I was surprised to see the building was demolished. I did not value that property.

9.      In the course of preparing the appraisal reports, I followed the practices and procedures required of my profession in determining the value of real property.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on Sunday, October 09, 2022, at _C Hi ego_, in the State of _ILLINOIS_.

_Patrick Lopez_

**Patrick Tobin**
*Declarant*

# DECLARATION OF PARDIS AKHAVAN

I, Pardis Akhavan, declare as follows:

1.    I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto.  Where facts are alleged upon information and belief, I believe them to be true.

2.    I am an attorney at law licensed in the State of California.  I am admitted to practice in all the Courts of the State of California and am admitted to practice before the District Court of the Central District of California, and before this Court

3.    I am an associate attorney at RHM LAW LLP (the "Firm").

4.    The Firm is counsel of record for Royal Lending Equity LLC, the "Movant" herein.

5.    Attached hereto as **Exhibit "K"** is a true and correct copy of the listing agreement that I downloaded from PACER.

6.    Attached hereto as **Exhibit "L"** is true and correct copies of Monthly Operating Reports, for the months of June, July, and August.


I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed this October 7, 2022, at Encino, California.

By:    _____/s/ Pardis Akhavan_____
Pardis Akhavan
*Declarant*

# EXHIBIT A

# NOTE SECURED BY A DEED OF TRUST

Loan Number: ███████518          Date: 09/04/2018                                    Calabasas, California

2929 Amethyst Street Los Angeles CA 90032
Property Address
A.P.N.: 5209-009-001

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $7,000,000.00 (this amount will be called "principal"), plus interest, to the order of BOBS LLC, a Nevada Single Purpose Limited Liability Company as to an undivided 100.000% interest (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on the date of funding, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are  ☑ Interest Only   ☐ Fully Amortized   ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 5 | Monthly beginning November 1, 2019 | 9.75% | $56,875.00 |
| 1 | April 1, 2020 | 9.75% | $7,056,875.00 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on 04/01/2020 (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to BOBS LLC, 600 S. Spring St. Unit# Office Los Angeles CA 90014, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge For Overdue Payments. If I do not pay the full amount of each monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.000% of my overdue payment or U.S. $5,687.50, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than 10 days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

(B) Default. If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(C) Payment of Note Holder's Costs and Expenses. If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

(D) Remedy in Event of Default. Upon the occurrence of an Event of Default, the entire balance of principal, together with all accrued interest, shall, at the option of the Lender, without demand or notice, immediately become due and payable. Upon the occurrence of an Event of Default (and for a period of no less than 6 months after such Event of Default may be remedied), the entire balance of principal, together with all accrued interest thereon, shall bear interest at the note rate plus five percent (5.000%) the ("Default Rate"). No delay or omission on the part of the Lender in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right.

The occurrence of (but not limited to) any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

a) Default in the payment of principal or interest when due pursuant to the terms hereof; or

b) The occurrence of an Event of Default under the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing this Note (all such documents, together with this Note, constituting the "Loan Documents").

c) A violation of any provisions of the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing ANY Note (all such documents, together with this Note, constituting the "Loan Documents") on ANY property secured by this Lender.

## 5.  BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first .8 year(s) as follows: Prepayment Penalty is equal to nine (9) months guarantee interest on the original principal balance. Prepayment penalty is waived after the first nine (9) months of the loans term.

## 6.  BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7.  RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8.  THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for less than the encumbrances for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

Jinzheng Group (USA) LLC, a California Limited Liability Company

_____   9-5-18
Borrower     Jianqing Yang, President          Date

_____
Borrower                                  Date

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:


all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

_____    _____

_____    _____


**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

## ADDENDUM TO
## PROMISSORY NOTE

THIS ADDENDUM TO PROMISSORY NOTE (this "Addendum") is made as of September 5, 2018, between JINZHENG GROUP (USA) LLC, a California limited liability company ("Borrower"), 100 East Huntington Drive, Suite 207, Alhambra, CA 91801, and BOBS, LLC, a Nevada limited liability company ("Lender"), 600 South·Spring Street, Unit # Office, Los Angeles, CA 90014 with reference to the following facts:

### RECITALS

A.    Whereas, Borrower is the owner of the real property commonly described as 2929 Amethyst Street, Los Angeles, CA 90032, Los Angeles County Assessor's Parcel Number, 5209-009-001, and legally described as:

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

BEING A PORTION OF THE CITY LANDS OF LOS ANGELES, CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGES 504 AND 505 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:
BEGINNING AT THE SOUTHWEST CORNER OF ROSE HILL COURT, AS PER MAP RECORDED IN BOOK 8 PAGE 2 OF MAPS; THENCE SOUTH 20° 07' WEST ALONG THE EAST LINE OF ELA HILLS TRACT, AS PER MAP RECORDED IN BOOK 14 PAGE 3 OF MISCELLANEOUS RECORDS; 32 CHAINS, MORE OR LESS, TO AN ANGLE POINT IN SAID EAST LINE; SAID ANGLE POINT BEING THE SOUTHWEST CORNER OF THE LAND CONVEYED TO L. T. GARNSEY, BY DEED RECORDED IN BOOK 428 PAGE 178 OF DEEDS; THENCE SOUTH 89° 45' EAST ALONG THE SOUTH LINE OF THE LAND DESCRIBED IN THE ABOVE MENTIONED DEED TO WILLIAM HOLGATE'S GLEN TERRACE TRACT, AS PER MAP RECORDED IN BOOK 17 PAGE 91 OF SAID MISCELLANEOUS RECORDS; THENCE NORTH AND EAST ALONG THE LINE OF SAID WILLIAM HOLGATE'S GLEN TERRACE TRACT, AND THE NORTH LINE OF THE LAND CONVEYED TO MRS. ELIZA KIMBALL, BY DEED RECORDED IN BOOK 131 PAGE 233 OF DEEDS, TO THE WEST LINE OF TRACT 7972, AS PER MAP RECORDED IN BOOK 102 PAGES 3 TO 7 INCLUSIVE OF MAPS; THENCE NORTHWEST AND NORTHEAST ALONG THE WESTERLY LINE OF SAID TRACT 7972, TO THE SOUTHEAST CORNER OF ROSE HILL COURT ABOVE MENTIONED; THENCE NORTHWEST ALONG THE SOUTH LINE OF SAID ROSE HILL COURT TO THE POINT OF BEGINNING.
EXCEPT ALL OIL, GAS, WATER AND MINERAL RIGHTS WITHOUT HOWEVER THE RIGHT TO USE THE SURFACE OF SAID LAND FOR THE EXTRACTION OF SAID OIL, GAS WATER AND MINERALS AS

RESERVED BY THE CITY OF LOS ANGELES, IN DEED RECORDED
SEPTEMBER 26, 1969 AS INSTRUMENT NO. 2822.

("Subject Property"); and

B.    Whereas, the Subject Property is presently undeveloped, and is presently zoned A1-
1D, under Section 12.05 of the Los Angeles City Municipal Code; and

C.    Whereas, Borrower intends to apply for a subdivision of the Subject Property
according to the provisions of the Subdivision Map Act, *Government Code § 66410, et seq.*, and
any local ordinances promulgated thereunder; and

D.    Whereas, Borrower intends to apply for a zoning change and/or zoning variance to
allow development of the Subject Property; and

E.    Borrower now needs financing to  finance the subdivision and rezoning of the
Subject Property; and

F.    Financing for the Projects shall be provided to the Borrower by a loan from
the Lender in the original principal amount of Seven Million Dollars ($7,000,000)
("Lender Loan") which is evidenced by a Promissory Note ("Promissory Note");
and

G.    Borrower shall be responsible, during the subdivision and rezoning process to
provide funds if and  as need to pay for engineering and geological studies,
governmental fees and charges and other expenses; and

H.    The Lender and Borrower desire to enter into this Addendum to provide for the
disbursement of the Lender Loan, and to preserve the Lender's rights to subdivide and rezone the
Subject Property in the event of a default by the Borrower.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is
hereby acknowledged, the parties hereby agree as follows:

1.    Of the Seven Million ($7,000,000) Lender Loan, Three and One-Half
Million Dollars ($3,500,000) shall be retained by the Lender, and shall only be
disbursed in accordance with the terms of this Addendum.

2.    Definitions. The following terms shall have the following meanings.

a.    "Contracts" shall mean any and all contracts entered into between the Borrower and
Vendors, including, but not limited to engineers and geologists that may be necessary to
accomplish the Subdivision/Rezoning of the Subject Property, including all exhibits and
attachments thereto, as the same may be amended from time to time with the prior consent of the
Lender

2

b.    "Impositions" shall mean all (i) real estate and personal property taxes and other taxes and assessments, water and sewer rates and charges and all other governmental charges and any interest or costs or penalties with respect thereto and charges for any easement or agreement maintained for the benefit the real property ("Real Property"), general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which, with respect to any of the foregoing, at any time may be assessed, levied or imposed upon the Real Property, and (ii) other taxes, assessments, fees and governmental charges levied, imposed or assessed upon or against Borrower or any of its properties.

c.    "Lender" shall mean the Bobs, LLC, a Nevada limited liability company, and any assignee of or successor to its rights, powers and responsibilities.

d.    "Subdivision/Rezoning" means any and all efforts to subdivide the Subject Property in accordance with the terms of the Subdivision Map Act, and any local ordinances promulgated thereunder, as well as any all efforts to rezone and/or obtain a zoning variance of the Subject Property to allow for more intensive development than is currently permitted under Los Angeles City Zone A1-1D.

e.    "Vendor" means a provider of goods and/or services that contribute in any way to the Subdivision/Rezoning of the Subject Property, and may include, but are not limited to lawyers, engineers, geologists, and/or contractors.

f.    "Work" means means to engage, suffer, or permit to work in any and all efforts to subdivide the Subject Property in accordance with the terms of the Subdivision Map Act, and any local ordinances promulgated thereunder, as well as any all efforts to rezone the Subject Property to allow for more intensive development than is currently permitted under Los Angeles City Zone A1-1D.

3.    Draw Procedures. The Lender Loan proceeds shall be disbursed as follows:

a.    The Borrower shall submit to the Lender a disbursement request ("Disbursement Request") in a form acceptable to the Lender, setting forth a detailed breakdown of the disbursement requested (the "Draw Summary"). Concurrently with the Disbursement Request, Borrower shall also furnish to the Lender a copy of the documentation indicating the Work complete pertaining to the Disbursement Request. Upon such request, the Lender may verify the Work that has been completed. If the Lender determines that Work is proceeding diligently and if all conditions to such disbursement shall have been fulfilled, the Lender shall authorize the disbursement in a manner that has been mutually agreed to by the parties. All disbursements shall be made approximately forth eight (48) hours during regular business days after receipt of all information required by the Lender to approve the requested disbursements. The Lender may also require verification of the information contained in the Disbursement Request and may require separate unconditional lien waivers and releases from all Vendors covering all prior disbursements. Notwithstanding the foregoing, each Disbursement Request shall be subject to the approval of the Lender, with respect to the Lender Loan, in accordance with this Agreement.

3

All Disbursement Requests shall be directed to the Lender at the address indicated below, and to La Mesa Fund Control, 8419 La Mesa Blvd C, La Mesa, CA 91942, and to Joe Zacharia, Open Door Lending, 24013 Ventura Blvd., Ste. 200, Calabasas, CA 91302.

b.  Borrower shall pay all reasonable costs and expenses incurred by the Lender hereunder upon demand by the Lender. After demand on the Borrower, the Lender may elect to authorize disbursements of the proceeds of the Lender Loan to pay, as and when due, any unpaid or unsatisfied fees, costs or other amounts owing hereunder to the Lender.

c.  In the event the Lender disapproves any portion of the amount requested by Borrower in a Disbursement Request, the Lender shall promptly notify Borrower of the disapproved amount and the reason for such disapproval.

d.  In the event any item shall be disapproved or deemed disapproved, the representatives of the Borrower and the Lender shall meet promptly and in good faith to attempt to resolve the matter to their mutual satisfaction.

