1  ZEV SHECHTMAN (State Bar No. 266280)
   *zs@DanningGill.com*
2  ALPHAMORLAI L. KEBEH (State Bar No. 336798)
   *akebeh@DanningGill.com*
3  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
4  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
5  Facsimile: (310) 277-5735

6  General Bankruptcy Counsel for Jinzheng Group
   (USA) LLC, Debtor and Debtor in Possession
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                **LOS ANGELES DIVISION**

11

12  In re                              Case No. 2:21-bk-16674-ER

13  JINZHENG GROUP (USA) LLC,          Chapter 11

14          Debtor.                    **DEBTOR'S NOTICE OF MOTION AND
                                        MOTION TO AUTHORIZE SALE OF
15                                      REAL PROPERTY LOCATED AT
                                        150 EAST LA SIERRA DRIVE,
16                                      ARCADIA, CALIFORNIA 91006, FREE
                                        AND CLEAR OF LIENS;
17                                      MEMORANDUM OF POINTS AND
                                        AUTHORITIES, DECLARATIONS OF
18                                      ZHAO PU YANG, KENNY YU, WILLIAM
                                        FRIEDMAN, STEPHEN ENG, AND
19                                      ALPHAMORLAI L. KEBEH, AND
                                        REQUEST FOR JUDICIAL NOTICE IN
20                                      SUPPORT THEREOF

21                                      Date:    November 15, 2022
                                        Time:    11:00 a.m.
22                                      Crtrm.:  1568
                                                 255 East Temple Street
23                                                Los Angeles, California 90012

24

25

26

27

28

1695843.2  27086                        1

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................8

I. FACTUAL STATEMENT ........................................................................................................8

    A.    Bankruptcy Background ...............................................................................8

    B.    The Subject Property ...................................................................................8

    C.    Proposed Treatment of Liens Against the Property...................................9

           1.    The Subject Liens .........................................................................9

    D.    The Debtor's Marketing Efforts and Proposed Sale.................................10

II. PROPOSED OVERBID PROCEDURES ................................................................................11

III. LEGAL DISCUSSION...........................................................................................................13

    A.    The Proposed Sale of the Assets is Supported by the Debtor's Sound
         Business Judgment and is in the Best Interests of the Debtor's Estate and Its
         Creditors ....................................................................................................13

    C.    The Sale Should be Free and Clear of Default Interest Because Default
         Interest Is In Bona Fide Dispute ...............................................................14

    D.    The Sale Should be Free and Clear of Sound's Claim for Attorneys' Fees
         Because They are In Bona Fide Dispute....................................................17

    E.    The Sale Should be Free and Clear of Sound's Claim for Miscellaneous Fees
         Because They are In Bona Fide Dispute....................................................17

    F.    The TCS and Lien is Avoidable as a Preferential Transfer and Because It
         Was Not Property Perfected Under Applicable Law.................................18

           1.    The TCS Lien is an Avoidable Preference ...................................18

           2.    The TCS Lien and the Resco Lien are Avoidable Under the Trustee's
                 Strong Arm Powers.......................................................................19

    G.    The Proposed Sale May be Authorized Under Section 363 of the Bankruptcy
         Code ...........................................................................................................21

    H.    The Debtor Requests that the Court Find that the Buyers and Any Backup
         Buyer Are Good Faith Purchasers Pursuant to Section 363(m) of the
         Bankruptcy Code.......................................................................................22

    I.    Waiver of FRBP 6004(h) is Warranted ...................................................22

IV. CONCLUSION .....................................................................................................................23

DECLARATION OF ZHAO PU YANG .......................................................................................24

DECLARATION OF KENNY YU ...............................................................................................25

i

1

# TABLE OF CONTENTS
### (Continued)

2

Page

3   DECLARATION OF WILLIAM FRIEDMAN ................................................................26

4   DECLARATION OF STEPHEN ENG .........................................................................28

5   DECLARATION OF ALPHAMORLAI L. KEBEH .......................................................30

6   REQUEST FOR JUDICIAL NOTICE ...........................................................................31

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**CASES**

Page

3    <u>Coward v. AC & S, Inc.</u>,
        91 Fed. Appx. 919, 924 (5th Cir. 2004)............................................................. 17

4

5    <u>Ewell v. Diebert (In re Ewell)</u>,
        958 F.2d 276, 281 (9th Cir. 1992) ................................................................... 22

6    <u>Foss v. Boardwalk Partners (In re Boardwalk Partners)</u>,
        171 B.R. 87 (Bankr. D. Ariz. 1994)................................................................. 15

7

8    <u>Gen. Elec. Capital Corp. v. Future Media Prods., Inc.</u>,
        536 F.3d 969, 974 (9th Cir. 2008) ................................................................... 14

9    <u>In re 3MB, LLC</u>,
        609 B.R. 841 (Bankr. E.D. Cal. 2019)............................................................. 14

10

11    <u>In re 450 S. W. Ave., LLC</u>,
        633 B.R. 894, 898 (B.A.P. 9th Cir. 2021) ....................................................... 19

12    <u>In re 785 Partners LLC</u>,
        470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012)............................................... 14, 15

13

14    <u>In re Beltway One Dev. Grp., LLC</u>,
        547 B.R. 819, 830 (B.A.P. 9th Cir. 2016) ....................................................... 14

15    *In re Continental Air Lines, Inc.*,
        780 F.2d 1223 (5th Cir. 1986) ......................................................................... 13

16

17    *In re Derivium Capital, LLC*,
        380 B.R. 392 (Bankr. D.S.C. 2007)................................................................. 13

18    <u>In re DWS Invs., Inc.</u>,
        121 B.R. 845, 849 (Bankr. C.D. Cal. 1990) .............................................. 14, 15

19

20    <u>In re Jack Kline Co. Inc.</u>,
        440 B.R. 712, 747 (Bankr. S.D. Tex. 2010) .................................................... 15

21    *In re Lahijani*,
        325 B.R. 282 (B.A.P. 9th Cir. 2005) ............................................................... 13

22

23    <u>In re Laymon</u>,
         958 F.2d 72, 75 (5th Cir. 1992) ...................................................................... 14

24    *In re Lionel Corp.*,
        722 F.2d 1063 (2d Cir. 1983) ......................................................................... 13

25

26    <u>In re McCoy</u> (Bankr. D. Ariz. 1984)
        46 B.R. 9, 9 ..................................................................................................... 18

27    <u>In re Pine Coast Enters., Ltd.</u>,
        147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) .......................................................... 22

28

# TABLE OF AUTHORITIES
### (Continued)

**Page**

In re Process Property Corp.,
    327 B.R. 603, 609 (Bankr. N.D. Tex. 2005)........................................................................... 15

In re Rincon Island Ltd. Partnership,
    253 B.R. 880, 884 (Bankr. C.D. Cal. 2000) ........................................................................ 20

In re Texas Star Indus. Group, Ltd. Co.,
    2007 WL 4522323 at 3 (Bankr. N.D. Tex. Dec. 19, 2007) ................................................ 15

In re Valdez,
    324 B.R. 296, 300 (Bankr. S.D. Tex. 2005) ...................................................................... 17

In re Wahl,
    407 B.R. 883, 887, 893–94 (Bankr. S.D. Ohio 2009) ........................................................ 18

Sec. & Exch. Comm'n v. Capital Cove Bancorp LLC,
    2015 WL 9701154 at 11 (C.D. Cal. Oct. 13, 2015)........................................................... 14

Southland Corp. v. Toronto–Dominion (In re Southland Corp.),
    160 F.3d 1054 (5th Cir. 1998) ..................................................................................... 14, 15

*Stephens Indus., Inc. v. McClung*,
    789 F.2d 386 (6th Cir. 1986) ............................................................................................ 13

## STATUTES

11 U.S.C. § 1107(a) ..................................................................................................................... 8

11 U.S.C. § 1108............................................................................................................................ 8

11 U.S.C. § 363(b)(1) ................................................................................................................. 13

11 U.S.C. § 363(f)(3) .................................................................................................................. 21

11 U.S.C. § 363(f)(4) ............................................................................................................. 19, 21

11 U.S.C. § 363(m) ..................................................................................................................... 22

11 U.S.C. § 506(b) ................................................................................................................. 14, 17

11 U.S.C. § 546 ...................................................................................................................... 19, 20

11 U.S.C. § 546(b)....................................................................................................................... 20

11 U.S.C. § 547(b) ...................................................................................................................... 18

11 U.S.C. § 547(e)(2)(C) ............................................................................................................ 18

11 U.S.C. § 547(f)........................................................................................................................ 19

1

## TABLE OF AUTHORITIES
### (Continued)

2

**Page**

3

Cal. Civ. Code § 8460....................................................................................................... 19

4

California Civil Code § 8460(a) ....................................................................................... 19

5

**RULES**

6

FRBP 6004(h)..................................................................................................................... 23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO THE HONORABLE ERNEST M. ROBLES AND INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on November 15, 2022 at 11:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1568 of the United States Bankruptcy Court, 255 E. Temple Street, Los Angeles, California, Jinzheng Group (USA), LLC, Debtor and Debtor in Possession (the "Debtor"), will and hereby does move (the "Motion") the Court under 11 U.S.C. §§ 363(b) and (f), and Local Bankruptcy Rules 6004-1(c) and 9013-1, for an order authorizing the sale of the estate's right, title and interest in real property located at 150 East La Sierra Drive, Arcadia, California 91006 (the "Property"), free and clear of liens, interests, and other encumbrances. The proposed sale is pursuant to a Purchase and Sale Agreement (the "PSA"), a copy of which is attached to the declaration of Alphamorlai L. Kebeh as Exhibit "1."

The Motion is made on the following grounds: the Debtor is requesting authority to sell the Property free and clear of liens pursuant to 11 U.S.C. § 363.

Pursuant to Local Bankruptcy Rule 6004-1(c), the Debtor provides the following information:

A.    The date, time and place of the hearing on the Motion are set forth above.

B.    The Debtor has proposed the sale of the Property to Kenny Yu (the "Buyer"), subject to opportunities for overbidding.

C.    The property to be sold consists of all of the Debtor's right, title, and interest in the Property, which is located at 150 East La Sierra Drive, Arcadia, California 91006, bearing Assessor Parcel Number 5781-010-063.

D.    Any and all contingencies relating to the sale have been waived, and thus the sale will not be contingent upon any events or conditions other than this Court's approval and potential overbidding.

E.    The Property will be sold for **$2,100,000 (the "Proposed Sale Price"), subject to overbid, in its "as is," "where is" condition, with no warranty or recourse whatsoever.** The Buyer has conducted all due diligence on the Property that the Buyer believes is necessary for the completion of this sale.

F.      Based on a review of the Debtor's schedules, proofs of claim filed in the Debtor's case, and a preliminary title report,[1] the only known liens and encumbrances against the Property are:

1.      A deed of trust in favor of Sound Equity Inc. ("Sound"), securing a note in the amount of approximately $2,340,000 (the "Sound Deed of Trust").  According to Sound, the current amount of debt outstanding on the note is approximately $1,928,454.69.  This amount is allegedly comprised of a principal debt of $1,551,633.59, standard interest charges in the amount of $12,011.88, default interest charges in the sum of approximately $302,050.64, attorneys' fees in the amount of at least $8,100, and various other fees and charges in the amount of $54,658.58 (the "Miscellaneous Fees").

2.      A claim of mechanic's lien in favor of Resco Electric, Inc. ("Resco"), in the amount of $3,837.24 (the "Resco Lien").

3.      A claim of mechanic's lien in favor of the TCS Building Solution, Inc. ("TCS"), in the amount of $350,000 (the "TCS Lien").

The liens and claims in favor of Sound, Resco and TCS are referred to hereinafter collectively as the "Subject Liens."  The Debtor disputes: (a) the default interest, attorneys' fees, and Miscellaneous Fees asserted by Sound[2], (b) the Resco lien, and (c) the TCS Lien.  The Debtor is preparing to object to such disputed portions of the Subject Liens.  Thus, such disputed portions of the Subject Liens are subject to a bona fide dispute under section 363(f)(4) of the Bankruptcy Code.  Accordingly, the Debtor seeks to sell the Property free and clear of the Subject Liens, including free and clear of the disputed portions.  The Debtor intends to sell the Property free and clear of these liens, satisfy the undisputed amounts owed under the Subject Liens in full from the net sale proceeds, and attach the disputed portions to the net proceeds of the sale with the same force, effect, validity and priority that they have with respect to the Property.

---

[1] A copy of the title report is attached to the Declaration of Alphamorlai L. Kebeh as Exhibit "7."

[2] The Debtor reserves its right to object to the standard contractual interest charges asserted by Sound at a later time within the context of a claim objection or similar proceeding.

1       Under Ninth Circuit and other authorities, default interest and other charges by oversecured

2  creditors may be disallowed when they are inequitable.  The Debtor is preparing to object to the

3  default interest allegedly accrued in connection with the Sound Deed of Trust (the "Default

4  Interest") because it is inequitable in the present circumstances.  The Debtor believes that the

5  default interest rate asserted by Sound would cause significant harm to the Debtor's creditors and

6  the estate.  Therefore, the Debtor plans to object to Sound's claims to determine that the Default

7  Interest and other disputed portions are inequitable.  The Debtor is also preparing to object to the

8  claim for attorneys' fees, as well as various other fees, asserted by Sound because the Debtor

9  believes that such fees are not allowable under the Bankruptcy Code.  Additionally, Debtor

10  believes that the TCS Lien is subject to challenge both as (1) a preferential transfer under section

11  547 of the Bankruptcy Code and (2) an unenforceable lien pursuant to California Civil Code §8460

12  which is therefore avoidable under section 544 of the Bankruptcy Code.  Similarly the Resco lien

13  appears to be unenforceable under California Civil Code §8460 and is therefore avoidable under

14  section 544 of the Bankruptcy Code.  Thus, the sale of the Property will be made free and clear of

15  the disputed portions of the Subject Liens, including the Default Interest, which will attach to the

16  sale proceeds with the same force, effect, validity, and priority that they have with respect to the

17  Property.  Specifically, the Debtor will hold the applicable net sale proceeds in escrow, subject to

18  further Court order.

19       G.       The proposed sale is subject to higher and better bids and, by way of this Motion,

20  the Debtor is requesting that the Court approve the overbid procedures described in the

21  accompanying memorandum of points and authorities, summarized as follows:

22             1.       **Minimum initial overbid**:  $2,150,000 (i.e. $50,000 above the Buyer's

23  current offer).

24             2.       **Minimum overbidding increments**:  $10,000.

25             3.       **Initial overbid deposit**:  $64,500.

26             4.       **Qualification for overbidding**:  Any party wishing to overbid on the

27  Property must deliver no later than November 10, 2022 to the Debtor c/o Danning, Gill, Israel &

28

Krasnoff, LLP, Attn: Alphamorlai L. Kebeh, 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067:

i.      a cashier's check payable to "Jinzheng Group (USA) LLC" in the amount of $64,500, and

ii.      a written, executed overbid in the form attached to the declaration of Alphamorlai L. Kebeh as Exhibit "2."

No party will be allowed to bid on the Property absent timely delivery of the initial overbid deposit and the written, executed overbid form (unless the Debtor exercises its discretion to allow such bid).  The Debtor in its sole discretion may determine that a party desiring to bid is not qualified due to insufficient documentation or financial qualifications.  Accordingly, any party wishing to bid is encouraged to contact the Debtor's counsel at least one week before the hearing to ensure qualification.

H.      **Back-up bidders**:  Any qualified overbidder who is not the successful overbidder may opt to be a back-up bidder, subject to the Debtor's approval, in which case such back-up bidder's initial deposit will be retained by the Debtor's counsel until the sale closes.

I.      **Estimated Net Sale Proceeds**: The opening sale price for the Property is $2,100,000.  The Debtor estimates that the breakdown of the net sale proceeds, with 5% broker's commission, liens, fees, and anticipated costs of sale, as follows:

| Sale Price | $2,100,000.00 |
|---|---|
| Commission to Debtor's Brokers (3%) | ($63,000.00) |
| Commission to Buyer's Broker (2%) | ($42,000.00) |
| Sale costs (estimated 2% of Sale Price) | ($42,000.00) |
| Sound Deed of Trust (Principal and Standard Interest Only)[3] | ($1,563,645.47) |
| **Estimated Net Sale Proceeds** | **$389,354.53** |

---

[3] As stated previously, the Debtor proposes to pay Sound the value of its accrued contractual standard interest without prejudice to the Debtor's right to object to Sound's claims at a later date.

J.      The Debtor proposes to pay a real estate broker's commission of 5% of the sale price of the Property as follows: 1.5% each to Coldwell Banker Realty and Re/Max of Cerritos as the Debtor's brokers, and 2% to Re/Max Universal as the Buyer's broker.  If there is a successful overbidder (i.e., not the Buyer), and such successful overbidder is represented by a broker, the Debtor shall pay a real estate broker's commission of 5% of the sale price of the Property as follows: 3% to the Debtor's brokers and 2% to the successful overbidder's broker.  If such successful overbidder does not have a broker or if the brokers represent both the Debtor and the buyer, the Debtor shall pay a real estate broker's commission of 4% of the sale price of the Property as follows: 2% each to Coldwell Banker Realty and Re/Max of Cerritos.

K.      **Anticipated Taxes**: The Debtor is inquiring with its tax consultant regarding the potential tax consequences of the sale.  The Debtor expects to provide an update with respect to any tax consequences at or prior to the hearing on the Motion.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Zhao Pu Yang, Kenny Yu, Stephen Eng, and Alphamorlai L. Kebeh, and Request for Judicial Notice; the papers and pleadings in the Debtor's bankruptcy case; and such other evidence that may be presented at the hearing.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), each interested party opposing, joining in, or responding to the Motion must, not later than **14 days** before the date of the hearing, file with the Clerk of the Bankruptcy Court and serve upon the Debtor's undersigned general counsel either: (i) a complete written statement of all reasons in opposition thereto or in support or joinder thereof, declarations and copies of all evidence on which the responding party intends to rely, and any responding memorandum of points and authorities; or (ii) a written statement that the Motion will not be opposed.

///

///

///

///

///

1    Pursuant to Local Bankruptcy Rule 9013-1(h), failure to timely file and serve papers may

2  be deemed by the Court to be consent to the granting of the Motion.

3

4  DATED:  October 24, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

5

6                                              By:    _____/s/ Alphamorlai L. Kebeh_____

7                                                     ALPHAMORLAI L. KEBEH
                                                      General Bankruptcy Counsel for Jinzheng Group
8                                                     (USA) LLC, Debtor and Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## FACTUAL STATEMENT

**A.    Bankruptcy Background**

On August 24, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues in possession of its property and is operating and managing its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.  No Trustee or examiner has been appointed in the Debtor's Chapter 11 Case.

**B.    The Subject Property**

The assets of the bankruptcy estate include a number of real properties, including a parcel of real property located at 150 East La Sierra Drive, Arcadia, California 91006 (the "Property"). The Property is a partially constructed single family home with an additional dwelling unit.

As of the Petition Date, however, title to Property was held by another entity, 150 La Sierra LLC, of which the Debtor was the majority owner.  The Debtor had previously transferred the Property to 150 La Sierra LLC.  The Debtor believes that transfer of the Property to 150 La Sierra LLC was likely avoidable.  On July 5, 2022, the Debtor filed a motion to approve a compromise with 150 La Sierra LLC, resulting in the transfer of the Property back from 150 La Sierra LLC to the Debtor.  The order approving the compromise was entered, and the transfer back to the Debtor was effectuated, on July 20, 2022 (doc. no. 322).

In addition to the Property, the Debtor is in possession of three other parcels (or areas) of real property which it intends to sell as part of its liquidation strategy.  Like the Property, these other properties are encumbered by liens.

1695843.2 27086

8

## C.    Proposed Treatment of Liens Against the Property

Based on a review of the Debtor's schedules, proofs of claim filed in the Debtor's case, and a preliminary title report,[4] the only known liens and encumbrances against the Property are:

(1)    A deed of trust in favor of Sound Equity Inc. ("Sound"), securing a note in the amount of approximately $2,340,000 (the "Sound Deed of Trust").

(2)    A claim of mechanic's lien in favor of Resco Electric, Inc. ("Resco"), in the amount of $3,837.24 (the "Resco Lien").  A copy of the Resco Lien is attached hereto as Exhibit "3."

(3)    A claim of mechanic's lien in favor of the TCS Building Solution, Inc. ("TCS"), in the amount of $350,000 (the "TCS Lien").

The liens and claims in favor of Sound, Resco and TCS are referred to hereinafter collectively as the "Subject Liens."

### 1.    The Subject Liens

On or about January 15, 2020, a note in favor of Sound was executed and secured by the Sound Deed of Trust (the "Sound Note").  A copy of the Sound Note is attached to the declaration of Alphamorlai L. Kebeh as Exhibit "4."  The original principal amount of the Sound Note was $2,340,000.  As of the date of this Motion, the debt under the Sound Note is allegedly comprised of a principal debt of $1,551,633.59, standard interest charges in the amount of $12,011.88, default interest charges in the sum of approximately $302,050.64 (the "Default Interest"), attorneys' fees in the amount of at least $8,100 (the "Attorneys' Fees"), and various other fees and charges in the amount of $54,658.58 (the "Miscellaneous Fees").[5]  The standard interest rate under the Sound Note is 8.99%.  The default interest rate under the Sound Note is 24%.  A recent payoff statement evidencing these totals is attached as Exhibit "5."

The Debtor believes that the Default Interest, Attorneys' Fees, and the Miscellaneous Fees asserted by Sound are unreasonable, inequitable and/or are otherwise objectionable under the

---

[4] A copy of the title report is attached to the Declaration of Alphamorlai L. Kebeh as Exhibit "7."

[5] These fees are primarily comprised of late charges and "foreclosure fees."

1  provisions of the Bankruptcy Code and applicable law.  Therefore, the Debtor is preparing to object

2  to the Default Interest, Attorneys' Fees, and Miscellaneous Fees accordingly.

3        On or about July 15, 2022, TCS filed a mechanic's lien against the Debtor in the amount of

4  $350,000.00.  A copy of the TCS Lien is attached as Exhibit "6."  The Debtor believes that TCS

5  recorded the TCS Lien because TCS knew about the imminent transfer of title to the Debtor and

6  was attempting to secure its alleged interest in the Property prior to such transfer. According to the

7  TCS Lien, the lien was claimed due to "construction services, including labor, materials, and

8  equipment for [a] single family house construction."  TCS Lien, p. 3.  The TCS Lien includes a

9  signed and undated alternative affidavit stating that, because the Debtor could not be served with a

10 copy of the lien, TCS instead served the Debtor at 150 East La Sierra Drive, Arcadia, California

11 91006.  TCS Lien, p. 5.  The affidavit also alleges that this service is evidenced by a certificate of

12 mailing.  However, the alleged certificate is not attached to the TCS Lien.  Since its recordation,

13 TCS has not filed a notice of intent to enforce the TCS Lien in the Debtor's case.  As explained

14 below, the Debtor believes that the TCS Lien is subject to challenge under sections 544 and 547 of

15 the Bankruptcy Code.  The Debtor also believes that the Resco Lien is subject to challenge under

16 section 544 of the Bankruptcy Code.

17 **D.    The Debtor's Marketing Efforts and Proposed Sale**

18       On August 19, 2022, the Court entered an order authorizing the employment of Coldwell

19 Banker Realty and Re/Max of Cerritos as the Debtor's brokers.  The Property has been listed on the

20 market since July 11, 2022.  In that time, the Debtor, through its brokers, has published the

21 property on the following websites: ColdwellBanker.com, California Regional MLS, Homesnap,

22 Homes.com, ListHub, Realtor.com, Redfin.com, and Zillow.com.  With the aid of the brokers, the

23 Debtor has robustly marketed the Property for sale, and the Buyers' offer is the best offer the

24 Debtor has received to date.  The only remaining requirement to close the sale is Court approval,

25 subject to qualified overbids made at the sale hearing.

26

27

28

## II.

## PROPOSED OVERBID PROCEDURES

The Debtor requests that the Court approve the following procedures for overbids:

1.      Any party wishing to present an overbid must deliver to the following no later than November 10, 2022 to the Debtor c/o Danning, Gill, Israel & Krasnoff, LLP, Attn: Alphamorlai L. Kebeh, 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067:

(a)      a deposit in the form of a cashier's check in the amount of $64,500 payable to "Jinzheng Group (USA) LLC" (the "Deposit");

(b)      a written offer on the form attached as Exhibit "2" to the Declaration of William Friedman, without any changes or conditions; and

(c)      provide proof of ability to close acceptable in the sole discretion of the Debtor.

2.      The initial overbid must be no less than $2,150,000, representing $50,000 over the Proposed Sale Price.

3.      The acceptance of any overbid from a qualified bidder shall be in the Debtor's sole discretion and may be made prior to or at the time of hearing to confirm the sale.  The Debtor will consult with the Committee's counsel regarding submitted overbids.

4.      If qualified overbids are received and accepted by the Debtor, an auction will be held at and during the hearing on the Debtor's motion for approval of the proposed sale.  The Debtor proposes that each overbid to be made during the hearing be at least $10,000 more than the then-highest overbid.  At the conclusion of the auction, the Debtor will have the right, based solely on his business judgment and sole discretion, after consulting with the Committee, to recommend to the Court for confirmation the offer that the Debtor determines is the highest and best overall offer.

5.      If the Court approves a sale to the bidding party (hereinafter the "Successful Bidder"), the Successful Bidder will be bound by all of the terms of the Purchase and Sale Agreement except as to price, without any contingencies (including no financing contingency). The Successful Bidder's deposit will be retained by the Debtor and will be applied to the sale price.

The deposit will be non-refundable in the event that, for any reason whatsoever, the Successful Bidder fails to close the sale timely.

6.    The closing will take place as soon as practicable after the date of entry of the Court's order approving the sale (the "Sale Order"), but no later than the first business day which is more than fourteen calendar days following the date of entry of the Sale Order. The Debtor and the Successful Bidder may mutually agree in writing to extend the time for closing the sale, without the need to obtain Court approval(s) of such extension(s).

7.    In its sole discretion, after consulting with the Committee, the Debtor may request that the Court confirm a "Back-Up Bidder" so that if the Successful Bidder does not close timely, the Debtor may sell the Property to the Back-Up Bidder for the amount of such Back-Up Bidder's last bid. In that event, the Back-Up Bidder's deposit will be retained by the Debtor's counsel. If the sale to the Successful Bidder does not close timely, the Debtor will advise the Back-Up Bidder accordingly. The closing will take place on or before fourteen calendar days following the date on which the Debtor gives notice of the Successful Bidder's failure to close. The Back-Up Bidder will be bound by all of the terms of the Sale Agreement except as to price, without contingencies (including any financing contingency). The Back-Up Bidder's deposit will be retained by the Debtor's counsel and will be applied to the sale price. If so notified that the Back-Up Bidder is to proceed with the sale, then the deposit will become non-refundable in the event that the Back-Up Bidder fails to close the sale timely.

8.    If a qualified overbidder is not the Successful Bidder or the Back-Up Bidder, the overbidder's deposit will be returned to the overbidder within ten (10) days after the date of the hearing. If the sale to the Successful Bidder closes, the Back-Up Bidder's deposit will be returned to the Back-Up Bidder within ten (10) days from the date of closing.

9.    Pursuant to the Court-approved listing agreement, the aggregate commission to be paid by the Debtor is an amount equal to 4% of the gross sales price if the buyer does not have a broker or if the Debtor's brokers represent both the Debtor and the Buyer.

