FRANKLIN SOTO LEEDS LLP
Paul J. Leeds (Bar No. 214309)
pleeds@fsl.law
Meredith King (Bar No. 280043)
mking@fsl.law
444 West C Street, Suite 300
San Diego, California 92101
Tel:  619.872.2520
Fax: 619.566.0221

Attorneys for *Sound Equity High Income Debt Fund, LLC*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA,

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JINZHENG GROUP (USA) LLC<br><br>　　　　Debtor. | Case No.: 2:21-bk-16674-ER<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LIMITED OPPOSITION TO DEBTOR'S MOTION TO AUTHORIZE THE SALE OF REAL PROPERTY LOCATED AT 150 EAST LA SIERRA DRIVE, ARCADIA, CALIFORNIA 91006, FREE AND CLEAR OF LIENS**<br><br>[Declarations of Ken Hansen and Paul Leeds, concurrently filed herewith]<br><br>**HEARING:**<br>Date:　　November 15, 2022<br>Time:　　11:00 a.m.<br>Crtrm.:　　1568<br>　　　　255 E. Temple Street<br>　　　　Los Angeles, California 90012<br>Judge:　　Ernest M. Robles |

Case. No. 2:21-bk-16674-ER

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND .............................................................................................. 2

        A.      Sound Equity's Loan ......................................................................... 2

        B.      Jinzheng's Bankruptcy ...................................................................... 4

        C.      The La Sierra Settlement .................................................................. 5

        D.      The Sale Motion ................................................................................. 6

III.    SOUND EQUITY'S LIEN IS NOT SUBJECT TO A BONA FIDE
        DISPUTE ........................................................................................................ 8

        A.      Sound Equity is Entitled to Full Payment of Its Allowed,
                Secured Claim as of July 20, 2022 Under § 502(a) and (h) ............. 9

        B.      Sound Equity is Entitled to Default Interest Under § 506(b) ....... 11

        C.      Sound Equity is Entitled to Attorney Fees and Costs Under §
                506(b) ............................................................................................... 14

        D.      Jinzheng is Judicially Estopped from Contesting Sound
                Equity's Lien .................................................................................... 15

IV.     CONCLUSION .............................................................................................. 17

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

## STATUTES

11 U.S.C. § 363...................................................................................1, 2, 6, 8, 9, 17

11 U.S.C. § 506................................................................................1, 7, 8, 10, 11, 15

11 U.S.C. § 522.........................................................................................................9

11 U.S.C. § 550.........................................................................................................9

11 U.S.C. § 553.........................................................................................................9

## CASES

*Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai),*
    581 F.3d 1090 (9th Cir. 2009)................................................................................14

*Dewsnup v. Timm,*
    502 U.S. 410 (1992)..................................................................................................9

*Foss v. Boardwalk Partners (In re Boardwalk Partners),*
    171 B.R. 87 (Bankr. D. Ariz. 1994).......................................................................13

*Gen. Elec. Cap. Corp. v. Future Media Prods., Inc.,*
    547 F.3d 956 (9th Cir. 2008)..................................................................................11

*Hamilton v. State Farm Fire & Cas. Co.,*
    270 F.3d 778 (9th Cir. Cal. 2001)..........................................................................15

*In re 3MB, LLC,*
    609 B.R. 841 (Bankr. E.D. Cal. 2019)...................................................................13

*In re 785 Partners LLC,*
    470 B.R. 126 (Bankr. S.D.N.Y. 2012)...................................................................12

*In re Bankvest Cap. Corp.,*
    375 F.3d 51 (1st Cir. 2004)......................................................................................9

*In re Beltway One Dev. Grp., LLC,*
    547 B.R. 819 (B.A.P. 9th Cir. 2016)............................................................11, 12, 13

MEMORANDUM OF POINTS AND AUTHORITIES

*In re DWS Invs., Inc.,*
  121 B.R. 845 (Bankr. C.D. Cal. 1990)..................................................................13

*In re Epicenter Partners, L.L.C.,*
  789 F. App'x 632 (9th Cir. 2020)........................................................................12

*In re Gaylord Grain L.L.C.,*
  306 B.R. 624, (B.A.P. 8th Cir. 2004)....................................................................8

*In re Laizure,*
  548 F.3d 693 (9th Cir. 2008)................................................................................9

*In re Lane,*
  959 F.3d 1226 (9th Cir. 2020)..............................................................................9

*In re Terry Ltd. P'ship,*
  27 F.3d 241 (7th Cir. 1994)................................................................................12

*In re Texas Star Indus. Group, Ltd. Co.,*
  2007 WL 4522323..............................................................................................12

*Long v. Bullard,*
  117 U.S. 617 (1886).............................................................................................9

*New Hampshire v. Maine,*
  532 U.S. 742 (2001)...........................................................................................16

