FRANKLIN SOTO LEEDS LLP
Paul J. Leeds (Bar No. 214309)
pleeds@fsl.law
Meredith King (Bar No. 280043)
mking@fsl.law
444 West C Street, Suite 300
San Diego, California 92101
Tel:  619.872.2520
Fax: 619.566.0221

Attorneys for *Sound Equity High Income Debt Fund, LLC*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA,

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JINZHENG GROUP (USA) LLC<br><br>Debtor. | Case No.: 2:21-bk-16674-ER<br><br>Chapter 11<br><br>**DECLARATION OF KEN HANSEN IN SUPPORT OF LIMITED OPPOSITION TO DEBTOR'S MOTION TO AUTHORIZE THE SALE OF LA SIERRA**<br><br>**PROPERTY ADDRESS:**<br>**150 LA SIERRA LLC**<br>**ARCADIA, CA 91106**<br><br>[Memorandum of Points and Authorities and Declaration of Paul J. Leeds, concurrently filed herewith]<br><br>**HEARING:**<br>Date:      November 15, 2022<br>Time:      11:00 a.m.<br>Crtrm.:   1568<br>              255 E. Temple Street<br>              Los Angeles, California 90012<br>Judge:    Ernest M. Robles |

I, Ken Hansen, declare as follows:

1.      I am the Chief Operating Officer of Sound Equity High Income Debt Fund, LLC ("Sound Equity"). I make this declaration based on my personal knowledge, except as to matters stated on information and belief and, as to those matters, I believe my information and belief to be true and correct. If called upon as a witness, I could and would competently testify to the facts set forth herein.

2.      In my capacity as an officer of Sound Equity, I was, and am, one of the custodians of records of the documents relating to Sound Equity's business dealings with certain of its borrowers, including 150 La Sierra, LLC ("La Sierra Borrower").

3.      In the ordinary course of its business, Sound Equity maintains a record of all contracts and agreements to which it is a party, including all promissory notes and related agreements, as with the loan documents in this case. Sound Equity's files include a written record of all sums that were loaned or advanced to Sound Equity's customers as it pertains to the subject obligations, payments made by customers on their accounts, charges and interest, and the balances owing. This information is maintained by and retrieved from computers which are programmed for the above purposes. An employee of Sound Equity, acting pursuant to Sound Equity's normal operating procedures, made a written record of the amount of the subject loan and the terms of the subject loan documents. Similarly, on or about the date any payment is received from a customer, an employee of Sound Equity makes a written record of the amount of the payment and credits the same against the amounts due and owing under the particular loan agreement with the customer. Sound Equity operates in reliance on this procedure and the accuracy of the written records generated thereby.

4.      The above-described records constitute writings taken or made and kept in the course of Sound Equity's regularly conducted business activity, and it is Sound Equity's regular practice to make, keep, and preserve such records. As set

forth, such records were made at or near the time of the acts, conditions, or events to which they relate by Sound Equity's employees who have a business duty to Sound Equity to accurately and completely take, make, and maintain such records and documents. These employees obtain the information contained in Sound Equity's records either from personal knowledge and observation or from persons employed by Sound Equity with personal knowledge of the acts and/or events recorded therein. Sound Equity operates in reliance on these procedures.

5. As of the date of this declaration, I have reviewed the business records described above relating to Sound Equity's dealings with the La Sierra Borrower, and I am familiar with the contents thereof. Based upon that review, my familiarity with Sound Equity's practices and procedures relating to the creation and maintenance of its business records, and my knowledge of the transactions at issue, I know the following to be true. I make this declaration in support of Sound Equity's Limited Opposition to the motion ("Sale Motion") filed by Debtor-in-possession JINZHENG GROUP (USA) LLC ("Jinzheng") seeking authorization to sell partially completed residence at 150 E. La Sierra Dr., Arcadia, California 91106 (the "La Sierra").

6. On or around January 15, 2020, Betty Zheng, as the manager of Jinzheng, who I am informed was the managing member of the La Sierra Borrower executed various loan documents to memorialize an agreement between Sound Equity and the La Sierra Borrower in which Sound Equity agreed to loan the La Sierra Borrower up to $2,340,000 (the "Loan") to acquire and complete construction on the residential property located at La Sierra.

7. Among other documents, the loan documents include the following: (1) a "Promissory Not Secured by Deed of Trust" (the "Note"); (2) a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" (the "DOT"); and (3) a "Borrower's Certification." A true and correct copy of all of the

documents executed in connection with the Loan is attached hereto as **Exhibit A**. The documents are collectively referred to herein as the "Loan Documents."

8.     The Note provided for an initial advance of $593,262 followed by additional advances for construction to be paid not more than once a month to reimburse the La Sierra Borrower for costs incurred during construction. *See* **Exhibit A.**

9.     Between January 2020 and December 21, 2021, the La Sierra Borrower took out nine draws on the Loan, borrowing a total of $1,551,663. Attached hereto as **Exhibit B** is a true and correct copy of a "Loan Master Report dated June 23, 2022 (the "Loan) which includes a ledger listing the dates of all principal funded on the Loan.

10.     This Loan Master Report, which was prepared shortly after Sound Equity received notice of this bankruptcy, shows that between September 30, 2022 and December 14, 2022 late fees of $1,051.01 were charged to the Loan under the terms of the Note. *See* **Exhibit B.**

11.     The Loan Master shows that Sound Equity incurred fees and costs of $16,856.84 pursuing a foreclosure sale of the La Sierra prior to receiving notice of this proceeding. *See* **Exhibit B.**

12.     The Loan Master shows that when the La Sierra Borrower stopped making payments on the Loan, $367.29 was being held in a reserve account. *See* **Exhibit B.**

13.     As construction was not complete when the loan initially matured and the La Sierra Borrower was current on its interest payments, on February 1, 2021, Sound Equity agreed to extend the maturity date of the Loan to August 1, 2021. A true and correct of the "Loan Modification Agreement [Extension of Maturity Date]" executed by Zheng on January 15, 2021 on behalf of the La Sierra Borrower is attached hereto as **Exhibit C.**

3

14.     On August 1, 2021, the maturity date was then further extended to August 1, 2022. A true and correct of the "Loan Modification Agreement [Extension of Maturity Date]" executed by Zheng on August 10, 2021 on behalf of the La Sierra Borrower is attached hereto as **Exhibit D.**

15.     Jinzheng drew down $93,600 on the Loan on October 1, 2021; $37,555 on October 25, 2021, and $133,707.70 on December 21, 2021. *See* **Exhibit B.** Sound Equity is still in the process of assessing the accuracy of representations made by Jinzheng and the La Sierra Borrower in connection with these draws.

16.     Prior to July 20, 2022, Sound Equity incurred attorney fees and costs of $7,110 opposing Jinzheng's motion to transfer La Sierra to this bankruptcy estate.

17.     Attached hereto as **Exhibit E** is a true and correct ledger show all interest charged to the Loan from November 30, 2021 to the present.

18.     On July 20, 2022, Sound Equity's lien against the had a value of $1,795,547.05. This included the following amounts:

| | |
|---|---|
| Principal Balance | $1,551,633.59 |
| Note Rate 12/1/2021-7/20/2022 | $89,226.96 |
| Default Rate 1/1/2022-7/20/2022 | $130,035.95 |
| Late Fees Unpaid to 12/15/2021 | $1,051.01 |
| Foreclosure Fees & Costs | $16,856.84 |
| Legal Fees | $7,110.00 |
| Suspense Balance | ($367.29) |
| **TOTAL** | **$1,795,547.05** |

19.     This amount includes $89,226.96 in interest accruing at a rate of 8.99% for the period December 1, 2021 to the present, plus an additional $130,035.95 charged to the Loan for interest at the default rate per month for the period January 1, 2022 to July 20, 2022. This additional amount of $130,035.95

represents the difference between interest at the default rate and the non-default rate.

20.    No interest was charged to the Loan prior to December 1, 2021 as the La Sierra Borrower was current on its interest only payments.  Interest at the default rate was charged to the loan after January 1, 2022 as the last payment received on the Loan was a partial payment of $367.29 received January 6, 2022. The last regular payment received on the Loan was $27,909.31 received on October 1, 2021. *See* **Exhibits B and E.**

21.    For the period July 21, 2022 to present, interest of $39,910.17 accrued on the Loan at the standard rate of 8.99% per annum, and additional interest of $65,988.39 accrued on the Loan at the default rate per month.   The additional amount of $65,988.39 represents the difference between the default rate and the non-default rate. *See* **Exhibit E.**

22.    I understand that as of the date of this declaration, Sound Equity has incurred attorneys fees and costs of $16,540 after July 21, 2022 in connection with this proceeding, and that Sound Equity anticipates incurring an additional $4,000 in attorney fees and costs in responding to the Sale Motion.


Executed this 1st day of November 2022 in Wildomar, California.

_____
KEN HANSEN

DECLARATION OF KEN HANSEN

# INDEX OF EXHIBITS

**DECLARATION OF KEN HANSEN** ................................................................................................................. **1**

Ex A- Loan Documents ....................................................................................................................... 8

Ex B- Loan Master Report ................................................................................................................. 99

Ex C- 2021-02-01 Arcadia- Loan Modification Agreement / Extension ........................................ 103

Ex D- 2021-08-01 La Sierra - Loan Modification Agreement / Extension ..................................... 107

Ex E- 2022-11-01 Interest Itemization ........................................................................................... 110

# EXHIBIT A



**NORTH AMERICAN TITLE COMPANY**

3090 Bristol St., Suite 190
Costa Mesa, CA 92626
Phone: 949-419-9400
Fax: 800-464-6282

Sound Equity Inc.
929 108th Ave., NE, Suite 1030
Bellevue, WA 98004

| | |
|---|---|
| Date: | January 22, 2020 |
| Escrow No.: | 95004-1651744 |
| Loan: | 20010794 |
| Borrower: | 150 La Sierra, LLC, a California limited liability company |
| Property: | 150 East La Sierra Drive, Arcadia, CA 91006 |

In connection with the above referenced loan, we are enclosing the following documents:

(x) Executed Loan Documents
(x) Original Note and 1 Certified copy
(x) Certified Copy of Deed of Trust - original forwarded to Title Company
(x) Certified Copy of Signed Escrow Instructions
(x) Certified Copy of Grant Deed correcting vesting

Please do not hesitate to contact our office **immediately if there is anything else needed prior to funding.**

Thank you for your cooperation and assistance in closing this escrow.

Sincerely,
North American Title Company, Inc.

Orrine Gray
Escrow Officer Np

Encls. (as stated)

**Unidentifiable Transactions:  Failure to include Escrow number and/or Order number may cause a delay in posting of loan proceeds and recording of this transaction. North American Title Company, Inc. will not be responsible for any additional interest or fees that may be assesssed as a result of incomplete or incorrect wire information.  Wire transactions that are received and cannot be identified may be returned to the ABA and account number from which they were received within 2 business days after receipt.**

Letter Funding-Lender refi Select-SoCal                                                    95004-1651744

Hansen Decl. Ex A
Page 2

# EXHIBIT A

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

 **Sound Equity Inc**
929 108th Ave. NE, Suite 1030
Bellevue, WA  98004
THE ASSURED ALTERNATIVE.   Phone (888) 490-4450  Fax (425) 945-0101

## LENDER'S CLOSING INSTRUCTIONS FOR ESCROW

North American Title Company                              January 15, 2020
Escrow No.   95004-1651744                        Loan Number:  20010794
Escrow Officer: Orrine Gray

RE:          150 E La Sierra Dr, ARCADIA, CA  91006
Lender:      Sound Equity Inc, a Delaware Corporation

Borrower:    Jianqing Yang
             150 La Sierra, LLC
             100 East Huntington Drive #207 , Alhambra, CA  91801

Dear Orrine Gray,

Please accept and acknowledge this letter as closing instructions on the property at 150 E La Sierra Dr, ARCADIA, CA  91006.

**Sound Equity has selected <u>Sound Equity Inc, a Delaware Corporation, ISAOA</u> as the investor for the note secured by a first trust deed on the above referenced property ("Lender").** Lender may provide additional instructions. In the event of conflicting instructions from Lender, please contact Sound Equity promptly for direction.

**<u>TITLE INSURANCE REQUIREMENTS</u>:**

- Provide Alta Title Insurance Policy insuring $2,925,000.00 (125% of our NOTE amount) and showing no existing liens or encumbrances.
- Settlement Agent shall not disburse Lender's funds until:
  - Mortgagee's title insurance policy must insure that Lender's security instrument constitutes a valid 1st lien on the borrower's estate or interest identified in the title insurance Title Order Number 95004-1651744.
  - Vesting to read: <u>150 La Sierra, LLC, a[n] California Limited Liability Company</u>. Notify Sound Equity if vesting is incorrect or uninsurable.
  - Issue ALTA Endorsements: 8.1 (Environmental Lien), 9-06 (Restriction, Encroachments, Minerals), 14-06 (Future Advances) and 22-06 (Location)
- Issue a closing Protection Letter: <u>Sound Equity Inc, a Delaware Corporation, ISAOA</u>
- Taxes to be paid CURRENT
- Title Supplement/Commitment assuring <u>Sound Equity Inc, a Delaware Corporation, ISAOA</u>, 1st Position Deed of Trust.
- Prior to the issuance of the final title policy:
  - Confirm that all liens and encumbrances, including any existing encumbrances, mortgages and/or deeds of trust recorded against the property are either cleared prior to closing or will be paid through the closing of escrow
  - All exceptions of record referencing covenants, conditions, and restrictions or easements must be accompanied with instrument recordation information.

Hansen Decl. Ex A
Page 4

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## EXECUTION OF DOCUMENTS:

- Borrower(s) to sign all documents exactly as his/her name appears on the loan documents. **No white-out permitted.** All Powers of Attorney must be provided to and approved in advance.
- Docs cannot be signed and notarized before January 15, 2020.
- Signing Agent to complete USA PATRIOT ACT INFORMATION FORM entirely.  Must request two forms of ID from the list of identifiable documents.
- Copy of fully executed, and notarized where required, loan documents as provided by Sound Equity Inc.  Overnight or courier originals to lender as specified, or to Sound Equity, 929 108th Ave. NE, Suite 1030, Bellevue, WA  98004 if not otherwise specified.

## LOAN TERMS:

See the loan summary below and please contact our office for questions.

| Loan Terms | Amount |
|---|---|
| Note Amount | $2,340,000.00 |
| Lender Funds at Closing | **$519,029.03** |
| Rehab Holdback (If any, included in loan amount) | $1,610,000.00 |
| Fees/Interest Reserves Holdback | $136,738.00 |
| Term (Months) | 12 months |
| Transaction Type | New Construction |
| Interest Rate | 8.99% |
| Payment | $5,468.92 |
| First Payment Date: | 03/01/2020 |
| Maturity Date: | 02/01/2021 |
| Origination Fee to Sound Equity Inc | $67,275.00 |
| Payoff Fee (collected at loan payoff; outside of escrow) | $.00 |
| Interest from 01/22/20 to 1st pmt date | $1,822.97 |
| Processing/Underwriting/Doc Prep fees | $5,000.00 |
| Construction/rehab draw fees | $.00 |
| FCI Servicing fee | $135.00 |
| Appraisal/Valuation fee to Sound Equity | $.00 |

## HUD-1 SETTLEMENT STATEMENT:

- Any taxes / liens/ judgements due must reflect being paid in Settlement Statement.
- The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements in these instructions and any amended instructions provided. Email a certified final  HUD-1 to claraw@soundequity.com.

## HAZARD INSURANCE:

Hansen Decl. Ex A
Page 5

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

Evidence of insurance is required prior to funding. (I have already requested evidence of Insurance)

Coverage must be equal to Construction Budget amount or the full replacement value of the property improvements, and must extend for a term of at least one (1) year.

- Flood insurance might be required if property is in a flood zone.

### SETTLEMENT AGENT:

- Notify Sound Equity in advance of funding of any recent escrows, closings or changes of title.
- Notify Sound Equity of any seller concessions or seller credits to buyer in excess of $5000.

- Provide Copy of escrow E & O insurance policy.
- Copy Borrower's DL / ID (s) and completed Statement of information.
- Provide Certified Copies of the following documents:
  - Escrow instructions and amendments (executed by all required parties)
  - All demands pertaining to this loan (if applicable)
  - Executed Settlement Statement/HUD by all parties
  - Estimated settlement statement
  - Deposit receipts (if applicable)
  - Bank approved HUD (if applicable)
  - Short Sale Approvals executed by all required parties (if applicable)
  - Funds required to close escrow (if applicable)
  - Grant/Warranty Deed and/or Quit Claim Deed (if applicable)
  - Interspousal Transfer Deed (if applicable)
- Loan proceeds will only be wired directly to Title Company.
- Additional conditions may be required.

### AFTER FUNDING

- Request conformed copies of DOT, Grant Deed, any Assignment of Deed of Trust and Interspousal (if applicable)
- Email final settlement statement, recorded Deed of Trust, Grant Deed, Assignment of Deed of Trust, Interspousal (as applicable) within 24 hours of recorded date to claraw@soundequity.com.
- Overnight final settlement statement and Sound Equity compensation to Sound Equity Inc., 929 108th Ave. NE, Suite 1030, Bellevue, WA 98004.

North American Title Company hereby approved of the foregoing instructions and agrees to act strictly in accordance therewith.

North American Title Company

By: _____

Name: Orrine Gray



Hansen Decl. Ex A
Page 6

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

 **Sound Equity Inc**
929 108th Ave. NE, Suite 1030
Bellevue, WA 98004
Phone (888) 490-4450
THE ASSURED ALTERNATIVE. www.SoundEquity.com

## LENDER/BROKER CLOSING INSTRUCTIONS FOR TITLE

David Neal                                           January 15, 2020
North American Title Company

RE: 150 E La Sierra Dr, ARCADIA, CA 91006
Title Order Number: 95004-1651744

Dear David Neal,

Sound Equity Inc, a Delaware Corporation, ISAOA is the investor/lender for the note secured by a first trust deed on the above referenced property ("Lender"). Sound Equity is the loan broker for the borrower.

Such note is in the amount of $2,340,000.00. This letter constitutes our recording instructions and shall supersede any other instructions previously given to you. You are instructed to have in your possession prior to closing and subsequently you shall deliver to Lender immediately following the closing the following items:

1. A confirmed copy of the original recorded Grant/Warranty Deed (as applicable).
2. A confirmed copy of the original recorded Interspousal Transfer Deed (if applicable).
3. A confirmed copy of the original recorded Deed of Trust.

Prior to disbursing the funds, you are hereby instructed to:

1. Notify Sound Equity of any recent escrows, closings or changes of title;

2. Issue the Lender's ALTA loan policy (issued by North American Title Company) for the above referenced property provided that such Lender's title policy conforms with the following:

| | |
|---|---|
| Insurance Amount: | $2,925,000.00 |
| Policy: | ALTA Extended Loan Policy |
| Insured: | Sound Equity Inc, a Delaware Corporation, ISAOA |
| Endorsements: | 8.1 (Environmental Lien), 9-06 (Restriction, Encroachments, Minerals) and 22-06 (Location). |
| Vestee: | 150 La Sierra, LLC, a[n] California Limited Liability Company |
| Title Exceptions: | None, except items # 1 through 7*** PAID CURRENT** as noted on associated preliminary report. All title exceptions other than these shall be removed prior to closing. |



Hansen Decl. Ex A
Page 7

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

Property taxes that are delinquent shall be
paid prior to closing.

3.  Prior to the issuance of the final title policy:

a.  Confirm that all liens and encumbrances, including any existing encumbrances,
mortgages and/or deeds of trust recorded against the property are either
cleared prior to closing or will be paid through the closing of escrow

b.  All exceptions of record referencing covenants, conditions, and restrictions or
easements must be accompanied with instrument recordation information.

Sound Equity Inc will wire funds in the amount of **$519,029.03** to North American Title
Company, unless you instruct otherwise.

Such funds are to be disbursed only upon full compliance with each of the above referenced
instructions.  You are not authorized to record this transaction until you are in a position to
comply with these instructions and any other instructions from Lender.  Please indicate your
acceptance of these instructions by signing this letter where indicated below and either email
an executed copy of this letter to claraw@soundequity.com.

North American Title Company hereby approved of the foregoing recording instructions and
agrees to act strictly in accordance therewith.

North American Title Company

By: _____
David Near
Title Officer

Hansen Decl. Ex A
Page 8

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## PROMISSORY NOTE SECURED BY DEED OF TRUST

U.S. $2,340,000.00                                                                January 15, 2020

FOR VALUE RECEIVED, 150 La Sierra, LLC, a[n] California Limited Liability Company ("Maker"), hereby promises to pay to the order of Sound Equity Inc, a Delaware Corporation ("Lender"), at the office of Lender located at 989 112th Ave NE, Suite 207, Bellevue, WA 98004, or such other place as holder may from time to time specify, the principal sum of $2,340,000.00, together with interest on the principal balance outstanding hereunder, from (and including) the date hereof until (but not including) the date of payment, at the interest rate specified below, in accordance with the terms and conditions herein.

1.    PURPOSE OF THE LOAN.

(a)    Purpose of the Loan.  The purpose of the Loan is to provide Borrower with acquisition, refinance and/or construction financing in order to: (i) purchase certain real property and improvements encumbered by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Security Instrument") executed by Borrower in favor of Lender in connection with this Note; and perform certain renovations and construction activities to the residential property located thereon (such renovations and construction activities shall be hereinafter referred to as the "Improvements") or (ii) utilize funds for a business purpose, as permitted by Lender.  The real property and improvements encumbered by the Security Instrument shall be hereinafter referred to as the "Property".

(b)    Initial Advance.  Upon the closing of the Loan, the initial funding under the Loan for the Borrower's acquisition or refinance of the Property shall be limited to the amount of $593,262.00.

(c)    Funding for Construction of the Improvements.  Following the initial advance of the Loan as set forth in Section 1(b) above (and subject to the terms and conditions of this Note), the remaining principal balance of the Loan, if any, (such total remaining amount, the "Improvement Advance Amount") shall be made available to Borrower for the payment, or reimbursement of payments, of certain of Borrower's costs to perform the Improvements.  Borrower will receive each advance in trust for the purpose of paying only actual costs for which the advance is made and will utilize the funds advanced for no other purpose.

(d)    Required Documents.  Following the initial advance of the Loan as set forth in Section 1(b) above, prior to any subsequent disbursements of the proceeds of the Loan for the renovation and/or construction of the Improvements, if any, Borrower shall execute and deliver, or cause to be executed and delivered to Lender such documents and items as Lender shall request (which, when executed and delivered to Lender shall be deemed Loan Documents hereunder), all in form and substance acceptable to Lender in Lender's sole discretion.  Such documents and items may include, but not be limited to, the following:

(i)    Construction Contract.  The construction contract (the Construction Contract) for the Property and Improvements, executed by and between Borrower and a California licensed general contractor (Contractor), which Contractor shall be acceptable to Lender to participate in the construction of the Improvements in accordance with the plans and specifications and architectural and/or engineering drawings for the Improvements (collectively, the Plans and Specifications) all in form and content reasonably acceptable to Lender.

(ii)    Contractor's    and    Subcontractor's License/Insurance.    Copies of Contractor's licenses and any other

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

subcontractor's (as may be required by Lender), together with proof of Contractor's worker's compensation, public liability insurance coverage, and such other insurance coverage as may be required by Lender.

(iii)    Collateral Assignment of Contracts and Documents.  A collateral assignment of all necessary contracts related to the Improvements (including without limitation the Construction Contract, any architect's contract, any engineer's contract, and the Plans and Specifications), from Borrower to Lender assigning any and all rights, title and interest which Borrower shall have under the same.

(iv)    Plans and Specifications.  One (1) set of the approved site plan and the complete and detailed Plans and Specifications which Borrower shall have approved in writing, including any changes or modifications thereto to the date of receipt by Lender, and any and all construction contracts or other documents in the possession or control of Borrower or any contractor relating to the construction of the Improvements.  The sets must be stamped with all required approvals from all applicable governmental authorities; certified under seal and signed by Borrower and Contractor to be true copies of the Plans and Specifications and approved by all authorities and agencies having jurisdiction thereon.  No changes shall be made thereafter in the Plans and Specifications without the prior written consent of the Lender, except as set forth herein; and provided, however, that changes to the Plans and Specifications which will not adversely affect the value of the Improvements shall be permitted without the prior written consent of the Lender.

(v)    Notice of Commencement.  A notice of commencement (or its equivalent) meeting such requirements as Lender may require, including without limitation requirements with respect execution, recordation, posting, naming of additional parties for notices, and duration.

(vi)    Project/ Budget.  A detailed and itemized construction and non-construction cost (soft costs) breakdown on Lender approved forms of all costs including specification of which items are to be funded from sources other than the Loan (the *Budget*). The aggregate contract price for constructing and equipping the Improvements in accordance with the Plans and Specifications and representations made to Lender and all other costs of the Improvements being financed with the Loan proceeds and pursuant to the terms and conditions hereof shall not without Lender's prior written approval, exceed the amount allocated and described in the Budget.  Borrower shall furnish such additional supporting documentation for the cost of the items described in the Budget as may be required by Lender.

(vii)    Lien Waivers.  Original waivers of lien from Contractor and each and every subcontractor, laborer or material supplier performing services or supplying material to the Property within the past ninety (90) days and an affidavit listing all of said entities and certifying that no work has been performed and no materials have been supplied for which the costs remain unpaid prior to closing.

(e)    Draw Requests.

(i)    Advances shall be made (i) not more frequently than once in any calendar month, (ii) in a minimum amount that is not less than $10,000.00 of the Improvement Advance Amount (unless otherwise approved by Lender in Lender's sole discretion), and (iii) in an amount not to exceed unreimbursed costs actually previously paid by Borrower or actually incurred by Borrower that are to be paid from proceeds of the Loan set forth in the Budget.

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

(ii)    Notwithstanding the foregoing Section 1(e)(i), the final advance (*Final Advance*) under this Section 1 shall not (i) be less than $20,000.00; and (ii) shall not be less than 20% of the Improvement Advance Amount (whichever is higher); and (iii) shall not be made prior to project completion as described in Section 1(f) below.

(iii)    Each draw shall be based on a draw request signed by Borrower in such form approved by Lender and shall be reviewed by the Lender's construction consultant (the *Consultant*) and, if requested by Lender, signed by Contractor. Each draw request shall contain any written warning required of Lender by applicable local law (e.g., requiring lenders, when making disbursements directly to owners, to give written warning to such owners that to protect themselves from double payments, lien releases from each lienor should be required from the contractor), and shall be supported by such information and documentation (such as paid receipts, invoices, statements of accounts, lien releases, etc.) as Lender may require.

(f)    <u>Final Advance</u>. Lender shall not be obligated to make the Final Advance of the Loan unless the following additional conditions shall have been satisfied, to the extent required by Lender:

(i)    The Consultant shall have certified to Lender that all construction has, and Improvements have, been completed in a good and workmanlike manner, in accordance with applicable requirements of all applicable governmental authorities and substantially in accordance with the Plans and Specifications;

(ii)    To the extent required by applicable governmental authorities for the use and occupancy of the Improvements, all certificates of occupancy and other applicable permits and releases shall have been issued with respect to the Improvements and copies thereof have been furnished to Lender;

(iii)    Lender shall have received a satisfactory final affidavit from the Contractor and full and complete releases of lien from the Contractor and each subcontractor, laborer and materialman and any other party who has supplied labor, materials or services for the construction of the Improvements, or who otherwise might be entitled to claim a contractual, statutory or constitutional lien against the Property with respect to work performed and/on materials supplied in the construction of the Improvements;

(iv)    Lender shall have received a satisfactory endorsement to its title insurance policy;

(v)    Lender has received such other items which Lender may reasonably require to be submitted by Borrower; and

(vi)    All other terms and conditions of this Note and the other Loan Documents required to be met as of the date of the Final Advance of the Loan for hard costs shall have been met to the satisfaction of Lender.

(g)    Advances for Stored Materials.    Notwithstanding anything to the contrary contained herein, no advances will be made for building materials or furnishings that have not yet been incorporated into the Improvements (*Stored Materials*) unless and until: (i) Borrower has good title to the Stored Materials and has furnished satisfactory evidence of such title to Lender, to the extent required by Lender; (ii) the Stored Materials are components in a form ready for incorporation into the Improvements and will be so incorporated within a reasonable period (not to exceed thirty [30] days) from the date of the advance for the Stored Materials; (iii) the Stored Materials are in Borrower's possession and are satisfactorily stored on the Property or at such other location as Lender may approve, in each case with adequate



Sound Equity Inc.

Hansen Decl. Ex A
Page 11

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

safeguards to prevent commingling with materials for other projects; (iv) the Stored Materials are protected and insured against loss, theft and damage in a manner and amount satisfactory to Lender; (v) the Stored Materials have been paid for in full or will be paid for in full from the funds to be advanced; (vi) Lender has or will have upon the payment for the Stored Materials from the advanced funds a perfected, first priority security interest in the Stored Materials; and (vii) all lien rights and claims of the supplier have been released or will be released upon payment with the advanced funds.

(h)    Additional Terms Regarding Advances.  Lender shall not be obligated to make an advance of Loan proceeds until and unless the following additional items shall have been received, complete and/or approved by Lender, as and to the extent required by Lender, prior to the date of the advance:

(i)    A notice of title continuation or endorsement to the title insurance policy with respect to the Loan, showing there has been no change in the status of title and no other exception not theretofore approved by Lender, which endorsement shall have the effect of advancing the effective date of the policy to the date of the advance then being made and increasing the coverage of the policy by an amount equal to the such advance.

(ii)    Evidence acceptable to Lender that all work requiring inspection by any governmental authority having or claiming jurisdiction has been duly inspected and approved by such authority and by any rating or inspection organization, bureau, association or office having or claiming jurisdiction.

(iii)    Evidence, including a report from the Consultant, that all work completed at the time of the application for an advance has been performed in a good and workmanlike manner in accordance with the Plans and Specifications, that all materials and fixtures usually furnished and installed at that stage of construction have been so furnished and installed, that the Improvements can be completed in accordance with the Plans and Specifications, and that the balance of the Loan proceeds then held by Lender and available for advance pursuant to the terms of this Note, together with other funds which Lender determines to be available to Borrower for such purpose, are and will be sufficient to pay the cost of such completion.

(iv)    Borrower shall comply with the Construction Contract Prompt Payment law contained in the California Mechanics Lien Law, California Civil Code, Division 4, Part 6, Sections 8000-9566, et. al. notwithstanding Lender's failure or delay in funding any draw requests or Lender's cessation of funding draw requests in accordance with the terms of this Note.  Borrower hereby agrees to provide all required notices to the Contractor and all lienors providing notices to owner in compliance with California Civil Code, Division 4, Part 6, Sections 8000-9566, et. al. in a timely fashion, and authorizes Lender to provide written notices to the same to the extent such notices are required by law.  Borrower shall also comply with any and all other laws related to prompt payment and provision of notices.

