Matthew D. Resnik (Bar No. 182562)
**RHM LAW LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
Telephone: (818) 285-0100
Facsimile: (818) 855-7013
matt@RHMFirm.com

Attorneys for Creditor
Royalty Equity Lending LLC/ Bobs LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:21-bk-16674-ER |
| | Chapter 11 |
| JINZHENG GROUP (USA) LLC, | **REPLY IN SUPPORT OF BOBS LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY [DOCKET NO.395]** |
| Debtor. | |
| | Date: November 14, 2022 |
| | Time: 10:0 a.m. |
| | Place: Courtroom 1568 |
| | 255 East Temple Street, |
| | Los Angeles, CA 90012 |

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE; DEBTOR JINZHENG GROUP (USA) LLC; ITS ATTORNEYS OF RECORD; AND TO ALL INTERESTED PARTIES:**

Secured Creditor Royalty Equity Lending LLC/Bobs LLC ("REL") submits the following Reply in support of its Motion for Relief from Automatic Stay [Docket No. 395] ("Motion") and in response to the Opposition filed by the Debtor and Debtor in Possession, Jinzheng Group [Docket No.430] and joined by Official Committee of Unsecured Creditors [Docket No. 431].

## I. INTRODUCTION

The simple problem is that the Debtor overpaid for the Property. The fair market value, as evidenced by the shifting of positions from confirming a plan to selling the asset, has only wound up in a series of delays. These delays have impacted the security and has further impaired the claim of REL. The Debtor has not provided any evidence in its opposition to support its position that more time is warranted after more than 15 months without adequate protection payments nor maintain the six figure property tax installments.

REL has met its burden of proof, demonstrating that it is entitled to relief from the automatic stay[1]. In return, the Debtor has not provided any comfort with its opposition that additional delay may in fact maximize recovery. They have, as a basis of opposition, threatened the future will likely entail litigation and macroeconomic factors to their detriment, including but not limited to a slowdown in the real estate market, rising interest rates and a pace of inflation that has not been seen in over 40 years.

In addition, since the estate generates little to no income, the realities of the expense to the estate favor granting relief from stay immediately. Using simple math, Respondents are requesting 240 additional days to market the property and close the transaction. Considering the payments to REL are **$87,216.45 per month** the estate is shifting the entire risk to REL for an amount no less than **$698,000.00**[2]. A sale will add selling costs and expenses along with the two property tax bills that will come due by the end of the 240-day period and the eight additional months of mortgage payments, the additional impact of time will increase the amount owed to the tune of over $1 million dollars[3].

Debtor has raised numerous legal and factual arguments, particularly in connection with the value of the Properties. Yet, the only evidence submitted by the Debtor regarding

---

[1] The party requesting relief from the automatic stay has the burden on the issue of debtor's equity in property; the opposing party has the burden on all other issues. In re Farmer, 257 B.R. 556, 559 (Bankr. D. Mont. 2000)(citation omitted); § 362(g). If the movant establishes a prima facie case, the burden shifts to the debtor to prove adequate protection. Section 362(g).

[2] The monthly interest on the REL claim is $87,216.45. The default interest is $34,230.02. The requested time will equal a total of $971,571.76 in additional interest owed to REL.

[3] Property Taxes in the amount of $274,597.30 due and payable through April 10, 2023.

**REPLY**

**2**

the value of the collateral is a nebulous declaration of Mark Cianciulli. There really is nothing substantial in the declaration that would assuage the concerns of REL nor provide any third party that the likelihood of selling the property now is any different than prior to listing the property without a sale price. In fact, one can argue that the incredible reduction of the sales prices (at least based on the purchase price) would have encouraged interested parties to immediately engage in negotiations. Based on the appraisals and the impairment of collateral, REL truly believes the property is worth substantially less than the current sales price. As of today's date, there appears to be no interest in the way of offers and/or counteroffers.

The parcels of real property and security interests which are the subject of REL's Motion are as follows ("REL's Properties"):

i.   2929 Amethyst (APN 5209-009-001): REL and the Ho Trust

ii.  A triplex at 2526-28 Lincoln Park Ave. (APN 5208-025-001): REL

iii. A duplex at 2520-22 Lincoln Park Ave. (APN 5208-025-002): REL

iv.  Land at 2602 Lincoln Park Ave, (APN 5208-025-014): Dorffs and REL

v.   Land at 2600 Sierra Street (APN 5209-005-003): Dorffs and REL.