4.  Disbursement Amounts.

a.  The aggregate amount advanced shall be limited to the amount shown in "2029 Amethyst Estimated Costs," attached hereto as Exhibit A.

b.  Subject to the terms of this Agreement, the Lender will authorize disbursements of the Lender Loan to defray actual and reasonable costs incurred by Borrower and approved by the Lender for Work performed.

c.  Cost Information. If the Borrower becomes aware of any change in the approved costs set forth in the "2029 Amethyst Estimated Costs" which would increase, change, or cause a reallocation of the costs as shown on the "2029 Amethyst Estimated Costs," the Borrower shall immediately notify the Lender in writing and promptly submit a proposed revised "2029 Amethyst Estimated Costs" to the Lender for approval. The Borrower shall have no right to receive further disbursements of the Lender Loan unless and until the revised "2029 Amethyst Estimated Costs" is approved by the Lender, which approval shall not be unreasonably withheld. The limit of financing to be provided by Lender pursuant to this Addendum shall be limited to Three and One-Half Million Dollars ($3,500,000).

d.  Conditions Precedent to Draw. The Lender shall determine whether or not the conditions precedent to its obligation to advance its loan have been satisfied or whether or not to waive, in its sole discretion, any condition precedent to its obligation to advance the Lender Loan which the Lender, or designee, determines has not been satisfied. As conditions precedent to approval of any Disbursement Request, each of the following conditions shall have been fulfilled to the satisfaction of the Lender, as applicable:

1.  All representations and warranties contained in this Agreement and the Lender Documents shall be true and correct in all material respects;

2.  All insurance coverage required to be maintained by the Borrower under the Lender

Documents or by law shall be in full force and effect;

3.  The Lender Documents shall be in full force and effect;

4.  No Event of Default under the Lender Documents shall have occurred and be continuing;

5.  Except to the extent waived the Lender, or designee, in their sole discretion, all governmental consents, licenses, permits and all other authorizations or approvals then required with respect to the Subdivision/Rezoning of the Subject Property shall have been obtained and/or issued, or will be timely obtained;

6.  The Lender shall have received copies of notarized partial lien waiver forms executed by the Vendors, specifying in each such partial lien waiver the amount paid in consideration of such partial release;

7.  Before any disbursements after the initial disbursement, the Borrower shall furnish to Lender a list (if not previously delivered) of all Vendors employed in connection with the Subdivision/Rezoning of the Subject Property, containing the name, address, and telephone number of each such Vendor, a general statement of the nature of the Work to be done, the labor and materials to be supplied, and the approximate dollar value of such labor or Work with respect to each. Lender shall have the right to make direct contact with each Vendor to verify the facts disclosed by said list or for any other purpose;

8.  Copies of invoices or other acceptable documentation shall be submitted to substantiate Borrower's request for payment of construction costs, including "soft costs;"

9.  Lender shall have approved of Borrower's requisition for "hard costs."

5.      Conditions Precedent to Final Disbursement. Subject to any additional conditions set forth in the Lender Documents, the following conditions shall be satisfied prior to the final disbursement of the Lender Loan and the Retainage:

a.  Lender shall have received evidence that all Impositions which are due and payable for the current tax year have been paid in full;

b.  Lender shall have received final lien releases and waivers from the Vendors for all Work performed in connection with the Subdivision/Rezoning of the Subject Property;

6.      Notices. Any and all notices, demands or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party only (a) if served personally, (b) if deposited in the United States first class mail, certified or registered, postage prepaid, or (c) if sent by overnight delivery service and a confirmation of receipt is obtained. If such notice, demand or other communication is served personally, service shall be conclusively deemed made at the time of such personal service. If such notice, demand or other communication is given by mail, such shall be conclusively deemed given seventy-two (72) hours after the deposit thereof in the United States mail addressed to the party to whom such notice,

demand or other communication is to be given at the following address set forth below. If such notice, demand or other communication is sent by overnight delivery service, such shall be conclusively deemed given at the time confirmation of receipt is obtained, provided the overnight delivery is addressed to the party to whom such notice, demand or other communication is to be given at the address set forth below.

If to the Borrower:

JINZHENG GROUP (USA) LLC
100 East Huntington Drive, Suite 207
Alhambra, CA 91801

If to the Lender:

BOBS, LLC
600 South Spring Street, Unit # Office
Los Angeles, CA 90014

Any party hereto may change its address for the purpose of receiving notices, demands and other communications as herein provided by a written notice given in the manner aforesaid to the other party or parties hereto.

7.    Governing Law. This Agreement shall be governed by, and construed in accordance with, the substantive laws of the State of California without regard to principles of conflicts of laws.

8.    Headings. The headings used herein are for convenience only and do not limit or alter the terms of this Agreement or in any way affect the meaning or interpretation of this Agreement.

9.    Successors and Assigns. All rights of each party shall inure to the benefit of its successors and assigns, and all obligations, liabilities, and duties of each party shall bind its successors and assigns.

10.    Entire Agreement; Amendment and Modification. This Agreement constitutes the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein, supersedes all prior agreements and understandings, both written and oral, between the parties in respect of the subject matter hereof and no changes, amendments, or alterations hereto shall be effective unless pursuant to written instrument executed by the Borrower and the Lender. Notwithstanding the foregoing sentence or any other provision of this Agreement, this Agreement does not supersede and shall not be deemed to amend any of the Lender Documents. Borrower and Lender anticipate modifications and supplements to this Agreement from time to time, in writing, signed by the Lender or designee, and the Borrower.

11.    No Waiver of Strict Compliance. No waiver or failure of a party to insist upon strict compliance with any obligation, covenant, agreement, representation, warranty, or condition shall operate as a waiver of, or estoppel with respect to, any subsequent or other failure to comply with such obligation, covenant, agreement, representation, warranty, or condition, or with any other obligation, covenant, agreement, representation, warranty, or condition contained herein. Failure to

6

exercise any right, power, or remedy shall not constitute a waiver of any obligations under this Agreement or constitute a modification of this Agreement. The making of this Agreement shall not waive or impair any other security a party may have or hereafter acquire for the payment of obligations under this Agreement, and the taking of any additional security it may have in the order it may deem proper.

12.    Validity. The invalidity or unenforceability of any terms or provisions of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect, and, if any such unenforceable provision hereof is enforceable in any part or to any lesser extent, such provision shall be enforceable in all such parts and to the greatest extent permissible under applicable law.

13.    Supervision of Work. The Lender shall be under no obligation to perform any of the Work necessary to complete the Subdivision/Rezoning of the Subject Property.  The Lender is not the agent for Borrower, nor is the Lender a partner or joint venturer with Borrower. The Lender shall not have any fiduciary duty or obligation to the Borrower.

14.    Reservation of Rights. Nothing contained herein shall be construed as restricting, limiting, amending or modifying the rights of the parties in the Lender Documents, as they relate to defaults or remedies, including, inter alia, the right of each party under its respective security instruments to foreclose on the Property, or to seek recourse under any guaranties.

15.    Default.  In the event of a default under the terms of the Subject Note, Borrower grants, assigns, conveys and transfers to Lender, all of Borrower's rights to the Subject Property under the Subdivision Map Act, including, but not limited to any and all Vendor Contracts, notices, parcel maps, tentative maps, final maps, local agency submittals, applications, permits, engineering reports, geological reports, technical feasibility studies, environmental analyses, notices of hearings, hearing minutes, and committee approvals, legislative approvals, permits, and fulfillments of any conditions.

Further, in the event of default, Borrower grants to Lender all of Borrower's rights to the Subject Property with regard to Subdivision/Rezoning of the Subject Property, including, but not limited to all applications, studies, staff recommendations, and approvals for a zoning change and/or zoning variance of the Subject Property to allow for more intensive development than is currently permitted under Los Angeles City Zone A1-1D.

Borrower agrees that in the event of default, Borrower will deliver to Lender all files, records, documents, drawings, specifications, equipment, software, governmental submissions and correspondence, surveys, studies, reports, permits, maps, and similar items whether maintained in hard copy, in electronic form, or on line relating to the Subject Property and the Subdivision/Rezoning, whether prepared by Borrower, Vendors, governmental agencies or others.

16.    Further Assurances. The parties hereto hereby agree to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

17.    Counterparts. This Agreement may be signed by each party on a separate signature page, and when the executed signature pages are combined, shall constitute one single instrument with

the same effect as if all signatories had executed the same instrument.

IN WITNESS WHEREOF, each party has executed this Agreement on the date first hereinabove written.

JINZHENG GROUP (USA) LLC,
a California limited liability company

By: _____
Jianqing Yang, Managing Member

BOBS, LLC, a Nevada limited liability company

By: _____
Rommy Shy, Managing

Member

8

# EXHIBIT B



**This page is part of your document - DO NOT DISCARD**

## 20180916691





**Pages:**
**0008**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/10/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 65.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 215.00 |



**L E A D S H E E T**



201809100260008

**00015702495**



009331561

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E186156

36_3664564_1_

Recording Requested By

FIRST AMERICAN TITLE COMPANY LOS ANGELES

**When Recorded Mail To**
BOBS LLC
600 S. Spring St. Unit# Office
Los Angeles CA 90014

Title Order No. 5770048

Space above this line for recorder's use

# DEED OF TRUST

Loan No. ⬛⬛⬛518

This Deed of Trust, made this **4th** day of **September 2018**, among the Trustor, **Jinzheng Group (USA) LLC, a California Limited Liability Company** (herein "Borrower"), **BOBS LLC** (herein "Trustee"), and the Beneficiary, **BOBS LLC, a Nevada Single Purpose Limited Liability Company as to an undivided 100.000% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Los Angeles**, State of California: BEING A PORTION OF THE CITY LANDS OF LOS ANGELES, CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGES 504 AND 505 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:
BEGINNING AT THE SOUTHWEST CORNER OF ROSE HILL COURT, AS PER MAP RECORDED IN BOOK 8 PAGE 2 OF MAPS; THENCE SOUTH 20° 07' WEST ALONG THE EAST LINE OF ELA HILLS TRACT, AS PER MAP RECORDED IN BOOK 14 PAGE 3 OF MISCELLANEOUS RECORDS; 32 CHAINS, MORE OR LESS, TO AN ANGLE POINT IN SAID EAST LINE; SAID ANGLE POINT BEING THE SOUTHWEST CORNER OF THE LAND CONVEYED TO L. T. GARNSEY, BY DEED RECORDED IN BOOK 428 PAGE 178 OF DEEDS; THENCE SOUTH 89° 45' EAST ALONG THE SOUTH LINE OF THE LAND DESCRIBED IN THE ABOVE MENTIONED DEED TO WILLIAM HOLGATE'S GLEN TERRACE TRACT, AS PER MAP RECORDED IN BOOK 17 PAGE 91 OF SAID MISCELLANEOUS RECORDS; THENCE NORTH AND EAST ALONG THE LINE OF SAID WILLIAM HOLGATE'S GLEN TERRACE TRACT, AND THE NORTH LINE OF THE LAND CONVEYED TO MRS. ELIZA KIMBALL, BY DEED RECORDED IN BOOK 131 PAGE 233 OF DEEDS, TO THE WEST LINE OF TRACT 7972, \AS PER MAP RECORDED IN BOOK 102 PAGES 3 TO 7 INCLUSIVE OF MAPS; THENCE NORTHWEST AND NORTHEAST ALONG THE WESTERLY LINE OF SAID TRACT 7972, TO THE SOUTHEAST CORNER OF ROSE HILL COURT ABOVE MENTIONED; THENCE NORTHWEST ALONG THE SOUTH LINE OF SAID ROSEHILL COURT TO THE POINT OF BEGINNING.
EXCEPT ALL OIL, GAS, WATER AND MINERAL RIGHTS WITHOUT HOWEVER THE RIGHT TO USE THE SURFACE OF SAID LAND FOR THE EXTRACTION OF SAID OIL, GAS WATER AND MINERALS AS RESERVED BY THE CITY OF LOS ANGELES, IN DEED RECORDED SEPTEMBER 26, 1969 AS INSTRUMENT NO. 2822., which has the address of 2929 Amethyst Street Los Angeles CA 90032 (herein "Property Address"); APN; 5209-009-001

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **09/04/2018**, in the principal sum of U.S. **$7,000,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and

(b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **BOBS LLC, 600 S. Spring St. Unit# Office Los Angeles CA 90014** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

 **15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

 **16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

 If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

 **17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

 Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

 **18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

 After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

 After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

 **19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

 **20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5

years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

Jinzheng Group (USA) LLC, a California Limited Liability
Company

_____    9-5-18    _____
Borrower    Jianqing Yang, President    Date    Borrower    Date

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Bernardino

On 9-5-18 before me, Ting Hao Hu, Notary Republic,
personally appeared Jianqing Yang,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS

**TING HAO HU**
COMM. #2244329
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires May 28, 2022

Signature

**TING HAO HU**
COMM. #2244329
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires May 28, 2022

(Seal)

See Attachment

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of ___San Bernardino_____ )

On ___9-5-18_____ before me, ___Ting Hao Hu, Notary Public_____
(insert name and title of the officer)

personally appeared ___Jianqing Yang_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

**TING HAO HU**
COMM. # 2244329
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires May 28, 2022

Signature _____    (Seal)

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and** this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____    _____    _____    _____
Signature of Beneficiary (the "LENDER")    Date    Signature of Beneficiary (the "LENDER")    Date

When recorded, mail to

Att: _____

**This page is part of your document - DO NOT DISCARD**

## 20190091547





**Pages:
0005**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/30/19 AT 04:05PM**

| | | |
|---|---|---:|
| FEES: | | 29.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| SB2: | | 75.00 |
| PAID: | | 104.00 |



**L E A D S H E E T**



201901300930035

**00016221695**



009604966

**SEQ:
05**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



RECORDING REQUESTED BY


**WHEN RECORDED MAIL TO**

**NAME** Ronny Shy

**MAILING** 600 S. Spring St. #106

**CITY, STATE ZIP CODE**

Los Angeles, CA 90014

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

Assignment of Loan Documents

## ASSIGNMENT OF LOAN DOCUMENTS

FOR VALUE RECEIVED, the undersigned, **BOBS LLC, a Nevada Limited Liability Company** ("Assignor"), hereby absolutely and unconditionally transfers, conveys, and assigns to **Royalty Equity Lending LLC, a California Limited Liability Company** ("Assignee") all of Assignor's right, title and interest in and to (i) all those Loan Documents described in Schedule 1 hereto, (ii) the Loan, and (iii) Assignor's security interests in the collateral securing the Loan. In connection therewith, Assignor hereby grants, sells, transfers, conveys, and assigns to Assignee the Loan Documents.