1695843.2 27086

12

# III.

## LEGAL DISCUSSION

**A.      The Proposed Sale of the Assets is Supported by the Debtor's Sound Business**
**Judgment and is in the Best Interests of the Debtor's Estate and Its Creditors**

The Bankruptcy Code provides that a Debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). In this Circuit and others, courts will authorize sales where the decision to sell assets outside the ordinary course of business is based upon sound business judgment.  In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); In re Derivium Capital, LLC, 380 B.R. 392, 404 (Bankr. D.S.C. 2007) ("In determining whether to approve a sale proposed by a trustee, courts generally apply a business judgment test").

Based on the Second Circuit's decision in In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), courts generally hold that the following four elements must exist to satisfy the "sound business judgment test":  (1) sound business reasons; (2) accurate and reasonable notice to interested persons; (3) an adequate, fair and reasonable price; and (4) good faith.  See Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (affirming sale of debtor's assets proposed by trustee as being supported by a sound business purpose); Lionel, 722 F.2d at 1071.  "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection."  In re Lahijani, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); Derivium, 380 B.R. at 404 ("the Trustee's business judgment is to be given 'great judicial deference,' [however] the Court must scrutinize whether the Trustee has fulfilled his duty to 'maximize the value obtained from a sale'").

The Debtor believes that the proposed sale of the Property, subject to overbid, is the best method by which to maximize the value of the estate's interest in the Property.  As detailed above, the Debtor retained real estate professionals to list, market, and aid it in selling the Property.  The Debtor has obtained an offer subject to overbidding and Bankruptcy Court approval, and the Buyer's is the highest and best offer received to date (taking into account financial qualifications as

1  well as price).  The price was arrived at with the Buyer following arms-length negotiations and the

2  Debtor believes that it represents a fair and adequate price for the Property.

3       The proposed sale is subject to overbids, so any and all qualified parties wishing to

4  purchase the Property for a higher price may do so.

5  **C.    The Sale Should be Free and Clear of Default Interest Because Default Interest Is In**

6  **Bona Fide Dispute**

7       Section 506(b) of the Bankruptcy Code states, in relevant part, that the holder of an

8  oversecured claim "shall be allowed…interest…and any reasonable fees, costs, or charges provided

9  for under the agreement or State statute under which such claim arose."  11 U.S.C. § 506(b).  With

10  respect to default interest rates, bankruptcy courts have applied a presumption of allowability for

11  contracted-for default rates.  Gen. Elec. Capital Corp. v. Future Media Prods., Inc., 536 F.3d 969,

12  974 (9th Cir. 2008).  However, the Ninth Circuit, among others, has stated that this presumption is

13  subject to challenge based on applicable nonbankruptcy law and the "equities involved in [the]

14  bankruptcy proceeding."  Id. (quoting In re Laymon, 958 F.2d 72, 75 (5th Cir. 1992)); In re Terry

15  Ltd. P'ship, 27 F.3d 241, 243 (7th Cir. 1994);  In re Beltway One Dev. Grp., LLC, 547 B.R. 819,

16  830 (B.A.P. 9th Cir. 2016) (noting that "the presumptive rule for default interest is also subject to

17  rebuttal based on equitable considerations"); See In re 3MB, LLC, 609 B.R. 841 (Bankr. E.D. Cal.

18  2019); See Southland Corp. v. Toronto–Dominion (In re Southland Corp.), 160 F.3d 1054 (5th Cir.

19  1998).  When weighing the equities involved, courts have considered various factors.  3MB, 608

20  B.R. at 850 (noting that the court's equitable powers should be exercised where "the application of

21  the contractual interest rate would harm the unsecured creditors or impair the debtor's fresh start")

22  (quoting In re 785 Partners LLC, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012); In re DWS Invs., Inc.,

23  121 B.R. 845, 849 (Bankr. C.D. Cal. 1990) (considering the default interest's relation to the market

24  rate of interest, the default interest's relationship to the actual or projected loss as a result of

25  nonpayment, the debtor's solvency, and the likelihood of distribution to unsecured creditors).  Most

26  important of all the factors is whether junior or unsecured creditors will be harmed by an award of

27  default interest.  Sec. & Exch. Comm'n v. Capital Cove Bancorp LLC, 2015 WL 9701154 at 11

28  (C.D. Cal. Oct. 13, 2015) ("courts have recognized that this consideration of whether junior or

1  unsecured creditors will be harmed 'has special significance'") (quoting In re Jack Kline Co. Inc.,

2  440 B.R. 712, 747 (Bankr. S.D. Tex. 2010); 785 Partners LLC, 470 B.R. at 134 (stating that post-

3  petition default interest may not be allowed where "the application of the contractual interest rate

4  would harm the unsecured creditors"); DWS Invs., Inc., 121 B.R. at 849 (declining to apply a post-

5  petition default interest rate in part because "[t]he estate is insolvent and the unsecured creditors are

6  unlikely to receive a distribution" if the rate is applied); Foss v. Boardwalk Partners (In re

7  Boardwalk Partners), 171 B.R. 87 (Bankr. D. Ariz. 1994); In re Texas Star Indus. Group, Ltd. Co.,

8  2007 WL 4522323 at 3 (Bankr. N.D. Tex. Dec. 19, 2007) (Declining to apply an 18% default

9  interest rate, noting that "[t]he most important factor is whether junior creditors will be harmed or

10  impaired if postpetition interest is paid at the default rate"); In re Process Property Corp., 327 B.R.

11  603, 609 (Bankr. N.D. Tex. 2005) (finding that an increase in an oversecured creditor's interest rate

12  from 6% to a statutory default rate of 12% was inequitable and stating that the increased rate's

13  impact on other creditors is "the most important aspect of the inquiry when examining the

14  equities"); Southland Corp., 160 F.3d at 1060 (5th Cir. 1998) (stating that the impact of awarding

15  default interest on junior creditors was "especially significant").

16          Here, the equities of the Debtor's case support a finding that default interest should not be

17  awarded on the Sound Lien.  From a holistic perspective, the Debtor's situation is precisely the

18  same as described in the Debtor's *Motion to Authorize Sale of Real Property Located at*

19  *6840 De Celis Place, Apt 9, Van Nuys, California 91406, Free and Clear of Liens* (doc. no. 387).

20  The unsecured creditors of this estate will not receive distributions in full satisfaction of their

21  claims, if at all.  The estate still does not have sufficient funds to pay its administrative expenses.

22  With respect to at least one other property of the Debtor (San Marino), the third lienholder has

23  agreed to subordinate a substantial part of its lien to make the sale of that property possible.[6]  Thus,

24  to the extent any lienholder receives default interest or other charges will be at the expense of

25  payment of undersecured lienholders, administrative creditors, priority creditors, and general

26  unsecured creditors.

27  _____

28  [6] See doc. no. 343 (motion to approve carveout agreement with DNQ LLC)

1    The default interest rate asserted by Sound is significantly higher than market rates at the

2    time that the Sound Note was executed.  Prior to the Petition Date, standard interest rates for

3    mortgages were well below 4%.  Indeed, the 30-year fixed rate for a home loan fell below 3%

4    during 2021.[7]  The Sound Note's default rate of 24% is not acceptable under most traditional

5    circumstances involving real estate similar to the Property, and most other situations. These facts

6    weigh against the allowance of Default Interest under the Sound Lien.

7    The Debtor is in possession of four properties,[8] including the property subject to this

8    Motion.  The Debtor is attempting to sell its properties to generate funds for the benefit of the

9    estate and its creditors.  All of the Debtor's properties are encumbered by claims secured by liens,

10   and most of the secured creditors allege amounts owed based, in part, on default interest.  Should

11   the Court award interest at the default rate to these claims, the estate will lose substantial sums

12   which would otherwise be available for the benefit of the estate.  This is a case where unsecured

13   creditors will not receive any distribution absent a successful sale of real properties.  Here,

14   awarding default interest would prejudice all parties other than the oversecured creditors by

15   reducing the chance that any other party will receive full or partial (depending on their priority)

16   satisfaction of their claims.  At the same time that unsecured creditors may receive nothing, the

17   Debtor's oversecured creditors would enjoy not only full payment of their principal, but also

18   payment of **default interest at rates of up to 8 times the prevailing market interest rates** that

19   existed when the Debtor obtained the loans.[9]  Accordingly, the Debtor objects to such treatment

20   and requests that the portion of Sound's claim relating to the Default Interest attach to the net

21

22

---

23   [7] Google: "Mortgage Interest Rate in 2020" or "Mortgage Interest Rate in 2021."
24   https://www.google.com/search?q=mortgage+intereste+rates+in+2020&rlz=1C1NHXL_enUS817US817&oq=mortgage+intereste+rates+in+2020&aqs=chrome..69i57j0i13j0i22i30l7j0i8i13i30.6801j0j4&sourceid=chrome&ie=UTF-8
25

26   [8] The property described as the Lincoln Heights Property is actually comprised of several parcels that are being marketed for sale together.

27   [9] These facts may also support allegations under 11 U.S.C. § 548(a)(1)(B) for constructively
28   fraudulent transfers.

1    proceeds of the sale with the same force, effect, validity and priority that they have with respect to

2    the Property.

3    **D.      The Sale Should be Free and Clear of Sound's Claim for Attorneys' Fees Because**

4    **They are In Bona Fide Dispute**

5    Section 506(b) requires that the party requesting post-petition attorneys' fees must show:

6    "(1) the creditor's claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are

7    reasonable; and (4) the fees are provided for under the agreement." In re Valdez, 324 B.R. 296,

8    300 (Bankr. S.D. Tex. 2005).  The oversecured creditor bears the burden of proof that it is entitled

9    to postpetition attorneys' fees.  Coward v. AC & S, Inc., 91 Fed. Appx. 919, 924 (5th Cir. 2004).

10    Sound's payoff demand relating to their lien against the Debtor's estate includes a claim for

11    postpetition attorneys' fees in the amount of at least $8,100.  Sound does not provide a basis to

12    allow such attorneys' fees.  Thus, the Debtor contends that the Sound is not entitled to postpetition

13    attorneys' fees and disputes this portion of their claim.

14    **E.      The Sale Should be Free and Clear of Sound's Claim for Miscellaneous Fees Because**

15    **They are In Bona Fide Dispute**

16    Section 506(b) of the Bankruptcy Court provides, in relevant part, that the fees, costs, or

17    charges claimed by an oversecured creditor must be "reasonable."  11 U.S.C. § 506(b).

18    Here, Sound has asserted over $50,000 in miscellaneous fees and charges.  The

19    Miscellaneous fees are largely comprised of late charges assessed against the Debtor during the

20    pendency of this Bankruptcy Case.  In fact, the Miscellaneous Fees appear to attach to the total

21    balance allegedly owed by the Debtor, thereby increasing the factor by which the Default Interest

22    accrues.  By virtue of the Debtor's bankrupt status, it is unreasonable to expect the Debtor to pay

23    against a balance it allegedly owes to a particular creditor and punish the estate as a consequence of

24    its failure to do so.  Not only does the Debtor's insolvency inhibit its ability to pay, but doing so

25    would show favor to a particular creditor and thereby violate the spirit of the Bankruptcy Code.

26    Indeed, the persistent sanctioning of a debtor for the failure to pay its debts timely while it is

27    undergoing the bankruptcy process contradicts the fundamental concepts of the automatic stay and

28    a "fresh start."  The oversecured creditors should not be able to use their status to substantially

1   increase their claim to the minimal funds in the estate, all to the detriment of its other creditors.

2   For these reasons, the Debtor urges that the Miscellaneous Fees are unreasonable and is prepared to

3   challenge their allowability.  Accordingly, the value of the Miscellaneous Fees should attach to the

4   net proceeds of the sale with the same force, effect, validity and priority that they have with respect

5   to the Property.

6   **F.**      **The TCS and Lien is Avoidable as a Preferential Transfer and Because It Was Not**

7              **Property Perfected Under Applicable Law**

8          **1.**      **The TCS Lien is an Avoidable Preference**

9              Pursuant to Section 547 of the Bankruptcy Code, a trustee is entitled to avoid and recover

10  from a creditor as a preferential transfer:

11          (1) any transfer of property made by the debtor;

12          (2) to a creditor on account of an antecedent debt;

13          (3) made within ninety days of the petition date;

14          (4) while the debtor was insolvent; and

15          (5) which enables the creditor to receive more than it would have received in the
            Chapter 7 case if the payment was not made.
16
    11 U.S.C. § 547(b).
17
            Section 547(e)(2)(C) of the Bankruptcy Code also states that
18
            [f]or the purposes of this section, except as provided in paragraph (3) of this
19          subsection, a transfer is made...immediately before the date of the filing of the
            petition, if such transfer is not perfected at the later of
20
            (i) the commencement of the case; or
21
            (ii) 30 days after such transfer takes effect between the transferor and the transferee.
22
    11 U.S.C. § 547(e)(2)(C); See In re McCoy (Bankr. D. Ariz. 1984) 46 B.R. 9, 9; In re Wahl, 407
23
    B.R. 883, 887, 893–94 (Bankr. S.D. Ohio 2009).
24
            Finally, section 547(e)(3) states that:
25
            For the purposes of this section, a transfer is not made until the debtor has acquired
26          rights in the property transferred.

27  11 U.S.C. § 547(e)(3).

28

1    The TCS lien was recorded on July 15, 2022, five days before the Property was transferred

2  to the Debtor.  According to section 547(e)(3), however, the transfer was "made" on July 20, 2022,

3  when the Debtor received the transfer of the Property.  Accordingly, pursuant to section

4  547(e)(2)(C), for purposes of the analysis of a preference claim under the Bankruptcy Code, the

5  transfer is deemed to have occurred immediately before the Petition Date because it was not

6  perfected as of the Petition Date.

7    Additionally, the TCS Lien is for the benefit of TCS, a creditor, it was recorded in

8  connection with an alleged debt arising from previously performed alleged construction services,

9  and it would enable TCS to obtain more than it would under a Chapter 7 liquidation.  The Debtor is

10  presumed to be insolvent during the 90 days prior to the Petition Date.  11 U.S.C. § 547(f).

11  Because the other preference elements are present, the TCS Lien is avoidable.  Although an

12  adversary proceeding may be required, the Debtor has made the requisite showing under section

13  363(f)(4) that the TCS Lien is subject to a bona fide dispute.

14

15    **2.    The TCS Lien and the Resco Lien are Avoidable Under the Trustee's Strong**

16    **Arm Powers**

17    11 U.S.C. § 544(a)(1) vests the debtor, as the trustee, with the power to bring certain claims

18  arising under state law that would otherwise be available to a judgment creditor holding a judicial

19  lien.  Thus, if a creditor could challenge a lien under nonbankruptcy law, so too can the debtor.

20    In order to perfect a mechanic's lien in California, the claimant must bring an action to

21  enforce the lien within 90 days after recordation of the claim of lien.  Otherwise, the lien expires

22  and is unenforceable.  Cal. Civ. Code § 8460; In re 450 S. W. Ave., LLC, 633 B.R. 894, 898

23  (B.A.P. 9th Cir. 2021) (perfection of mechanic's lien was filed more than 90 days after recording

24  and was thus unenforceable).  In cases where the Bankruptcy Code's automatic stay prevents the

25  claimant from commencing an action to perfect a mechanic's lien, 11 U.S.C. § 546 allows the

26  claimant to provide notice of its intention to perfect the lien within the applicable time limit.  Id. at

27  900 (finding that the claimant's failure to give notice of its intent to perfect its mechanic's lien

28  within the 90 days provided by California Civil Code § 8460(a) proved "fatal to [its] claim"); In re

1695843.2  27086                    19

1    Rincon Island Ltd. Partnership, 253 B.R. 880, 884 (Bankr. C.D. Cal. 2000) ("an action complying

2    with § 546(b) notice 'must be calculated to notify the holder of the property, be it the debtor or the

3    trustee, that the lienholder intends to enforce its lien'); 11 U.S.C. § 546(b).

4         Here, TCS recorded the TCS lien on July 15, 2022, five days before the Property was

5    transferred to the Debtor.  Because the Debtor's bankruptcy case was and is still ongoing, TCS was

6    stayed from commencing an action to perfect the TCS Lien.  Thus, pursuant to California Civil

7    Code § 8460(a) and 11 U.S.C. § 546(b) TCS was required to indicate its intent to perfect the TCS

8    Lien within 90 days of the TCS Lien's recordation, on or before October 13, 2022.

9         On the TCS Lien, TCS claims that it was not able to serve the Debtor with a copy of the

10   lien or the notice of the lien.[10]  However, the Debtor's ongoing bankruptcy case presents a simple

11   and effective method of giving notice.  Despite this, TCS did not file any such notice in the

12   Debtor's case or otherwise attempt to inform the Debtor.[11]  The Debtor never received any notice

13   from TCS indicating its intent to perfect the TCS Lien.  Indeed, TCS never even disclosed the

14   existence of the TCS Lien.  The TCS Lien also alleges that, because it could not serve the Debtor, it

15   served the TCS Lien on both 150 La Sierra LLC and the Debtor at their address of service.

16   However, the address indicated in the TCS Lien—the Property Address—is entirely different than

17   the official address for both 150 La Sierra LLC and the Debtor.[12]  Furthermore, the affidavit alleges

18   that this service is evidenced by a certificate of mailing, yet no such certificate is attached.  Because

19   TCS could have easily filed a notice in the Debtor's bankruptcy case, it did not serve the Debtor at

20   its address for service, and it did not provide evidence for any alleged service, the affidavit attached

21   to the TCS Lien is defective.  Indeed, TCS's counsel was served with the motion to approve the

22

23   _____

   [10] See Exhibit "6" at page 5.

24

25   [11] The Debtor and TCS (and/or its affiliates and principals) have been in regular communication
     through counsel.  Yet, the first time the Debtor learned about the TCS Lien was in a preliminary
     title report prepared for this sale.

26

27   [12] The address listed on the California Secretary of State's website is the Debtor's property located
     at 6840 De Celis Pl., Van Nuys, CA 91406.  See https://bizfileonline.sos.ca.gov/search/business,

28   and search "150 La Sierra LLC" or "Jinzheng Group (USA) LLC."

1  transfer of the Property of the Debtor and TCS was, and always has been, listed on the master

2  mailing list in this case.  Because TCS did not comply with applicable nonbankruptcy law or the

3  Bankruptcy Code to perfect its lien, the TCS Lien is avoidable under section 544 of the Bankruptcy

4  Code.

5      Similarly, to the best of the Debtor's knowledge, the Resco Lien was not perfected by the

6  filing of a complaint against 150 La Sierra LLC or the Debtor.

7      The Debtor's only knowledge of the Resco Lien or the TCS Lien is from a preliminary title

8  report procured in the course of the Property's sale process.  Due to their noncompliance with the

9  California Civil Code and failure to file an action timely or notify the Debtor as to their intent to

10 perfect their mechanic's liens, the liens are unenforceable.

11

12 **G.    The Proposed Sale May be Authorized Under Section 363 of the Bankruptcy Code**

13     Section 363(f) of the Bankruptcy Code provides that, upon certain conditions, the trustee

14 (or debtor) may sell property free and clear of a lien or interest in such property:

15         The trustee may sell property under subsection (b) or (c) of this
           section free and clear of any interest in such property of an entity
16         other than the estate, only if—

17         (1) applicable nonbankruptcy law permits sale of such property free
           and clear of such interest;
18
           (2) such entity consents;
19
           (3) such interest is a lien and the price at which such property is to be
20         sold is greater than the aggregate value of all liens on such property;

21         (4) such interest is in bona fide dispute; or

22         (5) such entity could be compelled, in a legal or equitable proceeding, to accept a
           money satisfaction of such interest.
23
24 11 U.S.C. § 363(f).

25     The Debtor will pay off all the undisputed portions of the liens on the Property, thus

26 satisfying sections 363(f)(3) and (4).  The purchase price for the Property will be at least

27 $2,100,000, which will be sufficient to satisfy undisputed amounts in full.  The Debtor further

28 seeks authority to pay the allowable and undisputed amount of the Sound Lien in full from escrow.

1    Aside from the Resco Lien TCS Lien discussed earlier, there are no other known liens or interests

2    in the Property.  The Debtor further requests that the Court approve payments of all sales costs

3    from the Property sale proceeds, including broker commissions, escrow fees, taxes and insurance,

4    if any.

5    **H.**    **The Debtor Requests that the Court Find that the Buyers and Any Backup Buyer Are**

6    **Good Faith Purchasers Pursuant to Section 363(m) of the Bankruptcy Code**

7         A purchaser of property is protected from the effects of reversal on appeal of the

8    authorization to sell or lease as long as the Court finds that the purchaser acted in good faith.  See

9    11 U.S.C. § 363(m).  A good faith purchaser is one who buys in good faith and for value.  Ewell v.

10   Diebert (In re Ewell), 958 F.2d 276, 281 (9th Cir. 1992).  The Code does not define "good faith,"

11   but courts have provided guidance as to the appropriate factors to consider.  See Id. (lack of good

12   faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or

13   an attempt to take grossly unfair advantage of other bidders); In re Pine Coast Enters., Ltd., 147

14   B.R. 30, 33 (Bankr. N.D. Ill. 1992) (requirement that a purchaser act in good faith speaks to the

15   integrity of its conduct in the course of sale proceeding).

16        Here, the Debtor employed brokers to list, market and aid in selling the Property.  The

17   brokers listed the Property and negotiatons with the Buyer and other potential purchasers were

18   made in an arms-length fashion.  The Debtor will continue to negotiate at arms-length with

19   potential overbidders, and intends to present evidence to the Court at or before the hearing

20   supporting a finding of good faith as to any Successful Bidder or Back-Up Bidder.  Moreover, the

21   Debtor, the Debtor's brokers and the Buyer have submitted declarations, attached to this Motion,

22   supporting a finding of good faith.  As a result, the Debtor requests that the Court make a finding

23   that the party to whom the Court confirms the sale, as well as any Back-Up Bidder, is a good faith

24   purchaser of the Property within the meaning of § 363(m) of the Code.

25   **I.**    **Waiver of FRBP 6004(h) is Warranted**

26        The Debtor respectfully requests a waiver of the 14-day stay of the effect of the sale order.

27   It would be beneficial to the estate and all creditors to complete the sale at the earliest possible

28

1  time.  The Debtor prays that the Court enter such relief pursuant to FRBP 6004(h) to ensure an

2  expeditious closing.

3                                                      **IV.**

4                                               <u>**CONCLUSION**</u>

5          For the foregoing reasons, the Debtor requests that the Court enter an order:

6          1.      authorizing the Debtor to sell all right, title and interest in and to the Property free

7  and clear of any and all liens, claims or interests pursuant to 11 U.S.C. § 363(b) and (f);

8          2.      approving the proposed overbid procedures;

9          3.      directing that the sale be free and clear of all liens, claims and interests and to

10 provide that the TCS Lien, the Resco Lien and the disputed portions of the Sound Lien secured by

11 the Sound Deed of Trust shall attach to like amounts of the net sale proceeds, with the same force,

12 effect, validity and priority that they have with respect to the Property;

13         4.      authorizing the Debtor to pay brokerage commissions, ordinary and customary costs

14 of sale (including title and escrow fees) through escrow;

15         5.      determining that the Buyers and back-up bidder(s) (if any) are good faith purchasers

16 within the meaning of 11 U.S.C. § 363(m);

17         6.      waiving the effect of FRBP 6004(h);

18         7.      approving the form and manner of notice provided by the Debtor of the sale; and

19         8.      for such further relief as the Court deems just and proper.

20

21 DATED:  October 24, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

22

23                                       By:  _____/s/ Alphamorlai L. Kebeh_____

24                                            ALPHAMORLAI L. KEBEH
                                             General Bankruptcy Counsel for Jinzheng Group
25                                           (USA) LLC, Debtor and Debtor in Possession

26

27

28

**<u>DECLARATION OF ZHAO PU YANG</u>**

I, Zhao Pu Yang, declare as follows:

1.      I am the Attorney in Fact for Jianqing Yang, Managing Member of Jinzheng Group (USA) LLC.  I am also the son of Jianqing Yang.

2.      All facts in this declaration are based upon my personal knowledge, discussions with the Debtor's or my own advisors, brokers, or counsel, and/or my personal opinion based upon my experience and general knowledge about the Debtor.

3.      I am over the age of 18 and am authorized to submit this declaration on behalf of the Debtor. If called to testify, I would testify to the matters set forth in this declaration.

4.      I submit my declaration in support of the Debtor's Motion to Authorize Sale of Real Property Located At 150 East La Sierra Drive, Arcadia, California 91006 Free and Clear of Liens (the "Motion").

5.      I believe that the sale terms are reasonable and in the best interests of the estate and respectfully request that the Court approve the Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24, 2022.

By:  _YANG ZHAOPU_____

ZHAO PU YANG

## DECLARATION OF KENNY YU

I, Kenny Yu, declare as follows:

1.      I am a buyer of all right, title, and interest in real property commonly known as 150 East La Sierra Drive, Arcadia, California 91006 (the "Property") from Jinzheng Group (USA) LLC (the "Debtor"), as seller.

2.      I submit my declaration in support of the Debtor's Motion to Authorize Sale of Real Property Located At 150 East La Sierra Drive, Arcadia, California 91006 Free and Clear of Liens (the "Motion").

3.      I have personal knowledge of the facts in this declaration, except those matters that are based upon information and belief and as to such matters, I believe such matters are true.  If called as witnesses, I could testify competently to these facts.

4.      I do not have any prior, current, or expected association or other connection with the Debtor, major creditors or equity security holders in the Debtor's bankruptcy case, or with any of the professionals employed by the Debtor.

5.      There has been no collusion between myself and other bidders for the sale of the Property, or any attempt by me to take unfair advantage of other bidders.  My offer was in response to the marketing efforts of the Debtor's real estate brokers.  All negotiations were conducted at arm's length.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at ___10/23/2022___ on October __, 2022.

By: _____

KENNY YU

## <u>DECLARATION OF WILLIAM FRIEDMAN</u>

I, William Friedman, declare as follows:

1.    I am a realtor at Coldwell Banker Residential Broker ("Coldwell"), one of the brokers for Jinzheng Group (USA) LLC (the "Debtor").

2.    I submit my declaration in support of the Debtor's Motion to Authorize Sale of Real Property Located At 150 East La Sierra Drive, Arcadia, California 91006 Free and Clear of Liens (the "Motion").

3.    I have personal knowledge of the facts in this declaration, except those matters that are based upon information and belief and as to such matters, I believe such matters are true.  If called as a witness, I could testify competently to these facts.

4.    I am authorized to make and execute this declaration on behalf of Coldwell. Coldwell does not have any prior, current or expected association or other connection with the Debtor, major creditors or equity security holders in the Debtor's bankruptcy case or with any of the professionals employed by the Debtor, except in that Coldwell has sometimes has worked with the Danning Gill firm as bankruptcy counsel.

5.    Pursuant to a order entered by the Court on August 19, 2022, Coldwell has been working with Re/Max of Cerritos through its agent, Stephen Eng, to market and effect the sale of real property commonly known as 150 East La Sierra Drive, Arcadia, California 91006 (the "Property").

6.    Apart from its work with Re/Max of Cerritos, there has been no collusion between Coldwell and other brokers or bidders for the sale of Property, or any attempt by Coldwell to take unfair advantage of other brokers or bidders.

7.    The Property has been listed on the market since July 11, 2022.  Since then, Coldwell published the property on the following websites: ColdwellBanker.com, California Regional MLS, Homesnap, Homes.com, ListHub, Realtor.com, Redfin.com, and Zillow.com.

8.    It is my business judgment based on years of experience as a broker and of many real property bankruptcy sales I've conducted, that the proposed sale of the Property on the terms

1  set forth in the Purchase and Sale Agreement between the Debtor and the buyers is fair and

2  reasonable.

3      9.      The offer presented by the buyers is the best offer the Debtor has received to date.