*Southland Corp. v. Toronto–Dominion (In re Southland Corp.),*
  160 F.3d 1054 (5th Cir. 1998)............................................................................12

*Terry Ltd. P'ship,*
  27 F.3d at 243 (1994).........................................................................................13

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,*
  549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)..............................11, 13

1

2    **TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES**

3    **BANKRUPTCY JUDGE, THE DEBTOR, ITS COUNSEL, AND ALL**

4    **INTERESTED PARTIES:**

5        Sound Equity High Income Debt Fund, LLC ("Sound Equity"), a secured

6    creditor with a first-priority security interest in the partially completed residence

7    located at 150 E. La Sierra Dr., Arcadia, California 91106 ("La Sierra"),

8    respectfully submits this Memorandum of Points and Authorities in support of its

9    Opposition to Debtor's *Motion to Authorize Sale of Real Property located at 150*

10   *East La Sierra Drive, Arcadia, California 91006, Free And Clear Of Liens* (the

11   "Sale Motion") (Doc 421).

12                     **I.**

13                 **INTRODUCTION**

14        Sound Equity does not dispute that La Sierra should be sold or that the

15   bankruptcy estate of Debtor-in-Possession JINZHENG GROUP (USA) LLC

16   ("Jinzheng") may be entitled to equity remaining after payment of Sound Equity's

17   oversecured claim. However, as is set forth below, Jinzheng is entitled to full

18   payment of its claim at the close of escrow as no portion of its lien is subject to a

19   bona fide dispute under 11 U.S.C. § 363(f)(4).[1] Sound Equity is, specifically,

20   entitled to payments of: (a) **$1,795,547.05** as the value of its allowed, fully secured

21   claim on the date La Sierra was transferred to the bankruptcy estate and

22   (b) pendency interest and attorney fees and costs under § 506(b) in an amount not

23   less **$126,438.56** accruing on Sound Equity's oversecured, allowed claim. Jinzheng

24   has presented no legal or factual basis to strip Sound Equity's fully secured claim to

25   pay administrative creditors of this estate after Jinzheng failed to promptly notify

26

27   _____

28      [1] All citations herein are to Title 11 of the United States Code unless otherwise stated.

MEMORANDUM OF POINTS AND AUTHORITIES

1  Sound Equity of this Case and represented to the Court that the transfer of La Sierra

2  to the bankruptcy estate would be without prejudice to Sound Equity.

3       For the reasons set forth below, Sound Equity's claim is therefore not subject

4  to bona fide dispute under § 363(f)(4) and must be paid in full at the close of

5  escrow.

6                                    **II.**

7                              **BACKGROUND**

8  **A.    Sound Equity's Loan**

9       In January 2020, Sound Equity issued a construction loan (Sound Equity's

10  "Loan") to 150 La Sierra, LLC (the "La Sierra Borrower"). [Decl. Ken Hansen

11  Supp. Opp. Jinzheng's Mot. App. Compromise, July 14, 2022, Doc. 303-1

12  ("Hansen July Decl."), ¶ 8.] At the time of the Loan, Betty Zheng executed a

13  Promissory Note (the "Note") and Deed of Trust ("DOT") evidencing the Loan as

14  the manager of Jinzheng, who was the managing member of the La Sierra

15  Borrower. [Decl. Ken Hansen, filed herewith ("Hansen Decl."), ¶ 6-7.]

16       The Note provided for an initial advance of $593,262 followed by additional

17  advances for construction to be paid not more than once a month to reimburse the

18  La Sierra Borrower for costs incurred during construction. [Hansen Decl., ¶ 8.] The

19  Note had a 12-month term and a maturity date of February 1, 2021. [*See* Hansen

20  Decl., **Exhibit A**, pg. 3.]

21       At the time of the Loan, Zheng, on behalf of Jinzheng and the La Sierra

22  Borrower, executed a "Borrower's Certification" in which the La Sierra Borrower

23  certified:

24       5. Borrower owns (or will own, prior to the closing of the subject loan) fee simple title to all
     of the Mortgaged Property; the Mortgage creates the lien and security it purports to create
25   and is a valid and binding obligation of Borrower enforceable against Borrower and the
     Mortgaged Property in accordance with its terms; and the Note represents a valid and binding
26   obligation of the Borrower enforceable in accordance with its terms.

27       [Hansen Decl., **Exhibit A**, pg. 56.]

28

The Note provided that the principal balance would bear interest at a rate of 8.99%, and, in the event of a default (including the "[n]onpayment of principal interest or other amount"), the Note provided for default interest rate of 2.0% per month.  The Note stated:

> 2.  Stated Interest Rate.  Except as provided in Section 3 below, the principal balance outstanding hereunder shall bear interest, until fully paid, at 8.99% (the "Stated Interest Rate").
>
> 3.  Default Interest Rate.  The Default Interest Rate shall be 2.0% per month. The principal balance outstanding hereunder from time to time shall bear interest at the Default Interest Rate from the date of the occurrence of an Event of Default (as hereinafter defined) hereunder until the date on which the principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, are paid in full.