(v)    Borrower shall submit, do, and perform all such other items and actions which Lender may reasonably require.

(i)    Conditions Precedent to All Advances. Lender shall not be obligated to make an advance of Loan proceeds unless the following additional conditions shall have been satisfied or waived in writing by Lender as of the date of each advance:  (i) No lien for the performance of work or supplying of labor, materials or services shall have been filed against the Property and remain unsatisfied or unbonded to the satisfaction of Lender, (ii) no condition or

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

situation shall exist on the Property which, in the reasonable determination of Lender, constitutes a danger to or impairment of the Property or presents a danger or hazard to the public, (iii) all representations and warranties made by Borrower in this Note and the other Loan Documents shall be true and correct on and as of the date of the advance with the same effect as if made on such date, (iv) all terms and conditions of the Loan Documents required to be met as of the date of the applicable advance shall have been met to the satisfaction of Lender, (v) Borrower shall have paid all fees and expenses incurred by Lender and/or Borrower in connection with such advance, including without limitation Lender's administrative fee,  and (vi) no event of default under this Note or any other Loan Document shall have occurred and be continuing.

(j)    Liability of Lender.  Lender shall in no event be responsible or liable to any person other than Borrower for the disbursement of or failure to disburse the Loan proceeds or any part thereof and neither the Contractor, Consultant, nor any subcontractor, laborer or material supplier shall have any right or claim against Lender under this Note or the other Loan Documents.

2.    Stated Interest Rate.  Except as provided in Section 3 below, the principal balance outstanding hereunder shall bear interest, until fully paid, at 8.99% (the "Stated Interest Rate").

3.    Default Interest Rate.  The Default Interest Rate shall be 2.0% per month. The principal balance outstanding hereunder from time to time shall bear interest at the Default Interest Rate from the date of the occurrence of an Event of Default (as hereinafter defined) hereunder until the date on which the principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, are paid in full.

4.    Payments.  This Note shall be payable as follows:

(a)    Interest.  Accrued and unpaid interest at the Stated Interest Rate or, to the extent applicable, the Default Interest Rate, upon the principal balance outstanding hereunder, shall be due and payable on 3/1/2020, and on the first (1st) day of each month thereafter.  If the payment date above in a given month shall fall on a date other than a Business Day, then the applicable payment shall be due on the next, subsequent Business Day.  As used herein, "Business Day" shall mean a single calendar day that is not a Saturday, Sunday, or legal holiday.  Notwithstanding that interest shall be due on a Business Day, the interest due and payable each month shall be the aggregate amount of interest accrued for all calendar days in the applicable month.

(b)    Principal. The principal balance outstanding hereunder, if not sooner paid as provided herein, shall be due and payable on 2/1/2021 (the "Maturity Date").

5.    Application and Place of Payments.  Payments received by Lender with respect to the indebtedness evidenced hereby shall be applied in such order and manner as Lender in its sole and absolute discretion may elect.  Unless Lender otherwise elects, payments received by Lender shall be applied first to any applicable Additional Sums (such as the Late Charges or NSF Charges defined below), next to accrued and unpaid interest, and the remainder to the principal balance then outstanding hereunder.  Payments hereunder shall be made by check from Maker to Lender, or in such other manner as Lender may specify to Maker in writing from time to time.   Payments shall be made in United States dollars.

6.    Late Charges. If Lender has not received the full amount of any payment of unpaid principal or interest or any other amount due hereunder within ten (10) calendar days of its due date under this Note, Maker shall pay



Sound Equity Inc.

Hansen Decl. Ex A
Page 13

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

to Lender a late charge in the amount of 5% of the amount of such payment. In the event the balance of the note is not paid on or before 15 calendar days from its Maturity Date under this Note, in addition to interest at the Default Interest Rate specified in Section 3, Maker shall pay to Lender a late charge equal to 2% of the balance of all unpaid principal and interest.

7.    NSF Charges.  If Maker tenders to Lender a check, draft or other item, that is dishonored by reason of insufficient funds and Lender incurs a bank charge as a result thereof, Maker shall reimburse Maker for such charge.

8.    Optional Prepayments.  Payments of principal may be made at any time, or from time to time, in whole or in part, without penalty or premium, provided that all previously matured interest, and other charges accrued to the date of prepayment are also paid in full. Notwithstanding any partial prepayment of principal hereof, there will be no change in the due date or amount of scheduled payments due hereunder unless Lender agrees in writing to such change.

9.    Collateral; Guaranty.  The obligations of Maker to Lender pursuant to this Note shall be secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing in the form approved by Lender (the "Deed of Trust"). Additionally, the obligations of Maker to Lender pursuant to this Note shall be guaranteed by Jianqing Yang (collectively, "Guarantor") in accordance with a Guaranty in the form approved by Lender (the "Guaranty").

10.    Events of Default; Acceleration.  The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

(a)    Nonpayment of principal, interest or other amounts when the same shall become due and payable hereunder;

(b)    The failure of Maker to comply with any provision of this Note;

(c)    The failure of Guarantor to comply with any provision of the Guaranty;

(d)    The death, incapacity, dissolution, winding-up or termination, as applicable, of the existence of Maker or Guarantor;

(e)    The calling of a meeting of the creditors of Maker or Guarantor;

(f)    The making by Maker or Guarantor of an assignment for the benefit of its respective creditors;

(g)    The appointment of (or application for appointment of) a receiver of Maker or Guarantor, or the involuntary filing against or voluntary filing by Maker or Guarantor of a petition or application for relief under federal bankruptcy law or any similar state or federal law, or the issuance of any writ of garnishment, execution or attachment for service with respect to Maker or Guarantor or any property of Maker or Guarantor; or

(h)    Any statement, representation or warranty contained herein, in the Guaranty or any related document shall be false.

Upon the occurrence of an Event of Default, the entire principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, at the election of Lender, shall become immediately due and payable, without any notice to Maker.

11.    Cross-Default.  Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower, Affiliate of Borrower or



Sound Equity Inc.

Hansen Decl. Ex A
Page 14

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

Guarantor to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note.

      12.    <u>Contracted For Interest</u>.

      (a)    Maker agrees to pay an effective contracted for rate of interest equal to the rate of interest resulting from all interest payable as provided in this Note, plus the additional rate of interest resulting from the any Additional Sums. The Additional Sums shall consist of all fees, charges, goods, things in action or any other sums or things of value (other than interest payable as provided in this Note) paid or payable by Maker, whether pursuant to this Note or any other document or instrument in any way pertaining to this lending transaction, that may be deemed to be interest for the purpose of any law of the State of California that may limit the maximum amount of interest to be charged with respect to this lending transaction. The Additional Sums shall be deemed to be interest for the purposes of any such law only.

      13.    <u>Waivers</u>. Except as set forth in this Note, to the extent permitted by applicable law, Maker, and each person who is or may become liable hereunder, severally waive and agree not to assert: (a) any exemption rights; (b) demand, diligence, grace, presentment for payment, protest, notice of nonpayment, nonperformance, extension, dishonor, maturity, protest and default; and (c) recourse to guaranty or suretyship defenses (including the right to require Lender to bring an action on this Note). Lender may extend the time for payment of or renew this Note, release collateral as security for the indebtedness evidenced hereby or release any party from liability hereunder, and any such extension, renewal, release or other indulgence shall not alter or diminish the liability of Maker, except to the extent expressly set forth in a writing evidencing or constituting such extension, renewal, release or other indulgence.

      14.    <u>Costs of Collection</u>. Maker agrees to pay all costs of collection, including, without limitation, attorneys' fees, whether or not suit is filed, and all costs of suit and preparation for suit (whether at trial or appellate level), in the event any payment of principal, interest or other amount is not paid when due, or in case it becomes necessary to protect any collateral which is security for any obligation of Maker hereunder, or to exercise any other right or remedy hereunder, or in the event Lender is made a party to any litigation because of the existence of this Note, or any other related documents, or if at any time Lender should incur any attorneys' fees in any proceeding under any federal bankruptcy law (or any similar state or federal law) in connection with the obligations evidenced hereby. In the event of any court proceeding, court costs and attorneys' fees shall be set by the court and not by the jury and shall be included in any judgment obtained by Lender.

      15.    <u>No Waiver</u>. No delay or failure of Lender in exercising any right hereunder shall affect such right, nor shall any single or partial exercise of any right preclude further exercise thereof.

      16.    <u>Governing Law</u>. This Note shall be construed in accordance with and governed by the laws of the State of California, without regard to the choice of law rules of the State of California.

      17.    <u>Time of Essence</u>. Time is of the essence of this Note and each and every provision hereof.

      18.    <u>Conflicts; Inconsistency</u>. In the event of any conflict or inconsistency between the provisions of this Note and the provisions of any one or more of the other documents executed in connection with this transaction, the provisions of this Note shall govern and control to the extent necessary to resolve such conflict or inconsistency.

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

19.    Amendments.  No amendment, modification, change, waiver, release or discharge hereof and hereunder shall be effective unless evidenced by an instrument in writing and signed by the party against whom enforcement is sought.

20.    Severability.  The invalidity of any provision of this Note or portion of a provision shall not affect the validity of any other provision of this Note or the remaining portion of the applicable provision.

21.    Binding Nature.  The provisions of this Note shall be binding upon and inure to the benefit of Maker and Lender and their respective heirs, personal representatives, successors and assigns, as applicable.

22.    Notices.  Except as otherwise expressly provided herein, all notices, requests, demands and other communications provided for under the Loan Documents shall be in writing and shall be (a) personally delivered, (b) sent by first class United States mail, (c) sent by overnight courier of national reputation, or (d) transmitted by facsimile in each case delivered or sent to the party to whom notice is being given to the business address, or facsimile number, set forth in the preamble to this Agreement, or, as to each party, at such other business address or facsimile number as it may hereafter designate in writing to the other party pursuant to the terms of this Section. All such notices, requests, demands and other communications shall be deemed to be an authenticated record communicated or given on (a) the date received if personally delivered, (b) when deposited in the mail if delivered by mail, (c) the date delivered to the courier if delivered by overnight courier, or (d) the date of transmission if sent by facsimile, except that notices or requests delivered to the Lender pursuant to any of the provisions of Section shall not be effective until received by the Lender.

23.    Construction.  The language of this Note shall be construed as a whole according to its fair meaning.  The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to."  No inference in favor of, or against, Maker or Lender shall be drawn from the fact that one party has drafted any portion hereof. The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be applied to the interpretation of this Note.

24.    Commercial Use.  Each of the undersigned represents and acknowledges that the funds loaned by the Lender are solely for commercial, business, and investment purposes and not for household or consumer purposes.

25.    Joint and Several Obligations.  Each of the obligations and promises in this Note are binding jointly and severally on each of the undersigned.  Each of the undersigned sign as makers of this Note and not guarantors.

Dated as of the date first set forth above.

MAKER: 150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
       Betty Zheng, Its Manager



Sound Equity Inc.

Hansen Decl. Ex A
Page 16

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

# PROMISSORY NOTE SECURED BY DEED OF TRUST

U.S. $2,340,000.00                                                January 15, 2020

FOR VALUE RECEIVED, 150 La Sierra, LLC, a[n] California Limited Liability Company ("Maker"), hereby promises to pay to the order of Sound Equity Inc, a Delaware Corporation ("Lender"), at the office of Lender located at 989 112th Ave NE, Suite 207, Bellevue, WA 98004, or such other place as holder may from time to time specify, the principal sum of $2,340,000.00, together with interest on the principal balance outstanding hereunder, from (and including) the date hereof until (but not including) the date of payment, at the interest rate specified below, in accordance with the terms and conditions herein.

1. PURPOSE OF THE LOAN.

(a) Purpose of the Loan. The purpose of the Loan is to provide Borrower with acquisition, refinance and/or construction financing in order to: (i) purchase certain real property and improvements encumbered by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Security Instrument") executed by Borrower in favor of Lender in connection with this Note; and perform certain renovations and construction activities to the residential property located thereon (such renovations and construction activities shall be hereinafter referred to as the "Improvements") or (ii) utilize funds for a business purpose, as permitted by Lender. The real property and improvements encumbered by the Security Instrument shall be hereinafter referred to as the "Property".

(b) Initial Advance. Upon the closing of the Loan, the initial funding under the Loan for the Borrower's acquisition or refinance of the Property shall be limited to the amount of $593,262.00.

(c) Funding for Construction of the Improvements. Following the initial advance of the Loan as set forth in Section 1(b) above (and subject to the terms and conditions of this Note), the remaining principal balance of the Loan, if any, (such total remaining amount, the "Improvement Advance Amount") shall be made available to Borrower for the payment, or reimbursement of payments, of certain of Borrower's costs to perform the Improvements. Borrower will receive each advance in trust for the purpose of paying only actual costs for which the advance is made and will utilize the funds advanced for no other purpose.

(d) Required Documents. Following the initial advance of the Loan as set forth in Section 1(b) above, prior to any subsequent disbursements of the proceeds of the Loan for the renovation and/or construction of the Improvements, if any, Borrower shall execute and deliver, or cause to be executed and delivered to Lender such documents and items as Lender shall request (which, when executed and delivered to Lender shall be deemed Loan Documents hereunder), all in form and substance acceptable to Lender in Lender's sole discretion. Such documents and items may include, but not be limited to, the following:

(i) Construction Contract. The construction contract (the Construction Contract) for the Property and Improvements, executed by and between Borrower and a California licensed general contractor (Contractor), which contractor shall be acceptable to Lender to participate in the construction of the Improvements in accordance with the plans and specifications and architectural and/or engineering drawings for the Improvements (collectively, the Plans and Specifications), all in form and content reasonably acceptable to Lender.

(ii) Contractor's and Subcontractor's License/Insurance. Copies of Contractor's licenses and any other

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

subcontractor's (as may be required by Lender), together with proof of Contractor's worker's compensation, public liability insurance coverage, and such other insurance coverage as may be required by Lender.

(iii)    <u>Collateral Assignment of Contracts and Documents</u>. A collateral assignment of all necessary contracts related to the Improvements (including without limitation the Construction Contract, any architect's contract, any engineer's contract, and the Plans and Specifications), from Borrower to Lender assigning any and all rights, title and interest which Borrower shall have under the same.

(iv)    <u>Plans and Specifications</u>. One (1) set of the approved site plan and the complete and detailed Plans and Specifications which Borrower shall have approved in writing, including any changes or modifications thereto to the date of receipt by Lender, and any and all construction contracts or other documents in the possession or control of Borrower or any contractor relating to the construction of the Improvements. The sets must be stamped with all required approvals from all applicable governmental authorities; certified under seal and signed by Borrower and Contractor to be true copies of the Plans and Specifications and approved by all authorities and agencies having jurisdiction thereon. No changes shall be made thereafter in the Plans and Specifications without the prior written consent of the Lender, except as set forth herein; and provided, however, that changes to the Plans and Specifications which will not adversely affect the value of the Improvements shall be permitted without the prior written consent of the Lender.

(v)    <u>Notice of Commencement</u>. A notice of commencement (or its equivalent) meeting such requirements as Lender may require, including without limitation requirements with respect execution, recordation, posting, naming of additional parties for notices, and duration.

(vi)    <u>Project/ Budget</u>. A detailed and itemized construction and non-construction cost (soft costs) breakdown on Lender approved forms of all costs including specification of which items are to be funded from sources other than the Loan (the *Budget*). The aggregate contract price for constructing and equipping the Improvements in accordance with the Plans and Specifications and representations made to Lender and all other costs of the Improvements being financed with the Loan proceeds and pursuant to the terms and conditions hereof shall not without Lender's prior written approval, exceed the amount allocated and described in the Budget. Borrower shall furnish such additional supporting documentation for the cost of the items described in the Budget as may be required by Lender.

(vii)    <u>Lien Waivers</u>. Original waivers of lien from Contractor and each and every subcontractor, laborer or material supplier performing services or supplying material to the Property within the past ninety (90) days and an affidavit listing all of said entities and certifying that no work has been performed and no materials have been supplied for which the costs remain unpaid prior to closing.

(e)    <u>Draw Requests</u>.

(i)    Advances shall be made (i) not more frequently than once in any calendar month, (ii) in a minimum amount that is not less than $10,000.00 of the Improvement Advance Amount (unless otherwise approved by Lender in Lender's sole discretion), and (iii) in an amount not to exceed unreimbursed costs actually previously paid by Borrower or actually incurred by Borrower that are to be paid from proceeds of the Loan set forth in the Budget.

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

(ii)     Notwithstanding the foregoing Section 1(e)(i), the final advance (*Final Advance*) under this Section 1 shall not (i) be less than $20,000.00; and (ii) shall not be less than 20% of the Improvement Advance Amount (whichever is higher); and (iii) shall not be made prior to project completion as described in Section 1(f) below.

(iii)     Each draw shall be based on a draw request signed by Borrower in such form approved by Lender and shall be reviewed by the Lender's construction consultant (the *Consultant*) and, if requested by Lender, signed by Contractor. Each draw request shall contain any written warning required of Lender by applicable local law (e.g., requiring lenders, when making disbursements directly to owners, to give written warning to such owners that to protect themselves from double payments, lien releases from each lienor should be required from the contractor), and shall be supported by such information and documentation (such as paid receipts, invoices, statements of accounts, lien releases, etc.) as Lender may require.

(f)     <u>Final Advance</u>. Lender shall not be obligated to make the Final Advance of the Loan unless the following additional conditions shall have been satisfied, to the extent required by Lender:

(i)     The Consultant shall have certified to Lender that all construction has, and Improvements have, been completed in a good and workmanlike manner, in accordance with applicable requirements of all applicable governmental authorities and substantially in accordance with the Plans and Specifications;

(ii)     To the extent required by applicable governmental authorities for the use and occupancy of the Improvements, all certificates of occupancy and other applicable permits and releases shall have been issued with respect to the Improvements and copies thereof have been furnished to Lender;

(iii)     Lender shall have received a satisfactory final affidavit from the Contractor and full and complete releases of lien from the Contractor and each subcontractor, laborer and materialman and any other party who has supplied labor, materials or services for the construction of the Improvements, or who otherwise might be entitled to claim a contractual, statutory or constitutional lien against the Property with respect to work performed and/on materials supplied in the construction of the Improvements;

(iv)     Lender shall have received a satisfactory endorsement to its title insurance policy;

(v)     Lender has received such other items which Lender may reasonably require to be submitted by Borrower; and

(vi)     All other terms and conditions of this Note and the other Loan Documents required to be met as of the date of the Final Advance of the Loan for hard costs shall have been met to the satisfaction of Lender.

(g)     Advances for Stored Materials.    Notwithstanding anything to the contrary contained herein, no advances will be made for building materials or furnishings that have not yet been incorporated into the Improvements (*Stored Materials*) unless and until: (i) Borrower has good title to the Stored Materials and has furnished satisfactory evidence of such title to Lender, to the extent required by Lender; (ii) the Stored Materials are components in a form ready for incorporation into the Improvements and will be so incorporated within a reasonable period (not to exceed thirty [30] days) from the date of the advance for the Stored Materials; (iii) the Stored Materials are in Borrower's possession and are satisfactorily stored on the Property or at such other location as Lender may approve, in each case with adequate



Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

safeguards to prevent commingling with materials for other projects; (iv) the Stored Materials are protected and insured against loss, theft and damage in a manner and amount satisfactory to Lender; (v) the Stored Materials have been paid for in full or will be paid for in full from the funds to be advanced; (vi) Lender has or will have upon the payment for the Stored Materials from the advanced funds a perfected, first priority security interest in the Stored Materials; and (vii) all lien rights and claims of the supplier have been released or will be released upon payment with the advanced funds.

(h)    Additional Terms Regarding Advances.  Lender shall not be obligated to make an advance of Loan proceeds until and unless the following additional items shall have been received, complete and/or approved by Lender, as and to the extent required by Lender, prior to the date of the advance:

(i)    A notice of title continuation or endorsement to the title insurance policy with respect to the Loan, showing there has been no change in the status of title and no other exception not theretofore approved by Lender, which endorsement shall have the effect of advancing the effective date of the policy to the date of the advance then being made and increasing the coverage of the policy by an amount equal to the such advance.

(ii)    Evidence acceptable to Lender that all work requiring inspection by any governmental authority having or claiming jurisdiction has been duly inspected and approved by such authority and by any rating or inspection organization, bureau, association or office having or claiming jurisdiction.

(iii)    Evidence, including a report from the Consultant, that all work completed at the time of the application for an advance has been performed in a good and workmanlike manner in accordance with the Plans and Specifications, that all materials and fixtures usually furnished and installed at that stage of construction have been so furnished and installed, that the Improvements can be completed in accordance with the Plans and Specifications, and that the balance of the Loan proceeds then held by Lender and available for advance pursuant to the terms of this Note, together with other funds which Lender determines to be available to Borrower for such purpose, are and will be sufficient to pay the cost of such completion.

(iv)    Borrower shall comply with the Construction Contract Prompt Payment law contained in the California Mechanics Lien Law, California Civil Code, Division 4, Part 6, Sections 8000-9566, et. al. notwithstanding Lender's failure or delay in funding any draw requests or Lender's cessation of funding draw requests in accordance with the terms of this Note.  Borrower hereby agrees to provide all required notices to the Contractor and all lienors providing notices to owner in compliance with California Civil Code, Division 4, Part 6, Sections 8000-9566, et. al. in a timely fashion, and authorizes Lender to provide written notices to the same to the extent such notices are required by law.  Borrower shall also comply with any and all other laws related to prompt payment and provision of notices.

(v)    Borrower shall submit, do, and perform all such other items and actions which Lender may reasonably require.

(i)    Conditions Precedent to All Advances. Lender shall not be obligated to make an advance of Loan proceeds unless the following additional conditions shall have been satisfied or waived in writing by Lender as of the date of each advance:  (i) No lien for the performance of work or supplying of labor, materials or services shall have been filed against the Property and remain unsatisfied or unbonded to the satisfaction of Lender; (ii) no condition or

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

situation shall exist on the Property which, in the reasonable determination of Lender, constitutes a danger to or impairment of the Property or presents a danger or hazard to the public, (iii) all representations and warranties made by Borrower in this Note and the other Loan Documents shall be true and correct on and as of the date of the advance with the same effect as if made on such date, (iv) all terms and conditions of the Loan Documents required to be met as of the date of the applicable advance shall have been met to the satisfaction of Lender, (v) Borrower shall have paid all fees and expenses incurred by Lender and/or Borrower in connection with such advance, including without limitation Lender's administrative fee,  and (vi) no event of default under this Note or any other Loan Document shall have occurred and be continuing.

(j)   Liability of Lender.  Lender shall in no event be responsible or liable to any person other than Borrower for the disbursement of or failure to disburse the Loan proceeds or any part thereof and neither the Contractor, Consultant, nor any subcontractor, laborer or material supplier shall have any right or claim against Lender under this Note or the other Loan Documents.

2.   Stated Interest Rate.  Except as provided in Section 3 below, the principal balance outstanding hereunder shall bear interest, until fully paid, at 8.99% (the "Stated Interest Rate").

3.   Default Interest Rate.  The Default Interest Rate shall be 2.0% per month. The principal balance outstanding hereunder from time to time shall bear interest at the Default Interest Rate from the date of the occurrence of an Event of Default (as hereinafter defined) hereunder until the date on which the principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, are paid in full.

4.   Payments.  This Note shall be payable as follows:

(a)   Interest.  Accrued and unpaid interest at the Stated Interest Rate or, to the extent applicable, the Default Interest Rate, upon the principal balance outstanding hereunder, shall be due and payable on 3/1/2020, and on the first (1st) day of each month thereafter.  If the payment date above in a given month shall fall on a date other than a Business Day, then the applicable payment shall be due on the next, subsequent Business Day.  As used herein, "Business Day" shall mean a single calendar day that is not a Saturday, Sunday, or legal holiday.  Notwithstanding that interest shall be due on a Business Day, the interest due and payable each month shall be the aggregate amount of interest accrued for all calendar days in the applicable month.

(b)   Principal.  The principal balance outstanding hereunder, if not sooner paid as provided herein, shall be due and payable on 2/1/2021 (the "Maturity Date").

5.   Application and Place of Payments.  Payments received by Lender with respect to the indebtedness evidenced hereby shall be applied in such order and manner as Lender in its sole and absolute discretion may elect. Unless Lender otherwise elects, payments received by Lender shall be applied first to any applicable Additional Sums (such as the Late Charges or NSF Charges defined below), next to accrued and unpaid interest, and the remainder to the principal balance then outstanding hereunder.  Payments hereunder shall be made by check from Maker to Lender, or in such other manner as Lender may specify to Maker in writing from time to time.   Payments shall be made in United States dollars.

6.   Late Charges.  If Lender has not received the full amount of any payment of unpaid principal or interest or any other amount due hereunder within ten (10) calendar days of its due date under this Note, Maker shall pay



Sound Equity Inc.

Loan#20001794: 150 E La Sierra Dr, ARCADIA, CA 91006

to Lender a late charge in the amount of 5% of the amount of such payment. In the event the balance of the note is not paid on or before 15 calendar days from its Maturity Date under this Note, in addition to interest at the Default Interest Rate specified in Section 3, Maker shall pay to Lender a late charge equal to 2% of the balance of all unpaid principal and interest.

7.    NSF Charges. If Maker tenders to Lender a check, draft or other item, that is dishonored by reason of insufficient funds and Lender incurs a bank charge as a result thereof, Maker shall reimburse Maker for such charge.

8.    Optional Prepayments. Payments of principal may be made at any time, or from time to time, in whole or in part, without penalty or premium, provided that all previously matured interest, and other charges accrued to the date of prepayment are also paid in full. Notwithstanding any partial prepayment of principal hereof, there will be no change in the due date or amount of scheduled payments due hereunder unless Lender agrees in writing to such change.

9.    Collateral; Guaranty. The obligations of Maker to Lender pursuant to this Note shall be secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing in the form approved by Lender (the "Deed of Trust"). Additionally, the obligations of Maker to Lender pursuant to this Note shall be guaranteed by Jianqing Yang (collectively, "Guarantor") in accordance with a Guaranty in the form approved by Lender (the "Guaranty").

10.    Events of Default; Acceleration. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

(a)    Nonpayment of principal, interest or other amounts when the same shall become due and payable hereunder;

(b)    The failure of Maker to comply with any provision of this Note;

(c)    The failure of Guarantor to comply with any provision of the Guaranty;

(d)    The death, incapacity, dissolution, winding-up or termination, as applicable, of the existence of Maker or Guarantor;

(e)    The calling of a meeting of the creditors of Maker or Guarantor;

(f)    The making by Maker or Guarantor of an assignment for the benefit of its respective creditors;

(g)    The appointment of (or application for appointment of) a receiver of Maker or Guarantor, or the involuntary filing against or voluntary filing by Maker or Guarantor of a petition or application for relief under federal bankruptcy law or any similar state or federal law, or the issuance of any writ of garnishment, execution or attachment for service with respect to Maker or Guarantor or any property of Maker or Guarantor; or

(h)    Any statement, representation or warranty contained herein, in the Guaranty or any related document shall be false.

Upon the occurrence of an Event of Default, the entire principal balance outstanding hereunder, together with all accrued interest and other amounts payable hereunder, at the election of Lender, shall become immediately due and payable, without any notice to Maker.

11.    Cross-Default. Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower, Affiliate of Borrower or



Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

Guarantor to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note.

12.    Contracted For Interest.

(a)    Maker agrees to pay an effective contracted for rate of interest equal to the rate of interest resulting from all interest payable as provided in this Note, plus the additional rate of interest resulting from the any Additional Sums. The Additional Sums shall consist of all fees, charges, goods, things in action or any other sums or things of value (other than interest payable as provided in this Note) paid or payable by Maker, whether pursuant to this Note or any other document or instrument in any way pertaining to this lending transaction, that may be deemed to be interest for the purpose of any law of the State of California that may limit the maximum amount of interest to be charged with respect to this lending transaction. The Additional Sums shall be deemed to be interest for the purposes of any such law only.

13.    Waivers. Except as set forth in this Note, to the extent permitted by applicable law, Maker, and each person who is or may become liable hereunder, severally waive and agree not to assert: (a) any exemption rights; (b) demand, diligence, grace, presentment for payment, protest, notice of nonpayment, nonperformance, extension, dishonor, maturity, protest and default; and (c) recourse to guaranty or suretyship defenses (including the right to require Lender to bring an action on this Note). Lender may extend the time for payment of or renew this Note, release collateral as security for the indebtedness evidenced hereby or release any party from liability hereunder, and any such extension, renewal, release or other indulgence shall not alter or diminish the liability of Maker, except to the extent expressly set forth in a writing evidencing or constituting such extension, renewal, release or other indulgence.

14.    Costs of Collection. Maker agrees to pay all costs of collection, including, without limitation, attorneys' fees, whether or not suit is filed, and all costs of suit and preparation for suit (whether at trial or appellate level), in the event any payment of principal, interest or other amount is not paid when due, or in case it becomes necessary to protect any collateral which is security for any obligation of Maker hereunder, or to exercise any other right or remedy hereunder, or in the event Lender is made a party to any litigation because of the existence of this Note, or any other related documents, or if at any time Lender should incur any attorneys' fees in any proceeding under any federal bankruptcy law (or any similar state or federal law) in connection with the obligations evidenced hereby. In the event of any court proceeding, court costs and attorneys' fees shall be set by the court and not by the jury and shall be included in any judgment obtained by Lender.

15.    No Waiver. No delay or failure of Lender in exercising any right hereunder shall affect such right, nor shall any single or partial exercise of any right preclude further exercise thereof.

16.    Governing Law. This Note shall be construed in accordance with and governed by the laws of the State of California, without regard to the choice of law rules of the State of California.

17.    Time of Essence. Time is of the essence of this Note and each and every provision hereof.

18.    Conflicts; Inconsistency. In the event of any conflict or inconsistency between the provisions of this Note and the provisions of any one or more of the other documents executed in connection with this transaction, the provisions of this Note shall govern and control to the extent necessary to resolve such conflict or inconsistency.

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

19.    Amendments.    No amendment, modification, change, waiver, release or discharge hereof and hereunder shall be effective unless evidenced by an instrument in writing and signed by the party against whom enforcement is sought.

20.    Severability.  The invalidity of any provision of this Note or portion of a provision shall not affect the validity of any other provision of this Note or the remaining portion of the applicable provision.

21.    Binding Nature.  The provisions of this Note shall be binding upon and inure to the benefit of Maker and Lender and their respective heirs, personal representatives, successors and assigns, as applicable.