In support of its Motion, REL obtained appraisals as of September 8, 2022, with the Properties subject to REL's security interests collectively worth approximately $8,600,000. The Debtor opposition disputes REL's valuation of the properties and asserts that the **additional** *Paradise Drive Lots*[4] should be included in the overall value. Debtor listed the Properties on the market July 26, 2022, in a variety of commercial real estate sale mediums[5] without a list price in. This was an incredibly risky strategy which resulted in no offers from this type of listing.

///

---

[4] Paradise Drive Lots consist of ten(10) vacant lots: APNs (i) 5209-021-002, -005, -006; (ii) 5209-022-007; (iii) 5209-023-022, -029; -030; -031; -032; and (iv) 5209-025-006.

[5] These mediums include but are not limited to CoStar, Loopnet, Crexi, Brevitas, and TheMLS. [See Opposition, page 5, line 23.]

Come October 20, 2022, the Properties were listed for $12,000,000[6]. This reduction is not likely to be enough. Debtor concedes in the Opposition that the real estate market is declining, and real property sales are taking longer to consummate, and it may take at least four to seven months to find the "appropriate/best" buyer. With no ongoing mortgage payments and evidence that REL's security interest has been substantially impaired through destruction of one of the free-standing buildings on the property, it is impractical for REL to spend additional time on the hopes and whims of the Debtor and estate creditors. In view of current market conditions and evaporating equity, the Debtor must show more progress than merely requesting additional time to market the property.

Finally, Debtor wants the Court to believe there is a dispute as to how much is really owed to REL. The case has been pending over 15 months and despite the yeoman efforts of Counsel, only *now* does the Debtor challenge REL's secured claim as "unreasonable and objectionable". REL's prepetition claim clearly disclosed the extension fees which were negotiated by the parties in order to forsake the pending foreclosure on the properties prior to filing bankruptcy. This accusation is merely a red herring and likely a threat for a fight with no overall benefit to what is dangerously close to an administratively insolvent estate. REL's claim is an allowed secured claim, and no claim objection has been filed. The schedules do not dispute the claim. As such, any objections on REL's allowed secured claim here is inappropriate and beyond the scope of this summary stay relief proceeding. Such claims and arguments should be decided only *after* the Court makes a determination of "cause" in connection with this Motion.

## II.  ARGUMENT

### A. REL is Entitled to Relief from Stay for "Cause" Including Lack of Adequate Protection.

Under § 362(d)(2), the Court is required to grant stay relief if the debtor lacks equity in the property and the property is not essential to an effective reorganization that is in prospect.

---

[6] REL contends its total claim exceeds the $12,000,00 sales price.

**REPLY**

**4**

As stated in the Supreme Court case of *Timbers:* Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts, including the en banc court in this case, have properly said that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in original).

REL contends that this property is not necessary for reorganization. Yes, it's a large and substantial asset, however it offers illusory value to the estate. The additional time requested and the costs to the estate would be unreasonable. The value of the property coupled with the interest payments over an additional period of time will be a tremendous waste of resources for all parties involved.

The only true and authenticated evidence of value has been the appraisals submitted by REL. That is because no baseline has been provided by way of an offer for the property. The Debtor by its own admission, in the dramatic reduction of sales price, had overpaid for the property and REL believes through the passage of time they are a undersecured lien holder. REL holds the second lien on two of the REL's Properties[7] where any cushion that could have been enjoyed by the unsecured creditors has been wasted with delays strategies that have fallen short of expectations.

REL's collateral is jeopardized by the failure to pay the senior notes (yet alone the interest payments owed to REL) and ongoing property taxes will further erode REL's collateral position. As the interest accrues on the senior lienholder's claim and the collateral is consumed by the accruing interest of the senior lender and ongoing property

---

[7] Land at 2602 Lincoln Park Ave, (APN 5208-025-014): the Dorffs and REL; land at 2600 Sierra Street (APN 5209-005-003): the Dorffs and REL.

**REPLY**

**5**

taxes, REL has continued to suffer a diminution in value of its collateral and adequate protection.