This Assignment is made pursuant to the terms and conditions of that certain Loan Purchase Agreement between Assignor and Assignee which, among other things, provides for an assignment and transfer to Assignee on as 'AS IS" AND "WITH ALL FAULTS" basis and without recourse or representation or warranty of any kind, express or implied.

Assignor hereby covenants and agrees to execute and deliver to Assignee any and all further documents an instruments reasonably required by Assignee to effectuate and perfect the grant, sale, transfer, conveyance and assignment contained in this Assignment of Loan Documents.

This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and its successors and assigns. (All capitalized terms not defined herein shall have the meaning ascribed to them in the aforementioned Loan Purchase and Sale Agreement.)

Dated: December 22nd , 2018

*Assignor:*

BOBS LLC

By: _____

Name: _____

Its: _____

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _Los Angeles_ )

On _1-25-19_ before me, _Shlomo Rackliff - Notary Public_
　　　Date　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Rommy Shy_
　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
SHLOMO RACKLIFF
Notary Public – California
Los Angeles County
Commission # 2208779
My Comm. Expires Aug 4, 2021
```

Signature _Shlomo Rackliff_
　　　　　　　Signature of Notary Public

Place Notary Seal Above

———————— OPTIONAL ————————
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _Assignment of Loan Doc_
Document Date: _12/22/18_　　　　　　　　　　　　Number of Pages: _01_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)    Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _Los Angeles_ )

On _1-25-19_ before me, _Shlomo Rackliff - Notary Public_
    Date                             Here Insert Name and Title of the Officer

personally appeared _Rommy Shy_
                                     Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Shlomo Rackliff_
                   Signature of Notary Public

**SHLOMO RACKLIFF**
Notary Public – California
Los Angeles County
Commission # 2208779
My Comm. Expires Aug 4, 2021

_Place Notary Seal Above_

———————————— OPTIONAL ————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Assignment of Loan Doc_
Document Date: _12/22/18_                          Number of Pages: _02_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual     Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

**Schedule 1 to
Assignment of Loan Documents**

Borrower:              Jinzheng Group LLC

Lender:                BOBS LLC

Property Address:      2929 Amethyst St, Los Angeles, CA 90032

Date:                  12/22/2018

_____

1.    Loan Agreement   - never recorded
2.    Promissory Note   - never recorded
3.    Deed of Trust and Assignment of Rents    (Deed of Trust Instrument #20180916641)
4.    Affidavit Regarding Business Loan Purpose   - never recorded
5.    Arbitration Agreement   - never recorded
6.    Balloon Payment Disclosures   - never recorded
7.    Borrower's Representations and Warranties   - never recorded
8.    Certificate of Business Purpose of Loan   - never recorded
9.    Continuing Guaranty   - never recorded
10.   Environmental Certificate and Indemnity Agreement   - never recorded
11.   Lender's Instructions   - never recorded

 

**This page is part of your document - DO NOT DISCARD**

## 20201580415

 

**Pages: 0009**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/04/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 68.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 218.00 |



**L E A D S H E E T**



202012041060039

**00019457633**



011528194

**SEQ:
04**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E08_201204_8000180

*E611099*

NORTH AMERICAN TITLE COMPANY

9S004-20·00408

Recording Requested By

*North American Title*

When Recorded Mail To:

**Royalty Equity Lending, LLC**
600 S. Spring Street  #106
Los Angeles, CA 90014

Space above this line for recorder's use

# DEED OF TRUST

This Deed of Trust, made this 25th day of November 2020, among the Trustor, Jinzheng Group (USA) LLC, a California Limited Liability Company (herein "Borrower"), Royalty Equity Lending, LLC (herein "Trustee"), and the Beneficiary, Royalty Equity Lending, LLC, a California Limited Liability Company as to an undivided 100.000% Interest (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, a **FIRST (1ST) PRIORITY POSITION DEED OF TRUST** on the property located at 2526-2528 Lincoln Park Ave. Los Angeles, CA 90031 in the county of Los Angeles, State of California and which has a Legal Description fully described on the attached Exhibit A.

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by the Note Secured by Deed of Trust dated September 4, 2018 (herein "Note") on 2929 Amethyst St. and Deed of Trust for same property which recorded on September 10, 2018 as Instrument 20180916691 at the Los Angeles County Recorder, in the principal sum of U.S. Seven Million Dollars ($7,000,000.00), with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust: the performance of the covenants and agreements of Borrower herein contained: and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained. As consideration for the Loan Extension Agreement granted by Lender dated November ____ 2020, Borrower offers Property as additional collateral for the Note. In addition to cross-collateralization with 2929 Amethyst, this Property and all other obligations under the Note shall be cross-collateralized with the properties at i) 2602 Lincoln Park Ave. Los Angeles, CA  90031, ii) 2600 Sierra St.. Los Angeles, CA 90031 and  iii) 2520-2522 Lincoln Park Ave. Los Angeles, CA 90031.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

1. **Payments or Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note and the principal of and/or interest on  any Future Advances secured by the Deed of Trust.

2. **Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium  installments for hazard

insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender. the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower. and unless such an agreement is made or applicable law requires such interest to be paid. Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which such debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the: deficiency in one or more payments as Lender may require. Upon payment in full of all sums secured by this Deed of Trust. Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs I and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof: if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges. fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine. or at option of Lender the entire amount so collect, or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower rails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium

or planned unit development. the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under she Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed off rust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof. and shall I bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof: or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof, join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security heretofore the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address oral such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), Royalty Equity Lending, LLC located at 600 S. Spring St. Unit Office Los Angeles CA 90014 or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State or California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require the Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years ( including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein. excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust,
(b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest

thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

**BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:**

17. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

18. **Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder or any other loan document relating to the indebtedness secured hereby, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby. After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof: Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of Title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof: not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

19. **Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

20. **Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey. without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed off rust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, al Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS:**

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender or a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are may pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right of remedy contained in this Deed of Trust or provided by law.


Borrower: Jinzheng Group (USA) LLC, a California Limited Liability Company




By: _____          Date: 12-1-2020
      Betty Zheng, Manager




IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of _____ *Los Angeles* _____ )

On _____ *12/1/2020* _____ before me, *Brooke D. Rodriguez, Notary Public*
(insert name and title of the officer)

personally appeared _____ *Betty Zheng* _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

BROOKE D. RODRIGUEZ
Notary Public - California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023



BROOKE D. RODRIGUEZ
Notary Public - California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023

## LEGAL DESCRIPTION

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 3, BLOCK F OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGE 3 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY STATE OF CALIFORNIA.

APN: 5209-005-003

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 2:

LOT 1, IN BLOCK "B" OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4 OR MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF LOT 1, BLOCK "B" OF ELA HILLS TRACT IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4 OF MISCELLANEOUS RECORDS, OF LOS ANGELES COUNTY, THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID LOT 1, TO ITS INTERSECTION WITH THE PRODUCED EASTERLY LINE OF THAT PORTION OF PRICHARD STREET, EXTENDING SOUTHERLY FROM THE RIGHT ANGLE THEREIN NORTH OF ALTURA STREET; THENCE SOUTHERLY ALONG SAID PRODUCED EASTERLY LINE OF PRICHARD STREET TO THE EASTERLY LINE OF PRICHARD STREET; THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY LINE OF PRICHARD STREET TO THE POINT OF BEGINNING, TO BE USED FOR PUBLIC STREET AND NO OTHER PURPOSE AS CONVEYED TO CITY OF LOS ANGELES, A MUNICIPAL CORPORATION BY DEED RECORDED SEPTEMBER 11, 1913, IN BOOK 5594, PAGE 123 OF DEEDS.

APN: 5208-025-001

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 3:

LOT 2 IN BLOCK "B" OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA. AS PER MAP RECORDED IN BOOK 14, PAGE 3 OF MISCELLANEOUS RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5208-025-002

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 4:

BEING A PORTION OF THE CITY LANDS OF LOS ANGELES, CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGES 504 AND 505 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF ROSE HILL COURT, AS PER MAP RECORDED IN BOOK 8 PAGE 2 OF MAPS; THENCE SOUTH 20° 07' WEST ALONG THE EAST LINE OF ELA HILLS TRACT, AS PER

MAP RECORDED IN BOOK 14 PAGE 3 OF MISCELLANEOUS RECORDS; 32 CHAINS, MORE OR LESS, TO AN ANGLE POINT IN SAID EAST LINE; SAID ANGLE POINT BEING THE SOUTHWEST CORNER OF THE LAND CONVEYED TO L.T. GARNSEY, BY DEED RECORDED IN BOOK 428 PAGE 178 OF DEEDS; THENCE SOUTH 89° 45' EAST ALONG THE SOUTH LINE OF THE LAND DESCRIBED IN THE ABOVE MENTIONED DEED TO WILLIAM HOLGATE'S GLEN TERRACE TRACT, AS PER MAP RECORDED IN BOOK 17 PAGE 91 OF SAID MISCELLANEOUS RECORDS; THENCE NORTH AND EAST ALONG THE LINE OF SAID WILLIAM HOLGATE'S GLEN TERRACE TRACT, AND THE NORTH LINE OF THE LAND CONVEYED TO MRS. ELIZA KIMBALL, BY DEED RECORDED IN BOOK 131 PAGE 233 OF DEEDS, TO THE WEST LINE OF TRACT 7972, AS PER MAP RECORDED IN BOOK 101 PAGES 3 TO 7 INCLUSIVE OF MAPS; THENCE NORTHWEST AND NORTHEAST ALONG THE WESTERLY LINE OF SAID TRACT 7972, TO THE SOUTHEAST CORNER OF ROSE HILL COURT ABOVE MENTIONED; THENCE NORTHWEST ALONG THE SOUTH LINE OF SAID ROSE HILL COURT TO THE POINT OF BEGINNING.

EXCEPT ALL OIL, GAS, WATER AND MINERAL RIGHTS WITHOUT HOWEVER THE RIGHT TO USE THE SURFACE OF SAID LAND FOR THE EXTRACTION OF SAID OIL GAS WATER AND MINERALS AS RESERVED BY THE CITY OF LOS ANGELES, IN DEED RECORDED SEPTEMBER 26,1969 AS INSTRUMENT NO. 2822.

APN: 5209-009-001

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL: 5

LOT 7 BLOCK E OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE EASTERLY 70 FEET THEREOF.

ALSO EXCEPTING THOSE PORTIONS OF SAID LAND CONVEYED TO THE CITY OF LOS ANGELES FOR STREET PURPOSES.

APN: 5208-025-014

**This page is part of your document - DO NOT DISCARD**



# 20201580412





**Pages:**
**0009**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/04/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 68.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 218.00 |



**L E A D S H E E T**



202012041060039

00019457630



011528194

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E611099*

E08_201204_8000280

NORTH AMERICAN TITLE COMPANY

95004-20-00406

Recording Requested By

North American Title

When Recorded Mail To:

Royalty Equity Lending, LLC
600 S. Spring Street #106
Los Angeles, CA 90014

_____

Space above this line for recorder's use

# DEED OF TRUST

This Deed of Trust, made this 25th day of November 2020, among the Trustor, Jinzheng Group (USA) LLC, a California Limited Liability Company (herein "Borrower"), Royalty Equity Lending, LLC (herein "Trustee"), and the Beneficiary, Royalty Equity Lending, LLC, a California Limited Liability Company as to an undivided 100.000% Interest (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, a **FIRST (1ST) PRIORITY POSITION DEED OF TRUST** on the property located at 2600 Sierra St. Los Angeles, CA 90031 in the county of Los Angeles, State of California and which has a Legal Description fully described on the attached Exhibit A.

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

## THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by the Note Secured by Deed of Trust dated September 4, 2018 (herein "Note") on 2929 Amethyst St. and Deed of Trust for same property which recorded on September 10, 2018 as Instrument 20180916691 at the Los Angeles County Recorder, in the principal sum of U.S. Seven Million Dollars ($7,000,000.00), with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust: the performance of the covenants and agreements of Borrower herein contained: and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained. As consideration for the Loan Extension Agreement granted by Lender dated November ____ 2020, Borrower offers Property as additional collateral for the Note. In addition to cross-collateralization with 2929 Amethyst, this Property and all other obligations under the Note shall be cross-collateralized with the properties at i) 2602 Lincoln Park Ave. Los Angeles, CA  90031, ii) 2520-2522 Lincoln Park Ave. Los Angeles, CA 90031 and iii) 2526-2528 Lincoln Park Ave. Los Angeles, CA 90031.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

## UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments or Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard

insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender. the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower. and unless such an agreement is made or applicable law requires such interest to be paid. Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which such debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the: deficiency in one or more payments as Lender may require. Upon payment in full of all sums secured by this Deed of Trust. Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs I and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof: if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges. fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine. or at option of Lender the entire amount so collect, or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower rails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium

or planned unit development. the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under she Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed off rust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof. and shall I bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof: or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof, join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security heretofore the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address oral such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), Royalty Equity Lending, LLC located at 600 S. Spring St. Unit Office Los Angeles CA 90014 or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State or California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require the Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein. excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust,

(b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest

thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

## BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

17. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

18. **Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder or any other loan document relating to the indebtedness secured hereby, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby. After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of Title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof; not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

19. **Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

20. **Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey. without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed off rust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, al Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS:**

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender or a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are may pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right of remedy contained in this Deed of Trust or provided by law.

Borrower: Jinzheng Group (USA) LLC, a California Limited Liability Company

By: _____          Date: _12- 1 - 2020_
Betty Zheng, Manager

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California

County of _____ *Los Angeles* _____ )

On _____ *12/1/2020* _____ before me, *Brooke D. Rodriguez, Notary Public*
_____
(insert name and title of the officer)

personally appeared _____ *Betty Zheng* _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    **(Seal)**

BROOKE D. RODRIGUEZ
Notary Public - California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023

EXHIBIT "A"

## LEGAL DESCRIPTION

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 3, BLOCK F OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGE 3 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY STATE OF CALIFORNIA.

APN: 5209-005-003

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 2:

LOT 1, IN BLOCK "B" OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4 OR MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF LOT 1, BLOCK "B" OF ELA HILLS TRACT IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4 OF MISCELLANEOUS RECORDS, OF LOS ANGELES COUNTY, THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID LOT 1, TO ITS INTERSECTION WITH THE PRODUCED EASTERLY LINE OF THAT PORTION OF PRICHARD STREET, EXTENDING SOUTHERLY FROM THE RIGHT ANGLE THEREIN NORTH OF ALTURA STREET; THENCE SOUTHERLY ALONG SAID PRODUCED EASTERLY LINE OF PRICHARD STREET TO THE EASTERLY LINE OF PRICHARD STREET; THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY LINE OF PRICHARD STREET TO THE POINT OF BEGINNING, TO BE USED FOR PUBLIC STREET AND NO OTHER PURPOSE AS CONVEYED TO CITY OF LOS ANGELES, A MUNICIPAL CORPORATION BY DEED RECORDED SEPTEMBER 11, 1913, IN BOOK 5594, PAGE 123 OF DEEDS.

APN: 5208-025-001

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 3:

LOT 2 IN BLOCK "B" OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA. AS PER MAP RECORDED IN BOOK 14, PAGE 3 OF MISCELLANEOUS RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5208-025-002

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 4:

BEING A PORTION OF THE CITY LANDS OF LOS ANGELES, CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGES 504 AND 505 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF ROSE HILL COURT, AS PER MAP RECORDED IN BOOK 8 PAGE 2 OF MAPS; THENCE SOUTH 20° 07' WEST ALONG THE EAST LINE OF ELA HILLS TRACT, AS PER

MAP RECORDED IN BOOK 14 PAGE 3 OF MISCELLANEOUS RECORDS; 32 CHAINS, MORE OR LESS, TO AN ANGLE POINT IN SAID EAST LINE; SAID ANGLE POINT BEING THE SOUTHWEST CORNER OF THE LAND CONVEYED TO L.T. GARNSEY, BY DEED RECORDED IN BOOK 428 PAGE 178 OF DEEDS; THENCE SOUTH 89° 45' EAST ALONG THE SOUTH LINE OF THE LAND DESCRIBED IN THE ABOVE MENTIONED DEED TO WILLIAM HOLGATE'S GLEN TERRACE TRACT, AS PER MAP RECORDED IN BOOK 17 PAGE 91 OF SAID MISCELLANEOUS RECORDS; THENCE NORTH AND EAST ALONG THE LINE OF SAID WILLIAM HOLGATE'S GLEN TERRACE TRACT, AND THE NORTH LINE OF THE LAND CONVEYED TO MRS. ELIZA KIMBALL, BY DEED RECORDED IN BOOK 131 PAGE 233 OF DEEDS, TO THE WEST LINE OF TRACT 7972, AS PER MAP RECORDED IN BOOK 101 PAGES 3 TO 7 INCLUSIVE OF MAPS; THENCE NORTHWEST AND NORTHEAST ALONG THE WESTERLY LINE OF SAID TRACT 7972, TO THE SOUTHEAST CORNER OF ROSE HILL COURT ABOVE MENTIONED; THENCE NORTHWEST ALONG THE SOUTH LINE OF SAID ROSE HILL COURT TO THE POINT OF BEGINNING.

EXCEPT ALL OIL, GAS, WATER AND MINERAL RIGHTS WITHOUT HOWEVER THE RIGHT TO USE THE SURFACE OF SAID LAND FOR THE EXTRACTION OF SAID OIL GAS WATER AND MINERALS AS RESERVED BY THE CITY OF LOS ANGELES, IN DEED RECORDED SEPTEMBER 26,1969 AS INSTRUMENT NO. 2822.

APN: 5209-009-001

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL: 5

LOT 7 BLOCK E OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE EASTERLY 70 FEET THEREOF.

ALSO EXCEPTING THOSE PORTIONS OF SAID LAND CONVEYED TO THE CITY OF LOS ANGELES FOR STREET PURPOSES.

APN: 5208-025-014

**This page is part of your document - DO NOT DISCARD**



## 20201580414



**Pages:**
**0009**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/04/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 68.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 218.00 |



**L E A D S H E E T**



202012041060039

00019457632



011528194

**SEQ:**
**03**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E611099*



NORTH AMERICAN TITLE COMPANY
95004·20·00408

Recording Requested By

North American Title

When Recorded Mail To:

Royalty Equity Lending, LLC
600 S. Spring Street #106
Los Angeles, CA 90014

Space above this line for recorder's use

# DEED OF TRUST

This Deed of Trust, made this 25th day of November 2020, among the Trustor, Jinzheng Group (USA) LLC, a California Limited Liability Company (herein "Borrower"), Royalty Equity Lending, LLC (herein "Trustee"), and the Beneficiary, Royalty Equity Lending, LLC, a California Limited Liability Company as to an undivided 100.000% Interest (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, a **FIRST (1ST) PRIORITY POSITION DEED OF TRUST** on the property located at 2602 Lincoln Park Ave. Los Angeles, CA 90031 in the county of Los Angeles, State of California and which has a Legal Description fully described on the attached Exhibit A.

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

## THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by the Note Secured by Deed of Trust dated September 4, 2018 (herein "Note") on 2929 Amethyst St. and Deed of Trust for same property which recorded on September 10, 2018 as Instrument 20180916691 at the Los Angeles County Recorder, in the principal sum of U.S. Seven Million Dollars ($7,000,000.00), with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust: the performance of the covenants and agreements of Borrower herein contained: and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained. As consideration for the Loan Extension Agreement granted by Lender dated November ____ 2020, Borrower offers Property as additional collateral for the Note. In addition to cross-collateralization with 2929 Amethyst, this Property and all other obligations under the Note shall be cross-collateralized with the properties at i) 2600 Sierra St. Los Angeles, CA 90031, ii) 2520-2522 Lincoln Park Ave. Los Angeles, CA 90031 and iii) 2526-2528 Lincoln Park Ave. Los Angeles, CA 90031.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

## UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

1. **Payments or Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

2. **Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard

insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower. and unless such an agreement is made or applicable law requires such interest to be paid. Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which such debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require. Upon payment in full of all sums secured by this Deed of Trust. Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs I and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof: if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges. fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine. or at option of Lender the entire amount so collect, or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower rails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium

or planned unit development. the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under she Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed off rust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof. and shall I bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7shall require Lender to incur any expense or take any action hereunder.

**8.  Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof: or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof, join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security heretofore the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address oral such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), Royalty Equity Lending, LLC located at 600 S. Spring St. Unit Office Los Angeles CA 90014 or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State or California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require the Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein. excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust,
(b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest

thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

**BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:**

17. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

18. **Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder or any other loan document relating to the indebtedness secured hereby, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby. After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof: Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of Title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof: not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

19. **Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

20. **Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey. without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed off rust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, al Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS:**

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender or a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are may pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right of remedy contained in this Deed of Trust or provided by law.

Borrower: Jinzheng Group (USA) LLC, a California Limited Liability Company

By: _____    Date: _12-1-2020_

Betty Zheng, Manager

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ Los Angeles _____ )

On __12/1/2020__ before me, Brooke D. Rodriguez, Notary Public
                                   (insert name and title of the officer)

personally appeared __Betty Zheng_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

BROOKE D. RODRIGUEZ
Notary Public - California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023

Signature _____        (Seal)

Exhibit "A"

## LEGAL DESCRIPTION

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOT 3, BLOCK F OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGE 3 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY STATE OF CALIFORNIA.

APN: 5209-005-003

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 2:

LOT 1, IN BLOCK "B" OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4 OR MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF LOT 1, BLOCK "B" OF ELA HILLS TRACT IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4 OF MISCELLANEOUS RECORDS, OF LOS ANGELES COUNTY, THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID LOT 1, TO ITS INTERSECTION WITH THE PRODUCED EASTERLY LINE OF THAT PORTION OF PRICHARD STREET, EXTENDING SOUTHERLY FROM THE RIGHT ANGLE THEREIN NORTH OF ALTURA STREET; THENCE SOUTHERLY ALONG SAID PRODUCED EASTERLY LINE OF PRICHARD STREET TO THE EASTERLY LINE OF PRICHARD STREET; THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY LINE OF PRICHARD STREET TO THE POINT OF BEGINNING, TO BE USED FOR PUBLIC STREET AND NO OTHER PURPOSE AS CONVEYED TO CITY OF LOS ANGELES, A MUNICIPAL CORPORATION BY DEED RECORDED SEPTEMBER 11, 1913, IN BOOK 5594, PAGE 123 OF DEEDS.

APN: 5208-025-001

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 3:

LOT 2 IN BLOCK "B" OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA. AS PER MAP RECORDED IN BOOK 14, PAGE 3 OF MISCELLANEOUS RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5208-025-002

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 4:

BEING A PORTION OF THE CITY LANDS OF LOS ANGELES, CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGES 504 AND 505 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF ROSE HILL COURT, AS PER MAP RECORDED IN BOOK 8 PAGE 2 OF MAPS; THENCE SOUTH 20° 07' WEST ALONG THE EAST LINE OF ELA HILLS TRACT, AS PER