4      I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct.

6      Executed at Los Angeles on October 21, 2022.

7

8

9

10     By: _____
                    WILLIAM FRIEDMAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF STEPHEN ENG

I, Stephen Eng, declare as follows:

1. I am a realtor at Re/Max of Cerritos, one of the brokers for Jinzheng Group (USA) LLC (the "Debtor").

2. I submit my declaration in support of the Debtor's Motion to Authorize Sale of Real Property Located At 150 East La Sierra Drive, Arcadia, California 91006 Free and Clear of Liens (the "Motion").

3. I have personal knowledge of the facts in this declaration, except those matters that are based upon information and belief and as to such matters, I believe such matters are true.  If called as a witness, I could testify competently to these facts.

4. I am authorized to make and execute this declaration on behalf of Re/Max of Cerritos.  Re/Max of Cerritos does not have any prior, current or expected association or other connection with the Debtor, major creditors or equity security holders in the Debtor's bankruptcy case or with any of the professionals employed by the Debtor.

5. Pursuant to an order entered by the Court on August 19, 2022, Re/Max of Cerritos has been working with Coldwell Banker Residential Broker through its agent, William Friedman, to market and effect the sale of real property commonly known as 150 East La Sierra Drive, Arcadia, California 91006 (the "Property").

6. Apart from its work with Coldwell Banker Residential Broker, there has been no collusion between Re/Max of Cerritos and other brokers or bidders for the sale of Property, or any attempt by Re/Max of Cerritos to take unfair advantage of other brokers or bidders.

7. It is my business judgment based on years of experience as a broker that the proposed sale of the Property on the terms set forth in the Purchase and Sale Agreement between the Debtor and the buyers is fair and reasonable.

/ / /

/ / /

/ / /

/ / /

1695843.2  27086

8.      The offer presented by the buyers is the best offer the Debtor has received to date.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed at _____ on October __, 2022.  10/24/2022

By:  _____

STEPHEN ENG

## DECLARATION OF ALPHAMORLAI L. KEBEH

I, Alphamorlai L. Kebeh, declare as follows:

1.      I am an attorney employed by the law firm of Danning, Gill, Israel & Krasnoff, LLP ("Danning-Gill" or the "Firm"), attorneys for Debtor and Debtor in Possession, Jinzheng Group (USA), LLC (the "Debtor"). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.      I make this declaration in support of the Debtor's Motion to Authorize the Sale of Real Property Commonly Known as 150 East La Sierra Drive, Arcadia, California 91006 Free and Clear of Liens (the "Motion").

3.      Attached hereto as Exhibit "1" is a copy of the purchase and sale agreement underlying the Motion.

4.      In the course of conducting the proposed sale of the Debtor's property located at 150 East La Sierra Drive, Arcadia, California 91006, I received a preliminary title report from the escrow agent for the proposed sale. A copy of the title report is attached hereto as Exhibit "7."

5.      Attached hereto as Exhibit "2" is a copy of the overbid form necessary to submit an overbid to purchase the property located at 150 East La Sierra Drive, Arcadia, California 91006.

6.      Attached hereto as Exhibit "4" is a copy of a promissory note in favor of Sound Equity Inc (the " Sound Note").

7.      Attached hereto as Exhibit "5" is an itemized payoff demand evidencing Sound Equity Inc.'s claim against the Debtor through September 27, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California on October 24, 2022.


By:  _____
        Alphamorlai L. Kebeh

1695843.2  27086                                    30

**REQUEST FOR JUDICIAL NOTICE**

Jinzheng Group (USA) LLC, debtor and debtor-in-possession (the "Debtor"), hereby respectfully requests that the Court take judicial notice of the following facts:

1.      On August 24, 2021, the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code.  The case was assigned case number 2:21-bk-16674-ER.

2.      Pursuant to an order entered on August 19, 2022 (docket no. 354), the Debtor was authorized to employ Re/Max of Cerritos and Coldwell Banker through its agents, Stephen Eng and William Friedman, respectively, as its real estate brokers.

3.      Attached hereto as Exhibit "8" is a copy of a document entitled "Deed of Trust" recorded in the County Recorder's Office as instrument no. 20200086211 on or about January 23, 2020.

4.      Attached hereto as Exhibit "3" is a copy of a document entitled "California Mechanics Lien" recorded in the County Recorder's Office as instrument no. 20211861454 on or about December 15, 2021.

5.      Attached hereto as Exhibit "6" is a copy of a document entitled "Statement of Mechanics Lien" recorded in the County Recorder's Office as instrument no. 20220731103 on or about July 15, 2022.


DATED:  October 24, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP


                                            By:      /s/ Alphamorlai L. Kebeh
                                                 ALPHAMORLAI L. KEBEH
                                                 General Bankruptcy Counsel for Jinzheng Group
                                                 (USA) LLC, Debtor and Debtor in Possession

1695843.2  27086                            31

EXHIBIT 1

DocuSign Envelope ID: 7D65F35E-5A43-4C2D6-AB1F-AB84EA626A41

CALIFORNIA
ASSOCIATION
OF REALTORS®

**BUYER COUNTER OFFER No:** _1_

(C.A.R. Form BCO, Revised 12/21)

Date _September 5, 2022_

This is a counter offer to the Seller Counter Offer No. _1_, OR ☐ Seller Multiple Counter Offer No. ___, ☐ Other _____
_____ ("Offer"),
dated _September 5, 2022_, on property known as _150 E La Sierra Dr, Arcadia, CA 91006-4163_ ("Property"),
between _____ _Kenny Yu_ _____ ("Buyer")
and _____ _150 La Sierra LLC_ _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. **The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final Agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.**
   B. **Unless Otherwise Agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.**
   C. **OTHER TERMS:**
      _1. Purchase price to be $2,000,000 and all other terms are accepted._
      _____
      _____
      _____
      _____
      _____
      _____
      _____
      _____
      _____

   D. The following attached addenda are incorporated into this Buyer Counter Offer only when Signed by both Parties (if both Parties do not Sign and Deliver all attached addenda then any acceptance of this Buyer Counter Offer is not valid):
      ☐ Addendum No. _____          ☐ _____

2. **EXPIRATION:** This Buyer Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00 PM on the third Day after the date this Buyer Counter Offer is signed in paragraph 3 (if more than one signature then, the last signature date)(or ☐ by _____ ☐ AM/☐ PM on _____ (date)) **(i)** it is Signed in paragraph 4 by Seller and **(ii)** a copy of the Signed Buyer Counteroffer is Delivered to Buyer or Buyer's Authorized Agent.
   B. OR If Buyer withdraws this Buyer Counter Offer anytime prior to Seller's Acceptance by communicating withdrawal to Seller or Seller's Agent (C.A.R. Form WOO may be used).

3. **OFFER: BUYER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED.** The terms and conditions of those documents are incorporated into this Buyer Counter Offer unless Otherwise Agreed.

   Buyer _kenny Yu_ _____ _Kenny Yu_ Date _9/5/2022_
         —02225311D05D47D...
   Buyer _____ Date _____

4. **ACCEPTANCE: I/WE** accept the above Buyer Counter Offer and all Signed Addenda, if any, **(If checked ☐ SUBJECT TO THE ATTACHED SELLER COUNTER OFFER No. _____ OR SELLER MULTIPLE COUNTER OFFER No. _____)** and acknowledge receipt of a Copy.

   Seller _____ _150 La Sierra LLC_ Date _____
   Seller _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BCO REVISED 12/21 (PAGE 1 OF 1)**

**BUYER COUNTER OFFER (BCO PAGE 1 OF 1)**

DocuSign Envelope ID: 7D65F25E-5A43-4C2D6-AB1F-AB84EA836A41

# COUNTER-OFFER

This agreement (the "Agreement" or "Counter-Offer") is intended to set forth the terms and conditions of a contract for the purchase by and sale to Kenny Yu (the "Buyer") from Jinzheng Group (USA), LLC, by and through its manager Jianqing Yang, by his attorney in fact Zhoupu Yang, and solely in its capacity as chapter 11 debtor (the "Seller"), of the real property more commonly known as 150 E. La Sierra Drive, Arcadia, California,(the "Property"). When executed below, this Agreement will constitute conclusive evidence and the exclusive terms and conditions of the contract for such purchase and sale (the "Sale") of the Property and will supersede and replace in its entirety Buyer's written Residential Property Purchase Agreement and all attachments in support thereof dated August 24, 2022 (the "Offer") and any oral or written negotiations since the Offer.

**PURCHASE PRICE; DEPOSIT; ESCROW.**  The purchase price for the Property shall be $2,200,000 (the "Purchase Price"). Buyer shall make an initial deposit of $66,000 (the "Initial Deposit") in the form of cashier's check or wire transfer made payable to "A&A Escrow Services, Inc." (the "Escrow Holder") which shall be delivered to A&A Escrow Services, Inc., 415 N Crescent Drive, Suite 320, Beverly Hills, California 90210, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement.

**FINANCIAL WHEREWITHAL.**  Buyer shall deliver to the Seller, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement, proof of committed funds available to Buyer sufficient to enable Buyer to consummate the acquisition contemplated herein, which proof shall be in the form of a letter of credit, loan commitment, or other form acceptable to Seller in Seller's sole discretion.  In the event that either (i) Buyer fails timely to provide any such proof, or (ii) Seller determines, in Seller's sole discretion, that any proof of funds provided to Seller by Buyer is unacceptable, Seller shall have the right, at Seller's option, to provide written notice to Buyer that this Counter-Offer is terminated.  In the event that Seller exercises such termination right, this Counter-Offer shall terminate effective as of the date of Seller's written notice to Buyer, whereupon the Initial Deposit (if theretofore deposited with the Escrow Holder) shall be returned to Buyer and Buyer and Seller shall each be relieved of any further obligations hereunder.

**ESCROW INSTRUCTIONS.**  Escrow instructions corresponding to the terms of this Agreement shall be provided by the Escrow Holder and signed by the parties within five (5) business days of the date of Buyer's and Seller's receipt of said escrow instructions.  Buyer and Seller shall deposit such documents and instruments with the Escrow Holder as and when reasonably required to complete the sale.  Prior to the Seller's filing of its motion to approve the sale of the Property, Buyer shall be free to assign this Agreement to another person or entity (the "Assignee") subject to Seller's prior review and written approval (which approval Seller may grant or withhold in his sole discretion), but Buyer shall remain liable

1692407.1  27086                      Page 1 of 10

33

hereunder, together with such Assignee, in the event that such Assignee fails to perform any of Buyer's obligations hereunder. Buyer shall not assign this Agreement to another person or entity after the Seller has filed its motion for approval of the sale of the Property with the Bankruptcy Court.

**BUYER'S DUE DILIGENCE AND CANCELLATION RIGHT.** Buyer shall have 15 calendar days from the date of execution hereof to perform, complete, and satisfy all contingencies, inspections, investigations, tests and reviews of reports, and to complete all due diligence which Buyer desires for the Sale of the Property, including, but not limited to performing and completing any geological, soil, structural, environmental, or other tests, inspections, and investigations desire by Buyer. Buyer may, not later than the end of the 15 calendar day due diligence period, provide Seller written notice of Buyer's election to withdraw from this Agreement because of Buyer's inability to complete or dissatisfaction with the results of any of those matters (the "Notice of Cancellation"), in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of Buyer's deposit. If Buyer fails to give such Notice of Cancellation within such due diligence period, all such contingencies shall be automatically removed and Buyer's obligation to proceed shall be non-contingent except as provided herein for (i) Buyer's review of a preliminary title report and underlying documents respecting the title to the Property (as set forth below), and (ii) Bankruptcy Court approval of this Agreement and the Sale (as set forth below).

**APPRAISAL AND FINANCING**. Buyer waives the appraisal and financing contingencies and is paying all cash.

**TITLE; TITLE INSURANCE.** Within three (3) business days after acceptance of this Agreement, Stewart Title Company or such other title company of Seller's choice (the "Title Company") will be instructed to provide a preliminary report of the condition of title to the Property, including copies of underlying documents referred to in Schedule B thereof, for Buyer's review. Buyer shall have three (3) business days after receipt of the preliminary title report and underlying documents in which to provide Seller written notice (the "Notice of Title Disapproval") that Buyer disapproves the condition of title with respect to a material matter(s) that interfere with the use or marketability of the Property for the purpose for which it is currently used or intended to be used. Such notice must refer to the specific exception(s) in Schedule B of the preliminary title report and the specific underlying document(s) which are the basis for Buyer's disapproval. Within five (5) business days after receipt of the Notice of title Disapproval, Seller may, in Seller's sole discretion, either (i) cancel this Agreement and the Sale, in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of the Initial Deposit, or (ii) elect to correct the item(s) that were disapproved by Buyer, in which event the Sale shall proceed. Seller may correct such item by any means that will result in the Title Company either removing the disapproved exception(s) from the preliminary report, providing title insurance coverage by endorsement against such exception(s), or providing that the order approving the Sale entered by the Bankruptcy Court shall resolve such exception. At the close of the Sale, Seller shall convey and Buyer shall accept title to the Property as shown in Schedule B of the preliminary title report, subject to any corrections as in this paragraph above, free and clear of all monetary liens, subject to the terms of the Agreement and the order approving the Sale. Seller shall pay the costs of a CLTA Standard Owner's policy of title insurance.

1692407.1  27086                          Page 2 of 10

34

**REMOVAL OF CONTINGENCIES; COURT CONFIRMATION; CLOSING; DELIVERY OF POSSESSION.**  If Buyer does not give Seller written Notice of Cancellation or Notice of Title Disapproval as and when provided in this Agreement, Buyer's silence shall be deemed acceptance and Buyer shall be deemed to have satisfied and removed all of Buyer's contingencies and to proceed with the Sale.  Seller shall then file a motion with the Bankruptcy Court to confirm the Sale, which sale shall be subject to qualified overbids as approved by the Bankruptcy Court.  Upon such removal of contingencies, Buyer shall be unconditionally obligated to proceed with the Sale, subject only to Bankruptcy Court confirmation as set forth below.  If the Bankruptcy Court confirms the Sale to Buyer, the closing shall take place as soon as practicable after entry of the order approving the Sale, but no later than the later to occur of (i) the first business day after fourteen (14) calendar days following the entry of the operative Order of the Bankruptcy Court approving the Sale or (ii) if the effectiveness of the Order of the Bankruptcy Court approving the Sale is stayed, the first business day after the Order is no longer stayed (the "Closing Date").  The closing shall occur on the date the deed transferring the Property to Buyer is recorded with the County Recorder where the Property is located. Occupancy shall be delivered to Buyer upon Escrow Holder's confirmation of recording.

**BANKRUPTCY SALE.**  Buyer acknowledges that Seller is a chapter 11 debtor in possession duly appointed to administer the bankruptcy estate, and is a party to this Agreement solely in that capacity.  Seller and its brokers and agents (collectively, the "Seller's Brokers") have not and will not determine the condition or fitness for use of the Property for any particular purpose.  The Sale shall be "as is," "where is," "with all faults," and with no warranty by or recourse whatsoever to Seller or Seller's Brokers herein.  Transfer of the Property shall be by Quitclaim Deed.  All parties acknowledge that Seller is a party to this Agreement solely in its capacity as chapter 11 debtor in possession and that in the event of any default in the performance of any of Seller's obligations under the Offer (as modified hereby) or in the event that any other claim is asserted against Seller, its manager Jianqing Yang or his attorney in fact or agent, or the estate in connection with this transaction, the Seller and Mr. Yang shall in no event have any personal liability whatsoever. It being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of the Seller's bankruptcy estate.

**TAXES; PRORATIONS; COSTS OF SALE.**  All real property taxes and assessments for the current tax year shown in the current County Tax Bill shall be prorated between Seller and Buyer and charged as of the closing date to the applicable accounts of Seller and Buyer.  The Sale shall be free and clear of any homeowner's association assessments and all real property taxes (other than those prorated as provided above) enforceable against the Property through the closing date of the Sale.  Escrow fees shall be split between Buyer and Seller in the manner customary in the County where the Property is located.  Seller shall pay any real property transfer tax.  Seller shall pay the cost of a Natural Hazard Disclosure Report, from a vendor selected by Seller, to be furnished to Buyer through escrow.  Buyer shall pay and have sole responsibility for compliance with any requirements imposed on the Property or this Sale by any governmental agency(ies), including compliance with any applicable governmental retrofit requirements.  Buyer shall pay the cost of recording the deed.  Buyer and Seller shall each pay their own expenses of every other type except as specifically provided in this Agreement.

DocuSign Envelope ID: 7D65F35E-5A43-4C06-AB1F-AB84EA636041

**BANKRUPTCY COURT APPROVAL; OVERBIDDING.**  The Sale is subject to notice to creditors, approval by the Bankruptcy Court, and better qualified bids received by Seller through and including the Bankruptcy Court hearing to confirm the Sale.  Payment of any and all real estate brokers' commissions is also subject to notice to creditors and approval by the Bankruptcy Court.  Buyer acknowledges and agrees that Seller may not seek to obtain the Bankruptcy Court's approval if Seller has determined that it would be in the best interest of the bankruptcy estate not to do so, and Seller holds sole and absolute discretion with regard to the foregoing.  Buyer acknowledges and agrees that if the Bankruptcy Court approves the Sale to a different buyer (the "Successful Overbidder") at the hearing on the Sale, the Seller may hold the Buyer's deposit pending close of the Sale to the Successful Overbidder and, if the Successful Overbidder does not timely close its purchase of the Property, the Seller has the right to close the Sale to the Buyer at the Purchase Price hereunder, or such higher price as the Buyer may have bid at the hearing on the Sale.

**BROKERS.**  Seller is represented by Re/Max of Cerritos and Coldwell Banker.  Buyer is represented by Re/Max Universal. Subject to Bankruptcy Court approval, Seller will pay a real estate broker's commission aggregating 5% of net sales price of the Property as follows: 1.5% to Coldwell Banker, 1.5% to Re/Max of Cerritos and 2% to Re/Max Universal in connection with the closing of the Sale.  Seller's Brokers and Buyer's Brokers are collectively referred to herein as the "Brokers".  No commission or compensation shall be due or payable to Brokers in connection with this Agreement or Sale except from the cash proceeds of an actual Sale of the Property that closes to Buyer.  Buyer hereby represents and warrants that, other than the Brokers, Buyer has not dealt with any broker, finder, or other person entitled to any fee, commission, or other compensation in connection with the Sale and Buyer shall indemnify, defend, protect, and hold Seller and the related bankruptcy estate harmless of, from, and against any claims, demands, actions, causes of action, losses, liabilities, costs, and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions, or other compensation of any kind are hereafter asserted.

**MATERIAL CHANGE OF CONDITION.**  In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (i) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the Initial Deposit shall be refunded to Buyer without interest; or (ii) make required repairs at the bankruptcy estate's expense; or (iii) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the Sale; or (iv) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart (b), (c), or (d) of this paragraph, Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property. Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property. Conditions related to the Covid-19 pandemic shall not constitute a material change in condition under this Counter-Offer.

**REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE.**  Buyer's sole remedy in the event that the Sale fails to close as a result of Seller's inability or failure to close for any

DocuSign Envelope ID: 7D65F35E-5A43-4C2D6-AB1F-AB84EA636A41

reason, including but not limited to the reason of failure to obtain approval of the Sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or sell and a full refund of the Initial Deposit (plus any increase thereof by Buyer). In the event Buyer fails to close the Sale for any reason other than Seller's default, after Buyer's contingencies have been removed as under this Agreement, Buyer's Initial Deposit (plus any increase thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action. This provision shall apply equally to the Initial Deposit (and any increase thereof by Buyer) without interest. If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT, BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R.FORM RID).

[Buyer's Initials]

**BANKRUPTCY COURT JURISDICTION.** The United States Bankruptcy Court for the Central District of California, Los Angeles Division shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement and Buyer hereby consents and submits to such exclusive jurisdiction. This Agreement shall be interpreted and enforced pursuant to the laws of the State of California, the United States of America, and title 11 of the United States Code.

**"AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES.** Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement. Seller and Seller's Brokers have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written, concerning or respecting (i) the value of the Property; (ii) the income to be derived from the Property; (iii) the suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) the habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) the manner, quality, state of repair, or lack of repair of the Property; (vi) the nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) the compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules, or orders of any applicable governmental authority or body; (viii) the manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) the compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules, orders, or other requirements imposed or enforced by any governmental or non-governmental body, including without limitation the Americans with Disabilities Act of 1990; (x) the presence or absence at, on, under, or

1692407.1  27086                          Page 5 of 10

adjacent to the Property, of materials described as "hazardous substances, hazardous materials, or toxic substances" or by similar terms under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§ 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. §§1801, et seq.), the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, et seq.), the Toxic Substance Control Act (15 U.S.C. § 2601, et seq.), the Clean Water Act (33 U.S.C. § 1251, et seq.), California Health and Safety Code §§ 25117 or 25316, or other statutes and laws, all as amended and including all regulations issued thereunder; (xi) the content, completeness or accuracy of any due diligence materials or preliminary report regarding title to the Property; (xii) the conformity or lack of conformity of the improvements to any plans or specifications for the Property, including any plans and specifications that may have been or may be provided to Buyer; (xiii) the conformity or lack of conformity of the Property to past, current, or future applicable zoning or building requirements; (xiv) any deficiency of any undershoring, drainage, or other aspects, systems, or components of or affecting the Property; (xv) the fact, if applicable, that all or a portion of the Property may be located on or near any natural hazard zone as determined by any governmental agency or body; (xvi) the existence of vested land use, zoning, or building entitlements affecting the Property or any other property; or (xvii) any other matter.  Without in any manner limiting the foregoing, Buyer hereby acknowledges and agrees that (i) Seller's Brokers have provided (and will hereafter provide) to Buyer various materials and information relating to the Property, including, without limitation, information and materials relating to the condition of the Property, and (ii) all such materials and information so provided to Buyer by Seller's Brokers shall, for all purposes of this Agreement, be deemed to have been disclosed to Buyer by the Seller, as well.

**BROKERS.**  Seller's Brokers herein have not and will not perform any inspections, investigations, or due diligence on behalf of Buyer unless otherwise specified herein. Buyer is informed that Buyer must arrange for any inspections and investigations desired by Buyer utilizing suitable third party professionals selected and compensated by Buyer.  In no event shall Seller have any liability or responsibility for any representation, warranty, statement made, or information furnished by Seller's Brokers, or any other person or entity, concerning the Property, this Agreement, or any other matter, unless expressly set forth in writing and signed personally by Seller.

**OPPORTUNITY TO INSPECT; BUYER'S SOLE RELIANCE.**  Buyer represents, warrants, acknowledges, and agrees that Buyer has been given the opportunity to inspect and investigate the Property and all other facts and circumstances deemed by Buyer relevant and significant, and to review information and documentation affecting the Property.  In deciding to proceed with the Sale, Buyer is relying solely on Buyer's own inspections and investigation of the Property (including by any outside professionals whom Buyer has elected to engage for such services) and review of such information and documentation, and not on any information provided or to be provided by Seller.  Buyer further acknowledges and agrees that any information made available to Buyer or provided or to be provided by or on behalf of Seller with respect to the Property was obtained from a variety of sources and that neither Seller nor Seller's Brokers nor any other person has made or makes any representations as to the accuracy or completeness of such information.  Buyer hereby fully and irrevocably

DocuSign Envelope ID: 7D65F35F-5A43-4C26-AB1F-AB84EA63A041

releases all such sources and preparers of information and documentation affecting the Property which were retained or engaged by Seller or Seller's Brokers from any and all claims that Buyer may now or hereafter have against such sources and preparers of information, for any costs, expenses, losses, liabilities, damages, demands, actions, or causes of action arising from any such information or documentation.   NEITHER SELLER NOR BROKERS HAVE PROVIDED OR WILL PROVIDE ANY LEGAL OR TAX ADVICE TO BUYER.  Buyer is informed that Buyer must obtain any such advice, if desired by Buyer, from independent professionals selected and engaged by Buyer.

**PHYSICAL, GEOLOGICAL, PEST CONTROL, AND ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS.**

A.    BUYER SHALL CONDUCT THOROUGH PHYSICAL, GEOLOGICAL, PEST CONTROL, ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS MAY BE DETERMINED BY BUYER, THROUGH QUALIFIED PROFESSIONALS SELECTED BY BUYER.   Seller and Seller's Brokers strongly recommend that Buyer fully exercise and not waive such inspections and investigations.

B.    Buyer shall select and employ, at Buyer's sole expense, a licensed engineer(s), architect(s), contractor(s), geologist(s), pest control licensee(s), environmental consultant(s), or other qualified professional(s), to make inspection(s) and investigations of the Property, including, but not limited to, (i) its general structure, plumbing, heating, air conditioning (if any), electrical system, built-in appliances, cesspool/sewer/septic system, well, roof, soils, foundation, mechanical systems, pool, spa, related equipment and filters, sprinklers, and those other matters affecting the desirability of the Property (all if and only to the extent any such structures, systems, and components are presently a part of the Property); (ii) any actual or potential wood destroying pests or other conditions damaging to the Property or any portion thereof; (iii) environmental hazards, substances, products, or conditions, including without limitation, asbestos, formaldehyde, lead, lead-based paint, contaminated soil or water, fuel, chemical storage tanks, hazardous waste, electromagnetic fields, and radon gas, any of which may constitute a health risk; (iv) the presence or absence of any required governmental permits, inspections, applications, approvals, and certificates of occupancy, and compliance or lack of compliance with building codes and laws applicable to the Property; (v) plans and specifications for the Property; (vi) all applicable zoning, municipal, county, state, and federal, including those affecting the past, current, or any future use of the Property; (vii) deed restrictions and other matters of public record which may govern, restrict, condition, or prohibit the use, alteration, or development of the Property; and (viii) generally, without limitation, any and all other items and matters of whatsoever nature, character, or description, which Buyer deems material to Buyer's interests, in, on, or affecting the Property, and to approve or disapprove said inspection within the period and in the manner set forth in this Agreement.

**RETROFITTING.**  All required retrofitting including but not limited to the payment of City

DocuSign Envelope ID: 7D65E35E-5A43-4C06-A81F-AB84EA626A41

Report, installation of smoke and carbon monoxide detectors, low flow toilets and compliance with all governmental agencies shall be Buyer's responsibility for cost and completion.

**COMPLETE AGREEMENT; NO OTHER REPRESENTATIONS OR WARRANTIES.** Seller shall not be liable or bound in any manner by any oral or written statements, representations, or information pertaining to the Property, or the operation thereof, furnished by any real estate broker, agent, employee, contractor, or other person. Buyer further acknowledges and agrees Seller has no obligations to make repairs, replacements, or improvements to the Property except as may otherwise be expressly stated herein.  Without limiting any other provision hereof,  Buyer represents, warrants, and covenants to Seller that, except for Seller's express representations and warranties specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of the Property.

**WRITTEN AFFIRMATION OF SELLER REQUIRED.**  Buyer understands that Seller may continue to receive and respond to other offers on the Property and may be making several counter-offers concurrently containing the same or different terms.  This Counter-Offer shall not be binding until accepted by Buyer and executed by Buyer and Seller on the signature page below; and then approved by Seller, in Seller's sole discretion, in the form of the Seller's "Affirmation of Agreement" attached hereto as Exhibit "A" which, if so executed by Seller, will constitute Seller's agreement that Seller will sell the Property to Buyer, subject to Bankruptcy Court approval, the rights of any overbidding parties, and the terms and conditions of this Agreement.  Buyer further acknowledges that it would be imprudent and unrealistic to rely upon the expectation of entering into a binding agreement regarding the subject matter of this Counter-Offer prior to receipt of Seller's Affirmation of Agreement, and further represents to Seller that any efforts to complete due diligence, or to perform any of the obligations provided herein shall not be considered as evidence of binding intent without Seller's Affirmation of Agreement, and understands that BUYER'S ACCEPTANCE HEREOF SHALL HAVE NO FORCE OR EFFECT PRIOR TO BUYER'S RECEIPT OF SUCH AFFIRMATION OF AGREEMENT SIGNED BY SELLER.