[Hansen Decl., **Exhibit A**, pg. 11.]

At the time of the Loan, the La Sierra Borrower held title to La Sierra pursuant to a grant deed recorded on January 23, 2020 transferring the property from Jinzheng to the La Sierra Borrower. [Hansen July Decl., ¶ 7.] The La Sierra Borrower had no other debts or property at the time the Loan was funded. [Hansen July Decl., ¶ 14.]

Between January 2020 and December 21, 2021, the La Sierra Borrower took out nine draws on the Loan, borrowing a total of $1,551,663. [*See* Hansen Decl., ¶ 9, **Exhibit B**.] As construction was not complete when the loan initially matured (and because the La Sierra Borrower was current on its interest payments), on February 1, 2021, Sound Equity agreed to extend the maturity date of the Loan to August 1, 2021. [Hansen Decl., ¶ 13.] On August 1, 2021, just 23 days before this Case was commenced, the maturity date was then further extended to August 1, 2022. [Hansen Decl., ¶ 14.] The Loan Extension executed the month Jinzheng filed this case included the following provision:

> 1. Estoppel Stipulation of Borrower. Borrower acknowledges and stipulates that he/she/it is indebted to Lender, without any defense, offset, or counterclaim, for sums disbursed under the Note in the principal sum of $2,340,000.00, plus interest accrued and to accrue thereon from 8/1/2021, at the interest rate set forth in the Note plus default interest accrued and unpaid since the Date of Maturity and any other late fees or otherwise.  Borrower stipulates that all prior payments made have been properly credited, and that Lender's accounting is accurate.

[Hansen Decl., **Exhibit D**, pg. 1.]

1    The La Sierra Borrower's last draw on the loan was on December 21, 2021

2    (almost four months after this bankruptcy was filed), when $133,707.70 was

3    funded. [Hansen Decl., **Exhibit B**.] Shortly thereafter, in January 2022, the La

4    Sierra Borrower stopped making payments on the Loan.  [Hansen July Decl., ¶ 9.]

5    After three months of non-payment, on April 5, 2022 (seven months post-petition),

6    the duly appointed trustee on Sound Equity's DOT recorded a Notice of Default

7    and Election to Sell ("Notice of Default"). [Hansen July Decl., ¶ 9.]

8    **B.    Jinzheng's Bankruptcy**

9    Before a trustee's sale was issued, on June 16, 2022, Sound Equity received

10    notice that the La Sierra Borrower's managing member, Jinzheng, filed its

11    voluntary Chapter 11 petition on August 24, 2021 commencing this Case. [Hansen

12    July Decl., ¶ 12.] While Jinzheng had not listed any interest in La Sierra in its

13    Sch. A/B (and had not provided Sound Equity notice of its bankruptcy filing),

14    Jinzheng identified its transfer of La Sierra to the La Sierra Borrower on its

15    Statement of Financial Affairs as a transfer made on within 2 years of the petition.

16    [*See* Sch. A/B, Sept. 7, 2021, Doc. 19 and Stmnt. Fin. Affairs, Sept. 11, 2021, Doc.

17    30.] Then, on March 10, 2022, Jinzheng filed a Combined Chapter 11 Plan of

18    Reorganization and Disclosure Statement (Doc. 158 (the "Plan")) that provided that

19    Jinzheng would seek recovery of La Sierra. [*See* Plan, Doc. 158, pg. 23.]

20    Notably, while Jinzheng had identified its transfer of La Sierra as a

21    potentially avoidable transfer in its Statement of Financial Affairs on September 11,

22    2021, without providing Sound Equity any notice of its bankruptcy, Jinzheng

23    continued to direct the La Sierra Borrower to make draws on the Loan. After

24    Jinzheng filed bankruptcy on August 24, 2021, Jinzheng drew down $93,600 on the

25    Loan on October 1, 2021; $37,555 on October 25, 2021, and $133,707.70 on

26    December 21, 2021. [Hansen Decl., **Exhibit B.**] It was only after Jinzheng's

27    subsidiary stopped receiving draws and making payments on the Loan that

28    Jinzheng notified Sound Equity of the bankruptcy and began to pursue avoidance of

its transfer of La Sierra to the La Sierra Borrower. Sound Equity is still in the process of assessing the accuracy of representations Jinzheng and the La Sierra Borrower made in connection with their post-petition draws. [Hansen Decl., ¶ 15.]