22.    Notices.  Except as otherwise expressly provided herein, all notices, requests, demands and other communications provided for under the Loan Documents shall be in writing and shall be (a) personally delivered, (b) sent by first class United States mail, (c) sent by overnight courier of national reputation, or (d) transmitted by facsimile in each case delivered or sent to the party to whom notice is being given to the business address, or facsimile number, set forth in the preamble to this Agreement, or, as to each party, at such other business address or facsimile number as it may hereafter designate in writing to the other party pursuant to the terms of this Section. All such notices, requests, demands and other communications shall be deemed to be an authenticated record communicated or given on (a) the date received if personally delivered, (b) when deposited in the mail if delivered by mail, (c) the date delivered to the courier if delivered by overnight courier, or (d) the date of transmission if sent by facsimile, except that notices or requests delivered to the Lender pursuant to any of the provisions of Section shall not be effective until received by the Lender.

23.    Construction.  The language of this Note shall be construed as a whole according to its fair meaning.  The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to."  No inference in favor of, or against, Maker or Lender shall be drawn from the fact that one party has drafted any portion hereof. The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be applied to the interpretation of this Note.

24.    Commercial Use.  Each of the undersigned represents and acknowledges that the funds loaned by the Lender are solely for commercial, business, and investment purposes and not for household or consumer purposes.

25.    Joint and Several Obligations.  Each of the obligations and promises in this Note are binding jointly and severally on each of the undersigned.  Each of the undersigned sign as makers of this Note and not guarantors.

Dated as of the date first set forth above.

MAKER: 150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
        Betty Zheng, Its Manager



Sound Equity Inc.

**PREPARED BY AND**
**WHEN RECORDED RETURN TO:**

SOUND EQUITY INC
929 108th Ave. NE, Suite 1030
Bellevue, WA  98004

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this "Deed of Trust") is made as of January 15, 2020 by 150 La Sierra, LLC, a[n] California Limited Liability Company, whose mailing address is 100 East Huntington Drive #207  Alhambra, CA  91801, as trustor (the "Trustor") in favor of FCI LENDER SERVICES INC, A CALIFORNIA CORPORATION, whose mailing address is 8180 East Kaiser Blvd, Anaheim Hills, CA 92808, as trustee (the "Trustee"), for the benefit of Sound Equity Inc, a Delaware Corporation, whose mailing address is 989 112th Ave NE, Suite 207, Bellevue, WA 98004, as beneficiary (the "Beneficiary").

1.      **GRANT IN TRUST.**  For the purpose of securing payment and performance of the Obligations defined in Section 2, the Trustor hereby irrevocably and unconditionally grants, mortgages, sells, pledges, conveys, transfers and assigns to the Trustee, in trust for the benefit of the Beneficiary, with power of sale, all estate, right, title and interest that the Trustor now has or may later acquire in and to the real property located in the County of Los Angeles, State of California, as described in Exhibit A attached to this Deed of Trust (the "Land"), together with:

**THE REAL PROPERTY OR ITS ADDRESS IS COMMONLY KNOWN AS** 150 E La Sierra Dr ARCADIA, CA  91006. THE ASSESSOR'S PARCEL NUMBER FOR THE REAL PROPERTY IS 5781-010-063.

A.  All existing or subsequently erected buildings, structures and improvements on the Land (the "Improvements");

B.  All appurtenances, rights of way and easements used in connection with the Land;

C.  All water and water rights (whether riparian, appropriative or otherwise, and whether or not appurtenant) used in connection with the Land and all shares of stock evidencing the same;

D.  All existing and future leases;

E.  All pumping stations, engines, pipes and ditches;

F.  All oil, gas, geothermal and other mineral rights, if any, in or pertaining to the Land, and all royalty, leasehold or other rights of the Trustor pertaining to such mineral rights;

G.  All goods, materials, supplies, chattels, furniture, fixtures, equipment and machinery now or later to be attached to, placed in or on, or used in connection with the use, enjoyment, occupancy or operation of all or any part of the Land and the Improvements, including, without limitation, all



This is to certify that this is a true and correct copy of the original.
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER

gas, electric, cooking, heating, cooling, air conditioning, refrigeration and plumbing fixtures and equipment;

H. All maps, plans, specifications, surveys, reports, data and drawings, all governmental applications, permits and licenses, and all contracts and agreements of the Trustor relating to the Land and the Improvements, including, without limitation, architectural, structural, mechanical and engineering plans and specifications, studies, data and drawings prepared for or related to the development of the Land or the construction, renovation or restoration of any of the Improvements or the extraction of minerals, sand, gravel or other valuable substances from the Land; and

I. Any and all substitutions and replacements of the foregoing, accessions thereto, and all proceeds of the foregoing, whether now existing or later acquired.

All property described in this Section 1 is herein called the "Property."

2.     **OBLIGATIONS SECURED.**  The Trustor has granted, conveyed, transferred and assigned its interest in the Property to the Beneficiary for the purpose of securing the payment of all indebtedness and performance of the Trustor's Promissory Note of even date herewith payable to the order of the Beneficiary in the principal amount of $2,340,000.00 as it may be modified, extended, renewed or amended from time to time, together with all refinancings, substitutions and renewals thereof (the "Note"), dated as of January 15, 2020.   All obligations referred to in this Section 2 are herein called the "Obligations."

3.     **PERFORMANCE OF OBLIGATIONS.**  The Trustor shall promptly pay and perform each of the Obligations in accordance with its terms.

4.     **ASSIGNMENT OF RENTS.**

A.     Assignment.   The Trustor hereby irrevocably, absolutely, presently and unconditionally assigns to the Beneficiary all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents").  This is an absolute assignment, not an assignment for security only.

B.     License.  The Trustor reserves a license to collect and retain the Rents as they become due and payable, so long as no Event of Default (as defined in Section 17) shall exist and be continuing.  If an Event of Default has occurred and is continuing, the Beneficiary shall have the right, which it may choose to exercise in its sole discretion, to terminate this license without notice to or demand upon the Trustor, and without regard to the adequacy of the Beneficiary's security under this Deed of Trust.  After the termination of this license, any Rents received by the Trustor shall be held in trust by the Trustor for the benefit of the Beneficiary, and the Trustor shall promptly pay the Rents over to the Beneficiary.

C.     Collection and Application of Rents.  Subject to the license reserved to the Trustor in Subsection 4.B, the Beneficiary has the right, power and authority to collect any and all Rents.  The Trustor hereby irrevocably appoints the Beneficiary as its attorney-in-fact, with full power of substitution, to perform any and all of the following acts, if and at the times when the Beneficiary in its sole discretion may so choose:

(1)   Demand, receive and enforce payment of any and all Rents; or

(2)   Give receipts, releases and satisfactions for any and all Rents; or



This is to certify that this is a true and correct copy of the original
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER

Hansen Decl. Ex A
Page 26

(3)   Sue either in the name of the Trustor or in the name of the Beneficiary for any and all Rents.

The appointment granted herein shall be deemed to be a power coupled with an interest.

D.    The Beneficiary Not Responsible.  Under no circumstances shall the Beneficiary have any duty to produce Rents from the Property.  Regardless of whether or not the Beneficiary, in person or by agent, takes actual possession of the Property, the Beneficiary is not and shall not be deemed to be: (1) a "mortgagee in possession" for any purpose; (2) responsible for performing any of the obligations of the lessor under any lease of all or part of the Property; (3) responsible for any waste committed by lessees or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair or control of the Property; or (4) liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of the Property.

5.    **SECURITY AGREEMENT.**

A.    Grant of Security Interest.  Some of the Property and some or all of the Rents may be determined under applicable law to be personal property or fixtures.  To the extent that any Property or Rents now or hereafter constitutes personal property, the Trustor, as debtor, grants to the Beneficiary, as secured party, a security interest in all such Property and Rents, to secure payment and performance of the Obligations.  This Deed of Trust constitutes a security agreement under the California Commercial Code, covering all such Property and Rents.  To the extent permitted by law, Trustor and Beneficiary agree that with respect to all items of personal property which are or will become fixtures on the Land, this Deed of Trust, upon recording or registration in the real estate records of the proper office, shall constitute a "fixture filing" within the meaning of Sections 9102(40) and (41) and 9502 of the California Commercial Code.  Trustor is the record owner of the Land.

B.    Financing Statement.  The Trustor shall file one or more financing statements and such other documents as the Beneficiary may from time to time require to perfect or continue the perfection of the Beneficiary's security interest in any Property or Rents.  If any financing statement or other document is filed in the records normally pertaining to personal property, that filing shall not be construed as in any way derogating from or impairing this Deed of Trust or the rights or obligations of the parties under it.

C.    Uniform Commercial Code Remedies.  The Beneficiary may exercise any or all of the remedies granted to a secured party under the California Commercial Code.

D.    Disposition Upon Default.  Upon the occurrence of an Event of Default, the Beneficiary may dispose of any personal property separately from the sale of real property, in any manner permitted by Chapter 9 of the California Commercial Code, including any public or private sale, or in any manner permitted by any other applicable law.  Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Obligation for purposes of Cal. Civ. Code § 2924c, as amended or recodified from time to time.  In its discretion, the Beneficiary may also or alternatively choose to dispose of some or all of the Property, in any combination consisting of both real and personal property, together in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by the California Commercial Code.  The Trustor agrees that such a sale of personal property, together with real property, constitutes a commercially reasonable sale of the personal property.

6.    **FIXTURE FILING.**  This Deed of Trust constitutes a financing statement filed as a fixture filing under the California Commercial Code,

This is to certify this is a true and correct copy of the original in the
NORTH AMERICAN TITLE COMPANY

ESCROW OFFICER

covering any property which now is or later may become fixtures attached to the real property covered by this Deed of Trust.

7.    **REPRESENTATIONS AND WARRANTIES.**  The Trustor represents and warrants as follows:

A.    <u>Priority</u>.  Unless otherwise consented to by the Beneficiary, the lien granted by this Deed of Trust now does and hereafter will constitute a lien of first priority.

B.    <u>Ownership</u>.  The Trustor is, and, as to Property acquired by it from time to time after the date hereof, the Trustor will be, the owner of all of the Property free from any encumbrances other than the Beneficiary's interest and lien thereon, and the Trustor shall defend the Property against any and all claims and demands of all persons at any time claiming any interest therein in any manner materially averse to the Beneficiary.

C.    <u>Power</u>.  The Trustor has full power and authority and legal right to grant a lien in the Property and to assign the Rents pursuant to this Deed of Trust.  The Trustor's organizational identification number is: 84-4090225.

D.    <u>Consents</u>.  No consent of any other party (including, without limitation, creditors of the Trustor) and no consent, authorization, approval, or other action by, and no notice to or filing with, any governmental authority is required either (1) for the grant of a lien in the Property pursuant to this Deed of Trust or for the execution, delivery or performance of this Deed of Trust by the Trustor or (2) for the exercise by the Beneficiary of the rights provided for in this Deed of Trust.

E.    <u>Property</u>.  The Property is not located in an Earthquake Fault Zone, Special Studies Zone, Seismic Hazard Zone, or other hazard area within the meaning of California Public Resources Code §§ 2621-25 or 2690-99, within a Special Flood Hazard Area designated by the Federal Emergency Management Agency, or within a California Fire Responsibility Area as provided in Public Resources Code §§ 4136.

8.    **PROTECTION OF THE PROPERTY; INSPECTIONS.**    The Trustor will take reasonable efforts in good faith, at all times, to protect the Property against damage or loss. The Trustor shall maintain, keep and preserve the Property in good condition and repair, shall not commit or permit waste of the Property and shall not remove, demolish or substantially alter any of the Improvements. The Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property and the Improvements. The Beneficiary or its agent may make reasonable entries upon the Property and may make inspections and tests of the Property as the Beneficiary deems appropriate to determine the Trustor's compliance with this Deed of Trust. Any inspections or tests made by the Beneficiary shall be for the Beneficiary's purposes only and shall not be construed to create any responsibility or liability on the part of the Beneficiary to the Trustor or to any other person.

9.    **INSURANCE.**  The Trustor will also insure the Property against such hazards and in such amounts as the Beneficiary may reasonably require, under policies containing endorsements naming the Beneficiary as loss payee and prohibiting any cancellation or material revision in such policies without 30 days' prior written notice to the Beneficiary.  This Deed of Trust constitutes (and the Trustor acknowledges receipt of) written notice to the Trustor that the accommodations made available to the Trustor by the Beneficiary is not conditioned on the requirement that the Trustor procure insurance from any insurance company

This is a true
and correct copy
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER

designated by the Beneficiary.  However, such insurance policies shall be written by insurance companies acceptable to the Beneficiary.

10.    **DAMAGES AND INSURANCE AND CONDEMNATION PROCEEDS.**  The Trustor absolutely and irrevocably assigns to the Beneficiary, all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use that affects all or part of the Property or any interest in it, and all proceeds of any insurance policies payable because of loss sustained to all or part of the Property or any interest in it, and all proceeds of any insurance policies payable because of loss sustained to all or part of the Property up to a maximum amount of the Obligations secured by the Note herein, not to exceed $2,340,000.00 MERGEFORMAT, less reductions of payments made by the Trustor up to the date of such loss or condemnation.  Said amount shall be the then existing principal balance at the time of the loss or condemnation.  The Trustor shall immediately notify the Beneficiary in writing if any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.  If the Beneficiary chooses to do so, it may in its own name appear in or prosecute any action or proceeding with respect to injury or loss to all or part of the Property, and it may make any compromise or settlement of such action or proceeding.  The Trustor hereby appoints the Beneficiary as its attorney-in-fact, with full power of substitution, to perform the foregoing acts.  The appointment granted herein shall be deemed to be a power coupled with an interest.  The Beneficiary, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join the Trustor in adjusting any loss covered by insurance.  All proceeds of such awards of damages and other compensation and insurance proceeds shall be paid to the Beneficiary. Any such proceeds received by the Trustor shall be held in trust by the Trustor for the benefit of the Beneficiary, and the Trustor shall promptly pay the proceeds over to the Beneficiary.  The Beneficiary shall apply those proceeds first toward reimbursement of all of the Beneficiary's costs and expenses of recovering the proceeds, including attorneys' fees.  The remaining proceeds shall either be applied to the reduction of the Obligations or to the repair or restoration of the Property, as the Beneficiary may elect.  If the Beneficiary elects to apply the proceeds to restoration or repair, the Trustor shall repair or replace the damaged or destroyed Property in a manner satisfactory to the Beneficiary. Notwithstanding anything contained in this Section 10 or this Deed of Trust to the contrary, Beneficiary may, in its sole discretion, elect to (y) apply the net proceeds of any condemnation award (after deduction of Beneficiary's reasonable costs and expenses, if any, in collecting the same) in reduction of the Obligations in such order and manner as Beneficiary may elect, whether due or not, or (z) make the proceeds available to Trustor for the restoration or repair of the Property.  Any implied covenant in this Deed of Trust restricting the right of Beneficiary to make such an election is waived by Trustor.  In addition, Trustor hereby waives the provisions of any law prohibiting Beneficiary from making such an election, including, without limitation, the provisions of California Code of Civil Procedure ("CCCP") commencing with Section 1265.210.  If the net proceeds of the condemnation award are made available to Trustor for restoration or repair, the net proceeds of the condemnation award shall be disbursed upon reasonable satisfaction of and in accordance with the terms and conditions set forth in this Section 10.

11.    **TAX AND OTHER LIENS.**  The Trustor shall pay promptly when due all taxes, assessments and governmental charges or levies imposed upon the Property, all utility charges for the Property and all claims (including claims for labor, materials and supplies) against the Property, except to the extent the validity thereof is being contested in good faith and the Trustor provides the

This is to certify this is a true
and correct copy of the original
NORTH AMERICAN TITLE CO.
_____
ESCROW OFFICER

Beneficiary with such cash deposit, surety bond or other security satisfactory to the Beneficiary that is sufficient to discharge the contested tax, assessment, charge, levy or claim.

12.    **EXPENDITURES BY THE BENEFICIARY.**  If the Trustor fails to comply with any provision of this Deed of Trust, or if any action or proceeding is commenced that would materially affect the Beneficiary's interests in the Property, the Beneficiary on the Trustor's behalf may, but shall not be required to, take any action that the Beneficiary deems appropriate.  Any amount that the Beneficiary expends in so doing shall be payable on demand, shall be secured by this Deed of Trust and shall bear interest at the highest rate charged under any of the Obligations from the date incurred or paid by the Beneficiary to the date of repayment by the Trustor.

13.    **FURTHER ASSURANCES.**  The Trustor agrees that at any time and from time to time at its expense, the Trustor will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or that the Beneficiary deems appropriate or advisable, in order to preserve and protect the lien granted in this Deed of Trust or to enable the Beneficiary to exercise and enforce its rights and remedies under this Deed of Trust.

14.    **HAZARDOUS SUBSTANCES.**  The Trustor has no knowledge of the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property, whether by the Trustor or any prior owners or occupants of the Property, or any underground storage tanks located on the Property.  The Trustor shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property, except as permitted by Environmental Law.  The Trustor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The Trustor shall promptly give the Beneficiary written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which the Trustor has knowledge.  If the Trustor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, the Trustor shall promptly take all necessary remedial actions in accordance with Environmental Law.  "Hazardous Substances" means those substances defined as toxic or hazardous substances by Environmental Law, together with gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  "Environmental Law" means federal, state and local laws, regulations and ordinances that relate to health, safety or environmental protection.  The Trustor agrees to indemnify, protect, defend and hold the Beneficiary harmless for, from and against any and all expenses, damages and costs and consequential damages incurred by the Beneficiary, including, without limitation, attorneys' fees, as a result of any Hazardous Substances on the Property, the failure of the Property to comply with any Environmental Law, or the presence of underground storage tanks on the Property at any time, even if such expenses, damages and costs shall be incurred by the Beneficiary after acquisition of the Property by the Beneficiary or a purchaser through foreclosure, Trustee's sale or deed in lieu of foreclosure. The foregoing indemnification and hold harmless provision shall survive payment in full of the Obligations.

15.    **SUBSTITUTION OF THE TRUSTEE.**    From time to time, the Beneficiary may remove the Trustee and appoint a successor Trustee to any



This is to certify that this is a true and correct copy of the original.
NORTH AMERICAN TITLE COMPANY

ESCROW OFFICER

Hansen Decl. Ex A
Page 30

Trustee appointed under this Deed of Trust. A Notice of Substitution of the Trustee shall be executed and recorded in accordance with applicable law.

16.    **TRANSFER OF PROPERTY.** A "Transfer" means any sale, contract to sell, conveyance, encumbrance, lease or other transfer of all or any material part of the Property or any interest in it, whether voluntary, involuntary, by operation of law or otherwise. If the Trustor is a corporation, a "Transfer" also means any transfer or transfers of shares constituting, in the aggregate, more than twenty percent (20%) of the voting power. If the Trustor is a partnership, a "Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than twenty percent (20%) of the partnership interests. The Trustor acknowledges that the Beneficiary is entering into the transactions constituting the Obligations in reliance on the expertise, skill and experience of the Trustor. Thus, the Obligations include material elements similar in nature to a personal service contract. In consideration of the Beneficiary's reliance, the Trustor agrees that the Trustor shall not make any Transfer, unless the transfer is preceded by the Beneficiary's express written consent to the particular transaction and transferee. The Beneficiary may withhold such consent in its sole discretion. If any Transfer occurs, the Beneficiary in its sole discretion may declare all of the Obligations to be immediately due and payable, and the Beneficiary and the Trustee may invoke any rights and remedies provided in this Deed of Trust or by applicable law.

17.    **EVENTS OF DEFAULT.** As used in this Deed of Trust, the term "Event of Default" shall include any default or Event of Default described in the Note or Agreement, as applicable, or any breach or default of any provision of this Deed of Trust.

18.    **REMEDIES.** At any time after an Event of Default, the Beneficiary shall be entitled to invoke any and all rights and remedies described in this Section or permitted by applicable law. All such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

A.    The Beneficiary may declare any or all of the Obligations to be due and payable immediately. However, all of the Obligations shall automatically be due and payable in full if a voluntary or involuntary petition shall be filed by or against the Trustor under the United States Bankruptcy Code or similar statute, or a receiver, trustee, assignee for the benefit of creditors or other similar official shall be appointed to take possession, custody or control of the properties of the Trustor.

B.    The Beneficiary may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

C.    To the extent permitted by applicable law, the Beneficiary, in person, by agent or by court appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and may also do any and all other things in connection with those actions that the Beneficiary in its sole discretion may consider necessary and appropriate to protect the security of this Deed of Trust.

D.    The Beneficiary may request the Trustee to exercise the power of sale granted in this Deed of Trust. Before any Trustee's sale, the Beneficiary or the Trustee shall give such statement of breach or nonperformance and notice of sale as may then be required by applicable law. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, the Trustee shall sell the Property being sold at a

Hansen Decl. Ex A
Page 31

public auction to be held at the time and place specified in the notice of sale.  Neither the Trustee, nor the Beneficiary, shall have any obligation to make demand on the Trustor before any Trustee's sale.  Subject to California Civil Code § 2924g, Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may in its discretion, give a new notice of sale.  At any Trustee's sale, the Trustee shall sell to the highest bidder at public auction for cash in lawful money of the United States.  The Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Property being sold without any covenant or warranty whatsoever, express or implied.  Any such deed shall be conclusive evidence in favor of purchasers or encumbrancers for value and without notice, that all requirements of law were met relating to the exercise of the power of sale and the Trustee's sale of the Property conveyed by such deed.  Knowledge of the Trustee shall not be imputed to the Beneficiary.  At any Trustee's sale, any person, including the Trustor, the Trustee or the Beneficiary, may bid for and acquire the Property or any part of it to the extent permitted by then applicable law.  Instead of paying cash for that Property, the Beneficiary shall have the benefit of any law permitting credit bids.  The Beneficiary and the Trustee shall apply the proceeds of any Trustee's sale in the following manner:  (1)  to pay all costs and expenses of exercising the power of sale and of sale, including, without limitation, the Trustee's fees and attorneys' fees actually incurred;  (2) to pay the Obligations secured by this Deed of Trust; and (3) to remit the remainder, if any, to the person or persons entitled to it.

        E.    The Beneficiary may bring an action in any court of competent jurisdiction to foreclose this Deed of Trust in the manner provided by law for the foreclosure of mortgages on real property or to obtain specific enforcement of any of the covenants or agreements in this Deed of Trust.  If the Beneficiary brings such an action, the Trustor agrees to pay the Beneficiary's attorneys' fees as set by the court (and not a jury) and court costs.

        F.    The Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Deed of Trust, including, without limitation, attorneys' fees and costs of title evidence.

        G.    Upon the occurrence of an Event of Default under this Deed of Trust, Beneficiary, pursuant to the appropriate provisions of the California Commercial Code, shall have an option to proceed with respect to both the real property portion of the Property and the personal property in accordance with its rights, powers and remedies with respect to such real property, in which event the default provisions of the California Commercial Code shall not apply.  Such option shall be revocable by Beneficiary as to all or any portion of the personal property at any time prior to the sale of the remainder of the Property.  In such event Beneficiary shall designate Trustee to conduct the sale of the personal property in combination with the sale of the remainder of the Property.  Should Beneficiary elect to sell the personal property or any part thereof which is real property or which Beneficiary has elected to treat as real property or which may be sold together with the real property as provided above, Beneficiary or Trustee shall give such notice of default and election to sell as may then be required by law.  The parties agree that if Beneficiary shall elect to proceed with respect to any portion of the personal property separately from such real property, five (5) days notice of the sale of the personal property shall be reasonable notice.  The reasonable expenses of retaking, holding, preparing for sale, selling and the like incurred by Beneficiary shall include, but not be limited to, reasonable attorneys' fees, costs and expenses, and other expenses incurred by Beneficiary.

This is to certify this
is and correct copy of the original.
NORTH AMERICAN TITLE COMPANY

ESCROW OFFICER

Hansen Decl. Ex A
Page 32

In addition, Beneficiary shall have the right to appoint a receiver when permitted under Section 564 of the CCCP, including, without limitation, in order to enforce Beneficiary's rights under Section 2929.5 of the California Civil Code. The receiver shall have all of the rights and powers to the fullest extent permitted by law. The receiver shall have the right to apply Rents to cleanup, remediation or other response actions concerning the release or threatened release of Hazardous Substances, whether or not such actions are pursuant to an order of any federal, state or local governmental agency.

19.     **REINSTATEMENT.**  In the event of reinstatement of the Obligations secured by this Deed of Trust in accordance with applicable law after an Event of Default, the Trustee shall record a Cancellation of Notice of Sale. Reinstatement after an Event of Default shall not constitute a waiver of any Event of Default then existing or subsequently occurring, nor impair the right of the Beneficiary to declare other Events of Default or the right to cause the Trustee to record a Notice of Sale, nor otherwise affect this Deed of Trust or any other instrument or document relating to the Obligations or any of the rights, obligations or remedies of the Beneficiary or the Trustee in this Deed of Trust or any other instrument or document relating to the Obligations.

20.     **TIME OF ESSENCE.**  Time is of the essence in each provision of this Deed of Trust.

21.     **NO WAIVER.**  No failure on the part of the Beneficiary to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by the Beneficiary or any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

22.     **NOTICES.**  Unless otherwise required by applicable law, any notices or consents required or permitted by this Deed of Trust shall be in writing and shall be deemed delivered if delivered in person or if sent by certified mail, postage prepaid, return receipt requested, or by fax, to the Trustor or the Beneficiary at the addresses set forth above.

23.     **APPLICABLE LAW.**  The laws of the State of California shall govern the construction of this Deed of Trust and the rights and remedies of the parties hereto.

24.     **BINDING EFFECT AND ENTIRE AGREEMENT.**  This Deed of Trust shall inure to the benefit of, and shall be binding on, the Beneficiary and its successors and assigns and the Trustor and its heirs, personal representatives, successors and permitted assigns. This Deed of Trust, together with all other documents evidencing or securing the Obligations, constitutes the entire agreement between the Beneficiary and the Trustor.

25.     **AMENDMENTS; CONSENTS.**  No amendment, modification, supplement, termination, or waiver of any provision of this Deed of Trust, and no consent to any material departure by the Trustor therefrom, may in any event be effective unless in writing signed by the Beneficiary, and then only in the specific instance and for the specific purpose given.

26.     **SEVERABILITY.**  If any provision of this Deed of Trust shall be held invalid under any applicable law, such invalidity shall not affect any other provision of this Deed of Trust that can be given effect without the invalid provision, and, to this end, the provisions of this Deed of Trust are severable.

This is to certify that this is a true and correct copy of the original. NORTH AMERICAN TITLE COMPANY

ESCROW OFFICER

27.  **WAIVER OF EXEMPTIONS.**  The Trustor abandons and waives any applicable exemption and homestead rights to the fullest extent permitted by applicable law.

28.  **TRUSTEE PROVISIONS.**   From time to time upon written request of Beneficiary and presentation of this Deed of Trust for endorsement and without affecting the personal liability of any person for payment of the Obligations or performance of the Obligations, Trustee may, without liability therefor and without notice, (i) reconvey all or any part of the Property; (ii) consent to the making of any map or plat thereof; (iii) join in granting any easement thereon; (iv) join in any declaration of covenants and restrictions; or (v) join in any extension agreement or any agreement subordinating the lien or charge hereof. Trustee or Beneficiary may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trusts hereunder and the enforcement of the rights and remedies available hereunder, and Trustee or Beneficiary may obtain orders or decrees directing or confirming or approving acts in the execution of such trusts and the enforcement of such remedies. Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Deed of Trust.  Trustor shall pay to Trustee reasonable compensation and reimbursement for services and expenses in the enforcement of the trusts created hereunder, including reasonable attorneys' fees.  Trustor shall indemnify Trustee and Beneficiary against all losses, claims, demands and liabilities which either may incur, suffer or sustain in the execution of the trusts created hereunder or in the performance of any act required or permitted hereunder or by law.

**IN WITNESS WHEREOF,** the Trustor has caused this Deed of Trust to be executed as of the date first above written.

**TRUSTOR:**

150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By: Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
        Betty Zheng, Its Manager


This is to certify that this is a true and correct copy of the original.
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER

Hansen Decl. Ex A
Page 34

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ____ (o)  Angeles

On January 21st, 20 26 before me, Brooke D. Rodriguez _____, a Notary Public, personally appeared **Betty Zheng**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)







## EXHIBIT A
[Legal Description]

LOT 1 OF TRACT NO. 63552, IN THE CITY OF ARCADIA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1325 PAGE(S) 32 AND 33 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD.





Hansen Decl. Ex A
Page 36

RECORDING REQUESTED BY
North American Title Company, Inc.

AND WHEN RECORDED MAIL TO:
150 La Sierra, LLC, a California limited liability company
150 East La Sierra Drive
Arcadia, CA 91006

_____

Space Above This Line for Recorder's Use Only

File No.: 95004-1651744

A.P.N.: 5781-010-063

# GRANT DEED

The Undersigned Grantor(s) Declare(s):  DOCUMENTARY TRANSFER TAX: N/A; CITY TRANSFER TAX: N/A; SURVEY MONUMENT FEE N/A

☒ computed on the consideration or full value of property conveyed, OR
☐ computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,
☐ unincorporated area; ☒ City of Arcadia, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Jinzheng Group USA LLC, a California limited liability company

hereby GRANTS to 150 La Sierra, LLC, a California limited liability company

the following described property  in the City of Arcadia, County of Los Angeles, State of California:

**Legal Description attached hereto as Exhibit "A" and incorporated herein by this reference**

Dated:  January 9, 2020

Jinzheng Group USA LLC, a California
limited liability company

By: Betty Zheng, managing member

Mail Tax Statements To:  **SAME AS ABOVE**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA ) SS
COUNTY OF _____ Los Angeles )

On __1/21/2020____, before me, Brooke D. Rodriguez,
Notary Public, personally appeared Betty Zheng

_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

BROOKE D. RODRIGUEZ
Notary Public · California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023

*This area for official notarial seal*

This is to certify that this is a true and correct copy of the original
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER

**EXHIBIT A**

A.P.N.:  5781-010-063

LOT 1 OF TRACT NO. 63552, IN THE CITY OF ARCADIA, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 1325 PAGE(S) 32 AND 33 OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING
BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF
SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD.