**Sale and Marketing Efforts -** Debtor contends that "the best way to determine the Property's value is by testing the Property on the market". The property has been marketed. The Lincoln Heights Properties were officially listed on the market through massive commercial mediums and to date, the Debtor has not received one single offer. Or at least, the Debtor has not disclosed if there has been an offer and if so for how much. However, based on the macroeconomic factors at play, Debtor's position in its opposition is not realistic and bordering on pollyannish in explaining that "[o]nly once the Debtor completes the sale process, can the Court truly gauge "whether the Property has equity" This horizonless approach is not an adoptable position.

For the second time in this case, REL has provided documented appraisals demonstrating that the value is less than the total amount of the secured debt structure on the property. As of September 8, 2022, the properties are collectively valued at $8,600,000. Assuming that the properties are worth somewhere in the middle of what is owed and what the sales prices is, that hardly supports the required adequate protection, specifically when you factor in costs of sale and maintenance on the property. REL has an allowed claim which even with the disputed amounts currently exceeds the value of the Properties.

On the same note, it is clear that this Chapter 11 is a liquidation, and any further delay will merely injure the secured creditors should the property not find the absolute perfect buyer (for which that party is unknown). The Debtor has offered no adequate protection and there is no adequate protection as a result of the sales process when you consider:

1) The value of the secured creditor's interest,
2) The risks to the secured creditor's value resulting from the debtor's request to continue to list and market the property

**REPLY**

**6**

      3) The absence of any adequate protection proposal to protect the value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence.

The value of the property coupled with the associated risks is enough to establish cause in favor of REL where no reorganization plan or some dividend to the estate is likely to exist. The Debtor has offered no form of adequate protection yet alone the indubitable equivalence.

**B. The Property Has not been Properly Managed, Permitted, Insured nor Bonded:**

In response to REL's numerous claims as to mismanagement of the REL's Properties set forth in its Motion, the Debtor provided no evidence to support its contention that it is properly managing the REL's Properties nor provided a clear response to REL's claims.

Perhaps the new management is doing a better job but that is not enough to avoid relief from stay. REL interest has been impaired by the wanton destruction of its property. There is no evidence of insurance. The Debtor is not even aware of when it happened and the cause of its destruction.

REL is concerned that further damage can occur as a result of the wait and see approach to this property. The destruction of property and lack of insurance establishes cause for relief being granted.

**C. The Debtor Has Not Met Its Burden to Demonstrate That an Effective Reorganization Within a Reasonable Time is in Prospect.**

Section 362(g) places the burden of proof on the movant on "the issue of the debtor's equity in the property" and places the burden on parties opposing stay relief as to "all other issues." 11 U.S.C. § 362(g). Under section 362(d)(2)(A), the movant must demonstrate lack of equity, but the opposing parties must demonstrate, among other things, that the property is necessary for an effective reorganization that is in prospect under

**REPLY**

**7**

section 362(d)(2)(B). *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs*., 484 U.S. 365, 375-76 (1988). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means. . . that there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* As stated above, there is no reorganization, and the properties are the only collateral that could "possibly" generate some revenue into the estate. The experiment of a sale has already been attempted and has not provided any additional guidance.

REL believes that enough time has passed and that circumstances have changed since the initial proposed plan. There is no contribution from any source. There is no reorganization, and the Debtor has proposed a liquidating chapter 11 plan, primarily by attempting to sell the estate's largest asset. The Debtor contends that liquidation in chapter 11 may be an "effective reorganization" for the purposes of section 362(d)(2)(B). To satisfy its burden in the event of liquidation, the Debtor should show that it is making progress toward an effective liquidation. See *In re EM Lodgings, LLC,* 580 B.R. 803, 814 (Bankr. C.D. Ill. 2018). This case is well over a year old, and the Debtor has retained three different firms since the filing. The Debtor provided no evidence to support its position that the REL's Properties are worth what the property has been listed at. After initially not opposing the sale efforts of the Debtor, REL was patient to see what if any positive outcome would develop.

However, the plain truth is that this property cannot sell and satisfy the best of intentions for a windfall to the estate. The property is not necessary for an effective reorganization and the estate would benefit by cutting its losses and concentrating its efforts on any other value that could be derived from the estate assets[8].