MAP RECORDED IN BOOK 14 PAGE 3 OF MISCELLANEOUS RECORDS; 32 CHAINS, MORE OR LESS, TO AN ANGLE POINT IN SAID EAST LINE; SAID ANGLE POINT BEING THE SOUTHWEST CORNER OF THE LAND CONVEYED TO L.T. GARNSEY, BY DEED RECORDED IN BOOK 428 PAGE 178 OF DEEDS; THENCE SOUTH 89° 45' EAST ALONG THE SOUTH LINE OF THE LAND DESCRIBED IN THE ABOVE MENTIONED DEED TO WILLIAM HOLGATE'S GLEN TERRACE TRACT, AS PER MAP RECORDED IN BOOK 17 PAGE 91 OF SAID MISCELLANEOUS RECORDS; THENCE NORTH AND EAST ALONG THE LINE OF SAID WILLIAM HOLGATE'S GLEN TERRACE TRACT, AND THE NORTH LINE OF THE LAND CONVEYED TO MRS. ELIZA KIMBALL, BY DEED RECORDED IN BOOK 131 PAGE 233 OF DEEDS, TO THE WEST LINE OF TRACT 7972, AS PER MAP RECORDED IN BOOK 101 PAGES 3 TO 7 INCLUSIVE OF MAPS; THENCE NORTHWEST AND NORTHEAST ALONG THE WESTERLY LINE OF SAID TRACT 7972, TO THE SOUTHEAST CORNER OF ROSE HILL COURT ABOVE MENTIONED; THENCE NORTHWEST ALONG THE SOUTH LINE OF SAID ROSE HILL COURT TO THE POINT OF BEGINNING.

EXCEPT ALL OIL, GAS, WATER AND MINERAL RIGHTS WITHOUT HOWEVER THE RIGHT TO USE THE SURFACE OF SAID LAND FOR THE EXTRACTION OF SAID OIL GAS WATER AND MINERALS AS RESERVED BY THE CITY OF LOS ANGELES, IN DEED RECORDED SEPTEMBER 26,1969 AS INSTRUMENT NO. 2822.

APN: 5209-009-001

Real Property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL: 5

LOT 7 BLOCK E OF ELA HILLS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14, PAGES 3 AND 4, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE EASTERLY 70 FEET THEREOF.

ALSO EXCEPTING THOSE PORTIONS OF SAID LAND CONVEYED TO THE CITY OF LOS ANGELES FOR STREET PURPOSES.

APN: 5208-025-014

**This page is part of your document - DO NOT DISCARD**

## 20201580413




**Pages:
0009**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/04/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 68.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 218.00 |



**L E A D S H E E T**



202012041060039

**00019457631**



011528194

**SEQ:
02**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

*E611099*

E08_201204_8000280

NORTH AMERICAN TITLE COMPANY

9 SANY-20-00408

Recording Requested By

North American Title

When Recorded Mail To:

Royalty Equity Lending, LLC
600 S. Spring Street #106
Los Angeles, CA 90014

Space above this line for recorder's use

# DEED OF TRUST

This Deed of Trust, made this 25th day of November 2020, among the Trustor, Jinzheng Group (USA) LLC, a California Limited Liability Company (herein "Borrower"), Royalty Equity Lending, LLC (herein "Trustee"), and the Beneficiary, Royalty Equity Lending, LLC, a California Limited Liability Company as to an undivided 100.000% Interest (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, a **FIRST (1ST) PRIORITY POSITION DEED OF TRUST** on the property located at 2520-2522 Lincoln Park Ave. Los Angeles, CA 90031 in the county of Los Angeles, State of California and which has a Legal Description fully described on the attached Exhibit A.

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

## THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by the Note Secured by Deed of Trust dated September 4, 2018 (herein "Note") on 2929 Amethyst St. and Deed of Trust for same property which recorded on September 10, 2018 as Instrument 20180916691 at the Los Angeles County Recorder, in the principal sum of U.S. Seven Million Dollars ($7,000,000.00), with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust: the performance of the covenants and agreements of Borrower herein contained: and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained. As consideration for the Loan Extension Agreement granted by Lender dated November ____ 2020, Borrower offers Property as additional collateral for the Note. In addition to cross-collateralization with 2929 Amethyst, this Property and all other obligations under the Note shall be cross-collateralized with the properties at i) 2602 Lincoln Park Ave. Los Angeles, CA 90031, ii) 2600 Sierra St., Los Angeles, CA 90031 and iii) 2526-2528 Lincoln Park Ave. Los Angeles, CA 90031.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

## UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

1. **Payments or Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

2. **Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard

insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower. and unless such an agreement is made or applicable law requires such interest to be paid. Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which such debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the: deficiency in one or more payments as Lender may require. Upon payment in full of all sums secured by this Deed of Trust. Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs I and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof: if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges. fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine. or at option of Lender the entire amount so collect, or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower rails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium

or planned unit development. the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under she Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed off rust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof. and shall I bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof: or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof, join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security heretofore the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address oral such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), Royalty Equity Lending, LLC located at 600 S. Spring St. Unit Office Los Angeles CA 90014 or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State or California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require the Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein. excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust,
(b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest

thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

**BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:**

  17. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

  18. **Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder or any other loan document relating to the indebtedness secured hereby, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby. After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of Title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof: not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

  19. **Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

  20. **Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey. without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed off rust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, al Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS:**

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender or a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are may pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right of remedy contained in this Deed of Trust or provided by law.

Borrower: Jinzheng Group (USA) LLC, a California Limited Liability Company

By: _____     Date: _12-1-2020_
     Betty Zheng, Manager

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

# EXHIBIT C

RECORDING REQUESTED BY


WHEN RECORDED MAIL TO

NAME   *Rommy Shy*

MAILING   *600 S. Spring St. #106*

CITY, STATE ZIP CODE

*Los Angeles, CA 90014*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

*Assignment of Loan Documents*

## ASSIGNMENT OF LOAN DOCUMENTS

FOR VALUE RECEIVED, the undersigned, **BOBS LLC, a Nevada Limited Liability Company** ("Assignor"), hereby absolutely and unconditionally transfers, conveys, and assigns to **Royalty Equity Lending LLC, a California Limited Liability Company** ("Assignee") all of Assignor's right, title and interest in and to (i) all those Loan Documents described in Schedule 1 hereto, (ii) the Loan, and (iii) Assignor's security interests in the collateral securing the Loan. In connection therewith, Assignor hereby grants, sells, transfers, conveys, and assigns to Assignee the Loan Documents.

This Assignment is made pursuant to the terms and conditions of that certain Loan Purchase Agreement between Assignor and Assignee which, among other things, provides for an assignment and transfer to Assignee on as 'AS IS" AND "WITH ALL FAULTS" basis and without recourse or representation or warranty of any kind, express or implied.

Assignor hereby covenants and agrees to execute and deliver to Assignee any and all further documents an instruments reasonably required by Assignee to effectuate and perfect the grant, sale, transfer, conveyance and assignment contained in this Assignment of Loan Documents.

This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and its successors and assigns. (All capitalized terms not defined herein shall have the meaning ascribed to them in the aforementioned Loan Purchase and Sale Agreement.)

Dated: December 22nd , 2018

*Assignor:*

BOBS LLC

By: _____

Name: _____

Its: _____

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California  )
County of _Los Angeles_  )

On _1-25-19_ before me, _Shlomo Rackliff - Notary Public_
　　　Date　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Rommy Shy_
　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

SHLOMO RACKLIFF
Notary Public – California
Los Angeles County
Commission # 2208779
My Comm. Expires Aug 4, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Shlomo Rackliff_
　　　　　　Signature of Notary Public

_Place Notary Seal Above_

———————— OPTIONAL ————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Assignment of Loan Doc_
Document Date: _12/23/18_　　　　　　　　　　　Number of Pages: _2_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual　　☐ Attorney in Fact
☐ Trustee　　☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual　　Attorney in Fact
☐ Trustee　　☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of _Los Angeles_ )

On _1-25-19_ before me, _Shlomo Rackliff - Notary Public_
    Date                     Here Insert Name and Title of the Officer

personally appeared _Rommy Shy_
                          Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Shlomo Rackliff_
        Signature of Notary Public

SHLOMO RACKLIFF
Notary Public – California
Los Angeles County
Commission # 2208779
My Comm. Expires Aug 4, 2021

Place Notary Seal Above

―――――――――――――― OPTIONAL ――――――――――――――

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Assignment of Loan Doc_

Document Date: _12/22/18_ _____ Number of Pages: _01_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual          ☐ Attorney in Fact
☐ Trustee             ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual          Attorney in Fact
☐ Trustee             ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

## Schedule 1 to
## Assignment of Loan Documents

Borrower:            Jinzheng Group LLC

Lender:              BOBS LLC

Property Address:    2929 Amethyst St, Los Angeles, CA 90032

Date:                12/22/2018

---

1.   Loan Agreement   - never recorded
2.   Promissory Note   - never recorded
3.   Deed of Trust and Assignment of Rents   (Deed of Trust Instrument #20180916691)
4.   Affidavit Regarding Business Loan Purpose   - never recorded
5.   Arbitration Agreement   - never recorded
6.   Balloon Payment Disclosures   - never recorded
7.   Borrower's Representations and Warranties   - never recorded
8.   Certificate of Business Purpose of Loan   - never recorded
9.   Continuing Guaranty   - never recorded
10.  Environmental Certificate and Indemnity Agreement   - never recorded
11.  Lender's Instructions   - never recorded

# EXHIBIT D

## LOAN EXTENSION AGREEMENT

This Loan Extension Agreement (this "Extension Agreement") is entered into as of the ___8th___ day of April, 2020 (the "Effective Date"), by and between **Bobs LLC, a Nevada limited liability company** ("Lender") and **Jinzheng Group (USA) LLC, a California limited liability company** ("Borrower"). Lender and Borrower are collectively referred to herein as the "Parties" and individually as a "Party."

### RECITALS

A.    By virtue of that certain Note Secured by Deed of Trust note dated **September 4, 2018** (the "**Promissory Note**"), Borrower did borrow from Lender the original principal amount of **$7,000,000.00** (the "Loan").

B.    The Promissory Note is secured by that certain Deed of Trust with Assignment of Rents and Fixture Filing (the "**Deed of Trust**") recorded on September 10, 2018 in the Office of the County Recorder for the County of Los Angeles as Document No. 20180916691.

C.    The Deed of Trust is a first priority lien against that certain real property commonly referred to as 2929 Amethyst Street, Los Angeles, CA 90032 (the "Property") as more fully described in the Deed of Trust.

D.    The Loan matured on April 1, 2020.

E.    Borrower has requested an extension of the Maturity Date of the Loan.

F.    Lender has agreed to the requested extension of the Maturity Date of the Loan, subject to the terms and conditions of this Extension Agreement.

NOW THEREFORE in consideration of the covenants and conditions contained herein and other good valuable consideration Lender and Borrower agree as follows:

### AGREEMENT

1.    **Recitals.**  The Recitals set forth above are incorporated herein as the terms of this Extension Agreement as if restated herein in full.

2.    **Maturity Date.**  Notwithstanding anything to the contrary set forth in the Promissory Note, the Deed of Trust or any other loan documents pertaining to the Loan (collectively, the "Loan Documents"), the Maturity Date for the Loan shall be October 1, 2020, at which time all amounts due and owing from Borrower to Lender shall be paid, subject to the terms of the Loan Agreement and this Extension Agreement.

3.    **Consideration for the Extension of the Loan.**  As consideration for this Extension Agreement, shall pay to Lender the following amounts:

(a)    If Borrower repays the Loan, in full, on or before July 1, 2020, an Extension Fee equal to $350,000.00 shall be paid to Lender concurrent with the full repayment of the Loan;

(b)    If Borrower does not repay the Loan, in full on or before July 1, 2020, an Extension Fee equal to $560,000.00 shall be paid to Lender at or before the Maturity Date.

(c)    The Extension Fees, set forth in this paragraph 3, have been negotiated by the Parties in arms length's negotiations, with both all parties represented by legal counsel. Borrower understands that the Extension Fees were of material consideration for the extension of the Maturity Date and the agreement of the Lender not to commence a foreclosure of the Property. Borrower has been informed that the term of the Loan and the expectation of a timely pay-off were of material consider in Lender's making the Loan and that had made arrangements for the use of the proceeds from the pay-off of the Loan and that the failure of the Borrower to timely pay-off the Loan has caused Lender to modify its plans to accommodate Borrower, as set forth in this Extension Agreement.