**ATTORNEYS' FEES.**  In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

**EXPIRATION OF COUNTER-OFFER.**  This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller, on or before 5:00 p.m., Pacific time, on September 5, 2022.  Such acceptance shall nevertheless be subject to the receipt of Seller's Affirmation of Agreement.

**AGREED AND ACCEPTED:**

BUYER:

Dated: _____  9/5/2022

By:

_____
Kenny Yu

SELLER (subject to execution of Seller's Affirmation of Agreement):

Dated: _____

By:    _____
    Zhoupu Yang, attorney in fact for Jianqing Yang, in his capacity as manager of
Jinzheng Group(USA), LLC, chapter 11 debtor and debtor in possession

## EXHIBIT "A"

## SELLER'S AFFIRMATION OF AGREEMENT

Seller hereby acknowledges Buyer's acceptance of the foregoing Counter-Offer and affirmatively agrees to sell the Property to Buyer on the terms and conditions of the foregoing Agreement, but subject to Bankruptcy Court approval and any qualified overbidders.  Seller shall revoke any other outstanding Counter-Offers made to other prospective buyers or make the same subject and subordinate to this Agreement.


SELLER

Dated: _____


By: _____
Zhoupu Yang, attorney in fact for Jianqing Yang, in his capacity as manager of Jinzheng Group(USA), LLC, chapter 11 debtor and debtor in possession

EXHIBIT 2

## OFFER TO PURCHASE REAL PROPERTY

The undersigned (collectively "Offerors") hereby offer (the "Offer") to purchase from Jinzheng Group (USA), LLC (the "Debtor"), debtor and debtor-in-possession, the Debtor's right, title and interest to the real property commonly known as 150 East La Sierra Drive, Arcadia, California 91006, bearing Assessor Parcel Number 5781-010-063 (the "Property"), which is the subject of a certain Purchase and Sale Agreement and amendments thereto (collectively, the "PSA"), dated on or about September 5, 2022. **Offerors hereby acknowledges receipt of a copy of the PSA. [Initials_____; initials _____].** Offerors agree to substitute into the Debtor's currently pending sale upon identical terms and conditions, except as to price and as otherwise set forth herein.

The Offer price, all cash, shall be $_____ [at least $2,150,000].

There are no contingencies to the Offer whatsoever—save and excepting Bankruptcy Court approval after notice and hearing—including, without limitation, inspection, due diligence or financing contingencies.  The Offer is subject to acceptance by the Debtor, approval by the Bankruptcy Court, and higher and better bids at a sale motion hearing on November 15, 2022, at 11:00 a.m. in: Courtroom "1568" of the United States Bankruptcy Court located at 255 East Temple Street, Los Angeles, California 90012.  The Offerors understand, acknowledge, and agree that if the Offerors are deemed "qualified bidders," they or a duly authorized representative, shall personally attend the hearing.

Offerors understand that the Debtor has neither inspected the Property nor analyzed its fitness for any particular use.  Offerors further understand that the sale is of the Debtor's right, title and interest, if any, in the Property only, and is sold on an "As Is" and "Where Is" basis, with no warranty or recourse whatsoever.  Offerors have completed all due diligence which Offerors believe to be required to purchase the Property and have not relied upon any statement or representation from the Debtor, its attorneys, its real estate brokers or other agents.  Any necessary testing, remediation, repairs, or other actions, including without limitation, those relating to any environmental laws, shall be the sole responsibility of the Offerors, at Offerors' sole expense.

The initial deposit is $64,500.00 (the "Deposit").  To be "qualified bidders" for the Property, Offerors must deliver by November 10, 2022, to Jinzheng Group (USA), LLC, c/o Alphamorlai Kebeh, 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067-6006: (a) a cashier's check payable to "Jinzheng Group (USA), LLC, Debtor and Debtor-In-Possession" in an amount not less than the Deposit, (b) an executed copy of this Offer, and (c) proof of adequate funding. Parties who do not timely submit the foregoing will be barred from bidding at the sale motion hearing at the Debtor's discretion.  The Deposit shall be non-refundable in the event that the Court confirms the sale to the Offerors but Offerors breach their obligations under the Offer, in which event the Debtor shall be free to sell the Property to another party and to retain the entire Deposit without liability to anyone.  Offerors' sole remedy in the event that the Debtor is unable to close the sale shall be a return of the Deposit in full.  If the Offerors perform in full under the terms of the Offer, but the Court confirms the sale of the Property to another party, Offerors' Deposit shall be refundable in full.  If another party is the successful bidder at the sale motion

1

EXHIBIT 2                    43

hearing, Offerors may opt to be a back-up bidder in which event the Deposit will be retained by the Debtor until the sale closes.

A commission of 2% of the sale price shall be payable to Offerors' real estate broker, if any, subject to approval of the Bankruptcy Court, but only upon closing of the sale to Offerors.

The Offerors further understand, acknowledge, and agree that at the sale motion hearing, only qualified bidders shall be entitled to bid, and that the Debtor has sole discretion to determine, in the exercise of its sound business judgment, whether the Offerors are "qualified bidders." If the Offerors are not deemed qualified bidders (but have not otherwise defaulted), the Debtor will refund the Deposit.

The Offerors understand, acknowledge, and agree that upon conclusion of the bidding process, the Debtor shall have sole discretion, in the exercise of its sound business judgment, to decide which of the bids is the best bid, subject to approval of the Bankruptcy Court. The overbidder who is accepted by the Debtor and approved by the Bankruptcy Court as the successful bidder must pay all amounts reflected in its bid in cash at the closing of the sale. At the sale hearing, and upon conclusion of the bidding process, the Debtor may also acknowledge a back-up bidder, which shall be the bidder with the next best bid determined in the sole discretion of the Debtor subject to Bankruptcy Court approval. Should the successful bidder fail to timely close on the sale of the Property, the Debtor may sell the Property to the back-up bidder without further court order and retain the Deposit as liquidated damages. The undersigned Offerors hereby agree that the Bankruptcy Court wherein the Bankruptcy Case No. 2:21-bk-16674 is pending, for Jinzheng Group (USA), LLC, debtor and debtor-in-possession, shall have and retain exclusive jurisdiction to interpret and enforce this Offer as well as to resolve any dispute related in any way to this Offer, without a jury, and to enter final judgments thereon.

Dated: _____

_____
(Name of Offeror)

_____
(address of Offeror)

_____
(tel. no. and email address of Offeror)

_____
(name, tel. no. email address of real estate agent, if applicable)

_____
(signature of Offeror and/or authorized agent of Offeror, if applicable)

EXHIBIT 3

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.




**This page is part of your document - DO NOT DISCARD**



## 20211861454



**Pages:**
**0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/15/21 AT 10:35AM**

| | |
|---|---|
| FEES: | 26.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 101.00 |



**L E A D S H E E T**



202112153240005

**00021688948**



012987967

**SEQ:
01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



*E497026*

EXHIBIT 3               45

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

RECORDING REQUESTED BY: AND

Resco Electric Inc.

**WHEN RECORDED MAIL TO:**

NAME

RESCO ELECTRIC INC

MAILING ADDRESS

2431 W. WASHINGTON BL. #B

CITY, STATE and ZIP CODE

LA CA 90018

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

RESCO ELECTRIC INC 2431 W. WASHINGTON BL. #B LA CA 90018

B015 rev 20171228

46

RECORDING REQUESTED BY:

RESCO ELECTRIC INC

AND WHEN RECORDED MAIL TO:

RESCO ELECTRIC INC
(Name)

2431 W WASHINGTON BL. # B
(Street Address)

LA, CA 90018
(City, State, and Zip)

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# CALIFORNIA MECHANICS LIEN
(Claim of Lien - Civil Code Section 8416 and 8461)

The undersigned, RESCO ELECTRIC INC , claimant, claims a Mechanics Lien
(Complete name of person or entity claiming mechanics lien. Contractors use name exactly as it appears on contractor's license)

upon the following described real property: 150 EAST LA SIERRA DRIVE ARCADIA, CA 91006
(Street address and/or legal description, if available, where the work was furnished)

The sum of $ 3,837.24 , together with interest thereon at the highest legal rate per annum
(Amount due on claim)

from 12/15/2021 is due claimant (after deducting all just credits and offsets) for the following work, labor, services,
(Date when amount of unpaid claim became due)

equipment, and/or material furnished by claimant: ELECTRICAL MATERIALS / SUPPLIES
(General description of work, labor, services, equipment and/or materials provided by claimant)

(General description of work, labor, services, equipment and/or materials provided by claimant)

Claimant furnished the work and materials at the request of, or under contract with AKE AMERICAN KOREAN ELECTRIC
(Your Customer)

The owner(s) or reputed owner(s) of the property if known and their addresses is/are: 150 LA SIERRA LLC
(The name(s) of owner(s) of real property)

100 E HUNTINGTON DRIVE # 207 ALHAMBRA, CA 91801
(Address(es) of owner(s) of the property. This information can be obtained from the county recorder's office or the building department)

Firm Name: RESCO ELECTRIC INC         By: X _____
(See instructions on next page for proper signing)          (Signature of claimant or authorized agent)

SUK LEE / CONTROLLER
(Printed name of agent and title)

## NOTICE OF MECHANICS LIEN ATTENTION!

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanics lien is recorded.

The party identified in the mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.

## VERIFICATION

I, the undersigned, say: I am the claimant or agent of the foregoing Mechanics Lien claimant; I have read said claim of Mechanics Lien and know the contents thereof; the same is true of my own knowledge. I am authorized to execute this Claim of Lien. I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/15 , 20 21 , at LOS ANGELES , California
(Date this document was signed)          (Name of the city where this document was signed)

SUK LEE                    X _____
(Printed Name)          (Signature of the individual who verifies that the contents of the claim of mechanics lien are true)

## PROOF OF SERVICE AFFIDAVIT

I, SUK LEE , declare that I served copies of the above MECHANICS LIEN

(check appropriate box)   (a) ☐ By First Class Mail service,   (b) ☐ First Class Certified service,   (c) ☐ By Registered Mail service,

postage prepaid, addressed to each of the parties at the address shown below to: 150 LA SIERRA LLC
(Name and title of Owner or Reputed Owner)

at 100 E HUNTINGTON DRIVE # 207 ALHAMBRA, CA 91801 on 12/15 , 20 21 at 1 PM
(Address)          (Date)          (Time)

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Signed at LOS ANGELES , California, on 12/13 , 20 21 X _____
(Name of the city)          (Date)          (Signature of person making service)

[ ATTACH RECEIPTS OF CERTIFIED OR REGISTERED MAIL WHEN RETURNED ]

205  © 2013 Builder's Book, Inc.  Bookstore, Publisher.  All rights reserved.  www.buildersbook.com

47

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

# INFORMATION ABOUT MECHANICS LIENS

A Claimant who has a direct contractual relationship with the owner must record his/her Claim of Mechanics Lien after he/she has completed the work of improvement and within ninety (90) days after completion of all of the work, unless the owner records a Notice of Completion or a Notice of Cessation, in which case the Claim of Mechanics Lien must be recorded within sixty (60) days after recordation of the Notice of Completion or Notice of Cessation.

The claimant who does not have a direct contractual relationship with the owner can record his/her Claim of Mechanics Lien after he/she has ceased furnishing labor, services, equipment and/or materials, and within ninety (90) days after completion of the work of improvement, unless the owner has recorded a Notice of Completion or a Notice of Cessation, which in that case, the Claim of Mechanics Lien must be recorded within thirty (30) days after recordation of the Notice of Completion or Notice of Cessation. A claimant who does not have a direct contractual relationship with the owner of the property, must as a prerequisite to the recording of a Mechanics Lien first serve a Preliminary Notice in compliance with California Civil Code 8100-8118, 8200-8216, 9300-9306 as amended.

This review covers only some of the basic time periods and requirements applicable to the recording of Mechanics Liens under California law. This review is not intended to give a comprehensive review of the very technical subject of Mechanics Liens. Therefore, if you have any questions as to procedure, consult a lawyer.

## RECORDING INFORMATION

The claim of Mechanics Lien must be recorded in the county where the work of improvement is located. Check with the office of the county recorder where the claim of lien will be recorded for the correct fee. The recorder will not record a document unless it is accompanied by the correct fee.

### INSTRUCTIONS FOR SIGNING AND VERIFYING THIS FORM

**Signature:** If the claimant is a corporation, an officer or authorized agent should sign. If the claimant is a partnership, a partner or authorized agent should sign. If the claimant is a sole proprietorship, whether or not doing business under a fictitious name, the owner of the business or an authorized agent should sign. Refer to the following examples:

**CORPORATION**

NAME OF CLAIMANT: *Resco Electric Inc*

BY: *Suk Lee / a z*

**SOLE PROPRIETORSHIP** *(Fictitious business name)*

NAME OF CLAIMANT: _____

BY: _____

**PARTNERSHIP**

NAME OF CLAIMANT: _____

BY: _____

**SOLE PROPRIETORSHIP** *(Owner's name)*

NAME OF CLAIMANT: _____

BY: _____

**VERIFICATION:** This declaration is under penalty of perjury under the laws of the State of California. It does not have to be notarized. However, to be valid, the verification must contain the date it is signed and the signature.

This standard form is intended for the typical situations encountered in the field indicated.

However, before you sign, read it, fill in all blanks, and make whatever changes are appropriate and necessary to your particular transaction.

Consult a lawyer if you doubt the form's fitness for your purpose and use.

205  © 2013 Builder's Book, Inc.   Bookstore, Publisher.   All rights reserved.  www.buildersbook.com

EXHIBIT 4

## PROMISSORY NOTE SECURED BY DEED OF TRUST

U.S. $2,340,000.00                                                            January 15, 2020

FOR VALUE RECEIVED, <u>150 La Sierra, LLC, a[n] California Limited Liability Company</u> ("Maker"), hereby promises to pay to the order of <u>Sound Equity Inc, a Delaware Corporation</u> ("Lender"), at the office of Lender located at 989 112th Ave NE, Suite 207, Bellevue, WA 98004, or such other place as holder may from time to time specify, the principal sum of $2,340,000.00, together with interest on the principal balance outstanding hereunder, from (and including) the date hereof until (but not including) the date of payment, at the interest rate specified below, in accordance with the terms and conditions herein.

1.    <u>PURPOSE OF THE LOAN.</u>

(a)    <u>Purpose of the Loan</u>.  The purpose of the Loan is to provide Borrower with acquisition, refinance and/or construction financing in order to: (i) purchase certain real property and improvements encumbered by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "*Security Instrument*") executed by Borrower in favor of Lender in connection with this Note; and perform certain renovations and construction activities to the residential property located thereon (such renovations and construction activities shall be hereinafter referred to as the "*Improvements*") or (ii) utilize funds for a business purpose, as permitted by Lender.  The real property and improvements encumbered by the Security Instrument shall be hereinafter referred to as the "*Property*".

(b)    <u>Initial Advance</u>.  Upon the closing of the Loan, the initial funding under the Loan for the Borrower's acquisition or refinance of the Property shall be limited to the amount of $593,262.00.

(c)    <u>Funding for Construction of the Improvements</u>.  Following the initial advance of the Loan as set forth in Section 1(b) above (and subject to the terms and conditions of this Note), the remaining principal balance of the Loan, if any, (such total remaining amount, the "*Improvement Advance Amount*") shall be made available to Borrower for the payment, or reimbursement of payments, of certain of Borrower's costs to perform the Improvements.  Borrower will receive each advance in trust for the purpose of paying only actual costs for which the advance is made and will utilize the funds advanced for no other purpose.

(d)    <u>Required Documents</u>.  Following the initial advance of the Loan as set forth in Section 1(b) above, prior to any subsequent disbursements of the proceeds of the Loan for the renovation and/or construction of the Improvements, if any, Borrower shall execute and deliver, or cause to be executed and delivered to Lender such documents and items as Lender shall request (which, when executed and delivered to Lender shall be deemed Loan Documents hereunder), all in form and substance acceptable to Lender in Lender's sole discretion.  Such documents and items may include, but not be limited to, the following:

(i)    <u>Construction Contract</u>.  The construction contract (the *Construction Contract*) for the Property and Improvements, executed by and between Borrower and a California licensed general contractor (*Contractor*), which Contractor shall be acceptable to Lender to participate in the construction of the Improvements in accordance with the plans and specifications and architectural and/or engineering drawings for the Improvements (collectively, the *Plans and Specifications*) all in form and content reasonably acceptable to Lender.

(ii)    <u>Contractor's     and     Subcontractor's License/Insurance</u>.    Copies   of   Contractor's   licenses   and   any   other

subcontractor's (as may be required by Lender), together with proof of Contractor's worker's compensation, public liability insurance coverage, and such other insurance coverage as may be required by Lender.

       (iii)   <u>Collateral Assignment of Contracts and Documents</u>.  A collateral assignment of all necessary contracts related to the Improvements (including without limitation the Construction Contract, any architect's contract, any engineer's contract, and the Plans and Specifications), from Borrower to Lender assigning any and all rights, title and interest which Borrower shall have under the same.

       (iv)   <u>Plans and Specifications</u>.  One (1) set of the approved site plan and the complete and detailed Plans and Specifications which Borrower shall have approved in writing, including any changes or modifications thereto to the date of receipt by Lender, and any and all construction contracts or other documents in the possession or control of Borrower or any contractor relating to the construction of the Improvements.  The sets must be stamped with all required approvals from all applicable governmental authorities; certified under seal and signed by Borrower and Contractor to be true copies of the Plans and Specifications and approved by all authorities and agencies having jurisdiction thereon.  No changes shall be made thereafter in the Plans and Specifications without the prior written consent of the Lender, except as set forth herein; and provided, however, that changes to the Plans and Specifications which will not adversely affect the value of the Improvements shall be permitted without the prior written consent of the Lender.

       (v)   <u>Notice of Commencement</u>.  A notice of commencement (or its equivalent) meeting such requirements as Lender may require, including without limitation requirements with respect execution, recordation, posting, naming of additional parties for notices, and duration.

       (vi)   <u>Project/ Budget</u>.  A detailed and itemized construction and non-construction cost (soft costs) breakdown on Lender approved forms of all costs including specification of which items are to be funded from sources other than the Loan (the *Budget*).  The aggregate contract price for constructing and equipping the Improvements in accordance with the Plans and Specifications and representations made to Lender and all other costs of the Improvements being financed with the Loan proceeds and pursuant to the terms and conditions hereof shall not without Lender's prior written approval, exceed the amount allocated and described in the Budget.  Borrower shall furnish such additional supporting documentation for the cost of the items described in the Budget as may be required by Lender.

       (vii)   <u>Lien Waivers</u>.  Original waivers of lien from Contractor and each and every subcontractor, laborer or material supplier performing services or supplying material to the Property within the past ninety (90) days and an affidavit listing all of said entities and certifying that no work has been performed and no materials has been supplied for which the costs remain unpaid prior to closing.

     (e)   <u>Draw Requests</u>.

       (i)   Advances shall be made (i) not more frequently than once in any calendar month, (ii) in a minimum amount that is not less than $10,000.00 of the Improvement Advance Amount (unless otherwise approved by Lender in Lender's sole discretion), and (iii) in an amount not to exceed unreimbursed costs actually previously paid by Borrower or actually incurred by Borrower that are to be paid from proceeds of the Loan set forth in the Budget.

(ii)      Notwithstanding the foregoing Section 1(e)(i), the final advance (*Final Advance*) under this Section 1 shall not (i) be less than $20,000.00; and (ii) shall not be less than 20% of the Improvement Advance Amount (whichever is higher); and (iii) shall not be made prior to project completion as described in Section 1(f) below.

(iii)     Each draw shall be based on a draw request signed by Borrower in such form approved by Lender and shall be reviewed by the Lender's construction consultant (the *Consultant*) and, if requested by Lender, signed by Contractor.  Each draw request shall contain any written warning required of Lender by applicable local law (e.g., requiring lenders, when making disbursements directly to owners, to give written warning to such owners that to protect themselves from double payments, lien releases from each lienor should be required from the contractor), and shall be supported by such information and documentation (such as paid receipts, invoices, statements of accounts, lien releases, etc.) as Lender may require.

(f)      <u>Final Advance</u>.  Lender shall not be obligated to make the Final Advance of the Loan unless the following additional conditions shall have been satisfied, to the extent required by Lender:

(i)      The Consultant shall have certified to Lender that all construction has, and Improvements have, been completed in a good and workmanlike manner, in accordance with applicable requirements of all applicable governmental authorities and substantially in accordance with the Plans and Specifications;

(ii)      To the extent required by applicable governmental authorities for the use and occupancy of the Improvements, all certificates of occupancy and other applicable permits and releases shall have been issued with respect to the Improvements and copies thereof have been furnished to Lender;

(iii)     Lender shall have received a satisfactory final affidavit from the Contractor and full and complete releases of lien from the Contractor and each subcontractor, laborer and materialman and any other party who has supplied labor, materials or services for the construction of the Improvements, or who otherwise might be entitled to claim a contractual, statutory or constitutional lien against the Property with respect to work performed and/on materials supplied in the construction of the Improvements;

(iv)     Lender shall have received a satisfactory endorsement to its title insurance policy;

(v)      Lender has received such other items which Lender may reasonably require to be submitted by Borrower; and

(vi)     All other terms and conditions of this Note and the other Loan Documents required to be met as of the date of the Final Advance of the Loan for hard costs shall have been met to the satisfaction of Lender.

(g)      Advances for Stored Materials.   Notwithstanding anything to the contrary contained herein, no advances will be made for building materials or furnishings that have not yet been incorporated into the Improvements (*Stored Materials*) unless and until: (i) Borrower has good title to the Stored Materials and has furnished satisfactory evidence of such title to Lender, to the extent required by Lender; (ii) the Stored Materials are components in a form ready for incorporation into the Improvements and will be so incorporated within a reasonable period (not to exceed thirty [30] days) from the date of the advance for the Stored Materials; (iii) the Stored Materials are in Borrower's possession and are satisfactorily stored on the Property or at such other location as Lender may approve, in each case with adequate



safeguards to prevent commingling with materials for other projects; (iv) the Stored Materials are protected and insured against loss, theft and damage in a manner and amount satisfactory to Lender; (v) the Stored Materials have been paid for in full or will be paid for in full from the funds to be advanced; (vi) Lender has or will have upon the payment for the Stored Materials from the advanced funds a perfected, first priority security interest in the Stored Materials; and (vii) all lien rights and claims of the supplier have been released or will be released upon payment with the advanced funds.

(h)      Additional Terms Regarding Advances.  Lender shall not be obligated to make an advance of Loan proceeds until and unless the following additional items shall have been received, complete and/or approved by Lender, as and to the extent required by Lender, prior to the date of the advance:

(i)      A notice of title continuation or endorsement to the title insurance policy with respect to the Loan, showing there has been no change in the status of title and no other exception not theretofore approved by Lender, which endorsement shall have the effect of advancing the effective date of the policy to the date of the advance then being made and increasing the coverage of the policy by an amount equal to the such advance.

(ii)      Evidence acceptable to Lender that all work requiring inspection by any governmental authority having or claiming jurisdiction has been duly inspected and approved by such authority and by any rating or inspection organization, bureau, association or office having or claiming jurisdiction.

(iii)      Evidence, including a report from the Consultant, that all work completed at the time of the application for an advance has been performed in a good and workmanlike manner in accordance with the Plans and Specifications, that all materials and fixtures usually furnished and installed at that stage of construction have been so furnished and installed, that the Improvements can be completed in accordance with the Plans and Specifications, and that the balance of the Loan proceeds then held by Lender and available for advance pursuant to the terms of this Note, together with other funds which Lender determines to be available to Borrower for such purpose, are and will be sufficient to pay the cost of such completion.

(iv)      Borrower shall comply with the Construction Contract Prompt Payment law contained in the California Mechanics Lien Law, California Civil Code, Division 4, Part 6, Sections 8000-9566, et. al. notwithstanding Lender's failure or delay in funding any draw requests or Lender's cessation of funding draw requests in accordance with the terms of this Note.  Borrower hereby agrees to provide all required notices to the Contractor and all lienors providing notices to owner in compliance with California Civil Code, Division 4, Part 6, Sections 8000-9566, et. al. in a timely fashion, and authorizes Lender to provide written notices to the same to the extent such notices are required by law.  Borrower shall also comply with any and all other laws related to prompt payment and provision of notices.

(v)      Borrower shall submit, do, and perform all such other items and actions which Lender may reasonably require.

(i)      Conditions Precedent to All Advances.  Lender shall not be obligated to make an advance of Loan proceeds unless the following additional conditions shall have been satisfied or waived in writing by Lender as of the date of each advance:  (i) No lien for the performance of work or supplying of labor, materials or services shall have been filed against the Property and remain unsatisfied or unbonded to the satisfaction of Lender, (ii) no condition or

situation shall exist on the Property which, in the reasonable determination of Lender, constitutes a danger to or impairment of the Property or presents a danger or hazard to the public, (iii) all representations and warranties made by Borrower in this Note and the other Loan Documents shall be true and correct on and as of the date of the advance with the same effect as if made on such date, (iv) all terms and conditions of the Loan Documents required to be met as of the date of the applicable advance shall have been met to the satisfaction of Lender, (v) Borrower shall have paid all fees and expenses incurred by Lender and/or Borrower in connection with such advance, including without limitation Lender's administrative fee,  and (vi) no event of default under this Note or any other Loan Document shall have occurred and be continuing.

(j)    Liability of Lender.  Lender shall in no event be responsible or liable to any person other than Borrower for the disbursement of or failure to disburse the Loan proceeds or any part thereof and neither the Contractor, Consultant, nor any subcontractor, laborer or material supplier shall have any right or claim against Lender under this Note or the other Loan Documents.

2.    Stated Interest Rate.  Except as provided in Section 3 below, the principal balance outstanding hereunder shall bear interest, until fully paid, at 8.99% (the "Stated Interest Rate").

3.    Default Interest Rate.  The Default Interest Rate shall be 2.0% per month. The principal balance outstanding hereunder from time to time shall bear interest at the Default Interest Rate from the date of the occurrence of an Event of Default (as hereinafter defined) hereunder until the date on which the principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, are paid in full.

4.    Payments.  This Note shall be payable as follows:

(a)    Interest.  Accrued and unpaid interest at the Stated Interest Rate or, to the extent applicable, the Default Interest Rate, upon the principal balance outstanding hereunder, shall be due and payable on 3/1/2020, and on the first (1st) day of each month thereafter.  If the payment date above in a given month shall fall on a date other than a Business Day, then the applicable payment shall be due on the next, subsequent Business Day.  As used herein, "Business Day" shall mean a single calendar day that is not a Saturday, Sunday, or legal holiday.  Notwithstanding that interest shall be due on a Business Day, the interest due and payable each month shall be the aggregate amount of interest accrued for all calendar days in the applicable month.

(b)    Principal. The principal balance outstanding hereunder, if not sooner paid as provided herein, shall be due and payable on 2/1/2021 (the "Maturity Date").

5.    Application and Place of Payments.  Payments received by Lender with respect to the indebtedness evidenced hereby shall be applied in such order and manner as Lender in its sole and absolute discretion may elect.  Unless Lender otherwise elects, payments received by Lender shall be applied first to any applicable Additional Sums (such as the Late Charges or NSF Charges defined below), next to accrued and unpaid interest, and the remainder to the principal balance then outstanding hereunder.  Payments hereunder shall be made by check from Maker to Lender, or in such other manner as Lender may specify to Maker in writing from time to time.   Payments shall be made in United States dollars.