## C.    **The La Sierra Settlement**

After making post-petition draws on the Loan in the amount of $264,862.70, Jinzheng filed a motion (Jinzheng's "9019 Motion") on July 5, 2022 seeking an order from this Court approving a settlement agreement (the "La Sierra Settlement") between Jinzheng and the La Sierra Borrower pursuant to which La Sierra would be transferred to Jinzheng. [Amend. Mot. App. Compromise, July 6, 2022, Doc. 280.] In its 9019 Motion, Jinzheng asserted that there was "substantial equity" in La Sierra and that Jinzheng intended to list La Sierra for sale "immediately upon approval of the transfer [to Jinzheng]." [Mot. App. Compromise, July 5, 2022, Doc. 278, pg. 2.] In support, Jinzheng submitted a declaration from the property manager and proposed real estate agent Stephen Eng attesting that he believed the value of La Sierra to be $2,500,000 as of July 5, 2022. [Decl. Stephen Eng Supp. Mot. App. Compromise, July 5, 2022, Doc. 278 (the "Eng Decl."), pg. 15.] Sound Equity objected to Jinzheng's 9019 Motion, noting La Sierra "was and remains in a precarious state of partially finished construction" and would "require significant capital to complete." [Hansen July Decl., ¶¶ 10-11.] In Reply, Jinzheng did not dispute the amount owed on Sound Equity's lien but argued that the transfer of La Sierra to the bankruptcy estate would not prejudice Sound Equity as "its security interest will be protected by the equity." [Jinzheng Reply Opp. Mot. App. Compromise, July 17, 2022, Doc. 311, pg. 6.]

The Court overruled Sound Equity's objection and issued an order (the "Transfer Order") approving the La Sierra Settlement on July 20, 2022. [Doc. 322.] The Transfer Order specifically provided that La Sierra was "***hereby immediately transferred and assigned to [Jinzheng]***" and that the transfer was "***without prejudice to the rights of any secured creditors of La Sierra*** . . . ." [*Id.* (emphasis

1  added).]

2  **D.    The Sale Motion**

3      Having recovered La Sierra effective as of July 20, 2022, Jinzheng now seeks

4  approval under § 363 to sell the property for the purchase price of $2,100,000,

5  subject to overbid. [Sale Motion, pg. 7.] Jinzheng further requests that the sale be

6  made free and clear of certain liens against the property under § 363(f)(4),

7  including Sound Equity's lien to the extent that Sound Equity is entitled to default

8  interest, attorney fees and costs, and miscellaneous fees under its Note. [Sale

9  Motion, pg. 8.] Jinzheng specifically objects to the payment of: (A) default interest

10  charges in the amount $302,050.64; (B) attorney fees and costs of $8,100; (C) and

11  fees and charges in the amount of $54,658.58.[2] Jinzheng advises that it intends to

12  "satisfy the undisputed amount owed" on Sound Equity's claim "in full from the

13  net sale proceeds" and then "attach the disputed portions to the net proceeds of the

14  sale with the same, force, effect, validity and priority that they have with respect to

15  [La Sierra]." [Sale Motion, pg. 8.]

16      Sound Equity does not object to the sale of La Sierra under the procedures

17  and terms set forth in Jinzheng's Sale Motion. However, Sound Equity strongly

18  objects to the sale of the property free and clear of the full amount of Sound

19  Equity's lien unless Sound Equity's oversecured, allowed claim is paid in full at the

20  close of escrow as Sound Equity's claim is not subject to a bona fide dispute

21  § 363(f)(4) under as is set forth herein.

22

23      [2] Jinzheng cites as authority for disputed amount referenced in the Sale

24  Motion a September 22, 2022 payoff demand, however, Jinzheng's precise
   calculations appear unclear. In any event, amounts included in the payoff demand

25  are of limited utility as they fail to provide detail as to when draws were made on

26  the loan and when interest and fees were charged. The declaration of Ken Hansen
   filed in connection with this Opposition clarifies the interest, fees, and costs

27  charged to the loan and requested for payment from escrow. [Hansen Decl., ¶¶ 19 –

28  22.]

Sound Equity's lien had a value of $1,795,547.05 on the date that it was transferred to the estate, which included the following amounts:

| | |
|---|---|
| Principal Balance | $1,551,633.59 |
| Note Rate 12/1/2021-7/20/2022 | $89,226.96 |
| Default Rate 1/1/2022-7/20/2022 | $130,035.95 |
| Late Fees Unpaid to 12/15/2021 | $1,051.01 |
| Foreclosure Fees & Costs | $16,856.84 |
| Legal Fees | $7,110.00 |
| Suspense Balance | ($367.29) |
| **TOTAL** | **$1,795,547.05** |

[Hansen Decl., ¶ 18; *see also* Decl. Paul Leeds, filed herewith ("Leeds Decl."), ¶ 6.] There is no dispute that on the date La Sierra was transferred to estate, the value of La Sierra exceeded $1,795,547.05. Therefore, as is set forth below, Sound Equity's July 20, 2022 lien of $1,795,547.05 constitutes a fully secured, allowed prepetition claim under § 502(a) and Jinzheng has cited no authority which would allow the Court to strip Sound Equity's lien for the benefit of Jinzheng's administrative creditors. Sound Equity's lien must therefore be allowed in this amount and paid from escrow.