This is to certify that this is a true
and correct copy of the original.
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER

| American Land Title Association | Estimated ALTA Settlement Statement - Borrower/Buyer |
|---|---|
| | Adopted 05-01-2015 |

| File No./Escrow No. : | 95004-1651744 | North American Title Company, Inc. |
|---|---|---|
| Print Date & Time: | January 21, 2020  2:28 pm | 3090 Bristol St. |
| Officer/Escrow Officer : | Elena Vergara | Suite 190 |
| Settlement Location : | 3090 Bristol St., Suite 190 | Costa Mesa, CA 92626 |
| | Costa Mesa, CA 92626 | |

**NORTH AMERICAN TITLE COMPANY**

| Property Address: | 150 East La Sierra Drive |
|---|---|
| | Arcadia, CA 91006 |
| Borrower: | 150 La Sierra, LLC, a California limited liability company |
| | 150 East La Sierra Drive |
| | Arcadia, CA 91006 |
| Lender: | Sound Equity |
| Lender Address: | |
| Loan Number: | |
| Settlement Date: | |
| Disbursement Date: | |

| Description | Borrower/Buyer | |
|---|---|---|
| | Debit | Credit |
| **Financial** | | |
| Loan Amount | | 2,340,000.00 |
| | | |
| **Loan Charges to Sound Equity** | | |
| Lender Fee | 67,275.00 | |
| Processing Fee | 5,000.00 | |
| Construction Holdback | 1,610,000.00 | |
| FCI Servicing Fee | 135.00 | |
| Interest Reserves | 136,738.00 | |
| Prepaid Interest | 1,822.97 | |
| $0.000 per day from  to | | |
| Sound Equity | | |
| | | |
| **Loan Charges to Testa Capital Group** | | |
| Mortgage Broker Fee | 32,175.00 | |
| Processing Fee | 5,000.00 | |
| | | |
| **Other Loan Charges** | | |
| Signing Service Fee | 200.00 | |
| | | |
| **Title Charges and Escrow/Settlement Charges** | | |

*This is to certify that this is a true and correct copy of the original. NORTH AMERICAN TITLE COMPANY ESCROW OFFICER*

Copyright 2015 American Land Title Association
All rights reserved

File # 95004-1651744 / 51
Printed on 01/21/20 at  2:28:03PM by ogray

Hansen Decl. Ex A
Page 40

| Description | Borrower/Buyer | |
|---|---|---|
| | Debit | Credit |
| Escrow Fee to North American Title Company, Inc. | 1,200.00 | |
| Lender's Title Insurance to North American Title Company, Inc.<br>Coverage:        2,925,000.00<br>Premium:          3,876.00 | 3,876.00 | |
| ALTA Endorsement 14-06 (Future Advance - Priority) to North American Title Company, Inc. | 25.00 | |
| Recording Process Service Fee to North American Title Company, Inc. | 25.00 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Recording Fees to NAT fbo the Los Angeles County Recorder | 200.00 | |
| Affordable Home Act/SB2 Fee to NAT fbo the Los Angeles County Recorder | 225.00 | |
| | | |
| **Payoff(s)** | | |
| Payoff First Mortgage to Royal Business Bank | 827,042.94 | |
| Principal Balance              823,554.15 | | |
| Interest To: 01/13/20            1,578.48 | | |
| Additional Interest From:       1,446.94 | | |
| 01/13/20 To: 01/24/20 @ | | |
| 131.540000 Per Diem | | |
| Demand Fee                          30.00 | | |
| Force-placed Insurance          162.37 | | |
| Reconveyance Fee                  25.00 | | |
| Recording Fee                      201.00 | | |
| Updated Demand                    45.00 | | |
| Total Payoff         827,042.94 | | |
| | | |
| Payoff Second Mortgage to K.A.R. Properties, Inc. | 217,378.44 | |
| Principal Balance              230,000.00 | | |
| Interest To: 01/31/20          13,518.48 | | |
| 12 months Prepaid Interes    -26,450.04 | | |
| Demand Fee                          45.00 | | |
| Demand Fee                          45.00 | | |
| Reconveyance Fee                  45.00 | | |
| Recording Fee                      150.00 | | |
| Wire Fee                              25.00 | | |
| Total Payoff         217,378.44 | | |
| | | |
| | | |
| **Miscellaneous** | | |
| 1st 1/2 2019-2020 Property Taxes + Penalties | 12,365.21 | |
| Buyer's funds to close | | 329,546.80 |
| Buyer's funds to close | | 251,772.02 |

| | Debit | Credit |
|---|---|---|
| Subtotals | 2,920,683.56 | 2,921,318.82 |
| Due to Borrower | 635.26 | |
| Totals | 2,921,318.82 | 2,921,318.82 |

Copyright 2015 American Land Title Association
All rights reserved

Page 2 of 3

File # 95004-1651744 / 51
Printed on 01/21/20 at 2:28:03PM by ogray

Hansen Decl. Ex A
Page 41

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize North American Title Company, Inc. to cause the funds to be disbursed in accordance with this statement.

Borrower

150 La Sierra, LLC, a California limited liability company

By: Jinzheng Group USA,LLC, a California limited liability company
    Its Managing Member

BY: _____
    Betty Zheng
    Manager

This is to certify that this is a true
and correct copy of the original
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER

Copyright 2015 American Land Title Association
All rights reserved

File # 95004-1651744 / 51
Printed on 01/21/20 at  2:28:03PM by ogray

Hansen Decl. Ex A
Page 42


**NORTH AMERICAN TITLE COMPANY**

3090 Bristol St., Suite 190
Costa Mesa, CA 92626
Phone: 949-419-9400
Fax: 800-464-6282

## AMENDED ESCROW INSTRUCTIONS

Date: January 21, 2020

Escrow No.: 95004-1651744

RE: 150 East La Sierra Drive, Arcadia, CA 91006

TO: North American Title Company, Inc., Orrine Gray

My previous instructions in the above numbered escrow are hereby modified - supplemented in the following particulars only:

**Escrow Holder is instructed to amend the Buyers/Borrowers vesting as follows: 150 La Sierra, LLC, a California limited liability company**

Escrow Holder is instructed to prepare and record a grant deed in favor of borrower as reflected herein. Escrow Holder is instructed to record said document at the close of escrow concurrently with other documents as required herein. Borrower agrees to pay all cost sincurred in connection with the preparation and recordation of said deed.

All other terms and conditions to remain the same. All parties signing this instruction acknowledge receipt of a copy of same.

**BUYER(S):**

150 La Sierra, LLC, a California limited liability company

By: Jinzheng Group USA,LLC, a California limited liability company
    Its Managing Member

BY: _____
    Betty Zheng
    Manager

This is to certify that this is a true and correct copy of the original. NORTH AMERICAN TITLE COMPANY ESCROW OFFICER

Amendment (Buyer Vesting)                    Page 1 of 1                    95004-1651744

Hansen Decl. Ex A
Page 43


**NORTH AMERICAN TITLE COMPANY**

## BORROWER ESCROW INSTRUCTIONS

| | |
|---|---|
| To:  North American Title Company, Inc.<br>3090 Bristol St., Suite 190<br>Costa Mesa, CA 92626<br>949-419-9400  Fax No.: 800-464-6282 | Escrow Officer:  Lisa Hunter<br>Escrow No.:  95004-1651744<br>Date:  January 3, 2020 |

**FUNDS AND/OR DOCUMENTS:** Borrower(s) will cause North American Title Company, Inc. ("Escrow Holder") to be handed funds and/or documents required to close the above referenced escrow pursuant to Lender(s) Instructions.  Borrower(s)' signature on loan documents and the deposit of the balance of Borrower(s)' funds, if any, shall constitute Borrower(s)' approval of the terms and conditions contained therein, all of which you are authorized to use and/or deliver, when you are in a position to issue a Loan Policy of Title Insurance in favor of the Lender(s) herein pursuant to the Lender(s) written instructions through North American Title Insurance Company.

Covering the property that is the subject of this escrow commonly known as:

150 East La Sierra Drive, Arcadia, CA 91006

**WITH TITLE VESTED IN:**  150 La Sierra, LLC, a California limited liability company

**CLOSE OF ESCROW:**  Close of Escrow to be on or before , or thereafter, unless revoked in writing to escrow holder by the undersigned.

Showing the following exceptions on the Policy of Title Insurance:

A.  General and Special County, and City (if any) Taxes for the current fiscal year, not delinquent, and ensuing taxes, if any, a lien not yet payable.
B.  All other bonds and assessments levied or assessed to the date of close of escrow.
C.  Covenants, conditions, restrictions, reservations, rights, rights of way, and easements, and the exception or reservation of water, oil, gas minerals, carbons, hydrocarbons or kindred substances on or under said land, now of record, if any, or in the Deed to file.
D.  New First Trust Deed loan to record in the amount of $2,340,000.00

All other items are to be eliminated prior to close of escrow.

The policy shall also be subject to any deeds of trust and or other voluntary liens executed by Buyer(s) as part of this escrow.

**WARRANTY REGARDING ENCUMBRANCES:** Borrower(s) warrants and guarantees that there are no outstanding liens or deeds of trust affecting the property, other than those shown on the preliminary report.

**RECEIPT OF NOTICE OF RIGHT TO CANCEL:** The undersigned hereby certify, under penalty of perjury, that we/I each have received two (2) completed copies of the Notice of Right to Cancel along with a copy package containing all loan documents.

**PAYMENT OF CREDIT CARDS OR MISC. BILLS IN ESCROW (IF APPLICABLE):** Prior to close, Borrower(s) agrees to provide Escrow Holder with a current billing statement for **EACH** account(s) or invoice(s) identified on the attached Borrower(s)' estimated closing statement, together with current addresses and account reference information of the third party payees to whom payments are to be made. Escrow Holder is hereby instructed to remit payment, which shall be for the amount specified in Lender's Instructions, to each such payee via U.S. mail.

| | | |
|---|---|---|
| Loan Instructions | Page No. 1 | 95004-1651744 |

Escrow Holder does not warrant that the amounts specified in Lender's Instructions will satisfy the account(s) or invoice(s) in full. Any outstanding balance remaining shall be the responsibility of the Borrower(s). In the event Borrower(s) disputes the amount payable to any third party payee, Borrower(s) shall be responsible for resolving the dispute with the Lender and/or third party payee, without Escrow Holder's involvement.

Borrower(s) assumes the risk that payments to be made by Escrow Holder under this paragraph may be delayed beyond, or not received by the third party payee by, the due date. Borrower(s) agrees to indemnify and hold Escrow Holder harmless, and Escrow Holder shall have no responsibility or liability to either Borrower(s) or Lender, in connection with payment and/or delivery of the payment of each account(s) or invoice(s).

**PRELIMINARY CHANGE OF OWNERSHIP FORM (IF APPLICABLE):** The parties herewith hand North American Title Company, Inc. a completed Preliminary Change of Ownership Report (PCOR), and further authorize and instruct North American Title Company, Inc. to rely on said completed PCOR for purposes of notifying the County Recorder's Office regarding an exemption from the Building and Jobs Act Fee pursuant to Government Code section 27388.1. North American Title Company, Inc. shall not be concerned nor responsible for the accuracy of said PCOR.

**HAZARD INSURANCE:** Borrower(s) agrees to provide a new hazard insurance acceptable to lender and to pay required premium for coverage through escrow, unless a paid receipt is deposited into escrow. hereby North American Title Company, Inc. authorized to request and obtain insurance as required by the Lender. **Please provide your fire insurance information:**

Agent: _____    Company Name: _____

Phone No.: _____    Fax No.: _____

**NO DEMAND:** In the event this property is encumbered by an existing loan(s)/deed(s) of trust/mortgage(s), and a current written demand indicating the amounts necessary to pay the loan in full has not been received by this date, Borrower(s) hereby acknowledge that the figures shown on the attached estimated Borrower's instructions are approximate, predicated on amounts provided verbally by others or on the original loan amount. North American Title Company, Inc., is hereby authorized and instructed to pay lender's written demand when received, including, but not limited to, the principal balance, interest, prepayment penalties, impound deficiencies and any other fees and charges required by said lender(s) without further approval from the undersigned. Borrower(s) also acknowledge that the figures shown on the above referenced Borrower(s) instructions are estimates, subject to change pursuant to receipt of the written demand(s) and North American Title Company, Inc. is authorized to adjust the net proceeds accordingly. We further understand that this escrow cannot close until these written demands have been received.

**NOTARY REQUIREMENTS:** The undersigned parties are herein made aware that North American Title Company, Inc. requires that all documents be signed with either an employee of North American Title Company, Inc. or with Company Approved Notary.

**SPECIAL RECORDINGS:** In the event documents in this escrow are recorded subsequent to the regular recording time as mandated by the county recorders which customarily is 8:00 am, the undersigned are aware that funds may not be available for disbursement for the payment of liens, proceeds or commissions until the following business day and that no interest will be earned on any funds.

MAILING ADDRESS                          MAILING ADDRESS
(AFTER CLOSE OF ESCROW):                 (AFTER CLOSE OF ESCROW):

*100 E. Huntington Dr. #207*             _____

*ALHAMBRA. CA 91801*                     _____

Home Telephone: *626-255-8722*           Home Telephone: _____

Loan Instructions                        Page 2                          95004-1651744

Work Telephone: _____          Cell Phone: _____

Email Address: _____          Email Address: _____

This is to certify that this is a true
and correct copy of the original.
NORTH AMERICAN TITLE COMPANY

ESCROW OFFICER

Loan Instructions                          Page 3                                  95004-1651744

Hansen Decl. Ex A
Page 46

Date:  January 3, 2020                                                                                    Escrow No.: 95004-1651744
Additional instructions made a part of previous pages as if fully incorporated here.

### NORTH AMERICAN TITLE COMPANY, INC.
### GENERAL PROVISIONS

**1.        DEPOSIT AND DISBURSEMENT OF FUNDS**
Unless directed in writing to establish a separate, interest-bearing account together with all necessary taxpayer reporting information, all funds received in this escrow shall be deposited with other escrow funds in general escrow accounts in a federally insured financial institution ("depositories"). As a result of NATC maintaining its general escrow accounts with the depositories, NATC may receive certain financial benefits such as an array of bank services, accommodations, loans or other business benefits from the depositories ("collateral benefits"). All collateral benefits shall accrue to the sole benefit of NATC and NATC shall have no obligation to account to the parties to this escrow for the value of any such collateral benefits. Any such collateral benefits shall  be deemed additional compensation earned by NATC for its services as escrow holder.

**2.        FUNDS TO CLOSE**
The Good Funds Law (California Insurance Code Section 12413.1) mandates that NATC may not disburse funds until the funds are, in fact, available in NATC's account. NATC shall not be responsible for any financial consequences resulting in a delayed closing if funds received by NATC are not available for immediate withdrawal.

Under Section 12413.1 of the California Insurance Code, NATC may only make funds available for disbursement in accordance with the following rules:

**Same day availability.** Disbursement on the date of deposit is allowed only when funds are deposited to North American Title Company, Inc. by Cash or Electronic Transfer (Wire). FRAUD WARNING: NATC will require independent confirmation for any written instructions, amendments, or revisions thereto, from Buyer or Seller relating to wires. If you receive wire instructions from NATC that deviate from wire information you have previously received or been given by NATC, please contact your NATC settlement officer immediately.

Next business day availability. If funds are deposited by cashier's checks, certified checks or teller's checks, disbursement may be on the next business day following deposit. A "teller's check" is one drawn by an insured financial institution against another insured financial institution (e. g., a savings and loan funding with a check drawn against a FDIC insured bank). An Official Check is not a Cashier's Check unless it meets the statutory requirements of a Cashier's Check. It is the parties' responsibility to determine their Bank's check procedure and whether their Bank is able to provide a proper check to afford next day availability. Failure to do so may result in delay of close of escrow.

Second business day availability. If the deposit is made by checks other than those described above, disbursement may occur on the day when funds must be made available to depositors under Federal Reserve Regulation CC. In most cases, this will be the second business day following deposit. (For further details, consult California Insurance Code Section 12413, et seq. and Regulation CC).

These are the minimum periods before funds will be made available. NATC is not obligated to disburse funds at the expiration of the time periods above, and expressly reserves the right to require additional time or another form of deposit before disbursing on deposited funds. Close of escrow and final disbursement will not be made based on deposits in the form of personal checks, corporate checks, credit union checks, money market checks, travelers checks and official checks until confirmation of final clearance of the funds. If any check submitted to NATC is dishonored upon presentment for payment, NATC is authorized to notify all parties and/or their respective agents of such nonpayment.

NATC WILL NOT ACCEPT ACH TRANSFERS. Cash will be accepted only under special circumstances and upon approval by management.

**3.        REISSUANCE OF CHECKS**
In the event any check(s) issued through the escrow or sub-escrow process are uncashed or unnegotiated ("uncashed") for a period of 120 days after NATC's original issuance of such check(s), NATC is authorized and instructed to cancel such check(s) and reissue to the same payee(s) at a charge of $25.00 per check. If the original canceled check is in an amount of $25 or less, then NATC is authorized and instructed to charge and pay to itself as its fee the entire amount of the check as canceled. If any reissued check remains uncashed for a period of 120 days, NATC is authorized and instructed to process the remaining funds for escheatment to the State of California, in accordance with NATC's customary escheatment procedures.

**4.        CLOSE OF ESCROW**
The phrase "close of escrow" (or "COE" or "CE") means the date on which documents are recorded, unless otherwise specified.

**5.        PRORATION, ADJUSTMENTS AND DEMANDS**
Unless otherwise specified in writing, all prorations or adjustments are to be made as of close of escrow on the basis of a thirty (30) day month. NATC is to use the information contained in the latest available real property tax statement (without regard to any reassessments or subsequent changes), rental statement(s) provided by the seller, beneficiary's statement(s), fire insurance policy(ies) delivered into escrow for the prorations provided for herein, without any obligation to verify the accuracy of such information.

**6.        SUPPLEMENTAL TAXES**
The parties acknowledge that the property may be reassessed as a result of a change in ownership or completion of construction. Such reassessment may  result in an increase or decrease in the amount of annual property taxes based on the new property value and also may result in supplemental taxes being assessed for the current year. The parties instruct NATC to: (1) prorate taxes between buyer and seller based on the latest available general tax bill, unless the parties provide a different basis for the proration in writing to NATC; (2) pay all outstanding taxes assessed for prior years, including supplemental taxes, from seller's proceeds, unless instructed otherwise in writing; and (3) prorate supplemental taxes which affect the current year between

(CONTINUED)

General Provisions Revised 41818                        Page 4                                                  95004-1651744

This is to certify that this is a true and correct copy of the original NORTH AMERICAN TITLE COMPANY ESCROW OFFICER

Hansen Decl. Ex A
Page 47

Date:  January 3, 2020
Additional instructions made a part of previous pages as if fully incorporated here.

Escrow No.:  95004-1651744

buyer and seller. Adjustments due either party based on the actual new tax bill issued after close of escrow or a supplemental tax bill will be made by the parties outside of escrow and NATC is released of any liability in connection with such adjustments.

In the event there is a "negative" supplemental tax bill that results in a decrease in the current taxes, the undersigned parties are aware that a refund in whole or in part may be issued by the county tax collector directly to the seller. Any dispute or claim between the parties as a result of such a refund shall be handled between buyer and seller directly, and without involvement of NATC. If the transaction involves a short sale, the parties instruct NATC to send any refund of the property taxes paid by the seller to the short sale lender/beneficiary of the first deed of trust.

The parties agree that NATC is not responsible for determining the potential for any reassessment or supplemental taxes and understand that no funds will be held in escrow to address any potential increase or additional amounts owed. The undersigned release NATC from any claim or liability relating to taxes resulting from a reassessment, supplemental taxes, and any refund or credit of taxes by the County Assessor to one party or the other.

7.  PREPARATION AND RECORDATION OF INSTRUMENTS
NATC is authorized to prepare, obtain, record and deliver the necessary documents to implement the terms and conditions of this escrow and to order the policy of title insurance to be issued at close of escrow as called for in these instructions. Recording fees may include charges for services performed by NATC in addition to an estimate of payments to be made to governmental agencies.

8.  CHANGE OF OWNERSHIP
Revenue and Taxation Code Section 480.3 requires that Grantee or Transferee complete a Preliminary Change of Ownership Report (PCOR) for all deeds and other documents which reflect a change in ownership of real property. If a fully completed and executed PCOR is not handed to NATC for submission to the County in which the property is located, NATC shall close escrow and charge the responsible party any additional fee incurred for recording the documents without the PCOR. NATC shall not be responsible for the failure of Grantee or Transferee, before and/or after the close of escrow, to fully comply with the County's requirements and other requests in connection with the change in ownership of the property.

9.  FIRE, FLOOD AND HAZARD INSURANCE
Except as otherwise instructed by the undersigned, NATC is neither to be concerned with nor make any inquiry as to any fire, flood, hazard and other liability insurance.

10.  POSSESSION AND UTILITIES ISSUES
The parties hereto shall be responsible for transferring physical possession of the subject property and exchanging non-escrow or title related documents pertaining to the property without NATC's involvement or liability therefor.

The transfer of utilities, water, and garbage service, or any interruption or cancellation thereof, is to be settled between the parties directly and outside of escrow, and the parties instruct NATC to close escrow without obtaining information regarding the amount of fees, whether delinquent or pending, for such service, or allocating payment between the parties hereto. The parties acknowledge that NATC shall not be responsible for any

payment whatsoever for these services, whether delinquent or current, assessed or not assessed as a lien against the property or included in a secured property tax roll, and hereby release and hold harmless NATC and its underwriter, from any liability associated with these issues.

11.  COMMUNICATIONS AND NOTICES
All written notices, communications, changes in instructions and documents intended for NATC are required to be delivered by mail, personal delivery, facsimile or electronic media to the NATC office handling this transaction. The parties instruct NATC to rely upon such documents, including those transmitted by facsimile or electronic media, as if they were an originally executed document, and agree to provide NATC with original documents if so requested. NATC may withhold documents and/or funds due to the party until such originals are delivered. The parties acknowledge that documents to be recorded must contain original, notarized signatures, and that non-receipt of the original document(s) may delay the close of escrow.

The parties authorize NATC to deliver any communications, notices or documents prior to close of escrow to the addresses shown below or to their real estate broker(s) or agent(s), attorney(s) and/or accountant(s) involved in this transaction upon their request. Upon close of escrow, the parties instruct NATC to deliver any documents, balances and statements due the undersigned by U.S. mail to the addresses shown below, unless otherwise directed.

12.  AGREEMENT TO REIMBURSE ESCROW HOLDER
NATC is authorized, without the need for further approval, to debit the account of the responsible party for any fees and charges to be paid in connection with this escrow, and for any amounts that such party is obligated to pay to the holder of any lien or encumbrance to establish the title as insured by the policy of title insurance called for in these instructions. If for any reason the responsible party's account is not debited for such amounts at the time of closing, the responsible party agrees to pay them immediately upon demand, or to reimburse any other person or entity who has paid them.

In the event that any party receives funds or is credited with funds to which said party is not entitled, said party agrees, upon NATC's written demand, to return any such funds to the proper party entitled thereto or to NATC for disbursement to the rightful party. If legal action is brought to compel reimbursement or the return of any such funds, said party agrees to reimburse NATC for reasonable legal fees and expenses.

13.  GOVERNMENTAL REPORTING, WITHHOLDING AND DISCLOSURE REQUIREMENTS
The parties are advised to seek independent advice concerning the tax consequences of this transaction, including but not limited to, their withholding, reporting and disclosure obligations. NATC does not provide tax or legal advice and the parties agree to hold NATC harmless from any loss or damage that the parties may incur as a result of their failure to comply with federal and/or state tax laws.

(a) TAXPAYER IDENTIFICATION NUMBER REPORTING
Federal law requires NATC to report seller's social security number or tax identification number (collectively referred to as the "TIN"), forwarding address, and the gross sales price to the Internal Revenue Service ("IRS"). To comply with the USA PATRIOT Act, certain taxpayer identification information (including, but not limited to, the TIN) may be required by NATC

(CONTINUED)

General Provisions Revised 41818

Page 5

95004-1651744

Date: January 3, 2020

Escrow No.: 95004-1651744

Additional instructions made a part of previous pages as if fully incorporated here.

from certain persons or entities involved (directly or indirectly) in the transaction prior to closing. The parties acknowledge that escrow cannot close or documents recorded until the information is provided and certified as to its accuracy to NATC. The parties agree to promptly obtain and provide such information as requested by NATC, and authorize NATC to make such reporting it deems necessary.

**(b) TAXPAYER IDENTIFICATION DISCLOSURE**
Federal and state laws require that certain forms include a party's TIN and NATC is hereby authorized to release such forms to the applicable governmental authority. The parties agree to hold NATC harmless against any fees, costs, or judgments incurred and/or awarded due to the release of their TIN as authorized above.

**(c) FEDERAL AND STATE WITHHOLDING AND REPORTING**
Certain federal reporting and withholding requirements exist for real estate transactions where the seller (transferor) is a non-resident alien, a non-domestic corporation, partnership, or limited liability company, or a domestic corporation, partnership or limited liability company controlled by non-residents, or non-resident corporations, partnerships or limited liability companies.

In accordance with Revenue & Taxation Code Section 18662, a buyer may be required to withhold an amount equal to 3 1/3% (.0333) of the sale price, or an alternative withholding calculation amount certified by the seller in the case of a disposition of California real property interest by either: (1) a seller who is an individual, trust, estate, or when the disbursement instructions authorize the proceeds to be sent to a seller's financial intermediary; or (2) a corporate or partnership seller who has no permanent place of business in California immediately after the transfer of title to the California property. The buyer may become subject to penalty for failure to withhold. The penalty is an amount equal to the greater of 10% of the amount required to be withheld or five hundred dollars ($500). However, notwithstanding any other provision included in the California statutes referenced above, no buyer is required to withhold any amount or be subject to penalty for failure to withhold if : (1) the sale price of the California real property does not exceed one hundred thousand dollars ($100,000); (2) the seller executes a written certificate under the penalty of perjury certifying that the seller is a corporation or a partnership with a permanent place of business in California; or (3) the seller, who is an individual, trust, estate, or a corporation without a permanent place of business in California, executes a written certificate under the penalty of perjury of any of the following: (a) the California real property being sold is the seller's or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code (IRC)); (b) the last use of the property being sold was by the transferor as the transferor's principal residence (within the meaning of IRC Section 121); (c) the California real property is, or will be, exchanged for property of like-kind (within the meaning of IRC Section 1031 but only to the extent of the amount of gain not required to be recognized for California income tax purposes under IRC Section 1031; (d) the California real property has been compulsorily or involuntarily converted (within the meaning of IRC Section 1033) and the seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain for California income tax purposes under IRC Section 1033; or (e) the California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes.

For additional information regarding California withholding, contact the Franchise Tax Board at (toll free) 888-792-4900), or by e-mail at urws@ftb.ca.gov or visit their website at www.ftb.ca.gov.

Failure to withhold and transmit the amount(s) required by these laws may result in penalties against buyer and/ or seller. Withholding obligations are the exclusive obligations of the parties. The parties agree that NATC shall have no liability, obligation or responsibility with respect to such withholding requirements, and release NATC from any liability with respect to same.

**14. CANCELLATION OF ESCROW**
Any principal requesting that NATC cancel this escrow shall deliver, send or provide notice of such demand to NATC in writing. Unless written objection to such notice of demand to cancel is delivered, sent or provided to NATC within ten (10) calendar days after the date of the demand to cancel, NATC is authorized to cancel this escrow. NATC, at its discretion, may nonetheless require mutual cancellation instructions. In the event this escrow is deemed cancelled, NATC is authorized to return the documents to the party depositing same and may return lender's documents and/or funds upon lender's demand. If written objection to cancellation is delivered to NATC, NATC shall hold all funds and instruments in this escrow and take no further action until it is in receipt of mutual, non- conflicting written instructions signed by all parties or upon entry of a final order of a court of competent jurisdiction. If no action is taken in this escrow for any six (6) month period, this escrow shall be deemed cancelled and NATC shall be entitled to resign as escrow holder without further liability or notice to the parties, In the event of cancellation of this escrow, whether at the request of any of the parties or otherwise, the fees and charges due NATC, including expenditures incurred by NATC on behalf of and/or as authorized by the parties, shall be borne equally by the parties or as may be determined by a court of competent jurisdiction.

**15. CONFLICTING INSTRUCTIONS AND DISPUTES**
If NATC becomes aware of any conflicting demands or claims concerning this escrow, NATC shall have the right to discontinue all further acts on NATC's part until the conflict is resolved to NATC's satisfaction (subject to the provisions pertaining to cancellation of escrow, NATC's right to initiate an action in interpleader and NATC's right of resignation, as set forth in these provisions). The parties agree that in the event of a dispute between the parties, NATC has the absolute right, at its election, to file an action in interpleader naming the parties, and is authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the parties jointly and severally agree to pay NATC's cancellation charges and costs, expenses and reasonable attorney's fees which NATC is required to expend in this interpleader action. Upon the filing of the action, NATC shall be fully released from all obligations to further perform any duties otherwise imposed by the terms of this escrow.

**(CONTINUED)**

General Provisions Revised 41818

Page 6

95004-1651744

This is to certify that this is a true and correct copy of the original. NORTH AMERICAN TITLE COMPANY

Hansen Decl. Ex A
Page 49

Date: January 3, 2020

Escrow No.: 95004-1651744

Additional instructions made a part of previous pages as if fully incorporated here.

**16. RIGHT OF RESIGNATION**

Upon five (5) calendar days' written notice delivered to the parties, NATC has the right to resign as escrow holder: (a) if there is no action taken in this escrow for any six (6) month period and/or (b) for any reason. If such right is exercised, NATC is authorized to return all funds and documents to the party who deposited them and NATC shall have no further liability in this escrow.

**17. ESCROW INSTRUCTIONS, COUNTERPART APPROVAL AND SEVERABILITY**

Any escrow instruction, amendment or supplement to these instructions must be in writing. Collectively, these escrow instructions constitute the entire agreement between the escrow holder and the parties. These escrow instructions, amendments and supplements may be executed in one or more counterparts, each of which independently shall have the same effect as if it were the original, regardless of date of execution or delivery, and all of which taken together shall constitute one and the same instruction. In these instructions, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular includes the plural. In the event one or more of these General Provisions is held to be invalid in judicial, administrative or other proceedings, the remaining General Provisions will continue to be operative. Should there be any conflict between these General Provisions and any other agreements of which these General Provisions are a part, all the terms and conditions of these General Provisions shall control as to NATC. Once the parties have performed and/or satisfied all conditions to escrow, NATC is authorized to close escrow without further instruction or authorization.

**18. DISCLOSURE OF CONDITIONS PRECEDENT**

The parties to this escrow, by placing their initials below and their execution hereof, each acknowledge that he/she/it has fully disclosed to NATC all matters that shall affect the transfer of the subject property in this escrow and conditions of title (including but not limited to real, personal, intangible, and leased property and systems, which matters may result in a lien against the subject property).

Disclosure shall include, but is not limited to, water, stock, owners association or maintenance dues, contractual obligations not automatically terminated upon sale, notes, deeds of trust, encumbrances, vendors liens, easements, covenants, conditions, restrictions, rights and other matters affecting title, whether of record or not.