---

[8] "There is, however, no requirement that the Court address the issue of adequate protection, under § 362(d)(1), if the Court finds that grounds for termination of the stay have been demonstrated under § 362(d)(2)." In re Manning, 620 B.R. 199, 204 (Bankr. W.D.N.Y. 2020) (Warren, J.) (citing In re de Kleinman, 156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993)). *In re East/Alexander Holdings, LLC*, No. 22-20151-PRW, at *10 (Bankr. W.D.N.Y. May 12, 2022)

**REPLY**

Despite having the pedigree, the sales process has not gained any momentum. By the time of the hearing, it will be close to four months of marketing in a six-month agreement. According to the Debtor's statements, "the Debtor's brokers are in the process of thoroughly testing the Property against the market." [See Opposition, page 11, lines 27-28.] Cleary this is an admission that when provided the chance to market the property the market was not "thoroughly tested". The appraisals based on comparables, even when as unique as this patch of dirt, is the Courts best evidence.

REL appreciates the Debtor's purported efforts to sell the Lincoln Heights Properties but protests that the Chapter 11 is used to test the market at the detriment of secured creditor's interest. The Debtor further contends that "[i]f the Debtor is successful in marketing the Property, its efforts could result in a substantial return for the estate's general unsecured creditors, in addition to a full satisfaction of the REL Lien." [See Opposition page 12, line 1-3.] This is once again a factual conclusion without evidentiary support since the Lincoln Heights Properties were listed and marketed in the manner the Debtor has described in its opposition. The Debtor specifically contends that its brokers have advised that the Lincoln Heights Properties are "extremely unique" and requires a qualified buyer with certain objectives. [9] That seems too indefinite and in no way validates further delays.

Lastly, the Debtor admits that the real estate market is declining, and it takes longer to consummate real property sales. This by itself evidences that the Debtor's "reorganization" prospects are jeopardized. With no real path to reorganization and any prospect of sale of the Lincoln Heights Properties within a reasonable time unlikely, a successful reorganization or liquidation that would ultimately benefit the estate is illusory.

The Debtor has failed to respond with a preponderance of evidence that the property value and equity does not continue to decline while in the bankruptcy and that there is

---

[9] "The Brokers have advised that real property of this kind is extremely unique and requires a qualified buyer with one of three ultimate objectives:
1. To develop the land to arguably it's highest and best use (i.e. a 70 single family home development),
2. Long-term land holding and speculation, or
3. To preserve the raw and open land in its current state, in perpetuity." [See Opposition, page 6, lines 19-24.]

**REPLY**

**9**

some form of protection afforded to REL as a result of the delay. In short, the proposal of the *"wait and see"* approach, with increased costs at the tune of over $1 million dollars, the Debtor has not sustained its burden in opposition and failed to satisfy its obligations under §362(g)(2) amongst other concerns.

### III.    CONCLUSION

Based on the foregoing, Movant requests the Court to terminate the automatic stay as to the Properties so that Movant may enforce its security interest and pursue its remedies under state law, including, but not limited to, commencing, continuing, and completing the foreclosure process[10].

WHEREFORE, Movant respectfully prays for an Order of this Court as follows:

1. Terminating the automatic stay of 11 U.S.C. 362, as it applies to the enforcement by Movant of all of its rights in the Properties under the deeds of trust;
2. For such other and further relief as the Court deems just and proper.

Dated:  November 7, 2022                              **RHM LAW LLP**

                                                     **By:**      /s/ Matthew D. Resnik
                                                           Matthew D. Resnik

                                                     *Attorney for Secured Creditor*
                                                     Royal Equity Lending LLC

---

[10] Currently there is no Foreclosure Proceedings Initiated by REL. REL would still need to file a Notice of Default and Notice of Sale (roughly 111 days) in order to foreclose on the collateral.

## DECLARATION OF ROMMY SHY

I, Rommy Shy, declare as follows:

1. I am the sole Managing Member of Royalty Equity Lending LLC, the creditor in this case ("Creditor"). I am over the age of eighteen (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2. I reviewed Debtor's Opposition to Motion for Relief from the Automatic Stay [Docket No. 430] (the "Opposition") filed by the Creditor herein.

3. Debtor has listed the REL's Properties for sale since July 26, 2022, and has not received a single offer since then. It's my understanding that the Debtor is now requesting additional time (240 days) to market the property and close the transaction.

4. The monthly interest on the REL's claim is $87,216.45. The default interest is $34,230.02. As a result, the requested time will equal a total of $971,571.76 in additional interest owed to REL.