(d)    Borrower acknowledges and agrees as between Borrower and Lender, the repayment of the Loan prior to or after July 1, 2020 is a matter in Borrower's control and that Lender has no control over when Borrower elects to repay the Loan.

4.    **Payments Due on the Loan.**

(a)    Borrower has failed to make the monthly interest payment in the amount of $56,875.00, which was due on April 1, 2020 (the "April 1 Payment"). The April 1 Payment shall be deferred such that it shall be paid by Borrower to Lender at the earlier of the full repayment of the Loan by Borrower or the Maturity Date.

(b)    On each of May 1, 2020, June 1, 2020, July 1, 2020, August 1, 2020 and September 1, 2020, Borrower shall make a payment of interest only to Lender, in the amount of **$56,875.00.**

(c)    On the Maturity Date (which is October 1, 2020) Borrower shall pay all amounts due and owing on the Loan, including all amounts due under the Promissory Note and this Extension Agreement.

5.    **Lender's Legal Fees.**  As a result of Borrower's failure to timely repay the Loan and request for an extension of the Maturity Date, Lender has retained legal counsel to review the loan documents, advise Lender and prepare this Extension Agreement. As a condition to this Extension Agreement becoming effective Borrower shall pay to Lender the amount of $1,250.00 as reimbursement for Lender's legal fees at the time of the execution of this Extension Agreement.

6.    **Default Interest.**  Borrower acknowledges and agrees that the Loan will be subject to the Default Rate set forth in paragraph 4(D) of the Promissory Note in the event of any breach of the Loan Documents, including but not limited to a failure by Borrower to fully repay all amounts due and owing to Lender on the Loan on or before the Maturity Date.

7.    **Borrower Representations and Warranties.**    Borrower represents and warrants to Lender as follows:

(a)    The Loan Documents, and each of them, including but not limited to the Promissory Note and the Deed of Trust, as modified and/or amended, are enforceable obligations of Borrower.

(b)    Lender is not in default of any of the terms of the Promissory Note, the Deed of Trust or any other loan documents given by Borrower to Lender in connection with the Loan and no conditions exist that with the passage of time could create a default of Lender under the Loan Documents.

(c)    All representations and warranties in the Loan Documents are hereby ratified and remain true and correct.

(d)    There are no facts, circumstances or conditions which render the Loan Documents unenforceable.

(e)    There are no defects in the Loan Documents or defenses to the enforceability of the Loan Document as against Borrower.

(f)    If there are any defects in the Loan Documents of defense to the enforceability of the Loan Documents, whether known or unknown, suspected or unsuspected, choate or inchoate, Borrower, hereby by waives any such claim regarding a defect in the Loan Documents or defense as to the enforceability of the Loan Documents. In waiving any claim regarding a defect in the Loan Documents or defense as to the enforceability of the Loan Documents providing this representation and warrant Borrower understands and agrees that but for these representations and warranties Lender would not have entered into this Extension Agreement.

8.    **Waiver of Benefits of Civil Code, Section 1542.**  Borrower understands that in entering into this Extension Agreement it is releasing claims which may currently exist but which it may not know about.  Borrower expressly waives any and all benefits of Section 1542 of the California Civil Code, to the extent that the Parties are releasing claims known and unknown, matured or inchoate.  California Civil Code, Section 1542 reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

_____
Borrower's Initials

9.    **Continuation of Security Interest in the Property.**  Nothing herein contained or done pursuant hereto shall affect or be construed to affect the lien, charge or encumbrance of any Deed of Trust in favor of Lender or the property thereof as to any other liens, charges or encumbrances, nor shall anything contained herein or done pursuant hereto release or affect or be construed to release or affect the liability of any Borrower or other part whomsoever who may now or hereafter be liable under the Loan Documents.

10.    **Continuation of the Loan Documents.**

(a)    Except as expressly modified by this Extension Agreement, Borrower shall continue to be bound by each and every term, provision, covenant, condition and obligation contained in or incorporated by reference in the Promissory Note, the Deed of Trust, and in each and every other Loan Document or instrument made, executed or provided by Borrower at any time in connection with the Loan.

(b)    Notwithstanding the fact that the term of the Loan has been extended, Borrower shall nevertheless continue to be bound by all of the terms, covenants and conditions of the Deed of Trust and Promissory Note and all other Loan Documents.  Said terms and conditions include, but not limited to, maintaining fire and hazard insurance on the property, thereby insuring the Lender's interest for the amount of the unpaid principal balance of the promissory note for the term as extended.

11.    **Undefined Terms.**  Terms which are not defined in this Extension Agreement shall have the same meaning as defined terms in the Loan Documents.

12. **No Releases.** Nothing herein contained or done pursuant to this Extension Agreement shall affect. or be construed to affect the lien, charge or encumbrance of the Deed of Trust or the Property thereof as to any other liens, charges or encumbrances nor shall anything contained in this Extension Agreement release or affect or be construed to release or affect the liability of the Borrower to satisfy the terms of the Loan Documents.

13. **Limitations.** Nothing contained herein shall obligate or be deemed to obligate Lender to grant Borrower any further extension of the Maturity Date or to otherwise modify the Loan Documents or any of them.

14. **Other Documents and Expenses.** Borrower shall sign such other documents as may be required to facilitate the intent of this Extension Agreement.

15. **Conflict in Terms.** In the event of a conflict between the terms of this Extension Agreement and any of the Loan Documents, this Extension Agreement shall be deemed to be the controlling agreement of the Parties.

16. **Ratification.** Except as amended by the terms of this Extension Agreement, the Loan Documents are hereby ratified and confirmed in all respect and all terms, covenants, and conditions of the Loan and the Loan Documents shall remain in full force and effect and shall remain unaffected, unchanged, and unimpaired by reason of the foregoing modification.

17. **Modification.** This Extension Agreement contains the entire understanding of the Parties hereto, and supersedes all prior representations, and agreements with respect the matters set forth in this Extension Agreement, and cannot be altered, amended, modified (except in writing signed by Lender and Borrower.)

18. **Counter-Parts and Electronic Copies.** This Extension Agreement may be executed in counterparts and by facsimile. All counterparts taken together shall constitute one and the same instrument, and a copy executed and delivered by electronic means (such as facsimile or e-mail) shall have the same force and effect as an original.

*(Signatures on Following Page)*

# SIGNATURE PAGE TO

## LOAN EXTENSION AGREEMENT

BY THEIR SIGNATURES BELOW, THE UNDERSIGNED REPRESENT THAT THEY HAVE READ THE FOREGOING AGREEMENT, AND FULLY UNDERSTAND AND AGREE TO EACH AND ALL OF THE TERMS AND CONDITIONS SET FORTH THEREIN.

**BORROWER:**

Jinzheng Group (USA) LLC
a California limited liability company

Dated: April 8, 2020

By: _____ on Behalf of JIANQING YANG
Jianqing Yang, President

**LENDER:**

Bobs LLC.
a Nevada limited liability company

Dated: April 8, 2020

By: _____
Rommy Shy, Manager

## GUARANTOR'S ACKNOWLEDGMENT:

The undersigned is a Guarantor of the Loan and hereby confirms her agreement that nothing set forth in this Extension Agreement shall exonerate or otherwise release Guarantor from her obligations, duties and/or liabilities under any guaranty provided by the undersigned to Lender as additional consideration for the making of the Loan. Guarantor further confirms her understanding that the in the event of a default of the Loan all amounts set forth in this Extension Agreement (including the Extension Fees) shall be included as a part of the amounts guaranteed by Guarantor pursuant to the Payment Guaranty which a part of the Loan Documents.

Dated: April 8, 2020

_____ on Behalf of JIANQING YANG
Jianqing Yang

*(Remainder of Page – Intentionally Blank)*

## LOAN EXTENSION AGREEMENT

This Loan Extension Agreement (this "Extension Agreement") is entered into as the ___8th___ day of April, 2020 (the "Effective Date"), by and between **Bobs LLC, a Nevada limited liability company** ("Lender") and **Jinzheng Group (USA) LLC, a California limited liability company** ("Borrower"). Lender and Borrower are collectively referred to herein as the "Parties" and individually as a "Party."

### RECITALS

A.      By virtue of that certain Note Secured by Deed of Trust note dated **September 4, 2018** (the "**Promissory Note**"), Borrower did borrow from Lender the original principal amount of **$7,000,000.00** (the "Loan").

B.      The Promissory Note is secured by that certain Deed of Trust with Assignment of Rents and Fixture Filing (the "**Deed of Trust**") recorded on September 10, 2018 in the Office of the County Recorder for the County of Los Angeles as Document No. 20180916691.

C.      The Deed of Trust is a first priority lien against that certain real property commonly referred to as 2929 Amethyst Street, Los Angeles, CA 90032 (the "Property") as more fully described in the Deed of Trust.

D.      The Loan matured on April 1, 2020.

E.      Borrower has requested an extension of the Maturity Date of the Loan.

F.      Lender has agreed to the requested extension of the Maturity Date of the Loan, subject to the terms and conditions of this Extension Agreement.

NOW THEREFORE in consideration of the covenants and conditions contained herein and other good valuable consideration Lender and Borrower agree as follows:

### AGREEMENT

1.      **Recitals.**  The Recitals set forth above are incorporated herein as the terms of this Extension Agreement as if restated herein in full.

2.      **Maturity Date.**  Notwithstanding anything to the contrary set forth in the Promissory Note, the Deed of Trust or any other loan documents pertaining to the Loan (collectively, the "Loan Documents"), the Maturity Date for the Loan shall be **October 1, 2020**, at which time all amounts due and owing from Borrower to Lender shall be paid, subject to the terms of the Loan Agreement and this Extension Agreement.

3.      **Consideration for the Extension of the Loan.**  As consideration for this Extension Agreement, shall pay to Lender the following amounts:

(a)      If Borrower repays the Loan, in full, on or before July 1, 2020, an Extension Fee equal to $350,000.00 shall be paid to Lender concurrent with the full repayment of the Loan;

(b)      If Borrower does not repay the Loan, in full on or before July 1, 2020, an Extension Fee equal to $560,000.00 shall be paid to Lender at or before the Maturity Date.

(c)      The Extension Fees, set forth in this paragraph 3, have been negotiated by the Parties in arms length's negotiations, with both all parties represented by legal counsel. Borrower understands that the Extension Fees were of material consideration for the extension of the Maturity Date and the agreement of the Lender not to commence a foreclosure of the Property. Borrower has been informed that the term of the Loan and the expectation of a timely pay-off were of material consider in Lender's making the Loan and that had made arrangements for the use of the proceeds from the pay-off of the Loan and that the failure of the Borrower to timely pay-off the Loan has caused Lender to modify its plans to accommodate Borrower, as set forth in this Extension Agreement.

(d)      Borrower acknowledges and agrees as between Borrower and Lender, the repayment of the Loan prior to or after July 1, 2020 is a matter in Borrower's control and that Lender has no control over when Borrower elects to repay the Loan.

4.      **Payments Due on the Loan.**

(a)      Borrower has failed to make the monthly interest payment in the amount of $56,875.00, which was due on April 1, 2020 (the "April 1 Payment"). The April 1 Payment shall be deferred such that it shall be paid by Borrower to Lender at the earlier of the full repayment of the Loan by Borrower or the Maturity Date.

(b)      On each of May 1, 2020, June 1, 2020, July 1, 2020, August 1, 2020 and September 1, 2020, Borrower shall make a payment of interest only to Lender, in the amount of **$56,875.00.**

(c)      On the Maturity Date (which is October 1, 2020) Borrower shall pay all amounts due and owing on the Loan, including all amounts due under the Promissory Note and this Extension Agreement.

5.      **Lender's Legal Fees.** As a result of Borrower's failure to timely repay the Loan and request for an extension of the Maturity Date, Lender has retained legal counsel to review the loan documents, advise Lender and prepare this Extension Agreement. As a condition to this Extension Agreement becoming effective Borrower shall pay to Lender the amount of $1,250.00 as reimbursement for Lender's legal fees at the time of the execution of this Extension Agreement.

6.      **Default Interest.** Borrower acknowledges and agrees that the Loan will be subject to the Default Rate set forth in paragraph 4(D) of the Promissory Note in the event of any breach of the Loan Documents, including but not limited to a failure by Borrower to fully repay all amounts due and owing to Lender on the Loan on or before the Maturity Date.

7.      **Borrower Representations and Warranties.** Borrower represents and warrants to Lender as follows:

(a)      The Loan Documents, and each of them, including but not limited to the Promissory Note and the Deed of Trust, as modified and/or amended, are enforceable obligations of Borrower.

(b)      Lender is not in default of any of the terms of the Promissory Note, the Deed of Trust or any other loan documents given by Borrower to Lender in connection with the Loan and no conditions exist that with the passage of time could create a default of Lender under the Loan Documents.

(c)      All representations and warranties in the Loan Documents are hereby ratified and remain true and correct.

(d)      There are no facts, circumstances or conditions which render the Loan Documents unenforceable.

(e)      There are no defects in the Loan Documents or defenses to the enforceability of the Loan Document as against Borrower.