6.    Late Charges. If Lender has not received the full amount of any payment of unpaid principal or interest or any other amount due hereunder within ten (10) calendar days of its due date under this Note, Maker shall pay



Loan#20010794: 150 E La Sierra Dr, Arcadia, CA 91006

to Lender a late charge in the amount of 5% of the amount of such payment. In the event the balance of the note is not paid on or before 15 calendar days from its Maturity Date under this Note, in addition to interest at the Default Interest Rate specified in Section 3, Maker shall pay to Lender a late charge equal to 2% of the balance of all unpaid principal and interest.

7.    NSF Charges.  If Maker tenders to Lender a check, draft or other item, that is dishonored by reason of insufficient funds and Lender incurs a bank charge as a result thereof, Maker shall reimburse Maker for such charge.

8.    Optional Prepayments.  Payments of principal may be made at any time, or from time to time, in whole or in part, without penalty or premium, provided that all previously matured interest, and other charges accrued to the date of prepayment are also paid in full. Notwithstanding any partial prepayment of principal hereof, there will be no change in the due date or amount of scheduled payments due hereunder unless Lender agrees in writing to such change.

9.    Collateral; Guaranty.  The obligations of Maker to Lender pursuant to this Note shall be secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing in the form approved by Lender (the "Deed of Trust"). Additionally, the obligations of Maker to Lender pursuant to this Note shall be guaranteed by Jianqing Yang (collectively, "Guarantor") in accordance with a Guaranty in the form approved by Lender (the "Guaranty").

10.    Events of Default; Acceleration.  The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

(a)    Nonpayment of principal, interest or other amounts when the same shall become due and payable hereunder;

(b)    The failure of Maker to comply with any provision of this Note;

(c)    The failure of Guarantor to comply with any provision of the Guaranty;

(d)    The death, incapacity, dissolution, winding-up or termination, as applicable, of the existence of Maker or Guarantor;

(e)    The calling of a meeting of the creditors of Maker or Guarantor;

(f)    The making by Maker or Guarantor of an assignment for the benefit of its respective creditors;

(g)    The appointment of (or application for appointment of) a receiver of Maker or Guarantor, or the involuntary filing against or voluntary filing by Maker or Guarantor of a petition or application for relief under federal bankruptcy law or any similar state or federal law, or the issuance of any writ of garnishment, execution or attachment for service with respect to Maker or Guarantor or any property of Maker or Guarantor; or

(h)    Any statement, representation or warranty contained herein, in the Guaranty or any related document shall be false.

Upon the occurrence of an Event of Default, the entire principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, at the election of Lender, shall become immediately due and payable, without any notice to Maker.

11.    Cross-Default.  Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower, Affiliate of Borrower or



Sound Equity Inc.                                                                                    54

Guarantor to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note.

12.    _Contracted For Interest_.

(a)    Maker agrees to pay an effective contracted for rate of interest equal to the rate of interest resulting from all interest payable as provided in this Note, plus the additional rate of interest resulting from the any Additional Sums. The Additional Sums shall consist of all fees, charges, goods, things in action or any other sums or things of value (other than interest payable as provided in this Note) paid or payable by Maker, whether pursuant to this Note or any other document or instrument in any way pertaining to this lending transaction, that may be deemed to be interest for the purpose of any law of the State of California that may limit the maximum amount of interest to be charged with respect to this lending transaction. The Additional Sums shall be deemed to be interest for the purposes of any such law only.

13.    _Waivers_. Except as set forth in this Note, to the extent permitted by applicable law, Maker, and each person who is or may become liable hereunder, severally waive and agree not to assert: (a) any exemption rights; (b) demand, diligence, grace, presentment for payment, protest, notice of nonpayment, nonperformance, extension, dishonor, maturity, protest and default; and (c) recourse to guaranty or suretyship defenses (including the right to require Lender to bring an action on this Note). Lender may extend the time for payment of or renew this Note, release collateral as security for the indebtedness evidenced hereby or release any party from liability hereunder, and any such extension, renewal, release or other indulgence shall not alter or diminish the liability of Maker, except to the extent expressly set forth in a writing evidencing or constituting such extension, renewal, release or other indulgence.

14.    _Costs of Collection_. Maker agrees to pay all costs of collection, including, without limitation, attorneys' fees, whether or not suit is filed, and all costs of suit and preparation for suit (whether at trial or appellate level), in the event any payment of principal, interest or other amount is not paid when due, or in case it becomes necessary to protect any collateral which is security for any obligation of Maker hereunder, or to exercise any other right or remedy hereunder, or in the event Lender is made a party to any litigation because of the existence of this Note, or any other related documents, or if at any time Lender should incur any attorneys' fees in any proceeding under any federal bankruptcy law (or any similar state or federal law) in connection with the obligations evidenced hereby. In the event of any court proceeding, court costs and attorneys' fees shall be set by the court and not by the jury and shall be included in any judgment obtained by Lender.

15.    _No Waiver_. No delay or failure of Lender in exercising any right hereunder shall affect such right, nor shall any single or partial exercise of any right preclude further exercise thereof.

16.    _Governing Law_. This Note shall be construed in accordance with and governed by the laws of the State of California, without regard to the choice of law rules of the State of California.

17.    _Time of Essence_. Time is of the essence of this Note and each and every provision hereof.

18.    _Conflicts; Inconsistency_. In the event of any conflict or inconsistency between the provisions of this Note and the provisions of any one or more of the other documents executed in connection with this transaction, the provisions of this Note shall govern and control to the extent necessary to resolve such conflict or inconsistency.

19.     Amendments.    No amendment, modification, change, waiver, release or discharge hereof and hereunder shall be effective unless evidenced by an instrument in writing and signed by the party against whom enforcement is sought.

20.     Severability.  The invalidity of any provision of this Note or portion of a provision shall not affect the validity of any other provision of this Note or the remaining portion of the applicable provision.

21.     Binding Nature.  The provisions of this Note shall be binding upon and inure to the benefit of Maker and Lender and their respective heirs, personal representatives, successors and assigns, as applicable.

22.     Notices.  Except as otherwise expressly provided herein, all notices, requests, demands and other communications provided for under the Loan Documents shall be in writing and shall be (a) personally delivered, (b) sent by first class United States mail, (c) sent by overnight courier of national reputation, or (d) transmitted by facsimile in each case delivered or sent to the party to whom notice is being given to the business address, or facsimile number, set forth in the preamble to this Agreement, or, as to each party, at such other business address or facsimile number as it may hereafter designate in writing to the other party pursuant to the terms of this Section. All such notices, requests, demands and other communications shall be deemed to be an authenticated record communicated or given on (a) the date received if personally delivered, (b) when deposited in the mail if delivered by mail, (c) the date delivered to the courier if delivered by overnight courier, or (d) the date of transmission if sent by facsimile, except that notices or requests delivered to the Lender pursuant to any of the provisions of Section shall not be effective until received by the Lender.

23.     Construction.    The language of this Note shall be construed as a whole according to its fair meaning.  The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to."  No inference in favor of, or against, Maker or Lender shall be drawn from the fact that one party has drafted any portion hereof. The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be applied to the interpretation of this Note.

24.     Commercial Use.  Each of the undersigned represents and acknowledges that the funds loaned by the Lender are solely for commercial, business, and investment purposes and not for household or consumer purposes.

25.     Joint and Several Obligations.  Each of the obligations and promises in this Note are binding jointly and severally on each of the undersigned.  Each of the undersigned sign as makers of this Note and not guarantors.

Dated as of the date first set forth above.

MAKER:  150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
        Betty Zheng, Its Manager



## PROMISSORY NOTE SECURED BY DEED OF TRUST

U.S. $2,340,000.00                                                                January 15, 2020

FOR VALUE RECEIVED, 150 La Sierra, LLC, a[n] California Limited Liability Company
("Maker"), hereby promises to pay to the order of Sound Equity Inc, a Delaware Corporation
("Lender"), at the office of Lender located at 989 112th Ave NE, Suite 207, Bellevue, WA
98004, or such other place as holder may from time to time specify, the principal sum of
$2,340,000.00, together with interest on the principal balance outstanding hereunder, from
(and including) the date hereof until (but not including) the date of payment, at the interest
rate specified below, in accordance with the terms and conditions herein.

1.      PURPOSE OF THE LOAN.

        (a)      Purpose of the Loan.  The purpose of the Loan is to provide Borrower
with acquisition, refinance and/or construction financing in order to: (i) purchase certain real
property and improvements encumbered by that certain Deed of Trust, Assignment of Rents,
Security Agreement and Fixture Filing (the "Security Instrument") executed by Borrower in
favor of Lender in connection with this Note; and perform certain renovations and construction
activities to the residential property located thereon (such renovations and construction
activities shall be hereinafter referred to as the "Improvements") or (ii) utilize funds for a
business purpose, as permitted by Lender.  The real property and improvements encumbered
by the Security Instrument shall be hereinafter referred to as the "Property".

        (b)      Initial Advance.  Upon the closing of the Loan, the initial funding under
the Loan for the Borrower's acquisition or refinance of the Property shall be limited to the
amount of $593,262.00.

        (c)      Funding for Construction of the Improvements.   Following the initial
advance of the Loan as set forth in Section 1(b) above (and subject to the terms and
conditions of this Note), the remaining principal balance of the Loan, if any, (such total
remaining amount, the "Improvement Advance Amount") shall be made available to Borrower
for the payment, or reimbursement of payments, of certain of Borrower's costs to perform
the Improvements.  Borrower will receive each advance in trust for the purpose of paying
only actual costs for which the advance is made and will utilize the funds advanced for no
other purpose.

        (d)      Required Documents.  Following the initial advance of the Loan as set
forth in Section 1(b) above, prior to any subsequent disbursements of the proceeds of the
Loan for the renovation and/or construction of the Improvements, if any, Borrower shall
execute and deliver, or cause to be executed and delivered to Lender such documents and
items as Lender shall request (which, when executed and delivered to Lender shall be deemed
Loan Documents hereunder), all in form and substance acceptable to Lender in Lender's sole
discretion.  Such documents and items may include, but not be limited to, the following:

        (i)      Construction Contract.   The construction contract (the
Construction Contract) for the Property and Improvements, executed by and between
Borrower and a California licensed general contractor (Contractor). Which contractor shall be
acceptable to Lender to participate in the construction of the Improvements in accordance
with the plans and specifications and architectural and/or engineering drawings for the
Improvements (collectively, the Plans and Specifications) all in form and
content reasonably acceptable to Lender.

        (ii)      Contractor's      and      Subcontractor's
License/Insurance.   Copies of Contractor's licenses and any other

subcontractor's (as may be required by Lender), together with proof of Contractor's worker's compensation, public liability insurance coverage, and such other insurance coverage as may be required by Lender.

    (iii)   <u>Collateral Assignment of Contracts and Documents</u>.  A collateral assignment of all necessary contracts related to the Improvements (including without limitation the Construction Contract, any architect's contract, any engineer's contract, and the Plans and Specifications), from Borrower to Lender assigning any and all rights, title and interest which Borrower shall have under the same.

    (iv)   <u>Plans and Specifications</u>.  One (1) set of the approved site plan and the complete and detailed Plans and Specifications which Borrower shall have approved in writing, including any changes or modifications thereto to the date of receipt by Lender, and any and all construction contracts or other documents in the possession or control of Borrower or any contractor relating to the construction of the Improvements.  The sets must be stamped with all required approvals from all applicable governmental authorities; certified under seal and signed by Borrower and Contractor to be true copies of the Plans and Specifications and approved by all authorities and agencies having jurisdiction thereon.  No changes shall be made thereafter in the Plans and Specifications without the prior written consent of the Lender, except as set forth herein; and provided, however, that changes to the Plans and Specifications which will not adversely affect the value of the Improvements shall be permitted without the prior written consent of the Lender.

    (v)   <u>Notice of Commencement</u>.  A notice of commencement (or its equivalent) meeting such requirements as Lender may require, including without limitation requirements with respect execution, recordation, posting, naming of additional parties for notices, and duration.

    (vi)   <u>Project/ Budget</u>.  A detailed and itemized construction and non-construction cost (soft costs) breakdown on Lender approved forms of all costs including specification of which items are to be funded from sources other than the Loan (the *Budget*).  The aggregate contract price for constructing and equipping the Improvements in accordance with the Plans and Specifications and representations made to Lender and all other costs of the Improvements being financed with the Loan proceeds and pursuant to the terms and conditions hereof shall not without Lender's prior written approval, exceed the amount allocated and described in the Budget.  Borrower shall furnish such additional supporting documentation for the cost of the items described in the Budget as may be required by Lender.

    (vii)   <u>Lien Waivers</u>.  Original waivers of lien from Contractor and each and every subcontractor, laborer or material supplier performing services or supplying material to the Property within the past ninety (90) days and an affidavit listing all of said entities and certifying that no work has been performed and no materials have been supplied for which the costs remain unpaid prior to closing.

    (e)   <u>Draw Requests</u>.

    (i)   Advances shall be made (i) not more frequently than once in any calendar month, (ii) in a minimum amount that is not less than $10,000.00 of the Improvement Advance Amount (unless otherwise approved by Lender in Lender's sole discretion), and (iii) in an amount not to exceed unreimbursed costs actually previously paid by Borrower or actually incurred by Borrower that are to be paid from proceeds of the Loan set forth in the Budget.

    (ii)  Notwithstanding the foregoing Section 1(e)(i), the final advance (*Final Advance*) under this Section 1 shall not (i) be less than $20,000.00; and (ii) shall not be less than 20% of the Improvement Advance Amount (whichever is higher); and (iii) shall not be made prior to project completion as described in Section 1(f) below.

    (iii)  Each draw shall be based on a draw request signed by Borrower in such form approved by Lender and shall be reviewed by the Lender's construction consultant (the *Consultant*) and, if requested by Lender, signed by Contractor. Each draw request shall contain any written warning required of Lender by applicable local law (e.g., requiring lenders, when making disbursements directly to owners, to give written warning to such owners that to protect themselves from double payments, lien releases from each lienor should be required from the contractor), and shall be supported by such information and documentation (such as paid receipts, invoices, statements of accounts, lien releases, etc.) as Lender may require.

    (f)  <u>Final Advance</u>. Lender shall not be obligated to make the Final Advance of the Loan unless the following additional conditions shall have been satisfied, to the extent required by Lender:

    (i)  The Consultant shall have certified to Lender that all construction has, and Improvements have, been completed in a good and workmanlike manner, in accordance with applicable requirements of all applicable governmental authorities and substantially in accordance with the Plans and Specifications;

    (ii)  To the extent required by applicable governmental authorities for the use and occupancy of the Improvements, all certificates of occupancy and other applicable permits and releases shall have been issued with respect to the Improvements and copies thereof have been furnished to Lender;

    (iii)  Lender shall have received a satisfactory final affidavit from the Contractor and full and complete releases of lien from the Contractor and each subcontractor, laborer and materialman and any other party who has supplied labor, materials or services for the construction of the Improvements, or who otherwise might be entitled to claim a contractual, statutory or constitutional lien against the Property with respect to work performed and/on materials supplied in the construction of the Improvements;

    (iv)  Lender shall have received a satisfactory endorsement to its title insurance policy;

    (v)  Lender has received such other items which Lender may reasonably require to be submitted by Borrower; and

    (vi)  All other terms and conditions of this Note and the other Loan Documents required to be met as of the date of the Final Advance of the Loan for hard costs shall have been met to the satisfaction of Lender.

    (g)  Advances for Stored Materials. Notwithstanding anything to the contrary contained herein, no advances will be made for building materials or furnishings that have not yet been incorporated into the Improvements (*Stored Materials*) unless and until: (i) Borrower has good title to the Stored Materials and has furnished satisfactory evidence of such title to Lender, to the extent required by Lender; (ii) the Stored Materials are components in a form ready for incorporation into the Improvements and will be so incorporated within a reasonable period (not to exceed thirty [30] days) from the date of the advance for the Stored Materials; (iii) the Stored Materials are in Borrower's possession and are satisfactorily stored on the Property or at such other location as Lender may approve, in each case with adequate



safeguards to prevent commingling with materials for other projects; (iv) the Stored Materials are protected and insured against loss, theft and damage in a manner and amount satisfactory to Lender; (v) the Stored Materials have been paid for in full or will be paid for in full from the funds to be advanced; (vi) Lender has or will have upon the payment for the Stored Materials from the advanced funds a perfected, first priority security interest in the Stored Materials; and (vii) all lien rights and claims of the supplier have been released or will be released upon payment with the advanced funds.

(h)     <u>Additional Terms Regarding Advances</u>.  Lender shall not be obligated to make an advance of Loan proceeds until and unless the following additional items shall have been received, complete and/or approved by Lender, as and to the extent required by Lender, prior to the date of the advance:

(i)     A notice of title continuation or endorsement to the title insurance policy with respect to the Loan, showing there has been no change in the status of title and no other exception not theretofore approved by Lender, which endorsement shall have the effect of advancing the effective date of the policy to the date of the advance then being made and increasing the coverage of the policy by an amount equal to the such advance.

(ii)     Evidence acceptable to Lender that all work requiring inspection by any governmental authority having or claiming jurisdiction has been duly inspected and approved by such authority and by any rating or inspection organization, bureau, association or office having or claiming jurisdiction.

(iii)     Evidence, including a report from the Consultant, that all work completed at the time of the application for an advance has been performed in a good and workmanlike manner in accordance with the Plans and Specifications, that all materials and fixtures usually furnished and installed at that stage of construction have been so furnished and installed, that the Improvements can be completed in accordance with the Plans and Specifications, and that the balance of the Loan proceeds then held by Lender and available for advance pursuant to the terms of this Note, together with other funds which Lender determines to be available to Borrower for such purpose, are and will be sufficient to pay the cost of such completion.

(iv)     Borrower shall comply with the Construction Contract Prompt Payment law contained in the California Mechanics Lien Law, California Civil Code, Division 4, Part 6, Sections 8000-9566, et. al. notwithstanding Lender's failure or delay in funding any draw requests or Lender's cessation of funding draw requests in accordance with the terms of this Note.  Borrower hereby agrees to provide all required notices to the Contractor and all lienors providing notices to owner in compliance with California Civil Code, Division 4, Part 6, Sections 8000-9566, et. al. in a timely fashion, and authorizes Lender to provide written notices to the same to the extent such notices are required by law.  Borrower shall also comply with any and all other laws related to prompt payment and provision of notices.

(v)     Borrower shall submit, do, and perform all such other items and actions which Lender may reasonably require.

(i)     <u>Conditions Precedent to All Advances</u>. Lender shall not be obligated to make an advance of Loan proceeds unless the following additional conditions shall have been satisfied or waived in writing by Lender as of the date of each advance:  (i) No lien for the performance of work or supplying of labor, materials or services shall have been filed against the Property and remain unsatisfied or unbonded to the satisfaction of Lender, (ii) no condition or



situation shall exist on the Property which, in the reasonable determination of Lender, constitutes a danger to or impairment of the Property or presents a danger or hazard to the public, (iii) all representations and warranties made by Borrower in this Note and the other Loan Documents shall be true and correct on and as of the date of the advance with the same effect as if made on such date, (iv) all terms and conditions of the Loan Documents required to be met as of the date of the applicable advance shall have been met to the satisfaction of Lender, (v) Borrower shall have paid all fees and expenses incurred by Lender and/or Borrower in connection with such advance, including without limitation Lender's administrative fee,  and (vi) no event of default under this Note or any other Loan Document shall have occurred and be continuing.

(j)    Liability of Lender.  Lender shall in no event be responsible or liable to any person other than Borrower for the disbursement of or failure to disburse the Loan proceeds or any part thereof and neither the Contractor, Consultant, nor any subcontractor, laborer or material supplier shall have any right or claim against Lender under this Note or the other Loan Documents.

2.    Stated Interest Rate.  Except as provided in Section 3 below, the principal balance outstanding hereunder shall bear interest, until fully paid, at 8.99% (the "Stated Interest Rate").

3.    Default Interest Rate.  The Default Interest Rate shall be 2.0% per month. The principal balance outstanding hereunder from time to time shall bear interest at the Default Interest Rate from the date of the occurrence of an Event of Default (as hereinafter defined) hereunder until the date on which the principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, are paid in full.

4.    Payments.  This Note shall be payable as follows:

(a)    Interest.  Accrued and unpaid interest at the Stated Interest Rate or, to the extent applicable, the Default Interest Rate, upon the principal balance outstanding hereunder, shall be due and payable on 3/1/2020, and on the first (1st) day of each month thereafter.  If the payment date above in a given month shall fall on a date other than a Business Day, then the applicable payment shall be due on the next, subsequent Business Day.  As used herein, "Business Day" shall mean a single calendar day that is not a Saturday, Sunday, or legal holiday.  Notwithstanding that interest shall be due on a Business Day, the interest due and payable each month shall be the aggregate amount of interest accrued for all calendar days in the applicable month.

(b)    Principal. The principal balance outstanding hereunder, if not sooner paid as provided herein, shall be due and payable on 2/1/2021 (the "Maturity Date").

5.    Application and Place of Payments.  Payments received by Lender with respect to the indebtedness evidenced hereby shall be applied in such order and manner as Lender in its sole and absolute discretion may elect.  Unless Lender otherwise elects, payments received by Lender shall be applied first to any applicable Additional Sums (such as the Late Charges or NSF Charges defined below), next to accrued and unpaid interest, and the remainder to the principal balance then outstanding hereunder.  Payments hereunder shall be made by check from Maker to Lender, or in such other manner as Lender may specify to Maker in writing from time to time.   Payments shall be made in United States dollars.

6.    Late Charges. If Lender has not received the full amount of any payment of unpaid principal or interest or any other amount due hereunder within ten (10) calendar days of its due date under this Note, Maker shall pay



to Lender a late charge in the amount of 5% of the amount of such payment. In the event the balance of the note is not paid on or before 15 calendar days from its Maturity Date under this Note, in addition to interest at the Default Interest Rate specified in Section 3, Maker shall pay to Lender a late charge equal to 2% of the balance of all unpaid principal and interest.

7.    NSF Charges.  If Maker tenders to Lender a check, draft or other item, that is dishonored by reason of insufficient funds and Lender incurs a bank charge as a result thereof, Maker shall reimburse Maker for such charge.

8.    Optional Prepayments.  Payments of principal may be made at any time, or from time to time, in whole or in part, without penalty or premium, provided that all previously matured interest, and other charges accrued to the date of prepayment are also paid in full. Notwithstanding any partial prepayment of principal hereof, there will be no change in the due date or amount of scheduled payments due hereunder unless Lender agrees in writing to such change.

9.    Collateral; Guaranty.  The obligations of Maker to Lender pursuant to this Note shall be secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing in the form approved by Lender (the "Deed of Trust"). Additionally, the obligations of Maker to Lender pursuant to this Note shall be guaranteed by Jianqing Yang (collectively, "Guarantor") in accordance with a Guaranty in the form approved by Lender (the "Guaranty").

10.    Events of Default; Acceleration.  The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

(a)    Nonpayment of principal, interest or other amounts when the same shall become due and payable hereunder;

(b)    The failure of Maker to comply with any provision of this Note;

(c)    The failure of Guarantor to comply with any provision of the Guaranty;

(d)    The death, incapacity, dissolution, winding-up or termination, as applicable, of the existence of Maker or Guarantor;

(e)    The calling of a meeting of the creditors of Maker or Guarantor;

(f)    The making by Maker or Guarantor of an assignment for the benefit of its respective creditors;

(g)    The appointment of (or application for appointment of) a receiver of Maker or Guarantor, or the involuntary filing against or voluntary filing by Maker or Guarantor of a petition or application for relief under federal bankruptcy law or any similar state or federal law, or the issuance of any writ of garnishment, execution or attachment for service with respect to Maker or Guarantor or any property of Maker or Guarantor; or

(h)    Any statement, representation or warranty contained herein, in the Guaranty or any related document shall be false.

Upon the occurrence of an Event of Default, the entire principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, at the election of Lender, shall become immediately due and payable, without any notice to Maker.

11.    Cross-Default.  Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower, Affiliate of Borrower or



Guarantor to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note.

12.    Contracted For Interest.

(a)    Maker agrees to pay an effective contracted for rate of interest equal to the rate of interest resulting from all interest payable as provided in this Note, plus the additional rate of interest resulting from the any Additional Sums. The Additional Sums shall consist of all fees, charges, goods, things in action or any other sums or things of value (other than interest payable as provided in this Note) paid or payable by Maker, whether pursuant to this Note or any other document or instrument in any way pertaining to this lending transaction, that may be deemed to be interest for the purpose of any law of the State of California that may limit the maximum amount of interest to be charged with respect to this lending transaction. The Additional Sums shall be deemed to be interest for the purposes of any such law only.

13.    Waivers. Except as set forth in this Note, to the extent permitted by applicable law, Maker, and each person who is or may become liable hereunder, severally waive and agree not to assert: (a) any exemption rights; (b) demand, diligence, grace, presentment for payment, protest, notice of nonpayment, nonperformance, extension, dishonor, maturity, protest and default; and (c) recourse to guaranty or suretyship defenses (including the right to require Lender to bring an action on this Note). Lender may extend the time for payment of or renew this Note, release collateral as security for the indebtedness evidenced hereby or release any party from liability hereunder, and any such extension, renewal, release or other indulgence shall not alter or diminish the liability of Maker, except to the extent expressly set forth in a writing evidencing or constituting such extension, renewal, release or other indulgence.

14.    Costs of Collection. Maker agrees to pay all costs of collection, including, without limitation, attorneys' fees, whether or not suit is filed, and all costs of suit and preparation for suit (whether at trial or appellate level), in the event any payment of principal, interest or other amount is not paid when due, or in case it becomes necessary to protect any collateral which is security for any obligation of Maker hereunder, or to exercise any other right or remedy hereunder, or in the event Lender is made a party to any litigation because of the existence of this Note, or any other related documents, or if at any time Lender should incur any attorneys' fees in any proceeding under any federal bankruptcy law (or any similar state or federal law) in connection with the obligations evidenced hereby. In the event of any court proceeding, court costs and attorneys' fees shall be set by the court and not by the jury and shall be included in any judgment obtained by Lender.

15.    No Waiver. No delay or failure of Lender in exercising any right hereunder shall affect such right, nor shall any single or partial exercise of any right preclude further exercise thereof.

16.    Governing Law. This Note shall be construed in accordance with and governed by the laws of the State of California, without regard to the choice of law rules of the State of California.

17.    Time of Essence. Time is of the essence of this Note and each and every provision hereof.

18.    Conflicts; Inconsistency. In the event of any conflict or inconsistency between the provisions of this Note and the provisions of any one or more of the other documents executed in connection with this transaction, the provisions of this Note shall govern and control to the extent necessary to resolve such conflict or inconsistency.

This is to certify that this is a true
and correct copy of the original
NORTH AMERICAN TITLE COMPANY

ESCROW OFFICER

19.    <u>Amendments</u>.    No amendment, modification, change, waiver, release or discharge hereof and hereunder shall be effective unless evidenced by an instrument in writing and signed by the party against whom enforcement is sought.

20.    <u>Severability</u>.  The invalidity of any provision of this Note or portion of a provision shall not affect the validity of any other provision of this Note or the remaining portion of the applicable provision.

21.    <u>Binding Nature</u>.  The provisions of this Note shall be binding upon and inure to the benefit of Maker and Lender and their respective heirs, personal representatives, successors and assigns, as applicable.