In addition, after La Sierra was transferred to the estate, interest and attorney fees and costs continued to accrue on Sound Equity's oversecured claim, entitling Sound Equity to pendency interest, fees, and costs under § 506(b). These fees and costs include the following:

| Fees and Interest 7/21/2022 to 11/1/22 | |
|---|---|
| Note Rate 7/21/2022-11/1/2022 | $39,910.17 |
| Default Rate 7/21/2022-11/1/2022 | $65,988.39 |
| Legal Fees | $20,540.00 |
| **TOTAL** | **$126,438.56** |

[Hansen Decl., ¶ 21; Leeds Decl., ¶ 8.]

/ / /

/ / /

As is set forth below, there is no objective or factual basis to deny Sound Equity its fully, secured allowed claim of $1,795,547.05 under § 502(a), so the claim is not subject to dispute under § 363(f)(4) and must be paid in full at the close escrow. Similarly, Sound Equity there is no factul or legal basis to deny Sound Equity its pendency interest, fees, and costs of at least $126,438.56 under § 506(b) and this amount must be paid at the close of escrow as well.

### III.

### SOUND EQUITY'S LIEN IS NOT SUBJECT TO A BONA FIDE DISPUTE

Debtors-in-possession may sell property under § 363(b) free and clear of any interest in such property under § 363(f) if the "interest" in the property is in "bona fide dispute." § 363(f)(4). Section 363(e) protects contested interests in property by requiring that "on request of an entity that has an interest in the property . . . the court . . . shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." The phrase "bona fide dispute" is not defined in the Bankruptcy Code but has been interpreted as requiring there be "an objective basis for either a factual or legal dispute as to the validity of the asserted interest." *In re Gaylord Grain L.L.C.*, 306 B.R. 624, 627 (B.A.P. 8th Cir. 2004). The court does not have to resolve the dispute prior to the sale; it need only determine that such a dispute exists. *Id.*

Jinzheng does not dispute that Sound Equity is oversecured or that, under the terms of Sound Equity's Note, Sound Equity's lien had a value of $1,795,547.05 on the date the property was transferred to the estate. Jinzheng also does not dispute that an additional $126,438.56 has accrued under the terms of the Note since July 20, 2022. Jinzheng, nevertheless, argues that default interest, attorney fees and costs, and miscellaneous fees are subject to bona fide dispute under § 506(b) because they are either unreasonable or inequitable. Jinzheng specifically argues that Sound Equity's claim is subject to dispute because _Jinzheng's_ bankruptcy estate "will not receive distributions in full satisfaction of the claims" and because

8

Case. No. 2:21-bk-16674-ER

"[t]he estate still does not have sufficient funds to pay its administrative expenses." [Sale Motion, pgs. 19-23.]  As is set forth below, these arguments do not provide an objective basis for the Court to find that there is a factual or legal dispute that would permit the Court to deny Sound Equity's claim. Sound Equity's claim is therefore not subject to a bona fide dispute under § 363(f) and must be paid in full from the close of escrow.

A.    <u>Sound Equity is Entitled to Full Payment of Its Allowed, Secured Claim as of July 20, 2022 Under § 502(a) and (h)</u>

It is a long-standing principal of bankruptcy law that a secured creditor's lien passes through bankruptcy proceedings unaffected. *In re Lane*, 959 F.3d 1226, 1229-30 (9th Cir. 2020) (citing *Dewsnup v. Timm*, 502 U.S. 410, 417–19, (1992) and *Long v. Bullard*, 117 U.S. 617, 620–21 (1886)). Generally, a claim is "deemed allowed" under § 502(a) unless a party in interest "objects," in which case the Court "after notice and hearing" is authorized to "determinate the amount of such claim . . . as of the date of filing."

However, where property is recovered "under Section 522, 550, or 553," § 502(h) requires the claim "***shall be determined, and shall be allowed*** . . . as if such claim had arisen before the date of the fling of the petition." Importantly, § 502(h) entitles parties holding a claim "arising from the recovery of property" to a claim "the same as if such claim had arisen before the date of the filing of the petition." *See In re Bankvest Cap. Corp.*, 375 F.3d 51, 67 (1st Cir. 2004) ("Certainly, we can see no reason, nor any indication of legislative intent in § 502(h), to strip a secured creditor of its secured claim . . . .) (cited with approval *In re Laizure*, 548 F.3d 693, 699 (9th Cir. 2008)). Specifically, in *Bankvest,* the First Circuit held that a secured creditor who returned preferential payments postpetition was entitled to a secured claim in the amount of payments received. *Bankvest*, 375 F.3d at 67; *see also Laizure*, 548 F.3d at 699 (creditor who received preferential payments prepetition was entitled to a nondischargeable claim under

§ 502(h)).