**19. DELIVERY OF PURCHASE AGREEMENT, OTHER DOCUMENTS AND FEES**

The parties to this escrow each warrant that he/she/it has timely provided and delivered to NATC a full and complete copy of any purchase agreement, counter offer, amendment, addendum or supplement (collectively, "purchase documents"), and all other documents and fees required of each of them by the purchase documents. The failure to timely deliver any of the purchase documents, other documents or fees required thereunder by either party to NATC may delay the close of escrow or result in a cancellation of the escrow, and in such case, the parties

agree to hold harmless and indemnify NATC from any loss or damage incurred thereby. If any form of purchase documents is deposited to this escrow, it is understood that such document shall be effective only as between the parties signing the purchase documents except as specifically provided therein. The terms and conditions of the purchase documents that are not specifically directed to Escrow Holder are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. To the extent these General Provisions are inconsistent or conflict with any of the purchase documents, the General Provisions will control as to the duties and obligations of Escrow Holder

**20. AUTHORITY TO ACT**

Prior to any disbursement of funds held by NATC from this escrow, including funds deposited by a third party for the account or on behalf of either principal herein, or upon the request of NATC at any time prior to the close of escrow, the parties agree to promptly hand to Escrow Holder, or in the case of third party deposit(s), to cause the third party depositor to promptly hand over to Escrow Holder, all applicable documentation to establish, to the satisfaction of NATC, their authority to act. The failure to timely provide, or to cause the third party depositor to timely provide, NATC with such documentation may delay the disbursement of funds before or following the close of escrow or the close of escrow, for which the parties hereto hold harmless and indemnify NATC from any loss or damage resulting therefrom. These documents may include, but shall not be limited to:

1)  If an individual: Statement of Information
2)  If a corporation: A corporate resolution signed by the Secretary of the corporation, authorizing the acquisition, encumbrance or sale of the subject property, and designating the authorized signatories on behalf of the corporation, together with a copy of the Articles of Incorporation and bylaws
3)  If a trust: A copy of the trust agreement, any amendments thereto and/or Trust Certification
4)  If a general partnership: An original Statement of Partnership, in recordable form (if not already recorded), together with a copy of the partnership agreement (Note: if partners of a partnership are individuals, each partner may be required to submit a Statement of Information)
5)  If a limited partnership: The LP-1 form, certified by the Secretary to record (if not already recorded), together with a copy of the partnership agreement
6)  If a joint venture: The requirements specified in 1, 2, and 3 above will be applicable as they relate to the entities that comprise the joint venture
7)  If a limited liability company ("LLC"): the LLC-1, certified by the Secretary to record (if not already recorded), identifying an expiration date, and identifying a designee as managing member of the LLC, and a copy of the operating agreement.

---

**THE ESCROW HOLDER IS NORTH AMERICAN TITLE COMPANY, INC., WHICH IS LICENSED BY THE CALIFORNIA
DEPARTMENT OF INSURANCE UNDER CERTIFICATE OF AUTHORITY NUMBER 6170-5.**

General Provisions Revised 1/7/2019

*This is to certify that and correct copy of the original NORTH AMERICAN TITLE COMPANY ESCROW OFFICER*

(CONTINUED)

General Provisions Revised 41818

Page 7

95004-1651744

Hansen Decl. Ex A
Page 50

Date:  January 3, 2020                                                    Escrow No.:  95004-1651744

Additional instructions made a part of previous pages as if fully incorporated here.

ALL PARTIES ACKNOWLEDGE THAT NORTH AMERICAN TITLE COMPANY, INC. HAS NOT GIVEN AND WILL NOT GIVE ANY LEGAL, TAX, REAL ESTATE OR INVESTMENT ADVICE IN THE ESCROW, NOR HAS IT MADE NOR WILL IT MAKE ANY INVESTIGATION, REPRESENTATIONS, OR ASSURANCES AS TO SUCH MATTERS OR AS TO COMPLIANCE OF THIS TRANSACTION WITH ANY TAX, SECURITIES, OR ANY OTHER FEDERAL OR STATE LAWS OR REGULATIONS.   NORTH AMERICAN TITLE COMPANY, INC. RECOMMENDS THAT THE PARTIES SEEK AND OBTAIN INDEPENDENT LEGAL COUNSEL AND OTHER PROFESSIONAL ADVICE AS TO ALL SUCH MATTERS.

BUYER(S):

150 La Sierra, LLC, a California limited liability company

By: Jinzheng Group USA,LLC, a California limited liability company
    Its Managing Member

BY: _____
    Betty Zheng
    Manager

Date: _____

General Provisions Revised 41818                    Page 8                    95004-1651744

This is to certify that this is a true and correct copy of the original
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER

Hansen Decl. Ex A
Page 51

## Privacy Policy

Rev. 01/07/2019

### The States Title Family of Companies

| FACTS | WHAT DOES THE STATES TITLE FAMILY OF COMPANIES DO WITH YOUR PERSONAL INFORMATION? | | |
|---|---|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some, but not all, sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. | | |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and income<br>• Transaction history and payment history<br>• Purchase history and account balances | | |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons the States Title Family of Companies ("ST") chooses to share, and whether you can limit this sharing. | | |

| Reasons we can share your personal information | Does ST share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**<br>Such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**<br>To offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**<br>Information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**<br>Information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | Call 1 (650) 419-3827 |
|---|---|

Loan Instruction - Privacy Policy                    Page 9

This is to certify that this is a true and correct copy of the original
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER
95004-1651744

Hansen Decl. Ex A
Page 52

**Page 2**

| Who we are | |
|---|---|
| Who is providing this notice? | The States Title Family of Companies (identified below), which offers title insurance and settlement services. |

| What we do | |
|---|---|
| How does ST protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secure files and buildings. |
| How does ST collect my personal information? | We collect your personal information, for example, when you<br>• Apply for insurance;<br>• Apply for financing;<br>• Give us your contact information<br>• Provide your mortgage information<br>• Show your government-issued ID<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• Sharing for affiliates' everyday business purposes – information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account – unless you tell us otherwise. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control.  They can be financial and nonfinancial companies. |
| Nonaffiliates | Companies not related by common ownership or control.  They can be financial and nonfinancial companies.<br>• Nonaffiliates we share with can include collection agencies, IT service providers, companies that perform marketing services on our behalf, and consumer reporting agencies. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• ST doesn't jointly market. |

The States Title Family of Companies consists of the following entities:

States Title Holding Inc.
States Title, Inc.
States Title Insurance Company
States Title Insurance Company of California
States Title Agency, Inc.
Spear Agency Acquisition Inc.
Title Agency Holdco, LLC.

North American Title Company
North American Title Company, Inc.
North American Title Company of Colorado
North American Title Insurance Company
North American Title Services, LLC
North American Title Agency, Inc.
North American Title, LLC
North American Title Company, LLC
NASSA LLC
North American Asset Development, LLC

This is to certify that this is a true and correct copy of the original
NORTH AMERICAN TITLE COMPANY
ESCROW OFFICER
95004-1651744

Hansen Decl. Ex A
Page 53

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006



**Sound Equity Inc**
929 108th Ave NE, Suite 1030
Bellevue, WA  98004
Phone (888) 490-4450
www.SoundEquity.com

Jianqing Yang                                                    January 15, 2020
150 La Sierra, LLC
100 East Huntington Drive #207
Alhambra, CA  91801

Dear Jianqing Yang,

I would like to personally thank you for choosing Sound Equity to help finance your investment objectives.

One of our core values is to treat you, our valued customers, as true partners.  We know that we're only successful if our customers are successful.  So, please don't hesitate to let us know how we can help you succeed.

Enclosed you will find the loan package for the transaction at 150 E La Sierra Dr, ARCADIA, CA, loan number 20010794 including:

- - 1st payment instructions (borrower copy)
- – Automated payments setup form
- - Loan docs to be signed in front of notary.

- 

Please complete and execute the loan documents in front of an authorized notary promptly.

Thank you again for your business.  I look forward to working with you again soon.

Sincerely,

David Huey

Sound Equity Inc.

Hansen Decl. Ex A
Page 54

# SOUND EQUITY

## THE ASSURED ALTERNATIVE.

## BUDGET - COST BREAKDOWN

### Project Information

| Borrower's Name | Project / Lot # |
|---|---|
| Jinzheng Group USA, LLC | |
| Property Address | Plan Name / Square Footage |
| 150 East La Sierra, Arcadia, CA | La Sierra / 6,403.1 SF Living & 735 SF Garage |

### Item

| | Item | Cost | Budget Spent So Far | Remaining |
|---|---|---|---|---|
| 1 | Plans / Engineering / Surveys | 0.00 | 0.00 | 0.00 |
| 2 | Permits / Fees | 45,858.00 | 45,858.00 | 0.00 |
| 3 | Excavation / Demo / Sitework | 30,172.76 | | 30,172.76 |
| 4 | Backfill / Grading | | | 0.00 |
| 5 | Septic / Sewer / Trenching Materials | 37,200.00 | | 37,200.00 |
| 6 | Foundation | 82,000.00 | | 82,000.00 |
| 7 | Garage / Basement Floors (see 8) | | | 0.00 |
| 8 | Framing - Lumber / Hardware | 289,800.00 | | 289,800.00 |
| 9 | Framing - Labor (see 8) | | | 0.00 |
| 10 | Trusses (see 8) | | | 0.00 |
| 11 | Windows / Sliders | 87,789.00 | | 87,789.00 |
| 12 | Doors - Exterior (see 11) | | | 0.00 |
| 13 | Garage Doors / Openers (see 11) | | | 0.00 |
| 14 | Roofing | 98,768.60 | | 98,768.60 |
| 15 | Siding - Material | 15,000.00 | | 15,000.00 |
| 16 | Siding - Labor | 15,000.00 | | 15,000.00 |
| 17 | Fire Sprinklers (see 20) | | | 0.00 |
| 18 | Masonry | 51,500.00 | | 51,500.00 |
| 19 | Fireplace | 3,500.00 | | 3,500.00 |
| 20 | Plumbing - Rough | 105,000.00 | | 105,000.00 |
| 21 | Heating / Ventilation | 26,251.00 | | 26,251.00 |
| 22 | Air Conditioning Unit (see 21) | | | 0.00 |
| 23 | Electrical - Rough | 100,504.00 | | 100,504.00 |
| 24 | Solar Panels | 2,500.00 | | 2,500.00 |
| 25 | Insulation | 25,000.00 | | 25,000.00 |
| 26 | Conection Fees - Electric (see 57) | | | 0.00 |
| 27 | Connection Fees - Sewer (see 57) | | | 0.00 |
| 28 | Connection Fees - Water (see 57) | | | 0.00 |
| 29 | Drywall | 43,800.00 | | 43,800.00 |
| 30 | Painting - Interior | 19,000.00 | | 19,000.00 |
| 31 | Painting - Millwork | 5,000.00 | | 5,000.00 |
| 32 | Painting - Exterior | 28,000.00 | | 28,000.00 |
| 33 | Cabinets / Vanities (see 43) | | | 0.00 |
| 34 | Countertops | 48,000.00 | | 48,000.00 |
| 35 | Flooring - Hardwood/Tile | 24,000.00 | | 24,000.00 |
| 36 | Flooring - Marble | 58,000.00 | | 58,000.00 |
| 37 | Flooring - Carpet | 24,000.00 | | 24,000.00 |
| 38 | Plumbing - Finish (see 20) | | | 0.00 |
| 39 | Electrical - Finish (see 23) | | | 0.00 |
| 40 | Lighting Fixtures | 27,320.00 | | 27,320.00 |
| 41 | Doors - Interior / Millwork (see 43) | | | 0.00 |
| 42 | Finish Carpentry / Hardware (see 43) | | | 0.00 |
| 43 | Finish Labor & Metal work | 72,053.00 | | 72,053.00 |
| 44 | Decks / Porches - Wood or Composite | 17,250.00 | | 17,250.00 |
| 45 | Waterproofing - Deck (see 44) | | | 0.00 |
| 46 | Gutters /Downspouts (see 14) | | | 0.00 |
| 47 | Exterior Flatwork / Driveway | 9,520.00 | | 9,520.00 |
| 48 | Mirrors / Shower Doors | 7,500.00 | | 7,500.00 |
| 49 | Appliances | 54,118.00 | | 54,118.00 |
| 50 | Landscape / Fence / Rockery | 65,000.00 | | 65,000.00 |
| 51 | Utilities - Temporary (see 57) | | | 0.00 |
| 52 | Clean Up - Construction (see 57) | | | 0.00 |
| 53 | Clean Up - Final (see 57) | | | 0.00 |
| 54 | Overhead / Supervision | 35,841.00 | | 35,841.00 |
| 55 | Miscellaneous / Other | 11,612.64 | | 11,612.64 |
| 56 | Insurance - Builders Risk | 25,000.00 | | 25,000.00 |
| 57 | Contingency | 65,000.00 | | 65,000.00 |
| 58 | Sales Tax (incorporated into above estimates) | | | 0.00 |
| | **Hard Cost Total:** | **1,655,858.00** | **45,858.00** | **1,610,000.00** |

### SIGNATURES

I/We hereby certify that the above costs accurately represent all costs to complete the project.

BORROWER SIGNATURE                    DATE  1-21-2020

\* Reciepts needed for any draws requested to be paid at fundng as WIP

Hansen Decl. Ex A
Page 55

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

# NOTARY: PLEASE LEAVE THIS PAGE WITH BORROWER

## FIRST PAYMENT NOTIFICATION

Dear Jianqing Yang,

Sound Equity has selected FCI Lender Services for payment processing. FCI will send you a welcome package with the FCI loan number, but your first payment is due on the date shown below regardless of your receipt of the welcome package. FCI may be reached at (800) 931-2424 with any questions regarding payments.

Total Monthly Mortgage Payment:                          **$5,468.92**
        Your loan includes no Impounds/Escrows

Automated monthly payments (ACH) may be setup, and is highly encouraged, by completing the form on the next page. Your first payment is due on 1st day of each month beginning **3/1/2020** and is to be mailed to the following address if automated payments are not setup. Please indicate your FCI loan number on payments.

        FCI Lender Services Inc.
        8180 E. Kaiser Blvd
        Anaheim Hills, CA  92808

**A late charge of 5.00% of the monthly payment will be charged on all payments received after 10 calendar days of monthly due date.**

**Borrower Certification:**
I understand that my mortgage payments are due monthly by the due date specified and all correspondence should be mailed to:

        Jianqing Yang
        150 La Sierra, LLC
        100 East Huntington Drive #207
        Alhambra, CA 91801

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

        By: _____
              Betty Zheng, Its Manager

Sound Equity Inc.

Hansen Decl. Ex A
Page 56

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## CERTIFICATE OF BUSINESS PURPOSE LOAN

Borrower certifies that he/she/they is/are applying for a loan for business purposes only, and that the lender does not make consumer loans intended for the purpose of personal use. Borrower represents and warrants to Lender/Broker the preceding and understands Lender/Broker would not make a loan to Borrower if these statements proved incorrect. Should Borrower violate any representation or warranty made herein or such representation or representation be false or become false during the period that the loan is outstanding, then Borrower shall be deemed to be in default of this Certificate of Business Purpose Loan as well as the Deed of Trust and Promissory Note and shall be subject to default rate among any and all other remedies available to Lender.

This loan is a commercial loan for business purposes only.  No part of the loan proceeds will be used for any non-business (i.e. consumer, personal, family, or household) purpose.

Borrower represents and warrants that he/she/they does/do not occupy subject property as his/her/their primary residence, does not intend to do so in the future, and furthermore represents and warrants that he/she/they shall not in the future occupy the subject property as his/her/their residence (primary, secondary, or otherwise).

Borrower understands and warrants that he/she/they are knowledgeable and comprehend the difference between a consumer loan for personal purposes and a commercial loan for business purposes.  As such Borrower understands the significance and importance of such a distinction, and has the ability and comprehension to identify the purpose of this loan.

Borrower represents that this loan is not a consumer loan and therefore is not subject to any laws that Borrower may otherwise be entitled to had such loan been a consumer loan. Borrower waives his/her/their right and any defenses he/she/they may have or would have had under any state or federal laws that are based on consumer transactions.

Borrower has applied to Lender for a loan of $2,340,000.00 secured by the real property at the Property Address above (the "Property").

Borrower agrees to hold Lender and Broker harmless and agrees to defend, indemnify, protect and hold Lender and Broker and their agents, officers, contractors, and employees harmless from and against any and all claims asserted or liability established that arises from the falsity of any part of this declaration.

DO NOT sign this form if any part of the proceeds of this loan is used for any purpose other than a commercial business purpose.

The Lender, Broker, assignees and successors of the same may rely upon this certificate. Borrower hereby declares under penalty of perjury and the laws of the State of California that the forgoing is true and correct.

IN WITNESS WHEREOF, the undersigned have executed this Certificate of Business Purpose Loan as of January 15, 2020.

Borrower:   150 La Sierra, LLC, a[n] California Limited Liability Company


150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____

Betty Zheng, Its Manager




Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## BORROWER'S CERTIFICATION

**The undersigned declare(s) under penalty of perjury under the laws of the State of California that the following is true and correct:**

1. Borrower is a United States citizen and resident with full legal capacity to enter into the loan documents for the Loan. Borrower has all requisite power and authority to enter into all documents required in connection with the above described transaction (hereinafter together referred to as the **"Loan Documents"**) and to carry out the obligations of borrower contemplated by the Loan Document and to own all of the Mortgaged Property.

2. That Borrower has all necessary power and authority to execute and deliver the Loan Documents. In the event that Borrower is comprised of two or more entities who hold title as tenants in common, joint tenancy, community property, or other co-tenancy, each Borrower agrees, and shall be estopped to deny, that (i) each Borrower is jointly and severally liable for all obligations of Borrower under the Loan Documents and not merely for an allocated portion thereof, and (ii) the Loan Documents are intended to grant to Lender a mortgage lien and security interest in and to the entire Mortgaged Property and the proceeds thereof, and not merely a lien and security interest in and to a tenant in common or other co-tenancy interest.

3. Borrower recognizes that certain state and federal regulations apply to loans for personal, household or family purposes and the Lender is unwilling to lend for such purposes. Borrower warrants that the Loan is solely for commercial or business purposes and not consumer, personal, family, or household purposes. Borrower represents and warrants that it is not purchasing the Subject Property for his, her or its personal residence or dwelling and has no intention of residing therein.

4. As of the date hereof, there are no setoffs, defenses or counterclaims to the payment of the indebtedness evidenced by the Note, and Borrower hereby agrees that if any such defense to the payment of such indebtedness should hereafter exist against Lender, except to the extent such defense is permitted or provided by the usury laws of the State of California, the same will not be raised against Lender.

5. Borrower owns (or will own, prior to the closing of the subject loan) fee simple title to all of the Mortgaged Property; the Mortgage creates the lien and security it purports to create and is a valid and binding obligation of Borrower enforceable against Borrower and the Mortgaged Property in accordance with its terms; and the Note represents a valid and binding obligation of the Borrower enforceable in accordance with its terms.

6. There is not pending against Borrower any petition in bankruptcy, whether voluntary or otherwise, any assignment for the benefit of creditors, any petition seeking reorganization, liquidation or arrangement under the bankruptcy laws of the United States or of any state thereof, or any other action brought under the aforesaid bankruptcy laws; there are no law suits or legal proceedings ending or to the best of the Borrower's knowledge threatened in any court or before any governmental agency involving Borrower or the Mortgaged Property, nor are there any judgments outstanding against Borrower and the financial condition of Borrower as of the date of
hereof has not adversely changed from the financial condition as indicated by the financial statements furnished to Lender and said financial statements are substantially true and accurate as of the date hereof.



Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

7. Borrower is not engaged and has not been engaged at any time since Borrower's acquisition of the Mortgaged Property in a "pattern of racketeering activity" within the meaning of 18 U.S.C. 1961, as amended, nor has Borrower committed any other act or engaged in any other pattern of actions, the potential results of which might include forfeiture of Borrower's interest in the Mortgaged Property.

8. Borrower is acting in this loan for its own account for commercial purposes and will receive and apply the loan proceeds for its own account and not as an agent or trustee for others.

9. No part of the Mortgaged Property or the improvements located thereon have been damaged and not repaired to Lender's satisfaction, nor taken in any condemnation or other similar proceeding, nor is any such proceeding pending or to the best of Borrower's knowledge threatened.

10. The Mortgaged Property is not subject to any leases other than the leases described in the rent roll provided to Lender, such rent roll is true, accurate, complete and correct in all material respects, including the description of the rent, term, and pay through date. All the information submitted by or on behalf of Borrower to Lender in connection with the loan, including but not limited to financial statement(s), tax return(s), operating statement(s), bank statements(s), and management agreement(s) are true, accurate complete and correct in all material respects.

11. The improvements located on the Mortgaged Property have been completed in accordance with the plans and specifications and all recommendations of the soils engineer, including any grading, seeding, landscaping and all other off –site improvements relating to the operation of the Mortgaged Property; direct connection has been made from the Mortgaged Property to abutting public water, sewer, gas, electric, telephone and all other facilities necessary to serve the Mortgaged Property for its intended use; the improvements are ready for occupancy; and the original building permit, unconditional certificates of occupancy and all other consents and approvals of all governmental authorities having jurisdiction over the Mortgaged Property have been issued, evidencing compliance with all zoning, building and other laws and regulations applicable to the Mortgaged Property and the improvements located thereon. Borrower affirms that all invoices for any and all labor performed or materials installed or integrated into the property were paid and satisfied in full prior to the making of this loan.

12. This certificate is given by Borrower to induce Lender to make a loan to Borrower evidenced by the Note and secured by the Mortgage and other Loan Documents, with the knowledge that Lender will rely upon the truth of the statements made herein.

13. The Mortgaged Property is not in violation of any federal, state or local law, ordinance or regulation relating to industrial hygiene or to environmental conditions in, on, under or about the Mortgaged Property including but not limited to soil and groundwater conditions. Neither Borrower nor, to the best of Borrower's knowledge, any third party has used, generated, manufactured, stored or disposed of in, on, under or about the Mortgaged Property or transported to or from the Mortgaged Property any hazardous materials.

14. The improvements located on the Mortgaged Property are either exempt from the accessibility requirements of the Americans with Disabilities Act, 42 U.S.C.A. 121.01 et.deq. (hereinafter called the "**ADA**"), or if not exempt, said improvements are accessible to and usable by persons with disabilities and complies (and shall, at all times during the term of the subject loan be maintained in compliance) with the ADA, and the regulations thereunder promulgated by he U.S. Architectural and Transportation Barriers Compliance

Sound Equity Inc.

Hansen Decl. Ex A
Page 59

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

Board (36 C.F.R 1191 et. Seq.) and by the U.S. Department of Justice (28 C.F.R. Part 36), including without limitation the ADA Accessibility Guidelines for Buildings and Facilities attached as an Appendix to said regulations. The Mortgaged Property is in compliance with the Fair Housing Amendments Act of 1998, as amended, as well as any other state or local laws and ordinances related to handicapped access.

15. The relationship between the parties created by the Agreement is one of Borrower and Lender not a partnership or joint venture.  Except for the sole purpose of accepting delivery and recording of the Trustee's Deed, Lender is not an agent of Borrower and, in any event, Borrower is not an agent of Lender.

16. Lender makes no representations or warranties to Borrower regarding the Subject Property or the suitability of Borrower's investment in the Subject Property.  As to Lender, Borrower purchases the Subject Property AS IS, with all faults, and subject to any tenancies, encumbrances, or defects that may exist or survive the Sale.  Borrower acknowledges that there is inherent risk in the purchase of distressed properties, that Borrower purchases the Subject Property without the benefit of an inspection or title insurance, and personally assumes all such risk.  Borrower acknowledges that it has no right to rescind the purchase after the Sale.

17. This Certificate may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but on Certificate.

Borrower:
150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
        Betty Zheng, Its Manager



Sound Equity Inc.

Hansen Decl. Ex A
Page 60

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

# DISCLOSURE STATEMENT

## THIS LOAN HAS A BALLOON PAYMENT.

THIS LOAN MUST EITHER BE PAID IN FULL AT MATURITY OR REFINANCED. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

## Occupancy Statement

This is to certify that I/we **do not** intend to occupy the subject property as it is my/our **investment property.** We/I hereby certify under penalty of U.S. Criminal Code Section 1010 Title 18 U.S.C., that the above statement submitted is true and correct.

## Patriot Act Information Disclosure

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies every customer.  What this means for you: When you apply for a loan, we will ask your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## Fair Credit Reporting Act

An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of denied credit due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of right to request within sixty (60) days the reason for the adverse action. Pursuant to provisions of section 615(b) of the Fair Credit Reporting Act.

## Equal Credit Opportunity Act

The Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex. marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. Income which you receive as alimony, child support, or separate maintenance need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan. Income from these and other sources, including part-time or temporary employment will not be discounted by this lender because of your sex or marital status. However, we will consider very carefully the stability and probable continuity of any income you disclose to us. The Federal Agency that administers compliance with this law concerning this creditor is: Federal Trade Commission

## ECOA Appraisal/Valuation Notice

In accordance with Federal Equal Credit Opportunity Act §1002.14(a), this document notifies you that the current estimated market value for 150 E La Sierra Dr, ARCADIA, CA 91006, as determined internally by our underwriting team, is $1,650,000.00.

IF AN APPRAISAL OR OTHER WRITTEN VALUATION IS USED IN CONNECTION WITH YOUR LOAN APPLICATION, YOU HAVE THE RIGHT TO A COPY, EVEN IF

Sound Equity Inc.

Hansen Decl. Ex A
Page 61

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

YOUR LOAN DOES NOT CLOSE. If you wish a copy, please write to us no later than 90 days after we notify you about the action taken on your credit application or you withdraw your application.  In your letter, give us loan number 20010794.

### Fire/Hazard Insurance Disclosure (CAL. CIVIL CODE 2955.5)

"Hazard insurance coverage" means insurance against losses caused by perils which are commonly covered in policies described as a "Commercial Policy," "Homeowner's Policy," "General Property Form," "Guaranteed Replacement Cost Insurance," "Special Building Form," "Standard Fire," "Standard Fire with Extended Coverage," "Standard Fire with Special Form Endorsement," or comparable insurance coverage to protect the real property against loss or damage from fire and other perils covered within the scope of a standard extended coverage endorsement. "Improvements" means buildings or structures attached to the real property."

I/we understand that I/we must have fire insurance in order for my/our loan to fund. I/we authorize the lender to arrange for Limited Excess Coverage so that my/our loan can fund in the event I/we do not provide fire and hazard insurance prior to the close of escrow.  In the event I/we allow our insurance to lapse/expire at any time during the term of the loan, I/we authorize Lender or their Agent to arrange for Limited Excess Coverage on a dwelling form.

I/we understand that if Limited Excess Coverage is arranged I/we may cancel this Limited Excess Coverage at any time and receive a refund for the unearned premium once I/we are able to provide the lender with my/our own fire insurance policy. The amount of the limited excess coverage is in accordance with the insurance company's rates and the cost of the limited excess coverage is in accordance with the insurance company's rates.

I/we understand that the LIMITED EXCESS INSURANCE PROVIDED ON DWELLING FORM WHICH COVERS ONLY STRUCTURES. THE INSURANCE MAY NOT BE ADEQUATE AND, AMONG OTHER THINGS DOES NOT PROVIDE PERSONAL PROPERTY, LIABILITY, WORKERS' COMPENSATION, EARTHQUAKE, FLOOD OR LANDSLIDE COVERAGE. PLEASE NOTE THAT THIS IS EXCESS COVERAGE OVER ANY OTHER VALID AND/OR COLLECTIBLE INSURANCE ON THIS BUILDING.

No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property.

I/we understand that the cost of this coverage ordered by me/us may be HIGHER than that which is available to me/us in the standard insurance market. I/WE UNDERSTAND THAT I/WE AM ENCOURAGED TO PROVIDE THE LENDER WITH MY/OUR OWN FIRE INSURANCE POLICY AS SOON AS POSSIBLE.

### Privacy Policy Disclosure

We take our clients' financial privacy very seriously. During the course of processing your application, we accumulate non-public personal financial information from you and from other sources about your income, your assets, and your credit history in order to allow a lender to make an informed decision about granting you credit. We restrict access to non-public personal information about you to those employees who need to know that information to provide products and services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your non-public personal information.

Sound Equity Inc.

Hansen Decl. Ex A
Page 62

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

Information Collected:
We collect non-public personal information about you from the following sources:

- Information we received from you on the applications or other forms, such as your name, address, social security number, assets, and income
- Information about your transactions with us, our affiliates, or others, such as your account        balance payment history
- Information we received from a consumer reporting agency, such as your creditworthiness and credit history

Information Shared: We may disclose the above information about you to the following types of third parties:

- Financial service providers, such as mortgage bankers, securities broker-dealers, and insurance agents.
- Non-financial companies, such as title or escrow companies, appraisal companies, etc.
- Others, such as non-profit organizations

We may disclose the above information to companies performing marketing services on our behalf or to other financial institutions with which we have joint marketing agreements. By sharing this information, we can better understand your financial needs and offer products to help you better reach your financial goals.

The information sharing described above is subject to your right to direct that we do not make the disclosures, and this opt out right is described below. We may disclose non-public personal information about you, including consumer report type information that relates solely to our transactions and experiences with you, to our affiliates, and this information sharing is not subject to an opt out right. We may wish to share consumer report type information that does not relate solely to our transactions and experiences with you ("Other Information") with our affiliates who may have products or services that are of interest to you, or who may be able to offer assistance in connection with your transaction. You have the right to opt out of our sharing of Other Information with our affiliates.

Opting Out:
If you prefer that we do not disclose non-public personal information about you to non-affiliated third parties, you may opt out of those disclosures, that is, you may direct us not to make these disclosures (other than disclosures permitted by law).

As noted above, you also have the right to opt out of our sharing of Other Information, that is, direct us not to share Other Information, with our affiliates.

If you would like to limit disclosures of personal information about you as described in this notice, just check the appropriate box(s) to indicate your privacy choices and fax, email, or call us with your choices.

( ) Please do not share information about me with non-affiliated third parties
( ) Please do not share Other Information about me with your affiliates
( ) Please do not contact me with offers or products or services by mail or telephone

For Joint Accounts, your opt out choices will also apply to other individuals who are joint account holders. If these individuals have separate accounts, your opt out will not apply to those separate accounts.

**Per Diem Interest Disclosure (CAL. CIVIL CODE 2948.5)**
Lenders shall not require borrowers to pay interest on a mortgage loan for a period in excess of one day prior to the disbursement of loan proceeds from the escrow/title company, unless the following disclosure is made in writing to the borrower:



Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

1. The amount of additional per diem (per day) interest charged to accommodate disbursement on Monday or the day following a holiday, as the case may be, and
2. That it may be possible to avoid the additional per diem interest charge by disbursing the loan proceeds on a day immediately following a business day.