5. Additionally, property taxes in the amount of $274,597.30 due and payable through April 10, 2023.

6. As of October 31, 2022, pursuant to the Note and Deed of Trust, the amount owed to REL is more than $12,063,649.63. This includes but is not limited to the $8,215,049.93 in principal, $1,994,340.69 in interest and an additional $1,046,560.36 in additional default and extension fees. This does not include amounts advanced for property taxes and/or attorney fees.

7. As such, a sale will add selling costs and expenses along with the two property tax bills that will come due by the end of the 240-day period and the eight additional months of mortgage payments, the additional impact of time will increase the amount owed to the tune of over $1 million dollars.

8. Additionally, under the terms of the Note, Borrower should at all times keep the mortgaged properties insured for the benefit of Movant and were required to procure

and maintain or cause to be procured and maintained all insurance policies required pursuant to the Deed of Trust. The Debtor has further breached its obligation under the Note and Deed of Trust because it has failed to provide proof of insurance coverage to Movant as required under the Note.

9. In response to REL's numerous claims as to mismanagement of the REL's Properties set forth in its Motion, the Debtor provided no evidence to support its contention that it is properly managing the REL's Properties nor provided a clear response to REL's claims.

10. REL's interest has been impaired by the wanton destruction of its property. There is no evidence of insurance. It appears that the Debtor is not even aware of when it happened and the cause of its destruction.

11. REL remains concerned that based on the lack of interest in the properties and what appears to be a difficult environment for sale of these types of properties, REL is likely no longer adequately protected through its equity in the property and there is apparently no reorganization of the property to pay off the secured lien currently held by REL.

12. Thus, I respectfully request that the Court grant this motion and lift the automatic stay and allow Creditor to proceed under applicable nonbankruptcy law to enforce its state remedies and/or seek other relief as proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Monday, November 07, 2022, at ___Los Angeles_____, California.

By: _____
**Rommy Shy**
*Declarant*

**REPLY**

**12**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*): REPLY IN SUPPORT OF BOBS LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY [DOCKET NO.395] will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/7/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/7/2022 | Max Bonilla | /s/ Max Bonilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [CONTINUED]**</u>:

- Donna C Bullock    donnabullockcarrera@yahoo.com, donna.bullock@ymail.com
- Steven P Chang    heidi@spclawoffice.com, schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com
- <u>Counsel for The Phalanx Group:</u> Michael F Chekian    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- Susan Titus Collins    scollins@counsel.lacounty.gov
- <u>Counsel for Official Committee of Unsecured Creditors:</u> Jeffrey W Dulberg    jdulberg@pszjlaw.com; Teddy M Kapur    tkapur@pszjlaw.com, mdj@pszjlaw.com
- <u>Counsel for Los Angeles County Treasurer and Tax Collector:</u> Oscar Estrada    oestrada@ttc.lacounty.gov
- Richard Girgado    rgirgado@counsel.lacounty.gov
- Peter A Kim    peter@pkimlaw.com, peterandrewkim@yahoo.com
- Christopher J Langley    chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com
- <u>Counsel for Michael and Shari Dorff:</u> Benjamin R Levinson    ben@benlevinsonlaw.com, courtney@benlevinsonlaw.com
- <u>Counsel for Corona Capital Group:</u> Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
- Giovanni Orantes    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- Donald W Reid    don@donreidlaw.com, ecf@donreidlaw.com
- <u>Counsel for Royalty Equity Lending:</u> Matthew D. Resnik    matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- Peter J Ryan    ryan@floresryan.com, pryancfi@gmail.com
- <u>Counsel for Investment Management Company, LLC</u>: Allan D Sarver    ADS@asarverlaw.com
- David Samuel Shevitz    david@shevitzlawfirm.com, shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- <u>Counsel for United States Trustee (LA):</u> Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov
- <u>Counsel for Royal Business Bank</u>: Nicholas S Couchot  ncouchot@buchalter.com
- <u>Counsel for Sound Equity Inc.:</u>  Paul J Leeds Pleeds@fsl.law
- <u>Counsel for Jinzheng Group (USA) LLC:</u> Danielle R Gabai dgabai@danninggill.com; Alphamorlai Lamine Kebeh akebeh@danninggill.com; Zev Shechtman zshechtman@DanningGill.com