(f)      If there are any defects in the Loan Documents or defense to the enforceability of the Loan Documents, whether known or unknown, suspected or unsuspected, choate or inchoate, Borrower, hereby by waives any such claim regarding a defect in the Loan Documents or defense as to the enforceability of the Loan Documents. In waiving any claim regarding a defect in the Loan Documents or defense as to the enforceability of the Loan Documents providing this representation and warrant Borrower understands and agrees that but for these representations and warranties Lender would not have entered into this Extension Agreement.

8.      **Waiver of Benefits of Civil Code, Section 1542.** Borrower understands that in entering into this Extension Agreement it is releasing claims which may currently exist but which it may not know about. Borrower expressly waives any and all benefits of Section 1542 of the California Civil Code, to the extent that the Parties are releasing claims known and unknown, matured or inchoate. California Civil Code, Section 1542 reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

_____
Borrower's Initials

9.      **Continuation of Security Interest in the Property.** Nothing herein contained or done pursuant hereto shall affect or be construed to affect the lien, charge or encumbrance of any Deed of Trust in favor of Lender or the property thereof as to any other liens, charges or encumbrances, nor shall anything contained herein or done pursuant hereto release or affect or be construed to release or affect the liability of any Borrower or other part whomsoever who may now or hereafter be liable under the Loan Documents.

10.      **Continuation of the Loan Documents.**

(a)      Except as expressly modified by this Extension Agreement, Borrower shall continue to be bound by each and every term, provision, covenant, condition and obligation contained in or incorporated by reference in the Promissory Note, the Deed of Trust, and in each and every other Loan Document or instrument made, executed or provided by Borrower at any time in connection with the Loan.

(b)      Notwithstanding the fact that the term of the Loan has been extended, Borrower shall nevertheless continue to be bound by all of the terms, covenants and conditions of the Deed of Trust and Promissory Note and all other Loan Documents. Said terms and conditions include, but not limited to, maintaining fire and hazard insurance on the property, thereby insuring the Lender's interest for the amount of the unpaid principal balance of the promissory note for the term as extended.

11.      **Undefined Terms.** Terms which are not defined in this Extension Agreement shall have the same meaning as defined terms in the Loan Documents.

12.    **No Releases.**  Nothing herein contained or done pursuant to this Extension Agreement shall affect, or be construed to affect the lien, charge or encumbrance of the Deed of Trust or the Property thereof as to any other liens, charges or encumbrances nor shall anything contained in this Extension Agreement release or affect or be construed to release or affect the liability of the Borrower to satisfy the terms of the Loan Documents.

13.    **Limitations.**  Nothing contained herein shall obligate or be deemed to obligate Lender to grant Borrower any further extension of the Maturity Date or to otherwise modify the Loan Documents or any of them.

14.    **Other Documents and Expenses.**  Borrower shall sign such other documents as may be required to facilitate the intent of this Extension Agreement.

15.    **Conflict in Terms.**  In the event of a conflict between the terms of this Extension Agreement and any of the Loan Documents, this Extension Agreement shall be deemed to be the controlling agreement of the Parties.

16.    **Ratification.**  Except as amended by the terms of this Extension Agreement, the Loan Documents are hereby ratified and confirmed in all respect and all terms, covenants, and conditions of the Loan and the Loan Documents shall remain in full force and effect and shall remain unaffected, unchanged, and unimpaired by reason of the foregoing modification.

17.    **Modification.**  This Extension Agreement contains the entire understanding of the Parties hereto, and supersedes all prior representations, and agreements with respect the matters set forth in this Extension Agreement, and cannot be altered, amended, modified (except in writing signed by Lender and Borrower.)

18.    **Counter-Parts and Electronic Copies.**  This Extension Agreement may be executed in counterparts and by facsimile. All counterparts taken together shall constitute one and the same instrument, and a copy executed and delivered by electronic means (such as facsimile or e-mail) shall have the same force and effect as an original.

*(Signatures on Following Page)*

SIGNATURE PAGE TO

LOAN EXTENSION AGREEMENT

BY THEIR SIGNATURES BELOW, THE UNDERSIGNED REPRESENT THAT THEY HAVE READ THE FOREGOING AGREEMENT, AND FULLY UNDERSTAND AND AGREE TO EACH AND ALL OF THE TERMS AND CONDITIONS SET FORTH THEREIN.

BORROWER:

Jinzheng Group (USA) LLC
a California limited liability company

Dated: April 8, 2020

By: _____ on Behalf of JIANQING YANG
Jianqing Yang, President

LENDER:

Bobs LLC.
a Nevada limited liability company

Dated: April 8, 2020

By: _____
Rommy Shy, Manager

GUARANTOR'S ACKNOWLEDGMENT:

The undersigned is a Guarantor of the Loan and hereby confirms her agreement that nothing set forth in this Extension Agreement shall exonerate or otherwise release Guarantor from her obligations, duties and/or liabilities under any guaranty provided by the undersigned to Lender as additional consideration for the making of the Loan.  Guarantor further confirms her understanding that the in the event of a default of the Loan all amounts set forth in this Extension Agreement (including the Extension Fees) shall be included as a part of the amounts guaranteed by Guarantor pursuant to the Payment Guaranty which a part of the Loan Documents.

Dated: April 8, 2020

_____ on Behalf of JIANQING YANG
Jianqing Yang

*(Remainder of Page – Intentionally Blank)*

# EXHIBIT E

| | Principal | Interest | Default / Extension Fees | Late Fees | Trustee Fees | Payments | Notes |
|---|---|---|---|---|---|---|---|
| 9/18/2019 | $7,000,000 | | | | | | |
| 1/1/2020 | | | | | | | |
| 2/1/2020 | | $56,875.00 | | $5,687.00 | | | Interest rate: 9.75% |
| 2/26/2020 | | | $25,277.00 | | | | Default for 2/1/2020 through 2/26/2020 |
| 2/27/2020 | | | | | | $62,562.50 | |
| 3/1/2020 | | $56,875.00 | | $5,687.00 | | | Interest rate: 9.75% |
| 3/26/2020 | | | $24,305.55 | | | $62,562.50 | Default for 3/1/2020 through 3/25/2020 |
| 4/1/2020 | | $56,875.00 | | | | | Interest rate: 9.75% |
| 5/1/2020 | | $56,875.00 | | | | | Interest rate: 9.75% |
| 5/8/2020 | | | | | | $56,875.00 | |
| 6/1/2020 | | $56,875.00 | | | | | Interest rate: 9.75% |
| 6/2/2020 | | | | | | $56,875.00 | |
| 7/1/2020 | | $56,875.00 | $29,166.00 | $5,687.00 | | | Interest rate: 9.75% |
| 8/1/2020 | | $56,875.00 | $29,166.00 | $5,687.00 | | | Interest rate: 9.75% |
| 9/1/2020 | | $56,875.00 | $29,166.00 | $5,687.00 | | | Interest rate: 9.75% |
| 10/1/2020 | | $56,875.00 | $29,166.00 | $5,687.00 | | | Interest rate: 9.75% |
| 11/1/2021 | | $56,875.00 | $29,166.00 | $5,687.00 | | | Interest rate: 9.75% |
| 11/25/2020 | | $47,395.83 | $24,305.00 | | | | Interest rate: 9.75% |
| 11/25/2020 | | | $560,000.00 | | | | |
| | | | | | $15,768.75 | | |
| | | | | | $2,328.80 | | |
| | | | | | $155.00 | | |
| | **$7,000,000.00** | **$616,145.83** | **$779,717.55** | **$39,809.00** | **$18,252.55** | **$238,875.00** | |
| 11/25-11/30/2020 | **$8,215,049.93** | $13,691.75 | | | | | Interest rate: 12% |
| 1/1/2021 | | $82,150.50 | | | | | Interest rate: 12% |
| 2/1/2021 | | $82,150.50 | | | | | Interest rate: 12% |
| 3/1/2021 | | $82,150.50 | | | | | Interest rate: 12% |
| 4/1/2021 | | $82,150.50 | | | | | Interest rate: 12% |
| 5/1/2021 | | $82,150.50 | | | | | Interest rate: 12% |
| 6/1/2021 | | $87,216.45 | $34,230.02 | | | $87,216.45 | Interest rate: 12% |
| 7/1/2021 | | $87,216.45 | $34,230.02 | | | $87,216.45 | Interest rate: 12% |
| 8/1/2021 | | $87,216.45 | $34,230.02 | | | | Interest rate: 12% |
| 8/23/2021 | | $66,865.60 | $26,243.00 | | | | Interest rate: 12% |
| Closing Fee | | | $430,500.00 | | | | |
| **SUBTOTAL** | *$8,215,049.93* | *$752,959.20* | *559,433.06* | | | *174,432.90* | |
| **TOTAL** | **$9,353,009.29** | | | | | | |

# EXHIBIT F

## LOAN EXTENSION AGREEMENT

This Loan Extension Agreement (this "Extension Agreement") is entered into as the 25 day of November, 2020 (the "Effective Date"), by and between **Royalty Equity Lending LLC, a California limited liability company** ("Lender") and **Jinzheng Group (USA) LLC, a California limited liability company** ("Borrower"). Lender and Borrower are collectively referred to herein as the "Parties" and individually as a "Party."

### RECITALS

  A. By virtue of that certain Note Secured by Deed of Trust note dated **September 4, 2018** (the "**Promissory Note**"), Borrower did borrow from Lender the original principal amount of **$7,000,000.00** (the "**Loan**").

  B. The Promissory Note is secured by that certain Deed of Trust with Assignment of Rents and Fixture Filing (the "**Deed of Trust**") recorded on September 10, 2018 in the Office of the County Recorder for the County of Los Angeles as Document No. 20180916691.

  C. The Deed of Trust is a first priority lien against that certain real property commonly referred to as 2929 Amethyst Street, Los Angeles, CA 90032 (the "Property") as more fully described in the Deed of Trust.

  D. The Loan matured on April 1, 2020.

  E. Borrower requested an extension of the Maturity Date of the Loan to October 1, 2020 in exchange for a $560,000.00 Loan Extension Fee and a Loan Extension Agreement was signed by Borrower and Lender on or about April 8, 2020.

  F. The Parties acknowledge that the April, 2020 Loan Extension Agreement incorrectly identified Bobs, LLC, as the "Lender" however, the Parties understood and agreed that said identification was a scrivener's error and that the Lender is in fact Royalty Equity Lending LLC, a California limited liability company, the Lender identified here.

  G. NOW THEREFORE in consideration of the covenants and conditions contained herein and other good valuable consideration Lender and Borrower agree as follows:

### AGREEMENT

  **1.** **Recitals.** The Recitals set forth above are incorporated herein as the terms of this Extension Agreement as if restated herein in full.

  **2.** **Maturity Date.** Notwithstanding anything to the contrary set forth in the Promissory Note, the Deed of Trust or any other loan documents pertaining to the Loan (collectively, the "Loan Documents"), the Maturity Date for the Loan shall be extended until **June 1, 2021,** at which time all amounts due and owing from Borrower to Lender shall be paid, subject to the terms of the Loan Agreement and this Extension Agreement.

  **3.** **Consideration for the Extension of the Loan.** As consideration for this Extension Agreement, Borrower hereby agrees to the following terms:

   (a) Borrower shall payoff all liens on 2526-2528 Lincoln Park Ave., 2520-2522 Lincoln Park Ave., 2600 Sierra St. and 2602 Lincoln Park Ave. Los Angeles, CA 90031 and deliver to Lender a new First (1st) priority deed of trust against each of the subject four (4) properties, and provide to Lender a Lender's policy of title insurance on each of the parcels, with each such policy of title insurance to be issued by North American Title Company ("Title") and said title insurance to

name Lender as the insured thereunder.  Said Deed of Trust shall be recorded as soon as possible by Title at the Los Angeles County Recorder. These four (4) new Deeds of Trust referenced in this paragraph 3(a) shall provide additional security for the obligations set forth in the Promissory Note and shall be referred to herein as the "Additional Collateral".

(b)    Borrower acknowledges and agrees that the balance due to Lender under the terms and conditions of the Loan Documents as of November 25, 2020  is  **$8,354,419.00** ("Loan Balance").  Borrower has had the opportunity to review Lender's accounting and agrees that the loan balance amount above represents the true and correct amount owed.

(c)    Commencing on November 25, 2020, interest on the loan balance will accrue at the rate of 12% per annum ("Accrued Interest") until loan payoff is made in full.

(d)    As further consideration for the extension of the Loan, Borrower will pay Lender an additional Loan Extension Fee of $430,500 ("Loan Extension Fee")  the payment of which shall be paid at the time of loan payoff. This Fee shall be in lieu of paying Rommy Shy this amount as was initially proposed by Borrower. The Loan Extension Fee shall be fully earned by Lender upon the signing of this agreement irrespective of when loan is paid off and shall be secured by the original Deed of Trust and the Additional Collateral.

(e)    On June 1, 2021 the payoff amount to Lender shall be $8,354,419.00 (Loan Balance) plus $517,973.00 (Accrued Interest) plus $430,500.00 (Loan Extension Fee). Based upon the foregoing, the total loan payoff on June 1, 2021 shall be **$9,302,892.00** in accordance with the Loan Documents and both Extension Agreements.

(f)    Lender will agree to extend the Trustee Sale date until December 10, 2020 upon verification that full amount to payoff liens as described in Section 3(a) and ancillary costs has been deposited in Escrow.

(g)    Borrower and Lender shall enter into a forbearance agreement whereby the Notice of Default will be frozen in place until an Event of Default by Borrower.

(h)    Borrower shall have the right to exercise an additional six (6) Month Extension which will extend the Maturity Date to December 1, 2021 provided that prior to June 1, 2021 Borrower will pay all property taxes due on the Property and on the Additional Collateral. Additionally, on June 1, 2021, Borrower shall begin making monthly interest-only payments in the amounts of $88,723.00 per month with the first payment due by June 1, 2021 for the month of June 2021, with all interest payments for the period from June 1, 2021 to December 1, 2021 to be made in advance and not in arrears as set forth in the Loan Documents.  The interest set forth in this paragraph 3(h) is based upon the $8,354,419.00 (Loan Balance) plus $517,973.00 (Accrued Interest).  Interest shall not accrue on the Loan Extension Fee.

4.    **Default Interest.** Borrower acknowledges and agrees that the Loan will be subject to the Default Rate set forth in paragraph 4(D) of the Promissory Note in the event of any breach of the Loan Documents, including but not limited to a failure by Borrower to fully repay all amounts due and owing to Lender on the Loan on or before the Maturity Date.

5.    **Borrower Representations and Warranties.** Borrower represents and warrants to Lender as follows:

(a)    The Loan Documents, and each of them, including but not limited to the Promissory Note and the Deed of Trust, as modified and/or amended, are enforceable obligations of Borrower.

(b)    Lender is not in default of any of the terms of the Promissory Note, the Deed of Trust or any other loan documents given by Borrower to Lender in connection with the Loan and no conditions exist that with the passage of time could create a default of Lender under the Loan Documents.