22.    <u>Notices</u>.  Except as otherwise expressly provided herein, all notices, requests, demands and other communications provided for under the Loan Documents shall be in writing and shall be (a) personally delivered, (b) sent by first class United States mail, (c) sent by overnight courier of national reputation, or (d) transmitted by facsimile in each case delivered or sent to the party to whom notice is being given to the business address, or facsimile number, set forth in the preamble to this Agreement, or, as to each party, at such other business address or facsimile number as it may hereafter designate in writing to the other party pursuant to the terms of this Section. All such notices, requests, demands and other communications shall be deemed to be an authenticated record communicated or given on (a) the date received if personally delivered, (b) when deposited in the mail if delivered by mail, (c) the date delivered to the courier if delivered by overnight courier, or (d) the date of transmission if sent by facsimile, except that notices or requests delivered to the Lender pursuant to any of the provisions of Section shall not be effective until received by the Lender.

23.    <u>Construction</u>.  The language of this Note shall be construed as a whole according to its fair meaning.  The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to."  No inference in favor of, or against, Maker or Lender shall be drawn from the fact that one party has drafted any portion hereof. The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be applied to the interpretation of this Note.

24.    <u>Commercial Use</u>.  Each of the undersigned represents and acknowledges that the funds loaned by the Lender are solely for commercial, business, and investment purposes and not for household or consumer purposes.

25.    <u>Joint and Several Obligations</u>.  Each of the obligations and promises in this Note are binding jointly and severally on each of the undersigned.  Each of the undersigned sign as makers of this Note and not guarantors.

Dated as of the date first set forth above.

MAKER:  150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
        Betty Zheng, Its Manager



This is to certify that this is a true and correct copy of the original. NORTH AMERICAN TITLE COMPANY

ESCROW OFFICER

Sound Equity Inc.

EXHIBIT 5

| **California TD Specialists** | Prepared: 9/22/2022 |
| **8190 East Kaiser Blvd.** | |
| **Anaheim Hills, California 92808** | |
| **(714) 283-2180** | |

**\*\* ONCE FUNDS ARE RECEIVED IN OUR OFFICE WE WILL ISSUE THE FULL RECONVEYANCE DEED\*\***

# DEMAND FOR PAYOFF

LENDERS USE:

Borrower:     150 LA SIERRA, LLC       TS# 85859     /     Loan # 399283791

Property Address:     150 E LA SIERRA DR, ARCADIA, CA 91006

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.  IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT CALIFORNIA TD SPECIALISTS IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The amount to pay off the above referenced loan as of **9/27/2022** is as follows:

| | |
|---|---:|
| Unpaid Principal Balance: | $1,551,633.59 |
| Interest on Unpaid Principal Balance: | $291,305.28 |

### Interest Details

| From | Through | Late Charge | Rate | Interest on UPB | Per Diem |
|---|---|---|---|---|---|
| 12/1/2021 | 12/31/2021 | $0.00 | 8.99% | $12,011.88 | $387.48 |
| 1/1/2022 | 9/27/2022 | $0.00 | 24% | $279,293.40 | $1,034.42 |

| | |
|---|---:|
| Total Charges & Advances: | $52,058.51 |

### Charges and Advance Details

| From | Through | Charges & Advances | Rate | Amount | Int. on Charges & Advance | Per Diem |
|---|---|---|---|---|---|---|
| 09/01/2021 | 09/27/2022 | Prior Unpaid Late Charges () | 0% | $1,051.01 | $0.00 | $0.00 |
| 01/11/2022 | 09/27/2022 | Accrued Late Charges () | 0% | $10,861.41 | $0.00 | $0.00 |
| 03/23/2022 | 09/27/2022 | Suspense balance () | 0% | ($367.29) | $0.00 | $0.00 |
| 03/31/2022 | 09/27/2022 | Interest on advances () | 0% | $1,380.71 | $0.00 | $0.00 |
| 08/11/2022 | 09/27/2022 | Balloon Late Fee () | 0% | $31,032.67 | $0.00 | $0.00 |
| 09/16/2022 | 09/27/2022 | Attorney Fees () | 0% | $8,100.00 | $0.00 | $0.00 |

| | |
|---|---:|
| **Total Foreclosure Fees & Expenses:** | $10,700.07 |
| **Payoff Amount as of 9/27/2022:** | **$1,905,697.45** |
| **Daily Interest on UPB and Advances:** | **$1,034.42** |
| **Sale Date Scheduled: 9/28/2022** | |

IN THE EVENT PAYMENT HAS NOT BEEN MADE ON OR PRIOR TO **9/27/2022**, THIS DEMAND WILL BE NULL AND VOID. WE ARE TO BE AT NO EXPENSE IN THIS MATTER AND RESERVE THE OPTION TO CANCEL THIS DEMAND AND WITHDRAW SAID DOCUMENT AT ANY TIME.

Please submit your **Certified Funds**, payable to:    *California TD Specialists, ATTN: Patricio S. Ince', VP*
    *8190 East Kaiser Blvd., Anaheim Hills, California 92808*

**Please be advised that this figure is subject to change due to escrow disbursements and advances.  Please contact this office to verify that these figures have not changed.**

 Thank you,                                                        LENDER AGREES WITH THE AMOUNT ABOVE

_____                    _____

                                                        SOUND EQUITY HIGH INCOME  DEBT FUND LLC




85859                              TS-DLTR            Payoff Statement        EXHIBIT 5        130912        **65**

EXHIBIT 6

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

 

**This page is part of your document - DO NOT DISCARD**



## 20220731103



**Pages:**
**0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/15/22 AT 04:22PM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 106.00 |

 



**L E A D S H E E T**



**202207153280032**

**00022565958**



**013545496**

**SEQ:**
**01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**

E415702

LOS ANGELES,CA                    Page 1 of 5                    Printed on 9/22/2022 12:35:48 PM
Document: ML 2022.731103

EXHIBIT 6

66

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

Instrument Prepared By
And Recording Requested By:

TCS BUILDING SOLUTION, INC.
800 W 6TH ST #1250,
LOS ANGELES, CA, 90017

Space Above For Recorder's Use

### Statement of Mechanics Lien
California Civil Code Section 8416

**Claimant:** (Name and Address)

TCS BUILDING SOLUTION, INC.

**Property Liened** (Property):

State of California
County:    LOS ANGELES

**Property Owner:** (Name and Address)

150 LA SIERRA LLC &
JINZHENG GROUP USA LLC,
(OWNER & REPUTED OWNER)

150 E LA SIERRA DR,
ARCADIA, CA, 91006-4163

Legal Description:

AIN:5781-010-063
TR=63552 LOT1

NOTICE IS HEREBY GIVEN that Claimant claims a lien for labor, service, equipment or materials under Section 8416 et seq. of the Civil Code of the State of California, upon the Property, above-described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein. The labor, service, equipment or materials were furnished for the construction of those certain buildings, improvements, or structures, now upon that certain parcel of land above-described as the Property.

67

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

| **Services:** The lien is claimed for the following labor, services, equipment or materials:<br><br>Construction Services including labor, materials, and equipment for single family house construction | **Amount Due:** Amount due after deducting all just credits and offsets:<br><br>$ 350,000<br>Three hundred fifty thousand U.S. Dollars. | **Hiring Party:** Name and Address of person or entity to whom Claimant furnished labor, services, equipment and/or materials:<br><br>150 LA SIERRA LLC & JINZHENG GROUP USA LLC |
|---|---|---|
| I, the undersigned, as a disclosed and authorized agent of the Claimant, state that I have read the foregoing Claim of Lien, that I have been provided information regarding the facts and contents therein, and that based thereupon, **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**<br><br>Signed:<br><br>Claimant<br>Print Name:  BRIAN YOU<br>Date:  JULY 15 2022 | Name of Claimant: (Company Name)<br><br>TCS BUILDING SOLUTION, INC.<br><br>Signed:<br><br>Claimant<br>Print Name:  BRIAN YOU<br>Date:    JULY 15 2022 |

Branch :SRC,User :TAHM                    Comment:                                        Station Id :FP3S

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

## NOTICE OF MECHANICS LIEN
## ATTENTION!

Upon the recording of the enclosed MECHANIC'S LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the Mechanic's Lien is recorded.

The party identified in the Mechanic's Lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a Mechanic's Lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the Mechanic's Lien is released.

**BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANIC'S LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.**

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

# NOTICE OF MECHANICS LIEN
# ATTENTION!

Upon the recording of the enclosed **MECHANICS LIEN** with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanics lien is recorded.

The party identified in the mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.

## PROOF OF SERVICE AFFIDAVIT
### California Civil Code section 8416(a)(7) and (c)

**ALTERNATE AFFIDAVIT FOR SERVICE ON THE CONSTRUCTION LENDER OR ORIGINAL CONTRACTOR**
California Civil Code Section 8416 (a)(7) and (c)(2)

I, _Steve Tox_____ (name), declare that the owner or reputed owner cannot be served with a copy of this Mechanics' Lien and Notice of Mechanics' Lien by registered mail, certified mail, or first-class mail. Pursuant to California Civil Code Section 8416(c)(2), I served a copy of this Mechanics' Lien and Notice of Mechanics' Lien by registered mail, certified mail, or first-class mail, evidenced by a certificate of mailing, postage prepaid, addressed to the construction lender or original contractor as follows:

Name and title of person or entity served: _150 LA SIERR LLC & JIN ZHENG GROUPL_

Serivce Address: _150 E LA SIERRA DR, ARCADIA, CA, 91006 - 4163_

Executed on _____, at _____, _____.

By: _____

EXHIBIT 7

**Mindy Beckham**
Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
Phone:  (805) 367-5628
Fax:
wlvtitle@stewart.com

# PRELIMINARY REPORT

Order No.:            1763667
Your File No.:        105614-AA
Buyer/Borrower Name:  Kenny Yu
Seller Name:          150 La Sierra Llc

Property Address:  150 E La Sierra Drive, Arcadia, CA  91006

In response to the above referenced application for a Policy of Title Insurance, Stewart Title of California, Inc. hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Stewart Title Guaranty Company Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referenced to as an Exception on Schedule B or not excluded from coverage pursuant to the printed Schedules, Conditions, and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on covered Risks of said policy or policies are set forth in Exhibit A attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limits of Liability for certain coverages are also set forth in Exhibit A.  Copies of the policy forms should be read. They are available from the office which issued this report.

Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.

It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.

This report, (and any supplements or amendments thereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance a binder or commitment should be requested.

| Dated as of September 13, 2022 at 7:30AM | |
|---|---|
| | **Update No. 1** |

**When replying, please contact:**   Mindy Beckham, Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
(805) 367-5628
wlvtitle@stewart.com

EXHIBIT 7                                      71

**IF ANY DECLARATION, GOVERNING DOCUMENT (FOR EXAMPLE, COVENANT, CONDITION OR RESTRICTION) OR DEED IDENTIFIED AND/OR LINKED IN THIS TITLE PRODUCT CONTAINS ANY RESTRICTION BASED ON AGE, RACE COLOR, RELIGION, SEX, GENDER, GENDER IDENTITY, GENDER EXPRESSION, SEXUAL ORIENTATION, FAMILIAL STATUS, MARITAL STATUS, DISABILITY, VETERAN OR MILITARY STATUS, GENETIC INFORMATION, NATIONAL ORIGIN, SOURCE OF INCOME AS DEFINED IN SUBDIVISION (p) OF SECTION 12955, OR ANCESTRY, THAT RESTRICTION VIOLATES STATE AND FEDERAL FAIR HOUSING LAWS AND IS VOID, AND MAY BE REMOVED PURSUANT TO SECTION 12956.2 OF THE GOVERNMENT CODE BY SUBMITTING A "RESTRICTIVE COVENANT MODIFICATION" FORM, TOGETHER WITH A COPY OF THE ATTACHED DOCUMENT WITH THE UNLAWFUL PROVISION REDACTED TO THE COUNTY RECORDER'S OFFICE. THE "RESTRICTIVE COVENANT MODIFICATION" FORM CAN BE OBTAINED FROM THE COUNTY RECORDER'S OFFICE AND MAY BE AVAILABLE ON ITS WEBSITE. THE FORM MAY ALSO BE AVAILABLE FROM THE PARTY THAT PROVIDED YOU WITH THIS DOCUMENT. LAWFUL RESTRICTIONS UNDER STATE AND FEDERAL LAW ON THE AGE OF OCCUPANTS IN SENIOR HOUSING OR HOUSING FOR OLDER PERSONS SHALL NOT BE CONSTRUED AS RESTRICTIONS BASED ON FAMILIAL STATUS.**

# PRELIMINARY REPORT

**The form of Policy of Title Insurance contemplated by this report is:**

☐ Standard Coverage Owner's Policy

☐ Extended Coverage Owner's Policy

☒ CLTA/ALTA Homeowners Policy

☐ Standard Coverage Loan Policy

☒ Extended Coverage Loan Policy

☐ Short Form Residential Loan Policy

☐

# SCHEDULE A

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

FEE SIMPLE

**Title to said estate or interest at the date hereof is vested in:**

150 La Sierra, LLC, a California limited liability company

# <u>LEGAL DESCRIPTION</u>

**The land referred to herein is situated in the State of California, County of Los Angeles, City of Arcadia and described as follows:**

Lot 1 of Tract No. 63552, in the City of Arcadia, County of Los Angeles, State of California, as per Map recorded in Book 1325 Page(s) 32 and 33 of Maps, in the Office of the County Recorder of said County.

Except therefrom all oil, gas, minerals and other hydrocarbon substances, lying below a depth of 500 feet from the surface of said property, but with no right of surface entry, where they have been previously reserved in Instruments of Record.

APN:  5781-010-063

(End of Legal Description)

MAP

THE MAP CONNECTED HEREWITH IS BEING PROVIDED AS A COURTESY AND FOR INFORMATIONAL PURPOSES ONLY; THIS MAP SHOULD NOT BE RELIED UPON. FURTHERMORE, THE PARCELS SET OUT ON THIS MAP MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES. STEWART ASSUMES NO LIABILITY, RESPONSIBILITY OR INDEMNIFICATION RELATED TO THE MAPS NOR ANY MATTERS CONCERNING THE CONTENTS OF OR ACCURACY OF THE MAP.

# <u>SCHEDULE B</u>

**At the date hereof, exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy or policies would be as follows:**

**Taxes:**

A.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2022 - 2023.

B.    The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the revenue and taxation code of the State of California.

C.    Taxes and/or assessments affecting the land, if any, for Community Facility Districts including Mello Roos Districts which may exist by virtue of assessment maps or notices filed by said districts. Said taxes and/or assessments are typically collected with the County taxes; however, some districts may remove these taxes and/or assessment from the County taxes and assess and collect them separately.

D.    Prior to recording, the final amount due for taxes must be confirmed with tax collector.

**Exceptions:**

1.    Water rights, claims or title to water in or under the property, whether or not shown by the public records.

2.    Ownership of, or rights to, minerals or other substances, subsurface and surface, of whatsoever kind, including, but not limited to coal, ores, metals, lignite, oil, gas, geothermal resources, brine, uranium, clay, rock, sand and gravel in, on, under and that may be produced from the Land, together with all rights, privileges, and immunities relating thereto, whether the ownership or rights arise by lease, grant, exception, conveyance, reservation or otherwise, and whether or not appearing in the Public Records or listed in Schedule B. Stewart Title Guaranty Company and its issuing agent make no representation as to the present ownership of any such interests. There may be leases, grants, exceptions, or reservations of interests that are not listed.

3.    Covenants, conditions and restrictions as set forth in a document recorded in Book 4700 Page 161, of Deeds.

       Said covenants, conditions, and restrictions provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value.

4.    Easement and rights incidental thereto for Public utilities to Southern California Edison Company, a Corporation, as set forth in a document recorded June 19, 1952, as Instrument No. 2560, of Official Records.

5.    Easement and rights incidental thereto for Public utilities to South California Edison Company, a Corporation, as set forth in a document recorded May 9, 1961, as Instrument No. 3900, of Official Records.

6.    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount | : $2,340,000.00 |
| Trustor | : 150 La Sierra, LLC, a[n] California Limited Liability Company |
| Trustee | : FCI Lender Services, Inc., a California Corporation |

Beneficiary            :  Sound Equity Inc., a Delaware Corporation
Recorded               :  January 23, 2020, as Instrument No. 20200086211, of Official Records

Said deed of trust appears to be an equity line or a revolving line of credit. Prior to recording, a written statement from the beneficiary confirming that the account is frozen must be obtained. Borrower may be required to provide a sworn written statement of indemnity assuring that said deed of trust is frozen and closed. In addition, upon recording and payoff, the account must be closed and reconveyed by the beneficiary.

The beneficial interest of FCI Lender Services, Inc., a California Corporation having been assigned of record to Sound Equity High Income Debt Fund, LLC, ISAOA, an undivided 100% interest by assignment recorded on April 5, 2022, as Instrument No. 20220373976, of Official Records.

To avoid delays in recording, you must submit the following documents for review and approval:
    (a) the original note.
    (b) the original deed of trust.
    (c) the request for reconveyance.
    (d) a final payoff demand executed by the record beneficiary(ies).
        (i) if the beneficiary(ies) is a trust, you must provide a full copy of the trust and any amendments thereto, and all trustees must sign the payoff demand. In certain situations, you may be permitted to provide the STG Certification of Trust.
        (ii) if a servicing agent prepares the demand on behalf of the beneficiary(ies), you must provide a full copy of the servicing agreement and the beneficiary(ies) must still sign and approve the payoff demand.
Please contact your title officer to discuss the above requirements.
The right is reserved to add requirements or additional items after completion of such review.

Substitution of trustee naming California TD Specialists, as trustee recorded on April 5, 2022, as Instrument No. 20220373977, of Official Records.

A Notice of default recorded on April 5, 2022, as Instrument No. 20220373978, of Official Records.

Notice of trustee's sale recorded July 11, 2022 as Instrument No. 20220708017 of Official Records.

7.  A Claim of Mechanic's Lien by Resco Electric, Inc., in the amount of $3,837.24, and any other amounts due thereunder, recorded December 15, 2021 as Instrument No. 20211861454, of Official Records.

    Any lien, or right to a lien, for services, labor, materials or equipment heretofore or hereafter furnished, imposed by law and not shown by the public records.

8.  A Claim of Mechanic's Lien by TCS Building Solution, Inc., in the amount of $350,000.00, and any other amounts due thereunder, recorded July 15, 2022 as Instrument No. 20220731103.

    Any lien, or right to a lien, for services, labor, materials or equipment heretofore or hereafter furnished, imposed by law and not shown by the public records.

9.  In order to insure a conveyance, acquisition or encumbrance by the limited liability company named below, you must provide the following:
    Limited liability company: 150 La Sierra, LLC, a California Limited Liability Company
    (a) A certified copy of the articles of organization (Form LLC-1), and any filed amendment (Form LLC-2) or restatement (Form LLC-10), if applicable.
    (b) A copy of the operating agreement and any amendments.

Additional requirements or items may be requested upon review of the required documents set forth above.

10. US Code Title 31-Sec 5326 authorizes the U.S Department of Treasury to collect information about certain transaction as specified in various geographic targeting orders for the purpose of preventing evasion of the Bank Secrecy Act. As a result of a Geographic Targeting Order ("GTO") issued by the United States Department of Treasury, Financial Crimes Enforcement Network ("FinCEN"), this transaction may be responsive to the requirements of the GTO. If the buyer(s) is an entity purchasing property located in Los Angeles, San Diego, San Francisco, San Mateo and Santa Clara counties without financing through an institutional lender, buyer(s) will be asked to complete and provide information on the ALTA 2018 Information Collection Form. Upon review, additional exceptions and/or requirements may be raised; please contact the title unit for further information.

(End of Exceptions)

# NOTES AND REQUIREMENTS

A.  Property taxes for the fiscal year 2021 - 2022 shown below are paid.  For proration purposes the amounts are:
1st Installment             : $9,535.61
2nd Installment            : $9,535.60
Parcel No.                   : 5781-010-063
Code Area / Tracer No. : 01893

B.  Supplemental taxes for the fiscal year 2021 - 2022 issued pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State California:
1st Installment: $1,691.75 Paid
2nd Installment: $1,691.74 Paid
Parcel No.:  5781-010-063

C.  There are no transfers or conveyances shown in the public records within 24 months of the date of this report. If you have knowledge of any transfers or conveyances, please contact your title officer immediately for further research and review.

D.  There are no items in this preliminary report that will cause Stewart Title Guaranty Company to decline to attach the CLTA Endorsement Form 116.01-06 (or similar ALTA 22-06 equivalent), indicating that there is located a Single Family Residence known as 150 E La Sierra Drive, Arcadia, California.

E.  There are no items in this preliminary report that will cause Stewart Title Guaranty Company to decline to attach the CLTA Endorsement Form 100.2-06 (or a similar ALTA 9 equivalent) to an ALTA Loan Policy, when issued.

F.  A Preliminary Change of Ownership Report must be completed by the transferee (buyer) prior to the transfer of property in accordance with the provisions of Section 480.3 of the Revenue and Taxation Code. The Preliminary Change of Ownership Report should be submitted to the recorder concurrent with the recordation of any document effecting a change of ownership. If a document evidencing a change of ownership (i.e. Deed, Affidavit-Death Joint Tenant) is presented to the recorder for recording without a preliminary change of ownership report, the recorder may charge an additional $20.00.

G.  Additional Requirements for "Short Sale" Transactions in which a lender will accept less than the outstanding balance of its loan as full satisfaction of the obligation: The Company will require, prior to the issuance of a policy of title insurance, evidence that the first-position trust deed holder has received and acknowledged all payments to be made to subordinate-position lien holders, regardless of whether such payments are to be made from proceeds or from contributions by real estate brokers and/or buyers in the subject transaction, or from other third-party sources. Evidence shall include but not be limited to:  (a) a written demand from the first-position trust deed holder acknowledging and approving payments to subordinate-position lien holders from proceeds and otherwise; or (b) a supplemental letter or amended demand from the first-position lien holder acknowledging payments to be made to subordinate lien holders from sources other than proceeds (including broker commissions and additional buyer deposits).

# CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies.  The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement.  Funds received by Stewart Title of California, Inc. via wire transfer may be disbursed upon receipt.  Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit.  If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer.  All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by Stewart Title of California, Inc..  Stewart Title of California, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and Stewart Title of California, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by Stewart Title of California, Inc..  Such benefits shall be deemed additional compensation to Stewart Title of California, Inc. for its services in connection with the escrow or sub-escrow.

If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

# <u>Procedures to Accompany the Restrictive Covenant Modification Form</u>

The law prohibits unlawfully restrictive covenants based upon:

"…age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry… Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

As the individual holding or acquiring an interest in the property, you may have any unlawfully restrictive covenants "removed", which means "redacted."

To have the unlawfully restrictive covenant removed, you may prepare and submit to the county recorder's office, a "Restrictive Covenant Modification" form (RCM) together with a copy of the attached document with the unlawfully restrictive covenant redacted. This request must be submitted to the county recorder's office and must include your return address so the county recorder can notify you of the action taken by the county counsel.

The process at the county recorder's office is as follows:
- The county recorder takes the RCM with the redacted document and the original document attached and submits it to the county counsel for review to determine if, from a legal standpoint, the language was an unlawfully restrictive covenant and thus the redacted version should be indexed and recorded.
- The county counsel shall inform the county recorder of his/her determination within a reasonable amount of time, not to exceed three months from the date of your request.
- If county counsel determined that the redacted language was unlawful then, once recorded, the redacted document is the only one that effects the property and this modified document has the same effective date as the original document.
- If county counsel determined that the redacted language was not unlawful then county counsel will return the RCM package to the county recorder and the county recorder will advise the requestor that same the request has been denied and the redacted document has not been recorded.
- The modification document shall be indexed in the same manner as the original document and shall contain a recording reference to the original document.

**RECORDING REQUESTED BY**

AND WHEN RECORDED MAIL TO

NAME

ADDRESS

CITY
STATE & ZIP

| TITLE ORDER NO. | ESCROW NO. | APN NO. |
|---|---|---|

# RESTRICTIVE COVENANT MODIFICATION
### (Unlawfully Restrictive Covenant Modification Pursuant to Government Code Section 12956.2)

I(We)_____
have or are acquiring an ownership interest of record in the property located at _____
_____ that is covered by the
document described below.

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of eliminating that restrictive covenant as shown on page(s)_____of the document recorded on _____ in book_____and page _____ or instrument number_____of the official records of the County of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document pursuant to subdivision (d) of Section 12956 of the Government.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

_____
(Signature of Submitting Party)

_____
(Printed Name)

_____
(Signature of Submitting Party)

_____
(Printed Name)

_____ County Counsel, or their designee, pursuant to Government Code Section 12956.2, hereby states that it has been determined that the original document referenced above _____ Does _____ Does Not contain an unlawful restriction and this modification may be recorded.

County Counsel
By:
_____
Date:
_____

81



Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
Phone:  (805) 367-5628
Fax:
wlvtitle@stewart.com

**Date:** July 11, 2022
**Title Officer:** Mindy Beckham
**Order No.:** 1763667
**Property Address:** 150 E La Sierra Drive, Arcadia, CA  91006

# UNLAWFULLY RESTRICTIVE COVENANTS ACKNOWLEDGMENT AND INDEMNIFICATION

**STEWART TITLE OF CALIFORNIA, INC.**
**IS LICENSED BY THE STATE OF CALIFORNIA UNDER THE DEPARTMENT OF INSURANCE LICENSE NO. 388**

The undersigned hereby acknowledge receipt of (1) the statutory required language describing unlawfully restrictive covenants in the title product from Stewart Title of California, Inc. ("Stewart Title"); (2) a copy of the Restrictive Covenant Modification (RCM) form; (3) the procedures describing how to have, when applicable, an unlawfully restrictive covenant of record updated; and (4) when applicable, notice of actual knowledge of a potential unlawfully restrictive covenant.

The undersigned further acknowledge that he/she/they have received, read, understand and accept these documents in connection with the above-described transaction and have received a copy of this acknowledgment as evidenced by the signature below

If the undersigned requested of Stewart Title assistance with preparation of the RCM form, the undersigned attests that Stewart Title is directly involved in the pending transaction and that the request to Stewart Title was made prior to close of escrow. The undersigned agrees and understands that Stewart Title will provide guidance in my/our preparation of the RCM and required attachments and/or may submit such RCM package to the county recorder on my/our behalf. The undersigned agrees that Stewart Title shall have no liability associated with the creation or preparation of and/or recordation of a RCM and its attachments.

The undersigned acknowledge and understand that Stewart Title will rely upon this acknowledgment as evidence that Stewart Title has fulfilled its duties and obligations under the law with respect to unlawfully restrictive covenants. The undersigned jointly and severally agree to hold harmless Stewart Title of California, Inc., its officers, employees, agents, parent, affiliated and subsidiary companies, including Stewart Title Guaranty Company, and successors and assigns from and against any and all damages or liability and agree to reimburse Stewart Title for all losses, costs, charges, attorneys' fees or other expenses which shall or may at any time be suffered, sustained or incurred by reason of, or in consequence of or related to these unlawfully restrictive covenants and the RCM submission and form.

The undersigned acknowledges and understands that Stewart Title will rely upon this acknowledgement as evidence that Stewart Title has fulfilled its duties and obligations under the law with respect to unlawfully restrictive covenants. The undersigned jointly and severally agree to hold harmless Stewart Title of California, Inc., its officers, employees, agents, parent, affiliated and subsidiary companies, including Stewart Title Guaranty Company, and successors and assigns from and against

82

any and all damages or liability and agree to reimburse Stewart Title for all losses, costs, charges,
attorneys' fees or other expenses which shall or may at any time be suffered, sustained or incurred by
reason of, or in consequence of or related to these unlawfully restrictive covenants and the RCM form
and submission.


_____
Kenny Yu


150 La Sierra Llc

By:_____

83

# EXHIBIT "A"

## LEGAL DESCRIPTION

Order No.:  1763667
Escrow No.:  1763667

The land referred to herein is situated in the State of California, County of Los Angeles, City of Arcadia and described as follows:

Lot 1 of Tract No. 63552, in the City of Arcadia, County of Los Angeles, State of California, as per Map recorded in Book 1325 Page(s) 32 and 33 of Maps, in the Office of the County Recorder of said County.