In its 9019 Motion, filed after Jinzheng had received post-petition draws on the Loan in the amount of $264,862.70, Jinzheng sought to recover La Sierra under § 548 as a transfer made while Jinzheng was insolvent without receiving reasonably equivalent value. [9019 Motion, pg. 8.] This transfer was purportedly recoverable by Jinzheng from the La Sierra Borrower under § 550(a). As is set forth more fully above, on the date La Sierra was transferred to Jinzheng's bankruptcy estate, Sound Equity held a first priority lien secured by an interest in La Sierra in the amount of $1,795,547.05 . [Hansen Decl., ¶ 18.] This was a claim against a non-debtor entity secured property that was not property of the estate. However, after the transfer of La Sierra, Sound Equity held a first, priority lien against property of the estate. This claim was fully secured as Jinzheng represented the property had a value of $2,500,000. [Eng Decl., pg. 15.] Under § 550(a) and (h), Sound Equity therefore holds a claim that arose from the estate's recovery of La Sierra, and, so, just as the creditor in *Bankvest* was entitled to a secured claim, Sound Equity is entitled to an allowed, secured claim under § 502(a) and (h) in the amount of $1,795,547.05 "as if such claim had arisen before the date of the filing of the petition."

While Jinzheng argues that Sound Equity should not be entitled pendency "fees, costs, or charges" on its oversecured, allowed claim under § 506(b), Jinzheng does not dispute that Sound Equity is entitled to payment of its secured, allowed claim under § 502(a) and identifies no factual or legal dispute that would permit an objective determination that this claim should be disallowed. Jinzheng represented to the Court that the transfer of La Sierra would be without prejudice to Sound Equity and the amount of Sound Equity's lien on the date of transfer to the bankruptcy estate should be paid from escrow. In addition, as is set forth more fully below, Sound Equity is entitled to pendency default interest and attorney fees and costs in an amount not less than $126,438.56 under § 506(b) as is set forth below.

/ / /

**B.**     <u>**Sound Equity is Entitled to Default Interest Under § 506(b)**</u>

Section 506 (b) provides:

> To the extent that an allowed secured claim is secured by
> property the value of which, after any recovery under
> subsection (c) of this section, is greater than the amount
> of such claim, there shall be allowed to the holder of such
> claim, interest on such claim, and any reasonable fees,
> costs, or charges provided for under the agreement or
> State statute under which such claim arose.

*See In re Beltway One Dev. Grp., LLC*, 547 B.R. 819, 830 (B.A.P. 9th Cir. 2016) (noting that there are three categories of interest in bankruptcy cases: (1) prepetition interest; (2) pendency interest (interest accruing after the petition is filed but before the effective date of a plan); and (3) interest accruing under the terms of a plan of reorganization).

In its Sale Motion, Jinzheng recognizes that where a secured creditor is oversecured the Ninth Circuit authority of *Gen. Elec. Cap. Corp. v. Future Media Prods., Inc.*, 547 F.3d 956, 959–60 (9th Cir. 2008) requires courts apply a presumption that the creditor is entitled to the post-petition default interest tjat the parties bargained for at arms-length. Jinzheng, however, claims that under *Future Media* this presumption is "subject to challenge based on applicable nonbankruptcy law and the "equities involved in the proceeding." [Sale Motion, pg. 19.] This is not the precise holding of *Future Media*. In *Future Media*, the Ninth Circuit held:

> Our analysis starts from a general premise recently
> articulated by the Supreme Court: "[c]reditors'
> entitlements in bankruptcy arise in the first instance from
> the underlying substantive law creating the debtor's
> obligation, subject to any qualifying or contrary
> provisions of the Bankruptcy Code." *Travelers Cas. &
> Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443,
> 127 S.Ct. 1199, 1204–05, 167 L.Ed.2d 178 (2007). We
> read Travelers to mean **the default rate should be
> enforced, subject only to the substantive law governing**

**the loan agreement, unless a provision of the
Bankruptcy Code provides otherwise**.

*Id.* at 959 (bold and underline added).