If your loan proceeds are disbursed on a Monday or a day following a holiday, you will be charged interest beginning on the preceding business day. You may avoid the additional per diem interest charge if the date for loan-proceeds disbursement is changed to a day immediately following a business day as defined in the Government Code.

**<u>Servicing Disclosure</u>**
"Servicing" refers to collecting your principal, interest, and escrow payments, if any, as well as sending any monthly or annual statements, tracking account balances, and handling other aspects of your loan. We may assign, sell, or transfer the servicing of your loan while the loan is outstanding. You will be given notice of any change in servicing.

150 La Sierra, LLC, a California limited liability company
By: Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
Betty Zheng, Its Manager



Sound Equity Inc.

Hansen Decl. Ex A
Page 64

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## USA PATRIOT ACT INFORMATION FORM

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies every customer. When applying for a loan, applicants will be asked for their name, address, date of birth, and other information that will allow lenders to identify them. Applicants will also be asked to show their driver's license or other identifying documents.

**INSTRUCTIONS TO INDIVIDUAL COMPLETING THIS VERIFICATION:**
The named individual must present at least two (2) forms of identifying documents for review; at least one (1) of the identifying documents must be an unexpired government-issued document bearing a photograph of the named individual.

Name: Betty Zheng
Date of Birth: 06/24/67                    SSN: 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

| Identifying Documents | Place of Issuance | ID No | Date of Birth | Issue/ Expiration Date(s) | Photo? |
|---|---|---|---|---|---|
| State/ Foreign DL | CDL DMV | M6508041 | 6/24/67 | 512247  6124122 | ☒ YES  ☐ NO |
| State/ Foreign ID | | | | | ☐ YES  ☐ NO |
| US / Foreign Passport | | | | | ☐ YES  ☐ NO |
| Military ID | | | | | ☐ YES  ☐ NO |
| Resident Alien Card | | | | | ☐ YES  ☐ NO |
| Social Security Card | US Govt | 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 | | | |
| Birth Certificate | | | | | |
| | | | | | |

**ADDITIONAL COMMENTS**
Please note any discrepancies in the borrower's identifying documents: _____

**CERTIFICATION**
I, the undersigned, hereby certify that: (i) I have personally examined the identifying documents indicated above presented to me by the named individual, (ii) I have accurately recorded the information appearing in the identifying documents I examined, and (iii) except as may be indicated above, each of the indicated identifying documents appears to be genuine, the information contained in the identifying documents is consistent in all respects with the information provided by the named individual, and where applicable, the photograph appears to be that of the named individual.

BETTY ZHENG / Managing Member                1-21-2020
Name and Title            Signature            Date

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## USA PATRIOT ACT INFORMATION FORM

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies every customer. When applying for a loan, applicants will be asked for their name, address, date of birth, and other information that will allow lenders to identify them. Applicants will also be asked to show their driver's license or other identifying documents.

**INSTRUCTIONS TO INDIVIDUAL COMPLETING THIS VERIFICATION:**
The named individual must present at least two (2) forms of identifying documents for review; at least one (1) of the identifying documents must be an unexpired government-issued document bearing a photograph of the named individual.

Name: Betty Zheng

Date of Birth: 6|24|67                      SSN: 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

| Identifying Documents | Place of Issuance | ID No | Date of Birth | Issue/ Expiration Date(s) | Photo? |
|---|---|---|---|---|---|
| State/ Foreign DL | CDL/DMV | A4968841 | 6|24|67 | 5|23|17  6|24|22 | ☒ YES  ☐ NO |
| State/ Foreign ID | | | | | ☐ YES  ☐ NO |
| US / Foreign Passport | | | | | ☐ YES  ☐ NO |
| Military ID | | | | | ☐ YES  ☐ NO |
| Resident Alien Card | | | | | ☐ YES  ☐ NO |
| Social Security Card | US GOV | 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 | | | |
| Birth Certificate | | | | | |
| | | | | | |

**ADDITIONAL COMMENTS**
Please note any discrepancies in the borrower's identifying documents: _____

**CERTIFICATION**
I, the undersigned, hereby certify that: (i) I have personally examined the identifying documents indicated above presented to me by the named individual, (ii) I have accurately recorded the information appearing in the identifying documents I examined, and (iii) except as may be indicated above, each of the indicated identifying documents appears to be genuine, the information contained in the identifying documents is consistent  in all respects with the information provided by the named individual, and where applicable, the photograph appears to be that of the named individual.

Brodie D. Rodriguez, Notary Public          /s/ Brodie D. Rodriguez          1/21/2020
Name and Title                              Signature                        Date

Sound Equity Inc.

Hansen Decl. Ex A
Page 66

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

 **Automated Payments (ACH) Customer Authorization** 

**NOTE:** This service is only available for Performing and Current loans.

Save time & money by signing up for Automated Payments. Your monthly payment can be automatically deducted from your checking or saving account on the same day each month using the Federal Banking System's ACH program. Simply complete the information below. Return this form to:

**FCI Lender Services, Inc.**          **Or   Fax to:**
**Attention: Loan Servicing**              **(714) 282-2429** for Standard Loan Servicing
**8180 E Kaiser Blvd**                     **(714) 282-5775** for Specialty Loan Servicing
**Anaheim Hills, CA 92808**

| | |
|---|---|
| Name: _____ | Account/Loan Number:_____ |
| Address:_____ | City/State/Zip: _____ |
| Phone Number:_____ | Email: _____ |

### Banking Information

| | |
|---|---|
| Account Type: Checking ☐  Savings ☐ | |
| Name of Primary Bank: ___N/A___ | Name of Account: _____ |
| Bank Representative: _____ | Bank Phone Number: _____ |
| Bank Routing Number: _____ | Bank Account Number: _____ |

***PLEASE PROVIDE COPY***
***OF A VOIDED CHECK** (If using checking)*

I/We hereby authorize a monthly ACH electronic debit from the account designated above to be paid to FCI Lender Services, Inc., in payment of my/our monthly loan obligation, not to exceed the amount agreed to by me/us below. Provided however, if the required scheduled loan payment changes for any account related reason, including but not limited to change in principal balance, interest rate, or in required escrow/impounds, I/We authorize the debit amount to be adjusted accordingly.

I/We understand that should my/our bank dishonor my/our automated payment for insufficient or uncollected funds, the original amount, plus an additional NSF fee, as allowed by law, may be electronically debited from my/our account.

I/We authorize FCI to debit my/our account consistent with this Authorization until such time as I/we provide 15 days written notice to FCI of withdrawal of this Authorization.

**NOTE:** The electronic **debit date can not be changed with less than 15 days written notice** prior to the next scheduled debit date sent to FCI Lender Services, Inc. at the address or fax numbers above.

_____          _____          _1-21-2020_
Signature                                        Signature                                        Date

**Agreed Upon Amount and Terms**

My/our account will be debited on the _____ day of each month, or the next business day if debit date falls on a weekend or holiday, starting: _____. Monthly Payment Amount: **$5,468.92**.

Total amount to be drafted from my/our account: **$5,468.92**. On Date: _____

FCI Lender Services, Inc.  8180 East Kaiser Blvd.  Anaheim Hills, CA 92808  Tel: (800) 931-2424  Fax: (714) 282-2429 NMLS# 4920  CA BRE# 01022780
www.trustfci.com

Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## CORRECTION AGREEMENT AND LIMITED POWER OF ATTORNEY

I/we the undersigned Borrower, for and in consideration of the approval, closing and funding of their mortgage loan, hereby grant **Sound Equity, Inc. a Delaware Corporation** as to an undivided 100% interest, and their successors and/or assigns, limited power of attorney to correct and/or execute or initial all typographical or clerical errors discovered in any or all of the closing documentation required to be executed by the undersigned at settlement.  In the event this limited power of attorney is executed, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf.

**THE LIMITED POWER OF ATTORNEY MAY NOT BE USED TO INCREASE THE INTEREST RATE THE UNDERSIGNED IS PAYING, INCREASE THE TERM OF THE UNDERSIGNED'S LOAN, INCREASE THE UNDERSIGNED'S OUTSTANDING PRINCIPAL BALANCE OR INCREASE THE UNDERSIGNED'S MONTHLY PRINCIPAL AND INTEREST PAYMENTS. Any of these specified changes must be executed directly with the undersigned.**

This limited power of attorney shall automatically terminate 180 days from the closing date of the undersigned's mortgage loan.

IN WITNESS WHEREOF, the undersigned have executed this Limited Power of Attorney as of
*1-21-2020* (today's date).

Borrower:   150 La Sierra, LLC, a[n] California Limited Liability Company



Signature: _____
Name:     Betty Zheng
Date:     1/15/2020 12:00:00 AM

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California )
COUNTY OF Los Angeles )

On January 21st , 2020 before me, Brooke D. Rodriguez _____, a Notary Public, personally appeared Betty Zheng, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)

BROOKE D. RODRIGUEZ
Notary Public - California
San Bernardino County
Commission # 2285067
My Comm. Expires May 10, 2023

Sound Equity Inc.

Hansen Decl. Ex A
Page 68

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

# PERSONAL GUARANTY

1.    Guaranty of Indebtedness.   For valuable consideration, Jianqing Yang ("Guarantor"), jointly and severally, unconditionally guaranties and promises to pay to Sound Equity Inc, a Delaware Corporation ("Lender"), or order, on demand, any and all Indebtedness (as defined below) of 150 La Sierra, LLC, a[n] California Limited Liability Company, ("Borrower"), to Lender, if Borrower fails to pay any or all of the Indebtedness at the time or times and in the manner provided for payment.  The word "Indebtedness" as used herein means all of Borrower's indebtedness and obligations to Lender evidenced by the Promissory Note, of even date herewith, in the original principal amount of $2,340,000.00, executed by Borrower in favor of Lender (the "Note"), including, without limitation, principal, interest, late charges, administration fees and other charges, all costs of collection, including, without limitation, attorneys' fees and expenses, if any, and all extensions, renewals, modifications and amendments of the Note; and (b) any document, instrument or agreement executed in connection with Borrower's obligations evidenced by the Note including, without limitation, the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, Hazardous Substance Certification and Indemnification or any other security document.

2.    Effectiveness of Guaranty.  This Guaranty shall bind and obligate Guarantor for payment of the Indebtedness precisely as if the same had been contracted and was due and owing by Guarantor directly, and shall constitute a guaranty of payment, not a guaranty of collection.  The obligations of Guarantor hereunder shall survive and continue in full force and effect until payment in full of the Indebtedness is actually received by Lender, notwithstanding: (a) any release or termination of the liability of Borrower or any other guarantor, by express or implied agreement with Lender or by operation of law; (b) Borrower may be liable individually or jointly with others; (c) the Indebtedness or any part thereof is deemed to have been paid or discharged by operation of law or some act or agreement of Lender; (d) recovery upon the Indebtedness may be or hereafter becomes barred by any statutes of limitation, by bankruptcy, by insolvency, by reorganization, or any other means; or (e) the Indebtedness may be or hereafter becomes unenforceable or invalid.  For purposes of this Guaranty, the Indebtedness shall be deemed to be paid only to the extent that Lender actually receives immediately available funds and to the extent of any credit bid by Lender at any foreclosure or trustee's sale of any collateral securing any part of the Indebtedness.  If Borrower is a partnership and Guarantor is a partner of such partnership, the obligations of Guarantor under this Guaranty are in addition to, and not in lieu of or in limitation of, any of Guarantor's obligations provided for by law by virtue of Guarantor's status as a partner of Borrower.

3.    Amount of Guaranty.  In the event that the incurring of the obligations under this Guaranty is found, by a final, non-appealable judgment or order of a court, to constitute a fraudulent conveyance under the Uniform Fraudulent Transfer Act (Cal. Civ. Code Sections 3439 through 3439.12), the United States Bankruptcy Code, or any similar statutes, as a result of the insolvency of the Guarantor on the date hereof, then the amount of the guaranty obligations of Guarantor pursuant to this Guaranty shall be reduced to $1.00 less than the amount that would otherwise make this Guaranty a fraudulent conveyance.  The limitation on the liability of Guarantor contained in this Section 3 shall not limit any right of Lender against Guarantor available at law or in equity.

4.    Independent Obligation.  The obligations of Guarantor hereunder are separate and independent of the obligations of Borrower and of every other guarantor of the Indebtedness, and a separate action or actions may be brought and prosecuted against Guarantor regardless of whether an action is brought against Borrower or any other guarantor or whether Borrower or any



Sound Equity Inc.

Hansen Decl. Ex A
Page 69

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

other guarantor is joined in any such action or actions, or whether Lender forecloses upon, sells or otherwise disposes of or collects any collateral securing any of the Indebtedness. The Indebtedness may be enforced against Guarantor at any time following the failure on the part of Borrower to pay and perform the Indebtedness, regardless of whether a trustee's sale is held under any deed of trust securing all or any part of the Indebtedness or regardless of whether a judicial foreclosure sale is held if any deed of trust securing all or any part of the Indebtedness is judicially foreclosed as a mortgage.

     5.    <u>Authorization of Lender</u>.  Guarantor authorizes Lender, without notice or demand, and without affecting Guarantor's liability hereunder, from time to time to:  (a) amend, modify, or restate any instrument, document or agreement evidencing or relating to all or any portion of the Indebtedness; (b) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the Indebtedness or any part thereof, including, without limitation, any increase or decrease of the rate of interest thereon or any late charge; (c) take and hold collateral as security for the payment of this Guaranty or the Indebtedness, and exchange, substitute, subordinate, enforce, waive and release any such collateral; (d) apply any and all payments from Borrower, Guarantor or any other guarantor, or recoveries from any collateral securing any of the Indebtedness, in such order or manner as Lender in its sole and absolute discretion may determine; (e) direct the order or manner of sale of any collateral securing any part of the Indebtedness as Lender in its sole and absolute discretion may determine; (f) release or substitute any one or more of the Borrower, Guarantor or any other guarantor, or acquire additional guarantors; and (g) assign its rights under this Guaranty in whole or in part.

     6.    <u>Guarantors' Waivers</u>.  To the extent permitted by applicable law, Guarantor waives and agrees not to assert:  (a) any right to require Lender to proceed against Borrower, Guarantor, or any other guarantor, proceed against or exhaust any collateral of Borrower held as security for any part of the Indebtedness, or pursue any other remedy in Lender's power whatsoever; (b) the benefits of the provisions of California Civil Code  Sections 2787 to 2855, which set forth certain rights and obligations among guarantors, debtors and creditors, to the extent applicable; (c) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation of, or unenforceability of, the liability of Borrower for all or any part of the Indebtedness from any cause whatsoever (other than payment in full); (d) any homestead or exemption rights; (e) demand, diligence, grace, presentment for payment, protest, notice of nonpayment, nonperformance, extension, dishonor, maturity, protest and default; (f) recourse to any guaranty or suretyship defenses; (g) notice of acceptance of this Guaranty; (h) all rights and privileges Guarantor might otherwise have to require Lender to pursue any other remedy available to Lender in any particular manner or order; (i) the existence, creation, or incurring of new or additional Indebtedness; (j) any impairment of collateral securing any part of the Indebtedness, including, without limitation, failure to perfect a security interest in, and release of, any such collateral; (k) the benefits of any statutory provision limiting the right of Lender to recover a deficiency judgment, or to otherwise proceed, against any person or entity obligated for payment of the Indebtedness, after any foreclosure or trustee's sale of any collateral securing any part of the Indebtedness; and (l) any implied right of reimbursement or contribution from Borrower or any other claim against Borrower at law or in equity.  Guarantor agrees that if Lender shall exercise any right or remedy with respect to any collateral securing any of the Indebtedness, Guarantor shall be and remain liable to Lender for the deficiency by which the net proceeds of exercise of such right or remedy actually received by Lender shall be less than the Indebtedness.

     7.    <u>No Subrogation</u>.  Until all Indebtedness of Borrower to Lender shall be paid in full, Guarantor shall have no right of subrogation and waives



Sound Equity Inc.

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

any right to enforce any remedy which Guarantor now has or may hereafter have against Borrower, and waives any right to participate in any collateral securing any of the Indebtedness held by Lender.

8.    <u>Subordination of Other Obligations</u>.    Any indebtedness of Borrower now or hereafter held by or payable to Guarantor is hereby subordinated to the Indebtedness, and such indebtedness of Borrower to Guarantor, if Lender so requests, shall be collected, enforced and received by Guarantor as trustee for Lender and shall be paid over to Lender on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

9.    <u>Reinstatement</u>.    Guarantor agrees that to the extent Borrower or Guarantor makes any payment to Lender in connection with the Indebtedness, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid by Lender or paid over to a trustee, receiver or any other entity, whether under any bankruptcy act or otherwise (any such payment is hereinafter referred to as a "Preferential Payment"), then this Guaranty shall continue to be effective or shall be reinstated, as the case may be, and, to the extent of such payment or repayment by Lender, the Indebtedness or part thereof intended to be satisfied by such Preferential Payment shall be revived and continued in full force and effect as if said Preferential Payment had not been made.

10.    <u>Rights of Setoff</u>.    In addition to all liens upon, and rights of setoff against, the monies, securities or other property of Guarantor given to Lender by law, Lender shall have a lien and a right of setoff against, and Guarantor hereby grants to Lender a security interest in, all monies, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, except to the extent specifically prohibited by law.  Every such lien, right of setoff and security interest may be exercised without demand upon or notice to Guarantor.

11.    <u>Costs of Collection</u>.    Guarantor agrees to pay all costs of collection, including, without limitation, attorneys' fees, whether or not suit is filed, and all costs of suit and preparation for suit (whether at trial or appellate level), in the event any obligation of Guarantor hereunder is not paid or discharged when required to be paid or discharged, or to exercise any other right or remedy hereunder, or in the event Lender is made a party to any litigation because of the existence of this Guaranty, or if at any time Lender should incur any attorneys' fees in any proceeding under any federal bankruptcy law (or any similar state or federal law) in connection with the obligations evidenced hereby.  In the event of any court proceeding, court costs and attorneys' fees shall be set by the court and not by the jury and shall be included in any judgment obtained by Lender.

12.    <u>No Waiver by Lender</u>.    No delay or failure of Lender in exercising any right hereunder shall affect such right, nor shall any single or partial exercise of any right preclude further exercise thereof.

13.    <u>Governing Law</u>.    This Guaranty shall be construed in accordance with and governed by the laws of the State of California.

14.    <u>Jurisdiction and Venue</u>.    Guarantor hereby expressly agrees that in the event any actions or other legal proceedings are initiated by or against Guarantor or Lender involving or arising out of or relating to this Guaranty, such actions, in the sole and absolute discretion of Lender, may be required to be brought in Los Angeles County, California; and Guarantor hereby submits



Sound Equity Inc.

Hansen Decl. Ex A
Page 71

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

to the jurisdiction of the State of California for such purposes and agrees that the venue for such actions or proceedings shall properly lie in Los Angeles County, California; and Guarantor hereby waives any and all defenses to such jurisdiction and venue.

15.    Joint and Several Liability.  If Guarantor is comprised of more than one person or entity, the obligations of each of the persons or entities of which Guarantor is comprised shall be joint and several.

16.    Time of Essence.  Time is of the essence of this Guaranty and each and every provision hereof.

17.    Entire Agreement, Amendments.  This Guaranty sets forth the entire agreement of Lender and Guarantor with respect to the subject matter hereof and supersedes all prior written agreements and representations by Lender to Guarantor.  No amendment, modification, change, waiver or discharge of any provision of this Guaranty or any right of Lender hereunder, or any release of Guarantor from any of its obligations hereunder, shall be effective unless evidenced by an instrument in writing and signed by the party against whom enforcement is sought.

18.    Severability.  If any provision hereof is invalid or unenforceable, the other provisions hereof shall remain in full force and effect and shall be liberally construed in favor of Lender in order to effectuate the other provisions hereof.

19.    Binding Nature.  The provisions of this Guaranty shall be binding upon Guarantor and the heirs, personal representatives, successors and assigns of Guarantor, and shall inure to the benefit of Lender and its successors and assigns.

20.    Transfer and Assignment.  Lender may from time to time transfer all or any part of its interest in the Indebtedness and this Guaranty, without notice to Guarantor. Guarantor shall not transfer (by agreement, operation of law or otherwise) any right or obligation under this Guaranty, and any such purported transfer shall be void.

21.    Inducement of Lender.  This Guaranty is given at the instance and request of Borrower in order to induce Lender to make available to Borrower certain financial accommodations.  Guarantor acknowledges and agrees that Lender has acted in reliance upon this Guaranty in making such financial accommodations available to Borrower.  Guarantor hereby represents and warrants that Guarantor is and will continue to be fully informed about all aspects of the financial condition and business affairs of Borrower, and any other guarantor of the Indebtedness, that Guarantor deems relevant to the obligation of Guarantor hereunder, and Guarantor hereby waives and fully discharges Lender from any and all obligations to communicate to Guarantor any information whatsoever regarding the Indebtedness, Borrower, or the financial condition, business affairs or otherwise of Borrower or any other guarantor of the Indebtedness.

22.    Recourse to Community and Separate Property.  If Guarantor is a married individual, Guarantor expressly agrees that recourse hereunder may be had against the marital community property and the separate property of Guarantor, in such order or manner as Lender may elect.

23.    Notice.  Any notice or other communication with respect to this Guaranty shall: (a) be in writing; (b) be effective on the day of hand-delivery thereof to the party to whom directed, one day following the day of deposit thereof with delivery charges prepaid, with a national overnight delivery 

Sound Equity Inc.

Hansen Decl. Ex A
Page 72

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

service, or two days following the day of deposit thereof with postage prepaid, with the United States Postal Service, by regular first class, certified or registered mail; (c) if directed to Lender, be addressed to Lender at the office of Lender located at 929 108th Ave. NE, Suite 1030, Bellevue, WA  98004, or to such other address as Lender shall have specified to Guarantor by like notice; and (d) if directed to Guarantor, be addressed to Guarantor at the address for Guarantor set forth below Guarantor's name, or to such other address as Guarantor shall have specified by like notice.

24.    <u>Construction</u>. This Guaranty shall be construed as a whole, in accordance with its fair meaning, and without regard to or taking into account any presumption or other rule of law requiring construction against the party preparing this Guaranty.

25.    <u>Special State Provisions</u>. (a) Guarantor absolutely, unconditionally, knowingly, and expressly waives any defense arising by reason of or deriving from any claim or defense based upon an election of remedies by Lender including any defense based upon an election of remedies by Lender under the provisions of the California Code of Civil Procedure Sections 580a, 580b, 580d, and 726 or any similar law of California or any other jurisdiction.  Pursuant to California Civil Code Section 2856:

Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by the operation of California Code of Civil Procedure Section 580(d) or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because the Losses (defined below) are secured by real property.  This means, among other things:

(1)    Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower for the Losses; and

(2)    If Lender forecloses on any real property collateral pledged by Borrower for the Losses (defined below): (a) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (b) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral pledged by Borrower for the Losses, has destroyed any right Guarantor may have to collect from Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon California Code of Civil Procedure Sections 580a, 580b, 580d, or 726.

If any of the Losses at any time are secured by a mortgage or deed of trust upon real property, Lender may elect, in its sole discretion, upon a default with respect to the Losses, to foreclose such mortgage or deed or trust judicially or nonjudicially in any manner permitted by law, before or after enforcing the other Loan Documents, without diminishing or affecting the liability of Guarantor hereunder except to the extent the Losses are repaid with the proceeds of such foreclosure.  Guarantor understands that (a) by virtue of the operation of California's antideficiency law applicable to nonjudicial foreclosures, an election by Lender nonjudicially to foreclose such a mortgage or deed of trust probably would have the effect of impairing or destroying rights of subrogation, reimbursement, contribution, or indemnity of Guarantor against Borrower or other guarantors or sureties, and (b) absent the waiver



Sound Equity Inc.

Hansen Decl. Ex A
Page 73

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

given by Guarantor, such an election would prevent Lender from enforcing the other Loan Documents against Guarantor.    Understanding the foregoing, and understanding that Guarantor is hereby relinquishing a defense to the enforceability of the other Loan Documents, Guarantor hereby WAIVES any right to assert against Lender any defense to the enforcement of the other Loan Documents, whether denominated "estoppel" or otherwise, based on or arising from an election by Lender nonjudicially to foreclose any such mortgage or deed of trust.    Guarantor understands that the effect of the foregoing waiver may be that Guarantor may have liability hereunder for amounts with respect to which Guarantor may be left without rights of subrogation, reimbursement, contribution, or indemnity against Borrower or other guarantors or sureties.    Guarantor also agrees that the "fair market value" provisions of California Code of Civil Procedure Section 580a shall have no applicability with respect to the determination of Guarantor's liability under the other Loan Documents.

As used herein, "Losses" includes any and all claims, suits, liabilities, actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, punitive damages, foreseeable and unforeseeable consequential damages, of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense).

(b)    Guarantor hereby absolutely, unconditionally, knowingly, and expressly waives: (i) any right of subrogation Guarantor has or may have as against Borrower with respect to the Losses; (ii) any right to proceed against Borrower or any other person or entity, now or hereafter, for contribution, indemnity, reimbursement, or any other suretyship rights and claims, whether direct or indirect, liquidated or contingent, whether arising under express or implied contract or by operation of law, which Guarantor may now or hereafter have as against Borrower with respect to the Losses; and (iii) any right to proceed or seek recourse against or with respect to any property or asset of Borrower.

(c)    WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES, ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2814, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 580a, 580b, 580c, 580d, AND 726, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of January 15, 2020.

Guarantor:

Signature:    *JIANQING YANG by his attorney in fact*
Name:    Jianqing Yang

Address of Guarantor:
*100 E. Huntington Dr. #207*
*ALHAMBRA, CA 91801*

Sound Equity Inc.

Hansen Decl. Ex A
Page 74

## ENVIRONMENTAL INDEMNITY AGREEMENT

**THIS ENVIRONMENTAL INDEMENITY AGREEMENT** is made as of <u>January 15, 2020</u>, by <u>150 La Sierra, LLC, a[n] California Limited Liability Company</u> (hereinafter referred to as the "Borrower"), and <u>Jianqing Yang</u> (collectively, "Guarantor") in favor of <u>Sound Equity Inc, a Delaware Corporation</u> ("Lender").

**WHEREAS,** Borrower has applied to Lender for a loan in the maximum principal amount of <u>$2,340,000.00</u> (the "Loan") to be guaranteed by Guarantor and to be secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") encumbering certain real property located in the County of <u>Los Angeles</u>, State of <u>California</u>, and described as follows (the "Property"):

### REFER TO EXHIBIT A

**AND WHEREAS,** Lender is unwilling to make the Loan unless Borrower and Guarantor make certain warranties regarding the Property and agree to indemnify Lender from any loss or liability that might result from violation of any federal, state, or local Environmental Laws;

**NOW, THEREFORE,** for good and valuable consideration, the receipt of which is hereby acknowledged, and as a principal inducement to Lender to make the Loan and with the understanding and specific intent that Lender will materially rely upon this agreement in doing so, Borrower and Guarantor hereby represent, warrant, covenant, and agree with Lender, its successors and assigns, as follows:

1. <u>Definitions.</u>
   a. <u>Environmental Laws.</u>

   The term "Environmental Laws" shall mean any and all federal, state, and local statutes, regulations, and ordinances pertaining to the protection of human health or the environment that are applicable to the Property, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, the Resource Conservation and Recovery Act of 1976, the Superfund Amendments and Reauthorization Act of 1986, and the Hazardous Materials Transportation Act; all regulations pertaining thereto; and all other statutes, laws and ordinances of the United States and of any state, county or municipality in which the Property or any portion thereof is located.

   b. <u>Hazardous Substance.</u>

   The term "Hazardous Substance" shall mean any and all hazardous, toxic, infectious, or radioactive substances, wastes, or material listed or defined by any Environmental Law and specifically shall include petroleum oil and its fractions, asbestos, urea formaldehyde and radon.

   c. <u>Asbestos-Containing Material.</u>

   The term "Asbestos-Containing Material" shall mean any material containing more than one percent (1.0%) by weight of asbestos,



including all varieties and forms of materials defined as asbestos under any federal or state statute or regulation relating to the protection of human health or the environment.

2.  Representations and Warranties.

On the basis of Borrower's and Guarantor's diligent examination and inquiry and except for small quantities of Hazardous Substances customarily used in construction which shall at all times be used in compliance with all Environmental Laws, Borrower and Guarantor represent and warrant as follows:

a.  No Hazardous Substances.

Following all appropriate and due diligent inquiry into the condition of the Property and the existing and previous ownership, uses and appearance thereof, Borrower and Guarantor have no knowledge or reason to know that any Hazardous Substance (a) is or has been used, treated, stored, disposed of, released, spilled, generated, manufactured, or otherwise handled on the Property, or transported to or from the Property; (b) has been spilled, released, intruded, leached or disposed of from the Property onto property adjacent to the Property; or (c) has otherwise come to be located on or under the Property.

b.  Compliance with Environmental Laws.

To the best of Borrower's and Guarantor's knowledge following Borrower's and Guarantor's inquiries, the Property and all operations conducted on the Property are and will continue to be in full compliance with all applicable Environmental Laws.  The Property shall be operated in full compliance with such laws from and after the date of this Agreement.

c.  No Liens.

No liens have been placed on the Property under any Environmental Laws and Borrower and Guarantor have no knowledge of any threatened or impending liens under any Environmental Laws.

d.  No Notice.

Neither Borrower nor Guarantor have received any notice and are not aware of any administrative or judicial investigations, proceedings, or actions with respect to violations, alleged or proven, of Environmental Laws by Borrower or Guarantor or by any tenants or predecessors of Borrower, or otherwise involving the Property or the operations conducted on the Property.

e.  No Asbestos-Containing Material.

To the best of Borrower's and Guarantor's knowledge following Borrower's and Guarantor's inquiries, no Asbestos-Containing Material is present in any of the improvements on the Property or



Hansen Decl. Ex A
Page 76

is otherwise located on the Property.  The Property and all operations conducted on the Property are in compliance with all federal and state statutes and regulations relating to asbestos.

f.  Underground Storage Tanks.

To the best of Borrower's knowledge following Borrower's inquiries, no underground storage tanks, whether in use or closed, are located on or under the Property.

3. Prohibited Activities.

Without the prior written consent of Lender, neither Borrower nor Guarantor shall engage in or permit any tenant or other person to engage in any activity or conduct on the Property that would cause, or could reasonably be expected to cause, any of the representations set forth in paragraph 2 of this agreement to cease to be true, correct, and complete.  Such consent by Lender may be conditioned upon the receipt by Lender of any assurances that Lender may deem necessary or desirable to ensure that the value of Lender's security interest in the Property will not in any way become impaired because of contamination resulting from any such activities.