(c)    All representations and warranties in the Loan Documents are hereby ratified and remain true and correct.

(d)    There are no facts, circumstances or conditions which render the Loan Documents unenforceable.

(e)    There are no defects in the Loan Documents or defenses to the enforceability of the Loan Document as against Borrower.

(f)    If there are any defects in the Loan Documents of defense to the enforceability of the Loan Documents, whether known or unknown, suspected or unsuspected, choate or inchoate, Borrower, hereby by waives any such claim regarding a defect in the Loan Documents or defense as to the enforceability of the Loan Documents. In waiving any claim regarding a defect in the Loan Documents or defense as to the enforceability of the Loan Documents providing this representation and warrant Borrower understands and agrees that but for these representations and warranties Lender would not have entered into this Extension Agreement.

(g)    The terms and conditions in this Agreement have been negotiated by the Parties in arms length's negotiations.  In negotiation of this Extension, as well as the prior Extension, Borrower was represented and advised by Thomas L. Testa of Testa Capital Group (DRE No. 00638529) (the "Broker").  The Broker has advised Borrower of the various financing options available and based upon Broker's advice, Borrower has determined that the Loan Extension provided herein is the preferable option.  Broker is being paid a fee directly by Borrower for representing Borrower in connection with this Extension Agreement.

(h)    Borrower understands that the Extension Fees were of material consideration for the extension of the Maturity Date and the agreement of the Lender not to commence a foreclosure of the Property and/or Additional Collateral. Borrower has been informed that the term of the Loan and the expectation of a timely pay-off were of material consider in Lender's making the Loan and that had made arrangements for the use of the proceeds from the pay-off of the Loan and that the failure of the Borrower to timely pay-off the Loan has caused Lender to modify its plans to accommodate Borrower, as set forth in this Extension Agreement.

6.    **Waiver of Benefits of Civil Code, Section 1542.** Borrower understands that in entering into this Extension Agreement it is releasing claims which may currently exist but which it may not know about. Borrower expressly waives any and all benefits of Section 1542 of the California Civil Code, to the extent that the Parties are releasing claims known and unknown, matured or inchoate. California Civil Code, Section 1542 reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."



Borrower's Initials

7.    **Continuation of Security Interest in the Property.** Nothing herein contained or done pursuant hereto shall affect or be construed to affect the lien, charge or encumbrance of any Deed of Trust in favor of Lender or the property thereof as to any other liens, charges or encumbrances, nor shall anything contained herein or done pursuant hereto release or affect or be construed to release or affect the liability of any Borrower or other part whomsoever who may now or hereafter be liable under the Loan Documents.

8.    **Continuation of the Loan Documents.**

(a)    Except as expressly modified by this Extension Agreement, Borrower shall continue to be bound by each and every term, provision, covenant, condition and obligation contained in or incorporated by reference in the Promissory Note, the Deed of Trust, and in each and every other Loan Document or instrument made, executed or provided by Borrower at any time in connection with the Loan.

(b)    Notwithstanding the fact that the term of the Loan has been extended, Borrower shall nevertheless continue to be bound by all of the terms, covenants and conditions of the Deed of Trust and Promissory Note and all other Loan Documents. Said terms and conditions include, but not limited to, maintaining fire and hazard insurance on the property, thereby insuring the Lender's interest for the amount of the unpaid principal balance of the promissory note for the term as extended.

9.    **Undefined Terms.** Terms which are not defined in this Extension Agreement shall have the same meaning as defined terms in the Loan Documents.

10.    **No Releases.** Nothing herein contained or done pursuant to this Extension Agreement shall affect, or be construed to affect the lien, charge or encumbrance of the Deed of Trust or the Property thereof as to any other liens, charges or encumbrances nor shall anything contained in this Extension Agreement release or affect or be construed to release or affect the liability of the Borrower to satisfy the terms of the Loan Documents.

11.    **Limitations.** Nothing contained herein shall obligate or be deemed to obligate Lender to grant Borrower any further extension of the Maturity Date or to otherwise modify the Loan Documents or any of them.

12.    **Other Documents and Expenses.** Borrower shall sign such other documents as may be required to facilitate the intent of this Extension Agreement.

13.    **Conflict in Terms.** In the event of a conflict between the terms of this Extension Agreement and any of the Loan Documents (including any prior Extension Agreement), this Extension Agreement shall be deemed to be the controlling agreement of the Parties.

14.    **Ratification.** Except as amended by the terms of this Extension Agreement, the Loan Documents are hereby ratified and confirmed in all respect and all terms, covenants, and conditions of the Loan and the Loan Documents shall remain in full force and effect and shall remain unaffected, unchanged, and unimpaired by reason of the foregoing modification.

15.    **Modification.** This Extension Agreement contains the entire understanding of the Parties hereto, and supersedes all prior representations, and agreements with respect the matters set forth in this Extension Agreement, and cannot be altered, amended, modified (except in writing signed by Lender and Borrower.)

16.    **Counter-Parts and Electronic Copies.** This Extension Agreement may be executed in counterparts and by facsimile. All counterparts taken together shall constitute one and the same instrument, and a copy executed and delivered by electronic means (such as facsimile or e-mail) shall have the same force and effect as an original.

*(Signatures on Following Page)*

## *SIGNATURE PAGE TO*

## **LOAN EXTENSION AGREEMENT**

BY THEIR SIGNATURES BELOW, THE UNDERSIGNED REPRESENT THAT THEY HAVE READ THE FOREGOING AGREEMENT, AND FULLY UNDERSTAND AND AGREE TO EACH AND ALL OF THE TERMS AND CONDITIONS SET FORTH THEREIN.

**BORROWER:**

Jinzheng Group (USA) LLC
a California limited liability company

Dated: November 2 5, 2020

By: JIANQING YANG by ~~the~~ as his attorney
in fact
Jianqing Yang, President

**LENDER:**

Royalty Equity Lending LLC.
a California limited liability company

Dated: November 25 , 2020

By: _____
Rommy Shy, Manager

**GUARANTOR'S ACKNOWLEDGMENT:**

The undersigned is a Guarantor of the Loan and hereby confirms her agreement that nothing set forth in this Extension Agreement shall exonerate or otherwise release Guarantor from her obligations, duties and/or liabilities under any guaranty provided by the undersigned to Lender as additional consideration for the making of the Loan. Guarantor further confirms his understanding that the in the event of a default of the Loan all amounts set forth in this Extension Agreement (including the Extension Fees) shall be included as a part of the amounts guaranteed by Guarantor pursuant to the Payment Guaranty which a part of the Loan Documents.

Dated: November 2 5 , 2020

JIANQING YANG by ~~the~~ as his attorney
in fact
Jianqing Yang

*(Remainder of Page – Intentionally Blank)*

**EXHIBIT G**



Los Angeles County
**Treasurer and Tax Collector**



**We have received your payment information; however the transaction will not be reflected on our website until the County of Los Angeles receives the funds from your financial institution, which may take up to seven (7) business days.   The payment will post to our system with the effective date on which you completed your transaction.**

**Your monthly statement will reflect this transaction as: LA Co TTC Paymnt.**

---

**Warning: Do not use your back button, as this may lead to a duplicate payment.**

| Item Number | Assessor's ID No. | Installment Number | Two-Digit Year/ Sequence Number | Description | Payment Amount |
|---|---|---|---|---|---|
| 1 | 5209009001 | 7 | 00000 | Defaulted Secured Property Tax | $602,195.75 |
| 2 | 5209009001 | 1 | 21000 | Current Secured Property Tax | $126,570.91 |
| 3 | 5209005003 | 7 | 00000 | Defaulted Secured Property Tax | $8,358.84 |
| 4 | 5209005003 | 1 | 21000 | Current Secured Property Tax | $1,492.78 |
| 5 | 5208025002 | 7 | 00000 | Defaulted Secured Property Tax | $20,316.68 |
| 6 | 5208025002 | 1 | 21000 | Current Secured Property Tax | $7,219.81 |
| 7 | 5208025001 | 7 | 00000 | Defaulted Secured Property Tax | $28,370.29 |
| 8 | 5208025001 | 1 | 21000 | Current Secured Property Tax | $5,595.99 |
| | | | | Total Payment Amount : | $800,121.05 |

You have authorized the County of Los Angeles Treasurer and Tax Collector to initiate a one-time debit to your account in the amount listed on the "Total Payment Amount" line above as early as today.  If you have any questions, you may contact our Customer Support at 1(213) 974-0540.

**Receipt Number:**       3819836789

**Transaction Date:**     12/08/2021 06:14:55 PM

**Payment Type:**         echeck

**Account Number:**       *0272

---

You also will receive an email confirming this transaction.

**Participate in a survey regarding your use of our site**

**Make Another Payment**

**TTC Home Page**

For help or inquiries regarding eCheck payments, contact us at **echeck@ttc.lacounty.gov**. For all other inquiries, contact us at **info@ttc.lacounty.gov**.
Our business hours are 8:00 a.m. to 5:00 p.m., Pacific Time, Monday through Friday, excluding **Los Angeles County holidays**.
Our office is located in the Kenneth Hahn Hall of Administration, 225 North Hill Street, First Floor Lobby, Los Angeles, CA 90012.

**Terms of Use | Privacy & Security Policy**



Los Angeles County
**Treasurer and Tax Collector**



**We have received your payment information; however the transaction will not be reflected on our website until the County of Los Angeles receives the funds from your financial institution, which may take up to seven (7) business days.   The payment will post to our system with the effective date on which you completed your transaction.**

**Your monthly statement will reflect this transaction as: LA Co TTC Paymnt.**

---

**Warning: Do not use your back button, as this may lead to a duplicate payment.**

| Item Number | Assessor's ID No. | Installment Number | Two-Digit Year/ Sequence Number | Description | Payment Amount |
|---|---|---|---|---|---|
| 1 | 5208025014 | 7 | 00000 | Defaulted Secured Property Tax | $12,145.46 |
| 2 | 5208025014 | 1 | 21000 | Current Secured Property Tax | $5,100.84 |
| | | | | Total Payment Amount : | $17,246.30 |

You have authorized the County of Los Angeles Treasurer and Tax Collector to initiate a one-time debit to your account in the amount listed on the "Total Payment Amount" line above as early as today.  If you have any questions, you may contact our Customer Support at 1(213) 974-0540.

**Receipt Number:**      3819916917

**Transaction Date:**     12/09/2021 01:22:41 PM

**Payment Type:**         echeck

**Account Number:**       *5732

---

You also will receive an email confirming this transaction.

**Participate in a survey regarding your use of our site**

**Make Another Payment**

**TTC Home Page**

For help or inquiries regarding eCheck payments, contact us at **echeck@ttc.lacounty.gov**. For all other inquiries, contact us at **info@ttc.lacounty.gov**.
Our business hours are 8:00 a.m. to 5:00 p.m., Pacific Time, Monday through Friday, excluding **Los Angeles County holidays**.
Our office is located in the Kenneth Hahn Hall of Administration, 225 North Hill Street, First Floor Lobby, Los Angeles, CA 90012.

**Terms of Use | Privacy & Security Policy**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*): MEMORANDUM OF POINTS AND AUTHORITIES RE MOTION FOR RELIEF FROM STAY DECLARATIONS OF ROMMY SHY AND PATRICK TOBIN, TOBIN REAL ESTATE ADVISORS, INC. AND PARDIS AKHAVAN IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/10/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 10/10/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/10/2022 | Max Bonilla | /s/ Max Bonilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [CONTINUED]**</u>:

- Donna C Bullock     donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- Steven P Chang    heidi@spclawoffice.com,
  schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@no
  tify.cincompass.com;changsr75251@notify.bestcase.com
- <u>Counsel for The Phalanx Group:</u> Michael F Chekian    mike@cheklaw.com,
  chekianmr84018@notify.bestcase.com
- Susan Titus Collins    scollins@counsel.lacounty.gov
- <u>Counsel for Official Committee of Unsecured Creditors:</u> Jeffrey W
  Dulberg   jdulberg@pszjlaw.com; Teddy M Kapur   tkapur@pszjlaw.com, mdj@pszjlaw.com
- <u>Counsel for Los Angeles County Treasurer and Tax Collector:</u> Oscar
  Estrada   oestrada@ttc.lacounty.gov
- Richard Girgado   rgirgado@counsel.lacounty.gov
- Peter A Kim    peter@pkimlaw.com, peterandrewkim@yahoo.com
- Christopher J Langley   chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com
- <u>Counsel for Michael and Shari Dorff:</u> Benjamin R Levinson    ben@benlevinsonlaw.com,
  courtney@benlevinsonlaw.com
- <u>Counsel for Corona Capital Group:</u> Eric A Mitnick    MitnickLaw@aol.com,
  mitnicklaw@gmail.com
- Giovanni Orantes    go@gobklaw.com, gorantes@orantes-
  law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notif
  y.bestcase.com
- Donald W Reid    don@donreidlaw.com, ecf@donreidlaw.com
- <u>Counsel for Royalty Equity Lending:</u> Matthew D. Resnik    matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@r
  hmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;
  sloan@rhmfirm.com
- Peter J Ryan    ryan@floresryan.com, pryancfi@gmail.com
- <u>Counsel for Investment Management Company, LLC:</u> Allan D Sarver    ADS@asarverlaw.com
- David Samuel Shevitz    david@shevitzlawfirm.com,
  shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- <u>Counsel for United States Trustee (LA):</u> Hatty K Yip    hatty.yip@usdoj.gov,
  hatty.k.yip@usdoj.gov
- <u>Counsel for Royal Business Bank</u>: Nicholas S Couchot  ncouchot@buchalter.com
- <u>Counsel for Sound Equity Inc.:</u>  Paul J Leeds Pleeds@fsl.law
- <u>Counsel for Jinzheng Group (USA) LLC:</u> Danielle R Gabai dgabai@danninggill.com; Alphamorlai
  Lamine Kebeh akebeh@danninggill.com; Zev Shechtman zshechtman@DanningGill.com

2. <u>**SERVED BY UNITED STATES MAIL [CONTNIUED]**</u>:

JINZHENG GROUP LLC
1414 S Azusa Ave, Suite B-22
West Covina, CA 91791


Judge's Copy
Hon. Judge Ernest Robles
255 E. Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA 90012