Except therefrom all oil, gas, minerals and other hydrocarbon substances, lying below a depth of 500 feet from the surface of said property, but with no right of surface entry, where they have been previously reserved in Instruments of Record.

APN:  5781-010-063

(End of Legal Description)

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:        July 11, 2022

File No.:    1763667

Property:    150 E La Sierra Drive, Arcadia, CA  91006

From:        Stewart Title of California, Inc.


This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") has a business relationship with Stewart Solutions, LLC, DBA – Stewart Specialty Insurance Services, LLC ("Stewart  Insurance"). Stewart Information Services Corporation owns 100% of Stewart Insurance and Stewart Title of California, Inc..  Because of this relationship, this referral may provide Stewart Title a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed.  You are NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject Property.  THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| *Stewart Insurance Settlement Service* | *Charge or range of charges* |
|---|---|
| Hazard Insurance | $400.00 to $6,500.00 |
| Home Warranty | $255.00 to $  780.00 |
| Natural Hazard Disclosure Report | $  42.50 to $   149.50 |

## ACKNOWLEDGEMENT OF RECEIPT, UNDERSTANDING AND APPROVAL OF STEWART TITLE GUARANTY COMPANY PRIVACY NOTICE FOR STEWART TITLE COMPANIES AND AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

The undersigned hereby acknowledge receipt of the Stewart Title Guaranty Company Privacy Notice for Stewart Title Companies and the Affiliated Business Arrangement Disclosure Statement that apply to this transaction. The undersigned further acknowledge that he/she/they have received, read, understand and accept these documents in connection with the above described transaction.

The undersigned have received a copy of this acknowledgement as evidenced by the signature below.

150 La Sierra Llc

By:_____

_____
Kenny Yu

CLTA Preliminary Report Form Exhibit A (11-09-18)

## CALIFORNIA LAND TITLE ASSOCIATION

### STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:
    a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    c)  resulting in no loss or damage to the insured claimant;
    d)  attaching or created subsequent to Date of Policy; or
    e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose,   and which are not shown by the public records

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights,   claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a. building;
    b. zoning;
    c. land use;
    d. improvements on the Land;
    e. land division;
    f. environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This  Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:
    a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
    b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c. that result in no loss to You; or
    d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.  Failure to pay value for Your Title.

6.  Lack of a right:
    a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b. in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy,   state insolvency, or similar creditors' rights laws.

8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
*        For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.  The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible  Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount or  $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1% of Policy Amount or  $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1% of Policy Amount or  $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1% of Policy Amount or  $2,500.00 (whichever is less) | $5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a) a fraudulent conveyance or fraudulent transfer, or
    (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of  Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

### PART I

1.  (a) taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on  real property or by the public records.
    (b) proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by  the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land  or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate  and complete land survey of the Land and not shown by the Public Records.

5.  (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims  or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material  unless such lien is shown by the Public Records at Date of Policy.

### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss  or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

## 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating,  prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9  and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting  the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of  Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from  Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason  of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on  real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the  records of such agency or by the public records.

2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the  land or by making inquiry of persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate  and complete land survey of the Land and that are not shown by the Public Records.

5. (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims  or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy..

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys  fees or expenses which arise by reason of:

1.  a.  Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations)  restricting, regulating, prohibiting or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions or location of any improvement now or hereafter erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or  limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
    b.  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c),  13(d), 14 or 16.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  created, suffered, assumed or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting In no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk  11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)  resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing- business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the  Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or  limit the coverage provided in Covered Risk 26.

6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after  the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy.  This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to  Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with  applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating  the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

File No.:  1763667

## AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

Property located within an area proclaimed a state or federal disaster area;

Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale;

Property being refinanced.

Please talk with your escrow or title officer to determine your qualification for any of these discounts.

## Stewart Title of California, Inc.
## STATEMENT OF INFORMATION
### CONFIDENTIAL

**THE STREET ADDRESS of the property in this transaction is:**   (IF NONE LEAVE BLANK)

ADDRESS 150 E La Sierra Drive                          CITY Arcadia, CA 91006

IMPROVEMENTS:  ☐ SINGLE RESIDENCE   ☐ MULTIPLE RESIDENCE   ☐ COMMERCIAL

OCCUPIED BY:   ☐ OWNER   ☐ TENANTS

CONSTRUCTION OR IMPROVEMENTS WITHIN THE LAST 6 MONTHS?   ☐ YES   ☐ NO

IF YES, STATE NATURE WORK DONE _____

| PARTY 1 | PARTY 2 |
|---|---|
| FIRST          MIDDLE          LAST | FIRST          MIDDLE          LAST |
| FORMER LAST NAME(S), IF ANY | FORMER LAST NAME(S), IF ANY |
| BIRTHPLACE          BIRTH DATE | BIRTHPLACE          BIRTH DATE |
| Social Security No.          DRIVER'S LICENSE NO. | Social Security No.          DRIVER'S LICENSE NO. |
| Home          Cell | Home          Cell |
| ☐ AM SINGLE  ☐ AM MARRIED  ☐ HAVE A DOMESTIC PARTNER | ☐ AM SINGLE  ☐ AM MARRIED  ☐ HAVE A DOMESTIC PARTNER |
| Date of Marriage or Partnership | Date of Marriage or Partnership |
| NAME OF CURRENT SPOUSE OR DOM. PARTNER (if other than Party 2): | NAME OF CURRENT SPOUSE OR DOM. PARTNER (if other than Party 1): |
| NAME OF FORMER SPOUSE/DOM. PARTNER: (IF NONE, WRITE "NONE"): | NAME OF FORMER SPOUSE/DOM. PARTNER: (IF NONE, WRITE "NONE"): |

Party 1 Dissolutions pending                Yes    No    (circle one)
Required to make child support payments?    Yes    No    (circle one)
Required to make Family support payments?   Yes    No    (circle one)
If paying former spouse directly, please provide address:

Party 2 Dissolutions pending                Yes    No    (circle one)
Required to make child support payments?    Yes    No    (circle one)
Required to make Family support payments?   Yes    No    (circle one)
If paying former spouse directly, please provide address:

### OCCUPATIONS FOR LAST 10 YEARS (attach additional 10 year information, if applicable)

Party 1: _____

| Occupation | Firm Name | Street and City | No. Years |
|---|---|---|---|

Party 2: _____

| Occupation | Firm Name | Street and City | No. Years |
|---|---|---|---|

### RESIDENCES FOR LAST 10 YEARS (attach additional 10 year information, if applicable)

Party 1: _____

| Street No. | Street Name | City | No. Years |
|---|---|---|---|

Party 2: _____

| Street No. | Street Name | City | No. Years |
|---|---|---|---|

### Email Address

If you would like us to contact you by email, please provide your email address _____

Home Phone: _____   Business Phone: _____   Cell Phone: _____

**The undersigned declare, under penalty of perjury, that foregoing is true and correct.**

**Signature:** _____  **Date:** _____    **Signature:** _____  **Date:** _____

Order No.:  1763667 - Statement of Information CA
Rev. 4/09

93

## STGC TITLE PREMIUM DISCOUNT APPLICATION
## AND CONFIRMATION OF ELIGIBILITY

Order Number: 1763667

Property:  150 E La Sierra Drive, Arcadia, CA  91006

APN: 5781-010-063

In connection with the request of the Undersigned ("Applicant") for the preparation and issuance of title insurance, Applicant provides this completed STGC Title Premium Discount Application and Confirmation of Eligibility ("Request Form") for the benefit of, and reliance by, title insurer Stewart Title Guaranty Company, and its policy issuing agent Stewart Title of California, Inc. (collectively hereafter referred to as "Stewart Title") in connection with pricing the title premium in the above referenced transaction:

1.  Applicant understands that Stewart Title has available for qualifying requestors a 10% discount on the title insurance premium charged under certain circumstances; however, all endorsement fees and other charges are not discounted.

2.  Applicant understands that Stewart Title is only able to provide such discount if requested through providing this completed Request Form and is received by Stewart Title at least five (5) business days prior to recording of the transaction to which a discount is requested.

3.  Applicant understands that Stewart Title prohibits combined discounts; accordingly, Stewart Title will provide this requested discount and disregard other applicable discounts, if any, when eligibility requirements for such discount are satisfied.

4.  Applicant requests the following discount and affirms that Applicant meets the criteria and requirements set forth to qualify for such selected discount (SELECT ONLY ONE QUALIFYING DISCOUNT):

☐  Active military personnel and honorably discharged veteran discount* – To qualify for an active military personnel or honorably discharged veteran discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is engaged in full-time, active duty in the military on the date signed below or was a honorably discharged veteran.

☐  Senior citizen discount – To qualify for a senior citizen discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is 55 years of age or older on the date signed below.

*Active military personnel and honorably discharged veterans include those members from the following U.S. military services branches: Air Force, Army, Coast Guard, Marine Corps, Navy and Space Force, and any active Reserve members of these military services branches and any active members of the Air or Army National Guard.

☐ <u>First-time homebuyer discount</u> – To qualify for a first-time homebuyer discount: (1) the property being purchased is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s) is a U.S. citizen, permanent resident or qualified alien and has either never owned any property or, has not been an owner in a primary residence for the last three calendar years from the date signed below.

☐ <u>First responder discount</u> – To qualify for a first responder discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is currently employed as a police officer, firefighter, paramedic or emergency medical technician on the date signed below.

This Request Form is completed under penalty of perjury and is made for the purpose of inducing Stewart Title to provide the title premium discount, and the representations contained herein are material to such insurance coverage pricing.  The undersigned hereby indemnifies and holds Stewart Title harmless from any loss or damage, liability, costs, expenses and attorneys' fees which it may sustain to the extent any representation contained herein is incorrect. The undersigned understands that Stewart Title may decide not to provide the requested title insurance despite the information and affirmations contained herein.

**PLEASE READ AND COMPLETE THE STGC TITLE PREMIUM DISCOUNT REQUEST FORM ON THE PREVIOUS PAGE BEFORE SIGNING BELOW. IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS AFFIDAVIT, YOU SHOULD CONTACT YOUR LOCAL STEWART TITLE PROFESSIONAL.**

**THE UNDERSIGNED DECLARES UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT.**

_____        _____
Signature                                                            Signature


_____        _____
Printed Name                                                      Printed Name


_____        _____
Date Signed                                                        Date Signed

## Stewart Title Guaranty Company Privacy Notice
## Stewart Title Companies

**WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?**

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its title affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information. | Do we share | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes**— to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and non-financial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title Company* | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you** — For your convenience, Stewart has developed a means for you to opt out from its affiliates marketing even though such mechanism is not legally required. | Yes | Yes, send your first and last name, the email address used in your transaction, your Stewart file number and the Stewart office location that is handling your transaction by email to optout@stewart.com or fax to 1-800-335-9591. |
| **For non-affiliates to market to you.** Non-affiliates are companies not related by common ownership or control. They can be financial and non-financial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to non-affiliates as permitted by law. If you request a transaction with a non-affiliate, such as a third party insurance company, we will disclose your personal information to that non-affiliate.  [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

**SHARING PRACTICES**

| How often do the Stewart Title Companies notify me about their practices? | We must notify you about our sharing practices when you request a transaction. |
|---|---|
| How do the Stewart Title Companies protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer, file, and building safeguards. |
| How do the Stewart Title Companies collect my personal information? | We collect your personal information, for example, when you request insurance-related services provide such information to us We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| What sharing can I limit? | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

***Contact us:   If you have any questions about this privacy notice, please contact us at:*** Stewart Title Guaranty Company, **1360 Post Oak Blvd., Ste. 100,  Privacy Officer, Houston, Texas 77056**

Effective Date: January 1, 2020

# Privacy Notice for California Residents

Pursuant to the California Consumer Privacy Act of 2018 ("CCPA"), Stewart Information Services Corporation and its subsidiary companies (collectively, "Stewart") are providing this **Privacy Notice for California Residents** ("CCPA Notice").  This CCPA Notice supplements the information contained in Stewart's existing privacy notice and applies solely to all visitors, users and others who reside in the State of California or are considered California Residents ("consumers" or "you").  Terms used but not defined shall have the meaning ascribed to them in the CCPA.

<u>Information Stewart Collects</u>

Stewart collects information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer, household, or device.  Most of the information that Stewart collects in the course of its regular business is already protected pursuant to the Gramm-Leach-Bliley Act (GLBA).  Additionally, much of this information comes from government records or other information already in the public domain.  Personal information under the CCPA does not include:

- Publicly available information from government records.
- Deidentified or aggregated consumer information.
- Certain personal information protected by other sector-specific federal or California laws, including but not limited to the Fair Credit Reporting Act (FCRA), GLBA and California Financial Information Privacy Act (FIPA).

Specifically, Stewart has collected the following categories of personal information from consumers within the last twelve (12) months:

| Category | Examples | Collected? |
|---|---|---|
| A. Identifiers. | A real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, passport number, or other similar identifiers. | YES |
| B. Personal information categories listed in the California Customer Records statute (Cal. Civ. Code § 1798.80(e)). | A name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information. Some personal information included in this category may overlap with other categories. | YES |
| C. Protected classification characteristics under California or federal law. | Age (40 years or older), race, color, ancestry, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, veteran or military status, genetic information (including familial genetic information). | YES |
| D. Commercial information. | Records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies. | YES |
| E. Biometric information. | Genetic, physiological, behavioral, and biological characteristics, or activity patterns used to extract a template or other identifier or identifying information, such as, fingerprints, faceprints, and voiceprints, iris or retina scans, keystroke, gait, or other physical patterns, and sleep, health, or exercise data. | YES |
| F. Internet or other similar network activity. | Browsing history, search history, information on a consumer's interaction with a website, application, or advertisement. | YES |
| G. Geolocation data. | Physical location or movements. | YES |
| H. Sensory data. | Audio, electronic, visual, thermal, olfactory, or similar information. | YES |
| I. Professional or employment-related information. | Current or past job history or performance evaluations. | YES |
| J. Non-public education information (per the Family Educational Rights and Privacy Act (20 U.S.C. Section 1232g, 34 C.F.R. Part 99)). | Education records directly related to a student maintained by an educational institution or party acting on its behalf, such as grades, transcripts, class lists, student schedules, student identification codes, student financial information, or student disciplinary records. | YES |
| K. Inferences drawn from other personal information. | Profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes. | YES |

Stewart obtains the categories of personal information listed above from the following categories of sources:

- Directly and indirectly from customers, their designees or their agents (For example, realtors, lenders, attorneys, etc.)
- Directly and indirectly from activity on Stewart's website or other applications.
- From third-parties that interact with Stewart in connection with the services we provide.

<u>Use of Personal Information</u>

Stewart may use or disclose the personal information we collect for one or more of the following purposes:

- To fulfill or meet the reason for which the information is provided.
- To provide, support, personalize, and develop our website, products, and services.
- To create, maintain, customize, and secure your account with Stewart.
- To process your requests, purchases, transactions, and payments and prevent transactional fraud.
- To prevent and/or process claims.
- To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf.
- As necessary or appropriate to protect the rights, property or safety of Stewart, our customers or others.
- To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
- To personalize your website experience and to deliver content and product and service offerings relevant to your interests, including targeted offers and ads through our website, third-party sites, and via email or text message (with your consent, where required by law).
- To help maintain the safety, security, and integrity of our website, products and services, databases and other technology assets, and business.
- To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
- Auditing for compliance with federal and state laws, rules and regulations.
- Performing services including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing advertising or marketing services or other similar services.
- To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal information or use the personal information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

<u>Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties</u>

Stewart does not sell your personal information to nonaffiliated third parties. Stewart may share your information with those you have designated as your agent in the course of your transaction (for example, a realtor or a lender). Stewart may disclose your personal information to a third party for a business purpose. Typically, when we disclose personal information for a business purpose, we enter a contract that describes the purpose and requires the recipient to both keep that personal information confidential and not use it for any purpose except performing the contract.

We share your personal information with the following categories of third parties:

- Service providers and vendors (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
- Affiliated Companies
- Litigation parties and attorneys, as required by law.
- Financial rating organizations, rating bureaus and trade associations.
- Federal and State Regulators, law enforcement and other government entities

In the preceding twelve (12) months, Stewart has disclosed the following categories of personal information for a business purpose:

Category A:  Identifiers
Category B:  California Customer Records personal information categories
Category C:  Protected classification characteristics under California or federal law
Category D:  Commercial Information
Category E:  Biometric Information
Category F:  Internet or other similar network activity
Category G:  Geolocation data
Category H:  Sensory data
Category I:  Professional or employment-related information
Category J:  Non-public education information
Category K:  Inferences

<u>Consumer Rights and Choices</u>

The CCPA provides consumers (California residents) with specific rights regarding their personal information. This section describes your CCPA rights and explains how to exercise those rights.

**Access to Specific Information and Data Portability Rights**

You have the right to request that Stewart disclose certain information to you about our collection and use of your personal information over the past 12 months.  Once we receive and confirm your verifiable consumer request, Stewart will disclose to you:

- The categories of personal information Stewart collected about you.
- The categories of sources for the personal information Stewart collected about you.
- Stewart's business or commercial purpose for collecting that personal information.
- The categories of third parties with whom Stewart shares that personal information.
- The specific pieces of personal information Stewart collected about you (also called a data portability request).
- If Stewart disclosed your personal data for a business purpose, a listing identifying the personal information categories that each category of recipient obtained.

**Deletion Request Rights**

You have the right to request that Stewart delete any of your personal information we collected from you and retained, subject to certain exceptions. Once we receive and confirm your verifiable consumer request, Stewart will delete (and direct our service providers to delete) your personal information from our records, unless an exception applies.

Stewart may deny your deletion request if retaining the information is necessary for us or our service providers to:

1. Complete the transaction for which we collected the personal information, provide a good or service that you requested, take actions reasonably anticipated within the context of our ongoing business relationship with you, or otherwise perform our contract with you.

2. Detect security incidents, protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.

3. Debug products to identify and repair errors that impair existing intended functionality.

4. Exercise free speech, ensure the right of another consumer to exercise their free speech rights, or exercise another right provided for by law.

5. Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 *seq.*).

6. Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.

7. Enable solely internal uses that are reasonably aligned with consumer expectations based on your relationship with us.

8. Comply with a legal obligation.

9. Make other internal and lawful uses of that information that are compatible with the context in which you provided it.

Exercising Access, Data Portability, and Deletion Rights

To exercise the access, data portability, and deletion rights described above, please submit a verifiable consumer request to us either:

- Calling us Toll Free at 1-866-571-9270

- Emailing us at Privacyrequest@stewart.com

- Visiting http://stewart.com/ccpa

Only you, or someone legally authorized to act on your behalf, may make a verifiable consumer request related to your personal information. You may also make a verifiable consumer request on behalf of your minor child.

To designate an authorized agent, please contact Stewart through one of the methods mentioned above.

You may only make a verifiable consumer request for access or data portability twice within a 12-month period. The verifiable consumer request must:

- Provide sufficient information that allows us to reasonably verify you are the person about whom we collected personal information or an authorized representative.

- Describe your request with sufficient detail that allows us to properly understand, evaluate, and respond to it.

Stewart cannot respond to your request or provide you with personal information if we cannot verify your identity or authority to make the request and confirm the personal information relates to you.

Making a verifiable consumer request does not require you to create an account with Stewart.

Response Timing and Format

We endeavor to respond to a verifiable consumer request within forty-five (45) days of its receipt.  If we require more time (up to an additional 45 days), we will inform you of the reason and extension period in writing.

A written response will be delivered by mail or electronically, at your option.

Any disclosures we provide will only cover the 12-month period preceding the verifiable consumer request's receipt.  The response we provide will also explain the reasons we cannot comply with a request, if applicable.  For data portability requests, we will select a format to provide your personal information that is readily useable and should allow you to transmit the information from one entity to another entity without hindrance.

Stewart does not charge a fee to process or respond to your verifiable consumer request unless it is excessive, repetitive, or manifestly unfounded.  If we determine that the request warrants a fee, we will tell you why we made that decision and provide you with a cost estimate before completing your request.

<u>Non-Discrimination</u>

Stewart will not discriminate against you for exercising any of your CCPA rights.  Unless permitted by the CCPA, we will not:

- Deny you goods or services.
- Charge you a different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties.
- Provide you a different level or quality of goods or services.
- Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

<u>Changes to Our Privacy Notice</u>

Stewart reserves the right to amend this privacy notice at our discretion and at any time.  When we make changes to this privacy notice, we will post the updated notice on Stewart's website and update the notice's effective date.  **Your continued use of Stewart's website following the posting of changes constitutes your acceptance of such changes.**

<u>Contact Information</u>

If you have questions or comments about this notice, the ways in which Stewart collects and uses your information described here, your choices and rights regarding such use, or wish to exercise your rights under California law, please do not hesitate to contact us at:

**Phone:**           Toll Free at 1-866-571-9270

**Website:**         **http://stewart.com/ccpa**

**Email:**            Privacyrequest@stewart.com

**Postal Address:**  Stewart Information Services Corporation

                     Attn:  Mary Thomas, Deputy Chief Compliance Officer

                     1360 Post Oak Blvd., Ste. 100, MC #14-1

                     Houston, TX  77056

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

OFFICE OF THE ASSESSOR
COUNTY OF LOS ANGELES
COPYRIGHT © 2002



2018

5781   10   SHEET

101

MAPPING AND GIS SERVICES
SCALE 1" = 80'

DATE PRINTED: 3/7/2018 10:55:23 AM
DATE SAVED: 3/7/2018 10:55:17 AM

EXHIBIT 8

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**This page is part of your document - DO NOT DISCARD**

## 20200086211




**Pages:
0013**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/23/20 AT 08:00AM**

| | |
|---|---:|
| FEES: | 100.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 250.00 |



**L E A D S H E E T**



202001230110038

00017783040

010463383

**SEQ:
23**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T10

EXHIBIT 8            102

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

95008-16517-Main

Recording Requested By
North American Title Company

**PREPARED BY AND**
**WHEN RECORDED RETURN TO**:

<u>SOUND EQUITY INC</u>
<u>929 108th Ave. NE, Suite 1030</u>
<u>Bellevue, WA  98004</u>



01/23/2020
*20200086211*

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.

# DEED OF TRUST, ASSIGNMENT OF RENTS,
# SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this "Deed of Trust") is made as of January 15, 2020 by <u>150 La Sierra, LLC, a[n] California Limited Liability Company</u>, whose mailing address is 100 East Huntington Drive #207  Alhambra, CA  91801, as trustor (the "Trustor") in favor of <u>FCI LENDER SERVICES INC, A CALIFORNIA CORPORATION</u>, whose mailing address is 8180 East Kaiser Blvd, Anaheim Hills, CA 92808, as trustee (the "Trustee"), for the benefit of <u>Sound Equity Inc, a Delaware Corporation</u>, whose mailing address is 989 112th Ave NE, Suite 207, Bellevue, WA 98004, as beneficiary (the "Beneficiary").

1.      **GRANT IN TRUST.**  For the purpose of securing payment and performance of the Obligations defined in Section 2, the Trustor hereby irrevocably and unconditionally grants, mortgages, sells, pledges, conveys, transfers and assigns to the Trustee, in trust for the benefit of the Beneficiary, with power of sale, all estate, right, title and interest that the Trustor now has or may later acquire in and to the real property located in the County of Los Angeles, State of California, as described in <u>Exhibit A</u> attached to this Deed of Trust (the "Land"), together with:

**THE REAL PROPERTY OR ITS ADDRESS IS COMMONLY KNOWN AS** 150 E La Sierra Dr ARCADIA, CA  91006. THE ASSESSOR'S PARCEL NUMBER FOR THE REAL PROPERTY IS 5781-010-063.

A. All existing or subsequently erected buildings, structures and improvements on the Land (the "Improvements");

B. All appurtenances, rights of way and easements used in connection with the Land;

C. All water and water rights (whether riparian, appropriative or otherwise, and whether or not appurtenant) used in connection with the Land and all shares of stock evidencing the same;

D. All existing and future leases;

E. All pumping stations, engines, pipes and ditches;

F. All oil, gas, geothermal and other mineral rights, if any, in or pertaining to the Land, and all royalty, leasehold or other rights of the Trustor pertaining to such mineral rights;

G. All goods, materials, supplies, chattels, furniture, fixtures, equipment and machinery now or later to be attached to, placed in or on, or used in connection with the use, enjoyment, occupancy or operation of all or any part of the Land and the Improvements, including, without limitation, all



23B

103

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

gas, electric, cooking, heating, cooling, air conditioning, refrigeration and plumbing fixtures and equipment;

H. All maps, plans, specifications, surveys, reports, data and drawings, all governmental applications, permits and licenses, and all contracts and agreements of the Trustor relating to the Land and the Improvements, including, without limitation, architectural, structural, mechanical and engineering plans and specifications, studies, data and drawings prepared for or related to the development of the Land or the construction, renovation or restoration of any of the Improvements or the extraction of minerals, sand, gravel or other valuable substances from the Land; and

I. Any and all substitutions and replacements of the foregoing, accessions thereto, and all proceeds of the foregoing, whether now existing or later acquired.

All property described in this Section 1 is herein called the "Property."

2.   **OBLIGATIONS SECURED.**  The Trustor has granted, conveyed, transferred and assigned its interest in the Property to the Beneficiary for the purpose of securing the payment of all indebtedness and performance of the Trustor's Promissory Note of even date herewith payable to the order of the Beneficiary in the principal amount of $2,340,000.00 as it may be modified, extended, renewed or amended from time to time, together with all refinancings, substitutions and renewals thereof (the "Note"), dated as of January 15, 2020.   All obligations referred to in this Section 2 are herein called the "Obligations."

3.   **PERFORMANCE OF OBLIGATIONS.**  The Trustor shall promptly pay and perform each of the Obligations in accordance with its terms.

4.   **ASSIGNMENT OF RENTS.**

A.   <u>Assignment</u>.   The Trustor hereby irrevocably, absolutely, presently and unconditionally assigns to the Beneficiary all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents").   This is an absolute assignment, not an assignment for security only.

B.   <u>License</u>. The Trustor reserves a license to collect and retain the Rents as they become due and payable, so long as no Event of Default (as defined in Section 17) shall exist and be continuing.   If an Event of Default has occurred and is continuing, the Beneficiary shall have the right, which it may choose to exercise in its sole discretion, to terminate this license without notice to or demand upon the Trustor, and without regard to the adequacy of the Beneficiary's security under this Deed of Trust. After the termination of this license, any Rents received by the Trustor shall be held in trust by the Trustor for the benefit of the Beneficiary, and the Trustor shall promptly pay the Rents over to the Beneficiary.

C.   <u>Collection and Application of Rents</u>.   Subject to the license reserved to the Trustor in Subsection 4.B, the Beneficiary has the right, power and authority to collect any and all Rents.   The Trustor hereby irrevocably appoints the Beneficiary as its attorney-in-fact, with full power of substitution, to perform any and all of the following acts, if and at the times when the Beneficiary in its sole discretion may so choose:

(1)   Demand, receive and enforce payment of any and all Rents; or

(2)   Give receipts, releases and satisfactions for any and all Rents; or

104

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

(3) Sue either in the name of the Trustor or in the name of the Beneficiary for any and all Rents.

The appointment granted herein shall be deemed to be a power coupled with an interest.

D.  <u>The Beneficiary Not Responsible</u>.  Under no circumstances shall the Beneficiary have any duty to produce Rents from the Property.  Regardless of whether or not the Beneficiary, in person or by agent, takes actual possession of the Property, the Beneficiary is not and shall not be deemed to be: (1) a "mortgagee in possession" for any purpose; (2) responsible for performing any of the obligations of the lessor under any lease of all or part of the Property; (3) responsible for any waste committed by lessees or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair or control of the Property; or (4) liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of the Property.