The Ninth Circuit, thus did <u>not</u> provide bankruptcy courts broad discretion to deny postpetition default interest based on "equities," but required bankruptcy courts to allow post-petition default interest on oversecured claims unless the default interest was prohibited by state law or the Bankruptcy Code "provid[ed] otherwise." Indeed, in *Future Media*, the Ninth Circuit overturned a bankruptcy court's determination that a secured creditor was only entitled to interest at a pre-default rate because "the Bankruptcy Code [did] not provide a qualifying or contrary provision to the underlying substantive law" and so "the parties' arm's length bargain, governed by New York law, control[led]." *Id.* at 960; *see also In re Beltway One Dev. Grp., LLC*, 547 B.R. 819, 830 (B.A.P. 9th Cir. 2016) (bankruptcy court erred in failing "to apply the presumptive rule that [the secured creditor] was entitled to the default rate for its pendency interest, provided that such rate is not unenforceable under [state] law"); *In re Epicenter Partners, L.L.C.*, 789 F. App'x 632, 634 (9th Cir. 2020) (debtors failed to demonstrate that bankruptcy court erred in awarding postpetition interest at a 35% annual contract rate).

Jinzheng did not cite one case decided after *Future Media* that would support this court finding an oversecured creditor should be denied pendency default interest under § 506(b) to pay the debtor's administrative expenses, after this debtor failed to conform a Chapter 11 plan for 14 months. Indeed, cases Jinzheng cites are primarily either (A) not in the Ninth Circuit and not subject to the mandatory authority of *Future Media*;[3] and/or (B) were decided long before the Supreme

---

[3] *See Southland Corp. v. Toronto–Dominion (In re Southland Corp.)*, 160 F.3d 1054 (5th Cir. 1998); *In re Terry Ltd. P'ship*, 27 F.3d 241, 243 (7th Cir. 1994); *In re 785 Partners LLC*, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012); *In re Texas Star Indus. Group, Ltd. Co.*, 2007 WL 4522323 at 3 (Bankr. N.D. Tex. Dec. 19, 2007).

Court's decision in *Travelers* and *Future Media*;[4] and/or (C) found that the oversecured creditor <u>was</u> entitled to default interest. For example, in *In re 3MB, LLC*, 609 B.R. 841, 847 (Bankr. E.D. Cal. 2019), the court found the debtor failed to meet their burden of demonstrating that the creditor was not entitled to default interest under California law. *See also Beltway One Dev. Grp., LLC*, 547 B.R. at 830 (bankruptcy court erred in determining Chapter 11 was "fair and reasonable" under § 1129(b) where it failed to provide pendency interest permitted under the applicable documents and state law).

The case Jinzheng cites in which a Ninth Circuit court denied a secured creditor's claim to post-petition default interest after *Future Media* was decided is an unpublished, Central District of California receivership case, *Sec. & Exch. Comm'n v. Cap. Cove Bancorp LLC*, No. SACV15980JLSJCX, 2015 WL 9701154, at *11–12 (C.D. Cal. Oct. 13, 2015), in which the District Court held that, in a receivership proceeding, a secured creditor was not entitled post-receivership default interest where it would harm junior and unsecured creditors.

The scope of this Court's continued discretion to deny pendency default interest that is otherwise valid under the parties' bargained for agreement post-*Future Media* is questionable. However, even to the extent that *Cap. Cove Bancorp* demonstrates that bankruptcy courts continue to retain such discretion, the equities here obviously differ significantly from those present in *Cap. Cove Bancorp* and weigh in favor of granting pendency, default interest.

This bankruptcy has been pending for over 14 months and no plan of reorganizataion has been confirmed. Jinzheng has had several attorneys, at first pursuing a reorganization strategy that required completing construction on its

---

[4] *See Foss v. Boardwalk Partners (In re Boardwalk Partners)*, 171 B.R. 87 (Bankr. D. Ariz. 1994); *In re DWS Invs., Inc.*, 121 B.R. 845, 849 (Bankr. C.D. Cal. 1990); *see also Southland Corp*, 160 F.3d 1054 (1998) and *Terry Ltd. P'ship*, 27 F.3d at 243 (1994).

primary asset, and then pivoting to a liquidation of all its assets. Jinzheng did not provide Sound Equity notice of this bankruptcy filing until nine months after the Case was filed, despite being on notice that its transfer of La Sierra to the La Sierra was potentially subject to avoidance. Instead, after filing its bankruptcy on August 24, 2021, Jinzheng continued to direct its subsidiary to make draws on the Loan and waited until Sound Equity had incurred over $16,000 in costs pursuing a foreclosure to provide notice of the bankruptcy and seek avoidance of the transfer. Given Jinzheng's delays in administrating its estate and its failure to provide Sound Equity notice of this bankruptcy, Jinzheng should not now be permitted to strip Sound Equity of pendency interest te to pay Jinzheng's administrative costs.

The cases Jinzheng cited in its Sales Motion do not create any bona fide dispute that Sound Equity is not entitled to pendency default interest on its oversecured claim. Nor do the declarations filed in support of the motion offer any admissible factual evidence that would raise a bona fide objection to Sound Equity's entitlement to default interest under the Note and DOT. Instead, the alleged "dispute" is merely a conclusory statement, with no factual or legal support, made for the sole purpose of freeing funds to pay professionals in an administratively insolvent estate. For these reasons, Sound Equity should be paid the full amount of its pendency default interest at the close of escrow.