4. Notice.

Borrower and Guarantor shall immediately notify Lender upon becoming aware of any of the following, and shall immediately provide Lender with copies of any notices received with respect to:

a.  Spill, Release, or Disposal.

Any spill, release, or disposal of a Hazardous Substance on, under, or adjacent to the Property.

b.  Notice of Violation.

Any notice or communication from a governmental agency or any other person directed to Borrower, any tenant of the Property, or any other person relating to: (i) Hazardous Substances on, under or adjacent to the Property; or (ii) any violation of any Environmental Laws.

c.  Change in Circumstances.

Any fact or change in circumstances that would or reasonably could be expected to cause any of the representations and warranties set forth in paragraph 2 of this agreement to cease to be true for any time before all amounts owing under any of the documents related to the Loan (the "Loan Documents") are paid in full.

d.  Threat to Value of Security.



Any matter relating to Hazardous Substances or Environmental Laws that would give a reasonably prudent lender reason to be

Hansen Decl. Ex A
Page 77

concerned that the value of such lender's security interest in the Property may be reduced or threatened.

5. <u>Corrective Actions.</u>

Borrower and Guarantor shall immediately cause any Hazardous Substance spilled, released, intruded, vented, leached or disposed of on or in the Property or any improvements thereto to be collected, stored, treated and removed from the Property in accordance with all Environmental Laws; to immediately repair and restore the Property; and to pay all of the costs thereof. Each of the covenants in this paragraph are specifically enforceable. Lender shall have the right to join and participate in, as a party if it so elects, any legal or administrative proceedings or actions initiated with respect to the Property in connection with any Environmental Law, and Borrower and Guarantor agree to pay Lender's court costs and attorneys' fees incurred in so doing.

6. <u>Indemnification.</u>

Borrower and Guarantor, jointly and severally, shall indemnify and hold harmless Lender, its officers, directors, employees, agents, successors, and assigns, and their directors, officers, employees, and agents from and against (a) all costs of any repair, cleanup, and detoxification of the Property and the preparation and implementation of any closure, remedial or other plans required by any Environmental Laws or any governmental authority; (b) all liability, costs, damages, and claims suffered or incurred by Lender as a result of any damage to the Property, damage to any other property, or any injury or death to any person or persons caused by Borrower's or Guarantor's or the Property's failure to comply with any Environmental Laws; (c) all liabilities to any governmental authorities, including and without limitation, the removal of any liens against the Property, as a result of the violation of any Environmental Laws; and (d) all actual and consequential damages incurred by Lender as a result of the failure of Borrower or Guarantor or the Property to comply with any Environmental Laws and which are not otherwise expressly excluded from this agreement. Except as otherwise stated in this agreement, this indemnification shall extend to any loss or liability incurred by Lender as a result of any violation of any Environmental Laws or the presence of any Hazardous Substance on or about the Property not caused by the action of the Lender and when the contamination or violation occurred prior to the Borrower's surrendering possession of the Property either voluntarily or through foreclosure, whether or not the contamination or violation is known to Lender prior to or following Lender's acquisition of title to the Property.

7. <u>Indemnification Separate from Loan Documents.</u>

This indemnification and all rights and obligations hereunder are separate from and independent of the Note, Deed of Trust, and all other security for the Note and is not secured by said Deed of Trust or other security. This agreement and all rights and obligations hereunder shall survive (a) any judicial or nonjudicial foreclosure, trustee's sale, sheriff's sale, a deed in lieu of any such foreclosure or sale, or other action or proceeding with respect to the Note, or any settlement or compromise thereof; (b) any amendment or modification of any of the Loan documents, including the extensions of time for performance thereof; (c) the release of Borrower or any Guarantor or indemnitor from any other obligations or liabilities under any of the Loan documents, whether such release occurs voluntarily, involuntarily, or by operation of law; (d) the conveyance or transfer of all of Lender's rights in



the Note, Deed of Trust, and other security to any third parties; and (e) the Lender's conveyance of all of its rights in the Property.

8.  Multiple Actions.

Separate, concurrent, and successive actions may be brought under this indemnification to enforce any of the provisions hereof at any time and from time to time.

9.  Impairment of Remedies.

This indemnification shall not be construed as impairing any other right or remedy of Lender under the Note, the Deed of Trust, or other Loan documents, nor shall this indemnification be in lieu of or impair any other remedy.  In particular, Lender hereby reserves its rights to specifically enforce any covenant of the Borrower or Guarantor, to bring an action for waste of the Property, to seek mandatory and prohibitive injunctions, and to obtain contributions from Borrower and Guarantor and any other person who may be jointly liable with Lender under any federal or state statute or to the extent such contribution rights are available at law or in equity.

10. No Waiver.

No requirement of this agreement may be waived at any time except in a writing signed by Lender, and any such waiver shall be effective only as to its terms and on a single occasion.  Neither Lender's delay or omission in exercising any right, power, or remedy under this agreement, nor Lender's failure to insist upon strict performance of any of the covenants or agreements contained in this agreement shall be construed as a waiver of any such right, power, remedy, covenant, or agreement or as an acquiescence in Borrower's or Guarantor's breach or default.  All of Lender's rights or remedies under this agreement are intended to be cumulative and not in substitution for any rights or remedies available by law or otherwise.

11. Assignment by Lender; Participation.

Lender may assign this agreement in whole or in part to any person or entity and may grant participation in any of its rights under this agreement, without notice and without affecting Borrower's or Guarantor's liability under this agreement.   Neither Borrower nor Guarantor may assign this agreement to any person at any time, except in connection with a transaction approved in writing by Lender.

12. Attorneys' Fees; Costs.

Borrower and Guarantor agree to reimburse Lender for all costs, expenses, and reasonable attorneys' fees that Lender incurs in connection with the realization or enforcement of any obligation or remedy contained in this agreement, with or without litigation, including without limitation any costs, expenses, and fees incurred: (a) on appeal; (b) in any action contesting or seeking to restrain, enjoin, stay, or postpone the exercise of any remedy in which Lender prevails; (c) in any bankruptcy, probate, or other proceeding involving any person comprising Borrower or Guarantor; and (d) in connection with all negotiations, documentation, and other actions relating to any work-out of the Loan or settlement of any debt secured by this agreement or any of the other Loan Documents.  All such costs, expenses,

Hansen Decl. Ex A
Page 79

and fees shall be due and payable upon demand, shall bear interest from the date incurred through the date of collection at the highest rate stated in the Loan Documents (including the Default Rate). Lender shall reimburse Borrower and Guarantor for all reasonable costs, expenses and attorneys' fees which are incurred by Borrower and Guarantor, respectively, in any action to enforce this agreement or any security for this agreement in which Borrower or Guarantor, respectively, prevail; provided, however, the foregoing shall not apply to any action or proceeding which is brought to determine or pursue any particular remedy as a result of any default of the Borrower or Guarantor, including, without limitation, petitions for removing a stay in bankruptcy, petitions for mandatory or prohibitive injunctive relief, requests for receivership, or with respect to any other remedy in which a court determines the same to be limited or unavailable.

13. Multiple Borrowers.

If Borrower or Guarantor are comprised of more than one person or entity, then the terms "Borrower" and "Guarantor" shall refer to all such persons or entities collectively and to each such person or entity individually, such that all obligations, covenants, warranties, requirements, restrictions, and other provisions of this agreement shall apply both collectively and individually. If Borrower or Guarantor are comprised of more than one person or entity, then each of such persons or entities shall be jointly and severally liable for the indebtedness secured by this agreement, for the performance of Borrower's and Guarantor's obligations under the Loan Documents, and for any default on the part of any one or more of the persons or entities comprising Borrower and Guarantor.

14. Notices.

Any notices, demands, or communications permitted or required hereunder shall be in writing and personally delivered or sent by first class mail, or by certified or registered mail, return receipt requested, postage prepaid, addressed to the parties at the addresses listed above, or at such other addresses as the parties may from time to time designate in writing. Notices shall be deemed effective and any time period referred to therein shall commence on the date such notice is deposited in the U.S. Mail, as evidenced by the postmark affixed by the post office.

15. Modification; Successors.

This agreement may be amended, modified, changed, or varied only by a written agreement signed by the parties hereto. Subject to any assignment restrictions herein, this agreement shall bind and inure to the benefit of all of the parties, their successors, estates, heirs, personal representatives, and assigns. The warranties and indemnities in this agreement shall extend to all participants with and successor and assigns of Lender and to any lender whose loan is used to refinance the Loan.

16. Validity.

If a court of competent jurisdiction finally determines that any provision of this agreement is invalid or unenforceable, the court's determination shall not affect the validity or enforceability of the remaining provisions of this agreement. In such event, this agreement shall be construed as if it did not contain the particular provision that was determined to be invalid or unenforceable. No such

Hansen Decl. Ex A
Page 80

determination shall affect any provision of this agreement to the extent that it is otherwise enforceable under the laws of any other applicable jurisdiction.

17. Counterparts; Facsimile Signatures.

This agreement may be signed in any number of counterparts, each of which will be deemed to be an original, and all of which, taken together will constitute one and the same contract.  The parties will accept a signed counterpart of this agreement transmitted by facsimile machine or pdf as though it were an original document; provided, however, that each party so transmitting a document will be obligated to deliver the manually signed original via overnight delivery service.

18. Applicable Law; Venue.

This agreement and the rights of the parties hereunder shall be governed by, construed, and enforced in accordance with the laws of the State of California.  **LENDER AND BORROWER AND GUARANTOR HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER LENDER OR BORROWER OR GUARANTOR AGAINST THE OTHER.  IF THERE IS A LAWSUIT, GRANTOR AND BORROWER, AT LENDER'S OPTION, AGREE TO SUBMIT TO THE JURISDICTION OF THE COUNTY WHERE THE PROPERTY IS LOCATED.**

**UNDER CALIFORNIA LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

IN WITNESS WHEREOF, Borrower and Guarantor have duly executed this agreement as of the date first above written.

**BORROWER**:

150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____
      Betty Zheng, Its Manager



Hansen Decl. Ex A
Page 81

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

# USE THE FOLLOWING RESOLUTION, ONLY IF BORROWER IS A CORPORATION OR LIMITED LIABILTY COMPANY

Hansen Decl. Ex A
Page 82

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## CERTIFICATE OF RESOLUTIONS

### 150 La Sierra, LLC
100 East Huntington Drive #207
Alhambra, CA  91801

Jianqing Yang, *Co. Manager JINZHENG GRoup (USA)LLC. Manager* (title) of 150 La Sierra, LLC, a[n] California Limited Liability Company ("Borrower"), do hereby certify that the following is a true and correct Copy of the resolution unanimously adopted by the Members/Managers or Board of Directors of the Borrower, a quorum of its members being present at a regular meeting, held in the City of Alhambra, State of CA, on January 21, 2020 and that the resolution has not been revoked by any subsequent action of the Members/Managers or Board of Directors of Borrower but is still in full force and effect.

RESOLVED: That Jianqing Yang in his capacity as the *Co. MANAGER JINZHENG GROUP (USA) LLC Manager* (title), is authorized to execute in the name of and on behalf of the Borrower and to deliver any and all instruments, agreements or certificates of any kind or nature whatsoever, including, but not limited to, notes, mortgages, security instruments, assignments, financial statements, affidavits, indemnities or closing statements, and to take from time to time any other actions which such officer or officers shall in their discretion determine to be appropriate to effect the transaction and contemplated herein and is authorized to take on debt in the name of the Borrower.

I further certify that this Borrower is duly organized and in good standing, and has the power to take the action called for by the foregoing resolution.

Dated: January 15, 2020 at Alhambra, CA

150 La Sierra, LLC, a[n] California Limited Liability Company

150 La Sierra, LLC, a California limited liability company
By:  Jinzheng Group USA, LLC, a California limited liability company, Its Managing Member

By: _____

Betty Zheng, Its Manager



Hansen Decl. Ex A
Page 83

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

 State of California
Department of Real Estate
*Serving Californians Since 1917*



# Mortgage Loan Disclosure Statement/ Good Faith Estimate
# Nontraditional Mortgage Product (One to Four Residential Units)

RE 885 (Rev. 8/08)
Borrower's Name(s): Jianqing Yang / 150 La Sierra, LLC

Real Property Collateral: The intended security for this proposed loan will be a Deed of Trust on (street address or legal description) **150 E La Sierra Dr ARCADIA, CA  91006**

This joint Mortgage Loan Disclosure Statement/Good Faith Estimate is being provided by <u>Sound Equity Inc, a Delaware Corporation</u>, a real estate broker acting as a mortgage broker, pursuant to the Federal Real Estate Settlement Procedures Act (RESPA) if applicable and similar California law. In a transaction subject to RESPA, a lender will provide you with an additional Good Faith Estimate within three business days of the receipt of your loan application. You will also be informed of material changes before settlement/close of escrow. The name of the intended lender to whom your loan application will be delivered is:

☐ Unknown      ☒ Sound Equity Inc, 989 112th Ave NE, Suite 207, Bellevue, WA  98004.    (Name of lender, if known)

Lender License # (if applicable) ____

## GOOD FAITH ESTIMATE OF CLOSING COSTS

The information provided below reflects estimates of the charges you are likely to incur at the settlement of your loan. The fees, commissions, costs and expenses listed are estimates; the actual charges may be more or less. Your transaction may not involve a charge for every item listed and any additional items charged will be listed. The numbers listed beside the estimated items generally correspond to the numbered lines contained in the HUD‑1 Settlement Statement which you will receive at settlement if this transaction is subject to RESPA. The HUD‑1 Settlement Statement contains the actual costs for the items paid at settlement. When this transaction is subject to RESPA, by signing page four of this form you are also acknowledging receipt of the HUD Guide to Settlement Costs.

| HUD-1 | Item | Paid To Others | Paid To Broker |
|---|---|---|---|
| **800** | **Items Payable in Connection with loan** | $_____ | $_____ |
| 801 | Lender's Loan Origination Fee | $11,700.00 | $_____ |
| 802 | Lender's Loan Discount Fee | $_____ | $_____ |
| 803 | Appraisal Fee | $_____ | $.00 |
| 804 | Credit Report | $_____ | $_____ |
| 805 | Lender's Inspection Fee | $_____ | $_____ |
| 806 | Flood Cert Fee | $_____ | $_____ |
| 807 | Mortgage Broker Commission/Fee | $_____ | $55,575.00 |
| 808 | Processing/Underwriting/Doc Prep Fee | $.00 | $5,000.00 |
| 809 | Servicing Fee | $_____ | $135.00 |
| **900** | **Items Required by Lender to be Paid in Advance** | $_____ | $_____ |
| 901 | Interest to end of month | $_____ | $1,822.97 |
| 902 | Mortgage Insurance Premiums | $_____ | $_____ |
| 903 | Hazard Insurance Premiums | $_____ | $_____ |
| 904 | County Property Taxes | $TBD by Title | $_____ |
| 905 | VA Funding Fee | $_____ | $_____ |
| **1000** | **Reserves Deposited with Lender** | $_____ | $_____ |
| 1001 | Hazard Insurance:___ months at $_____ /mo. | $_____ | $_____ |

Hansen Decl. Ex A
Page 84

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

| | | | |
|---|---|---|---|
| 1002 | Mortgage Insurance:___ months at $_____/mo. | $_____ | $_____ |
| 1004 | Co. Property Taxes:___ months at $_____/mo. | $_____ | $_____ |
| **1100** | **Title Charges** | $_____ | $_____ |
| 1101 | Settlement or Closing/Escrow Fee | $1250_____ | $_____ |
| 1105 | Document Preparation Fee | $_____ | $_____ |
| 1106 | Notary Fee | $_____ | $_____ |
| 1108 | Title Insurance | $750_____ | $_____ |
| **1200** | **Government Recording and Transfer Charges** | $_____ | $_____ |
| 1201 | Recording Fees | $250_____ | $_____ |
| 1202 | City/County Tax/Stamps | $ | $ |
| **1300** | **Additional Settlement Charges** | $_____ | $_____ |
| 1302 | Pest Inspection | $ | $ |

| | | |
|---|---|---|
| | $13,950.00 (Title, escrow and recording fees are rough estimates and will be provided by escrow.) | |
| **Subtotals of Initial Fees, Commissions, Costs and Expenses** | | $62,397.97 |
| **Total of Initial Fees, Commissions, Costs and Expenses** | $76,347.97 | |

Compensation to Broker (Not Paid Out of Loan Proceeds):
Mortgage Broker Commissions/Fee                     $0_____
Any Additional Compensation from Lender    ☒ No  ☐ Yes  $_____
(Approximate Yield Spread Premium or Other Rebate)

---

### ADDITIONAL REQUIRED CALIFORNIA DISCLOSURES

I.    Proposed Loan Amount:                                      $2,340,000.00

    Initial Commissions, Fees, Costs and
    Expenses Summarized on Page 1:                    $76,347.97

    Payment of Other Obligations (List):
      Credit Life and/or Disability Insurance (see XIV below)    $ _____
    _____    $ _____
    _____    $ _____
    Subtotal of All Deductions:                    $ _____
    Estimated Cash at Closing    ☐ To You    ☒ That you must pay
    $1,433,085.97

II.    Proposed Loan Term: 12_____    ☐ Years    ☒ Months

III.    Proposed Interest Rate: 8.99%    ☒ Fixed Rate    ☐ Initial
Adjustable Rate

    If the Fixed Rate Box is checked in Section III immediately above, proceed to section X.

      Do not complete sections IV through IX.

IV    Initial Adjustable Rate in effect for_____Months

Hansen Decl. Ex A
Page 85

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

V.      Fully Indexed Interest Rate _____%

VI.     Maximum Interest Rate _____.___%

VII.    Proposed Initial (Minimum) Loan Payment $_____ Monthly

VIII.   Interest Rate Can Increase _____% each _____Months

IX.     Payment Options end after _____ Months or _____% of Original Balance, whichever comes first

X.      After <u>12</u> months you will not have the option to make minimum or interest only payments and negative amortization (increases in your principal balance), if any, will no longer be allowed. Assuming you have made minimum payments, you may then have to make principal and interest payments of $_____ at the maximum interest rate in effect for the remaining _____ months of the loan. These payments will be significantly higher than the minimum or interest only payments.

XI.     If your loan contains negative amortization, at the time no additional negative amortization will accrue, your loan balance will be <u>$2,340,000.00</u> assuming minimum payments are made.

XII.    The loan is subject to a balloon payment:☐ No   ☒ Yes. If Yes, the following paragraph applies and a final balloon payment of <u>$2,340,000.00</u> plus last month's interest will be due on <u>2/1/2021</u> [estimated date (month/day/year)].

**NOTICE TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES, AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. Keep THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.**

XIII.   Prepayments:  The proposed loan has the following prepayment provisions:

☒      No prepayment penalty (you will not be charged a penalty to pay off or refinance the loan before maturity)

☐      You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first _____ years.  The prepayment penalty could be as much as $_____.  Any prepayment of principal in excess of 20% of the

☐ original loan balance or

☐ unpaid balance

for the first _____ years will include a penalty not to exceed _____ months interest at the note interest rate but not more than the interest you would be charged if the loan were paid to maturity.

☐      Other - you will have to pay a prepayment penalty if the loan is paid off or refinanced in the first _____ years as follows:

_____

_____

XIV.   Taxes and Insurance:

☐      There will be an impound (escrow) account which will collect approximately

Hansen Decl. Ex A
Page 86

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

$_____ a month in addition to your principal and interest payments for the payment of ☐ county property taxes* ☐ hazard insurance ☐ mortgage insurance ☐ flood insurance ☐ other.

☒   If there is no impound (escrow) account you will have to plan for the payment of ☒ county property taxes* ☒ hazard insurance ☐ mortgage insurance ☐ flood insurance ☐ other_____ of approximately <u>SEE TITLE REPORT</u> per year.

**\* In a purchase transaction, county property taxes are calculated based on the sales price of the property and may require the payment of an additional (supplemental) tax bill from the county tax authority by your lender (if escrowed) or you if not escrowed.**

XV.   Credit Life and/or Disability Insurance: The purchase of credit life and/or disability insurance by a borrower is NOT required as a condition of making this proposed loan.

XVI.   Other Liens: Are there liens currently on this property for which the borrower is obligated?
☐ No ☐ Yes
If Yes, describe below:

| *Lienholder's Name* | *Amount Owing* | *Priority* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Liens that will remain or are anticipated on this property after the proposed loan for which you are applying is made or arranged (including the proposed loan for which you are applying):

| *Lienholder's Name* | *Amount Owing* | *Priority* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

NOTICE TO BORROWER: Be sure that you state the amount of all liens as accurately as possible. If you contract with the broker to arrange this loan, but it cannot be arranged because you did not state these liens correctly, you may be liable to pay commissions, costs, fees, and expenses even though you do not obtain the loan.

XVII.   Article 7 Compliance: If this proposed loan is secured by a first deed of trust in a principal amount of less than $30,000 or secured by a junior lien in a principal amount of less than $20,000, the undersigned broker certifies that the loan will be made in compliance with Article 7 of Chapter 3 of the Real Estate Law.

A.   This loan ☐ may   ☐ will   ☐ will not be made wholly or in part from broker controlled funds as defined in Section 10241(j) of the Business and Professions Code.

B.   If the broker indicates in the above statement that the loan "may" be made out of broker-controlled funds, the broker must inform the borrower prior to the close of escrow if the funds to be received by the borrower are in fact broker-controlled funds.

XVIII.   This loan is based on limited or no documentation of your income and/or assets and may have a higher interest rate, or more points or fees than other products requiring documentation:
☐ No   ☒ Yes

## NOTICE TO BROKER

If any of the columns in section XIX, Comparison of Sample Mortgage Features, on page 4 of this RE 885 form, are not completed, you must certify to the following:

### CERTIFICATION

I, <u>Sound Equity, Inc.</u>, hereby certify (or declare) that the failure to complete the information in any or



Hansen Decl. Ex A
Page 87

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

all of the columns (with the exception of the last column "Proposed Loan" in the Typical Mortgage Transactions portion of this RE 885) is either because (1) after a diligent search, I have determined that the product specified in that column is not available to consumers from mortgage lenders, or (2) the borrower to whom this form applies does not qualify for that particular product.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____        _____
Signature of Broker                                                          Date

*Intentionally Blank*



Hansen Decl. Ex A
Page 88

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

XIX.   Comparison of Sample Mortgage Features (One to Four Residential Units)

TYPICAL MORTGAGE TRANSACTIONS



| | **Principal And Interest** | **Interest Only** | **5/1 ARM** | **Interest Only** | **Option Payment** | Purposed Loan Type of Loan: 12 MO FIXED RATE  *Type of Amortization:* INTEREST ONLY |
|---|---|---|---|---|---|---|
| | *Fully Amortizing* ☒Not Offered* | *Fully Amortizing* ☒Not Offered* | *Fully Amortizing* ☒Not Offered* | *Fully Amortizing* ☒Not Offered* | *Fully Amortizing* ☒Not Offered* | |
| **Proposed Loan Amount $_____ - Year Term** | Fixed Rate (____%) | Fixed Rate (____%) Interest Only for First 5 Years | Fixed Rate for First 5 Years; Adjustable Each Year After First 5 years (Initial rate for 1 to 5 is ____%; Maximum Rate is ____%) | Interest Only and Fixed Rate for First 5 Years; Adjustable Rate Each Year After First 5 years (Initial rate for 1 to 5 is ___%;Maximum Rate is %) | Adjustable Rate for Entire Term of the Mortgage (Rate in month 1 is _____%; Rate in month 2 through year 5 is ___%; Maximum Rate is ___%) | Explanation of Type of Proposed Loan Product: INTEREST ONLY AND FIXED FOR 12 MO. (RATE IS 8.99%) |

*Payment Scenarios*

| | | | | | | |
|---|---|---|---|---|---|---|
| Maximum Monthly Payment Years 1-5 except as noted | $      ** | $ | $ | $ | $_____ **  (1st year only) | $ |
| Monthly Payment in Year 6 with no change in rates | $ | $      ** | $ | $ | $ | $ |
| Monthly Payment in Year 6 with 2% rise in rates | $ | $ | $ | $ | $ | $ |
| Minimum Monthly Payment | $ | $ | $ | $ | $ | $5,468.92 |
| Your Gross Income | $ | $ | $ | $ | $ | $ |
| Difference | $ | $ | $ | $ | $ | $ |
| Maximum Monthly Payment in Year 6 with a 5% rise in rates | $ | $ | $ | $ | $ | $ |
| Your Gross Income | $ | $ | $ | $ | $ | $ |
| Difference | $ | $ | $ | $ | $ | $ |

Hansen Decl. Ex A
Page 89

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

***Loan Balance Scenarios***

| How much will be owed after 5 years? | $ | $ | $ | $ | $ | $ |
|---|---|---|---|---|---|---|
| Has the loan balance been reduced after 5 years of payments? | **Yes** The loan balance was reduced by $ ___ | **No** The loan balance was not reduced | **Yes** The loan balance was reduced by $ ___ | **No** The loan balance was not refunded | **No** The loan balance was increased by $ ___ | **No/Yes** The loan balance: did not change/increase d/decreased by $ ___ |

\*        "Not offered" indicates the broker does not offer the comparison loan production. The information provided for the products not offered was obtained from sources deemed reliable.
            Yes        No

\*\*      This illustrates an interest rate and payments that are fixed for the life of the loan.

\*\*\*    This illustrates payments that are fixed after the first five years of the loan at a higher amount because they include both principal and interest.

\*\*\*\*  This illustrates minimum monthly payments that are based on an interest rate that is in effect during the first month only. The payments required during the first year will not be sufficient to cover all of the interest that is due when the rate increases in the second month of the loan. Any unpaid interest amount will be added to the loan balance. Minimum payments for years 2–5 are based on the higher interest rate in effect at the time, subject to any contract limits on payment increases. Minimum payments will be recast (recalculated) after 5 years, or when the loan balance reaches a certain limit, to cover both principal and interest at the applicable rate.

IMPORTANT NOTE: Please use this chart to discuss possible loans with your broker or lender

**If a mortgage loan broker licensed by the California Department of Real Estate is acting as your agent in connection with your home loan/mortgage, the agent owes you certain fiduciary duties, and California statutory law imposes other duties.**

XX.        NOTICE TO BORROWER: THIS IS NOT A LOAN COMMITMENT. Do not sign this statement until you have read and understood all of the information in it. All parts of this form must be completed before you sign. Borrower hereby acknowledges the receipt of a copy of this statement.

SOUND EQUITY INC        01904375        _____        _____
*Name of Broker*        *License #*        *Broker's Representative*        *License #*

25109 Jefferson Ave, Ste 320, Murrieta, CA 92562
*Broker's Address*

_____        _____        OR        _____        _____
*Signature of Broker*        *Date*        *Signature of Representative*        *Date*

JIANQING YANG by his attorney in fact        _____ 1-21-2020
*Borrower*        *Date* 1-21-2020        *Borrower*        *Date*

**Department of Real Estate license information telephone number: (916) 227-0931, or check license status at www.dre.ca.gov**

Hansen Decl. Ex A
Page 90

Loan#20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

**Loan Balance Scenarios**

| How much will be owed after 5 years? | $ | $ | $ | $ | $ | $ |
|---|---|---|---|---|---|---|
| Has the loan balance been reduced after 5 years of payments? | **Yes** The loan balance was reduced by $ ___ | **No** The loan balance was not reduced | **Yes** The loan balance was reduced by $ ___ | **No** The loan balance was not refunded | **No** The loan balance was increased by $ | **No/Yes** The loan balance: did not change/increase d/decreased by $ ___ |

\*     "Not offered" indicates the broker does not offer the comparison loan production.
     The information provided for the products not offered was obtained from sources deemed reliable.
     Yes    No

\*\*    This illustrates an interest rate and payments that are fixed for the life of the loan.

\*\*\*   This illustrates payments that are fixed after the first five years of the loan at a higher amount because they include bothprincipal and interest.

\*\*\*\*  This illustrates minimum monthly payments that are based on an interest rate that is in effect during the first month only. The payments required during the first year will not be sufficient to cover all of the interest that is due when the rate increases in the second month of the loan. Any unpaid interest amount will be added to the loan balance. Minimum payments for years 2‑5 are based on the higher interest rate in effect at the time, subject to any contract limits on payment increases. Minimum payments will be recast (recalculated) after 5 years, or when the loan balance reaches a certain limit, to cover both principal and interest at the applicable rate.

IMPORTANT NOTE: Please use this chart to discuss possible loans with your broker or lender

**If a mortgage loan broker licensed by the California Department of Real Estate is acting as your agent in connection with your home loan/mortgage, the agent owes you certain fiduciary duties, and California statutory law imposes other duties.**

XX.     NOTICE TO BORROWER: THIS IS NOT A LOAN COMMITMENT. Do not sign this statement until you have read and understood all of the information in it. All parts of this form must be completed before you sign. Borrower hereby acknowledges the receipt of a copy of this statement.