5.    **SECURITY AGREEMENT.**

A.   <u>Grant of Security Interest</u>.  Some of the Property and some or all of the Rents may be determined under applicable law to be personal property or fixtures.  To the extent that any Property or Rents now or hereafter constitutes personal property, the Trustor, as debtor, grants to the Beneficiary, as secured party, a security interest in all such Property and Rents, to secure payment and performance of the Obligations.  This Deed of Trust constitutes a security agreement under the California Commercial Code, covering all such Property and Rents.  To the extent permitted by law, Trustor and Beneficiary agree that with respect to all items of personal property which are or will become fixtures on the Land, this Deed of Trust, upon recording or registration in the real estate records of the proper office, shall constitute a "fixture filing" within the meaning of Sections 9102(40) and (41) and 9502 of the California Commercial Code.  Trustor is the record owner of the Land.

B.   <u>Financing Statement</u>.  The Trustor shall file one or more financing statements and such other documents as the Beneficiary may from time to time require to perfect or continue the perfection of the Beneficiary's security interest in any Property or Rents.  If any financing statement or other document is filed in the records normally pertaining to personal property, that filing shall not be construed as in any way derogating from or impairing this Deed of Trust or the rights or obligations of the parties under it.

C.   <u>Uniform Commercial Code Remedies</u>.  The Beneficiary may exercise any or all of the remedies granted to a secured party under the California Commercial Code.

D.   <u>Disposition Upon Default</u>.  Upon the occurrence of an Event of Default, the Beneficiary may dispose of any personal property separately from the sale of real property, in any manner permitted by Chapter 9 of the California Commercial Code, including any public or private sale, or in any manner permitted by any other applicable law.  Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Obligation for purposes of Cal. Civ. Code § 2924c, as amended or recodified from time to time.  In its discretion, the Beneficiary may also or alternatively choose to dispose of some or all of the Property, in any combination consisting of both real and personal property, together in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by the California Commercial Code.  The Trustor agrees that such a sale of personal property, together with real property, constitutes a commercially reasonable sale of the personal property.

6.    **FIXTURE FILING.**  This Deed of Trust constitutes a financing statement filed as a fixture filing under the California Commercial Code,

105

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

covering any property which now is or later may become fixtures attached to the real property covered by this Deed of Trust.

7.      **REPRESENTATIONS AND WARRANTIES.** The Trustor represents and warrants as follows:

A.    <u>Priority</u>. Unless otherwise consented to by the Beneficiary, the lien granted by this Deed of Trust now does and hereafter will constitute a lien of first priority.

B.    <u>Ownership</u>. The Trustor is, and, as to Property acquired by it from time to time after the date hereof, the Trustor will be, the owner of all of the Property free from any encumbrances other than the Beneficiary's interest and lien thereon, and the Trustor shall defend the Property against any and all claims and demands of all persons at any time claiming any interest therein in any manner materially averse to the Beneficiary.

C.    <u>Power</u>. The Trustor has full power and authority and legal right to grant a lien in the Property and to assign the Rents pursuant to this Deed of Trust.  The Trustor's organizational identification number is: 84-4090225.

D.    <u>Consents</u>. No consent of any other party (including, without limitation, creditors of the Trustor) and no consent, authorization, approval, or other action by, and no notice to or filing with, any governmental authority is required either (1) for the grant of a lien in the Property pursuant to this Deed of Trust or for the execution, delivery or performance of this Deed of Trust by the Trustor or (2) for the exercise by the Beneficiary of the rights provided for in this Deed of Trust.

E.    <u>Property</u>. The Property is not located in an Earthquake Fault Zone, Special Studies Zone, Seismic Hazard Zone, or other hazard area within the meaning of California Public Resources Code §§ 2621-25 or 2690-99, within a Special Flood Hazard Area designated by the Federal Emergency Management Agency, or within a California Fire Responsibility Area as provided in Public Resources Code §§ 4136.

8.      **PROTECTION OF THE PROPERTY; INSPECTIONS.**  The Trustor will take reasonable efforts in good faith, at all times, to protect the Property against damage or loss. The Trustor shall maintain, keep and preserve the Property in good condition and repair, shall not commit or permit waste of the Property and shall not remove, demolish or substantially alter any of the Improvements. The Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property and the Improvements. The Beneficiary or its agent may make reasonable entries upon the Property and may make inspections and tests of the Property as the Beneficiary deems appropriate to determine the Trustor's compliance with this Deed of Trust.  Any inspections or tests made by the Beneficiary shall be for the Beneficiary's purposes only and shall not be construed to create any responsibility or liability on the part of the Beneficiary to the Trustor or to any other person.

9.      **INSURANCE.** The Trustor will also insure the Property against such hazards and in such amounts as the Beneficiary may reasonably require, under policies containing endorsements naming the Beneficiary as loss payee and prohibiting any cancellation or material revision in such policies without 30 days' prior written notice to the Beneficiary.  This Deed of Trust constitutes (and the Trustor acknowledges receipt of) written notice to the Trustor that the accommodations made available to the Trustor by the Beneficiary is not conditioned on the requirement that the Trustor procure insurance from any insurance company

106

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

designated by the Beneficiary. However, such insurance policies shall be written by insurance companies acceptable to the Beneficiary.

10. **DAMAGES AND INSURANCE AND CONDEMNATION PROCEEDS.** The Trustor absolutely and irrevocably assigns to the Beneficiary, all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use that affects all or part of the Property or any interest in it, and all proceeds of any insurance policies payable because of loss sustained to all or part of the Property or any interest in it, and all proceeds of any insurance policies payable because of loss sustained to all or part of the Property up to a maximum amount of the Obligations secured by the Note herein, not to exceed $2,340,000.00 MERGEFORMAT, less reductions of payments made by the Trustor up to the date of such loss or condemnation. Said amount shall be the then existing principal balance at the time of the loss or condemnation. The Trustor shall immediately notify the Beneficiary in writing if any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property. If the Beneficiary chooses to do so, it may in its own name appear in or prosecute any action or proceeding with respect to injury or loss to all or part of the Property, and it may make any compromise or settlement of such action or proceeding. The Trustor hereby appoints the Beneficiary as its attorney-in-fact, with full power of substitution, to perform the foregoing acts. The appointment granted herein shall be deemed to be a power coupled with an interest. The Beneficiary, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join the Trustor in adjusting any loss covered by insurance. All proceeds of such awards of damages and other compensation and insurance proceeds shall be paid to the Beneficiary. Any such proceeds received by the Trustor shall be held in trust by the Trustor for the benefit of the Beneficiary, and the Trustor shall promptly pay the proceeds over to the Beneficiary. The Beneficiary shall apply those proceeds first toward reimbursement of all of the Beneficiary's costs and expenses of recovering the proceeds, including attorneys' fees. The remaining proceeds shall either be applied to the reduction of the Obligations or to the repair or restoration of the Property, as the Beneficiary may elect. If the Beneficiary elects to apply the proceeds to restoration or repair, the Trustor shall repair or replace the damaged or destroyed Property in a manner satisfactory to the Beneficiary. Notwithstanding anything contained in this Section 10 or this Deed of Trust to the contrary, Beneficiary may, in its sole discretion, elect to (y) apply the net proceeds of any condemnation award (after deduction of Beneficiary's reasonable costs and expenses, if any, in collecting the same) in reduction of the Obligations in such order and manner as Beneficiary may elect, whether due or not, or (z) make the proceeds available to Trustor for the restoration or repair of the Property. Any implied covenant in this Deed of Trust restricting the right of Beneficiary to make such an election is waived by Trustor. In addition, Trustor hereby waives the provisions of any law prohibiting Beneficiary from making such an election, including, without limitation, the provisions of California Code of Civil Procedure ("CCCP") commencing with Section 1265.210. If the net proceeds of the condemnation award are made available to Trustor for restoration or repair, the net proceeds of the condemnation award shall be disbursed upon reasonable satisfaction of and in accordance with the terms and conditions set forth in this Section 10.

11. **TAX AND OTHER LIENS.** The Trustor shall pay promptly when due all taxes, assessments and governmental charges or levies imposed upon the Property, all utility charges for the Property and all claims (including claims for labor, materials and supplies) against the Property, except to the extent the validity thereof is being contested in good faith and the Trustor provides the

107

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

Beneficiary with such cash deposit, surety bond or other security satisfactory to the Beneficiary that is sufficient to discharge the contested tax, assessment, charge, levy or claim.

12.   **EXPENDITURES BY THE BENEFICIARY.** If the Trustor fails to comply with any provision of this Deed of Trust, or if any action or proceeding is commenced that would materially affect the Beneficiary's interests in the Property, the Beneficiary on the Trustor's behalf may, but shall not be required to, take any action that the Beneficiary deems appropriate. Any amount that the Beneficiary expends in so doing shall be payable on demand, shall be secured by this Deed of Trust and shall bear interest at the highest rate charged under any of the Obligations from the date incurred or paid by the Beneficiary to the date of repayment by the Trustor.

13.   **FURTHER ASSURANCES.** The Trustor agrees that at any time and from time to time at its expense, the Trustor will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or that the Beneficiary deems appropriate or advisable, in order to preserve and protect the lien granted in this Deed of Trust or to enable the Beneficiary to exercise and enforce its rights and remedies under this Deed of Trust.

14.   **HAZARDOUS SUBSTANCES.** The Trustor has no knowledge of the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property, whether by the Trustor or any prior owners or occupants of the Property, or any underground storage tanks located on the Property. The Trustor shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property, except as permitted by Environmental Law. The Trustor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The Trustor shall promptly give the Beneficiary written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which the Trustor has knowledge.   If the Trustor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, the Trustor shall promptly take all necessary remedial actions in accordance with Environmental Law. "Hazardous Substances" means those substances defined as toxic or hazardous substances by Environmental Law, together with gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. "Environmental Law" means federal, state and local laws, regulations and ordinances that relate to health, safety or environmental protection. The Trustor agrees to indemnify, protect, defend and hold the Beneficiary harmless for, from and against any and all expenses, damages and costs and consequential damages incurred by the Beneficiary, including, without limitation, attorneys' fees, as a result of any Hazardous Substances on the Property, the failure of the Property to comply with any Environmental Law, or the presence of underground storage tanks on the Property at any time, even if such expenses, damages and costs shall be incurred by the Beneficiary after acquisition of the Property by the Beneficiary or a purchaser through foreclosure, Trustee's sale or deed in lieu of foreclosure. The foregoing indemnification and hold harmless provision shall survive payment in full of the Obligations.

15.   **SUBSTITUTION OF THE TRUSTEE.** From time to time, the Beneficiary may remove the Trustee and appoint a successor Trustee to any

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

Trustee appointed under this Deed of Trust. A Notice of Substitution of the Trustee shall be executed and recorded in accordance with applicable law.

16. **TRANSFER OF PROPERTY.** A "Transfer" means any sale, contract to sell, conveyance, encumbrance, lease or other transfer of all or any material part of the Property or any interest in it, whether voluntary, involuntary, by operation of law or otherwise. If the Trustor is a corporation, a "Transfer" also means any transfer or transfers of shares constituting, in the aggregate, more than twenty percent (20%) of the voting power. If the Trustor is a partnership, a "Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than twenty percent (20%) of the partnership interests. The Trustor acknowledges that the Beneficiary is entering into the transactions constituting the Obligations in reliance on the expertise, skill and experience of the Trustor. Thus, the Obligations include material elements similar in nature to a personal service contract. In consideration of the Beneficiary's reliance, the Trustor agrees that the Trustor shall not make any Transfer, unless the transfer is preceded by the Beneficiary's express written consent to the particular transaction and transferee. The Beneficiary may withhold such consent in its sole discretion. If any Transfer occurs, the Beneficiary in its sole discretion may declare all of the Obligations to be immediately due and payable, and the Beneficiary and the Trustee may invoke any rights and remedies provided in this Deed of Trust or by applicable law.

17. **EVENTS OF DEFAULT.** As used in this Deed of Trust, the term "Event of Default" shall include any default or Event of Default described in the Note or Agreement, as applicable, or any breach or default of any provision of this Deed of Trust.

18. **REMEDIES.** At any time after an Event of Default, the Beneficiary shall be entitled to invoke any and all rights and remedies described in this Section or permitted by applicable law. All such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

A. The Beneficiary may declare any or all of the Obligations to be due and payable immediately. However, all of the Obligations shall automatically be due and payable in full if a voluntary or involuntary petition shall be filed by or against the Trustor under the United States Bankruptcy Code or similar statute, or a receiver, trustee, assignee for the benefit of creditors or other similar official shall be appointed to take possession, custody or control of the properties of the Trustor.

B. The Beneficiary may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

C. To the extent permitted by applicable law, the Beneficiary, in person, by agent or by court appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and may also do any and all other things in connection with those actions that the Beneficiary in its sole discretion may consider necessary and appropriate to protect the security of this Deed of Trust.

D. The Beneficiary may request the Trustee to exercise the power of sale granted in this Deed of Trust. Before any Trustee's sale, the Beneficiary or the Trustee shall give such statement of breach or nonperformance and notice of sale as may then be required by applicable law. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, the Trustee shall sell the Property being sold at a

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

public auction to be held at the time and place specified in the notice of sale. Neither the Trustee, nor the Beneficiary, shall have any obligation to make demand on the Trustor before any Trustee's sale. Subject to California Civil Code § 2924g, Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may in its discretion, give a new notice of sale. At any Trustee's sale, the Trustee shall sell to the highest bidder at public auction for cash in lawful money of the United States. The Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Property being sold without any covenant or warranty whatsoever, express or implied. Any such deed shall be conclusive evidence in favor of purchasers or encumbrancers for value and without notice, that all requirements of law were met relating to the exercise of the power of sale and the Trustee's sale of the Property conveyed by such deed. Knowledge of the Trustee shall not be imputed to the Beneficiary. At any Trustee's sale, any person, including the Trustor, the Trustee or the Beneficiary, may bid for and acquire the Property or any part of it to the extent permitted by then applicable law. Instead of paying cash for that Property, the Beneficiary shall have the benefit of any law permitting credit bids. The Beneficiary and the Trustee shall apply the proceeds of any Trustee's sale in the following manner: (1) to pay all costs and expenses of exercising the power of sale and of sale, including, without limitation, the Trustee's fees and attorneys' fees actually incurred; (2) to pay the Obligations secured by this Deed of Trust; and (3) to remit the remainder, if any, to the person or persons entitled to it.

E.    The Beneficiary may bring an action in any court of competent jurisdiction to foreclose this Deed of Trust in the manner provided by law for the foreclosure of mortgages on real property or to obtain specific enforcement of any of the covenants or agreements in this Deed of Trust. If the Beneficiary brings such an action, the Trustor agrees to pay the Beneficiary's attorneys' fees as set by the court (and not a jury) and court costs.

F.    The Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Deed of Trust, including, without limitation, attorneys' fees and costs of title evidence.

G.    Upon the occurrence of an Event of Default under this Deed of Trust, Beneficiary, pursuant to the appropriate provisions of the California Commercial Code, shall have an option to proceed with respect to both the real property portion of the Property and the personal property in accordance with its rights, powers and remedies with respect to such real property, in which event the default provisions of the California Commercial Code shall not apply. Such option shall be revocable by Beneficiary as to all or any portion of the personal property at any time prior to the sale of the remainder of the Property. In such event Beneficiary shall designate Trustee to conduct the sale of the personal property in combination with the sale of the remainder of the Property. Should Beneficiary elect to sell the personal property or any part thereof which is real property or which Beneficiary has elected to treat as real property or which may be sold together with the real property as provided above, Beneficiary or Trustee shall give such notice of default and election to sell as may then be required by law. The parties agree that if Beneficiary shall elect to proceed with respect to any portion of the personal property separately from such real property, five (5) days notice of the sale of the personal property shall be reasonable notice. The reasonable expenses of retaking, holding, preparing for sale, selling and the like incurred by Beneficiary shall include, but not be limited to, reasonable attorneys' fees, costs and expenses, and other expenses incurred by Beneficiary.

110

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

In addition, Beneficiary shall have the right to appoint a receiver when permitted under Section 564 of the CCCP, including, without limitation, in order to enforce Beneficiary's rights under Section 2929.5 of the California Civil Code. The receiver shall have all of the rights and powers to the fullest extent permitted by law. The receiver shall have the right to apply Rents to cleanup, remediation or other response actions concerning the release or threatened release of Hazardous Substances, whether or not such actions are pursuant to an order of any federal, state or local governmental agency.

19.     **REINSTATEMENT.** In the event of reinstatement of the Obligations secured by this Deed of Trust in accordance with applicable law after an Event of Default, the Trustee shall record a Cancellation of Notice of Sale. Reinstatement after an Event of Default shall not constitute a waiver of any Event of Default then existing or subsequently occurring, nor impair the right of the Beneficiary to declare other Events of Default or the right to cause the Trustee to record a Notice of Sale, nor otherwise affect this Deed of Trust or any other instrument or document relating to the Obligations or any of the rights, obligations or remedies of the Beneficiary or the Trustee in this Deed of Trust or any other instrument or document relating to the Obligations.

20.     **TIME OF ESSENCE.** Time is of the essence in each provision of this Deed of Trust.

21.     **NO WAIVER.** No failure on the part of the Beneficiary to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by the Beneficiary or any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

22.     **NOTICES.** Unless otherwise required by applicable law, any notices or consents required or permitted by this Deed of Trust shall be in writing and shall be deemed delivered if delivered in person or if sent by certified mail, postage prepaid, return receipt requested, or by fax, to the Trustor or the Beneficiary at the addresses set forth above.

23.     **APPLICABLE LAW.** The laws of the State of California shall govern the construction of this Deed of Trust and the rights and remedies of the parties hereto.

24.     **BINDING EFFECT AND ENTIRE AGREEMENT.** This Deed of Trust shall inure to the benefit of, and shall be binding on, the Beneficiary and its successors and assigns and the Trustor and its heirs, personal representatives, successors and permitted assigns. This Deed of Trust, together with all other documents evidencing or securing the Obligations, constitutes the entire agreement between the Beneficiary and the Trustor.

25.     **AMENDMENTS; CONSENTS.** No amendment, modification, supplement, termination, or waiver of any provision of this Deed of Trust, and no consent to any material departure by the Trustor therefrom, may in any event be effective unless in writing signed by the Beneficiary, and then only in the specific instance and for the specific purpose given.

26.     **SEVERABILITY.** If any provision of this Deed of Trust shall be held invalid under any applicable law, such invalidity shall not affect any other provision of this Deed of Trust that can be given effect without the invalid provision, and, to this end, the provisions of this Deed of Trust are severable.

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

27.   **WAIVER OF EXEMPTIONS.**   The Trustor abandons and waives any applicable exemption and homestead rights to the fullest extent permitted by applicable law.

28.   **TRUSTEE PROVISIONS.**   From time to time upon written request of Beneficiary and presentation of this Deed of Trust for endorsement and without affecting the personal liability of any person for payment of the Obligations or performance of the Obligations, Trustee may, without liability therefor and without notice, (i) reconvey all or any part of the Property; (ii) consent to the making of any map or plat thereof; (iii) join in granting any easement thereon; (iv) join in any declaration of covenants and restrictions; or (v) join in any extension agreement or any agreement subordinating the lien or charge hereof. Trustee or Beneficiary may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trusts hereunder and the enforcement of the rights and remedies available hereunder, and Trustee or Beneficiary may obtain orders or decrees directing or confirming or approving acts in the execution of such trusts and the enforcement of such remedies. Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Deed of Trust.  Trustor shall pay to Trustee reasonable compensation and reimbursement for services and expenses in the enforcement of the trusts created hereunder, including reasonable attorneys' fees.  Trustor shall indemnify Trustee and Beneficiary against all losses, claims, demands and liabilities which either may incur, suffer or sustain in the execution of the trusts created hereunder or in the performance of any act required or permitted hereunder or by law.

**IN WITNESS WHEREOF,** the Trustor has caused this Deed of Trust to be executed as of the date first above written.

**TRUSTOR:**

150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
Betty Zheng, Its Manager




112

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ____ (Los) Angeles

On January 21st, 2020 before me, Brooke D. Rodriguez ____, a Notary Public, personally appeared **Betty Zheng**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)



BROOKE D. RODRIGUEZ
Notary Public - California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023



Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.



# EXHIBIT A

[Legal Description]

LOT 1 OF TRACT NO. 63552, IN THE CITY OF ARCADIA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1325 PAGE(S) 32 AND 33 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD.



114

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): DEBTOR'S NOTICE OF MOTION AND MOTION TO AUTHORIZE SALE OF REAL PROPERTY LOCATED AT 150 EAST LA SIERRA DRIVE, ARCADIA, CALIFORNIA 91006, FREE AND CLEAR OF LIENS; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF ZHAO PU YANG, KENNY YU, WILLIAM FRIEDMAN, STEPHEN ENG, AND ALPHAMORLAI L. KEBEH, AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 24, 2022 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**: On October 24, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by causing to be placed a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 24, 2022 | Beverly Lew | /s/ Beverly Lew |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

## 1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Donna C Bullock on behalf of Interested Party Donna Bullock Carrera
donnabullockcarrera@yahoo.com, donna.bullock@ymail.com

Steven P Chang on behalf of Interested Party Courtesy NEF
heidi@spclawoffice.com,
schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;
changsr75251@notify.bestcase.com

Michael F Chekian on behalf of Creditor The Phalanx Group
mike@cheklaw.com, chekianmr84018@notify.bestcase.com

Michael F Chekian on behalf of Interested Party Chekian Law Office, Inc.
mike@cheklaw.com, chekianmr84018@notify.bestcase.com

Heidi M Cheng on behalf of Plaintiff JINZHENG GROUP (USA) LLC
heidi@slclawoffice.com,
assistant1@spclawoffice.com;schang@spclawoffice.com;chenghr75251@notify.bestcase.com

Susan Titus Collins on behalf of Interested Party INTERESTED PARTY          scollins@counsel.lacounty.gov

Nicholas S Couchot on behalf of Creditor Royal Business Bank
ncouchot@buchalter.com, docket@buchalter.com;marias@buchalter.com

Jeffrey W Dulberg on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
jdulberg@pszjlaw.com

Oscar Estrada on behalf of Creditor LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR
oestrada@ttc.lacounty.gov

Danielle R Gabai on behalf of Debtor JINZHENG GROUP (USA) LLC          dgabai@danninggill.com,
dgabai@ecf.courtdrive.com

Runmin Gao on behalf of Plaintiff JINZHENG GROUP (USA) LLC          ivy.gao@aalrr.com,
alicia.mcmaster@aalrr.com

Runmin Gao on behalf of Plaintiff JINZHENG GROUP (USA) LLC          ivy.gao@aalrr.com,
alicia.mcmaster@aalrr.com

Richard Girgado on behalf of Interested Party Courtesy NEF          rgirgado@counsel.lacounty.gov

Brian T Harvey on behalf of Interested Party Courtesy NEF
bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com

M. Jonathan Hayes on behalf of Interested Party Courtesy NEF
jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhm
firm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com

Teddy M Kapur on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
tkapur@pszjlaw.com, mdj@pszjlaw.com

Alphamorlai Lamine Kebeh on behalf of Debtor JINZHENG GROUP (USA) LLC          akebeh@danninggill.com

Alphamorlai Lamine Kebeh on behalf of Plaintiff JINZHENG GROUP (USA) LLC          akebeh@danninggill.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    F 9013-3.1.PROOF.SERVICE

Peter A Kim on behalf of Attorney LAW OFFICES OF PETER KIM        peter@pkimlaw.com,
peterandrewkim@yahoo.com

Peter A Kim on behalf of Defendant Betula Lenta Inc        peter@pkimlaw.com, peterandrewkim@yahoo.com

Peter A Kim on behalf of Defendant David Park   peter@pkimlaw.com, peterandrewkim@yahoo.com

Peter A Kim on behalf of Defendant Jonathan Pae        peter@pkimlaw.com, peterandrewkim@yahoo.com

Christopher J Langley on behalf of Attorney Shioda Langley and Chang LLP
chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Christopher J Langley on behalf of Plaintiff JINZHENG GROUP (USA) LLC
chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Paul J Leeds on behalf of Creditor Sound Equity, Inc.        Pleeds@fsl.law, ssanchez@fsl.law

Benjamin R Levinson, ESQ on behalf of Creditor Michael E. Dorff and Shari L. Dorff
ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com

Damian J. Martinez on behalf of Plaintiff JINZHENG GROUP (USA) LLC
damian.martinez@aalrr.com, julissa.ruiz@aalrr.com

Damian J. Martinez on behalf of Plaintiff JINZHENG GROUP (USA) LLC
damian.martinez@aalrr.com, julissa.ruiz@aalrr.com

Eric A Mitnick on behalf of Creditor Corona Capital Group LLC        MitnickLaw@gmail.com,
mitnicklaw@gmail.com

Eric A Mitnick on behalf of Interested Party Courtesy NEF        MitnickLaw@gmail.com,
mitnicklaw@gmail.com

Giovanni Orantes on behalf of Other Professional Orantes Law Firm, P.C.
go@gobklaw.com, gorantes@orantes-
law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com

Donald W Reid on behalf of Interested Party INTERESTED PARTY        don@donreidlaw.com, ecf@donreidlaw.com

Matthew D. Resnik on behalf of Attorney Matthew Resnik
matt@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@r
hmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com

Matthew D. Resnik on behalf of Creditor Royalty Equity Lending, LLC/Bobs LLC
matt@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@r
hmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com

Matthew D. Resnik on behalf of Interested Party Courtesy NEF
matt@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@r
hmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com

Peter J Ryan on behalf of Defendant Testa Capital Group        ryan@floresryan.com, schneider@floresryan.com

Peter J Ryan on behalf of Defendant Thomas L. Testa        ryan@floresryan.com, schneider@floresryan.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE

Allan D Sarver on behalf of Creditor Investment Management Company LLC        ADS@asarverlaw.com

Allan D Sarver on behalf of Interested Party Courtesy NEF        ADS@asarverlaw.com

Zev Shechtman on behalf of Attorney DANNING, GILL, ISRAEL & KRASNOFF, LLP
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Debtor JINZHENG GROUP (USA) LLC        zshechtman@DanningGill.com,
danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Interested Party INTERESTED PARTY        zshechtman@DanningGill.com,
danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Plaintiff JINZHENG GROUP (USA) LLC        zshechtman@DanningGill.com,
danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

David Samuel Shevitz on behalf of Interested Party INTERESTED PARTY
david@shevitzlawfirm.com,
shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com

John N Tedford, IV on behalf of Interested Party INTERESTED PARTY
jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.courtdrive.com

United States Trustee (LA)        ustpregion16.la.ecf@usdoj.gov

Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA) hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

## 2. **SERVED BY U.S. MAIL**

JINZHENG GROUP (USA) LLC
1414 S Azusa Ave, Suite B-22
West Covina, CA 91791

The Honorable Ernest M. Robles
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

Lienholder
Resco Electric Inc.
2431 W. Washington Blvd., #B
Los Angeles, CA 90018

Lienholder
Resco Electric Inc.,
Agent for Service of Process
YOUNG H PARK
350 FULLER AVE
LOS ANGELES, CA 90036

Lienholder
TCS Building Solution, Inc.
800 W. 6th Street, #1250
Los Angeles, CA 90017

Lienholder
TCS Building Solution, Inc.
Agent for Service of Process
BRIAN G YOU
800 W 6TH ST SUITE 1250
LOS ANGELES, CA 90017

DNQ, LLC
Jason D. Wang
6145 W. Spring Mountain Road, #205
Las Vegas, NV 89146

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.