## C. Sound Equity is Entitled to Attorney Fees and Costs Under § 506(b)

Under § 506(b), creditors are entitled to attorney fees and costs incurred postpetition where (1) they hold an allowed secured claim; (2) they are oversecured; (3) the fees are reasonable; and (4) the fees are provided for in the agreement. *Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai)*, 581 F.3d 1090, 1098-99 (9th Cir. 2009). As is set forth above, Sound Equity is an oversecured creditor holding a claim secured by an interest in property of the estate. Jinzheng also does not dispute that Sound Equity is entitled to attorney fees and costs under the Note and DOT. Sound Equity is therefore entitled to all its attorney

14

fees and costs incurred in connection with the enforcement of the Note and DOT provided those fees are "reasonable." In adding the reasonableness requirement under § 506(b) the Ninth Circuit has held that Congress intended to "preempt" state law, and whether a creditor's fees are reasonable under § 506 is a question of federal law. *Hoopai*, 581 F.3d at 1099 (bankruptcy court erred in concluding that creditor's entitlement to attorney fees was limited by state law).

As is set forth above, Sound Equity incurred $7,110 in attorney fees and costs prior to the transfer of La Sierra into the estate and at least another $16,540.00 after the transfer of La Sierra. [Leeds Decl., ¶ 6.]. In addition, it is likely that Sound Equity will incur at least an additional $4,000 in fees and costs defending this motion. [Leeds Decl., ¶ 9.] These fees are reasonable and not subject to bona fide dispute as they were incurred directly in connection with this Case defending Jinzheng's 9019 Motion and enforcing Sound Equity's resulting claim. [Leeds Decl., ¶ 7.] This is a complex bankruptcy that required Sound Equity's counsel to incur fees and costs reviewing and analyzing the extensive docket. [Leeds Decl., ¶ 7.] Sound Equity's fees and costs were charged using the lodestar method at market rates. [Leeds Decl., ¶ 4.] For all these reasons, the fees and costs are reasonable and are not subject to bona fide dispute. Notably, Jinzheng's counsel incurred fees and costs of approximately $23,763 in connection with Jinzheng's 9019 motion. [*See* First Interim Fee App. Danning, Gill, Israel & Krasnoff, Oct. 18, 2022, Doc. 403, pgs. 26-93.]

### D.    <u>Jinzheng is Judicially Estopped from Contesting Sound Equity's Lien</u>

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. Cal. 2001). The United States Supreme Court has listed three factors courts may consider in determining whether a party should be judicially estopped from taking position:

1. Whether the party's later position is "clearly inconsistent" with its earlier position.

2. Whether the party persuaded a court (either an earlier court or the same court) to accept that position. In particular, the Ninth Circuit requires that the court relied on or "accepted" the previous inconsistent position. Judicial reliance may occur in a number of ways, such as: discharge of debtor; lifting of a stay; or approval of reorganization plan. *Id.* at 784.

3. Whether the party would derive an unfair advantage or impose unfair detriment if not estopped.

*Id.* at 782-83 (citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)).

In its 9019 Motion, Jinzheng asserted the transfer of La Sierra to the estate would be "without prejudice to the rights of any creditors of La Sierra or any lienholders in the Property." [Decl. Zhao Pu Yang Supp. 9019 Motion, July 5, 2022, ¶ 5.b.] The Court was persuaded by this argument and relied on this representation when it granted Jinzheng's 9019 Motion and ordered La Sierra be transferred to the estate, "***without prejudice to the rights of any secured creditors of La Sierra***." [Transfer Order, Doc. 322.]

In its Sale Motion, Jinzheng now claims that Sound Equity's lien should be stripped to pay administrative creditors of Jinzheng's bankruptcy estate. Stripping Sound Equity's lien to pay Jinzheng's creditors certainly prejudices Sound Equity. [Sale Motion, pgs. 15.]   Jinzheng is therefore estopped from asserting equity requires Sound Equity's lien be stripped as this position is inconsistent with Jinzheng's prior representations that the transfer of La Sierra would not prejudice Sound Equity's oversecured claim.

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**CONCLUSION**

For the foregoing reasons, Sound Equity respectfully requests that the Court find that Sound Equity's lien is not subject to bona fide dispute under § 363(f)(4) and require that Sound Equity's allowed claim of $1,795,547.05 be paid from escrow, plus all pendency interest and attorney fees and costs accruing from July 20, 2022 to the date of the sale.

DATED:  November 1, 2022          **FRANKLIN SOTO LEEDS LLP**


By: */s/ Paul J. Leeds, Esq.*
     PAUL J. LEEDS, ESQ.
     MEREDITH KING, ESQ.

     Attorneys for *Sound Equity High
     Income Debt Fund, LLC*