SOUND EQUITY INC     01904375                                     
*Name of Broker*          *License #*               *Broker's Representative*     *License #*

25109 Jefferson Ave, Ste 320, Murrieta, CA 92562
*Broker's Address*

_____    _____  OR  _____  _____
*Signature of Broker*          *Date*          *Signature of Representative*    *Date*

JIANQING YANG by ~~th~~ his Attorney in fact   1-21-2020
*Borrower*               *Date*         *Borrower*        *Date*

**Department of Real Estate license information telephone number: (916) 227-0931, or check license status at www.dre.ca.gov**

Hansen Decl. Ex A
Page 91

# EXHIBIT B

**FCI Lender Services, Inc.**
Toll Free: (800) 931-2424 Hrs.: Mon.-Fri 8:00 a.m. - 5:00 p.m. (PT)
Website: www.myfci.com    NMLS #4920    DRE #01022780
PO BOX 27370 Anaheim CA 92809-0112    Fax: (714) 282-2429

Report Date: 06/23/2022

# Loan Master Report

| Company | FCI Lender Services, Inc. | | Account Number: | ____3791 |
| | PO Box 27370 | | Primary Borrower: | 150 La Sierra, LLC |
| | Anaheim CA 92809-0112 | | Primary Property: | 150 E La Sierra Dr |
| | 800-931-2424 | | | Arcadia CA Arcadia |

## Account Activity From 2/1/2020

| Transaction Date | Payment Due Date | Reference | Description | Transaction Amount | Interest | Principal | LateChgs | Other | Reserve | Impound | CurrentBalance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | $0.00 |
| 02/01/2020 | 02/01/2020 | | Funding | -$730,000.00 | $0.00 | $730,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $730,000.00 |
| 03/05/2020 | 03/01/2020 | WIRE** | RegPmt | $5,468.92 | $5,468.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $730,000.00 |
| 03/05/2020 | | WIRE** | Late Charge | $0.00 | | | $0.00 | | | | |
| 04/06/2020 | 04/01/2020 | WIRE- | RegPmt | $5,468.92 | $5,468.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $730,000.00 |
| 04/06/2020 | | WIRE- | Late Charge | $0.00 | | | $0.00 | | | | |
| 04/21/2020 | 04/21/2020 | Draw | Funding | -$35,359.28 | $0.00 | $35,359.28 | $0.00 | $0.00 | $0.00 | $0.00 | $765,359.28 |
| 04/21/2020 | | Draw | Late Charge | $0.00 | | | $0.00 | | | | |
| 05/01/2020 | 05/01/2020 | WIRE** | RegPmt | -$5,556.01 | -$5,468.92 | $0.00 | $0.00 | $0.00 | -$87.09 | $0.00 | $765,359.28 |
| 05/01/2020 | | WIRE** | Late Charge | $0.00 | | | $0.00 | | | | |
| 05/01/2020 | 05/01/2020 | WIRE** | RegPmt | $5,556.01 | $5,556.01 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $765,359.28 |
| 05/01/2020 | | WIRE** | Late Charge | $0.00 | | | $0.00 | | | | |
| 05/01/2020 | 05/01/2020 | WIRE** | RegPmt | $5,556.01 | $5,468.92 | $0.00 | $0.00 | $0.00 | $87.09 | $0.00 | $765,359.28 |
| 05/01/2020 | | WIRE** | Late Charge | $0.00 | | | $0.00 | | | | |
| 05/08/2020 | 05/08/2020 | Draw | Funding | -$17,011.61 | $0.00 | -$17,011.61 | $0.00 | $0.00 | $0.00 | $0.00 | $782,370.89 |
| 05/08/2020 | | Draw | Late Charge | $0.00 | | | $0.00 | | | | |
| 06/01/2020 | 06/01/2020 | WIRE* | RegPmt | $5,834.38 | $5,834.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $782,370.89 |
| 06/01/2020 | | WIRE* | Late Charge | $0.00 | | | $0.00 | | | | |
| 07/01/2020 | 07/01/2020 | wire- | RegPmt | $5,861.26 | $5,861.26 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $782,370.89 |
| 07/01/2020 | | wire- | Late Charge | $0.00 | | | $0.00 | | | | |
| 07/01/2020 | 07/01/2020 | Draw | Funding | -$135,594.00 | $0.00 | $135,594.00 | $0.00 | $0.00 | $0.00 | $0.00 | $917,964.89 |
| 07/01/2020 | | Draw | Late Charge | $0.00 | | | $0.00 | | | | |
| 07/28/2020 | 07/28/2020 | Draw | Funding | -$98,000.00 | $0.00 | -$98,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,015,964.89 |
| 07/28/2020 | | Draw | Late Charge | $0.00 | | | $0.00 | | | | |
| 08/03/2020 | 08/03/2020 | wire~ | RegPmt | $8,008.95 | $6,877.09 | $0.00 | $0.00 | $0.00 | $1,131.86 | $0.00 | $1,015,964.89 |
| 08/03/2020 | | wire~ | Late Charge | $0.00 | | | $0.00 | | | | |
| 08/03/2020 | 08/03/2020 | wire~ | RegPmt | $8,008.95 | $6,973.64 | $0.00 | $0.00 | $0.00 | $1,035.31 | $0.00 | $1,015,964.89 |
| 08/03/2020 | | wire~ | Late Charge | $0.00 | | | $0.00 | | | | |
| 08/03/2020 | 08/03/2020 | wire~ | RegPmt | -$8,008.95 | -$6,877.09 | $0.00 | $0.00 | $0.00 | -$1,131.86 | $0.00 | $1,015,964.89 |
| 08/03/2020 | | wire~ | Late Charge | $0.00 | | | $0.00 | | | | |
| 09/01/2020 | 09/01/2020 | wire~ | RegPmt | $7,611.27 | $7,611.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,015,964.89 |
| 09/01/2020 | | wire~ | Late Charge | $0.00 | | | $0.00 | | | | |
| 10/01/2020 | 10/01/2020 | wire~ | RegPmt | $7,611.27 | $7,611.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,015,964.89 |
| 10/01/2020 | | wire~ | Late Charge | $0.00 | | | $0.00 | | | | |
| 11/05/2020 | 11/01/2020 | wire~ | RegPmt | $7,611.27 | $7,611.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,015,964.89 |

Page 1 of 3

06/23/2022  9:57 a.m.

Centurion Powered

# FCI Lender Services, Inc.

**Toll Free:** (800) 931-2424 Hrs.: Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)
**Website:** www.myfci.com    NMLS #4920    DRE #01022780
PO BOX 27370 Anaheim CA 92809-0112    Fax: (714) 282-2429

## Loan Master Report

**Report Date:** 06/23/2022

| Date | Type | Ref | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 11/05/2020 | Late Charge | wire~ | | | $0.00 | | | |
| 12/04/2020 | RegPmt | wire^ | $7,611.27 | $7,611.27 | $0.00 | $0.00 | $0.00 | $1,015,964.89 |
| 12/04/2020 | Late Charge | wire^ | $0.00 | | $0.00 | | | |
| 12/17/2020 | Funding | Draw | -$81,144.00 | $0.00 | -$81,144.00 | $0.00 | $0.00 | $1,097,108.89 |
| 12/17/2020 | Late Charge | Draw | $0.00 | | $0.00 | | | |
| 01/06/2021 | RegPmt | wire~ | $7,911.06 | $7,911.06 | $0.00 | $0.00 | $0.00 | $1,097,108.89 |
| 01/06/2021 | Late Charge | wire~ | $0.00 | | $0.00 | | | |
| 02/05/2021 | RegPmt | wire~ | $8,219.17 | $8,219.17 | $0.00 | $0.00 | $0.00 | $1,097,108.89 |
| 02/05/2021 | Late Charge | wire~ | $0.00 | | $0.00 | | | |
| 03/04/2021 | RegPmt | wire~ | $8,219.17 | $8,219.17 | $0.00 | $0.00 | $0.00 | $1,097,108.89 |
| 03/04/2021 | Late Charge | wire~ | $0.00 | | $0.00 | | | |
| 04/01/2021 | RegPmt | wire~ | $8,219.17 | $8,219.17 | $0.00 | $0.00 | $0.00 | $1,097,108.89 |
| 04/05/2021 | Late Charge | wire~ | $0.00 | | $0.00 | | | |
| 05/04/2021 | RegPmt | wire~ | $8,219.17 | $8,219.17 | $0.00 | $0.00 | $0.00 | $1,097,108.89 |
| 05/04/2021 | Late Charge | wire~ | $0.00 | | $0.00 | | | |
| 06/07/2021 | RegPmt | wire~ | $8,219.17 | $8,219.17 | $0.00 | $0.00 | $0.00 | $1,097,108.89 |
| 06/07/2021 | Late Charge | wire~ | $0.00 | | $0.00 | | | |
| 07/06/2021 | RegPmt | wire^ | $8,219.17 | $8,219.17 | $0.00 | $0.00 | $0.00 | $1,097,108.89 |
| 07/06/2021 | Late Charge | wire^ | $0.00 | | $0.00 | | | |
| 07/12/2021 | Funding | Draw | -$189,662.00 | $0.00 | -$189,662.00 | $0.00 | $0.00 | $1,286,770.89 |
| 07/12/2021 | Late Charge | Draw | $0.00 | | $0.00 | | | |
| 08/04/2021 | RegPmt | wire~ | $9,153.45 | $9,119.07 | $0.00 | $0.00 | $34.38 | $1,286,770.89 |
| 08/04/2021 | Late Charge | wire~ | $0.00 | | $0.00 | | | |
| 09/01/2021 | RegPmt | V000040206 | $8,570.37 | $9,640.06 | $0.00 | $0.00 | -$1,069.69 | $1,286,770.89 |
| 09/30/2021 | Late Charge | V000040206 | -$482.00 | | -$482.00 | | | |
| 10/01/2021 | Funding | Draw | -$93,600.00 | $0.00 | -$93,600.00 | $0.00 | $0.00 | $1,380,370.89 |
| 10/01/2021 | Late Charge | Draw | $0.00 | | $0.00 | | | |
| 10/25/2021 | Funding | Draw | -$37,555.00 | $0.00 | -$37,555.00 | $0.00 | $0.00 | $1,417,925.89 |
| 10/25/2021 | Late Charge | Draw | $0.00 | | $0.00 | | | |
| 11/03/2021 | OtherCash | wire' | $2,990.34 | $0.00 | $0.00 | $0.00 | $2,990.34 | $1,417,925.89 |
| 11/03/2021 | Late Charge | wire' | $0.00 | | $0.00 | | | |
| 11/04/2021 | OtherCash | wire'' | $724.59 | $0.00 | $0.00 | $0.00 | $724.59 | $1,417,925.89 |
| 11/04/2021 | Late Charge | wire'' | $0.00 | | $0.00 | | | |
| 10/01/2021 | RegPmt | 1194 | $27,909.31 | $9,640.06 | $0.00 | $0.00 | $18,269.25 | $1,417,925.89 |
| 12/14/2021 | Late Charge | 1194 | -$482.00 | | -$482.00 | | | |
| 12/14/2021 | RegPmt | RESERVE | $10,622.63 | $10,622.63 | $964.00 | $0.00 | $11,586.63 | $1,417,925.89 |
| 12/14/2021 | Late Charge | RESERVE | $0.00 | | $0.00 | | | |
| 11/01/2021 | RegPmt | RESERVE | -$531.13 | $10,397.55 | -$531.13 | $0.00 | $10,397.55 | $1,417,925.89 |
| 12/14/2021 | Late Charge | RESERVE | -$519.88 | | -$519.88 | | | |
| 12/21/2021 | Funding | Draw | -$133,707.70 | $0.00 | $0.00 | $0.00 | $0.00 | $1,551,633.59 |
| 12/21/2021 | Late Charge | Draw | $0.00 | $0.00 | -$133,707.70 | $0.00 | $0.00 | $1,551,633.59 |
| 01/06/2022 | OtherCash | wire. | $367.29 | $0.00 | $0.00 | $0.00 | $367.29 | $1,551,633.59 |
| 01/06/2022 | Late Charge | wire. | $0.00 | | $0.00 | | | |
| 03/31/2022 | Foreclosure Fees | | -$5,110.94 | $0.00 | $0.00 | -$5,110.94 | $0.00 | $1,551,633.59 |
| 06/21/2022 | Foreclosure Costs-Publication | | -$11,745.90 | $0.00 | $0.00 | $11,745.90 | $0.00 | $1,551,633.59 |
| | | | **,551,633.59** | **,551,633.59** | **$-1,051.01** | **$16,856.84** | **$367.29** | |
| | | | **172,253.66** | | **$-1,051.01** | | **$0.00** | |

Page 2 of 3

06/23/2022  9:57 a.m.

Centurion Powered

Hansen Decl. Ex B
Page 3

**Report Date:** 06/23/2022

## FCI Lender Services, Inc.

Toll Free: (800) 931-2424 Hrs.: Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)
Website: www.myfci.com   NMLS #4920   DRE #01022780
PO BOX 27370 Anaheim CA 92809-0112   Fax: (714) 282-2429

# Loan Master Report

### TRUST LEDGER

| Date Received | Reference | Borrower Name | Memo | Payment | Clr | Deposit | Balance |
|---|---|---|---|---|---|---|---|
| | | | | | | Starting Balance | $0.00 |

Hansen Decl. Ex B
Page 4

# EXHIBIT C

Loan#20010794:150 E La Sierra Dr, ARCADIA, CA 91006

Return this agreement with your original signature (no copies) along with the fee (see section 8) to:

Sound Capital Loans, LLC
929 108th Avenue NE
Suite 1030
Bellevue, WA  98004

Sound Capital Loans, LLC

Hansen Decl. Ex C

Page 2

Loan#20010794:150 E La Sierra Dr, ARCADIA, CA 91006

## LOAN MODIFICATION AGREEMENT
## [EXTENSION OF MATURITY DATE]

This Loan Modification Agreement (this "Agreement") is made on 02/01/2021 (the "Maturity Date"), between Sound Equity Inc, a Delaware Corporation, ("Lender") and 150 La Sierra, LLC, a[n] California Limited Liability Company (Borrower").

**WHEREAS** Borrower is indebted to Lender pursuant to a Promissory Note dated January 15, 2020 (the "Note") in the original principal sum of $2,340,000.00, which Note is secured by a Deed of Trust dated January 15, 2020 (the "Deed of Trust") recorded under Los Angeles County Auditor's File Number 20200086211; the Note and Deed of Trust, and the other obligations of Borrower incident there to are collectively referenced as the "Loan".

**WHEREAS** the Loan has a maturity date of 2/1/2021 ("Maturity Date") and remains outstanding;

**WHEREAS** Lender and Borrower wish to provide for the extension of the Maturity Date;

**NOW THEREFORE**, for good and valuable consideration the receipt and adequacy of which is hereby acknowledged by both parties, Borrower and Lender agree as follows:

**1. Estoppel Stipulation of Borrower.** Borrower acknowledges and stipulates that he/she/it is indebted to Lender, without any defense, offset, or counterclaim, for sums disbursed under the Note in the principal sum of $2,340,000.00, plus interest accrued and to accrue thereon from 2/1/2021, at the interest rate set forth in the Note plus default interest accrued and unpaid since the Date of Maturity and any other late fees or otherwise.  Borrower stipulates that all prior payments made have been properly credited, and that Lender's accounting is accurate.

**2. Waiver and Release of Claims.** Borrower hereby forever releases and discharges Lender, its officers, directors, and employees of and from any and all claims, causes of action, or liabilities of any kind or nature, now known or hereafter discovered, from whatever cause arising, (collectively "Claims"), all of which Claims are expressly hereby waived. This waiver and release of Claims is unconditional, immediate, and binding upon each and all of Borrowers, and their successors in interest, for all purposes in all proceedings hereafter, including without limitation any proceedings under the United States Bankruptcy Code. This waiver and release of Claims is a material and expressly bargained-for consideration of this agreement, severable, and independently enforceable notwithstanding a finding that any other provision hereof is unenforceable.

**3. Extension of Maturity Date.** Lender and Borrower hereby agree to extend the Maturity Date of the Loan to 08/01/2021 (the "Extended Maturity Date"). Lender hereby waives accrued and unpaid default interest from the Date of Maturity until the date hereof, but not any default interest which may accrue on the basis of any default hereafter. Interest at the non-default note rate shall continue to have accrued and shall be paid current to the first day of the month in which this Agreement is dated as a condition to Lender's agreement hereto.

**4. Change of Stated Interest Rate.** Lender and Borrower hereby agree to alter the Stated Interest Rate in the Promissory Note to 8.99%. Borrower shall continue to make interest only monthly payments as provided in the Note commencing on the first day of the month immediately succeeding the month in which this Agreement is dated and continuing until the Extended Maturity Date when all sums owing under the Note, the Deed of Trust and otherwise under the Loan shall be due and payable in full.

**5. Cross-Default; Cross-Collateralization.**  Borrower hereby acknowledges and agrees that the Loan is cross-defaulted with all Related Loans such that a default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any Related Loans constitutes an immediate default under the Loan and the Note.  Additionally, all of the Related Loans are cross-collateralized, such that following an event of default under the Loan or any of the Related Loans, Lender, in its discretion, may exercise its rights and remedies against any and all of the collateral securing the Loan or any of the Related Loans.  Borrower hereby irrevocably designates and appoints Lender as its attorney in fact, such power of attorney coupled with an interest, to the extent permitted by applicable

Sound Capital Loans, LLC

Loan#20010794:150 E La Sierra Dr, ARCADIA, CA 91006

law, and, in any event, as Borrower's authorized representative, for the limited purpose of preparing any amendments required in accordance with this Section.

**6. Application of Proceeds.** All proceeds of the claims that Borrower may receive or be entitled to receive shall be paid to Lender. Lender shall apply any proceeds received by it hereunder or for any Related Loan (as defined in the Note) first to the payment of the reasonable costs and expenses incurred in the collection of the proceeds. Lender shall then apply the remaining balance of such proceeds (the "Net Claims Proceeds"), in its absolute discretion and without regard to the adequacy of its security, as follows: (i) to any of the Obligations, notwithstanding the fact that Obligations may not be due according to the terms thereof; (ii) to reimburse Borrower for the costs of reconstructing the Improvements or otherwise repairing or restoring any collateral; or (iii) to Borrower; provided, however, that if there are no outstanding Events of Default under any of the Loan Documents in connection with the Loan or any Related Loan and Borrower establishes, to Lender's reasonable satisfaction, that Borrower has sufficient funds, including the Net Claims Proceeds, to fully rebuild or repair the collateral within the remaining term of the Loan and without delaying the completion date of any project, Lender shall make disbursements of the Net Claims Proceeds for purposes of repair or restoration of the collateral.

**7. Survival of Original Note and Deed of Trust.** Except as modified hereby, the Note and Deed of Trust, together with all other loan documents executed in conjunction therewith, shall remain in full force and effect. The Deed of Trust securing the original Note shall secure the Note as modified hereby.

**8. Non-waiver of Strict Performance.** This Agreement and any prior waiver by Lender of strict performance of the Note, Deed of Trust, or other obligations of the Loan shall not be construed as a waiver of Lender's right to demand strict performance hereafter. Time is of the essence hereof.

**9. Entire Agreement.** This Agreement constitutes the entire agreement of the parties regarding the modification of the Note and the Loan. All prior and contemporaneous oral negotiations are merged herein.

**10. Counterparts.** This Agreement may be executed in one or more counterparts, all of which together shall constitute a single document.

**11. Fees**. The cost to extend the above described note will be two (2.0) points, $46,800.00, to be paid as a condition of this Agreement.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER LAW.**

| Servicer/Lender: | Borrower: |
|---|---|
| Sound Equity Inc, a Delaware Corporation<br><br>By: _____ | 150 La Sierra, LLC, a California limited liability company<br>By: Jinzheng Group USA,LLC, a California limited liability company Its Managing Member.<br>BY: _____ 1-15-2021<br>Betty Zheng<br>Manager |

Sound Capital Loans, LLC

Hansen Decl. Ex C
Page 4

# EXHIBIT D

Loan # 20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

## LOAN MODIFICATION AGREEMENT
## [EXTENSION OF MATURITY DATE]

This Loan Modification Agreement (this "Agreement") is made on 08/01/2021 (the "Maturity Date"), between Sound Equity Inc, a Delaware Corporation, ("Lender") and 150 La Sierra, LLC, a[n] California Limited Liability Company (Borrower").

**WHEREAS** Borrower is indebted to Lender pursuant to a Promissory Note dated January 15, 2020 (the "Note") in the original principal sum of $2,340,000.00, which Note is secured by a Deed of Trust dated January 15, 2020 (the "Deed of Trust") recorded under Los Angeles County Auditor's File Number 20200086211; the Note and Deed of Trust, and the other obligations of Borrower incident there to are collectively referenced as the "Loan".

**WHEREAS** the Loan has a maturity date of 8/1/2021 ("Maturity Date") and remains outstanding;

**WHEREAS** Lender and Borrower wish to provide for the extension of the Maturity Date;

**NOW THEREFORE**, for good and valuable consideration the receipt and adequacy of which is hereby acknowledged by both parties, Borrower and Lender agree as follows:

**1. Estoppel Stipulation of Borrower.** Borrower acknowledges and stipulates that he/she/it is indebted to Lender, without any defense, offset, or counterclaim, for sums disbursed under the Note in the principal sum of $2,340,000.00, plus interest accrued and to accrue thereon from 8/1/2021, at the interest rate set forth in the Note plus default interest accrued and unpaid since the Date of Maturity and any other late fees or otherwise.  Borrower stipulates that all prior payments made have been properly credited, and that Lender's accounting is accurate.

**2. Waiver and Release of Claims.** Borrower hereby forever releases and discharges Lender, its officers, directors, and employees of and from any and all claims, causes of action, or liabilities of any kind or nature, now known or hereafter discovered, from whatever cause arising, (collectively "Claims"), all of which Claims are expressly hereby waived. This waiver and release of Claims is unconditional, immediate, and binding upon each and all of Borrowers, and their successors in interest, for all purposes in all proceedings hereafter, including without limitation any proceedings under the United States Bankruptcy Code. This waiver and release of Claims is a material and expressly bargained-for consideration of this agreement, severable, and independently enforceable notwithstanding a finding that any other provision hereof is unenforceable.

**3. Extension of Maturity Date.** Lender and Borrower hereby agree to extend the Maturity Date of the Loan to 08/01/2022 (the "Extended Maturity Date"). Lender hereby waives accrued and unpaid default interest from the Date of Maturity until the date hereof, but not any default interest which may accrue on the basis of any default hereafter. Interest at the non-default note rate shall continue to have accrued and shall be paid current to the first day of the month in which this Agreement is dated as a condition to Lender's agreement hereto.

**4. Change of Stated Interest Rate.** Lender and Borrower hereby agree to alter the Stated Interest Rate in the Promissory Note to 8.99%. Borrower shall continue to make interest only monthly payments as provided in the Note commencing on the first day of the month immediately succeeding the month in which this Agreement is dated and continuing until the Extended Maturity Date when all sums owing under the Note, the Deed of Trust and otherwise under the Loan shall be due and payable in full.

**5. Cross-Default; Cross-Collateralization.**  Borrower hereby acknowledges and agrees that the Loan is cross-defaulted with all Related Loans such that a default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any Related Loans constitutes an immediate default under the Loan and the Note.  Additionally, all of the Related Loans are cross-collateralized, such that following an event of default under the Loan or any of the Related Loans, Lender, in its discretion, may exercise its rights and remedies against any and all of the collateral securing the Loan or any of the Related Loans.  Borrower hereby irrevocably designates and appoints Lender as its attorney in fact, such power of attorney coupled with an interest, to the extent permitted by applicable

Sound Capital Loans, LLC

Hansen Decl. Ex D
Page 2

Loan # 20010794: 150 E La Sierra Dr, ARCADIA, CA 91006

law, and, in any event, as Borrower's authorized representative, for the limited purpose of preparing any amendments required in accordance with this Section.

**6. Application of Proceeds.** All proceeds of the claims that Borrower may receive or be entitled to receive shall be paid to Lender. Lender shall apply any proceeds received by it hereunder or for any Related Loan (as defined in the Note) first to the payment of the reasonable costs and expenses incurred in the collection of the proceeds. Lender shall then apply the remaining balance of such proceeds (the "Net Claims Proceeds"), in its absolute discretion and without regard to the adequacy of its security, as follows: (i) to any of the Obligations, notwithstanding the fact that Obligations may not be due according to the terms thereof; (ii) to reimburse Borrower for the costs of reconstructing the Improvements or otherwise repairing or restoring any collateral; or (iii) to Borrower; provided, however, that if there are no outstanding Events of Default under any of the Loan Documents in connection with the Loan or any Related Loan and Borrower establishes, to Lender's reasonable satisfaction, that Borrower has sufficient funds, including the Net Claims Proceeds, to fully rebuild or repair the collateral within the remaining term of the Loan and without delaying the completion date of any project, Lender shall make disbursements of the Net Claims Proceeds for purposes of repair or restoration of the collateral.

**7. Survival of Original Note and Deed of Trust.** Except as modified hereby, the Note and Deed of Trust, together with all other loan documents executed in conjunction therewith, shall remain in full force and effect. The Deed of Trust securing the original Note shall secure the Note as modified hereby.

**8. Non-waiver of Strict Performance.** This Agreement and any prior waiver by Lender of strict performance of the Note, Deed of Trust, or other obligations of the Loan shall not be construed as a waiver of Lender's right to demand strict performance hereafter. Time is of the essence hereof.

**9. Entire Agreement.** This Agreement constitutes the entire agreement of the parties regarding the modification of the Note and the Loan. All prior and contemporaneous oral negotiations are merged herein.

**10. Counterparts.** This Agreement may be executed in one or more counterparts, all of which together shall constitute a single document.

**11. Fees**. The cost to extend the above described note will be two and one half (2.50) points, $58,500.00, to be paid as a condition of this Agreement.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER LAW.**

| Servicer/Lender: | Borrower: |
|---|---|
| Sound Equity Inc, a Delaware Corporation | 150 La Sierra, LLC, a California limited liability company |
| | By: Jinzheng Group USA,LLC, a California limited liability company Its Managing Member |
| By: _____ | BY: _____ 8-10-2021 |
| | Betty Zheng |
| | Manager |

Sound Capital Loans, LLC

Hansen Decl. Ex D
Page 3

# EXHIBIT E

Interest Calculation Ledger November 30, 2021 to Present

| Date | Draws Funded | Daily Principal Balance | Note Rate 8.99% | Note Rate Daily Interest (360 day) | Default Rate 24% (-8.99%) | Default Rate Daily Interest (360 day) | Total Daily Interest (Note+Default) |
|---|---|---|---|---|---|---|---|
| 11/30/21 | | $1,417,925.89 | 8.99% | $  - | 15.01% | | $  - |
| 12/1/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/2/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/3/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/4/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/5/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/6/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/7/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/8/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/9/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/10/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/11/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/12/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/13/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/14/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/15/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/16/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/17/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/18/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/19/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/20/21 | | $1,417,925.89 | 8.99% | $ 354.09 | 15.01% | | $ 354.09 |
| 12/21/21 | $ 133,707.70 | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/22/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/23/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/24/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/25/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/26/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/27/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/28/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/29/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/30/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 12/31/21 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | | $ 387.48 |
| 1/1/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/2/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/3/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/4/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/5/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/6/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/7/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/8/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/9/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/10/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |

Page 1 of 8

Hansen Decl. Ex E
Page 2

Interest Calculation Ledger November 30, 2021 to Present

| Date | Draws Funded | Daily Principal Balance | Note Rate 8.99% | Note Rate Daily Interest (360 day) | Default Rate 24% (-8.99%) | Default Rate Daily Interest (360 day) | Total Daily Interest (Note+Default) |
|---|---|---|---|---|---|---|---|
| 1/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/26/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/27/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/28/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/29/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/30/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 1/31/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/1/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/2/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/3/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/4/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/5/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/6/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/7/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/8/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/9/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/10/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 2/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |

Hansen Decl. Ex E
Page 3

Interest Calculation Ledger November 30, 2021 to Present

| Date | Draws Funded | Daily Principal Balance | Note Rate 8.99% | Note Rate Daily Interest (360 day) | Default Rate 24% (-8.99%) | Default Rate Daily Interest (360 day) | Total Daily Interest (Note+Default) |
|---|---|---|---|---|---|---|---|
| 2/26/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 2/27/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 2/28/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/1/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/2/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/3/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/4/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/5/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/6/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/7/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/8/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/9/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/10/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/11/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/12/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/13/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/14/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/15/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/16/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/17/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/18/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/19/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/20/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/21/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/22/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/23/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/24/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/25/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/26/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/27/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/28/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/29/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/30/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 3/31/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/1/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/2/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/3/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/4/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/5/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/6/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/7/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/8/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/9/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |
| 4/10/22 | | $1,551,633.59 | 8.99% | $  387.48 | 15.01% | $  646.95 | $  1,034.42 |

Hansen Decl. Ex E
Page 4

Interest Calculation Ledger November 30, 2021 to Present

| Date | Draws Funded | Daily Principal Balance | Note Rate 8.99% | Note Rate Daily Interest (360 day) | Default Rate 24% (-8.99%) | Default Rate Daily Interest (360 day) | Total Daily Interest (Note+Default) |
|---|---|---|---|---|---|---|---|
| 4/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/26/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/27/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/28/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/29/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 4/30/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/1/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/2/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/3/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/4/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/5/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/6/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/7/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/8/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/9/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/10/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |

Page 4 of 8

Hansen Decl. Ex E
Page 5

Interest Calculation Ledger November 30, 2021 to Present

| Date | Draws Funded | Daily Principal Balance | Note Rate 8.99% | Note Rate Daily Interest (360 day) | Default Rate 24% (-8.99%) | Default Rate Daily Interest (360 day) | Total Daily Interest (Note+Default) |
|---|---|---|---|---|---|---|---|
| 5/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/26/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/27/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/28/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/29/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/30/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 5/31/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/1/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/2/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/3/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/4/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/5/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/6/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/7/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/8/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/9/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/10/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/26/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/27/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/28/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/29/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 6/30/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/1/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/2/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/3/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/4/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/5/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/6/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/7/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |

Hansen Decl. Ex E
Page 6

Interest Calculation Ledger November 30, 2021 to Present

| Date | Draws Funded | Daily Principal Balance | Note Rate 8.99% | Note Rate Daily Interest (360 day) | Default Rate 24% (-8.99%) | Default Rate Daily Interest (360 day) | Total Daily Interest (Note+Default) |
|------|--------------|-------------------------|-----------------|-------------------------------------|----------------------------|----------------------------------------|--------------------------------------|
| 7/8/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/9/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/10/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/26/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/27/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/28/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/29/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/30/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 7/31/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/1/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/2/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/3/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/4/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/5/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/6/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/7/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/8/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/9/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/10/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |

Page 6 of 8

Hansen Decl. Ex E
Page 7

Interest Calculation Ledger November 30, 2021 to Present

| Date | Draws Funded | Daily Principal Balance | Note Rate 8.99% | Note Rate Daily Interest (360 day) | Default Rate 24% (-8.99%) | Default Rate Daily Interest (360 day) | Total Daily Interest (Note+Default) |
|---|---|---|---|---|---|---|---|
| 8/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/26/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/27/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/28/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/29/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/30/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 8/31/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/1/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/2/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/3/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/4/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/5/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/6/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/7/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/8/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/9/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/10/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/26/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/27/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/28/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/29/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 9/30/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/1/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/2/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/3/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |

Hansen Decl. Ex E
Page 8

Interest Calculation Ledger November 30, 2021 to Present

| Date | Draws Funded | Daily Principal Balance | Note Rate 8.99% | Note Rate Daily Interest (360 day) | Default Rate 24% (-8.99%) | Default Rate Daily Interest (360 day) | Total Daily Interest (Note+Default) |
|---|---|---|---|---|---|---|---|
| 10/4/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/5/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/6/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/7/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/8/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/9/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/10/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/11/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/12/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/13/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/14/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/15/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/16/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/17/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/18/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/19/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/20/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/21/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/22/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/23/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/24/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/25/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/26/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/27/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/28/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/29/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/30/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |
| 10/31/22 | | $1,551,633.59 | 8.99% | $ 387.48 | 15.01% | $ 646.95 | $ 1,034.42 |

Hansen Decl. Ex E
Page 9